M/ECF LIVE, Ver 3.0 - U.S. District Court, Northern Illinois - Docket Report

JUDGE KOELTL

COPY ATTEST
W. DOBBINS, CLERK

THELMA MURRY SYKES
DEPUTY CLERK
DISTRICT COURT, NORTHERN
DISTRICT OF ILLINOIS

DATE: JANUARY 3, 2008

AO279, COX, TERMED, TRANSFER

# United States District Court
thern District of Illinois - CM/ECF LIVE, Ver 3.0 (Chicago)
### CIVIL DOCKET FOR CASE #: 08-cv-0139    08 CV 00986
### Internal Use Only

| | |
|---|---|
| Software For Moving, Inc. v. La Rosa Del Monte Express, Inc. et al | Date Filed: 04/03/2007 |
| Assigned to: Honorable Joan B. Gottschall | Date Terminated: 12/07/2007 |
| Demand: $300,000 | Jury Demand: Both |
| Cause: 17:501 Copyright Infringement | Nature of Suit: 820 Copyright |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Software For Moving, Inc.**
*a New York Corporation*

represented by **Francis J. Leyhane, III**
Leyhane & Associates, Ltd.
Attorney at Law
205 West Randolph Street
Suite 1320
Chicago, IL 60606
(312) 223-0811
Fax: (312) 223-0814
Email: leyhane329@aol.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**La Rosa Del Monte Express, Inc.**
*a New York Corporation*

represented by **Catalina Jean Sugayan**
Locke Lord Bissell & Liddell LLP
111 South Wacker Drive
Chicago, IL 60606
(312) 443-0700
Email: csugayan@lordbissell.com
*ATTORNEY TO BE NOTICED*

**David M Dolendi**
Locke Lord Bissell & Liddell LLP
111 South Wacker Drive
Chicago, IL 60606
(312) 443-0700
Email: ddolendi@lordbissell.com
*ATTORNEY TO BE NOTICED*

**John T.A. Rosenthal**
Harrington, Ocko & Monk, LLP
81 Main Street
Suite 215

White Plains, NY 10601
914 686 4800
*ATTORNEY TO BE NOTICED*

**Kevin J. Harrington**
Harrington, Ocko & Monk, LLP
81 Main Street
Suite 215
White Plains, NY 10601
914 686 4800
*ATTORNEY TO BE NOTICED*

**Defendant**

**La Rosa Del Monte Express
(Chicago), LLC**
*an Illinois Limited Liability Company*

represented by **Catalina Jean Sugayan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David M Dolendi**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John T.A. Rosenthal**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kevin J. Harrington**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/03/2008 | 56 | TRANSFERRED to the SD/NY the a certified copy of transfer order and docket sheet with a transmittal letter with electronic transfer instructions. (tlm) (Entered: 01/03/2008) |
| 12/12/2007 | 55 | MINUTE entry before Judge Susan E. Cox : This having been transferred to the Southern District of New York on 12/7/2007, the referral is closed. Judge Susan E. Cox no longer referred to the case.Mailed notice (jms, ) (Entered: 12/12/2007) |
| 12/07/2007 |  | (Court only) ***Civil Case Terminated. (tlm) (Entered: 12/18/2007) |
| 12/07/2007 | 54 | MEMORANDUM Opinion and Order signed by Judge Joan B. Gottschall on 12/7/2007. Mailed notice (tlm) (Entered: 12/11/2007) |
| 12/07/2007 | 53 | MINUTE entry before Judge Joan B. Gottschall: For the reason set in the attached Memorandum Opinion and Order, Defendants La Rosa Del Monte Express, Inc. and La Rosa Del Monte Express Chicago LLC's (collectively "La Rosa") motion to dismiss plaintiff Software for Moving's ("SFM") amended complaint 34 is denied. SFM's motion to stay arbitration 25 is granted, and La Rosa's cross motion to stay this |

| | | |
|---|---|---|
| | | action and/or compel arbitration 34 is denied. SFM's motion to strike portions of the declaration of John T. A. Rosenthal 26 is denied as moot. Finally, La Rosa's alternative motion to transfer this case to the Southern District of New York 24 is granted. Civil Case Terminated. Modified on 12/18/2007 (tlm). (Entered: 12/11/2007) |
| 10/12/2007 | ●52 | Notice of Firm Name Change by La Rosa Del Monte Express, Inc., La Rosa Del Monte Express (Chicago), LLC (Dolendi, David) (Entered: 10/12/2007) |
| 09/26/2007 | ●51 | MINUTE entry before Judge Susan E. Cox : Status hearing held. Order entered 5/11/07 by Magistrate Judge Jeffrey Cole to stay discovery until further order of court to stand pending ruling on motions.Status hearing set for 12/12/07 at 9:30 a.m.. Mailed notice (vkd, ) (Entered: 09/26/2007) |
| 09/24/2007 | ●50 | STATUS Report *Updated Joint* by Software For Moving, Inc., La Rosa Del Monte Express, Inc., La Rosa Del Monte Express (Chicago), LLC (Dolendi, David) (Entered: 09/24/2007) |
| 09/13/2007 | ●49 | REPLY by Defendants La Rosa Del Monte Express, Inc., La Rosa Del Monte Express (Chicago), LLC to motion to dismiss34 *Plaintiff's Amended Complaint* (Dolendi, David) (Entered: 09/13/2007) |
| 08/30/2007 | ●47 | MINUTE entry before Judge Susan E. Cox :Initial status hearing set for 9/26/07 at 9:30 a.m. in Courtroom 1342. The parties are directed to review and to comply with Judge Cox's Order Setting Initial Status Report for Cases Assigned to Judge Cox. Copies are available in chambers or through Judge Cox's web page at www.ilnd.uscourts.gov Mailed notice (vkd, ) (Entered: 08/30/2007) |
| 08/30/2007 | ●46 | NOTICE by Software For Moving, Inc. re response in opposition to motion45 (Leyhane, Francis) (Entered: 08/30/2007) |
| 08/30/2007 | ●45 | RESPONSE by Software For Moving, Inc.in Opposition to MOTION by Defendants La Rosa Del Monte Express, Inc., La Rosa Del Monte Express (Chicago), LLC to dismiss *Plaintiff's Amended Complaint34* (Leyhane, Francis) (Entered: 08/30/2007) |
| 08/27/2007 | ●48 | EXECUTIVE COMMITTEE ORDER:Case referred to magistrate judge Susan E. Cox. (See order for details). Signed by Judge Executive Committee on 8/27/07. Mailed notice(emd, ) (Entered: 08/31/2007) |
| 08/06/2007 | ●44 | NOTICE by Software For Moving, Inc. re reply to response to motion, 43, reply, 42 *Noitce of Filing* (Leyhane, Francis) (Entered: 08/06/2007) |
| 08/06/2007 | ●43 | REPLY by Software For Moving, Inc. to MOTION by Plaintiff Software For Moving, Inc. to strike declaration, 12 *Motion to Strike Portions of the Declaration of John T.A. Rosenthal26*, memorandum in support of motion35 *Reply in Support of Motion to Strike Portions of the Declaration of John T.A. Rosenthal (Document 12)* (Leyhane, Francis) (Entered: 08/06/2007) |
| 08/06/2007 | ●42 | REPLY by Plaintiff Software For Moving, Inc. to order on motion to dismiss, order on motion to amend/correct, terminate hearings, set motion |

| | | |
|---|---|---|
| | | and R&R deadlines/hearings, motion hearing,,,,,,,,,,,,,,,,,, 29, memorandum in support of motion35, motion to stay25 *Reply Brief in Support of Motion to Stay Arbitration* (Leyhane, Francis) (Entered: 08/06/2007) |
| 07/30/2007 | ●41 | MINUTE entry before Judge Joan B. Gottschall :Briefing schedule as to Defendants' Motion to Dismiss Plaintiff's Amended Complaint 34 is as follows : Responses due by 8/30/2007. Replies due by 9/13/2007. Ruling by mail. Mailed notice (rj, ) (Entered: 07/30/2007) |
| 07/26/2007 | ●40 | MINUTE entry before Judge Jeffrey Cole :Magistrate Judge Status hearing held and continued to 9/26/2007 at 08:30 AM.Advised in open court (jms, ) (Entered: 07/26/2007) |
| 07/23/2007 | ●39 | DECLARATION of Omar Deleon regarding motion to dismiss34 by La Rosa Del Monte Express, Inc., La Rosa Del Monte Express (Chicago), LLC *and to Transfer the Action to Southern District of New York.* (Dolendi, David) (Entered: 07/23/2007) |
| 07/23/2007 | ●38 | NOTICE of Motion by David M Dolendi for presentment of motion to dismiss34 before Honorable Joan B. Gottschall on 8/2/2007 at 09:30 AM. (Dolendi, David) (Entered: 07/23/2007) |
| 07/23/2007 | ●37 | DECLARATION of Hiram Rodriguez regarding motion to dismiss34 by La Rosa Del Monte Express, Inc., La Rosa Del Monte Express (Chicago), LLC (Attachments: # 1 Exhibit A to C)(Dolendi, David) (Entered: 07/23/2007) |
| 07/23/2007 | ●36 | DECLARATION of John T. A. Rosenthal regarding motion to dismiss34 by La Rosa Del Monte Express, Inc., La Rosa Del Monte Express (Chicago), LLC (Attachments: # 1 Exhibit A# 2 Exhibit B to F# 3 Exhibit G to Q)(Dolendi, David) (Entered: 07/23/2007) |
| 07/23/2007 | ●35 | MEMORANDUM by La Rosa Del Monte Express, Inc., La Rosa Del Monte Express (Chicago), LLC in support of motion to dismiss34 (Dolendi, David) (Entered: 07/23/2007) |
| 07/23/2007 | ●34 | MOTION by Defendants La Rosa Del Monte Express, Inc., La Rosa Del Monte Express (Chicago), LLC to dismiss *Plaintiff's Amended Complaint* (Dolendi, David) (Entered: 07/23/2007) |
| 07/12/2007 | ●33 | MINUTE entry before Judge Joan B. Gottschall :Motion by Defendants, La Rosa Del Monte Express, Inc. and La Rosa Del Monte Express (Chicago), Inc. for leave to file comprehensive memorandum of law in excess of 15 pages not to exceed 25 pages 31 is granted. Mailed notice (rj, ) (Entered: 07/13/2007) |
| 07/03/2007 | ●32 | NOTICE of Motion by David M Dolendi for presentment of motion for leave to file31 before Honorable Joan B. Gottschall on 7/12/2007 at 09:30 AM. (Dolendi, David) (Entered: 07/03/2007) |
| 07/03/2007 | ●31 | MOTION by Defendants La Rosa Del Monte Express, Inc., La Rosa Del Monte Express (Chicago), LLC for leave to file *brief in excess of 15 pages* (Dolendi, David) (Entered: 07/03/2007) |
| | | |

| 06/21/2007 | ●30 | FIRST AMENDED complaint by Software For Moving, Inc. against La Rosa Del Monte Express, Inc., La Rosa Del Monte Express (Chicago), LLC; (Exhibits). (vkd, ) (Entered: 06/28/2007) |
|---|---|---|
| 06/21/2007 | ●29 | MINUTE entry before Judge Joan B. Gottschall : Motion hearing held on 6/21/2007. Plaintiff, Software for Moving, Inc. motion for leave to file first amended complaint at law 24 is granted. Defendants to answer or otherwise plead on or before 7/23/2007. Response is due by 8/6/2007. Reply in support is due by 8/13/2007. Motion by Defendants La Rosa Del Monte Express, Inc., La Rosa Del Monte Express (Chicago), LLC to dismiss Plaintiff's Complaint 10 is denied as moot. Briefing schedule as to Plaintiff's motion to strike portions of the declaration of John T.A. Rosenthal (Document 12), 26 and Plaintiff's motion to stay arbitration 25 is as follows: Responses due by 7/23/2007. Replies due by 8/6/2007. Ruling by mail. Mailed notice (rj, ) (Entered: 06/25/2007) |
| 06/08/2007 | ●28 | NOTICE of Motion by Francis J. Leyhane, III for presentment of motion to amend/correct, motion for relief24, motion to strike, motion for relief26, motion to stay25 before Honorable Joan B. Gottschall on 6/21/2007 at 09:30 AM. (Leyhane, Francis) (Entered: 06/08/2007) |
| 06/08/2007 | ●27 | NOTICE by Software For Moving, Inc. re MOTION by Plaintiff Software For Moving, Inc. to amend/correct complaint1 *Motion for Leave to File First Amended Complaint*24, MOTION by Plaintiff Software For Moving, Inc. to strike declaration, 12 *Motion to Strike Portions of the Declaration of John T.A. Rosenthal*26, affidavit in opposition21, response to motion23, affidavit in opposition22, MOTION by Plaintiff Software For Moving, Inc. to stay *Motion to Stay Arbitration*25 *Notice of Filing* (Leyhane, Francis) (Entered: 06/08/2007) |
| 06/08/2007 | ●26 | MOTION by Plaintiff Software For Moving, Inc. to strike declaration, 12 *Motion to Strike Portions of the Declaration of John T.A. Rosenthal* (Leyhane, Francis) (Entered: 06/08/2007) |
| 06/08/2007 | ●25 | MOTION by Plaintiff Software For Moving, Inc. to stay *Motion to Stay Arbitration* (Leyhane, Francis) (Entered: 06/08/2007) |
| 06/08/2007 | ●24 | MOTION by Plaintiff Software For Moving, Inc. to amend/correct complaint1 *Motion for Leave to File First Amended Complaint* (Leyhane, Francis) (Entered: 06/08/2007) |
| 06/08/2007 | ●23 | RESPONSE by Software For Moving, Inc. to MOTION by Defendants La Rosa Del Monte Express, Inc., La Rosa Del Monte Express (Chicago), LLC to dismiss *Plaintiff's Complaint*10 (Leyhane, Francis) (Entered: 06/08/2007) |
| 06/08/2007 | ●22 | AFFIDAVIT by Plaintiff Software For Moving, Inc. in Opposition *Declaration of Philip Zukowsky* (Leyhane, Francis) (Entered: 06/08/2007) |
| 06/08/2007 | ●21 | AFFIDAVIT by Plaintiff Software For Moving, Inc. in Opposition *Declaration of Shlomo Kogos* (Leyhane, Francis) (Entered: 06/08/2007) |
| | | |

| 05/11/2007 | ◐18 | MINUTE entry before Judge Jeffrey Cole :Magistrate Judge Status hearing held on 5/11/2007 and continued to 7/26/2007 at 09:00 a.m. Court hereby stays discovery other than discovery on jurisdictional matter if necessary until further order of Court. Counsel for defendant John T.A. Rosenthal may appear by phone for the next status hearing. Mailed notice (yp, ) (Entered: 05/11/2007) |
| 05/10/2007 | ◐20 | MINUTE entry before Judge Wayne R. Andersen :Defendant's motion to dismiss10 is entered and briefed as follows: Responses due by 6/8/2007. Replies due by 6/22/2007. Ruling will be made by mail.Mailed notice (tsa, ) (Entered: 05/22/2007) |
| 05/09/2007 | ◐19 | EXECUTIVE COMMITTEE ORDER: Case reassigned to Judge Joan B. Gottschall for all further proceedings. Signed by the Executive Committee on 5/9/07. (vkd, ) (Entered: 05/16/2007) |
| 05/08/2007 | ◐17 | REPORT of Rule 26(f) Planning Meeting by La Rosa Del Monte Express, Inc., La Rosa Del Monte Express (Chicago), LLC (Dolendi, David) (Entered: 05/08/2007) |
| 05/04/2007 | ◐16 | APPLICATION for Leave to Appear Pro Hac Vice on behalf of Defendants La Rosa Del Monte Express, Inc., La Rosa Del Monte Express (Chicago), LLC by John T.A. Rosenthal; Order entered granting leave by Judge Wayne R. Andersen. Filing fee $50.00 paid, receipt number 10339369. (vkd, ) (Entered: 05/07/2007) |
| 05/04/2007 | ◐15 | APPLICATION for Leave to Appear Pro Hac Vice on behalf of Defendants La Rosa Del Monte Express, Inc., La Rosa Del Monte Express (Chicago), LLC by Kevin J. Harrington; Order entered granting leave by Judge Wayne R. Andersen. Filing fee $50.00 paid, receipt number 10330370. (vkd, ) (Entered: 05/07/2007) |
| 04/30/2007 | ◐14 | MINUTE entry before Judge Jeffrey Cole : Initial status hearing set for 5/11/2007 at 9:00 A.M. before Magistrate Judge Cole in Courtroom 1838. All parties are directed to refer to Judge Cole's "Initial Joint Status Report Procedures", found on "www.ilnd.uscourts.gov" and to comply with its directives before appearing at the status hearing. Mailed notice by judge's staff. (srb,) (Entered: 05/03/2007) |
| 04/30/2007 | ◐13 | NOTICE of Motion by David M Dolandi for presentment of motion to dismiss10 before Honorable Wayne R. Andersen on 5/10/2007 at 09:00 AM. (Dolandi, David) (Entered: 04/30/2007) |
| 04/30/2007 | ◐12 | DECLARATION of John T. A. Rosenthal regarding motion to dismiss10 by La Rosa Del Monte Express, Inc., La Rosa Del Monte Express (Chicago), LLC For Lack of Subject Matter Jurisdiction (Attachments: # 1 Index of Exhibits# 2 Exhibit A# 3 Exhibit B# 4 Exhibit C# 5 Exhibit D# 6 Exhibit E# 7 Exhibit F# 8 Exhibit G# 9 Exhibit H# 10 Exhibit I) (Dolandi, David) (Entered: 04/30/2007) |
| 04/30/2007 | ◐11 | MEMORANDUM by La Rosa Del Monte Express, Inc., La Rosa Del Monte Express (Chicago), LLC in support of motion to dismiss10 (Dolandi, David) (Entered: 04/30/2007) |

| 04/30/2007 | ❽10 | MOTION by Defendants La Rosa Del Monte Express, Inc., La Rosa Del Monte Express (Chicago), LLC to dismiss *Plaintiff's Complaint* (Dolandi, David) (Entered: 04/30/2007) |
|---|---|---|
| 04/27/2007 | ❽9 | ATTORNEY Appearance for Defendants La Rosa Del Monte Express, Inc., La Rosa Del Monte Express (Chicago), LLC by Catalina Jean Sugayan (Sugayan, Catalina) (Entered: 04/27/2007) |
| 04/27/2007 | ❽8 | ATTORNEY Appearance for Defendants La Rosa Del Monte Express, Inc., La Rosa Del Monte Express (Chicago), LLC by David M Dolandi (Dolandi, David) (Entered: 04/27/2007) |
| 04/26/2007 | ❽7 | Pursuant to Local Rule 72.1, this case is hereby referred to the calendar of Magistrate Judge Jeffrey Cole for the purpose of holding proceedings related to: discovery supervision.(tsa, )Mailed notice. (Entered: 04/26/2007) |
| 04/16/2007 | ❽6 | COPYRIGHT information by Software For Moving, Inc. (rp, ) (Entered: 04/16/2007) |
| 04/16/2007 | ❽ | MAILED copyright report to Registrar, Washington, D.C. (rp, ) (Entered: 04/16/2007) |
| 04/05/2007 | ❽5 | SUMMONS Issued as to Defendants La Rosa Del Monte Express, Inc., La Rosa Del Monte Express (Chicago), LLC. (vkd, ) (Entered: 04/09/2007) |
| 04/05/2007 | ❽ | E-MAILED Copyright Request form to plaintiffs' counsel per phone conversation on 4/5/2007. (rp, ) (Entered: 04/05/2007) |
| 04/03/2007 | ❽4 | (Court only) RECEIPT regarding payment of filing fee paid on 4/3/2007 in the amount of $350.00, receipt number I07 22148. (rp, ) (Entered: 04/05/2007) |
| 04/03/2007 | ❽3 | ATTORNEY Appearance for Plaintiff Software For Moving, Inc. by Francis J. Leyhane, III. (rp, ) (Entered: 04/05/2007) |
| 04/03/2007 | ❽2 | CIVIL Cover Sheet. (rp, ) (Entered: 04/05/2007) |
| 04/03/2007 | ❽1 | COMPLAINT filed by Software For Moving, Inc.; Jury Demand.(rp, ) (Entered: 04/05/2007) |

# FILED

Our File No: 2341

APR - 3 2007
APR. 3, 2007
**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

STATE OF ILLINOIS )
) SS.
COUNTY OF COOK )

*JH*

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SOFTWARE FOR MOVING, INC., )
a New York Corporation, )
)
Plaintiff, )
)
vs. )
)
LA ROSA DEL MONTE EXPRESS, )
INC., a New York Corporation, and )
LA ROSA DEL MONTE EXPRESS )
(CHICAGO), LLC, an Illinois Limited )
Liability Company, )
)
Defendants. )

**07CV1839**

**JUDGE ANDERSEN**

**MAG. JUDGE COLE**

**JURY DEMANDED BY PLAINTIFF**

## COMPLAINT AT LAW

NOW COMES the Plaintiff SOFTWARE FOR MOVING, INC., a New York Corporation

(SFM), by and through its attorneys, LEYHANE & ASSOCIATES, LTD., and for its Complaint

against Defendants LA ROSA DEL MONTE EXPRESS, INC., a New York Corporation (LA

ROSA), and LA ROSA DEL MONTE EXPRESS (CHICAGO), LLC, an Illinois Limited

Liability Company (LA ROSA CHICAGO), states as follows:

## JURISDICTION

1. This court has jurisdiction over the copyright claims asserted in this action pursuant

to 28 U.S.C.A. §1338(a) and 28 U.S.C.A. §1331 and supplemental jurisdiction over all related

claims pursuant to 28 U.S.C.A. §1367(a).

## THE PARTIES

2.      As its name suggests, SFM develops and licenses software for moving companies. It is the successor in interest to SAFEGUARD COMPUTER SERVICES, INC.

3.      LA ROSA is a moving company, operating at 11 different locations in the Unitied States and internationally.  Its Chicago office is located at 4834 W.  Armitage Ave., Chicago, Illinois 60639.

4.      On information and belief, LA ROSA CHICAGO is an entity set up by LA ROSA, is involved in LA ROSA operations based in Chicago, and benefits from the software that SFM developed and licensed to LA ROSA.

## THE RELATIONSHIPS BETWEEN THE PARTIES

5.      LA ROSA is a long-time customer of SFM.  In 1999 LA ROSA entered into a contract with SFM for the licensing of a windows-based program, Moving Manager for Windows.  A true and correct copy of that contract is attached as Exhibit A 1999 Software Licensing Agreement).  On information and belief, LA ROSA continues to use Moving Manager for Windows in its operations.

6.      LA ROSA CHICAGO never had a direct contract with SFM.  It is a subsidiary or sister corporation, affiliated or associated with LA ROSA and included within the definition of Licensee under the 1999 contract attached hereto as Exhibit A.

7.      Before using Moving Manager for Windows, LA ROSA licensed a DOS-based program from SFM.  On information and belief, LA ROSA continues to use the DOS-based program in its operations.

8.      In approximately December 2004 LA ROSA entered into an agreement with SFM to license a web-based version of the Moving Manager Program (Web Program) with certain modifications that suited LA ROSA'S business needs.  Over the next 20 months, SFM worked on completing the Web Program. At various times during this period SFM worked closely with Steven Dalzell, Roberto Rodriguez and Hiram Rodriguez of LA ROSA on completion of the Web Program. On information and belief, Mr. Dalzell was the Chief Operating Officer of LA ROSA, Mr. Roberto Rodriguez was an officer of LA ROSA, and Mr. Hiram Rodriguez was an officer and the owner of LA ROSA. Although SFM understood that LA ROSA would be preparing a written agreement regarding the Web Program, no such agreement was presented to SFM with the exceptions noted hereafter in Paragraph 10.  The oral agreement between SFM and LA ROSA provided that LA ROSA would pay a total of $295,000 for the Web Program, with the final payment due no later than the completion of the program by SFM.

9.      LA ROSA went "live" with the Web Program in or about August 2006, necessarily meaning that it deemed the Web Program complete as of that time.

10.      At around the same time as LA ROSA went "live" with the Web Program, Mr. Dalzell requested that SFM sign a "9/11 Agreement" (a copy of which is attached hereto and incorporated herein as Exhibit B) and a chart listing the maintenance fees that LA ROSA was obligated to pay SFM during the next seven years. A "9/11 Agreement" is an agreement in which the licensor of software agrees to place the source code in escrow and made available to the licensee in the event something happens to the licensor.  The agreement between SFM and LA ROSA regarding the required maintenance fees is set forth on Exhibit C.

11.      In 2006, LA ROSA, through Mr. Dalzell requested that SFM further customize the Web Program with certain additional enhancement features (Enhancement Features) that had

- 3 -

not been available when the parties entered into the agreement for the Web Program. These features were a Google Map feature and address validation feature. LA ROSA agreed to pay an additional $60,000 for this further customization. Under the oral agreement for this set of enhancements (Enhancement Feature Agreement), LA ROSA did have a right to accept or reject the enhancements within a reasonable time. If LA ROSA rejected the Enhancement Features – and did not use them – LA ROSA would not be obliged to pay for this additional $60,000 amount.

## COUNT I

### *Copyright Infringement*

1. - 6. Paragraphs 1 through 6 of this Complaint are restated as Paragraphs 1 through 6 of Count I.

7.    Paragraph 2 of the 1999 Software Licensing Agreement provides in its entirety as follows:

> 2. TERM OF LICENSE; TERMINATION; CONSIDERATION.
> (a) This license begins on the date that the Software is installed at any of Licensee's sites. This license is perpetual unless its terms are breached by Licensee. (b) This license in its entirety and as to all Software licensed shall terminate immediately if Licensee does not comply with these terms, including but not limited to, non payment of licensing fees or maintenance fees, unauthorized copying or use of the Software, or unauthorized modification of the Software. (c) Upon termination, the license shall cease, and all copies of the Software shall be returned to Licensor or destroyed, at Licensor's option. Use of the Software is not authorized after termination by Licensor and shall be considered by Licensor to be

- 4 -

> infringement of its intellectual property w rights, in addition to any other rights that may accrue to Licensor by such use. Payment of fees shall be made pursuant to the Schedules attached hereto at Exhibit "A" and "C."

8. LA ROSA stopped paying the maintenance fees required by the 1999 Software Licensing Agreement on or around August 1, 2006.

9. Thereafter, SFM, through its attorney, demanded payment of the maintenance fees. LA ROSA did not respond to the demand.

10. In January 2007 SFM notified LA ROSA that, due to non-payment of the required maintenance fees it would terminate the License Agreement unless it received payment. LA ROSA did not respond to this notification by paying the overdue fees.

11. SFM then issued a cease and desist letter to LA ROSA on February 12, 2007 telling LA ROSA that its license to use that SFM product was terminated for failure to pay required maintenance fees and that LA ROSA was required to either return the software or destroy the software or return it to SFM. A true and correct copy of this letter is attached as Exhibit D.

12. SFM followed up its cease and desist letter with a second letter (attached hereto as Exhibit E) again informing LA ROSA that it needed to stop using the software and to destroy or return it to SFM.

13. On information and belief, LA ROSA continues to use the SFM software that is the subject of the 1999 Software Licensing Agreement.

14. Between the time that LA ROSA stopped paying the required maintenance payments and the date on which SFM told LA ROSA to stop using its software, SFM responded

to all maintenance requests from LA ROSA regarding the Moving Manager for Windows program.

15.     Under 17 U.S.C.A. §504, SFM is entitled to its losses from the infringement on its software and the profits earned by Defendants which are attributable to the use of SFM's copyrighted software products.

16.     Under 17 U.S.C.A. §505, SFM is entitled to reasonable attorney's fees and its full costs in prosecuting this action.

WHEREFORE, Plaintiff SOFTWARE FOR MOVING, INC. respectfully prays that judgment be entered in its favor and against Defendants LA ROSA DEL MONTE EXPRESS, INC. and LA ROSA DEL MONTE EXPRESS (CHICAGO), LLC for profits wrongfully derived from the use of SFM software and for the attorney's fees and costs incurred by SFM in bringing this action.

## COUNT II

### Breach of Contract
### 1999 Software Licensing Agreement

1. - 6. Paragraphs 1 through 6 of this Complaint are incorporated herein as Paragraphs 1 through 6 of Count II.

7.     Under the 1999 Software Licensing Agreement, LA ROSA was required to pay maintenance fees to SFM during the time it used SFM's software programs.

8.     LA ROSA breached this contract when it stopped paying the maintenance fees required by the 1999 Software Licensing Agreement on or around August 1, 2006.

WHEREFORE, Plaintiff SOFTWARE FOR MOVING, INC. respectfully prays that judgment be entered in its favor and against Defendants LA ROSA DEL MONTE EXPRESS,

INC. and LA ROSA DEL MONTE EXPRESS (CHICAGO), LLC in an amount that will fairly compensate SFM for Defendants' breach of contract. Plaintiff prays for such other or further relief as it may be entitled to including the recovery of its costs incurred in bringing this action.

## COUNT III

### Breach of Contract
### Web Program Agreement

1. - 10.       Paragraphs 1 through 10 of this Complaint are incorporated herein as Paragraphs 1 through 10 of Count III.

11.       Even though LA ROSA took the web-based program live in or about August 2006, it has failed to pay SFM $52,500 of the $295,000 due upon completion and deliver of the Web Program.

12.       Once the Web Program was complete, LA ROSA became obliged to pay the monthly maintenance fee heretofore alleged.

13.       LA ROSA has never paid any maintenance fees for the period of time that it used the Web Program despite several demands for payment.

WHEREFORE, Plaintiff SOFTWARE FOR MOVING, INC. respectfully prays that judgment be entered in its favor and against Defendant LA ROSA DEL MONTE EXPRESS, INC. in an amount that will fairly compensate SFM for Defendant's breach of contract. Plaintiff prays for such other or further relief as it may be entitled to including the recovery of its costs incurred in bringing this action.

## COUNT IV

### Breach of Contract
### Enhancement Features Agreement

- 7 -

1. - 11    Paragraphs 1 through 11 of this Complaint are incorporated herein as Paragraphs 1 through 11 of Count IV.

13.    On December 22, 2006, after completion and delivery of the Enhancement Features provided for in the separate Enhancement Features Agreement, counsel for SFM sent an email to counsel for LA ROSA offering a fresh opportunity for LA ROSA "to reject these enhancements and not have any payment obligations." A true and correct copy of this email is attached as Exhibit F. LA ROSA did not respond to this offer.

WHEREFORE, Plaintiff SOFTWARE FOR MOVING, INC. respectfully prays that judgment be entered in its favor and against Defendant LA ROSA DEL MONTE EXPRESS, INC. in the amount of $60,000 for the breach of the Enhanced Features Agreement. Plaintiff prays for such other or further relief as it may be entitled to including the recovery of its costs incurred in bringing this action.

### JURY DEMAND

Plaintiff demands a trial by jury in this matter.

One of the Attorneys for
SOFTWARE FOR MOVING, INC.

Attorney No. 3127365
FRANCIS J. LEYHANE III
LEYHANE & ASSOCIATES, LTD.
205 West Randolph Street
Suite 1320
Chicago, Illinois 60606
(312) 223-0811

# Exhibit A

X AS I
Final
3/24/95
**ORIGINAL**

# SOFTWARE LICENCING AGREEMENT

WHEREAS, SAFEGUARD COMPUTER SERVICES, INC., a New York Corporation, maintaining offices at 24-16 Bridge Plaza South, Long island City, New York, 11101 (Hereinafter "Licensor") represents and warrants that it is the owner of all right, title and interest in and to the software applications and source code otherwise known and referred to for purposes of identification as the "MOVING MANAGER FOR WINDOWS" (Hereinafter "the Software"); and

WHEREAS, LA ROSA DEL MONTE EXPRESS, INC., a New York, Corporation with world headquarters located at 1133-35 Tiffany Street, Bronx, New York 10459, and primarily engaged in the moving, shipping and storage industry, its subsidiaries, sister corporations, partners, subsidiaries, affiliates and sub-licensees and/or associates, (Hereinafter collectively "Licensee"), desires to utilize the software in its day to day national and international operations; and

WHEREAS, Licensee desires certain specific and individual modifications to the software requiring additional code capable of meeting the unique and specific needs of licensee's national and international day to day operations; and

WHEREAS, Licensor warrants that the software may be modified so as to accommodate licencee's unique needs and further agrees to modify the software to include the said specific and

individual modifications to the software and to cause to have
written the necessary additional software code capable of meeting
the said unique and specific needs of licensee's national and
international day to day operations;

NOW, THEREFORE, in consideration for valuable consideration,
receipt of which is hereby acknowledged (the terms and conditions
of which are set out at **Exhibit "A"**), Licensor agrees to develop
and/or modify its software and grants Licensee a license to use
its software pursuant to the terms which follow:

## TERMS AND CONDITIONS OF SOFTWARE USE

1.  SCOPE OF LICENSES.  (a) Licensee is hereby licensing the
use of Licensor's MOVING MANAGER software (the "Software"), and
thus to make copies of Licensor's copyrighted materials, on
Licensee's computer systems.  (b) This license is limited to use
of the Software at the site(s) specified and only for purposes of
Licensee's own moving and shipping enterprise.  (c) This license
grants Licensee the right to make one back up copy of the
Software per site which may be stored away from the site(s) or at
such location(s) as Licensor may determine at its convenience and
for the sole purpose of making said backup copy immediately
available if and when the need for its utilization should arise.

2.   TERM OF LICENSE; TERMINATION; CONSIDERATION.   (a) This
license begins on the date that the Software is installed at any
of Licensee's sites.  This license is perpetual unless its terms
are breached by Licensee. (b) This license in its entirety and as
to all Software licensed shall terminate immediately if Licensee
does not comply with these terms, including but not limited to,
non payment of licensing fees or maintenance fees, unauthorized
copying or use of the Software, or unauthorized modification of
the Software.  (C) Upon termination, the license shall cease, and
all copies of the Software shall be returned to Licensor or
destroyed, at Licensor's option.  Use of the Software is not
authorized after termination by Licensor and shall be considered
by Licensor to be infringement of its intellectual property
rights, in addition to any other rights that may accrue to
Licensor by such use.  Payment of fees shall be made pursuant to
the Schedules attached hereto at **Exhibit "A"** and **"C"**

3.   GUARANTEE OF ORIGINAL DEVELOPMENT. Licensor warrants
that all modifications developed hereunder will be of original
development by Licensor, and will be specifically developed for
the fulfillment of this Agreement and will not infringe upon or
violate any patent, copyright, trade secret or other proprietary
right of a third party, and Licensor will indemnify and hold
Licensee harmless from and against any loss, cost, liability or
expense (including reasonable counsel fees) arising out of any

Page 3 of 10

breach or claimed breach of this warranty; Licensor shall assist
Licensee in the expeditious transfer of licenses and/or title for
use of perpetual licenses to Licensee for such non-original
components unless Licensee already has title or license to any
non-original components used hereunder.

4.   PATENT COPYRIGHT OR TRADE SECRET INDEMNITY. Licensor
will defend at its expense, any action brought against Licensee
or Licensor that is based on a claim that the systems developed
and furnished hereunder infringes a United States patent or
copyright or trade secret or other proprietary right of a third
party and will pay the loss, damages, and reasonable attorney
fees finally incurred by or awarded against Licensee in any such
actions which are attributable to any such claim, but such
defense and payments are conditioned on the following: (1)
Licensee promptly notifies Licensor in writing of the claim, and
(2) Licensor shall have sole control of the defense of any such
action on such a claim and all negotiations for its settlement or
infringement of a United States patent or copyright, Licensee
shall permit Licensor, at its option and expense, either to·
procure for Licensor the right to continue using the Software, to
replace or modify the same so that they become non-infringing, or.
to accept Licensee's return of the Software and grant Licensee a
refund of monies paid under this Agreement.   Licensor shall have
no obligation to defend Licensee or to pay costs, damages, or

attorney's fees for any claim based upon (1) use of other than an unaltered configuration of the Software if such infringement would have been avoided by the use of an unaltered configuration of the Software, or the combination, operation, or use of any Software furnished hereunder with non-Licensor programs or data if such infringement would have been avoided by the combination, operation, or use of the Software with other programs or data.

5.   INDEMNIFICATION INCLUSION OF COSTS. Each party hereunder agrees to indemnify the other against all losses, costs, expenses (including reasonable counsel fees) which may occur by reason of the breach of any term, provision, warranty or representation contained herein and/or in connection with the enforcement of this Agreement or any provision thereof.



6.   MODIFICATION OF SOFTWARE.  Licensee shall not modify nor authorize modification of any of the Software in any manner without the express written permission of Licensor. The parties agree that Licensor possess certain unique knowledge of Licensee's business enterprise making Licensor the unique candidate for the development of the software for Licensee, and therefore, this Agreement may not be assigned by Licensor without the prior written consent (not to be unreasonably withheld) of Licensee.



7.   NOTICES OF INTELLECTUAL PROPERTY RIGHTS. Licensee shall assure that Licensor notices of intellectual property (e.g., copyright notices contained in the software) shall remain within the Software.

8. __WARRANTIES; LIMITATIONS ON LIABILITY__. LICENSOR DOES NOT GUARANTEE THAT THE SOFTWARE WILL MEET "ALL REQUIREMENTS" OF CUSTOMER'S BUSINESS OR THAT THE SOFTWARE WILL INTERFACE WITH THE SOFTWARE AND HARDWARE WITH WHICH CUSTOMER INTENDS IT TO OPERATE WITH TO UTILIZE THE SOFTWARE.  LICENSOR WARRANTS THAT THE SOFTWARE, AS MODIFIED, HAS BEEN DEVELOPED FOR OPERATION UNDER THE WINDOWS OPERATING SYSTEM.  Licensor warrants that the software shall be Y2K compliant pursuant to separate agreement incorporated by reference and attached hereto at **Exhibit "B"**.

9. __CONFIDENTIALITY AND SECURITY OF THE SYSTEMS__. Each party acknowledges that all material and information which has or will come into the possession and knowledge of each other in connection with this Agreement or the performance hereof, consists of confidential and proprietary data, whose disclosure to or use by third parties will be damaging, both parties, therefore, agree to hold such material and information in strictest confidence, not to make use thereof other than for the performance of this Agreement, to release it only to employees requiring such information, and not to release or disclose it to any other party.

10. __RIGHTS TO NEW IDEAS AND CODE__. The parties acknowledge that performance of this Agreement will result in the development of new proprietary and secret concepts, methods, techniques, processes, adaptations and ideas. The parties agree that the same

shall belong solely to Licensee without regard to the origin thereof and that Licensor will not, other than in the performance of the Agreement, without the express written consent, which will not be unreasonably withheld, sell, make use or disclose same to any person, group, company or corporation that competes with Purchaser's business as defined herein.

11.   ASSIGNMENTS.  This Agreement and its rights, duties and obligations may not be assigned by Licensee without the prior written consent of Licensor.

12.   COPYING.  All intellectual property, including but not limited to copyright, patents and trade secrets, in the Software, except for improvements, revisions, and modifications made at specific request of Licensee, shall remain the property of Licensor.  Licensee agrees that, except as directed by Licensor and this Agreement, it will not at any time during or after the term of this Agreement allow unauthorized copying of the Software.

13.   INJUNCTIVE RELIEF.  Licensee acknowledges that unauthorized use or copying of the Software will give rise to irreparable injury to Licensor, and leave Licensor inadequately compensable in damages.  Accordingly, Licensor may seek and obtain injunctive relief against the breach or threatened breach of license terms, in addition to any other legal remedies which may be available.  Licensee further acknowledges and agrees that

the covenants contained herein are necessary for the protection of Licensor's legitimate business interests and are reasonable in scope and content.

14. NOTICE OF NON AFFILIATION. Licensor is not affiliated in any way with Safeguard Business Systems, Inc.; which is a totally separate and independent company that neither sponsors nor endorses Licensor's activities.

15. TRAINING. Licensor shall provide the operational manuals and onsite training to Licensee's designated personnel as provided for under the maintenance provisions stated herein and set out at **Exhibit "C"**.

16. MAINTENANCE. Maintenance schedules and fees shall be in compliance with the terms and conditions made a part hereof and incorporated by reference as set out at **Exhibit "C"**.

17. LICENSOR'S EMPLOYEES ASSIGNED TO THIS AGREEMENT. In the event that Licensor uses contractors or subcontractors, Licensor specifically assumes all responsibilities for such contractors or subcontractors as if they were employees of Licensor, and Licensor shall indemnify and hold harmless Licensee for the acts of such contractors or subcontractors. Licensor-assigned employees may be rejected by Licensee should Licensee determine unilaterally that any employee's services are unsatisfactory. Upon written notification from Licensee regarding an unsatisfactory employee, Licensor shall remove such employee

immediately and replace the removed employee with an employee acceptable to Licensee as soon as possible. Under no circumstances shall Licensor's employees be considered employees of or agents of Licensee.

18. FORCE MAJEURE. Neither party shall be responsible for delays or failures on performance resulting from acts beyond the control of such party. Such acts shall include but not be limited to acts of God, strikes, lockouts, riots, acts of war, epidemics, government regulations superimposed after the fact, fire, communication line failures, power failures, earthquakes or other disasters.

19. COMPLIANCE WITH ALL LAWS - PARTIAL INVALIDITY. Each party agrees that it will perform its obligations hereunder in accordance with all applicable laws, rules and regulations now or hereafter in effect. If any item or provision of this Agreement shall be found to be illegal or unenforceable, them notwithstanding, this Agreement shall remain in full force and effect and such term or provision shall be deemed stricken.

20. ALL AMENDMENTS IN WRITING. No amendments to this Agreement shall be effective unless they are in writing and signed by duly authorized representatives of both parties.

21. HEADINGS NOT CONTROLLING. Headings used in this Agreement are for reference purposes only and shall not be deemed a part of this Agreement.

23. SURVIVAL BEYOND COMPLETION. The provisions of this

Page 9 of 10

Agreement and the Software developed under this Agreement as well as confidentiality, indemnification, use, assignment, reproduction, warranty, ownership, return or destruction shall survive the delivery of the software and the payment of associated charges.

22.   GOVERNING LAW.   This Agreement shall be governed by all the laws of the State of New York, including its conflicts of laws rules and/or common law precedent.


IN WITNESS WHEREOF the parties have executed this Agreement this __ day of March, 1999.


Safeguard Computer Services, Inc.
By: Shlomo Kogos, President


La Rosa Del Monte Express, Inc.
By: Hiram Rodriguez, President

## EXHIBIT "A"

### FEES AND MILESTONES

Licensee agrees to pay $83,000.00 (Hereinafter "the
Licensing Fee") to Licensor for the perpetual License to use the
software at sixty-three (63) sites as defined in **Exhibit "C"**, the
Software Maintenance Agreement. Licensee further agrees to pay
an additional $1,000.00 licensing fee for each additional site
which is added in excess of the said sixty-three sites provided
for herein. The Licensing Fee shall be paid in accordance with
five (5) developmental phases (Hereinafter "Milestones"). At the
completion of the fifth (5th) Milestone, Licensor agrees to have
sufficiently developed the software, so as to have Licensee's New
York Headquarters operations, and all other national and
international business locations up and running. Licensor
possesses unique knowledge of the moving and storage industry and
as such fully recognizes that Licensee's activity and operations
will increase dramatically and in proportion to an increased
surge in demand for Licensee's services beginning with the spring
season. In order for Licensee to adequately meet said demand,
and to reduce the likelihood of any disruption in Licensee's
operations, Licensor agrees to exert his good faith and best
efforts to complete the said fifth (5th) Milestone by on or
before June 15, 1999. Each individual Milestone in the
developmental process shall hereinafter be designed, approved,

Page 1 of 7

programmed, delivered, tested, and accepted pursuant to the
schedule and procedures listed below.

**I. As for each Milestone:**

(a) Licensor shall consult with Licencee's employee, Miriam
Rodriguez (Hereinafter "the Systems Specialist") for the purpose
of designing programming specifications and in conjunction with
Licensor's controller, Ricardo Colon, for the purposes of
financial data merging. Specifications shall contain those items
provided by her and the controller to Licensor.

(b) Once Licensor has designed , developed, and completed a
Milestone, they will be delivered to the Systems Specialist
together with their operation performance estimates (Hereinafter
"OPE") and the Software Manual (Hereinafter "the SM") for every
Milestone in the specifications provided by the Systems
Specialist. The OPE and SE shall indicate any limitations on the
software at that time, e.g. size, and the estimated response
times for on-line programs or runtimes for the batch programs so
as to adequately prepare her for said limitations and to reduce
the likelihood of negatively impacting on Licensee's day to day
operations.

(c) Upon receipt of said completed Milestones, the Systems
Specialist will either approve or disapprove the completion of

said Milestone. Such approval will be at the sole discretion of Purchaser, but said approval or disapproval shall be made in good faith and an approval shall not be unreasonably withheld.

(i) When, upon approval of the completed Milestones, in conjunction with the Systems Specialist, an Acceptance test for the Milestone and its individual specifications has been performed and completed satisfactorily to the Systems Specialist, said milestone is to be deemed completed

(ii) If the Systems Specialist does not approve said Milestone, Licensor and the Systems Specialist will again consult and restart the procedure as stated above.

(d) (i) The Systems Specialist in conjunction with Licensor shall develop an acceptance test. After the creation of the Acceptance Test, the parties shall also create the Milestone Agreement. The Milestone Agreement shall contain the following: The functional names of the Milestones to be completed, the date of delivery, and the understanding that time is of the essence.

(ii) The Milestone Agreement will also have the following items attached thereto:

The Functional Specifications which is a narrative explanation of the operation of the programs, containing Exhibits of all screen and reports. The Programming Specifications to be used by the programmers creating the software for Purchaser. The Functional Specifications for the software after customization.

Page 3 of 7

File layouts for all files used or created in that Milestone, including record and/or data field descriptions. The operation performance estimates. The Acceptance Tests, including test data.

(iii)  The Milestones Agreement will make explicit and express reference to this agreement, and the date this agreement was executed.

(iv)  Upon the signing of the Milestones Agreement by both the Systems Specialist and Licensor, Licensee shall pay to Licensor pursuant to the following fixed payment schedule:

Upon completion of the first Milestone (Installation) Twenty Thousand Dollars ($20,000.00) payable in two installments.  First installment of $15,000.00 with a second installment of $5,000.00 within a week of the first installment.

  A.  Upon completion of the Second Milestone through and including the Fourth Milestone, licensor shall be paid $14,000.00 per completed Milestone.
  B.  Upon completion of the Fifth Milestone, Licensor shall receive a payment of $8,000.00
  C.  A final payment of $13,000.00 shall be paid to Licensor 60 days subsequent to the completion of the Fifth Milestone.

(v) Licensor will then proceed to write the programming for that Milestone.

(e)  (i)  On the delivery date specified in the Phase Agreement, Licensor shall deliver to Licensee the completed programming for that Milestone.

(ii)   Failure by Licensor to deliver the completed
programming by the end of the 30 days after the delivery date
specified in the Milestone Agreement, will entitle Licensee to a
10 percent reduction in the cost of the entire Milestone payment
for each 30 day period in which Licensor is late.  The delivery
date may only be modified by written amendment to the Milestone
Agreement signed by both parties.

(iii)   In the event that Licensor fails to deliver the
completed Milestones three (3) months after the original delivery
date, and the delivery date was not modified, Licensee may cancel
payment for that Milestone in its entirety, said payment to be
held in escrow, minus any penalties accrued after the final
completion of all Milestones.

(ii)   If the programs fail to perform the acceptance tests,
the parties shall follow the following procedure:

(1) Licensee shall immediately notify Licensor by telephone
of the failure of the test. Licensee shall then confirm such
notice by sending written confirmation of the failure plus proper
documentation of said failure to Licensor by certified mail,
return receipt requested.

(2) Licensor shall immediately begin reprogramming to remedy
the failure.

(3)   If the failure cannot be remedied within five (5) days,
the penalty provision shall take effect.

Page 5 of 7

(4)   After Licensee has used all the completed Milestone programs successfully for a period of 90 consecutive days of uptime and without failure, Licensee shall pay to Licensor the final $13,000.00 payment, along with any monies held in escrow as provided herein.   Nothing in this procedure shall be construed to prevent several Milestones to be commenced simultaneously.

**II. SYSTEMS UPTIME.**

(A)   System uptime, is defined as follows: Licensor warrants that the software shall be functionally operational within the specifications of each Milestone no less than 96 percent  of any consecutive ninety (90) day period beginning with the start of acceptance.  Any time that the system is not functionally operational due to hardware failure or other causes beyond Licensor's design or control shall be excluded from  this computation.

(B)   In the event of a failure of any program during the ninety (90) day period, Licensee shall notify Licensor by telephone immediately. Licensee will confirm said telephone notice by serving Licensor with written notice, with proper documentation of said error or failure, sent certified mail, return receipt requested.

(C)   Upon notification of the failure, Licensor may begin

Page 6 of  7

immediate repairs of said failures. If the failure is remedied before the expiration of 36 cumulative days, including previous failures, within that Phase, the required ninety (90) day uptime period will continue to run.


IN WITNESS WHEREOF, each of the parties hereto has causes this Agreement to be duly executed as of the date below.

Safeguard Computer Services, Inc.
By: Shlomo Kogos, President


La Rosa Del Monte Express, Inc.
By: Hiram Rodriguez, President

## EXHIBIT "B"

## (Y2K) YEAR 2000 COMPLIANCE

A. Licensor represents and warrants that the Software is designed to be used prior to, during, and after the calendar year 2000 A.D., and that the Software, together with its modifications will operate during each such time period without error relating to date data, specifically including any error relating to, or the product of, date data which represents or references the new century and millennium.

1. Without limiting the generality of the foregoing, Licensor further represents and warrants:

2. That the Software has been designed to ensure year 2000 compatibility, including, but not limited to, date data century and millennium recognition, calculations which accommodate same century and multi-century formulas and date values, and date data interface values that reflect the new century;

3. That the software includes "year 2000 capabilities". For the purposes of this Agreement, "year 2000 capabilities" means that the Software: (a) will manage and manipulate data involving dates, including single century formulas and multi-century formulas, and will not cause an abnormally ending scenario within the application or generate incorrect values or invalid results involving such dates; and, (b) provides that all date-related user interface functionalities and data fields include the indication of century; and, (c)

Page 1 of 3

provides that all date-related data interface functionalities include the indication of a new century and millennium.

    4.   The term "Year 2000 Compliance Warranty" shall mean, collectively, the warranties set forth herein.

WARRANTY TERM  The Year 2000 Compliance Warranty set forth herein shall begin as of the date of the License Agreement and end on the date after January 1, 2000, subsequent to which the Software has operated without a breach of the Year 2000 Compliance Warranty for a consecutive thirteen month period.

WAIVER OF LIMITATION OF LIABILITY.  Any provisions of the License Agreement which tend to limit or eliminate the liability of either party shall have no application with respect to the Year 2000 Compliance Warranty set forth herein.

LIMITATION ON USE/LIMITATION ON LIABILITY. Licensee agrees that it shall not modify the Software in any manner which would affect the performance of the Software in such a manner as to cause it to fail to meet the Year 2000 Compliance Warranty set forth herein. There shall be no liability on the part of Licensor for any failure of the Software to conform to the Year 2000 Compliance Warranty to the extent that any such failure is attributable to a modification of the Software by Licensee. Licensee agrees to independently confirm its hardware Y2K compliance and Licensor shall not be liable under the present agreement for Y2K compliance arising out of hardware incompatibility or Y2K non compliance.

PROVISIONS OF COMPLIANCE AGREEMENT CONTROLLING. In the event of any conflict or apparent conflict between the terms and conditions of the License Agreement and the terms and conditions of this Compliance Agreement, the terms and conditions of this Compliance Agreement shall control. Except to the extent otherwise set forth herein, the terms and conditions of the License Agreement shall remain in full force and effect.

ENTIRE AGREEMENT. This Compliance Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof. This Compliance Agreement shall not be modified except by later written agreement signed by both parties.

IN WITNESS WHEREOF the parties have executed this Agreement this ___ day of March, 1999.

Safeguard Computer Services, Inc.
By: Shlomo Kogos, President

La Rosa Del Monte Express, Inc.
By: Hiram Rodriguez, President

## EXHIBIT "C"

### SOFTWARE MAINTENANCE AGREEMENT

1.    Licensee shall pay Licensor a fee of $35.00 per month per user (Hereinafter "Station") as a maintenance charge until that time when Licensee, upon 90 day notice of cancellation to Licensor, elects to no longer utilize the software and same is returned and surrendered to Licensor.  Licensee's right of election to surrender as provided herein will become effective only after the minimum twenty-four months period of performance and use of the software and maintenance services and shall not be deemed a waiver of licensee's rights to new ideas and code as provided for under Paragraph "10" of the "Software Licensing Agreement", which covenant shall survive the completion of all other obligations under the agreement.

2.    Licensee shall begin payment of said maintenance fees upon successful installation and use of the software per each particular Station as the software becomes installed per location.

3.    It is contemplated by and between the parties that Licensee's operations shall in total contain sixty-three (63) stations spread out over Licensee's various national and international offices.

4.    Upon receipt and installation of the Software, Miriam Rodriguez (Hereinafter for purposes of identification "Systems Specialist"), in conjunction with Licensor, shall schedule

training sessions with the various locations wherein Licensee will utilize the Software in its day to day operations.

    5.    Payment of maintenance fees shall commence subsequent to training per location.  Once training has been successfully completed per location and the Software's utilization has commenced, maintenance fees per site of said location will become due and payable.

    6.    It is further understood by and between the parties that the Systems Specialist will exert her good faith best efforts to complete all installations and training within 160 days from the date of the completed five (5) Milestone, as (defined under **Exhibit "A"**), fully operational software, and that Licensor will exert his good faith best efforts to cooperate with the Systems Specialist to achieve this goal.  It is further understood by and between the parties that at the expiration of the said 160 day period, maintenance fees for all 63 stations will become due and owing regardless of whether or not all locations and stations have been trained and/or begun to utilize the Software, unless a delay may be attributable to the acts or omissions of Licensor or to occurrences covered under the Licensing Agreement's Force Majeure.  Licensor shall work in coordination with the Systems Specialist to assure that all locations have been properly trained and prepared to utilize the Software in their day to day operations.

    7.    In the event that Licensor is required be Licensee to

visit any of Licencee's offices situated outside of the state of
New York (Hereinafter the New York Office" and "Foreign
Office(s)" respectively) in order to perform the maintenance
services provided for herein, including training, Licensee shall
provide for the reasonable costs of lodging and meals.  In the
event that Licensor is required to remain at any foreign office
in excess of five (5) days, Licensee in addition to providing the
reasonable costs for lodging and meals, shall further compensate
Licensor with an additional $400.00 daily compensation for each
and every day exceeding the said five (5) day period.

      7.   Payment of maintenance under the schedule herein above
stated shall entitle Licensee to the following for the life of
the perpetual license for the New York and Foreign Offices:

    a.   Unlimited customer support hotline

    b.   On site training.

    c.   Daily data merging of all information compiled
from each location and its respective sites.

    d.   Continual software product updates, including but
no limited to, user interface improvements,
cosmetic improvements, Windows operating systems
upgrades, upgrades and enhancements making the
software conform to advances in hardware
technologies, data enhancements, training aids,
operational manuals, system backups, on site
technical support, seamless technical support, and

correction of software and Windows operating
systems bugs.

e.  Forms modifications, including modifications for
reports, letters, BOL and Order Service, Outside
agency forms and reports, Tariff Charges,
accounting department data merging and use, ddata
flow, and customization.

8.  Failure of Licensor to abide by the terms of this
maintenance agreement shall be deemed a substantial breach and
shall result in a waiver by Licensor of all Maintenance fees for
the period of said breach.

IN WITNESS WHEREOF the parties have executed this Agreement
this __ day of March, 1999.

_____
Safeguard Computer Services, Inc.
By: Shlomo Kogos, President

_____
La Rosa Del Monte Express, Inc.
By: Hiram Rodriguez, President

# Exhibit B

## ADDENDUM TO
## SOFTWARE DEVELOPMENT & LICENSE AGREEMENT

I y agreement of both parties, in the event the "Developer" has ceased operations, is no longer a
viable operating entity or due to a situation, emergency or otherwise, in which the "Developer" is
unable to provide contracted services, upgrades or maintenance as required for the continued and
uninterrupted use of "Software X" by "Client", the "Client" shall contact the agent of the
"Developer", Mr. Philip Zukowsky of the firm Chernesky, Heyman & Kress, P.L.L. located at
) Courthouse Plaza SW, Suite 1100, Dayton, Ohio 45402, telephone 937-449-2800. Mr.
Zukowsky will provide to "Client" at no additional charge (1) a copy of the source code for the
program, (2) the right to make changes as necessary to source code for the continued and forever
use of the program and (3) access to contact information of other companies utilizing "Moving
Manager Web Version" so they may assist each other in maintaining the source code. The
"Client" will be granted full ownership of the source code with the limitation that it cannot resell
it to others or allow to be installed at or used by a non-related entity of "Client".

Software for Moving, Inc.
By:   Shlomo Kogos, President

La Rosa Del Monte Express, Inc.
By:   STEVEN DMEELL
      VP OPERATIONS

17

# Exhibit C

## MAINTENANCE SCHEDULE A

| Year | Monthly per user | Total Monthly @ 70 users |
|------|------------------|--------------------------|
| First Year | $55 | $3,850 |
| Second Year | $55 | $3,850 |
| Third Year | $55 | $3,850 |
| Fourth Year | $60 | $4,200 |
| Fifth Year | $65 | $4,550 |
| Sixth Year | $70 | $4,900 |
| Seventh Year | $80 | $5,600 |

By:

Software for Moving, Inc.
Shlomo Kogos, President

By:

La Rosa Del Monte Express, Inc.
STEVEN DRECIKE
VP OPERATIONS

6

# Exhibit D

```
7005 1160 0001 5419 7380
```

Postage $
Certified Fee
Return Receipt Fee
(Endorsement Required)
Restricted Delivery Fee
(Endorsement Required)
Total Postage & Fees $

PAZ

Postmark
Here

POST OFFICE
FEB 12 2007
USPS
WILMINGTON OH 45402

Sent To
La Rosa Del Monte
Street, Apt. No.;
or PO Box No. 1133-35 Tiffany Street
City, State, ZIP+4
Bronx, NY 10459

PS Form 1800  June 2002        See Reverse for Instructions

**HEYMAN & KRESS P.L.L.**
ATTORNEYS AT LAW

JRTHOUSE PLAZA SW, SUITE 1100
DAYTON, OHIO 45402
P.O. BOX 3808
DAYTON, OHIO 45401-3808
937/449-2800

WRITER'S E-MAIL
paz@chklaw.com

WEBSITE
www.chklaw.com

February 12, 2007

<u>VIA CERTIFIED MAIL</u>
<u>RETURN RECEIPT REQUESTED</u>

Mr. Hiram Rodriquez
La Rosa Del Monte
1133-35 Tiffany Street
Bronx, NY 10459

RE: **CEASE AND DESIST**

Dear Mr. Rodriguez:

THIS IS TO INFORM YOU THAT DUE TO THE NONPAYMENT OF LICENSE FEES BY LA ROSA DEL MONTE EXPRESS, INC. ("LA ROSA"), SOFTWARE FOR MOVING, INC. ("SFM") ORDERS LA ROSA AND ITS AFFILIATES TO IMMEDIATELY CEASE AND DESIST, AS OF THE DATE OF THIS LETTER, FROM ANY FURTHER USE OF THE MOVING MANAGER SOFTWARE PROGRAM WHICH IS OWNED BY AND COPYRIGHTED TO SFM.

Effective as of the date of this letter we expect La Rosa to take the following steps to prevent any violation of SFM's copyrights in the Moving Manager software program (the "Program"): (i) immediate cessation to the use of the Program by La Rosa, its branches, its affiliates, employees and contractors; (ii) the immediate destruction, or return to SFM, of all copies of the Program that La Rosa, its branches, its affiliates, employees and contractors may have in their possession; (iii) prevention of third parties from copying the Program in any manner, including object code, source code and functionality; (iv) informing all employees of La Rosa that they are to stop using the Program; and (v) providing SFM with a certification in writing within seven (7) days of the date of this letter that the aforementioned steps to protect SFM's rights in the Program have been taken..

I trust that La Rosa will comply with its obligation to prevent against the illegal use of SFM's property. However, La Rosa should be aware that SFM will seek legal redress, including injunction and monetary damages, against La Rosa in the event that there is any use of the Program after the date of this letter by any of La Rosa, its branches, its affiliates, or their

{00288794.DOC;}

**CHERNESKY, HEYMAN & KRESS P.L.L.**
La Rosa Del Monte
Page 2
February 12, 2007

employees and contractors. Also, SFM will seek legal redress, including injunction and monetary damages, against any La Rosa branch, affiliate, employee and/or contractor who uses the program after the date of this letter. In addition, SFM will seek legal redress, including injunction and monetary damages, against any third party contractor who is allowed access to copy the Program. Consider yourself warned of SFM's intentions in the event you violate the copyrights of the Program by any further use of the Program or by allowing its codes or functionality to be copied.

Also be aware that SFM is not waiving the payment of the $86,000 in license fees due and owing from La Rosa and its affiliates for the period prior to the date of this letter, and it will take whatever actions are necessary to collect the money owed to it.

Thank you.

Very truly yours,

Philip A. Zukowsky

cab:20715
Enclosures
cc:    Mr. Shlomo Kogos

# Exhibit E

# CHERNESKY, HEYMAN & KRESS P.L.L.

ATTORNEYS AT LAW

10 COURTHOUSE PLAZA SW, SUITE 1100
DAYTON, OHIO 45402
P.O. BOX 3808
DAYTON, OHIO 45401-3808
937/449-2800

WRITER'S DIRECT DIAL
937/449-2842

WRITER'S FAX
937/463-4947

WRITER'S E-MAIL
paz@chklaw.com

WEBSITE
www.chklaw.com

February 26, 2007

Mr. Hiram Rodriquez
La Rosa Del Monte
1133-35 Tiffany Street
Bronx, NY 10459

La Rosa Del Monte
c/o Harrington, Ocko & Monk
81 Main Street, Ste 215
White Plains, NY 10601

Gentlemen:

On February 15, 2007 we delivered a letter to you at La Rosa Del Monte Express, Inc. ("La Rosa") instructing you to immediately stop using software belonging to Software for Moving, Inc. ("SFM"), and to provide SFM with a written certification within seven days that you had stopped using all such programs. A copy of that Cease and Desist letter is enclosed. Because you have not complied with the request for certification that you had stopped using SFM's programs, I must assume that La Rosa, its branches, its affiliates, its employees and contractors are continuing to use these programs in violation of SFM's copyrights in the programs.

This is to inform you that we intend to seek legal redress against each of La Rosa, its branches, its affiliates, its employees and contractors who are continuing to use the program. I want to inform you that the federal laws for copyright infringement are very strict. Under these laws, the copyright owner is entitled to recover not only the actual damages it suffered as a result of the infringement, but also the profits of the infringer that relate to the use of the software. In addition, the burden is placed on the infringer to show what portion of its profits are not attributable to the use of the software. See 17 United States Code §504.

{00289785.DOC;}

**CHERNESKY, HEYMAN & KRESS P.L.L.**
La Rosa Del Monte
Page 2
February 26, 2007

You have been advised of the seriousness of any continued infringement on SFM's copyrights. Choose wisely.

Very truly yours,

Philip A. Zukowsky

cab:20715
Enclosure
cc: Mr. Shlomo Kogos

# Exhibit F

## Philip Zukowsky

**From:**   Philip Zukowsky

**Sent:**   Friday, December 22, 2006 2:01 PM

**To:**   rsocko@homlegal.com

**Cc:**   shlomo kogos

**Subject:** La Rosa Del Monte

Software for Moving is seeking to collect the following amounts from La Rosa Del Monte.

1. Dos and Window Program. The annual maintenance/license fee for the use of this program is $58,000. La Rosa has paid the annual fee in full through 2005. For 2006 it has only paid $30,000 (which payment was made in August 2006 although the annual fee is required to be paid in January). Thus, for 2006 La Rosa owes $28,000. If La Rosa chooses to use SFM's Dos and Window Program in 2007, an additional $58,000 is due on January 1, 2007.

2. New SFM Program. La Rosa contracted with SFM to use SFM's new server based program and for customization work to the program. The agreement called for payments to SFM of $295,000 payable no later than when La Rosa started to use the program, and an annual maintenance/license fee of $40,000 commencing in the month when La Rosa began using the program. La Rosa went live with the program in August. La Rosa has paid $242,500 of the $295,000 upfront money, so $52,500 of the upfront money is due and owing. There is also five months of fees due and owing, an additional $16,666. If La Rosa chooses to use SFM's New Program in 2007, an additional $40,000 is due on January 1, 2007.

In addition, two other fees were agreed to by La Rosa and SFM. The first was payment for enhancements to the program that La Rosa could accept or reject. An example of this is the Google Map feature that SFM added to the program. These total cost for these programs is $60,000. La Rosa can reject these enhancements and not have any payment obligations (in which case SFM will remove them from the program), or it can accept some or all of these enhancements. However, we want La Rosa to let us know their position on these as soon as possible.

The other fee was for "manifest planning" requested by La Rosa. This was additional customization requested by La Rosa. These are not optional like the fee discussed above. The total cost of the manifest planning enhancements is $50,000. However, SFM would be willing to discuss discounting this amount if La Rosa brings its account up to date promptly.

I look forward to hearing from you next week regarding this matter. However, as you can tell time is of the essence as beginning January 1, 2007, there will be additional fees dues from La Rosa. Best Regards and Merry Christmas to you.

Philip A. Zukowsky
Chernesky, Heyman & Kress P.L.L.
paz@chklaw.com
937-449-2842
937-449-2821 (fax)

====================================================
CIRCULAR 230 DISCLOSURE
====================================================
PURSUANT TO RECENTLY-ENACTED US TREASURY DEPT. REGULATIONS, WE ARE NOW REQUIRED TO ADVISE YOU THAT, UNLESS OTHERWISE EXPRESSLY INDICATED, ANY FEDERAL TAX ADVICE CONTAINED IN THIS COMMUNICATION, INCLUDING ATTACHMENTS AND ENCLOSURES, IS NOT INTENDED OR WRITTEN TO BE USED, AND MAY NOT BE USED, FOR THE PURPOSE OF (i) AVOIDING TAX-RELATED PENALTIES UNDER THE INTERNAL REVENUE CODE OR (ii) PROMOTING, MARKETING OR RECOMMENDING TO ANOTHER PARTY ANY TAX-RELATED MATTERS ADDRESSED HEREIN.

====================================================
PRIVILEGED AND CONFIDENTIALITY NOTICE
====================================================
THIS ELECTRONIC TRANSMISSION (AND/OR THE DOCUMENTS ACCOMPANYING IT) MAY CONTAIN CONFIDENTIAL INFORMATION

BELONGING TO THE SENDER WHICH IS PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE. THE INFORMATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE, COPYING, DISTRIBUTION, ELECTRONIC STORING, OR THE TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS OF THIS INFORMATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE IMMEDIATELY NOTIFY THE SENDER BY REPLY E-MAIL AND IMMEDIATELY DELETE THIS RECORD FROM YOUR COMPUTER SYSTEM.
=================================================

# CIVIL COVER SHEET

The civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**(a) PLAINTIFFS**

Software for Moving, Inc., a New York Corporation

**DEFENDANTS**

La Rosa Del Monte Express, Inc., a New York Corporation, and La Rosa Del Monte Express (Chicago), LLC, an Illinois Limited Liability Company

**(b)** County of Residence of First Listed Plaintiff   New York State
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Francis J. Leyhane III, Leyhane & Associates, Ltd., 205 West Randolph Street, Suite 1320, Chicago, Illinois  60606, (312) 223-0811

## 07CV1839
## JUDGE ANDERSEN
## MAG. JUDGE COLE

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [■] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZ...** (For Div...)

| | | | | |
|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated or Principal Place of Business In This State | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business In Another State | 5  5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6  6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 610 Agriculture | 422 Appeal 28 USC 158 | 400 State Reapportionment |
| 120 Marine | 310 Airplane | 362 Personal Injury— | 620 Other Food & Drug | 423 Withdrawal | 410 Antitrust |
| 130 Miller Act | 315 Airplane Product | Med. Malpractice | 625 Drug Related Seizure | 28 USC 157 | 430 Banks and Banking |
| 140 Negotiable Instrument | Liability | 365 Personal Injury— | of Property 21 USC 881 | | 450 Commerce/ICC Rates/etc. |
| 150 Recovery of Overpayment & Enforcement of Judgment | 320 Assault, Libel & Slander | Product Liability | 630 Liquor Laws | **PROPERTY RIGHTS** | 460 Deportation |
| 151 Medicare Act | 330 Federal Employers' | 368 Asbestos Personal Injury Product | 640 R.R. & Truck | [■] 820 Copyrights | 470 Racketeer Influenced and Corrupt Organizations |
| 152 Recovery of Defaulted Student Loans (excl. vet.) | Liability | Liability | 650 Airline Regs. | 830 Patent | 480 Consumer Credit |
| 153 Recovery of Overpayment of Veteran's Benefits | 340 Marine | **PERSONAL PROPERTY** | 660 Occupational Safety/Health | 840 Trademark | 490 Cable/Satellite TV |
| 160 Stockholders' Suits | 345 Marine Product Liability | 370 Other Fraud | 690 Other | | 810 Selective Service |
| 190 Other Contract | 350 Motor Vehicle | 371 Truth in Lending | | **SOCIAL SECURITY** | 850 Securities/Commodity/Exch. |
| 195 Contract Product Liability | 355 Motor Vehicle Product Liability | 380 Other Personal Property Damage | **LABOR** | 861 HIA (1395ff) | 875 Customer Challenge 12 USC 3410 |
| 196 Franchise | 360 Other Personal Inj. | 385 Property Damage Product Liability | 710 Fair Labor Standards Act | 862 Black Lung (923) | 891 Agricultural Acts |
| | | | 720 Labor/Mgmt. Relations | 863 DIWC/DIWW (405(g)) | 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | 864 SSID Title XVI | 893 Environmental Matters |
| 210 Land Condemnation | 441 Voting | 510 Motions to Vacate | 730 Labor/Mgmt.Reporting & Disclosure Act | 865 RSI (405(g)) | 894 Energy Allocation Act |
| 220 Foreclosure | 442 Employment | Sentence | 740 Railway Labor Act | **FEDERAL TAX SUITS** | 895 Freedom of Information Act |
| 230 Rent Lease & Ejectment | 443 Housing/ Accommodations | Habeas Corpus: | 790 Other Labor Litigation | 870 Taxes (U.S. Plaintiff or Defendant) | 900 Appeal of Fee Determination Under Equal Access to Justice |
| 240 Torts to Land | 444 Welfare | 530 General | 791 Empl. Ret. Inc. | | 950 Constitutionality of State Statutes |
| 245 Tort Product Liability | 445 ADA — Employment | 535 Death Penalty | Security Act | 871 IRS—Third Party 26 USC 7609 | 890 Other Statutory Actions |
| 290 All Other Real Property | 446 ADA — Other | 540 Mandamus & Other | | | |
| | 440 Other Civil Rights | 550 Civil Rights | | | |
| | | 555 Prison Condition | | | |

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- [■] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (Enter U.S. Civil Statute under which you are filing and write a brief statement of cause.)

Copyright claims under 17 U.S.C.A. sec. 501 et seq. and associated claims for breaches of written and oral contracts

**VII. PREVIOUS BANKRUPTCY MATTERS** (For nature of suit 422 and 423, enter the case number and judge for any associated bankruptcy matter perviously adjudicated by a judge of this Court. Use a separate attachment if necessary )

**VIII. REQUESTED IN COMPLAINT.**
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
- DEMAND $ > $300,000
- CHECK YES only if demanded in complaint: JURY DEMAND. [ ] Yes [ ] No

**IX. This case**
- [■] is not a refiling of a previously dismissed action.
- [ ] is a refiling of case number ____, previously dismissed by Judge ____

## FILED

DATE  April 3, 2007

SIGNATURE OF ATTORNEY OF RECORD

APR - 3 2007
APR. 3, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

JH

# U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
## ATTORNEY APPEARANCE FORM

NOTE: In order to appear before this Court an attorney must either be a member in good standing of this Court's general bar or be granted leave to appear *pro hac vice* as provided for by Local Rules 83.12 through 83.14.

**07CV1839**

**JUDGE ANDERSEN**

**MAG. JUDGE COLE**

In the Matter of

SOFTWARE FOR MOVING v.

LA ROSA DEL MONTE EXPRESS, et al

AN APPEARANCE IS HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY FOR:

PLAINTIFF SOFTWARE FOR MOVING, INC.

| | |
|---|---|
| NAME (Type or print) FRANCIS J. LEYHANE III | |
| SIGNATURE (Use electronic signature if the appearance form is filed electronically) s/ | |
| FIRM LEYHANE & ASSOCIATES, LTD | |
| STREET ADDRESS 205 W. RANDOLPH ST. / SUITE 1320 | |
| CITY/STATE/ZIP CHICAGO IL 60606 | |
| ID NUMBER (SEE ITEM 3 IN INSTRUCTIONS) 312-7365 | TELEPHONE NUMBER (312) 223 0811 |
| ARE YOU ACTING AS LEAD COUNSEL IN THIS CASE? | YES ☒ NO ☐ |
| ARE YOU ACTING AS LOCAL COUNSEL IN THIS CASE? | YES ☐ NO ☒ |
| ARE YOU A MEMBER OF THIS COURT'S TRIAL BAR? | YES ☒ NO ☐ |
| IF THIS CASE REACHES TRIAL, WILL YOU ACT AS THE TRIAL ATTORNEY? | YES ☒ NO ☐ |
| IF THIS IS A CRIMINAL CASE, CHECK THE BOX BELOW THAT DESCRIBES YOUR STATUS. | |
| RETAINED COUNSEL ☐        APPOINTED COUNSEL ☐ | |

FILED
APR 3 2007
APR - 3 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# United States District Court for the Northern District of Illinois

Case Number:              Assigned/Issued By:

Judge Name:                Designated Magistrate Judge:

---

## FEE INFORMATION

***Amount Due:***    ☐ $350.00    ☐ $39.00    ☐ $5.00

                   ☐ IFP       ☐ No Fee    ☐ Other _____

                   ☐ $455.00

Number of Service Copies _____      Date: _____

### (For Use by Fiscal Department Only)

Amount Paid: _____      Receipt #: _____

Date Payment Rec'd: _____      Fiscal Clerk: _____

---

## ISSUANCES

☐ Summons                     ☐ Alias Summons

☐ Third Party Summons         ☐ Lis Pendens

☐ Non Wage Garnishment Summons    ☐ Abstract of Judgment

☐ Wage-Deduction Garnishment Summons      _____

☐ Citation to Discover Assets            (Victim, Against and $ Amount)

☐ Writ _____
         (Type of Writ)

_____Original and _____ copies on _____ as to _____
                                 (Date)

_____

_____



United States District Court
Northern District of Illinois - Eastern Division
United States Courthouse
219 South Dearborn Street - Room 2010
Chicago, Illinois 60604

MICHAEL W. DOBBINS,
Clerk

Office of the Clerk

April 5, 2007

Francis J. Leyhane, III
Leyhane & Associates, Ltd.
Attorney at Law
205 West Randolph Street, Suite 1320
Chicago, IL 60606

**FILED**
APR 1 6 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Re: Software For Moving, Inc. v. La Rosa Del Monte Express, Inc. et al
USDC No. 07-cv-01839

Dear Counselor:

The documents you recently filed in connection with the above-captioned case have been received. Additional information is required for the completion of reports that are forwarded by this office to Washington, D.C.

The following additional information is required:

| COPYRIGHT REGISTRATION NUMBER | DATE OF COPYRIGHT | HOLDER OF COPYRIGHT |
|---|---|---|
| TX-4-426-709 | 10/19/90 | Safeguard Computer Services, Inc |
| | (published) | |
| | 4/16/97 | |
| | (registered) | |

Please provide this information within ten (10) days of today's date.

Sincerely yours,
Michael W. Dobbins, Clerk


By:   Roberto Perez
      Deputy Clerk

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 3.0
### Eastern Division

Software For Moving, Inc.

Plaintiff,

v.

La Rosa Del Monte Express, Inc., et al.

Defendant.

Case No.: 1:07−cv−01839
Honorable Wayne R. Andersen

## ORDER REFERRING A CIVIL CASE TO THE
## DESIGNATED MAGISTRATE JUDGE


Pursuant to Local Rule 72.1, this case is hereby referred to the calendar of Magistrate Judge Jeffrey Cole for the purpose of holding proceedings related to: discovery supervision.(tsa, )Mailed notice.


Dated: April 26, 2007

/s/ Wayne R. Andersen

United States District Judge

### U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
### ATTORNEY APPEARANCE FORM

NOTE: In order to appear before this Court an attorney must either be a member in good standing of this Court's general bar or be granted leave to appear *pro hac vice* as provided for by Local Rules 83.12 through 83.14.

In the Matter of                                          Case Number:  07CV1839

Software for Moving, Inc.,
v.
LA ROSA DEL MONTE EXPRESS, Inc., et al.

AN APPEARANCE IS HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY FOR:

Defendants:

LA ROSA DEL MONTE EXPRESS, INC, a New York Corporation, and LA ROSA DEL MONTE EXPRESS, LLC, an Illinois Limited Liability Company

| |
|---|
| NAME (Type or print)<br> David M. Dolendi |
| SIGNATURE (Use electronic signature if the appearance form is filed electronically)<br> s/  David M. Dolendi |
| FIRM<br><br> LORD, BISSELL & BROOK LLP |
| STREET ADDRESS<br> 111 S. Wacker Dr. |
| CITY/STATE/ZIP<br> Chicago, IL 60606 |

| ID NUMBER (SEE ITEM 3 IN INSTRUCTIONS)<br> 6277384 (Illinois) | TELEPHONE  NUMBER<br> (312) 443-0202 |
|---|---|

| | | | |
|---|---|---|---|
| ARE YOU ACTING AS LEAD COUNSEL IN THIS CASE? | YES ☐ | NO ✔ | |
| ARE YOU ACTING AS LOCAL COUNSEL IN THIS CASE? | YES ✔ | NO ☐ | |
| ARE YOU A MEMBER OF THIS COURT'S TRIAL BAR? | YES ☐ | NO ✔ | |
| IF THIS CASE REACHES TRIAL, WILL YOU ACT AS THE TRIAL ATTORNEY? | | YES ☐ | NO ✔ |

IF THIS IS A CRIMINAL CASE, CHECK THE BOX BELOW THAT DESCRIBES YOUR STATUS.

RETAINED COUNSEL ☐          APPOINTED COUNSEL ☐

# U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
## ATTORNEY APPEARANCE FORM

NOTE: In order to appear before this Court an attorney must either be a member in good standing of this Court's general bar or be granted leave to appear *pro hac vice* as provided for by Local Rules 83.12 through 83.14.

In the Matter of                                        Case Number:  07CV1839

Software for Moving, Inc.,
v.
LA ROSA DEL MONTE EXPRESS, Inc., et al.

AN APPEARANCE IS HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY FOR:

Defendants:

LA ROSA DEL MONTE EXPRESS, INC, a New York Corporation, and LA ROSA DEL MONTE EXPRESS, LLC, an Illinois Limited Liability Company

| |
|---|
| NAME (Type or print)<br> Catalina J. Sugayan |
| SIGNATURE (Use electronic signature if the appearance form is filed electronically)<br> s/  Catalina J. Sugayan |
| FIRM<br> **LORD, BISSELL & BROOK LLP** |
| STREET ADDRESS<br> 111 S. Wacker Dr. |
| CITY/STATE/ZIP<br> Chicago, IL 60606 |

| ID NUMBER (SEE ITEM 3 IN INSTRUCTIONS)<br> 06191764 (Illinois) | TELEPHONE  NUMBER<br> (312) 443-1839 |
|---|---|

| | | | |
|---|---|---|---|
| ARE YOU ACTING AS LEAD COUNSEL IN THIS CASE? | YES ☐ | NO ☑ | |
| ARE YOU ACTING AS LOCAL COUNSEL IN THIS CASE? | YES ☑ | NO ☐ | |
| ARE YOU A MEMBER OF THIS COURT'S TRIAL BAR? | YES ☑ | NO ☐ | |
| IF THIS CASE REACHES TRIAL, WILL YOU ACT AS THE TRIAL ATTORNEY? | YES ☐ | NO ☑ | |

| |
|---|
| IF THIS IS A CRIMINAL CASE, CHECK THE BOX BELOW THAT DESCRIBES YOUR STATUS.<br><br>RETAINED COUNSEL ☐        APPOINTED COUNSEL ☐ |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

-------------------------------------------------------------

**SOFTWARE FOR MOVING, INC.**, a New
York Corporation,

          **Plaintiff,**

         **v.**

**LA ROSA DEL MONTE EXPRESS, INC.**, a
**New York Corporation, and LA ROSA DEL
MONTE  EXPRESS (CHICAGO), LLC, an
Illinois Limited Liability Company,**

         **Defendants.**

-------------------------------------------------------------

**CASE NUMBER:  07 C 1839**

**Judge Wayne R. Andersen**

**Magistrate Judge Jeffrey Cole**

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendants, LA ROSA DEL MONTE EXPRESS, INC. ("La Rosa") and LA ROSA DEL

MONTE EXPRESS (CHICAGO), LLC ("La Rosa LLC", together with La Rosa, "Defendants"), by

and through their attorneys, Lord, Bissell & Brook LLP and Harrington, Ocko & Monk, LLP,

through the present motion, request this Court issue an Order dismissing the Complaint of Plaintiff,

SOFTWARE FOR MOVING, INC. ("SFM") for lack of subject matter jurisdiction as Plaintiff has

failed to allege registration of the copyright on which it bases its copyright claim.  Plaintiff's

remaining state law claims should be dismissed for lack of diversity between Plaintiff SFM, a New

York corporation and Defendant La Rosa, a New York corporation.

If the Court denies the relief requested, Defendants submit that the Court should stay

Plaintiff's claims against Defendants pending the resolution of the presently ongoing arbitration of

La Rosa's claims against Plaintiff pursuant to the arbitration provision in the parties' March 3, 2005

Software Development & License Agreement ("2005 Software Agreement"), and March 3, 2005

Maintenance Agreement ("2005 Maintenance Agreement"), and to compel Plaintiff to arbitrate its

claims with La Rosa and La Rosa LLC. In the alternative, the Court should transfer Plaintiff's action to the Southern District of New York, where there is personal jurisdiction over all of the parties to this action, and where all or almost all of the conduct giving rise to Plaintiff's claims actually took place.

The grounds for this motion to dismiss are more fully set forth in the accompanying memorandum of law, filed contemporaneously herewith and incorporated by reference herein.

Dated: April 30, 2007

Respectfully submitted,

LA ROSA DEL MONTE EXPRESS, INC. and
LA ROSE DEL MONTE EXPRESS
(CHICAGO), LLP

By: _____ s/ David M. Dolendi _____
        Catalina J. Sugayan, Esq.
        David M. Dolendi, Esq.
        LORD, BISSELL & BROOK LLP
        111 S. Wacker
        Chicago, IL 60606
        Tel. (312) 443.0202
        Fax: (312) 896.6202

        Kevin Harrington, Esq.
        John T.A. Rosenthal, Esq.
        HARRINGTON, OCKO & MONK, LLP
        81 Main Street, Suite 215
        White Plains, NY 10601
        Tel: (914) 686-4800
        Fax: (914) 686-4824

        Counsel for Defendants

## CERTIFICATE OF SERVICE

The undersigned herby certifies that the foregoing **MOTION TO DISMISS**, was served on the following:

| Francis J. Leyhane, III, Esq. | |
| Leyhane & Associates, Ltd. | |
| 205 West Randolph Street | |
| Suite 1320 | |
| Chicago, IL 60606 | |

via electronic mail and U.S. Mail on this 30th day of April, 2007.

  s/  David M. Dolendi
David M. Dolendi

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

-------------------------------------------------------------

SOFTWARE FOR MOVING, INC., a New
York Corporation,

      **Plaintiff,**

   v.

LA ROSA DEL MONTE EXPRESS, INC., a
New York Corporation, and LA ROSA DEL
MONTE EXPRESS (CHICAGO), LLC, an
Illinois Limited Liability Company,

      **Defendants.**

-------------------------------------------------------------

**CASE NUMBER: 07 C 1839**

**Judge Wayne R. Andersen**

**Magistrate Judge Jeffrey Cole**

---

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE PLAINTIFF'S COMPLAINT

---

Defendants, LA ROSA DEL MONTE EXPRESS, INC. ("La Rosa") and LA ROSA DEL

MONTE EXPRESS (CHICAGO), LLC ("La Rosa LLC", together with La Rosa, "Defendants"), by

and through their attorneys, Lord, Bissell & Brook LLP and Harrington, Ocko & Monk, LLP,

through the present motion, request this Court issue an Order dismissing the Complaint of Plaintiff,

SOFTWARE FOR MOVING, INC. ("SFM") for lack of subject matter jurisdiction as Plaintiff has

failed to allege registration of the copyright on which it bases its copyright claim.  Plaintiff's

remaining state law claims should be dismissed for lack of diversity between Plaintiff SFM, a New

York corporation and Defendant La Rosa, a New York corporation.

If the Court denies the relief requested, Defendants submit that the Court should stay

Plaintiff's claims against Defendants pending the resolution of the presently ongoing arbitration of

La Rosa's claims against Plaintiff pursuant to the arbitration provision in the parties' March 3, 2005

Software Development & License Agreement ("2005 Software Agreement"), and March 3, 2005

Maintenance Agreement ("2005 Maintenance Agreement"), and to compel Plaintiff to arbitrate its

claims with La Rosa and La Rosa LLC.  In the alternative, the Court should transfer Plaintiff's

action to the Southern District of New York, where there is personal jurisdiction over all of the

parties to this action, and where all or almost all of the conduct giving rise to Plaintiff's claims

actually took place.

## INTRODUCTION

Plaintiff, through the filing of its forum shopping Complaint, is attempting to use this Court

as a means by which to circumvent its contractual obligation to arbitrate the present dispute between

the parties in accordance with the 2005 Software and Maintenance Agreements entered into with La

Rosa.  In fact, a New York arbitration is already ongoing between La Rosa and SFM through the

American Arbitration Association regarding La Rosa's claims that SFM and Mr. Kogos (SFM"s

President) breached the 2005 Software and Maintenance Agreements by improperly obtaining

approximately $383,250 in payments made by La Rosa to SFM, pursuant to those Agreements and the 1999 Software Agreement. Indeed, SFM, through its counsel Philip Zukowsky, Esq., has already actively participated in that ongoing arbitration.

Despite its bald attempt to frustrate the ongoing arbitration by filing this action, Plaintiff's Complaint must be dismissed for lack of subject matter jurisdiction as Plaintiff has failed to allege that it has a registered copyright for either the 1999 or 2005 software. Without subject matter jurisdiction over Plaintiff's copyright claim, the Court cannot retain subject matter jurisdiction over Plaintiff's remaining claims because there is a lack of complete diversity; Plaintiff is a New York corporation, as is Defendant La Rosa. Thus, the Court must dismiss Plaintiff's entire Complaint for lack of subject matter jurisdiction.

Even if the Court were to retain jurisdiction over Plaintiff's claims, despite the lack of subject matter jurisdiction, the Court should stay Plaintiff's action and compel it to arbitrate this dispute in the proper forum; namely, before an AAA arbitrator in New York City pursuant to the arbitration clause in the parties' 2005 Software Agreement. Furthermore, although La Rosa LLC is not a signatory to the 2005 Software Agreement, under the Doctrine of Equitable Estoppel, SFM is required to arbitrate any and all disputes it has with La Rosa LLC as SFM's claims against La Rosa LLC and La Rosa are inextricably intertwined, as well as being grounded in the 2005 Software Agreement.

Finally, if the Court does not dismiss Plaintiff's action for lack of subject matter jurisdiction, or stay the action pending arbitration, the Court should transfer the action to the Southern District of New York as there is no material aspect of the parties' conduct that in any way touches the Northern District of Illinois. Indeed, all the evidence and witnesses are located in New York City, and almost all of the conduct at issue with regard to SFM and Defendants took place at La Rosa's

offices in New York City.  For these reasons and those more fully described blow, the Court should grant Defendants' motion.

## I.     THE ALLEGATIONS OF THE COMPLAINT.

As Plaintiff concedes in its Complaint, SFM is a New York corporation that develops and licenses software for moving companies; Plaintiff is also apparently a successor in interest to Safeguard Computer Services, Inc., itself, a New York corporation.  Plaintiff's Compl., at p. 1 and ¶2; Exh. "A", at ¶1.  According to the allegations in Plaintiff's Complaint, La Rosa is also a New York corporation with its headquarters located in New York City.  Plaintiff's Compl., Exh. "A", at ¶1.  La Rosa LLC is an Illinois entity.

According to the Complaint, in or about 1999, La Rosa entered into a Software Licensing Agreement with SFM regarding a DOS/Windows-based program (Moving Manager for Windows) (the "1999 Software Agreement") in order to facilitate La Rosa's moving business.  Plaintiff's Compl., at ¶5.  SFM never had a contract with La Rosa LLC regarding this software.  Plaintiff's Compl., at ¶6; Exh. "A".  SFM does not allege that it ever applied for or obtained a copyright registration with respect to the 1999 or 2005 software.

### A.     The 2005 Software Agreement.

In or about December 2004, La Rosa and SFM began negotiating an agreement whereby SFM would provide La Rosa with a web-based version of the Moving Manager program.  Plaintiff's Compl., at ¶8.  SFM had no contract with La Rosa LLC regarding this program.

On or about March 3, 2005, SFM entered into a written agreement with La Rosa to provide La Rosa with a web-based version of the Moving Manager software with certain modifications to meet La Rosa's specific business needs ("2005 Software Agreement").  Plaintiff's Compl., at ¶8; Exh. "B"; *see also* Declaration of John T.A. Rosenthal (Rosenthal Dec.), Exh. "A", February 12, 2007 Demand for Arbitration by La Rosa ("Arbitration Demand"), Exh. "B", at 1.  On or about

March 3, 2005, SFM and La Rosa also entered into a Maintenance Agreement with regard to the new web-based software ("2005 Maintenance Agreement"). Rosenthal Dec., Exh. "A"; Arbitration Demand, Exh. "C", at 1.[1]

The terms of the 2005 Software Agreement provided that La Rosa was to pay SFM $190,000 for development and delivery of the web-based software, and $105,000 as a license for use of the new software. Rosenthal Dec., 2005 Software Agreement, at §§4.1, 6.6. Under the terms of the Agreement, La Rosa was to pay SFM in installments upon the successful completion of each phase of the new software's development plan, and upon actual delivery of deliverables at that time. *Id.*, at §4.2. According to the specific provisions in the 2005 Software Agreement, La Rosa was not required to pay the installment payments if La Rosa disputed the invoices, or that the particular phase had been successfully completed. *Id.* Furthermore, La Rosa was not required to pay SFM the final 10% of the development fee ($19,000) until all of the deliverables had been provided by SFM, and La Rosa had used the new software successfully for a period of ninety (90) days without failure (the "Trial Period"). Until completion of the Trial Period, La Rosa was not required to pay SFM the final installment payment. *Id.*

As part of the 2005 Software Agreement, and in order to continue its business, La Rosa agreed to pay SFM a maintenance fee of $58,000 to continue to use the DOS/Windows-based software until the new web-based software was fully delivered. Rosenthal Dec., Exh. "A", 2005 Software Agreement, at §4.6. Under this provision, SFM was also required to maintain the current DOS/Windows-based software for La Rosa as provided for in the 1999 Software Agreement. *Id.*

Under the 2005 Software Agreement, either party could terminate the Agreement, in whole or in part, if the other party failed to perform a material obligation under the Agreement. Rosenthal Dec., 2005 Software Agreement, at §12.1. Furthermore, if the 2005 Software Agreement was

---

[1]    These documents are incorporated by reference in Plaintiff's Pleadings. Compl., at ¶¶8-10; Exhs. "B", "C". Fed.R.Civ.P. 10(c); *Venture Assoc. Corp. v. Zenith P. Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

4

terminated by La Rosa due to SFM's default or material breach, La Rosa had the right to demand SFM return all monies paid to SFM under the Agreement. *Id.*, at §12.2. In addition, if SFM defaulted or materially breached the 2005 Software Agreement, La Rosa had the right to continue use of the DOS/windows-based software, and had the right to require that SFM continue to provide maintenance for that software. *Id.*, at §12.2. Furthermore, even if the contract was terminated by SFM, La Rosa had the right to continue to use the 1999 software, and to require SFM to maintain such software. *Id.,* at §12.4.

Under the express terms of the 2005 Software Agreement, SFM specifically agreed to arbitrate, "any dispute or controversy arising out of, relating to or in connection with the interpretation, validity, construction, performance, breach or termination of" the 2005 Software Agreement, and that such binding arbitration would be held in Westchester County, New York, in accordance with the AAA rules. Rosenthal Dec., 2005 Software Agreement, at §13.2. Furthermore, SFM agreed that venue for any dispute would be "exclusively in the County of Westchester", New York. *Id.*, at §13.13 (emphasis added).

### B. The 2005 Maintenance Agreement.

Along with the 2005 Software License Agreement, SFM entered into a Maintenance Agreement with La Rosa concerning the new web-based software. Rosenthal Dec., Exh. "A", 2005 Maintenance Agreement. Under the 2005 Maintenance Agreement, SFM was required to maintain the new web-based software. In return, La Rosa was to pay SFM a yearly maintenance fee of $46,200 pursuant to Schedule "A" of the Maintenance Agreement. Plaintiff's Compl., Exh. "C"; 2005 Maintenance Agreement, at p. 6. Payment of the maintenance fee was not to begin until completion of the Trial Period. *Id.*, at §3. In the event of a default by SFM for failure to perform its material obligations, La Rosa was entitled to withhold payment and maintenance fees owed until the default was cured, if at all. *Id.,* at §8.

Under the 2005 Maintenance Agreement, like the 2005 Software Agreement, SFM was required to arbitrate "any dispute or controversy arising out of, relating to, or in connection with the interpretation, validity, construction, performance, breach or termination of this agreement." *Id.*, at §18. The arbitration was to be conducted exclusively in Westchester County, New York, under the American Arbitration Association rules. *Id.* Furthermore, in the event that a party to the agreement required immediate injunctive relief, either La Rosa or SFM could obtain such relief through the appropriate application to the Supreme Court of the State of New York in Westchester County. *Id.*, at §18. The parties agreed that venue would be <u>exclusively</u> in the County of Westchester, New York. *Id.*, at §19.

### C. La Rosa And SFM Dispute Whether SFM Fulfilled All Of Its Obligations Under The 2005 Software Agreement.

Pursuant to the 2005 Software Agreement, once the software was complete, La Rosa would test the software to confirm that it was indeed complete and fully functional. La Rosa was then not required to pay SFM until the <u>successful</u> conclusion of the Trial Period; some ninety (90) days later; and only if the Trial Period proved successful.

As admitted in Plaintiff's Complaint, SFM and La Rosa entered into a "9/11 Agreement", as part of La Rosa's use of the new web-based software, as an addendum last page to the 2005 Software Agreement. Plaintiff's Compl, at ¶10; Exh. "B". Indeed, the "9/11 Agreement" is entitled, "<u>Addendum</u> to Software Development & License Agreement." *Id.* (emphasis added). Furthermore, as indicated in Plaintiff's Complaint, the maintenance payments that would be required of La Rosa for use of the new web-based software were described in the 2005 Maintenance Agreement executed by the parties. Plaintiff's Compl., Exh. "C".

### D. SFM Fails To Make Delivery Of All Deliverables.

As alluded to in Plaintiff's Complaint, in or about December 2006, the parties came to an impasse with regard to whether or not SFM had completed all of its obligations under the 2005

Software Agreement, and whether SFM was entitled to all of the development, license or maintenance fees under the new Agreements. Plaintiff's Compl., at ¶13; Exh. "F". Plaintiff concedes that La Rosa has already paid SFM $243,000, even though not required to do so under the terms of the 2005 Software Agreement. Plaintiff's Compl., at p. 7, ¶11.

### E. La Rosa Initiates An Arbitration Under The 2005 Software Agreement.

Pursuant to §13.12 of the 2005 Software Agreement, La Rosa initiated a Demand for Arbitration on or about February 12, 2007 with the American Arbitration Association. Rosenthal Dec., Exh. "A". In its Demand for Arbitration, La Rosa asserted various claims against SFM and its President Shlomo Kogos, including breach of contract, unjust enrichment, tortious interference with business advantage, and civil conspiracy. Rosenthal Dec., Exh. "A", Demand for Arbitration. La Rosa's Demand for Arbitration was served on SFM and Shlomo Kogos at SFM's office address as set forth in the 2005 Software Agreement, as well as on counsel for SFM and Mr. Kogos, Philip Zukowsky of Chernesky Heyman & Kress, P.L.L. Rosenthal Dec., Exh. "B", copy of U.S. Post Office Domestic Return Receipt.

On or about February 21, 2007, Ms. Kimberly F. Claxton of AAA (Case Manager for the Arbitration No. 19 117 00027 07) issued a letter to counsel for La Rosa and counsel for SFM (Philip A. Zukowsky) regarding La Rosa's Demand for Arbitration. Rosenthal Dec., Exh. "C". In her letter, Ms. Claxton confirmed that SFM and Mr. Kogos had until March 8, 2007 to answer or otherwise move with regard to the arbitration. Rosenthal Dec., Exh. "C".

On or about February 27, 2007, Philip A. Zukowsky, counsel for SFM and Mr. Kogos, sent a letter to Ms. Claxton of AAA concerning the arbitration. While objecting to jurisdiction, Mr. Zukowsky indicated that SFM and Mr. Kogos would proceed with the arbitration as long as "the arbitrator will first focus on the jurisdiction issue". Rosenthal Dec., Exh. "D".

On March 2, 2007, La Rosa through counsel submitted a letter to the AAA disputing the allegations contained in Mr. Zukowsky's February 26, 2007 letter. Rosenthal Dec., Exh. "E".

On March 6, 2007, counsel for La Rosa and counsel for SFM (Mr. Zukowsky) participated in a conference call with Ms. Claxton of AAA. At that time, Ms. Claxton indicated that SFM had until March 16th in which to file an answer or counterclaim in the arbitration. Rosenthal Dec., at ¶19.

On or about March 16, 2007, SFM and Mr. Kogos (through Mr. Zukowsky) filed an objection to jurisdiction with AAA with respect to La Rosa's Demand for Arbitration. Rosenthal Dec., Exh. "F". On or about March 21, 2007, counsel for La Rosa filed a response to Mr. Zukowsky's March 16, 2007 objection to jurisdiction. Rosenthal Dec., Exh. "G". In this response, counsel for La Rosa reiterated its opinion that jurisdiction was an issue for the arbitrator to decide pursuant to Rule 7(a)-(c) of the AAA Commercial Arbitration Rules, and that AAA should proceed forward with this matter. On or about March 22, 2007, Ms. Claxton of AAA sent counsel for SFM and La Rosa a letter indicating that AAA had adopted the position of La Rosa's counsel. Rosenthal Dec., Exh. "H".

On or about April 16, 2007, AAA appointed Richard S. Mandel as the arbitrator for this matter and set forth dates of availability for a conference call. Rosenthal Dec., Exh. "I".

## ARGUMENT

## I. PLAINTIFF'S COMPLAINT FAILS TO ALLEGE FACTS JUSTIFYING SUBJECT MATTER JURISDICTION

As a means by which to get its dispute before a Federal Court, SFM has alleged a claim of copyright infringement against La Rosa and La Rosa LLC. The allegations in Plaintiff's Complaint are clearly insufficient for this Court to exercise subject matter jurisdiction over Plaintiff's copyright claim, and the Court must dismiss Plaintiff's Complaint.

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a Court must dismiss an action when the Court determines that it lacks subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). It is beyond dispute that a jurisdictional prerequisite to bringing an action for copyright infringement is a requirement that the alleged owner of a copyright has acquired, or at a minimum, applied for copyright registration for the material at issue. 17 U.S.C. §411(a); *Leventhal v. Shamberg*, 2004 WL 1718512, at *1, *2 (N.D. Ill. July 30, 2004); *Maricovitz v. Caminos, Ltd.*, 2003 WL 21517364, at *2 (N.D. Ill. June 30, 2003). Indeed, in order to properly state aclaim of copyright infringement, a complaint must contain allegations of ownership, registration and infringement. *Piaggio & C.S.P.A. v. Scooter Works USA, Inc.*, 1999 WL 674749, at *4 (N.D. Ill. August 23, 1999).[2]

Plaintiff's Complaint is devoid of any allegations that SFM applied for, much less actually obtained copyright registration for either of the items of software in dispute. This failure of Plaintiff to allege such registration deprives this Court of subject matter jurisdiction as to that claim.

Moreover, because the Court must dismiss Plaintiff's claim for copyright infringement, there is no other basis for this Court to assert subject matter jurisdiction over Plaintiff's remaining claims. It is axiomatic that for a Federal Court to have subject matter jurisdiction, a plaintiff must allege a cause of action giving rise to a Federal question or under a Federal statute, or that the claim is based upon complete diversity of the parties. 28 U.S.C. §§1331, 1332. Plaintiff has already conceded in its Complaint that there is no diversity; SFM is a New York corporation as is La Rosa. Thus, because SFM has failed to allege the jurisdictional requirements for a copyright infringement claim, and there is no diversity between the parties, this Court must dismiss Plaintiff's Complaint in its entirety for lack of subject matter jurisdiction.

---

[2] The Court must also dismiss Plaintiff's copyright claim as to La Rosa LLC pursuant to Rule 12(b)(6) because there is not a single allegation in the Complaint that La Rosa copied any portion of the software at issue. The Court must also dismiss Plaintiff's breach of contract claims against La Rosa LLC in Counts, II, III and IV of the Complaint as there is not a single allegation that La Rosa LLC ever entered into any contract with SFM regarding either the 1999 or 2005 Software.

## II.   THE COURT SHOULD STAY PLAINTIFF'S CLAIMS AGAINST LA ROSA AND LA ROSA LLC AND COMPEL SFM TO ARBITRATE SUCH CLAIMS

Having entered into not one, but two, agreements with La Rosa in 2005 that contain explicit mandatory arbitration provisions, and having already engaged in ongoing arbitration with La Rosa, Plaintiff is attempting through its forum shopping Complaint to utilize this Court to do an end run around its contractual obligations to arbitrate.  The Court should not countenance such conduct by SFM, and should stay these proceedings and compel Plaintiff to arbitrate its disputes with La Rosa pursuant to the 2005 Software and Maintenance Agreements.

### A.   The Court Should Stay/Dismiss Plaintiff's Action and Compel Plaintiff to Arbitrate.

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §2, "a written provision in any contract evidencing the transaction involving commerce to settle a controversy thereafter arising out of such contract or transaction shall be valid, irrevocable and enforceable, ...." 9 U.S.C. §2.  The FAA embodies the Federal policy favoring arbitration.  *See Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220 (1987); *737 North Michigan Avenue Investors, LLC v. The Neiman Marcus Group, Inc.,* 2007 WL 1074905, at *3 (N.D. Ill. April 5, 2007).  A court has little discretion in this area as the FAA mandates that a District Court "shall direct the parties to proceed to arbitration on issues as to which an arbitration [agreement] has been signed." *Johnston v. Arrow Fin. Serv., LLC,* 2006 WL 2710663, at *3 (N.D. Ill. September 15, 2006).

Before granting a motion to stay and/or compel arbitration, a court must resolve two threshold questions:  (1) whether the parties entered into a valid and enforceable agreement to arbitrate; and if so, (2) whether the claims arising out of the present dispute fall within the scope of the claims they agreed to arbitrate.  *Morgan v. Bill Kay Chrysler Plymouth,* 2002 WL 31133102, at *1 (N.D. Ill. July 17, 2002).  Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.  *Moses H. Cohen Mem. Hosp. v. Mercury Const. Corp.,* 460 U.S. 1,

24-25 (1983); *Miller v. Flume,* 139 F.3d 1130, 1136 (7th Cir. 1998); *Johnson,* 2006 WL 2710663, at *3. Indeed, broad arbitration provisions necessarily create a presumption of arbitrability. *Fyrnetics Ltd. v. Quality Corp., Inc.,* 293 F.3d 1023, 1031 (7th Cir. 2002).

Pursuant to §4 of the FAA, a United States District Court may issue an order to compel arbitration if a party refuses to arbitrate despite having entered into a contract containing an arbitration provision. FAA §4. The party moving to compel arbitration under the FAA must show: (1) the existence of a written agreement to arbitrate, (2) a dispute within the scope of the arbitration provision, and (3) a refusal to arbitrate by the other party. *737 North Michigan,* 2007 WL 1074905, at *3.

La Rosa has demonstrated all the prerequisites required for this Court to stay Plaintiff's action and compel it to arbitrate. As clearly indicated in the 2005 Software and Maintenance Agreements, SFM is required to arbitrate all disputes arising out of those agreements with regard to both the 2005 web-based software, as well as La Rosa's continued use of the 1999 DOS/Windows-based software. Rosenthal Dec., Exh. "A", 2005 Software Agreement, §13; Rosenthal Dec., Exh. "A", 2005 Maintenance Agreement, §18. Plaintiff's claims in its present action regarding La Rosa's alleged use of the 1999 software and claims for payment with regard to the 1999 and 2005 software are clearly covered by §§4.4, 12.1, 12.2 and 12.4 of the 2005 Software Agreement. Indeed, Plaintiff's claim that La Rosa and La Rosa LLC do not have a license to use the 1999 Windows-based software is covered by terms in the 2005 Software Agreement which grant La Rosa and La Rosa LLC a license to the Windows-based software. SFM has brought this present action despite the arbitration provision in the 2005 Software and Maintenance Agreements, and despite the presently pending arbitration between La Rosa and SFM initiated by La Rosa on February 12, 2007, which arbitration concerns identical issues and agreements to those raised in this litigation.

Therefore, pursuant to the express terms of the 2005 Software and Maintenance Agreements, and in accordance with §§2, 3 and 4 of the FAA, the Court should stay the present proceedings and compel SFM to arbitrate its present claims with La Rosa.

**B.    Plaintiff Should Be Estopped From Avoiding Arbitration Of Its Claims Against La Rosa LLC.**

Although La Rosa LLC is not a signatory to either the 2005 Software Agreement or the 2005 Maintenance Agreement, SFM is estopped from avoiding arbitrating its claims against La Rosa LLC because these claims are inextricably intertwined with those of SFM's claims against La Rosa, and are grounded in the terms of the 2005 Software Agreement.

While a party cannot ordinarily compel arbitration unless it is a party to a contract with an arbitration clause, the Seventh Circuit has recognized limited exceptions to this rule. *Affymax, Inc. v. Johnson & Johnson,* 420 F.Supp.2d 876, 881 (N.D. Ill. 2006); *Johnson,* 2006 WL 2710663, at *5. Under the Doctrine of Equitable Estoppel, a non-signatory can compel arbitration when a signatory's claims are grounded in or intertwined with the terms of the written agreement. *Id.* Furthermore, numerous courts have held that when claims by a signatory contain allegations of substantially interdependent misconduct by the non-signatory and one or more of the signatories, a signatory is estopped from denying the arbitrability of such claims with the non-signatory. *Id.; see also J.L.M. Industry, Inc. v. Stolt-Nielsen, S.A.,* 387 F.3d 163, 177-78 (2nd Cir. 2004).

In this instance, SFM clearly falls within the Doctrine of Equitable Estoppel as to La Rosa LLC because SFM's claims against La Rosa LLC are clearly based upon the 2005 Software Agreement and La Rosa's right to use the DOS/Windows-based software even upon breach or termination of the 2005 Software Agreement. Furthermore, Plaintiff's Complaint essentially alleges interdependent and concerted conduct by La Rosa and La Rosa LLC in alleged continuing use of the 1999 software. Plaintiff's Compl., at ¶4. Indeed, but for SFM's contract with La Rosa, La Rosa LLC would not have access to the DOS/Windows software at issue. Plaintiff's Compl., at ¶¶1, 4, 6.

Thus, the Court should stay Plaintiff's action as to La Rosa LLC, and compel SFM to arbitrate its claims with La Rosa LLC.

## III. THE COURT SHOULD TRANSFER PLAINTIFF'S ACTION TO THE SOUTHERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. §1404(a)

Even if the Court were not to dismiss or stay this action, the Court should transfer the action to the Southern District of New York pursuant to 28 U.S.C. §1404(a) because Plaintiff's claims have absolutely no connection to Illinois.

Pursuant to §1404(a), a Court may transfer the action, "for the convenience of the parties and witnesses, in the interests of justice." A decision to transfer an action is committed to the District Court's sound discretion. *Adventus Americas, Inc. v. Innovative Envir. Tech., Inc.*, 2007 WL 704938, at *8 (N.D. Ill. March 5, 2007). Under §1404(a), the party seeking transfer must demonstrate that, "(1) venue is proper in the transfer court; (2) venue would be proper in the transferee court; and (3) transfer will serve the convenience of the parties and witnesses and promote the interests of justice." *Id.; see Mattson v. Gerry Wood Prod. Co.*, 1997 WL 158334, at *1 (N.D. Ill. March 31, 1997). "Evaluating the third prong - the convenience and fairness of the proposed transfer – the Court considers relevant private and public interest. In addition, the movant may also demonstrate, by reference of the particular circumstances that the transferee forum is clearly more convenient." *Adventus*, 2007 WL 704938, at *8.

The convenience of the witnesses and the parties is the most important factor in determining whether an action should be transferred pursuant to §1404(a). *Id.* When evaluating this factor, the Court considers, (1) the plaintiff's choice of forum, (2) the situs of the material events, (3) the availability of evidence in each forum, (4) the convenience of the witnesses, and (5) the convenience of the parties litigating in the respective forums. *Id.; Plotkin v. IP Access, Inc.*, 168 F.Supp.2d 899, 902 (N.D. Ill. 2001). While the plaintiff's choice of forum can militate against transfer, this factor merely becomes one of many if there is a weak relationship between the

13

operative facts giving rise to the claim and the choice of forum, or if the forum is not the plaintiff's home forum. *Adventus,* 2007 WL 704938, at *9.

When comparing the availability of the evidence, a court looks to where most of the evidence, including documents, is located. *Id.* If there is little or no evidence located in plaintiff's choice of forum, the Court should weigh this fact in favor of transfer. *Id.* In assessing the convenience of the parties, the Court may consider the parties' respective residences and their ability to bear the expense of litigating in a particular forum. The Court should also consider whether the selected forum is in fact not the principal place of business of plaintiff and whether or not plaintiff and/or defendants even have witnesses that are employed in and/or reside in the forum state. *Id.* Finally, when assessing the public interest factors and interests of justice, the Court should consider the forum state's relationship to the cause of action. *Id.*

All of the factors described above weigh in favor of transfer to the Southern District of New York. While Plaintiff has filed a forum shopping action in Illinois, the allegations contained in Plaintiff's own Complaint show that there is little or no connection between the conduct of the parties and Illinois. None of the Software Agreements at issue was executed in Illinois. Neither of the main parties (SFM and La Rosa) are Illinois corporations; both are New York corporations, and La Rosa's principal place of business is in New York. The development of the software at issue took place almost exclusively at La Rosa's principal place of business, the Bronx, New York. Rosenthal Dec., Exh. "A". Furthermore, all of the material witnesses with regard to Plaintiff's claims are located in the Southern District of New York. Indeed, Plaintiff's President (Mr. Kogos) and all of the officers and employees of La Rosa who have knowledge or information regarding the 1999 and 2005 Agreements, and specifically referenced in Plaintiff's Complaint, are located in New York State, not Illinois. Plaintiff's Compl., at ¶8. Furthermore, Illinois has little or no relationship to this cause of action as almost all of the conduct at issue took place in New York City. Indeed,

Plaintiff's Complaint is devoid of any allegations that any conduct took place in Illinois. For these reasons, the Court should transfer Plaintiff's action to the Southern District of New York pursuant to 28 U.S.C. §1404(a).

## **CONCLUSION**

For the reasons stated above, Defendants respectfully request that the Court dismiss Plaintiff's Complaint, or in the alternative, stay this action and compel SFM to arbitrate with Defendants, or transfer the action to the Southern District of New York.

Dated: April 30, 2007                   Respectfully submitted,

                        _s/ David M. Dolendi_____
                        CATALINA J. SUGAYAN
                        DAVID M. DOLENDI
                        LORD, BISSELL & BROOK LLP
                        111 S. Wacker
                        Chicago, IL 60606
                        Tel. (312) 443-0202   Fax: (312) 896-6202
                        ddolendi@lordbissell.com

                        KEVIN HARRINGTON
                        JOHN T.A. ROSENTHAL
                        (Pending admission pro hac vice)
                        HARRINGTON, OCKO & MONK, LLP
                        81 Main Street, Suite 215
                        White Plains, NY  10601
                        Tel: (914) 686-4800   Fax: (914) 686-4824
                        KHarrington@homlegal.com
                        JRosenthal@homlegal.com

                        ***Attorneys for Defendants,***
                        ***La Rosa Del Monte Express, Inc. and La Rosa Del***
                        ***Monte Express (Chicago), LLC***

15

## CERTIFICATE OF SERVICE

The undersigned herby certifies that the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**, was served on the following:

| | |
|---|---|
| Francis J. Leyhane, III, Esq. Leyhane & Associates, Ltd. 205 West Randolph Street Suite 1320 Chicago, IL 60606 | |

via electronic mail and U.S. Mail on this 30th day of April, 2007.

_s/  David M. Dolendi_
David M. Dolendi

CHI1 1341333v1

16

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

-----------------------------------------------------------------x

SOFTWARE FOR MOVING, INC., a New
York Corporation,

                           **Plaintiff,**

               **v.**

LA ROSA DEL MONTE EXPRESS, INC., a
New York Corporation, and LA ROSA DEL
MONTE  EXPRESS (CHICAGO), LLC, an
Illinois Limited Liability Company,

                        **Defendants.**

-----------------------------------------------------------------x

**CASE NUMBER:  07 C 1839**

**Assigned Judge: Wayne R. Andersen**

**Designated**
**Magistrate Judge: Jeffrey Cole**

**DECLARATION OF JOHN T.A. ROSENTHAL IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT**
**MATTER JURISDICTION, OR IN THE ALTERNATIVE, STAY**
**PLAINTIFF'S CLAIMS PENDING THE RESOLUTION OF THE**
**PRESENT ARBITRATION, AND TO COMPEL PLAINTIFF TO**
**ARBITRATE ITS CLAIMS WITH DEFENDANTS AND/OR TRANSFER**
**THE PLAINTIFF'S ACTION TO THE SOUTHERN DISTRICT OF NEW YORK**

     I, John T.A. Rosenthal, duly declare and say, under penalty of perjury under the laws of

the United States that the following is true and accurate:

     1.    I am an attorney at law and an associate at the law firm of Harrington, Ocko &

Monk, LLP, counsel for Defendants LA ROSA DEL MONTE EXPRESS, INC. ("La Rosa") and

LA ROSA DEL MONTE EXPRESS (CHICAGO), LLC ("La Rosa LLC", together with La

Rosa, "Defendants") in the above-captioned case.  I make this Declaration based on my personal

knowledge, except as indicated otherwise, and, if called as a witness, could competently testify

thereto.

2.     Attached hereto as Exhibit "A" is a true and accurate copy of Defendant La Rosa's February 12, 2007 Demand for Arbitration (the "Demand") against Software for Moving, Inc. and its President, Shlomo Kogos.

3.     Exhibit "B" to the Demand is the March 3, 2005 Software Development & License Agreement ("2005 Software Agreement") entered into between La Rosa and Software for Moving, Inc. ("SFM") regarding SFM developing and delivering a web-based version of the Moving Manager software to La Rosa.

4.     The following terms are defined within the 2005 Software Agreement: (1) "current maintenance agreement" means the Maintenance Agreement between La Rosa and SFM dated March 1999; (2) "current software" means the DOS/Windows-based software developed and maintained by  SFM pursuant to the 1999 Software Agreement between the parties; (3) "deliverables" means new web-based software in object and/or source codes and all other materials required to be delivered by SFM to La Rosa under the 2005 Software Agreement; (4) "new software" means the source code and executable object code for all computer programs, subroutines, diagnostic routines, control software, special software to be delivered by SFM under the 2005 Software Agreement.  Demand, at §1.1.

5.     Under the terms of the 2005 Software Agreement, La Rosa was to pay SFM $190,000 for development and delivery of the new web-based software.   2005 Software Agreement, at §4.1.  In addition, La Rosa was required to pay SFM a license fee of $105,000 for the use of the new software.  2005 Software Agreement, at §6.6.

6.     Under the specific terms of the Agreement, La Rosa was required to make these payments with regard to the development and delivery of the new software in installments.  La Rosa, however, was not required to make these installment payments to SFM if there were

2

disputed invoices or disputes as to whether a particular phase of software development had been successfully completed and delivered. 2005 Software Agreement, at §§4.1, 4.2. In addition, La Rosa was not required to pay SFM the final 10% of the development fee (approximately $19,000) until all deliverables had been provided to La Rosa by SFM, and La Rosa was able to utilize the new software successfully for a period of ninety (90) days without failure; defined in the 2005 Software Agreement as the "Trial Period". 2005 Software Agreement, at §4.2. Payment of the license fee for the new software was not to occur until successful completion of the Trial Period. 2005 Software Agreement, at §6.6.

7.    The 2005 Software Agreement also provided that SFM was to continue to maintain all DOS/Windows-based software pursuant to the terms of the parties' 1999 Software Agreement until the new web-based software was fully delivered and the Trial Period successfully completed. 2005 Software Agreement, at §4.6. In exchange for SFM maintaining the old DOS/Windows-based software, La Rosa agreed to pay SFM a maintenance fee of $58,000 for the continued use of the current software. *Id.*

8.    Pursuant to the 2005 Software Agreement, La Rosa had the right to terminate the Agreement if SFM failed to perform a material obligation under the Agreement. 2005 Software Agreement, at §12.1. If La Rosa terminated the Agreement due to SFM's default and material breach, La Rosa had the right to demand SFM return all monies paid to SFM pursuant to the Agreement. *Id.*, at §12.2. In addition, if SFM defaulted and materially breached the Agreement, La Rosa had the right to continue to use the 1999 DOS/Windows-based software and to require that SFM continue to provide maintenance for that software. *Id.*, at §12.2. Furthermore, the 2005 Software Agreement provided that even if the Agreement was terminated by SFM, La Rosa had a right to continue to use the 1999 DOS/Windows-based software. *Id.*, at §12.4.

3

9.    Under the terms of the 2005 Software Agreement, SFM specifically agreed to arbitrate "any dispute or controversy arising out of, relating to, or in conjunction with the interpretation, validity, construction, performance, breach or termination of this agreement", and that such binding arbitration would be held in Westchester County, New York, pursuant to the rules of the American Arbitration Association.   2005 Software Agreement, at §13.12.   In addition, SFM agreed that the venue for any dispute would be exclusively in the County of Westchester, New York.  *Id.*, at §13.13.

10.    Attached as Exhibit "C" to the Demand is the March 3, 2005 Maintenance Agreement ("2005 Maintenance Agreement") entered into between SFM and La Rosa with respect to the new web-based software.

11.    Under the 2005 Maintenance Agreement, SFM was required to maintain the new web-based software once it was installed. 2005 Maintenance Agreement.

12.    Under the terms of the 2005 Maintenance Agreement, La Rosa was to pay SFM a yearly maintenance fee of approximately $46,200 pursuant to Schedule A of the 2005 Maintenance Agreement.   2005 Maintenance Agreement, at §3, Maintenance Schedule A. Payment of the maintenance fee to SFM was not to begin until completion of the Trial Period as that term is defined in the 2005 Software Agreement. 2005 Maintenance Agreement, at §3.

13.    In the event of default by SFM for failing to perform its material obligations under the 2005 Maintenance Agreement, La Rosa was entitled to withhold payment of the maintenance fees owed until the default was cured. 2005 Maintenance Agreement, at §8.

14.    Pursuant to the express terms of the 2005 Maintenance Agreement, SFM was required to arbitration "any dispute or controversy arising out, relating to, or in connection with the interpretation, validity, construction, performance, breach or termination of this agreement."

4

*Id.*, at 18. Arbitration, pursuant to the terms of the 2005 Maintenance Agreement, was to be conducted exclusively in Westchester County, New York under the American Arbitration Association rules. *Id.* In addition, if either party to the Agreement was of the belief that it required immediate injunctive relief, that party could obtain such relief only through proper application to the Supreme Court of the State of New York in Westchester County, and that venue for any conflicts would be exclusively in the County of Westchester, New York. *Id.*, §§18, 19.

15. Attached hereto as Exhibit "B" is a true and accurate copy of a U.S. Post Office domestic return receipt indicating receipt of the Demand by Philip Zukowsky of Chernesky Heyman & Kress, PL, counsel for SFM and Respondent, Shlomo Kogos, President of SFM.

16. Attached hereto as Exhibit "C" is a true and accurate copy of a February 21, 2007 letter from Kimberly F. Claxton of the American Arbitration Association (Case Manager for Arbitration No. 19 117 00027 07 between La Rosa and SFM and Mr. Shlomo Kogos) addressed to counsel for La Rosa ("Harrington, Ocko & Monk, LLP) and counsel for SFM and Mr. Kogos (Philip A. Zukowsky). In this letter, Ms. Claxton confirms that AAA has received a Demand for Arbitration submitted on behalf of La Rosa with respect to a controversy between the parties arising out of or relating to the 2005 Software Agreement. *Id.* In her letter, Ms. Claxton indicates that SFM and Mr. Kogos had until March 8, 2007 in which to answer or otherwise respond to the Demand. *Id.* The letter also indicated that there was a scheduled conference call between counsel for the parties to take place on March 1, 2007. *Id.*

17. Attached hereto as Exhibit "D" is a true and accurate copy of a letter dated February 27, 2007 from Mr. Zukowsky to Ms. Claxton of the AAA. In this letter, Mr. Zukowsky, counsel for SFM and Mr. Kogos, expressed certain concerns to the AAA regarding the Demand and the

arbitration of that matter. In his letter, Mr. Zukowsky indicated that SFM and Mr. Kogos were objecting to the jurisdiction of the AAA over the matter. *Id.* Mr. Zukowsky also indicated that while he had received a copy of the Demand for Arbitration, neither SFM nor Mr. Kogos received the Demand as it was sent to an address at which they were no longer located. *Id.* (Despite requests by counsel for La Rosa, Mr. Zukowsky has refused to provide the present address of either SFM or Mr. Kogos to counsel for La Rosa.) Despite the objection to jurisdiction, Mr. Zukowsky indicated that SFM and La Rosa would proceed forward with the arbitration and requested that the "Arbitrator … first focus on the jurisdiction issue". *Id.* Mr. Zukowsky also indicated that a Mr. Jack Leyhane had been engaged by SFM and Mr. Kogos to "prepare an answer and assert counterclaims should that prove necessary" with respect to the Demand. *Id.*

18. Attached hereto as Exhibit "E" is a true and accurate copy of the March 2, 2007 letter from Harrington, Ocko & Monk, LLP (counsel for La Rosa) to Ms. Claxton of the AAA with respect to the assertions made in Mr. Zukowsky's letter of February 27, 2007. In this letter, counsel for La Rosa reiterated its belief that all of the operative documents had been entered into and executed by the appropriate parties or their representatives. *Id.* Furthermore, counsel for La Rosa pointed out that under the AAA's own rules (in particular Rule 7(c)), the Arbitrator alone had the authority to make rulings with regard to his jurisdiction over the dispute. *Id.*

19. On or about March 6, 2007, counsel for La Rosa and counsel for SFM, Mr. Zukowsky, participated in a conference call with Ms. Claxton of the AAA with regard to La Rosa's Demand. During this conference call, counsel for La Rosa indicated its consent that SFM had until March 16, 2007 in which to file an answer and counterclaims with respect to the

Demand.  Ms. Claxton indicated that such date was acceptable to the AAA and that the AAA would be providing the parties with a list of potential arbitrators for the matter.

20.  Attached hereto as Exhibit "F" is a true and accurate copy of the March 16, 2007 objection to jurisdiction filed with the AAA by Mr. Zukowsky on behalf of Software for Moving, Inc. and its President, Shlomo Kogos.

21.  Attached hereto as Exhibit "G" is a true and accurate copy of the March 21, 2007 letter from counsel for La Rosa responding to Mr. Zukowsky's March 16, 2007 objection to jurisdiction on behalf of SFM and Mr. Kogos.  In this letter, counsel for La Rosa reiterated that the AAA rules provided that the arbitrator had jurisdiction over La Rosa's Demand and the parties.  *Id.*  Counsel for La Rosa also indicated to the AAA that the arbitration should proceed forward as soon as possible.

22.  Attached hereto as Exhibit "H" is a true and accurate copy of the March 22, 2007 letter from Ms. Claxton of the AAA to counsel for SFM, Mr. Zukowsky, and counsel for La Rosa, Harrington, Ocko & Monk, LLP.  In this letter, Ms. Claxton indicated that La Rosa had met the requirements for the arbitration to go forward under the AAA rules.  *Id.*  Ms. Claxton also indicated that in the absence of a Court order staying the matter, the AAA would proceed forward and that counsel for the parties might wish to raise the issue of jurisdiction and arbitrability of La Rosa's claims with the arbitrator once that individual was appointed.  *Id.*  Attached to this letter, Ms. Claxton also provided the parties with the names of potential arbitrators.  *Id.*  SFM has <u>not</u> filed a motion to stay the arbitration.

23.  Attached hereto as Exhibit "I" is a true and accurate copy of the April 16, 2007 letter from Ms. Claxton of the AAA.  In accordance with the AAA rules and the previous actions of counsel for the parties, Ms. Claxton indicated in this letter that the AAA had appointed

Richard S. Mandel as arbitrator for the matter, and provided dates of availability for Mr. Mandel to hold a preliminary conference call with counsel for the parties. *Id.*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and accurate.

JOHN T.A. ROSENTHAL

Dated:  April 27, 2007

Sworn to before me
This 27th day of April 2007

SHIRLEY B. THORNTON
Notary Public, State of New York
No. 01TH6029394
Qualified in Westchester County
Commission Expires August 16, 2009

8

## Index Of Exhibits

Ex. "A" - Defendant La Rosa's February 12, 2007 Demand for Arbitration

Ex. "B" - U.S. Post Office domestic return receipt indicating receipt of the Demand by Philip Zukowsky

Ex. "C" - Letter from Kimberly F. Claxton of the American Arbitration Association

Ex. "D" - February 27, 2007 letter from Mr. Zukowsky to Ms. Claxton of the AAA

Ex. "E" - March 2, 2007 letter from Harrington, Ocko & Monk, LLP (counsel for La Rosa) to Ms. Claxton of the AAA

Ex. "F" - March 16, 2007 objection to jurisdiction filed with the AAA by Mr. Zukowsky on behalf of Software for Moving, Inc. and its President, Shlomo Kogos

Ex. "G" - March 21, 2007 letter from counsel for La Rosa responding to Mr. Zukowsky

Ex. "H" - March 22, 2007 letter from Ms. Claxton of the AAA to counsel for SFM, Mr. Zukowsky, and counsel for La Rosa

Ex. "I" - April 16, 2007 letter from Ms. Claxton of the AAA

CHI1 1341145v1

# EXHIBIT "B"

## To Rosenthal Declaration

(U.S. Post Office domestic return receipt indicating receipt of the Demand by Philip Zukowsky)

UNITED STATES POSTAL SERVICE

DAYTON OH 454

21 FEB 2007 PM 4 T

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

*Kevin J. HARRINGTON, ESQ.*

**Harrington, Ocko & Monk**
A LIMITED LIABILITY PARTNERSHIP
81 Main Street, Suite 215
White Plains, NY 10601

EFile #: 1034 [LA ROSA Del Monte (SFM CRTH)]

CFile#: 1034 [LA ROSA Del Monte (SFM CRTH)]

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X *Sandra Shields* ☐ Agent ☐ Addressee<br>B. Received by ( Printed Name) C. Date of Delivery *2-20-07* |
| 1. Article Addressed to:<br>*Philip A. Zukowsky, ESQ.*<br>*Chernesky Heyman + Kress*<br>*10 Courthouse Plaza SW*<br>*Suite #1100*<br>*Dayton, OH 45402* | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br><br>3. Service Type<br>☑ Certified Mail ☐ Express Mail<br>☐ Registered ☐ Return Receipt for Merchandise<br>☐ Insured Mail ☐ C.O.D.<br>4. Restricted Delivery? (Extra Fee) ☐ Yes |
| 2. Article Number<br>(Transfer from service la... | 7006 2150 0004 0183 4335 |

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

# EXHIBIT "C"

## To Rosenthal Declaration

(Letter from Kimberly F. Claxton of the American Arbitration Association)



Northeast Case Management Center
Catherine Shanks
Vice President
Christopher Fracassa, Yvonne L. Baglini
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone 866-293-4053 facsimile 401-435-6529
internet http://www.adr.org/

February 21, 2007

VIA
FACSIMILE/W/ENCLOUSRES

Kevin J. Harrington, Esq.
Harrington, Ocko & Monk, LLP
81 Main Street, Suite 215
White Plains, NY 10601

Robert S. Ocko, Esq.
Harrington, Ocko & Monk, LLP
81 Main Street, Suite 215
White Plains, NY 10601

Philip A. Zukowsky, Esq.
Chernesky Heyman & Kress
10 Courthouse Plaza SW, Suite 1100
Dayton, OH 45402

Re: 19 117 00027 07
    La Rosa Del Monte Express, Inc.
    and
    Software for Moving, Inc. and Shlomo Kogos

Dear Counsel:

This will acknowledge receipt on February 15, 2007, of a Demand for Arbitration dated February 12, 2007, of a controversy arising out of a contract between the above-captioned parties, containing a clause providing for administration by this Association. We understand that a copy was sent to Respondent. A copy of our Commercial Arbitration Rules and Mediation Procedures, as amended and in effect September 15, 2005, may be obtained from our website at www.adr.org.

If you would like a printed copy of the applicable rules, please contact the undersigned.

In accordance with the Rules, if Respondent does not answer on or before March 8, 2007, we will assume that the claim is denied. If Respondent wishes to counterclaim, file the appropriate number of copies, together with the administrative fee, to the attention of the undersigned. A copy should be directly sent to Claimant.

We note the parties' agreement stipulates the locale as Westchester County, New York.

We note the claim is $383,250. If this amount is incorrect, please advise us on or before March 8, 2007 of the correct amount.

This will confirm an Administrative Conference is scheduled on March 1, 2007 at 10:00 AM ET via conference call. The Association will initiate this call.

The purpose of the administrative conference is to assist the Association in administering your case efficiently and expeditiously. Please be prepared to discuss the following:

a.  estimates on the expected duration of the case;
b.  number of arbitrators/party-appointed arbitrator provision;
c.  method of appointment of arbitrators, if applicable;
d.  your views on the qualifications of the arbitrators to be proposed;
e.  the possibility of submitting this dispute to mediation;

Enclosed is a Checklist for Conflicts to list those witnesses you expect to present, as well as any persons or entities with an interest in these proceedings. The Conflicts Checklist is due within fifteen days from the date of this letter. The parties are to exchange copies of all correspondence except this checklist and the arbitrator list.

The Association will make maximum use of fax machines when communicating in writing, and request that the parties do the same. If you have not provided us with your fax number, we ask that you do so at this time. If a party does not provide us with their fax number, then that party will have to rely on receiving correspondence via regular mail.

Parties will not send copies of documents being exchanged between the parties to the Association, such as discovery, unless they are being referred to the arbitrator for a determination. These documents will be returned to you if we receive them.

The Association has a strict policy regarding requests for extensions. If you need to extend any deadline during the course of these proceedings, please try to obtain the other party's agreement prior to contacting the AAA. Without the consent of the parties, case managers only have the authority to grant one extension per deadline, provided the request is reasonable and necessary. Untimely filings will not be considered by the Association.

This case will be administered by facilitating the exchange of appropriate written documents through the AAA. To ensure the proper handling of all case-related documents, the parties are asked not to submit correspondence directly to the arbitrator. Correspondence should be submitted to the undersigned for transmittal to the arbitrator, copying the other party.

The Association will require advance deposits once the arbitrator is appointed. These deposits are calculated on the number of days the parties have suggested will be necessary, in addition to the pre and post hearing time that the arbitrator may charge pursuant to the arbitrator's resume.

Additionally, the parties may desire to mediate this case prior to an arbitration hearing. Mediation is a private, non-binding process under which the parties submit their dispute to a third-party neutral. The mediator may suggest ways of resolving the dispute, but may not impose a settlement on the parties; the parties attempt to negotiate their own settlement agreement. Please contact the undersigned for further details regarding mediation.

As a service to our users, you may charge the administrative fee and deposit for arbitrator fees and expenses to your credit card. If you desire to do so, please complete the enclosed charge authorization and return it to us.

We invite the parties to visit our website to learn more about how to file and manage your cases online.

As part of our administrative service, AAA's WebFile allows parties to perform a variety of case related activities, including:

- File additional claims
- Complete the Checklist for Conflicts form
- View invoices and submit payment
- Share and manage documents
- Strike and rank listed neutrals
- Review case status

AAA WebFile provides flexibility because it allows you to work online as your schedule permits - day or night. Cases originally filed in the traditional offline manner can also be viewed and managed online.

In closing we wish to remind the parties that the AAA has a refund schedule in the administrative fee section of the Rules. After 60 days or the appointment of the arbitrator the filing fees are non-refundable. If the parties enter settlement negotiations at any time after the AAA has opened its file, you should take into consideration the refund schedule in the Rules. In accordance with the administrative fee schedule, the Association charges a Case Service Fee when the hearing on the merits is scheduled. The Case Service Fee is the balance of the filing fee. It is refundable if the hearing on the merits is cancelled and the Association is notified at least 24 hours prior to the hearing. The AAA will only refund filing fees as outlined in the Rules and does not refund neutral costs incurred when parties settle their dispute or withdraw their claims. We encourage parties to resolve their disputes as amicably as possible and this notice is just to alert you to this issue so that it doesn't become a concern in the future.

Please feel free to call if you have any questions. We look forward to assisting you in this matter.

Sincerely,


Kimberly F. Claxton
Case Manager
401 431 4793
ClaxtonK@adr.org

*Supervisor Information: Karen Fontaine, 401 431 4798, fontainek@adr.org*

Encl.

# AMERICAN ARBITRATION ASSOCIATION
## CHECKLIST FOR CONFLICTS

In the Matter of the Arbitration between:

Re: 19 117 00027 07
    La Rosa Del Monte Express, Inc.
    and
    Software for Moving, Inc.and Shlomo Kogos

CASE MANAGER: Kimberly F. Claxton
DATE: February 21, 2007

To avoid the possibility of a last-minute disclosure and/or disqualification of the arbitrator pursuant to the rules, we must advise the arbitrator of the names of all persons, firms, companies or other entities involved in this matter. Please list below all interested parties in this case, including, but not limited to, witnesses, consultants, and attorneys. In order to avoid conflicts of interest, parties are requested to also list subsidiary and other related entities. This form will only be used as a list for conflicts, not a preliminary or final witness list. Please note that the AAA will not divulge this information to the opposing party, and the parties are not required to exchange this list. This form will, however, be submitted to the arbitrator, together with the filing papers. You should be aware that arbitrators will need to divulge any relevant information in order to make appropriate and necessary disclosures in accordance with the applicable arbitration rules.

For the convenience of clients using AAA's WebFile, this form may be completed online and submitted as part of the WebFile case record.

| NAME | AFFILIATION | ADDRESS |
|------|-------------|---------|

American Arbitration    21/2007 11:57:13 PM    PAGE    508    Fax Server

DATED: _____ _____ PARTY:_____ ___ ___
                                        Please Print

American Arbitration    2/2007 11:07:45 PM    PAGE    005    Fax Server



950 Warren Avenue, East Providence, RI 02914
telephone 866-293-4053 facsimile 401-435-6529
http://www.adr.org

# FAX

| | |
|---|---|
| DATE | 02/21/2007 5:14:24 PM |
| TO | Kevin J. Harrington, Esq. |
| COMPANY | Harrington, Ocko & Monk, LLP |
| ADDRESS | 914-686-4824 |
| FROM | Kimberly F. Claxton |
| NUMBER OF PAGES | 5 (Including cover page) |
| RE | Case number: 19 117 00027 07 |
| RECIPIENTS | Kevin J. Harrington, Esq.; Robert S. Ocko Esq.; Philip A. Zukowsky Esq. |

NOTES·

THIS FAX TRANSMISSION IS INTENDED ONLY FOR THE USE OF THE PERSON TO WHOM IT IS ADDRESSED. IT MAY CONTAIN INFORMATION THAT IS CONFIDENTIAL, PRIVILEGED OR OTHERWISE EXEMPT FROM DISCLOSURE. IF YOU ARE NOT THE INTENDED RECIPIENT OR THE PERSON AUTHORIZED TO DELIVER THIS FAX TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OF THIS FAX IS PROHIBITED. IF YOU HAVE RECEIVED THIS FAX IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE (COLLECT) AND RETURN THE ORIGINAL FAX TO US BY FIRST CLASS MAIL AT THE ABOVE ADDRESS.

# EXHIBIT "D"

## To Rosenthal Declaration

(February 27, 2007 letter from Mr. Zukowsky to Ms. Claxton of the AAA)

# CHERNESKY, HEYMAN & KRESS P.L.L.

## ATTORNEYS AT LAW

10 COURTHOUSE PLAZA SW, SUITE 1100
DAYTON, OHIO 45402
P.O. BOX 3808
DAYTON, OHIO 45401-3808
937/449-2800

WRITER'S DIRECT DIAL
937/449-2847

WRITER'S FAX
937/463-4547

WRITER'S E-MAIL
paz@chklaw.com

WEBSITE
www.chklaw.com

February 27, 2007

**Via U.S. Mail and E-Mail**
Ms. Kimberly F. Claxton
Case Manager
American Arbitration Association
950 Warren Avenue
East Providence, Rhode Island 02914

> Re:  19 117 00027 07
> La Rosa Del Monte Express, Inc.
> and
> Software for Moving, Inc. and
> Shlomo Kogos

Dear Ms. Claxton:

I am in receipt of your letter of February 21, 2007. I also received, on February 20, a copy of Mr. Harrington's letter of February 12 and the enclosed "courtesy copy" of his Demand for Arbitration in the captioned matter. My clients, Mr. Kogos and Software for Moving, Inc., have not received the Demand for Arbitration as of yet and are unlikely to ever receive it, inasmuch as the Newark, New Jersey address to which the Demand was supposedly sent is not one at which my clients are presently located.

Enclosed with this letter, please find enclosed a copy of my letter today to Mr. Harrington demanding that this Demand for Arbitration be withdrawn. In the event Mr. Harrington does not comply, I also insist that AAA refuse to proceed with the arbitration of this matter.

The jurisdiction of the AAA to hear this matter is based on §13.12 of a Software Development & License Agreement attached to the Demand for Arbitration – but the "signature" of Mr. Kogos on that document is an obvious, and clumsy, forgery. (As you know, from the enclosed letter to Mr. Harrington, we also contend that Mr. Kogos did not sign the Maintenance Agreement either.) I understand that Rule 7 of the AAA Commercial Arbitration Rules provides a mechanism for the arbitrator "to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Clearly, my clients

*CHERNESKY, HEYMAN & KRESS P.L.L.*

Ms. Kimberly F. Claxton
Page 2
February 27, 2007

are objecting to the jurisdiction of the arbitrator and to the arbitrability of these claims. We understand, per Rule 7, that these objections must be made within the time for filing an answer to the Demand for Arbitration.

If AAA will not refuse to proceed with this matter, we will at least want assurances that the arbitrator will first focus on the jurisdiction issue and will not require my client to incur the considerable expense of responding to the 36 page Demand for Arbitration. We have engaged counsel to prepare an answer and assert counter claims should that prove necessary: Jack Leyhane 1205 West Randolph, Chicago, Illinois 60606, Suite 1320, leyhane329@aol.com. However, I expect that my clients will not be subjected to the expenses attendant to allowing the procedure to develop that far – and, on behalf of my clients, I herewith reserve their rights to seek redress and recompense from any and all entities that permit otherwise.

Thank you for your immediate attention to this matter.

Very truly yours,

CHERNESKY, HEYMAN, & KRESS P.L.L.

Philip A. Zukowsky

PAZ/ge
Enclosure

cc:    ClaxtonK@adr.org

       Mr. Kevin J. Harrington
       Harrington, Ocko & Monk, LLP
       81 Main Street
       Suite 215
       White Plains, New York 10601

       kharrington@homlegal.com

       Mr. Jack Leyhane
       1205 W. Randolph
       Chicago, Illinois 60606
       Suite 1320

       leyhane329@aol.com

{00289841.DOC;}

**CHERNESKY, HEYMAN & KRESS P.L.L.**
ATTORNEYS AT LAW
10 COURTHOUSE PLAZA SW, SUITE 1100
DAYTON, OHIO 45402
P.O. BOX 3808
DAYTON, OHIO 45401-3808
937/449-2800

WRITER'S DIRECT DIAL
937/449-2842

WRITER'S FAX
937/463-4947

WRITER'S E-MAIL
paz@chklaw.com

WEBSITE
www.chklaw.com

February 26, 2007

**Via U.S. Mail and E-Mail**
Mr. Kevin J. Harrington
Harrington, Ocko & Monk, LLP
81 Main Street
Suite 215
White Plains, New York 10601

Re:    19 117 00027 07
La Rosa Del Monte Express, Inc.
and
Software for Moving, Inc. and
Shlomo Kogos

Dear Mr. Harrington:

I received, on February 20, a copy of your letter and the enclosed "courtesy copy" of your Demand for Arbitration in the captioned matter. I have since received Ms. Claxton's letter of February 21, 2007 confirming that your Demand for Arbitration has been received by the American Arbitration Association. My clients, Mr. Kogos and Software for Moving, Inc., have not received the Demand for Arbitration as of yet and are unlikely to ever receive it, inasmuch as the Newark, New Jersey address to which the Demand was supposedly sent is not one at which my clients are presently located.

Your Demand for Arbitration is premised on the terms of a Software Development & License Agreement and a separate Maintenance Agreement, both supposedly executed on or about March 3, 2005. However, even though these 'Agreements' describe – in some respects – how our respective clients dealt with each other for a considerable period of time, my client, Mr. Kogos never signed either 'Agreement.' Mr. Kogos' purported 'signatures' on the 2005 'Agreements' are obvious, and clumsy, forgeries, even to a non-expert. You will recall my several attempts to get you to provide me with copies of the 'Agreements' on which you were making the various contentions that have now been collected in your Demand for Arbitration. You never provided me with copies, despite my requests. Had you done so, we could have

**CHERNESKY, HEYMAN & KRESS P.L.L.**

Mr. Kevin J. Harrington
Page 2
February 27, 2007

pointed out the obvious forgeries to you then. Even so, you might have noticed, when you assembled the exhibits to your Demand for Arbitration, how little the purported 'signatures' on the March 3, 2005 'Agreements' resemble Mr. Kogos' signature on other documents that you also included.

Specifically, Mr. Kogos signed the 1999 Software Licensing Agreement (Exhibit A to your Demand for Arbitration) in four separate places:

> At page 10 of 10, at the end of the body of the 1999 Software Licensing Agreement;
>
> at page 7 of 7 of Exhibit "A" to the 1999 Agreement;
>
> at page 3 of 3 of Exhibit "B" to the 1999 Agreement; and
>
> at page 4 of 4 of Exhibit "C" to the Software Maintenance Agreement.

When you review these signatures, you'll note that they (a) resemble each other and (b) provide clear spacing between Mr. Kogos' first and last names. This is not the case, however, with the signature on the supposed March 3, 2005 Software Development & License Agreement (Exhibit B to your Demand for Arbitration), where the first and last name run together. The scrawl at p. 16 of that document bears so little resemblance to the signatures on the 1999 Agreement as to make the forgery painfully obvious. Admittedly, the forgeries on the supposed March 3, 2005 Maintenance Agreement (Exhibit C to your Demand for Arbitration) are more artful, but the signatures there are no more valid than the phony scrawl on the Software Development & License Agreement.

There are other things you must consider in evaluating the validity of these agreements. Those are the "tells" that show that the Agreements could not have been executed on March 3, 2005, when you claim the document was signed. For example, the Notice paragraph of Article XIII of the supposed March 3, 2005 Software Development & License Agreement (§13.5) purports to list Mr. Kogos' email address as skogos@earthlink.net. However, the email address set out in §13.5 *did not exist until 2006*. We have the e-mails from Earthlink that states that skogos@earthlink.net mailbox was opened on 5, 2006.

Whether or not you noticed the discrepancies in the signatures when you put the Demand together, you are on notice now: Mr. Kogos did not execute the Software Development & License Agreement or Maintenance Agreement and my clients have not agreed to arbitration of any dispute between our respective clients.

**CHERNESKY, HEYMAN & KRESS P.L.L.**

Mr. Kevin J. Harrington
Page 3
February 27, 2007

We therefore demand the immediate and unconditional withdrawal of the captioned Demand for Arbitration. If we are not informed that the Demand has been withdrawn by 5:00 pm EST Friday, March 2, 2007, we will take all necessary steps, in any available forum, to protect our clients' interests with respect to this matter. We will not hesitate to seek appropriate relief from any and all parties who may be responsible for the expenses our clients have incurred, and will likely incur, in responding to this fraudulent Demand for Arbitration.

Enclosed with this letter, please also find enclosed a copy of my letter today to Ms. Claxton demanding that AAA refuse to proceed on this Demand for Arbitration.

We must respectfully insist upon your immediate attention to this matter.

Very truly yours,

CHERNESKY, HEYMAN, & KRESS P.L.L.

Philip A. Zukowsky

PAZ/ge
Enclosure

cc:     kharrington@homlegal.com

Ms. Kimberly F. Claxton
Case Manager
American Arbitration Association
950 Warren Avenue
East Providence, Rhode Island  02914

ClaxtonK@adr.org

Mr. Jack Leyhane
1205 W. Randolph
Suite 1320
Chicago, Illinois 60606

Leyhane329@aol.com

{00289840.DOC;}

# EXHIBIT "E"

## To Rosenthal Declaration

(March 2, 2007 letter from Harrington, Ocko & Monk, LLP (counsel for La Rosa) to Ms. Claxton of the AAA)

<center>

# Harrington, Ocko & Monk

**A LIMITED LIABILITY PARTNERSHIP**
**Attorneys at Law**

</center>

White Plains Office

81 Main Street ~ Suite 215
White Plains, NY 10601
Tel: (914) 686-4800
Fax: (914) 686-4824

New York City Office

52 Duane Street, 7th Floor
New York, NY 10007
Tel: (212) 227-8004

Kevin J. Harrington, Partner
e mail: kharrington@homlegal.com

Reply to White Plains Office

<center>March 2, 2007</center>

**VIA FACSIMILE: (401) 435-6529**
**and FIRST CLASS MAIL**

Kimberly F. Claxton, Case Manager
AMERICAN ARBITRATION ASSOCIATION
950 Warren Avenue
East Providence, RI 02914

> Re: *La Rosa Del Monte Express, Inc., Claimant, vs. Software*
> *For Moving, Inc., and Shlomo Kogos, as an Individual, Respondents.*
> Demand for Commercial Arbitration:
> <u>American Arbitration Association, NY, NY (Case No.: 19 117 00027 07)</u>

Dear Ms. Claxton:

As you may recall, our firm represents Claimant, La Rosa Del Monte Express, Inc. ("La Rosa"), in the above-captioned arbitration. We write to you at this time in response to the letter of February 27, 2007 letter of Mr. Philip A. Zukowsky, counsel for Respondent, Software for Moving, Inc. ("SFM").

As to the allegations of forgery contained in Mr. Zukowsky's February 27th letter, obviously, our client disputes any notion that the signatures of Mr. Kogos, President of SFM, on the operative documents at issue in this Arbitration are forgeries. Contrary to Mr. Zukowsky's allegations, the signatures of Mr. Kogos on these documents (the March 3, 2005 Software Development and License Agreement and the March 3, 2005 Maintenance Agreement) are almost identical to that of Mr. Kogos on the March 24, 1999 Software Licensing Agreement, a signature Mr. Zukowsky acknowledges is that of his client. <u>See</u> Exhibit "A", a true and correct copy of the signatures of Mr. Kogos on the March 24, 1999 Software Licensing Agreement; Exhibit "B", a true and correct copy of Mr. Kogos'

Ms. Kimberly F. Claxton, Case Manager (AAA)
AAA Case No.: 19 117 00027 07
Re:  *La Rosa Del Monte Express, Inc., Claimant, vs. Software
    For Moving, Inc., and Shlomo Kogos, as an Individual, Respondents.*
March 2, 2007
Page 2

signatures on the March 3, 2005 Software Development and License Agreement; and Exhibit "C", true and correct copies of Mr. Kogos' signatures on the March 3, 2005 Maintenance Agreement. In addition, the signatures on the 2005 Software Development and Maintenance Agreements match Mr. Kogos' endorsing signature on an August 29, 2006 check for Ten Thousand ($10,000) Dollars made out to SFM and cashed by Mr. Kogos. See Exhibit "D", a true and correct copy of an August 29, 2006 check endorsed by Mr. Kogos on behalf of SFM. Thus, any suggestion that the signatures of Mr. Kogos on these documents are forgeries is easily dispelled by a simple review of the very signatures themselves.

Second, if Respondents persist in advancing the spurious claim that Mr. Kogos' signature was forged on the operative agreements, Claimant is prepared at the hearing in this matter to call a witness who will directly refute the claim. The witness who will establish that Mr. Kogos did indeed sign the Software Development Agreement is Steven Dalzell, the former Chief Operating Officer of Claimant. Mr. Dalzell will testify that he requested that Mr. Kogos supply a duplicate copy of this agreement and that subsequently, during a visit to the office of Claimant, Mr. Kogos hand-delivered a photocopy of the signed agreement to Mr. Dalzell, including the signature page bearing Mr. Kogos' signature. If, as he now claims, Mr. Kogos never signed the agreement, then he would not have personally delivered a signed copy to Mr. Dalzell.

Furthermore, Mr. Kogos, as well as Mr. Zukowsky (on behalf of Mr. Kogos and SFM), have taken actions and made detailed demands for money to La Rosa based on the very same agreements they now contend contain forged signatures, and are not binding on the parties. Their protestations now of forgery thus ring hollow.

As indicated in Claimant's Demand for Arbitration in this matter, the Software Development and License Agreement of March 3, 2005 required that La Rosa pay SFM $58,000 to continue to use the current software (DOS/WINDOWS-based software), pending the completion of the new web-based software by SFM. See Software Development and License Agreement, Section 4.6. Furthermore, the Software Development and License Agreement provides that La Rosa would pay SFM a license fee of $105,000 once the new web-based software was completed, operational, and delivered to La Rosa by SFM in its entirety. Id., at Section 6.5. Under the Agreement, La Rosa was also to pay SFM a development fee of $190,000 for development of this new web-based software. Id., at Section 4.1.

Ms. Kimberly F. Claxton, Case Manager (AAA)
AAA Case No.: 19 117 00027 07
Re: *La Rosa Del Monte Express, Inc., Claimant, vs. Software*
   *For Moving, Inc., and Shlomo Kogos, as an Individual, Respondents.*
March 2, 2007
Page 3

 

    While Mr. Zukowsky and his client, SFM, contend the signatures on these agreements are forged, and thus, inoperative, Mr. Zukowsky and Mr. Kogos, President of SFM, have both made specific demands of La Rosa, and asked for the specific amounts described in the March 3, 2005 Software License and Development Agreement. Indeed, Mr. Kogos e-mailed to Robert S. Ocko, counsel for La Rosa, on December 13, 2006, and specifically acknowledged a $58,000 per year maintenance charge for La Rosa's use of the DOS/WINDOWS-based software in 2005; exactly the sum required of La Rosa pursuant to Section 4.6 of the Software License and Development Agreement. See Exhibit "E," a true and correct copy of the December 13, 2006 e-mail from Mr. Kogos to Mr. Ocko. Mr. Kogos also acknowledges in this e-mail that SFM was paid precisely that amount by La Rosa in late 2004, again, in accordance with the terms of the 2005 Agreement. Mr. Kogos, in fact, references the Software Development Agreement in this very e-mail. Thus, Mr. Kogos and SFM have, both by their conduct and their writings, acknowledged that the contracts exist, and that SFM is bound by their terms, including the arbitration provisions.

    Subsequently, on December 22, 2006, Mr. Zukowsky e-mailed Mr. Ocko, and also demanded the exact amounts described in the 2005 Software Development Agreement. See Exhibit "F", a true and correct copy of the December 22, 2006 e-mail from Mr. Zukowsky to Mr. Ocko. Mr. Zukowsky admits in his e-mail that $58,000 was the agreed-upon amount of the payment for SFM to maintain the DOS/WINDOWS-based software in 2005 under the 2005 Software Development Agreement. Furthermore, Mr. Zukowsky references the exact amount La Rosa would owe to SFM under the Software Development Agreement of $295,000 ($105,000 for the license, and $190,000 for the development of the new web-based software; both due upon completion and satisfactory delivery of the new web-based software). Thus, in his correspondence, Mr. Zukowsky admits that the parties were acting in accordance with the express terms of the Software Development and Maintenance Agreements of 2005, causing SFM to be bound by the arbitration provision of the Agreements. Through the actions of Mr. Kogos and Mr. Zukowsky, SFM is now estopped from arguing to the contrary.

    Furthermore, the purported illegitimacy of the contracts disputed by SFM and Mr. Zukowsky is undercut by the presence of specific provisions in the 2005 Software Development Agreement relating to Mr. Zukowsky. In order to ensure that La Rosa had access to the source codes and other information relating to the new web-based software should SFM go out of business, the parties agreed to designate a custodian for such

Ms. Kimberly F. Claxton, Case Manager (AAA)
AAA Case No.: 19 117 00027 07
Re: *La Rosa Del Monte Express, Inc., Claimant, vs. Software
For Moving, Inc., and Shlomo Kogos, as an Individual, Respondents.*
March 2, 2007
Page 4

information.  See Exhibit "G", a true and correct copy of the Addendum to the 2005 Software Development and License Agreement.  The custodian designated in the Addendum is none other than Mr. Zukowsky. Indeed, not only is Mr. Zukowsky identified by name as the custodian, but the address and telephone number for his law firm are also provided in the Addendum. It stretches all credibility for SFM to now assert the contracts at issue are void, or that Mr. Kogos did not execute them, when the 2005 Software Development Agreement references Mr. Zukowsky by name, and the information in the Agreement regarding the identity and contact information for SFM's counsel, Mr. Zukowsky, could only have one source – Mr. Kogos/SFM.

The past actions of the parties also conclusively demonstrate the idea that La Rosa and SFM would enter into verbal agreements regarding the 2005 Software Development and License Agreement and the Maintenance Agreement is preposterous.   As Mr. Zukowsky acknowledges in his letter to Mr. Kevin Harrington of February 26, 2007, the parties did enter into a Software Agreement in March 1999 regarding the DOS/WINDOWS-based software. This 1999 Agreement relates to the development and licensing of the DOS/WINDOWS software by La Rosa from SFM. The 1999 Agreement involves sums far smaller than the amounts involved in the present 2005 Software Development and Maintenance Agreements. The parties then conducted themselves in accordance with the terms of this 1999 Agreement for almost five (5) years.

It goes completely against the parties' prior conduct regarding software development and licensing for SFM to now claim that La Rosa operated for two (2) years and paid hundreds of thousands of dollars to SFM without a written agreement with SFM regarding the new software which SFM was proposing to license to La Rosa. In fact, as described in the e-mails from Mr. Kogos and Mr. Zukowsky, SFM claims numerous intellectual property rights concerning the new software, yet amazingly asserts there exists no written contract establishing and defining such rights. SFM's asserted intellectual property rights in the new software only ring true if the parties had a written agreement about such property rights, an agreement SFM now claims does not exist.

Finally, at this stage of the Arbitration, pursuant to Rule 7 of the AAA Commercial Arbitration Rules, the arbitrator has the exclusive power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or the validity of the arbitration agreement. Indeed, under Rule 7(c), an arbitrator alone has the authority to make a ruling with regard to jurisdiction over the arbitability of a claim. Thus, SFM cannot

Ms. Kimberly F. Claxton, Case Manager (AAA)
AAA Case No.: 19 117 00027 07
Re: *La Rosa Del Monte Express, Inc., Claimant, vs. Software*
    *For Moving, Inc., and Shlomo Kogos, as an Individual, Respondents.*
March 2, 2007
Page 5

escape arbitrating the issue of whether or not the arbitration clauses within the March 3, 2005 Agreements are valid.

Thank you in advance for your time and consideration in this matter.

Respectfully submitted,

Kevin J. Harrington

KJH:jjb

cc:   **VIA FACSIMILE AND FIRST CLASS MAIL:**
      Philip A. Zukowsky, Esq.

EXHIBIT "A"

**ORIGINAL**

## SOFTWARE LICENCING AGREEMENT

WHEREAS, SAFEGUARD COMPUTER SERVICES, INC., a New York Corporation, maintaining offices at 24-16 Bridge Plaza South, Long Island City, New York, 11101 (Hereinafter "Licensor") represents and warrants that it is the owner of all right, title and interest in and to the software applications and source code otherwise known and referred to for purposes of identification as the "MOVING MANAGER FOR WINDOWS" (Hereinafter "the Software"); and

WHEREAS, LA ROSA DEL MONTE EXPRESS, INC., a New York, Corporation with world headquarters located at 1133-35 Tiffany Street, Bronx, New York 10459, and primarily engaged in the moving, shipping and storage industry, its subsidiaries, sister corporations, partners, subsidiaries, affiliates and sub-licensees and/or associates, (Hereinafter collectively "Licensee"), desires to utilize the software in its day to day national and international operations; and

WHEREAS, Licensee desires certain specific and individual modifications to the software requiring additional code capable of meeting the unique and specific needs of licensee's national and international day to day operations; and

WHEREAS, Licensor warrants that the software may be modified so as to accommodate licencee's unique needs and further agrees to modify the software to include the said specific and

Page 1 of 10

Agreement and the Software developed under this Agreement as well as confidentiality, indemnification, use, assignment, reproduction, warranty, ownership, return or destruction shall survive the delivery of the software and the payment of associated charges.

22. <u>GOVERNING LAW</u>. This Agreement shall be governed by all the laws of the State of New York, including its conflicts of laws rules and/or common law precedent.

IN WITNESS WHEREOF the parties have executed this Agreement this __ day of March, 1999.

Safeguard Computer Services, Inc.
By: Shlomo Kogos, President

La Rosa Del Monte Express, Inc.
By: Hiram Rodriguez, President

immediate repairs of said failures. If the failure is remedied before the expiration of 36 cumulative days, including previous failures, within that Phase, the required ninety (90) day uptime period will continue to run.


IN WITNESS WHEREOF, each of the parties hereto has causes this Agreement to be duly executed as of the date below.

Safeguard Computer Services, Inc.
By: Shlomo Kogos, President


La Rosa Del Monte Express, Inc.
By: Hiram Rodriguez, President

PROVISIONS OF COMPLIANCE AGREEMENT CONTROLLING. In the event of any conflict or apparent conflict between the terms and conditions of the License Agreement and the terms and conditions of this Compliance Agreement, the terms and conditions of this Compliance Agreement shall control. Except to the extent otherwise set forth herein, the terms and conditions of the License Agreement shall remain in full force and effect.

ENTIRE AGREEMENT. This Compliance Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof. This Compliance Agreement shall not be modified except by later written agreement signed by both parties.

IN WITNESS WHEREOF the parties have executed this Agreement this __ day of March, 1999.

Safeguard Computer Services, Inc.
By: Shlomo Kogos, President

La Rosa Del Monte Express, Inc.
By: Hiram Rodriguez, President

correction of software and Windows operating
systems bugs.

e.   Forms modifications, including modifications for
reports, letters, BOL and Order Service, Outside
agency forms and reports, Tariff Charges,
accounting department data merging and use, ddata
flow, and customization.

8.   Failure of Licensor to abide by the terms of this
maintenance agreement shall be deemed a substantial breach and
shall result in a waiver by Licensor of all Maintenance fees for
the period of said breach.

IN WITNESS WHEREOF the parties have executed this Agreement
this __ day of March, 1999.

_____
Safeguard Computer Services, Inc.
By: Shlomo Kogos, President

_____
La Rosa Del Monte Express, Inc.
By: Hiram Rodriguez, President

EXHIBIT "B"

## SOFTWARE DEVELOPMENT & LICENSE AGREEMENT

This Software Development & License Agreement ("Agreement") is made and entered into as the _3rd_ day of _March_ , 200_5_ by and between **La Rosa del Monte Express Inc.**, having an office at 1133-35 Tiffany Street, Bronx, New York, and its Affiliates (hereinafter collectively referred to as the "Client") and **Software For Moving, Inc.**, having an office located at 211 Warren St., Suite 305, Newark, New Jersey 07103 (hereinafter referred to as the "Developer").

## RECITALS

WHEREAS, the Client operates a moving and storage business in the continental United States, Puerto Rico and the Dominican Republic; and.

WHEREAS, the Developer specializes in providing software development and programming services for storage and moving companies, and is the owner of certain software applications and source code known as "Moving Manager for Windows" ("Moving Manager"); and

WHEREAS, the Developer is the owner of certain software applications and source code known as "Moving Manager Web Version" ("Software X"); and

WHEREAS, the Client now wishes to have Software X modified to meet clients' specific needs as described in the specifications attached hereto as **Exhibit "A"** ("Specifications") and wishes to have Developer maintain, and license to Client, Software X as modified ("New Software"); and

WHEREAS, the Developer wishes to accept the assignment to provide services to the Client pursuant to the terms and conditions set forth in this Agreement.

NOW, THEREFORE, the parties hereto, intending to be legally bound by the terms hereof, hereby enter into the following agreements:

## ARTICLE I
## DEFINITIONS

1       _Definitions_. In this Agreement, the following terms shall have the meanings set forth below:

        a)      "_Background IP_" means that intellectual property including know-how, secrets, designs, inventions, patents, patent applications, copyrights, maskworks, discoveries,

and binding on the parties to the arbitration. Judgment may be entered on the arbitrator's decision in any court of competent jurisdiction. The parties shall each bear their own attorney fees with respect to such Arbitration but shall share equally the other costs and expenses of arbitration.

¶ 13  *Controlling Law.*   The interpretation, construction and performance of this Agreement and the rights and remedies of each party hereunder shall in all respects be governed by the laws of the State of New York, without regard to the conflict of laws provisions thereof. The parties further agree that venue shall be exclusively in the County of Westchester, New York

IN WITNESS WHEREOF, the parties hereto have duly entered and executed this Agreement as of the day and year first above written and represent and warrant that the party executing this Agreement on their behalf is duly authorized.

Software for Moving, Inc.
By:  Shlomo Kogos, President

La Rosa Del Monte Express, Inc.
By:  *STEVEN DARZEN*
     *VP OPERATIONS*

16

EXHIBIT "C"

# MAINTENANCE AGREEMENT

This MAINTENANCE AGREEMENT ("Agreement") is made and entered into as of the ___3RD___ day of ___MARCH___, 2005, by and between **La Rosa del Monte Express Inc.**, a New York corporation, having an office at 1133-35 Tiffany Street, Bronx, New York, and its Affiliates (hereinafter collectively referred to as the "Client") and **Software For Moving, Inc.**, a _____, with its principal office at 211 Warren St., Suite 305, Newark, New Jersey 07103 (hereinafter referred to as the "Developer").

WHEREAS, Developer has agreed to modify and deliver certain Software ("Software") to the Client pursuant to a certain Development and License Agreement between them dated ___MARCH 3___, 2005 ("Development Agreement"); and

WHEREAS, the Client desires to have Developer maintain the Software and Developer desires to provide such maintenance services to Client.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, and intending to be legally bound hereby, the parties hereto agree as follows:

1. **Definitions.** Except as otherwise defined herein, all terms shall have the same meaning and definition given to them in the Development Agreement.

2. **Term.** This Agreement shall be in effect for successive one year terms beginning on the Effective Date of the Development Agreement, and shall automatically renew on each anniversary of the Effective Date unless (i) terminated in writing by the Client within thirty (30) days of any anniversary, (ii) terminated in writing by the Developer within thirty (30) days of the seventh (7th) anniversary of the Effective Date or (iii) sooner terminated by either party pursuant to Paragraph 9 below.

3. **Fees.** Client shall pay Developer a per user fee (each user location hereinafter referred to as a "Station") maintenance charge for the term of this Agreement. Agreed monthly maintenance charge is attached hereto as **Maintenance Schedule A**. Notwithstanding the effective date of this Agreement, payment of the maintenance fees shall commence only upon the completion of the Trial Period and training at each Station pursuant to the terms of the Development Agreement. In no event shall maintenance fees be required for any Station that (i) has not had the Software successfully installed, (ii) is incapable of using the Software because of Errors with the Software and/or (iii) has not had training completed by Developer.

4. **Stations.** It is contemplated by and between the parties that Client's operations shall in total contain 70 Stations spread out over Client's various national and international offices.

5. **Location of Maintenance.** Maintenance shall be provided at the location of the Station or by remote access, in accordance with the Client's needs. In the event that Developer

equally the other costs and expenses of arbitration. Notwithstanding the provisions of this paragraph 18, in the event that a party requires immediate injunctive relief, such party may obtain such relief in the Supreme Court of the State of New York, County of Westchester, and each party hereto submits to the jurisdiction of such Court.

19. **Controlling Law.** The interpretation, construction and performance of this Agreement and the rights and remedies of each party hereunder shall in all respects be governed by the laws of the State of New York, without regard to the conflict of laws provisions thereof. The parties further agree that venue shall be exclusively in the County of Westchester, New York

IN WITNESS WHEREOF, the parties have executed this Agreement this 3-rd day of _MARCH_, 2005.

Software for Moving, Inc.
By: Shlomo Kogos, President

La Rosa Del Monte Express, Inc.
By: STEVEN DALZELL
V P OPERATIONS

5

**MAINTENANCE SCHEDULE A**

| Year | Monthly per user | Total Monthly @ 70 users |
|---|---|---|
| First Year | $55 | $3,850 |
| Second Year | $55 | $3,850 |
| Third Year | $55 | $3,850 |
| Fourth Year | $60 | $4,200 |
| Fifth Year | $65 | $4,550 |
| Sixth Year | $70 | $4,900 |
| Seventh Year | $80 | $5,600 |

By: _____

Software for Moving, Inc.
Shlomo Kogos, President

By: _____

La Rosa Del Monte Express, Inc.

STEVEN DREZEL
VP OPERATIONS

6

EXHIBIT "D"

FROM (THU)MAR 1 2007 18:45/ST. 18:38/No. 7500000278 P 2

NYNB
Account: 04330124
Check: 003916
Amount: 10000.00
Date cleared: 8/29/2006
Run-batch-seq: 1-5-2480

This is a LEGAL COPY of your check. You can use it the same way you would use the original check.

BDM Transport Group, LLC

003916

⑆003916⑆ ⑆026003353⑆ 04330124⑈ ⑆0001000000⑆

08/29/2006
031000040 FRB-PHILA
⑆00502480P02 8/29/2006





EXHIBIT "E"

## Rob S Ocko

| | |
|---|---|
| **From:** | shlomo kogos [skogos@earthlink.net] |
| **Sent:** | Wednesday, December 13, 2006 7:33 AM |
| **To:** | Rob S Ocko |
| **Cc:** | hrodriguez@larosadelmomte.com; rmedina@larosadelmonte.com |
| **Subject:** | Re: La Rosa del Monte |

Dear Mr. Ocko, Your client have been using The Moving Manager Windows Version, and the Dos Version of the Moving manager last about 10 years. Now they are using the ASP version(Internet) version.

The agreement with your client (on the Window and Dos versions) was $58,000 per year in maintenance charge to you.

We got paid $58,000 (late 2004) for the Year 2005.
We got paid $30,000 (around Oct 2006) The balance for the year 2006 is at least $28,000.
If you would like to keep using the Windows and Dos program next year the price is $116,000 (out of contract price, double).
If you do not pay us for the balance of 2006, $28,000 which was due in late 2005.
You are in default of the contract and in breach of the license agreement.
Please stop using the Windows and Dos program, other wise you are in copy write violation.
Again if you use the program in 2007 you violation the copy write agreement and you will owe us for year maintenance.

Your client has about 12 location. Each location is in violation since the program installed in each location.
Please submit to us a list of address where we can serve paper in each location.
If not we will use the web site address or whatever we find.

Again this email is about the old programs.
You are in violation of the agreement, and you are breaking the copy write law.

Mr. Ecko, I am asking you to talk to your client and explain to them the possible loss as a result of copy write violation Copy write court is different then small claim court.
That what the client knows a lot about, but not copy write court.

I had experience in the past with moving companies that did not want to pay maintenance and some who used the program after the contract expired.
We won all those cases.
The last mover paid $42,000 for one location.
If you want me to get you the info, I will do.
Maybe your client can win in small claim court, they will loss in federal court if the subject is copy write.

Again all I am asking is what due to me.

PLEASE ADVICE YOUR CLIENT THAT IF WE SUE HIM ON COPYWRITE VIALATION, HE MIGHT HAVE TO GET A COPYWRITE LAWYER, WHICH I THINK IT IS NOT YOU.

1/5/2007

EXHIBIT "F"

## Rob S Ocko

From:      Philip Zukowsky [paz@chklaw.com]
Sent:      Friday, December 22, 2006 2:01 PM
To:        Rob S Ocko
Cc:        shlomo kogos
Subject:   La Rosa Del Monte

Software for Moving is seeking to collect the following amounts from La Rosa Del Monte.

1. Dos and Window Program. The annual maintenance/license fee for the use of this program is $58,000. La Rosa has paid the annual fee in full through 2005. For 2006 it has only paid $30,000 (which payment was made in August 2006 although the annual fee is required to be paid in January). Thus, for 2006 La Rosa owes $28,000. If La Rosa chooses to use SFM's Dos and Window Program in 2007, an additional $58,000 is due on January 1, 2007.

2. New SFM Program. La Rosa contracted with SFM to use SFM's new server based program and for customization work to the program. The agreement called for payments to SFM of $295,000 payable no later than when La Rosa started to use the program, and an annual maintenance/license fee of $40,000 commencing in the month when La Rosa began using the program. La Rosa went live with the program in August. La Rosa has paid $242,500 of the $295,000 upfront money, so $52,500 of the upfront money is due and owing. There is also five months of fees due and owing, an additional $16,666. If La Rosa chooses to use SFM's New Program in 2007, an additional $40,000 is due on January 1, 2007.

In addition, two other fees were agreed to by La Rosa and SFM. The first was payment for enhancements to the program that La Rosa could accept or reject. An example of this is the Google Map feature that SFM added to the program. These total cost for these programs is $60,000. La Rosa can reject these enhancements and not have any payment obligations (in which case SFM will remove them from the program), or it can accept some or all of these enhancements. However, we want La Rosa to let us know their position on these as soon as possible.

The other fee was for "manifest planning" requested by La Rosa. This was additional customization requested by La Rosa. These are not optional like the fee discussed above. The total cost of the manifest planning enhancements is $50,000. However, SFM would be willing to discuss discounting this amount if La Rosa brings its account up to date promptly.

I look forward to hearing from you next week regarding this matter. However, as you can tell time is of the essence as beginning January 1, 2007, there will be additional fees dues from La Rosa. Best Regards and Merry Christmas to you.

Philip A. Zukowsky
Chernesky, Heyman & Kress P.L.L.
paz@chklaw.com
937-449-2842
937-449-2821 (fax)

=================================================
CIRCULAR 230 DISCLOSURE
=================================================
PURSUANT TO RECENTLY-ENACTED US TREASURY DEPT. REGULATIONS, WE ARE NOW REQUIRED TO ADVISE YOU THAT, UNLESS OTHERWISE EXPRESSLY INDICATED, ANY FEDERAL TAX ADVICE CONTAINED IN THIS COMMUNICATION, INCLUDING ATTACHMENTS AND ENCLOSURES, IS NOT INTENDED OR WRITTEN TO BE USED, AND MAY NOT BE USED, FOR THE PURPOSE OF (i) AVOIDING TAX-RELATED PENALTIES UNDER THE INTERNAL REVENUE CODE OR (ii) PROMOTING, MARKETING OR RECOMMENDING TO ANOTHER PARTY ANY TAX-RELATED MATTERS ADDRESSED HEREIN.

=================================================
PRIVILEGED AND CONFIDENTIALITY NOTICE
=================================================
THIS ELECTRONIC TRANSMISSION (AND/OR THE DOCUMENTS ACCOMPANYING IT) MAY CONTAIN CONFIDENTIAL INFORMATION

EXHIBIT "G"

## ADDENDUM TO
## SOFTWARE DEVELOPMENT & LICENSE AGREEMENT

By agreement of both parties, in the event the "Developer" has ceased operations, is no longer a viable operating entity or due to a situation, emergency or otherwise, in which the "Developer" is unable to provide contracted services, upgrades or maintenance as required for the continued and uninterrupted use of "Software X" by "Client", the "Client" shall contact the agent of the "Developer", Mr. Philip Zukowsky of the firm Chernesky, Heyman & Kress, P.L.L. located at 10 Courthouse Plaza SW, Suite 1100, Dayton, Ohio 45402, telephone 937-449-2800. Mr. Zukowsky will provide to "Client" at no additional charge (1) a copy of the source code for the program, (2) the right to make changes as necessary to source code for the continued and forever use of the program and (3) access to contact information of other companies utilizing "Moving Manager Web Version" so they may assist each other in maintaining the source code. The Client will be granted full ownership of the source code with the limitation that it cannot resell to others or allow to be installed at or used by a non-related entity of "Client".

Software for Moving, Inc.

By:   Shlomo Kogos, President

La Rosa Del Monte Express, Inc.

By:   STEVEN ONEILL
      VP OPERATIONS

*************** -COMM. JC^NAL- *********************** DATE MAR-02-2007 ** * TIME 16:01 ********

MODE = MEMORY TRANSMISSION                    START=MAR-02 15:37   END=MAR-02 16:01

FILE NO.=705

| STN NO. | COMM. | ONE-TOUCH/ ABBR NO. | STATION NAME/TEL. NO. | PAGES | DURATION |
|---------|-------|---------------------|------------------------|-------|----------|
| 001 | OK | ※ | 14014356529-1034 | 027/027 | 00:05:29 |
| 002 | BUSY | ※ | 19374634947 | 000/027 | 00:00:00 |

-HARRINGTON OCKO MONK  -

********************************* -914 686 4824  - ***** -                - ********

# Harrington, Ocko & Monk

**A LIMITED LIABILITY PARTNERSHIP**
Attorneys at Law

White Plains Office

81 Main Street – Suite 215
White Plains, NY 10601
Tel: (914) 686-4800
Fax: (914) 686-4824

Kevin J. Harrington, Partner
e-mail: kharrington@homlegal.com

New York City Office

52 Duane Street, 7th Floor
New York, NY 10007
Tel: (212) 227-8004

Reply to White Plains
Office

## FACSIMILE TRANSMISSION

March 2, 2007

**To:**   Kimberly F. Claxton, Case Manager          Fax No.: (401) 435-6529
          AMERICAN ARBITRATION ASSOCIATION

**CC:**   Philip A. Zukowsky, Esq.                   Fax No.: (937) 463-4947

**Re:**   *La Rosa Del Monte Express, Inc., Claimant, vs. Software*
          *For Moving, Inc., and Shlomo Kogos, as an Individual, Respondents.*
          Demand for Commercial Arbitration:
          American Arbitration Association, NY, NY (Case No.: 19 117 00027 07)

**From:**  Kevin J. Harrington, Esq.

**No./Pages:**   _27_ page(s), including cover sheet

**MESSAGE:**

### CONFIDENTIALITY NOTICE

This document contains confidential information subject to the attorney client privilege, which is intended to be read only by the person or persons named above. If you are not the recipient named above, DO NOT READ THE MATERIAL BELOW NOR ANY MATERIAL ATTACHED HERETO, but immediately (a) deliver it to the person or persons named above or (b) notify us by fax or telephone and destroy this document.

************** -COMM. J'  L- ***************** DATE MAR-02-2007 *   TIME 16:09 ********

    MODE = MEMORY TRANSMISSION            START=MAR-02 16:03     END=MAR-02 16:09

    FILE NO.=707

STN   COMM.   ONE-TOUCH/   STATION NAME/TEL. NO.                   PAGES   DURATION
NO.           ABBR NO.

001   OK      &            19374634947-1034                        027/027   00:05:05


                                          -HARRINGTON OCKO MONK    -

**************************************** -914 686 4824   - ***** ~          - *********

# Harrington, Ocko & Monk

**A LIMITED LIABILITY PARTNERSHIP**
Attorneys at Law

White Plains Office

81 Main Street – Suite 215
White Plains, NY 10601
Tel: (914) 686-4800
Fax: (914) 686-4824

Kevin J. Harrington, Partner
e-mail: kharrington@homlegal.com

New York City Office

52 Duane Street, 7th Floor
New York, NY 10007
Tel: (212) 227-8004

Reply to White Plains
Office

## FACSIMILE TRANSMISSION

March 2, 2007

| | | |
|---|---|---|
| **To:** | Kimberly F. Claxton, Case Manager<br>AMERICAN ARBITRATION ASSOCIATION | Fax No.: (401) 435-6529 |
| **CC:** | Philip A. Zukowsky, Esq. | Fax No.: (937) 463-4947 |

**Re:** *La Rosa Del Monte Express, Inc., Claimant, vs. Software For Moving, Inc., and Shlomo Kogos, as an Individual, Respondents.*
Demand for Commercial Arbitration:
<u>American Arbitration Association, NY, NY (Case No.: 19 117 00027 07)</u>

**From:** Kevin J. Harrington, Esq.

**No./Pages:** _27_ page(s), including cover sheet

**MESSAGE:**

## <u>CONFIDENTIALITY NOTICE</u>

This document contains confidential information subject to the attorney client privilege, which is intended to be read only by the person or persons named above. If you are not the recipient named above, DO NOT READ THE MATERIAL BELOW NOR ANY MATERIAL ATTACHED HERETO, but immediately (a) deliver it to the person or persons named above or (b) notify us by fax or telephone and destroy this document.

# EXHIBIT "F"

## To Rosenthal Declaration

(March 16, 2007 objection to jurisdiction filed with the AAA by Mr. Zukowsky on behalf of Software for Moving, Inc. and its President, Shlomo Kogos)

## AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| LA ROSA DEL MONTE EXPRESS, INC.<br><br>Claimant,<br><br>vs.<br><br>SOFTWARE FOR MOVING, INC. and<br>SHLOMO KOGOS, as an Individual,<br><br>Respondents. | Case No. 19 117 00027 07 |

## OBJECTION TO JURISDICTION

1.    LA ROSA DEL MONTE EXPRESS, INC. ("LA ROSA") filed a Demand for Arbitration (the "Demand") with the American Arbitration Association ("AAA") in February 2007 and the Demand was assigned the above Case No.

2.    LA ROSA claims as the basis for the AAA having jurisdiction in this case a certain Software Development and License Agreement (the "Exhibit B Agreement") that is attached as Exhibit "B" to the Demand.

3.    SOFTWARE FOR MOVING, INC. ("SFM") did not enter into the Exhibit B Agreement, nor did it otherwise agree to arbitrate its business transactions with LA ROSA.

4.    Because SFM has never agreed to arbitrate its business transactions with LA ROSA the AAA does not have jurisdiction over SFM or the subject matter of SFM's business transactions with LA ROSA.

5.    For the record, SFM has asked AAA for an immediate hearing on the jurisdiction issue but was refused.  SFM was told by AAA that it could only have an immediate hearing on the jurisdiction issue if LA ROSA agreed.  Thereafter, SFM asked LA ROSA to agree to an

# EXHIBIT "G"

## To Rosenthal Declaration

(March 21, 2007 letter from counsel for La Rosa responding to Mr. Zukowsky)

# Harrington, Ocko & Monk

### A LIMITED LIABILITY PARTNERSHIP
### Attorneys at Law

White Plains Office

**81 Main Street – Suite 215**
**White Plains, NY 10601**
Tel:   (914) 686-4800
Fax:  (914) 686-4824

**John T.A. Rosenthal, Esq.**
e-mail:  jrosenthal@homlegal.com

New York City Office

**52 Duane Street, 7th**
**Floor**
  **New York, NY  10007**
  Tel: (212) 227-8004

**Reply to White Plains**
**Office**

March 21, 2007

VIA E-MAIL @ claxtonk@adr.org
and FACSIMILE @ (401) 435-6529

Kimberly F. Claxton
Case Manager
American Arbitration Association
Northeast Case Management Center
950 Warren Avenue
East Providence, RI  02914

> Re:   Case No. 19 117 00027 07
>       La Rosa Del Monte Express, Inc. and
>       <u>Software for Moving, Inc. and Shlomo Kogos</u>

Dear Ms. Claxton:

We write to you at this time with regard to proceeding forward with the arbitration in the above-captioned matter.

As you indicated in our previous phone conversation with yourself and Mr. Zukowsky, counsel for Respondent Software for Moving, Inc. ("SFM"), SFM had until March 16, 2007 by which to file an Answer and/or Counterclaims in this matter.

We are now in receipt of SFM's Objection to Jurisdiction. As you indicated in your prior conference call with counsel for the parties in this matter, jurisdiction is an issue for the arbitrator to decide pursuant to the AAA's Commercial Arbitration Rules. *See* AAA Commercial Arbitration Rules R-7(a)-(c).   Rule 7(a)-(c) specifically provides that a party is to object to jurisdiction no later than the date it is required to file an Answer.   Rule 7(c) also provides that the arbitrator may rule on such jurisdictional objection as a preliminary matter. Thus, we interpret SFM filing its Objection to Jurisdiction with the AAA as its Answer in this matter.

Kimberly F. Claxton - AAA
March 21, 2007
Page 2

Pursuant to your previous instructions, we request that AAA provide each party and its counsel with a list of potential arbitrators from whom we have to choose, and that the parties proceed forward with the arbitration as expeditiously as possible, as provided for by the AAA Commercial Arbitration Rules.

We would also request at this time that counsel for SFM provide us with the current address of SFM as well as the current address of SFM's President, Mr. Kogos. We make this request in order to expedite service of papers in this matter.

Thanking you in advance for your time and consideration to this matter.

Respectfully submitted,

John T.A. Rosenthal

JTR/sg

cc: Philip A. Zukowsky, Esq.
VIA E-MAIL @ paz@chk.law and FACSIMILE @ (937) 463-4947

```
++++++++++++ -COMM  JURNAL- ++++++++++++++ DATE MAR-21-200   ++++ TIME 15:26 ++++++++

        MODE = MEMORY TRANSMISSION          START=MAR-21 15:07    END=MAR-21 15:26

        FILE NO.=122

    STN    COMM.   ONE-TOUCH/   STATION NAME TEL. NO.               PAGES     DURATION
    NO.            ABBR NO.

    001    BUSY      ☎          1-401-435-6529                      000/003   00:00:00
    002    OK        ☎          1937-463-4947-1983                  003/003   00:00:30


                                             -HARRINGTON OCKO MONK      -

    +++++++++++++++++++++++++++++++++++++++ -914 686 4824    - ***** -               - *********
```

# Harrington, Ocko & Monk

**A LIMITED LIABILITY PARTNERSHIP**
Attorneys at Law

White Plains Office

81 Main Street – Suite 215
White Plains, NY 10601
Tel:  (914) 686-4800
Fax:  (914) 686-4824

Kevin J. Harrington, Partner
e-mail: kharrington@homlegal.com

New York City Office

52 Duane Street, 7th Floor
New York, NY 10007
Tel: (212) 227-8004

Reply to White Plains Office

## FACSIMILE TRANSMISSION

March 21, 2007

| | | |
|---|---|---|
| **To:** | Kimberly F. Claxton, Case Manager<br>AMERICAN ARBITRATION ASSOCIATION | Fax No.: (401) 435-6529 |
| **CC:** | Philip A. Zukowsky, Esq. | Fax No.: (937) 463-4947 |
| **Re:** | *La Rosa Del Monte Express, Inc., Claimant, vs. Software*<br>*For Moving, Inc., and Shlomo Kogos, as an Individual, Respondents.*<br><u>Case No.: 19 117 00027 07</u> | |
| **From:** | Kevin J. Harrington, Esq. | |
| **No./Pages:** | 3 page(s), including cover sheet | |

**MESSAGE:**

## CONFIDENTIALITY NOTICE

This document contains confidential information subject to the attorney client privilege, which is intended to be read only by the person or persons named above. If you are not the recipient named above, **DO NOT READ THE MATERIAL BELOW NOR ANY MATERIAL ATTACHED HERETO**, but immediately (a) deliver it to the person or persons named above or (b) notify us by fax or telephone and destroy this document.

**Susan Glenn**

| | |
|---|---|
| **From:** | Susan Glenn |
| **Sent:** | Wednesday, March 21, 2007 3:35 PM |
| **To:** | 'claxtonk@adr.org' |
| **Cc:** | 'paz@chk.law' |
| **Subject:** | LaRosa Del Monte Express and Software for Moving and Kogos, Case No. 19 117 00027 07 |

**Susan Glenn**

| | |
|---|---|
| **From:** | Susan Glenn |
| **Sent:** | Wednesday, March 21, 2007 3:44 PM |
| **To:** | 'paz@chklaw.com' |
| **Subject:** | Case No. 19 117 00027 07, La Rosa Del Monte Express and Software for Moving and Kogos |

# EXHIBIT "H"

## To Rosenthal Declaration

(March 22, 2007 letter from Ms. Claxton of the AAA to counsel for SFM, Mr. Zukowsky, and counsel for La Rosa)

 **American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Northeast Case Management Center*
Catherine Shanks
Vice President
Christopher Fracassa, Yvonne L. Baglini
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

March 22, 2007

<u>VIA ELECTRONIC MAIL</u>

Kevin J. Harrington, Esq./ Robert S. Ocko, Esq.
Harrington, Ocko & Monk, LLP
81 Main Street, Suite 215
White Plains, NY 10601

Philip A. Zukowsky, Esq.
Chernesky Heyman & Kress
10 Courthouse Plaza SW, Suite 1100
Dayton, OH 45402

Re: 19 117 00027 07
       La Rosa Del Monte Express, Inc.
       and
       Software for Moving, Inc.and Shlomo Kogos

Dear Counsel:

This will acknowledge receipt of a letter dated March 21, 2007, from Mr. Rosenthal, a copy of which we note has been exchanged with the other party.

The Association has carefully reviewed the positions and contentions of the parties as set forth in their correspondence. The claimant has met the filing requirements of the rules by filing a demand for arbitration providing for administration by the American Arbitration Association under its rules.

Accordingly, in the absence of an agreement by the parties or a court order staying this matter, the Association will proceed with administration pursuant to the Rules. The parties may wish to raise this issue, upon appointment of the arbitrator.

The AAA serves as a neutral administrative agency and does not generally appear or participate in judicial proceedings relating to arbitration. The AAA should not be named as a party-defendant. The Rules state that the AAA is not a "necessary party". The AAA will abide by an order issued by the courts and the parties are requested to keep us informed as to the outcome.

In accordance with the Rules, the Association encloses a list of names selected from our roster from which one arbitrator is to be appointed. The parties are encouraged to agree upon an arbitrator and advise the Association of their agreement within 15 days from the date of this letter. Absent an agreement of the parties, each party shall independently strike the names objected to, number the remaining names in order of preference and return the list to the Association on or before April 6, 2007. If the list of arbitrators is not returned by the date specified, the arbitrator will be appointed as authorized in the Rules. Please leave as many names as possible. If the neutral arbitrator cannot be appointed from the list provided, the Association shall administratively appoint the arbitrator as authorized in the Rules without the submission of an additional list. The parties are to exchange copies of all correspondence except the checklist for conflicts and the arbitrator lists.

The list for selection of arbitrators is also available on-line through AAA's WebFile. The parties may strike and rank their preferences, which will be kept confidential.

Please note the arbitrators' rates of compensation indicated on the enclosed resumes. The Association requires advance deposits calculated by the number of days the parties have suggested will be necessary, in addition to the pre-hearing time that the arbitrator may charge pursuant to the arbitrator's resume.

Upon appointment of the arbitrator a preliminary hearing will be set.

Sincerely,


Kimberly F. Claxton
Case Manager
401 431 4793
ClaxtonK@adr.org

*Supervisor Information: Karen Fontaine, 401 431 4798, fontainek@adr.org*

# EXHIBIT "I"

## To Rosenthal Declaration

(April 16, 2007 letter from Ms. Claxton of the AAA)

 **American Arbitration Association**
*Dispute Resolution Services Worldwide*

Northeast Case Management Center
Catherine Shanks
Vice President
Christopher Fracasso, Yvonne L. Baglini
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

# FAX

Date: April 16, 2007

To
Kevin J. Harrington, Esq.
Harrington, Ocko & Monk, LLP
81 Main Street, Suite 215
White Plains, NY 10601

Robert S. Ocko, Esq.
Harrington, Ocko & Monk, LLP
81 Main Street, Suite 215
White Plains, NY 10601

Philip A. Zukowsky, Esq.
Chernesky Heyman & Kress
10 Courthouse Plaza SW, Suite 1100
Dayton, OH 45402

Fax Number: 914 686 4824
                    937 449 2821

From: Kimberly F. Claxton

Number of Pages: (including cover) 6

Re: 19 117 00027 07
     La Rosa Del Monte Express, Inc.
     and
     Software for Moving, Inc. and Shlomo Kogos

MESSAGE:

THIS FAX TRANSMISSION IS INTENDED ONLY FOR THE USE OF THE PERSON TO WHOM IT IS ADDRESSED. IT MAY CONTAIN INFORMATION THAT IS CONFIDENTIAL, PRIVILEGED OR OTHERWISE EXEMPT FROM DISCLOSURE. IF YOU ARE NOT THE INTENDED RECIPIENT OR THE PERSON AUTHORIZED TO DELIVER THIS FAX TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OF THIS FAX IS PROHIBITED. IF YOU HAVE RECEIVED THIS FAX IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AT THE NUMBER LISTED ABOVE AND RETURN THE ORIGINAL FAX TO US BY FIRST CLASS MAIL AT THE ABOVE ADDRESS.

 **American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Northeast Case Management Center*
Catherine Shanks
Vice President
Christopher Fracassa, Yvonne L. Baglini
Assistant Vice Presidents

April 16, 2007

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

<u>VIA</u>
<u>FACSIMILE/W/ENCLOSURES</u>

Kevin J. Harrington, Esq.
Harrington, Ocko & Monk, LLP
81 Main Street, Suite 215
White Plains, NY 10601

Robert S. Ocko, Esq.
Harrington, Ocko & Monk, LLP
81 Main Street, Suite 215
White Plains, NY 10601

Philip A. Zukowsky, Esq.
Chernesky Heyman & Kress
10 Courthouse Plaza SW, Suite 1100
Dayton, OH 45402

Re: 19 117 00027 07
    La Rosa Del Monte Express, Inc.
    and
    Software for Moving, Inc. and Shlomo Kogos

Dear Parties:

This will advise the parties the Association has appointed Richard S. Mandel as arbitrator. Enclosed please find the arbitrator's duly executed Notice of Appointment and Notice of Compensation Arrangements.

The arbitrator is available to conduct a preliminary hearing on the following dates:

> May 1, 2007
> May 2, 2007
> May 3, 2007

Please provide your availability by April 20, 2007. If a response is not received by the Association by that date, we will assume all dates and times are acceptable and a preliminary hearing will be set.

Sincerely,

Kimberly Claxton

Kimberly F. Claxton
Case Manager
401 431 4793
ClaxtonK@adr.org

*Supervisor Information: Karen Fontaine, 401 431 4798, fontainek@adr.org*

Encl.

cc:    Richard S. Mandel, Esq.

# AMERICAN ARBITRATION ASSOCIATION

**In the Matter of Arbitration Between:**

Re: 19 117 00027 07
La Rosa Del Monte Express, Inc.
and
Software for Moving, Inc. and Shlomo Kogos

## Notice of Compensation Arrangements

To:    Richard S. Mandel, Esq.

You have been invited to serve as an arbitrator in the above matter. It is important that you understand the terms of your compensation and the role you play in ensuring that you receive payment for fees and expenses that you may incur during your service. This invitation to serve is based on our assumption that unless your panel biography states otherwise, you are willing to comply with the Association's *Billing Guidelines for Commercial, Construction, and Employment Neutrals,* which are enclosed. If you expect to assess charges that fall outside those guidelines and those charges are not detailed on your panel biography, you must notify the Association prior to accepting your appointment so that the parties can determine whether they still seek your services as an arbitrator.

### Your Compensation

This matter is being administered under the (Regular) procedures of the (Commercial) Arbitration Rules. As such, you will be compensated at the following rates, per the rate structure indicated on your biographical record:

| | |
|---|---|
| Hearing Time: | $380.00 per (hour) |
| Study Time: | $380.00 per (hour) |

Inasmuch as you are agreeing to serve in this matter at the above rate, any subsequent change to your published rate after your appointment will not apply to this case.

### Your Expenses

On most cases, your expenses should be nominal and will be reimbursed immediately after you submit them. For any single expense over $25, please include a receipt with your request for reimbursement.

If you anticipate that you will incur significant expenses, such as airfare or hotel room costs, please advise your Case Manager in advance so that the parties can be asked to make deposits prior to you incurring the expense.

### Deposits and Payment

Payment for your compensation is the obligation of the parties and it is understood that the American Arbitration Association has no liability, direct or indirect, for such payment. During the course of the proceeding the Case Manager will ask that you provide an estimate of the amounts needed to cover your fees. Generally this occurs immediately after the preliminary hearing, although on longer or more complex cases it can occur immediately upon appointment or after each series of hearings.

Unless you specify otherwise, the parties are advised that deposits are due 30 days prior to the first hearing. No later than two weeks prior to the hearing, the Case Manager will advise you of the total amount on deposit. Should the parties fail to make deposits in a timely manner, you must determine whether to go forward or suspend the proceedings until such time as deposits have been made. If you decide to go forward without full deposits, you may not subsequently delay the rendering of the award for lack of payment of your fees *The time to deal with this issue*

*is prior to the commencement of the hearings.* Should you decide to suspend the proceedings, your Case Manager can assist you in issuing an appropriate order to the parties.

If you realize that you are spending more time on this matter than you originally estimated, it is your obligation to inform the Case Manager *prior to exhausting the current deposit.* The Case Manager will then make arrangements with the parties for additional deposits per your instructions.

In order to receive payment, please submit bills promptly. Your bills should be submitted in a format that is presentable to the parties, should detail the dates on which the charges were incurred and must correspond with the terms of compensation outlined herein. Upon receipt, the AAA will release payment from the amounts deposited by the parties. Should there be insufficient funds on deposit, you will not receive payment until the parties have made additional deposits. Further, we will not use one party's deposit to cover another party's obligation without written permission to do so.

In the event your Award is delivered prior to payment by the parties of the agreed upon compensation, the Association is authorized but not obligated to seek to collect these monies on your behalf by all lawful means to represent you in any action or proceeding for such recovery and to file a claim in any bankruptcy or insolvency proceeding for such monies. The Association may prosecute and receive any recovery on behalf of the undersigned and has full authority to compromise or settle such claims as may be, in its discretion, appropriate. However, under no circumstances whatsoever will the Association be liable for any failure to collect any or all the monies due. The Association is authorized to subtract a reasonable amount for collection and attorney's fees.

### Failure to Disclose and Forfeiting Compensation

As an arbitrator in this matter, you have an ongoing obligation to disclose any direct or indirect relationship with the case participants. Your failure to make disclosures in a timely manner would be a serious transgression and may be grounds for your removal as arbitrator from this case and/or from the AAA's Roster of Neutrals. Should this occur, you may be required to forfeit the compensation for the time you spent on this matter after you should have made such disclosures.

If you are willing to serve on this matter per the compensation terms detailed above, please complete and sign the following section and return it, along with your Notice of Appointment, to your Case Manager.

### ARBITRATOR MUST COMPLETE THE FOLLOWING SECTION

Compensation payments, and the corresponding IRS reporting, will be made to either to you individually (attributed to your Social Security Number) or to your employer (attributed to the Employer Identification Number), based on the preference you indicated and as recorded in your panel record. If you are unsure of your current payment preference, you may contact your Case Manager or the AAA Department of Neutrals' Services. Promptly inform the AAA if this information is incorrect or changes during the case, or if an address correction is necessary.

If the AAA does not have the payee's tax information on record, we must withhold 31% of compensation payments, as required by the IRS. Reimbursements of expenses are not subject to withholding and are not reported to the IRS.

I am willing to accept appointment on this matter under the compensation terms detailed above.

Signed: _____ Date: 4/12/07

COWAN LIEBOWITZ & LATMAN

☒ 004

# AMERICAN ARBITRATION ASSOCIATION

**In the Matter of Arbitration Between:**

Re: 19 117 00027 07
    La Rosa Del Monte Express, Inc.
    and
    Software for Moving, Inc. and Shlomo Kogos

## NOTICE OF APPOINTMENT

**To:**   Richard S. Mandel, Esq.

> It is most important that the parties have complete confidence in the arbitrator's impartiality. Therefore, please disclose any past or present relationship with the parties, their counsel, or potential witnesses, direct or indirect, whether financial, professional, social or of any other kind. This is a continuing obligation throughout your service on the case and should any additional direct or indirect contact arise during the course of the arbitration or if there is any change at any time in the biographical information that you have provided to the AAA, it must also be disclosed. Any doubts should be resolved in favor of disclosure. If you are aware of direct or indirect contact with such individuals, please describe it below. Failure to make timely disclosures may forfeit your ability to collect compensation. The Association will call the disclosure to the attention of the parties.

You will not be able to serve until a duly executed Notice of Appointment is received and on file with the Association. Please review the attached *Disclosure Guidelines* and, after conducting a conflicts check, answer the following questions and complete the remainder of this Notice of Appointment:

|  | Yes | No |
|---|---|---|
| 1. Do you or your law firm presently represent any person in a proceeding involving any party to the arbitration? | ☐ | ☒ |
| 2. Have you represented any person against any party to the arbitration? | ☐ | ☒ |
| 3. Have you had any professional or social relationship with counsel for any party in this proceeding or the firms for which they work? | ☐ | ☒ |
| 4. Have you had any professional or social relationship with any parties or witnesses identified to date in this proceeding or the entities for which they work? | ☐ | ☒ |
| 5. Have you had any professional or social relationship of which you are aware with any relative of any of the parties to this proceeding, or any relative of counsel to this proceeding, or any of the witnesses identified to date in the proceeding? | ☐ | ☒ |
| 6. Have you, any member of your family, or any close social or business associate ever served as an arbitrator in a proceeding in which any of the identified witnesses or named individual parties gave testimony? | ☐ | ☒ |
| 7. Have you, any member of your family, or any close social or business associate been involved in the last five years in a dispute involving the subject matter contained in the case, which you are assigned? | ☐ | ☒ |
| 8. Have you ever served as an expert witness or consultant to any party, attorney, witness or other arbitrator identified in this case? | ☐ | ☒ |

9. Have any of the party representatives, law firms or parties appeared before you in past arbitration cases?

10. Are you a member of any organization that is not listed on your panel biography that may be relevant to this arbitration?

11. Have you ever sued or been sued by either party or its representative?

12. Do you or your spouse own stock in any of the companies involved in this arbitration?

13. If there is more than one arbitrator appointed to this case, have you had any professional or social relationships with any of the other arbitrators?

14. Are there any connections, direct or indirect, with any of the case participants that have not been covered by the above questions?

Should the answer to any question be "Yes", or if you are aware of any other information that may lead to a justifiable doubt as to your impartiality or independence or create an appearance of partiality, then describe the nature of the potential conflict(s) on an attached page.

Please indicate one of the following:

☑ – I have conducted a check for conflicts and have nothing to disclose.

☐  I have conducted a check for conflicts and have made disclosures on an attached sheet.

## THE ARBITRATOR'S OATH

State of  New York  }
County of  New York  }  SS:

I attest that I have reviewed the panel biography which the American Arbitration Association provided to the parties on this case and confirm it is current, accurate and complete.

I attest that I have diligently conducted a conflicts check, including a thorough review of the information provided to me about this case to date, and that I have performed my obligations and duties to disclose in accordance with the Rules of the American Arbitration Association, Code of Ethics for Commercial Arbitrators and/or all applicable statutes pertaining to arbitrator disclosures.

I understand that my obligation to check for conflicts and make disclosures is ongoing for the length of my service as an arbitrator in this matter, and that failing to make appropriate and timely disclosures may result in my removal as arbitrator from the case and/or my removal from the AAA's Roster of Neutrals.

The Arbitrator being duly sworn, hereby accepts this appointment, and will faithfully and fairly hear and decide the matters in controversy between the parties in accordance with their arbitration agreement, the Code of Ethics, and the rules of the American Arbitration Association will make an Award according to the best of the arbitrator's understanding.

Dated:  4/12/08          Signed: _____

Sworn before me this 12 day of April , 2007

_____
SHARON LYNCH
NOTARY PUBLIC, State of New York
No. 30-5749261
Qualified in Nassau County
95%

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

-----------------------------------------------------------

SOFTWARE FOR MOVING, INC., a New
York Corporation,

       **Plaintiff,**

   v.

LA ROSA DEL MONTE EXPRESS, INC., a
New York Corporation, and LA ROSA DEL
MONTE  EXPRESS (CHICAGO), LLC, an
Illinois Limited Liability Company,

      **Defendants.**

-----------------------------------------------------------

**CASE NUMBER:  07 C 1839**

**Judge Wayne R. Andersen**

**Magistrate Judge Jeffrey Cole**


<u>**NOTICE OF MOTION**</u>

TO:  Francis J. Leyhane, III, Esq.
   Leyhane & Associates, Ltd.
   205 West Randolph Street
   Suite 1320
   Chicago, IL 60606


  PLEASE TAKE NOTICE that on <u>Thursday, May 10, 2007, at 9:00 a.m.,</u> or as soon

thereafter as parties may be heard, the undersigned will appear before the Honorable Wayne R.

Andersen, or any judge sitting in his stead, in the courtroom normally occupied by him, in the

United States District Courthouse at 219 South Dearborn Street, Chicago, Illinois, and then and

there present Defendants' MOTION TO DISMISS PLAINTIFF'S COMPLAINT.

Contemporaneously, Defendants are submitting a Memorandum of Law in Support of their

Motion.  Copies of said Motion and Memorandum of Law have been filed with the Clerk of the

Court.

Dated:  April 30, 2007

Respectfully submitted,

__s/ David M. Dolendi_____

Catalina J. Sugayan
David M. Dolendi
LORD, BISSELL & BROOK LLP
111 S. Wacker Dr.
Chicago, IL 60606
312.443.0700

***Attorneys for Defendants La Rosa Del Monte
Express, Inc. and La Rosa Del Monte Express,
LLC***

## CERTIFICATE OF SERVICE

The undersigned  herby certifies that the foregoing **NOTICE OF MOTION**  was served on the following:

| | |
|---|---|
| Francis J. Leyhane, III, Esq.<br>Leyhane & Associates, Ltd.<br>205 West Randolph Street<br>Suite 1320<br>Chicago, IL 60606 | |

via electronic mail and U.S. Mail on this 30th day of April, 2007.

_s/  David M. Dolendi_
David M. Dolendi

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 3.0**
**Eastern Division**

Software For Moving, Inc.

                        Plaintiff,

v.                                     Case No.: 1:07−cv−01839

                                     Honorable Wayne R. Andersen

La Rosa Del Monte Express, Inc., et al.

                        Defendant.

---

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Monday, April 30, 2007:

      MINUTE entry before Judge Jeffrey Cole : Initial status hearing set for 5/11/2007 at 9:00 A.M. before Magistrate Judge Cole in Courtroom 1838. All parties are directed to refer to Judge Cole's "Initial Joint Status Report Procedures", found on "www.ilnd.uscourts.gov" and to comply with its directives before appearing at the status hearing. Mailed notice by judge's staff.(srb,)

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

(Revised 02/01/01)

# United States District Court Northern District of Illinois

## APPLICATION FOR LEAVE TO APPEAR PRO HAC VICE

RECEIVED

MAY 0 2 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| Case Title: | Software for Moving, Inc., a New York Corporation      Plantiff(s) |
| | VS. |
| | La Rosa Del Monte Express, Inc., a New York Corporation, and La Rosa Del Monte Express (Chicago), LLC, an Illinois LLC      Defendant(s) |
| Case Number: 07 C 1839 | Judge: Wayne R. Andersen |

I, Kevin J. Harrington _____ hereby apply to the Court

under Local Rule 83.14 for permission to appear and participate in the above-entitled action on behalf of

Defendants _____ by whom I have been retained.

I am a member in good standing and eligible to practice before the following courts:

| Title of Court | DateAdmitted |
|---|---|
| New York State Bar, First Department | 03/01/82 |
| United States District Court - Southern District of New York | 03/08/83 |
| United States District Court - Eastern Ditrict of New York | 03/28/83 |
| United States Supreme Court | 03/22/04 |

**\*Please see Attachment A for more info.**
I have currently, or within the year preceding the date of this application, made pro hac vice applications to this Court in the following actions:

| Case Number | Case Title | Date of Application (Granted or Denied)\* |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

\*If denied, please explain:
(Attach additional form if necessary)

Pursuant to Local Rule 83.15(a), applicants who do not have an office within the Northern District of Illinois must designate, at the time of filing their initial notice or pleading, a member of the bar of this Court having an office within this District upon who service of papers may be made.

Has the applicant designated local counsel?      Yes  ☑      No  ☐

If you have not designated local counsel, Local Rule 83.15(b) provides that the designation must be made within thirty (30) days.

## **Attachment A**

| Title of Court | Date Admitted |
|---|---|
| United States District Court, District of Colorado | 05/18/2001 |
| United. States Court of Appeals | 01/15/1997 |
| United States District Court, North District of New York | 03/14/2006 |

Has the applicant ever been:

| | | |
|---|---|---|
| censured, suspended, disbarred, or otherwise disciplined by any court? | Yes ☐ | No ☑ |
| or is the applicant currently the subject of an investigation of the applicant's professional conduct? | Yes ☐ | No ☑ |
| transferred to inactive status, voluntarily withdrawn, or resigned from the bar of any court? | Yes ☐ | No ☑ |
| denied admission to the bar of any court? | Yes ☐ | No ☑ |
| held in contempt of court? | Yes ☐ | No ☑ |

NOTE: If the answer to *any* of the above questions is yes, please attach a brief description of the incident(s) and the applicant's current status before any court, or any agency thereof, where disciplinary sanctions were imposed, or where an investigation or investigations of the applicant's conduct may have been instituted.

I have read the Rules of Professional Conduct for the Northern District of Illinois, effective November 12, 1991 (Local Rules 83.50 through 83.58), and the Standards for Professional Conduct within the Seventh Federal Judicial Circuit, effective December 15, 1992, and will faithfully adhere to them. I declare under penalty of perjury that the foregoing is true and correct.

04/26/07
_____
Date

_____
Signature of Applicant

| Applicant's Name | Last Name Harrington | First Name Kevin | Middle Name/Initial J. |
|---|---|---|---|
| Applicant's Law Firm | Harrington, Ocko & Monk, LLP | | |

| Applicant's Address | Street Address (include suite or room number) 81 Main Street, Suite 215 | | | State Bar Number 2035723 |
|---|---|---|---|---|
| | City White Plains | State NY | ZIP Code 10601 | Work Phone Number 914-686-4800 |

(The pro hac vice admission fee is $100.00 for cases filed before February 1, 2001, and $50.00 for cases filed on or after that date, and shall be paid to the Clerk. No admission under Rule 83.14 is effective until such time as the fee has been paid.)

NOTE: Attorneys seeking to appear pro hac vice may wish to consider filing a petition for admission to the general bar of this Court. The fee for admission to the General Bar is $150.00 The fee for pro hac vice admission is $100.00 for cases filed before February 1, 2001, and $50.00 for cases filed on or after that date. Admission to the general bar permits an attorney to practice before this Court. Pro hac vice admission entitles an attorney to appear in a particular case only. Application for such admission must be made in each case; and the admission fee must be paid in each case.

**ORDER**

IT IS ORDERED that the applicant herein may appear in the above-entitled case.

DATED: _May 4, 2007_     _Wayne C. Lee_

_____
United States District Judge

PAID
RECEIPT # 10330570
MAY 0 2 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

(Revised 02/01/01)

# United States District Court   Northern District of Illinois
## APPLICATION FOR LEAVE TO APPEAR PRO HAC VICE

RECEIVED
MAP 02 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| Case Title: | Software for Moving, Inc., a New York Corporation | Plaintiff(s) |
| | VS. | |
| | La Rosa Del Monte Express, Inc., a New York Corporation, and La Rosa Del Monte Express (Chicago), LLC an Illinois LLC | Defendant(s) |

| Case Number: 07 C 1839 | Judge: Wayne R. Andersen |

I,   John T.A. Rosenthal                                          hereby apply to the Court

under Local Rule 83.14 for permission to appear and participate in the above-entitled action on behalf of

Defendants                                          by whom I have been retained.

I am a member in good standing and eligible to practice before the following courts:

| Title of Court | DateAdmitted |
| --- | --- |
| California | 01/26/00 |
| New York | 11/18/02 |
| Southern District of New York | 01/28/03 |
| See Attached | |

I have currently, or within the year preceding the date of this application, made pro hac vice applications to this Court in the following actions:

| Case Number | Case Title | Date of Application (Granted or Denied)* |
| --- | --- | --- |
| | | |
| | | |
| | | |
| | | |

*If denied, please explain:
(Attach additional form if
necessary)

Pursuant to Local Rule 83.15(a), applicants who do not have an office within the Northern District of Illinois must designate, at the time of filing their initial notice or pleading, a member of the bar of this Court having an office within this District upon who service of papers may be made.

Has the applicant designated local counsel?   Yes  ✓      No  ☐

If you have not designated local counsel, Local Rule 83.15(b) provides that the designation must be made within thirty (30) days.

| Title of Court | Date Admitted |
|---|---|
| Eastern District of New York | 02/01/03 |
| Western District of Michigan | 08/01/01 |
| Northern District of New York | 03/01/06 |
| Central District of California | 07/01/06 |

Has the applicant ever been:

censured, suspended, disbarred, or otherwise disciplined by any court?  Yes ☐  No ☑

or is the applicant currently the subject of an investigation of the applicant's professional conduct?  Yes ☐  No ☑

transferred to inactive status, voluntarily withdrawn, or resigned from the bar of any court?  Yes ☐  No ☑

denied admission to the bar of any court?  Yes ☐  No ☑

held in contempt of court?  Yes ☐  No ☑

NOTE: If the answer to *any* of the above questions is yes, please attach a brief description of the incident(s) and the applicant's current status before any court, or any agency thereof, where disciplinary sanctions were imposed, or where an investigation or investigations of the applicant's conduct may have been instituted.

I have read the Rules of Professional Conduct for the Northern District of Illinois, effective November 12, 1991 (Local Rules 83.50 through 83.58), and the Standards for Professional Conduct within the Seventh Federal Judicial Circuit, effective December 15, 1992, and will faithfully adhere to them. I declare under penalty of perjury that the foregoing is true and correct.

4/26/07

_____
Date

_____
Signature of Applicant

| Applicant's Name | Last Name | First Name | Middle Name/Initial |
|---|---|---|---|
| | Rosenthal | John | T.A. |

| Applicant's Law Firm | Harrington, Ocko & Monk, LLP |
|---|---|

| Applicant's Address | Street Address (include suite or room number) | | State Bar Number |
|---|---|---|---|
| | 81 Main Street, Suite 215 | | CA 206126 |

| City | State | ZIP Code | Work Phone Number |
|---|---|---|---|
| White Plains | NY | 10601 | (914) 686-4800 |

**(The pro hac vice admission fee is $100.00 for cases filed before February 1, 2001, and $50.00 for cases filed on or after that date, and shall be paid to the Clerk. No admission under Rule 83.14 is effective until such time as the fee has been paid.)**

NOTE: Attorneys seeking to appear pro hac vice may wish to consider filing a petition for admission to the general bar of this Court. The fee for admission to the General Bar is $150.00 The fee for pro hac vice admission is $100.00 for cases filed before February 1, 2001, and $50.00 for cases filed on or after that date. Admission to the general bar permits an attorney to practice before this Court. Pro hac vice admission entitles an attorney to appear in a particular case only. Application for such admission must be made in each case; and the admission fee must be paid in each case.

**PAID** (Stamp)
RECEIPT # 10339369
MAY 0 2 2007
**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

## ORDER

IT IS ORDERED that the applicant herein may appear in the above-entitled case.

DATED: May 4, 2007

_____

_____
United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

--------------------------------------------------------------

SOFTWARE FOR MOVING, INC., a New
York Corporation,

                       **Plaintiff,**

        **v.**

LA ROSA DEL MONTE EXPRESS, INC., a
New York Corporation, and LA ROSA DEL
MONTE  EXPRESS (CHICAGO), LLC, an
Illinois Limited Liability Company,

                       **Defendants.**

--------------------------------------------------------------

**CASE NUMBER:  07 C 1839**

**Assigned Judge: Wayne R. Andersen**

**Magistrate Judge: Jeffrey Cole**

### INITIAL JOINT STATUS REPORT

Pursuant to Federal Rule of Civil Procedure 26(f) and Magistrate Judge Cole's Order of

April 30, 2007, the parties to the above-captioned proceeding, represented by Francis J. Leyhane,

III (Leyhane & Associates, Ltd.) for Plaintiff, Software for Moving, Inc. ("SFM"), and Kevin J.

Harrington and John T.A. Rosenthal (Harrington, Ocko & Monk, LLP) for Defendants, La Rosa

Del Monte Express, Inc. ("La Rosa") and La Rosa Del Monte Express (Chicago), LLC ("La

Rosa Chicago", together with La Rosa "Defendants") submit this Joint Initial Status Report:

**A.**      **NATURE OF CASE:**

      **1.**      **Please attach a copy, if readily available to you, of the referral order.**

Referred for discovery supervision only; copy of the April 26 Order is attached as Exhibit

"A".

      **2.**      **A summary of the claims asserted in the complaint or any other pleading.**

Plaintiff SFM alleges copyright infringement and breach of contract claims in its Complaint which Defendants have moved to dismiss. Defendants have filed a motion to dismiss. In their motion, *inter alia*, Defendants note that, prior to the filing of the Complaint in this court, La Rosa initiated an arbitration proceeding with the AAA in New York. The parties dispute whether or not Plaintiff's President, Shlomo Kogos, executed two contracts (called in the papers the 2005 License Agreement and the 2005 Maintenance Agreement) both of which contain arbitration provisions. Kogos denies that he ever signed the documents in question and that the signatures appearing on the copies filed as part of the AAA Demand for Arbitration are forgeries.

**3.     A statement of the relief sought in the particular pleading, including an itemization of damages.**

If Plaintiff establishes that La Rosa and La Rosa Chicago's use of the 1999 software constitutes copyright infringement pursuant to 17 U.S.C. §411, SFM claims entitlement to losses from such infringement and profits earned by Defendants which are attributable to their use of SFM's 1999 software, as well as attorneys' fees and costs for this action. Plaintiff also seeks monetary damages for Defendants' alleged breach of the 1999 Software Agreement and 2005 Software Agreements in an amount not less than $112,000.

**4.     Whether any legal memoranda have been submitted (or will be submitted) on the matters referred by the District Court.**

Pending before the District Court is Defendants' Motion to Dismiss Plaintiff's Complaint for lack of subject matter jurisdiction or, in the alternative, to stay the action and compel Plaintiff to arbitrate these issues pursuant to the arbitration provisions contained in the disputed 2005 Software and Maintenance Agreements, or to transfer the action to the Southern District of New

2

York.    Attached hereto as Exhibit "B" are copies of Defendants' Motion to Dismiss and associated papers.  The Motion will be presented on May 10.

   **5.**  **Whether the parties have considered consenting to the jurisdiction of the magistrate judge.**

   The parties do not consent to the jurisdiction of the Magistrate Judge.

   **6.**  **Whether there have been any settlement discussions, and if so, please detail their status.  A least 10 days prior to the Initial Status Conference, the plaintiff shall submit an itemization of damages and a written settlement demand to the defendant.  At least 4 days prior to the Initial Status Conference, defendant is to respond in writing to the demand.**

   A letter outlining a settlement proposal was sent to counsel for Defendants by counsel for SFM in the arbitration matter, Mr. Zukowsky, on April 26, 2007; a copy is attached as Exhibit "C".  Counsel for Plaintiff in this case has adopted this as Plaintiff's demand.


RESPECTFULLY SUBMITTED this 8th day of May, 2007.

| SOFTWARE FOR MOVING, INC. | LA ROSA DEL MONTE EXPRESS, INC. and LA ROSA DEL MONTE EXPRESS (CHICAGO), LLP |
|---|---|
| By:_____ s/ Francis J. Leyhane III<br>  Francis J. Leyhane, III<br>  Attorney No. 3127365<br>  LEYHANE & ASSOCIATES, LTD.<br>  205 West Randolph Street<br>  Suite 1320<br>  Chicago, IL 60606<br>  Tel:   (312) 223-0811<br>  Fax:  (312) 223-0814<br><br>  *Counsel for Plaintiff* | By:_____ s/ David M. Dolendi<br>  Cathy Sugayan, Esq.<br>  David M. Dolendi, Esq.<br>  LORD, BISSELL & BROOK, LLP<br>  111 S. Wacker<br>  Chicago, IL 60606<br>  Tel:   (312) 443-0202<br>  Fax:  (312) 896-6202 |

|  | Kevin J. Harrington, Esq. (admitted *pro hac vice*)<br>John T.A. Rosenthal, Esq. (admitted *pro hac vice*)<br>HARRINGTON, OCKO & MONK, LLP<br>81 Main Street, Suite 215<br>White Plains, NY 10601<br>Tel:  (914) 686-4800<br>Fax:  (914) 686-4824<br><br>*Counsel for Defendants* |
|---|---|

## CERTIFICATE OF SERVICE

The undersigned herby certifies that the foregoing **INITIAL JOINT STATUS REPORT**, was served on the following:

| | |
|---|---|
| Francis J. Leyhane, III, Esq.<br>Leyhane & Associates, Ltd.<br>205 West Randolph Street<br>Suite 1320<br>Chicago, IL 60606 | |

via electronic filing and U.S. Mail on this 8th day of May, 2007.


   _s/ David M. Dolendi_
David M. Dolendi

## Index Of Exhibits

Ex. "A" – April 26, 2007 Referral Order

Ex. "B" – Defendants Notice of Motion, Motion, and Memorandum of Law

Ex. "C" – Plaintiff's April 26, 2007 Settlement Proposal

CHI1 1344744v1

# EXHIBIT "A"

## April 26, 2007 Referral Order

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 3.0**
**Eastern Division**

Software For Moving, Inc.

Plaintiff,

v.

Case No.: 1:07−cv−01839
Honorable Wayne R. Andersen

La Rosa Del Monte Express, Inc., et al.

Defendant.

---

**ORDER REFERRING A CIVIL CASE TO THE**
**DESIGNATED MAGISTRATE JUDGE**

Pursuant to Local Rule 72.1, this case is hereby referred to the calendar of Magistrate Judge Jeffrey Cole for the purpose of holding proceedings related to: discovery supervision.(tsa, )Mailed notice.

Dated: April 26, 2007

_____
/s/ Wayne R. Andersen

United States District Judge

# EXHIBIT "B"

**Defendants' Notice of Motion, Motion and Memorandum of Law**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

---------------------------------------------------------

SOFTWARE FOR MOVING, INC., a New
York Corporation,

      **Plaintiff,**

   v.

LA ROSA DEL MONTE EXPRESS, INC., a
New York Corporation, and LA ROSA DEL
MONTE  EXPRESS (CHICAGO), LLC, an
Illinois Limited Liability Company,

      **Defendants.**

---------------------------------------------------------

**CASE NUMBER:  07 C 1839**

**Judge Wayne R. Andersen**

**Magistrate Judge Jeffrey Cole**

**NOTICE OF MOTION**

TO: Francis J. Leyhane, III, Esq.
  Leyhane & Associates, Ltd.
  205 West Randolph Street
  Suite 1320
  Chicago, IL 60606

  PLEASE TAKE NOTICE that on Thursday, May 10, 2007, at 9:00 a.m., or as soon

thereafter as parties may be heard, the undersigned will appear before the Honorable Wayne R.

Andersen, or any judge sitting in his stead, in the courtroom normally occupied by him, in the

United States District Courthouse at 219 South Dearborn Street, Chicago, Illinois, and then and

there present Defendants' MOTION TO DISMISS PLAINTIFF'S COMPLAINT.

Contemporaneously, Defendants are submitting a Memorandum of Law in Support of their

Motion.  Copies of said Motion and Memorandum of Law have been filed with the Clerk of the

Court.

Dated:  April 30, 2007

Respectfully submitted,

   s/ David M. Dolendi
Catalina J. Sugayan
David M. Dolendi
LORD, BISSELL & BROOK LLP
111 S. Wacker Dr.
Chicago, IL 60606
312.443.0700

*Attorneys for Defendants La Rosa Del Monte
Express, Inc. and La Rosa Del Monte Express,
LLC*

## CERTIFICATE OF SERVICE

The undersigned herby certifies that the foregoing **NOTICE OF MOTION** was served on the following:

| Francis J. Leyhane, III, Esq. Leyhane & Associates, Ltd. 205 West Randolph Street Suite 1320 Chicago, IL 60606 | |
|---|---|

via electronic mail and U.S. Mail on this 30th day of April, 2007.

    s/ David M. Dolendi
    David M. Dolendi

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

------------------------------------------------

SOFTWARE FOR MOVING, INC., a New
York Corporation,

                **Plaintiff,**

        **v.**

LA ROSA DEL MONTE EXPRESS, INC., a
New York Corporation, and LA ROSA DEL
MONTE  EXPRESS (CHICAGO), LLC, an
Illinois Limited Liability Company,

                **Defendants.**

------------------------------------------------

**CASE NUMBER:  07 C 1839**

**Judge Wayne R. Andersen**

**Magistrate Judge Jeffrey Cole**

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendants, LA ROSA DEL MONTE EXPRESS, INC. ("La Rosa") and LA ROSA DEL

MONTE EXPRESS (CHICAGO), LLC ("La Rosa LLC", together with La Rosa, "Defendants"), by

and through their attorneys, Lord, Bissell & Brook LLP and Harrington, Ocko & Monk, LLP,

through the present motion, request this Court issue an Order dismissing the Complaint of Plaintiff,

SOFTWARE FOR MOVING, INC. ("SFM") for lack of subject matter jurisdiction as Plaintiff has

failed to allege registration of the copyright on which it bases its copyright claim.  Plaintiff's

remaining state law claims should be dismissed for lack of diversity between Plaintiff SFM, a New

York corporation and Defendant La Rosa, a New York corporation.

If the Court denies the relief requested, Defendants submit that the Court should stay

Plaintiff's claims against Defendants pending the resolution of the presently ongoing arbitration of

La Rosa's claims against Plaintiff pursuant to the arbitration provision in the parties' March 3, 2005

Software Development & License Agreement ("2005 Software Agreement"), and March 3, 2005

Maintenance Agreement ("2005 Maintenance Agreement"), and to compel Plaintiff to arbitrate its

claims with La Rosa and La Rosa LLC.  In the alternative, the Court should transfer Plaintiff's

action to the Southern District of New York, where there is personal jurisdiction over all of the

parties to this action, and where all or almost all of the conduct giving rise to Plaintiff's claims

actually took place.

The grounds for this motion to dismiss are more fully set forth in the accompanying

memorandum of law, filed contemporaneously herewith and incorporated by reference herein.

Dated: April 30, 2007

<div style="margin-left: 40%;">

Respectfully submitted,

LA ROSA DEL MONTE EXPRESS, INC. and
LA ROSE DEL MONTE EXPRESS
(CHICAGO), LLP


By:_____s/ David M. Dolendi_____
       Catalina J. Sugayan, Esq.
       David M. Dolendi, Esq.
       LORD, BISSELL & BROOK LLP
       111 S. Wacker
       Chicago, IL 60606
       Tel. (312) 443.0202
       Fax: (312) 896.6202

       Kevin Harrington, Esq.
       John T.A. Rosenthal, Esq.
       HARRINGTON, OCKO & MONK, LLP
       81 Main Street, Suite 215
       White Plains, NY  10601
       Tel: (914) 686-4800
       Fax: (914) 686-4824

       Counsel for Defendants

</div>

## CERTIFICATE OF SERVICE

The undersigned  herby certifies that the foregoing **MOTION TO DISMISS**, was served on the following:

| | |
|---|---|
| Francis J. Leyhane, III, Esq.<br>Leyhane & Associates, Ltd.<br>205 West Randolph Street<br>Suite 1320<br>Chicago, IL 60606 | |

via electronic mail and U.S. Mail on this 30th day of April, 2007.


  s/  David M. Dolendi
David M. Dolendi

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SOFTWARE FOR MOVING, INC., a New
York Corporation,

                  Plaintiff,

      v.

LA ROSA DEL MONTE EXPRESS, INC., a
New York Corporation, and LA ROSA DEL
MONTE  EXPRESS (CHICAGO), LLC, an
Illinois Limited Liability Company,

               Defendants.

CASE NUMBER:  07 C 1839

Judge Wayne R. Andersen

Magistrate Judge Jeffrey Cole

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS THE PLAINTIFF'S COMPLAINT**

Defendants, LA ROSA DEL MONTE EXPRESS, INC. ("La Rosa") and LA ROSA DEL

MONTE EXPRESS (CHICAGO), LLC ("La Rosa LLC", together with La Rosa, "Defendants"), by

and through their attorneys, Lord, Bissell & Brook LLP and Harrington, Ocko & Monk, LLP,

through the present motion, request this Court issue an Order dismissing the Complaint of Plaintiff,

SOFTWARE FOR MOVING, INC. ("SFM") for lack of subject matter jurisdiction as Plaintiff has

failed to allege registration of the copyright on which it bases its copyright claim. Plaintiff's

remaining state law claims should be dismissed for lack of diversity between Plaintiff SFM, a New

York corporation and Defendant La Rosa, a New York corporation.

If the Court denies the relief requested, Defendants submit that the Court should stay

Plaintiff's claims against Defendants pending the resolution of the presently ongoing arbitration of

La Rosa's claims against Plaintiff pursuant to the arbitration provision in the parties' March 3, 2005

Software Development & License Agreement ("2005 Software Agreement"), and March 3, 2005

Maintenance Agreement ("2005 Maintenance Agreement"), and to compel Plaintiff to arbitrate its

claims with La Rosa and La Rosa LLC. In the alternative, the Court should transfer Plaintiff's

action to the Southern District of New York, where there is personal jurisdiction over all of the

parties to this action, and where all or almost all of the conduct giving rise to Plaintiff's claims

actually took place.

## INTRODUCTION

Plaintiff, through the filing of its forum shopping Complaint, is attempting to use this Court

as a means by which to circumvent its contractual obligation to arbitrate the present dispute between

the parties in accordance with the 2005 Software and Maintenance Agreements entered into with La

Rosa. In fact, a New York arbitration is already ongoing between La Rosa and SFM through the

American Arbitration Association regarding La Rosa's claims that SFM and Mr. Kogos (SFM"s

President) breached the 2005 Software and Maintenance Agreements by improperly obtaining

approximately $383,250 in payments made by La Rosa to SFM, pursuant to those Agreements and the 1999 Software Agreement. Indeed, SFM, through its counsel Philip Zukowsky, Esq., has already actively participated in that ongoing arbitration.

Despite its bald attempt to frustrate the ongoing arbitration by filing this action, Plaintiff's Complaint must be dismissed for lack of subject matter jurisdiction as Plaintiff has failed to allege that it has a registered copyright for either the 1999 or 2005 software. Without subject matter jurisdiction over Plaintiff's copyright claim, the Court cannot retain subject matter jurisdiction over Plaintiff's remaining claims because there is a lack of complete diversity; Plaintiff is a New York corporation, as is Defendant La Rosa. Thus, the Court must dismiss Plaintiff's entire Complaint for lack of subject matter jurisdiction.

Even if the Court were to retain jurisdiction over Plaintiff's claims, despite the lack of subject matter jurisdiction, the Court should stay Plaintiff's action and compel it to arbitrate this dispute in the proper forum; namely, before an AAA arbitrator in New York City pursuant to the arbitration clause in the parties' 2005 Software Agreement. Furthermore, although La Rosa LLC is not a signatory to the 2005 Software Agreement, under the Doctrine of Equitable Estoppel, SFM is required to arbitrate any and all disputes it has with La Rosa LLC as SFM's claims against La Rosa LLC and La Rosa are inextricably intertwined, as well as being grounded in the 2005 Software Agreement.

Finally, if the Court does not dismiss Plaintiff's action for lack of subject matter jurisdiction, or stay the action pending arbitration, the Court should transfer the action to the Southern District of New York as there is no material aspect of the parties' conduct that in any way touches the Northern District of Illinois. Indeed, all the evidence and witnesses are located in New York City, and almost all of the conduct at issue with regard to SFM and Defendants took place at La Rosa's

offices in New York City.  For these reasons and those more fully described blow, the Court should

grant Defendants' motion.

## I.    THE ALLEGATIONS OF THE COMPLAINT.

As Plaintiff concedes in its Complaint, SFM is a New York corporation that develops and

licenses software for moving companies; Plaintiff is also apparently a successor in interest to

Safeguard Computer Services, Inc., itself, a New York corporation.  Plaintiff's Compl., at p. 1 and

¶2; Exh. "A", at ¶1.  According to the allegations in Plaintiff's Complaint, La Rosa is also a New

York corporation with its headquarters located in New York City.  Plaintiff's Compl., Exh. "A", at

¶1.  La Rosa LLC is an Illinois entity.

According to the Complaint, in or about 1999, La Rosa entered into a Software Licensing

Agreement with SFM regarding a DOS/Windows-based program (Moving Manager for Windows)

(the "1999 Software Agreement") in order to facilitate La Rosa's moving business.  Plaintiff's

Compl., at ¶5.  SFM never had a contract with La Rosa LLC regarding this software.  Plaintiff's

Compl., at ¶6; Exh. "A".  SFM does not allege that it ever applied for or obtained a copyright

registration with respect to the 1999 or 2005 software.

### A.    The 2005 Software Agreement.

In or about December 2004, La Rosa and SFM began negotiating an agreement whereby

SFM would provide La Rosa with a web-based version of the Moving Manager program.

Plaintiff's Compl., at ¶8.  SFM had no contract with La Rosa LLC regarding this program.

On or about March 3, 2005, SFM entered into a written agreement with La Rosa to provide

La Rosa with a web-based version of the Moving Manager software with certain modifications to

meet La Rosa's specific business needs ("2005 Software Agreement").  Plaintiff's Compl., at ¶8;

Exh. "B"; *see also* Declaration of John T.A. Rosenthal (Rosenthal Dec.), Exh. "A", February 12,

2007 Demand for Arbitration by La Rosa ("Arbitration Demand"), Exh. "B", at 1.  On or about

3

March 3, 2005, SFM and La Rosa also entered into a Maintenance Agreement with regard to the new web-based software ("2005 Maintenance Agreement"). Rosenthal Dec., Exh. "A"; Arbitration Demand, Exh. "C", at 1.[1]

The terms of the 2005 Software Agreement provided that La Rosa was to pay SFM $190,000 for development and delivery of the web-based software, and $105,000 as a license for use of the new software. Rosenthal Dec., 2005 Software Agreement, at §§4.1, 6.6. Under the terms of the Agreement, La Rosa was to pay SFM in installments upon the successful completion of each phase of the new software's development plan, and upon actual delivery of deliverables at that time. *Id.*, at §4.2. According to the specific provisions in the 2005 Software Agreement, La Rosa was not required to pay the installment payments if La Rosa disputed the invoices, or that the particular phase had been successfully completed. *Id.* Furthermore, La Rosa was not required to pay SFM the final 10% of the development fee ($19,000) until all of the deliverables had been provided by SFM, and La Rosa had used the new software successfully for a period of ninety (90) days without failure (the "Trial Period"). Until completion of the Trial Period, La Rosa was not required to pay SFM the final installment payment. *Id.*

As part of the 2005 Software Agreement, and in order to continue its business, La Rosa agreed to pay SFM a maintenance fee of $58,000 to continue to use the DOS/Windows-based software until the new web-based software was fully delivered. Rosenthal Dec., Exh. "A", 2005 Software Agreement, at §4.6. Under this provision, SFM was also required to maintain the current DOS/Windows-based software for La Rosa as provided for in the 1999 Software Agreement. *Id.*

Under the 2005 Software Agreement, either party could terminate the Agreement, in whole or in part, if the other party failed to perform a material obligation under the Agreement. Rosenthal Dec., 2005 Software Agreement, at §12.1. Furthermore, if the 2005 Software Agreement was

---

[1]  These documents are incorporated by reference in Plaintiff's Pleadings. Compl., at ¶¶8-10; Exhs. "B", "C". Fed.R.Civ.P. 10(c); *Venture Assoc. Corp. v. Zenith P. Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

4

terminated by La Rosa due to SFM's default or material breach, La Rosa had the right to demand

SFM return all monies paid to SFM under the Agreement. *Id.*, at §12.2. In addition, if SFM

defaulted or materially breached the 2005 Software Agreement, La Rosa had the right to continue

use of the DOS/windows-based software, and had the right to require that SFM continue to provide

maintenance for that software. *Id.*, at §12.2. Furthermore, even if the contract was terminated by

SFM, La Rosa had the right to continue to use the 1999 software, and to require SFM to maintain

such software. *Id.*, at §12.4.

Under the express terms of the 2005 Software Agreement, SFM specifically agreed to

arbitrate, "any dispute or controversy arising out of, relating to or in connection with the

interpretation, validity, construction, performance, breach or termination of" the 2005 Software

Agreement, and that such binding arbitration would be held in Westchester County, New York, in

accordance with the AAA rules. Rosenthal Dec., 2005 Software Agreement, at §13.2.

Furthermore, SFM agreed that venue for any dispute would be "<u>exclusively</u> in the County of

Westchester", New York. *Id.*, at §13.13 (emphasis added).

**B.    The 2005 Maintenance Agreement.**

Along with the 2005 Software License Agreement, SFM entered into a Maintenance

Agreement with La Rosa concerning the new web-based software. Rosenthal Dec., Exh. "A", 2005

Maintenance Agreement. Under the 2005 Maintenance Agreement, SFM was required to maintain

the new web-based software. In return, La Rosa was to pay SFM a yearly maintenance fee of

$46,200 pursuant to Schedule "A" of the Maintenance Agreement. Plaintiff's Compl., Exh. "C";

2005 Maintenance Agreement, at p. 6. Payment of the maintenance fee was not to begin until

completion of the Trial Period. *Id.*, at §3. In the event of a default by SFM for failure to perform its

material obligations, La Rosa was entitled to withhold payment and maintenance fees owed until the

default was cured, if at all. *Id.*, at §8.

Under the 2005 Maintenance Agreement, like the 2005 Software Agreement, SFM was required to arbitrate "any dispute or controversy arising out of, relating to, or in connection with the interpretation, validity, construction, performance, breach or termination of this agreement." *Id.*, at §18. The arbitration was to be conducted exclusively in Westchester County, New York, under the American Arbitration Association rules. *Id.* Furthermore, in the event that a party to the agreement required immediate injunctive relief, either La Rosa or SFM could obtain such relief through the appropriate application to the Supreme Court of the State of New York in Westchester County. *Id.*, at §18. The parties agreed that venue would be <u>exclusively</u> in the County of Westchester, New York. *Id.*, at §19.

## C. La Rosa And SFM Dispute Whether SFM Fulfilled All Of Its Obligations Under The 2005 Software Agreement.

Pursuant to the 2005 Software Agreement, once the software was complete, La Rosa would test the software to confirm that it was indeed complete and fully functional. La Rosa was then not required to pay SFM until the <u>successful</u> conclusion of the Trial Period; some ninety (90) days later; and only if the Trial Period proved successful.

As admitted in Plaintiff's Complaint, SFM and La Rosa entered into a "9/11 Agreement", as part of La Rosa's use of the new web-based software, as an addendum last page to the 2005 Software Agreement. Plaintiff's Compl, at ¶10; Exh. "B". Indeed, the "9/11 Agreement" is entitled, "<u>Addendum</u> to Software Development & License Agreement." *Id.* (emphasis added). Furthermore, as indicated in Plaintiff's Complaint, the maintenance payments that would be required of La Rosa for use of the new web-based software were described in the 2005 Maintenance Agreement executed by the parties. Plaintiff's Compl., Exh. "C".

## D. SFM Fails To Make Delivery Of All Deliverables.

As alluded to in Plaintiff's Complaint, in or about December 2006, the parties came to an impasse with regard to whether or not SFM had completed all of its obligations under the 2005

Software Agreement, and whether SFM was entitled to all of the development, license or maintenance fees under the new Agreements.   Plaintiff's Compl., at ¶13; Exh. "F".   Plaintiff concedes that La Rosa has already paid SFM $243,000, even though not required to do so under the terms of the 2005 Software Agreement.   Plaintiff's Compl., at p. 7, ¶11.

### E.   La Rosa Initiates An Arbitration Under The 2005 Software Agreement.

Pursuant to §13.12 of the 2005 Software Agreement, La Rosa initiated a Demand for Arbitration on or about February 12, 2007 with the American Arbitration Association.   Rosenthal Dec., Exh. "A".   In its Demand for Arbitration, La Rosa asserted various claims against SFM and its President Shlomo Kogos, including breach of contract, unjust enrichment, tortious interference with business advantage, and civil conspiracy.   Rosenthal Dec., Exh. "A", Demand for Arbitration.   La Rosa's Demand for Arbitration was served on SFM and Shlomo Kogos at SFM's office address as set forth in the 2005 Software Agreement, as well as on counsel for SFM and Mr. Kogos, Philip Zukowsky of Chernesky Heyman & Kress, P.L.L.   Rosenthal Dec., Exh. "B", copy of U.S. Post Office Domestic Return Receipt.

On or about February 21, 2007, Ms. Kimberly F. Claxton of AAA (Case Manager for the Arbitration No. 19 117 00027 07) issued a letter to counsel for La Rosa and counsel for SFM (Philip A. Zukowsky) regarding La Rosa's Demand for Arbitration.   Rosenthal Dec., Exh. "C".   In her letter, Ms. Claxton confirmed that SFM and Mr. Kogos had until March 8, 2007 to answer or otherwise move with regard to the arbitration.   Rosenthal Dec., Exh. "C".

On or about February 27, 2007, Philip A. Zukowsky, counsel for SFM and Mr. Kogos, sent a letter to Ms. Claxton of AAA concerning the arbitration.   While objecting to jurisdiction, Mr. Zukowsky indicated that SFM and Mr. Kogos would proceed with the arbitration as long as "the arbitrator will first focus on the jurisdiction issue".   Rosenthal Dec., Exh. "D".

On March 2, 2007, La Rosa through counsel submitted a letter to the AAA disputing the allegations contained in Mr. Zukowsky's February 26, 2007 letter. Rosenthal Dec., Exh. "E".

On March 6, 2007, counsel for La Rosa and counsel for SFM (Mr. Zukowsky) participated in a conference call with Ms. Claxton of AAA. At that time, Ms. Claxton indicated that SFM had until March 16th in which to file an answer or counterclaim in the arbitration. Rosenthal Dec., at ¶19.

On or about March 16, 2007, SFM and Mr. Kogos (through Mr. Zukowsky) filed an objection to jurisdiction with AAA with respect to La Rosa's Demand for Arbitration. Rosenthal Dec., Exh. "F". On or about March 21, 2007, counsel for La Rosa filed a response to Mr. Zukowsky's March 16, 2007 objection to jurisdiction. Rosenthal Dec., Exh. "G". In this response, counsel for La Rosa reiterated its opinion that jurisdiction was an issue for the arbitrator to decide pursuant to Rule 7(a)-(c) of the AAA Commercial Arbitration Rules, and that AAA should proceed forward with this matter. On or about March 22, 2007, Ms. Claxton of AAA sent counsel for SFM and La Rosa a letter indicating that AAA had adopted the position of La Rosa's counsel. Rosenthal Dec., Exh. "H".

On or about April 16, 2007, AAA appointed Richard S. Mandel as the arbitrator for this matter and set forth dates of availability for a conference call. Rosenthal Dec., Exh. "I".

## ARGUMENT

### I. PLAINTIFF'S COMPLAINT FAILS TO ALLEGE FACTS JUSTIFYING SUBJECT MATTER JURISDICTION

As a means by which to get its dispute before a Federal Court, SFM has alleged a claim of copyright infringement against La Rosa and La Rosa LLC. The allegations in Plaintiff's Complaint are clearly insufficient for this Court to exercise subject matter jurisdiction over Plaintiff's copyright claim, and the Court must dismiss Plaintiff's Complaint.

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a Court must dismiss an action when the Court determines that it lacks subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). It is beyond dispute that a jurisdictional prerequisite to bringing an action for copyright infringement is a requirement that the alleged owner of a copyright has acquired, or at a minimum, applied for copyright registration for the material at issue. 17 U.S.C. §411(a); *Leventhal v. Shamberg*, 2004 WL 1718512, at *1, *2 (N.D. Ill. July 30, 2004); *Maricovitz v. Caminos, Ltd.*, 2003 WL 21517364, at *2 (N.D. Ill. June 30, 2003). Indeed, in order to properly state a claim of copyright infringement, a complaint must contain allegations of ownership, registration and infringement. *Piaggio & C.S.P.A. v. Scooter Works USA, Inc.*, 1999 WL 674749, at *4 (N.D. Ill. August 23, 1999).[2]

Plaintiff's Complaint is devoid of any allegations that SFM applied for, much less actually obtained copyright registration for either of the items of software in dispute. This failure of Plaintiff to allege such registration deprives this Court of subject matter jurisdiction as to that claim.

Moreover, because the Court must dismiss Plaintiff's claim for copyright infringement, there is no other basis for this Court to assert subject matter jurisdiction over Plaintiff's remaining claims. It is axiomatic that for a Federal Court to have subject matter jurisdiction, a plaintiff must allege a cause of action giving rise to a Federal question or under a Federal statute, or that the claim is based upon complete diversity of the parties. 28 U.S.C. §§1331, 1332. Plaintiff has already conceded in its Complaint that there is no diversity; SFM is a New York corporation as is La Rosa. Thus, because SFM has failed to allege the jurisdictional requirements for a copyright infringement claim, and there is no diversity between the parties, this Court must dismiss Plaintiff's Complaint in its entirety for lack of subject matter jurisdiction.

---

[2] The Court must also dismiss Plaintiff's copyright claim as to La Rosa LLC pursuant to Rule 12(b)(6) because there is not a single allegation in the Complaint that La Rosa copied any portion of the software at issue. The Court must also dismiss Plaintiff's breach of contract claims against La Rosa LLC in Counts, II, III and IV of the Complaint as there is not a single allegation that La Rosa LLC ever entered into any contract with SFM regarding either the 1999 or 2005 Software.

## II.     THE COURT SHOULD STAY PLAINTIFF'S CLAIMS AGAINST LA ROSA AND LA ROSA LLC AND COMPEL SFM TO ARBITRATE SUCH CLAIMS

Having entered into not one, but two, agreements with La Rosa in 2005 that contain explicit mandatory arbitration provisions, and having already engaged in ongoing arbitration with La Rosa, Plaintiff is attempting through its forum shopping Complaint to utilize this Court to do an end run around its contractual obligations to arbitrate. The Court should not countenance such conduct by SFM, and should stay these proceedings and compel Plaintiff to arbitrate its disputes with La Rosa pursuant to the 2005 Software and Maintenance Agreements.

### A.     The Court Should Stay/Dismiss Plaintiff's Action and Compel Plaintiff to Arbitrate.

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §2, "a written provision in any contract evidencing the transaction involving commerce to settle a controversy thereafter arising out of such contract or transaction shall be valid, irrevocable and enforceable, ...." 9 U.S.C. §2. The FAA embodies the Federal policy favoring arbitration. *See Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220 (1987); *737 North Michigan Avenue Investors, LLC v. The Neiman Marcus Group, Inc.*, 2007 WL 1074905, at *3 (N.D. Ill. April 5, 2007). A court has little discretion in this area as the FAA mandates that a District Court "shall direct the parties to proceed to arbitration on issues as to which an arbitration [agreement] has been signed." *Johnston v. Arrow Fin. Serv., LLC*, 2006 WL 2710663, at *3 (N.D. Ill. September 15, 2006).

Before granting a motion to stay and/or compel arbitration, a court must resolve two threshold questions:  (1) whether the parties entered into a valid and enforceable agreement to arbitrate; and if so, (2) whether the claims arising out of the present dispute fall within the scope of the claims they agreed to arbitrate. *Morgan v. Bill Kay Chrysler Plymouth*, 2002 WL 31133102, at *1 (N.D. Ill. July 17, 2002). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cohen Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1,

24-25 (1983); *Miller v. Flume,* 139 F.3d 1130, 1136 (7th Cir. 1998); *Johnson,* 2006 WL 2710663, at

*3. Indeed, broad arbitration provisions necessarily create a presumption of arbitrability. *Fyrnetics*

*Ltd. v. Quality Corp., Inc.,* 293 F.3d 1023, 1031 (7th Cir. 2002).

 Pursuant to §4 of the FAA, a United States District Court may issue an order to compel

arbitration if a party refuses to arbitrate despite having entered into a contract containing an

arbitration provision. FAA §4. The party moving to compel arbitration under the FAA must show:

(1) the existence of a written agreement to arbitrate, (2) a dispute within the scope of the arbitration

provision, and (3) a refusal to arbitrate by the other party. *737 North Michigan,* 2007 WL 1074905,

at *3.

 La Rosa has demonstrated all the prerequisites required for this Court to stay Plaintiff's

action and compel it to arbitrate. As clearly indicated in the 2005 Software and Maintenance

Agreements, SFM is required to arbitrate all disputes arising out of those agreements with regard to

both the 2005 web-based software, as well as La Rosa's continued use of the 1999 DOS/Windows-

based software. Rosenthal Dec., Exh. "A", 2005 Software Agreement, §13; Rosenthal Dec., Exh.

"A", 2005 Maintenance Agreement, §18. Plaintiff's claims in its present action regarding La

Rosa's alleged use of the 1999 software and claims for payment with regard to the 1999 and 2005

software are clearly covered by §§4.4, 12.1, 12.2 and 12.4 of the 2005 Software Agreement.

Indeed, Plaintiff's claim that La Rosa and La Rosa LLC do not have a license to use the 1999

Windows-based software is covered by terms in the 2005 Software Agreement which grant La Rosa

and La Rosa LLC a license to the Windows-based software. SFM has brought this present action

despite the arbitration provision in the 2005 Software and Maintenance Agreements, and despite the

presently pending arbitration between La Rosa and SFM initiated by La Rosa on February 12, 2007,

which arbitration concerns identical issues and agreements to those raised in this litigation.

Therefore, pursuant to the express terms of the 2005 Software and Maintenance Agreements, and in accordance with §§2, 3 and 4 of the FAA, the Court should stay the present proceedings and compel SFM to arbitrate its present claims with La Rosa.

## B.   Plaintiff Should Be Estopped From Avoiding Arbitration Of Its Claims Against La Rosa LLC.

Although La Rosa LLC is not a signatory to either the 2005 Software Agreement or the 2005 Maintenance Agreement, SFM is estopped from avoiding arbitrating its claims against La Rosa LLC because these claims are inextricably intertwined with those of SFM's claims against La Rosa, and are grounded in the terms of the 2005 Software Agreement.

While a party cannot ordinarily compel arbitration unless it is a party to a contract with an arbitration clause, the Seventh Circuit has recognized limited exceptions to this rule. *Affymax, Inc. v. Johnson & Johnson,* 420 F.Supp.2d 876, 881 (N.D. Ill. 2006); *Johnson,* 2006 WL 2710663, at *5. Under the Doctrine of Equitable Estoppel, a non-signatory can compel arbitration when a signatory's claims are grounded in or intertwined with the terms of the written agreement. *Id.* Furthermore, numerous courts have held that when claims by a signatory contain allegations of substantially interdependent misconduct by the non-signatory and one or more of the signatories, a signatory is estopped from denying the arbitrability of such claims with the non-signatory. *Id.; see also J.L.M. Industry, Inc. v. Stolt-Nielson, S.A.,* 387 F.3d 163, 177-78 (2nd Cir. 2004).

In this instance, SFM clearly falls within the Doctrine of Equitable Estoppel as to La Rosa LLC because SFM's claims against La Rosa LLC are clearly based upon the 2005 Software Agreement and La Rosa's right to use the DOS/Windows-based software even upon breach or termination of the 2005 Software Agreement. Furthermore, Plaintiff's Complaint essentially alleges interdependent and concerted conduct by La Rosa and La Rosa LLC in alleged continuing use of the 1999 software. Plaintiff's Compl., at ¶4. Indeed, but for SFM's contract with La Rosa, La Rosa LLC would not have access to the DOS/Windows software at issue. Plaintiff's Compl., at ¶¶1, 4, 6.

12

Thus, the Court should stay Plaintiff's action as to La Rosa LLC, and compel SFM to arbitrate its claims with La Rosa LLC.

## III. THE COURT SHOULD TRANSFER PLAINTIFF'S ACTION TO THE SOUTHERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. §1404(a)

Even if the Court were not to dismiss or stay this action, the Court should transfer the action to the Southern District of New York pursuant to 28 U.S.C. §1404(a) because Plaintiff's claims have absolutely no connection to Illinois.

Pursuant to §1404(a), a Court may transfer the action, "for the convenience of the parties and witnesses, in the interests of justice." A decision to transfer an action is committed to the District Court's sound discretion. *Adventus Americas, Inc. v. Innovative Envir. Tech., Inc.,* 2007 WL 704938, at *8 (N.D. Ill. March 5, 2007). Under §1404(a), the party seeking transfer must demonstrate that, "(1) venue is proper in the transfer court; (2) venue would be proper in the transferee court; and (3) transfer will serve the convenience of the parties and witnesses and promote the interests of justice." *Id.; see Mattson v. Gerry Wood Prod. Co.,* 1997 WL 158334, at *1 (N.D. Ill. March 31, 1997). "Evaluating the third prong - the convenience and fairness of the proposed transfer – the Court considers relevant private and public interest. In addition, the movant may also demonstrate, by reference of the particular circumstances that the transferee forum is clearly more convenient." *Adventus,* 2007 WL 704938, at *8.

The convenience of the witnesses and the parties is the most important factor in determining whether an action should be transferred pursuant to §1404(a). *Id.* When evaluating this factor, the Court considers, (1) the plaintiff's choice of forum, (2) the situs of the material events, (3) the availability of evidence in each forum, (4) the convenience of the witnesses, and (5) the convenience of the parties litigating in the respective forums. *Id.; Plotkin v. IP Access, Inc.,* 168 F.Supp.2d 899, 902 (N.D. Ill. 2001). While the plaintiff's choice of forum can militate against transfer, this factor merely becomes one of many if there is a weak relationship between the

operative facts giving rise to the claim and the choice of forum, or if the forum is not the plaintiff's home forum. *Adventus*, 2007 WL 704938, at *9.

When comparing the availability of the evidence, a court looks to where most of the evidence, including documents, is located. *Id.* If there is little or no evidence located in plaintiff's choice of forum, the Court should weigh this fact in favor of transfer. *Id.* In assessing the convenience of the parties, the Court may consider the parties' respective residences and their ability to bear the expense of litigating in a particular forum. The Court should also consider whether the selected forum is in fact not the principal place of business of plaintiff and whether or not plaintiff and/or defendants even have witnesses that are employed in and/or reside in the forum state. *Id.* Finally, when assessing the public interest factors and interests of justice, the Court should consider the forum state's relationship to the cause of action. *Id.*

All of the factors described above weigh in favor of transfer to the Southern District of New York. While Plaintiff has filed a forum shopping action in Illinois, the allegations contained in Plaintiff's own Complaint show that there is little or no connection between the conduct of the parties and Illinois. None of the Software Agreements at issue was executed in Illinois. Neither of the main parties (SFM and La Rosa) are Illinois corporations; both are New York corporations, and La Rosa's principal place of business is in New York. The development of the software at issue took place almost exclusively at La Rosa's principal place of business, the Bronx, New York. Rosenthal Dec., Exh. "A". Furthermore, all of the material witnesses with regard to Plaintiff's claims are located in the Southern District of New York. Indeed, Plaintiff's President (Mr. Kogos) and all of the officers and employees of La Rosa who have knowledge or information regarding the 1999 and 2005 Agreements, and specifically referenced in Plaintiff's Complaint, are located in New York State, not Illinois. Plaintiff's Compl., at ¶8. Furthermore, Illinois has little or no relationship to this cause of action as almost all of the conduct at issue took place in New York City. Indeed,

Plaintiff's Complaint is devoid of any allegations that any conduct took place in Illinois. For these reasons, the Court should transfer Plaintiff's action to the Southern District of New York pursuant to 28 U.S.C. §1404(a).

### CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court dismiss Plaintiff's Complaint, or in the alternative, stay this action and compel SFM to arbitrate with Defendants, or transfer the action to the Southern District of New York.

Dated: April 30, 2007                         Respectfully submitted,

                                                    s/ David M. Dolendi
                                              CATALINA J. SUGAYAN
                                              DAVID M. DOLENDI
                                              LORD, BISSELL & BROOK LLP
                                              111 S. Wacker
                                              Chicago, IL 60606
                                              Tel. (312) 443-0202  Fax: (312) 896-6202
                                              ddolendi@lordbissell.com

                                              KEVIN HARRINGTON
                                              JOHN T.A. ROSENTHAL
                                              (Pending admission pro hac vice)
                                              HARRINGTON, OCKO & MONK, LLP
                                              81 Main Street, Suite 215
                                              White Plains, NY  10601
                                              Tel: (914) 686-4800  Fax: (914) 686-4824
                                              KHarrington@homlegal.com
                                              JRosenthal@homlegal.com

                                              *Attorneys for Defendants,*
                                              *La Rosa Del Monte Express, Inc. and La Rosa Del*
                                              *Monte Express (Chicago), LLC*

15

## CERTIFICATE OF SERVICE

The undersigned  herby certifies that the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS,** was served on the following:

| | |
|---|---|
| Francis J. Leyhane, III, Esq.<br>Leyhane & Associates, Ltd.<br>205 West Randolph Street<br>Suite 1320<br>Chicago, IL 60606 | |

via electronic mail and U.S. Mail on this 30th day of April, 2007.

_s/  David M. Dolendi_
David M. Dolendi

CHI1 1341333v1

16

# EXHIBIT "C"

## Plaintiff's April 26, 2007 Settlement Proposal

# CHERNESKY, HEYMAN & KRESS
## P.L.L.
### ATTORNEYS AT LAW

10 COURTHOUSE PLAZA SW., SUITE 1100
DAYTON, OHIO 45402
P.O. BOX 3808
DAYTON, OHIO 45401-3808
937/449-2800

WRITER'S DIRECT DIAL
937/449-2842

WRITER'S FAX
937/463-4947

WRITER'S E-MAIL
paz@chklaw.com

WEBSITE
www.chklaw.com

April 26, 2007

Mr. Kevin J. Harrington
Mr. Robert Ocko
Harrington, Ocko & Monk, LLP
81 Main Street, Suite 215
White Plains, NY 10601

    RE:   **La Rosa Del Monte Express, Inc.**
           **and**
           **Software for Moving, Inc.**

Dear Sirs:

As you are probably aware, we are standing on the threshold of protracted litigation in a number of jurisdictions throughout the United States and elsewhere. While we believe that we will ultimately prevail in our claim against La Rosa, you probably feel the same about your claims against SFM. Only time may tell who is correct. As you are also aware, once the threshold is crossed, it will be more difficult to settle this case because of the large expense that such protracted, multi-jurisdictional litigation requires. I am, therefore, making one final attempt at settlement of this case.

We propose the following. SFM will be paid:

(i)    $52,500, which is the balance owed for the new software. This amount will be payable on June 1, 2007;

(ii)    $270,000 for the source code payable in ten (10) equal semi-annual installments with interest at Prime plus one. The first payment would be due on June 1, 2007. The amount owing would be evidenced by a note and guaranteed by La Rosa's owner(s); and

(iii)    $30,000 to cover SFM's attorney's fees, payable on June 1, 2007.

*EXHIBIT B*

**CHERNESKY, HEYMAN & KRESS P.L.L.**

Mr. Kevin J. Harrington
Mr. Robert Ocko
Page 2
April 26, 2007

     La Rosa will receive the source code for the new program and the right to use the new program and old programs in perpetuity (subject to restrictions on letting non-affiliates use or copy the software). SFM will help La Rosa transition to the use of the new software for a period of three months, commencing June 1, 2007. After the three (3) month period, SFM will provide no other services with respect to any of the software.

     I hope that your client will seriously consider this offer. Please let me know by May 14, 2007.

               Very truly yours,

               Philip A. Zukowsky

PAZ:mz/20715
00296279

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – <span style="color:red">CM/ECF LIVE, Ver 3.0</span>
### Eastern Division

Software For Moving, Inc.

                      Plaintiff,

v.                                   Case No.: 1:07–cv–01839

                                   Honorable Wayne R. Andersen

La Rosa Del Monte Express, Inc., et al.

                      Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Friday, May 11, 2007:

      MINUTE entry before Judge Jeffrey Cole :Magistrate Judge Status hearing held on 5/11/2007 and continued to 7/26/2007 at 09:00 a.m. Court hereby stays discovery other than discovery on jurisdictional matter if necessary until further order of Court. Counsel for defendant John T.A. Rosenthal may appear by phone for the next status hearing. Mailed notice(yp, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

# United States District Court
## Northern District of Illinois

In the Matter of

Software for Moving, Inc.

v.

LaRosa Del Monte Express, Inc. Et a

Case No. 7 C 1839

Designated Magistrate Judge
Arlander Keys

### TRANSFER OF CASE TO THE EXECUTIVE COMMITTEE
### FOR A REASSIGNMENT

The above captioned case is currently pending on my calendar. I recommend to the Executive Committee that this case be reassigned to the calendar of Judge **Joan B. Gottschall**. The reasons for my recommendation are indicated on the reverse of this form.

_____
Judge Wayne R. Andersen

Dated: May 7, 2007

### ORDER OF THE EXECUTIVE COMMITTEE

IT IS HEREBY ORDERED that the above captioned case be reassigned to the calendar of Judge **Joan B. Gottschall**.

### ENTER

### FOR THE EXECUTIVE COMMITTEE

_____
Chief Judge James F. Holderman

Dated: MAY - 9 2007

Reassignment/Named Judge (Rev. 9/99)

☐   40.3(B)(2)   This case appears to involve the same parties and subject matter as case number ____ assigned to the calendar of Judge ____ and dismissed prior to the filing of this case.

☐   IOP 13   This cause was assigned from the calendar of Judge ____ for coordinated or consolidated pretrial discovery proceedings.

☐      This cause was assigned from the calendar of Judge ____ as a Multi-District Litigation case. Consolidated pretrial has been completed and the case should be reassigned to said Judge.

☐   IOP 13   This case should be transferred to the Fugitive Calendar as the defendant is a fugitive.

☐   IOP 13   This case should be reassigned as a replacement for case number ____ which was reassigned by agreement to my calendar on ____ .

■   IOP 13   This case should be reassigned as a replacement for case number **7 C 1450** in which a recusal was permitted.

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 3.0**
**Eastern Division**

Software For Moving, Inc.

Plaintiff,

v.                                                          Case No.: 1:07–cv–01839
                                                            Honorable Joan B. Gottschall

La Rosa Del Monte Express, Inc., et al.

Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Thursday, May 10, 2007:

    MINUTE entry before Judge Wayne R. Andersen :Defendant's motion to
dismiss[10] is entered and briefed as follows: Responses due by 6/8/2007. Replies due by
6/22/2007. Ruling will be made by mail.Mailed notice(tsa, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of
Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was
generated by CM/ECF, the automated docketing system used to maintain the civil and
criminal dockets of this District. If a minute order or other document is enclosed, please
refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our
web site at *www.ilnd.uscourts.gov*.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

```
--------------------------------------------------------------x
```

SOFTWARE FOR MOVING, INC., a New
York Corporation,

        Plaintiff,

    v.

LA ROSA DEL MONTE EXPRESS, INC.,  a
New York Corporation, and LA ROSA DEL
MONTE EXPRESS (CHICAGO), LLC, an
Illinois Limited Liability Company,

        Defendants.

```
--------------------------------------------------------------x
```

No:  07 C 1839

Judge Gottschall

Magistrate Judge Cole

## DECLARATION OF SHLOMO KOGOS

   I, Shlomo Kogos, duly declare and say, under penalty of perjury under the laws of the United States that the following is true and accurate:

   1.  I make this Declaration based upon my personal knowledge, except as indicated otherwise, and, if called as a witness, could competently testify thereto.

**I Did Not Sign the 2005 License Agreement.**

   2.  I understand that Defendants claim that SFM agreed to arbitrate claims that it had against Defendants pursuant to arbitration provisions contained in a Software Development and License Agreement that I supposedly signed on March 3, 2005 (the "2005 License Agreement") or the March 3, 2005 Maintenance Agreement (the "2005 Maintenance Agreement").  I understand that these documents have been submitted to the

Court as Exhibits B and C to the Demand for Arbitration submitted to this Court as part of Exhibit A respectively to the Declaration of John A. Rosenthal.

      3.     <u>I state for the record and under penalty of perjury that I never signed either the 2005 License Agreement or the 2005 Maintenance Agreement, not in March 2005 and not ever.</u>  Indeed, I never saw a copy of either the 2005 License Agreement or the 2005 Maintenance Agreement until February 2007, when my attorney (Mr. Philip A. Zukowsky) sent me the copy of the 2005 License Agreement that was attached to the Demand for Arbitration (the "Demand") filed by La Rosa Del Monte Express, Inc., one of the Defendants in this case.  I see on the documents what purports to be my signature.  I state categorically that these documents were not signed by me.

      4.     <u>I state for the record and under penalty of perjury that Mr. Steve Dalzell never showed to me or asked me to sign the 2005 License Agreement or the 2005 Maintenance Agreement; he never asked me for a "duplicate copy of this agreement," and I never delivered "a photocopy of the signed agreement" to Mr. Dalzell or anyone else, in March 2005 or any time.</u>  Any statement to the contrary is simply untrue.

**The 2005 License Agreement Did Not Exist on March 3, 2005.**

      5.     I understand that Defendants claim that the 2005 License Agreement was entered into on March 3, 2005.  Upon being shown the 2005 License Agreement attached to Defendant's Demand, I noticed a detail in the 2005 License Agreement that proves that the 2005 License Agreement could not have been in existence on March 3, 2005, or any other time in 2005.  Paragraph 13.5 of the 2005 License Agreement that was attached to the Demand is a notice provision.  Paragraph 13.5 states that notice could be provided to me at an e-mail address of skogos@earthlink.net.  The e-mail address of

skogos@earthlink.net did not come into existence until January 6, 2006.  Attached as Exhibit X are photocopies of e-mails from January 6, 2006 regarding the creation of the skogos@earthlink.net e-mail address on January 6, 2006.  Thus, the 2005 License Agreement attached to Defendant's Demand could not have been written until after January 6, 2006, and could not have been in existence and signed on March 3, 2005, as Defendants claim.

**What I Did Sign.**

6.      In and around August of 2006 Mr. Dalzell did ask me to sign two documents that related to the Web Program.  First, upon completion and delivery of the Web Program to La Rosa, Mr. Dalzell asked me to sign what I refer to as a "9/11 Plan".  A "9/11 Plan" is an agreement to place the source code of a completed program with a secure source so that the secure source can turn over the source code to the customer in the event the source code owner disappears.  The 9/11 Plan that I signed is attached to the Complaint filed in this matter as Exhibit B.  Attached as Exhibit Y are true and correct copies of e-mails from SFM to Mr. Dalzell pertaining to the "9/11 Plan" that date its execution to August 2006.

7.      I also signed a document entitled "Maintenance Schedule A."  A copy of this document is attached to the Complaint filed in this matter as Exhibit C.  Maintenance Schedule A sets forth the monthly maintenance costs that La Rosa was required to pay SFM for the Web Program.

**My Prior Relationship with La Rosa Del Monte Express, Inc.**

8.      I am President of Software for Moving, Inc. ("SFM"), Plaintiff in this matter.  SFM is the successor to Safeguard Computer Services, Inc. ("Safeguard").

Safeguard was formed for the purpose of marketing a computer program that I developed called Moving Manager. The original program was published in 1990; it was registered with the Copyright Office on April 16, 1997. I was the President of Safeguard. I subsequently formed SFM and became the President of this corporation. All ownership of the copyright on this program was transferred to SFM. Moving Manager was originally written for a DOS environment; it has subsequently been refined to operate in a Windows environment and, more recently, as a web-based application.

9.      I have limited knowledge of the internal structure of La Rosa or its various subsidiaries, but La Rosa has been a customer of mine, first when I was President of Safeguard and, later, when I was President of SFM for many years. In 1999, La Rosa contracted with Safeguard for the Windows-based version of Moving Manager. A true and correct copy of that contract is attached to the Complaint filed in this matter as Exhibit A.

10.      Until the Fall of 2006, around the time that Steve Dalzell seems to have left La Rosa, I considered La Rosa an excellent customer, one with which I had an excellent working relationship. I was, therefore, in no great hurry to enter into new contract documents when La Rosa decided to move from a Windows-based version of my Moving Manager software to a web-based version.

11.      In or about December 2004, La Rosa agreed to license a web-based program (the "Web Program") from SFM that SFM agreed to customize for La Rosa. I was in charge of the Web Program project. SFM delivered the Web Program to La Rosa in or around mid-August of 2006 and La Rosa went "live" with the Web Program at that time. From December 2004 through August 2006, I mostly dealt with Steve Dalzell of La

Rosa in connection with the Web Program project. The agreement between SFM and La Rosa concerning the Web Program was never reduced to writing, except as I have set forth in this Declaration and in SFM's Complaint in this court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and accurate.

_Shlomo Kogos_
Shlomo Kogos

STATE OF _New York_ )
                                        ) SS:
COUNTY OF _Queens_ )

Before me, the undersigned, a Notary Public, in and for said County and State, personally appeared Shlomo Kogos, who, being duly sworn upon his oath, stated that the facts set forth in the foregoing affidavit are true.

Witness my hand and notary seal this _16_ day of _May_ , 2007.

_____
Notary Public
My Commission Expires:

KEVIN BARBA
Notary Public, State of New York
No. 01BA6125514
Qualified in Queens County
COMMISSION EXPIRES 04/18/2009

# "EXHIBIT X"

## FOR DECLARATION OF SHLOMO KOGOS

## (E-mails from January 6, 2006 regarding creation of skogos@earthlink.net e-mail address)

**Philip Zukowsky**

| | |
|---|---|
| **From:** | Martin [queens2005@earthlink.net] |
| **Sent:** | Monday, February 26, 2007 1:04 PM |
| **To:** | Philip Zukowsky |
| **Cc:** | skogos@earthlink.net |
| **Subject:** | Fwd: Your new e-mail account |
| **Importance:** | High |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |

Hi Phil

    I'm forwarding you an e-mail where Shlomo was advised first time of his new e-mail address. Shlomo your aol account should also have it in Out box if you did not erase it.

Sincerely,
Martin

    Date: Thu, 05 Jan 2006 16:01:15 -0500
    To: skogos@aol.com
    From: Martin <queens2005@earthlink.net>
    Subject: Your new e-mail account

    Shlomo
        Your earthlink e-mail account is: **skogos@earthlink.net**
        Your password is: shlomo06

        It will be active in 20 minutes.
        To check your e-mail go to: https://webmail.atl.earthlink.net

    Martin

5/8/2007

## Philip Zukowsky

| | |
|---|---|
| **From:** | Martin [queens2005@earthlink.net] |
| **Sent:** | Monday, February 26, 2007 1:05 PM |
| **To:** | Philip Zukowsky |
| **Cc:** | skogos@earthlink.net |
| **Subject:** | Fwd: EarthLink Account Change Notification |

| | |
|---|---|
| **Importance:** | High |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |

```
Hi Phil
        This is even better a notification from Earthlink that Shlomo's account was
added.

Sincerely,
Martin
>Date: Thu, 5 Jan 2006 15:59:14 -0500 (EST)
>From: service@earthlink.net
>X-Authentication-Warning: nmidasdb2.internal.earthlink.net: dba set
>sender to service@earthlink.net using -r
>To: queens2005@earthlink.net
>Subject: EarthLink Account Change Notification
>X-ELNK-SYS: 1
>X-ELNK-AV: 0
>
>Dear EarthLink Subscriber,
>
>Account Name: Martin
>Account Number: 5276050
>
>We're writing to let you know that the following change was made to
>your account via your "My Account" Web page:
>
>You have added the following mailbox to your account:
>skogos@earthlink.net
>
>This email is sent to notify the account owner of the change.
>
>You can view your invoice, update your credit card or contact
>information, change your email addresses or passwords, and more,
>anytime by signing in to your "My Account" Web page:
>https://myaccount.earthlink.net
>
>Sincerely,
>
>EarthLink Customer Service
>
>************************************************************
>This is an Administrative Message from EarthLink. It is not spam. From
>time to time, EarthLink will send you such messages in order to
>communicate important information about your subscription.
>************************************************************
```

1

# "EXHIBIT Y"

## FOR DECLARATION OF SHLOMO KOGOS

## (E-mails from Software for Moving, Inc. to Mr. Dalzell pertaining to 9/11 Plan)

## Philip Zukowsky

| | |
|---|---|
| **From:** | Shlomo Kogos [skogos@gmail.com] |
| **Sent:** | Thursday, March 01, 2007 6:13 PM |
| **To:** | Philip Zukowsky |
| **Subject:** | Fwd: RE: 9/11 draft from Shlomo - contingency plan in case of severe emergency |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |

look at last line.
Program finished need source code for emergency.

---------- Forwarded message ----------
From: **Martin** < queens2005@earthlink.net>
Date: Mar 1, 2007 5:57 PM
Subject: Fwd: RE: 9/11 draft from Shlomo - contingency plan in case of severe  emergency
To: skogos@gmail.com


>From: "Steven W. Dalzell" <sdalzell@larosadelmonte.com>
>To: "'Martin'" < queens2005@earthlink.net>
>Subject: RE: 9/11 draft from Shlomo - contingency plan in case of
>severe  emergency
>Date: Mon, 14 Aug 2006 07:07:21 -0400
>X-Mailer: Microsoft Office Outlook, Build 11.0.5510
>Thread-Index: Aca9Yc8P/w87AQ6IQL2cWM1zJTs0hACL92/Q
>X-ELNK-Info: spv=0;
>X-ELNK-AV: 0
>X-ELNK-Info: sbv=0; sbrc=.0; sbf=00; sbw=000;
>
>Martin:
>Need full name, address and contact information for Phil
>Steve
>
>
>-----Original Message-----
>From: Martin [mailto:queens2005@earthlink.net]
>Sent: Friday, August 11, 2006 12:17 PM
>To: Steven W. Dalzell
>Cc: skogos@earthlink.net
>Subject: 9/11 draft from Shlomo - contingency plan in case of severe
>emergency
>Importance: High
>
>Hi Steve
>       I'm forwarding you the 9/11 plan draft from Shlomo as told to me
>over the phone -
>
>       1 - this plan is for an emergency like 9/11 if a company and all the

>
>employees disappeared:
>       2 - in the event of this catastrophe please get in touch with Phil
>who has 9/11 plan ready at his location
>       3 - Phil has the source code for the program and will give Larosa
>right to make changes and use program forever, but they cannot resell
>it to others
>       4 - in addition Phil will give them access to other companies part
>of the 9/11 plan, so they can help each other maintaining the source code
>       5 - 9/11 plan is the same as purchasing the source code - except for
>FREE
>
>Martin

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

```
-------------------------------------------------------------x
```

SOFTWARE FOR MOVING, INC., a New
York Corporation,

                    **Plaintiff,**

      **v.**

LA ROSA DEL MONTE EXPRESS, INC.,  a
New York Corporation, and LA ROSA DEL
MONTE EXPRESS (CHICAGO), LLC, an
Illinois Limited Liability Company,

                    **Defendants.**
```
-------------------------------------------------------------x
```

**CASE NUMBER:  07 C 1839**

**Judge Gottschall**

**Magistrate Judge Cole**

## DECLARATION OF PHILIP ZUKOWSKY

I, Philip Zukowsky, duly declare and say, under penalty of perjury under the laws of the United States that the following is true and accurate:

    1.     I make this declaration based on my personal knowledge, except as indicated otherwise, and, if called as a witness, could competently testify thereto.  To the extent that facts set forth herein may be considered potentially within the attorney-client privilege, I aver that I have been authorized to make these disclosures and no others.

    2.     I am an attorney at law.  Plaintiff SOFTWARE FOR MOVING, INC. ("SFM"), is a client of mine.

    3.     In December 2006, Shlomo Kogos ("Kogos"), President of SFM, asked me to handle a legal matter involving Defendants ("La Rosa") refusing to pay SFM for the use of software that it had licensed from SFM.

4. On or about December 22, 2006, I e-mailed Robert S. Ocko, an attorney for La Rosa, demanding payment from La Rosa for the use of the software it had licensed from SFM. A true and correct copy of this e-mail is attached as <u>Exhibit PZ1</u>. A copy of this e-mail is also attached to the Complaint filed in this matter as <u>Exhibit F</u>.

5. In the second numbered paragraph of this e-mail, I said that La Rosa "contracted with SFM" for the use of SFM's new server-based version of its Moving Manager program. I go on to describe the "agreement" in terms of what payments were due and owing.

6. I was not referring to any written contract or contracts in making this statement. Rather, I was describing an oral agreement as Mr. Kogos, the President of SFM, presented it to me.

**<u>Defendants Claim the Existence of a 2005 Agreement Signed by Mr. Kogos</u>**

7. On or about January 9, 2007, Robert S. Ocko, attorney for La Rosa, sent a letter to SFM at a Newark, New Jersey address. The Newark address was not the address of SFM. I received a copy of the letter by e-mail. I forwarded a copy to Mr. Kogos.

8. The January 9, 2007 letter, attached as <u>Exhibit PZ2</u> hereto, purports to terminate a Software Development and License Agreement, dated March 3, 2005 (the "2005 License Agreement"). The January 9, 2007 letter references an earlier letter from La Rosa to SFM dated December 11, 2006. I have never seen the December 11, 2006 letter. If the earlier letter was sent to the same address used in the January 9, 2007 letter, it is likely that no one except the sender ever saw it because, as stated, my client was not located at the indicated Newark address.

9. After receiving a copy of the January 9 letter from me, Mr. Kogos immediately informed me that he had never signed any software and development agreement with La Rosa, either in 2005 or thereafter, nor had he ever been presented with a draft of any proposed

agreement by La Rosa in 2005 or thereafter. Mr. Kogos instructed me to obtain a copy of the document referred to in Exhibit PZ2. Actually, Exhibit PZ2 refers to two documents, the 2005 License Agreement and another document which has been referred to in this case as the 2005 Maintenance Agreement. I did not notice this initially since the second agreement is not captioned nor referred to until the bottom of page 2 of Exhibit PZ2.

**SFM Demands Copy of the Purported Agreement but is Refused**

10. Thereafter, I repeatedly tried to get counsel for La Rosa to send me a PDF of the 2005 License Agreement, but counsel for La Rosa repeatedly refused to do so. On January 9, 2007, I e-mailed Mr. Ocko and requested a PDF copy of the agreement referenced in the January 9, 2007 letter. On January 12, 2007, I again e-mailed Mr. Ocko requesting a PDF copy of the agreement. True and correct copies of each of these e-mails are attached as Exhibit PZ3 (with only the Circular 230 Disclosure and Confidentiality Notices omitted). The January 12 e-mail indicates a willingness to sign what I called a "9/12" Agreement. I did not then realize that Mr. Kogos had in fact signed a "9/11 Agreement," a copy of which is attached to our Complaint as Exhibit B. It is not disputed that Mr. Kogos signed the 9/11 Agreement; see the Declaration of Shlomo Kogos.

11. Thereafter, I informed counsel for La Rosa in a telephone call that the reason we were requesting the PDF was because Mr. Kogos insisted that he did not sign the so-called 2005 License Agreement, nor had he ever seen a draft of any such agreement. Counsel for La Rosa still refused to send me a copy of the 2005 License Agreement.

**SFM Prepares to File Copyright Claims in Federal Court**

12. SFM made numerous demands on La Rosa for payment for the use of its software that went unheeded. On February 12, 2007, I sent a certified letter to Mr. Hiram Rodriguez at La

Rosa Del Monte, 1133-35 Tiffany Street, Bronx, NY 10459, demanding that La Rosa and its affiliates immediately stop using SFM's software due to its failure to make the required payments for the software.  A copy of this letter is attached to Plaintiff's Complaint as <u>Exhibit D</u>.  I informed La Rosa in the February 12 letter that I would file suit on behalf of SFM in the event that it failed to stop using the software.

13.    On February 26, 2007, I sent a second letter to Mr. Hiram Rodriguez at La Rosa Del Monte informing them that since they had not complied with the demand to stop using SFM's software I was preparing a lawsuit against them for copyright infringement   A copy of this letter is attached to Plaintiff's Complaint as <u>Exhibit E</u>.

14.    Thereafter, during the first week of April 2007, SFM filed this action against La Rosa.

**<u>Defendants File for Arbitration based on Terms of Purported 2005 License Agreement</u>**

15.    On or about February 12, 2007, La Rosa filed a Demand for Arbitration (the "Demand") with the American Arbitration Association ("AAA").  The Demand was sent to SFM at the incorrect Newark address.   On February 20, 2007, I received a "courtesy" copy of the Demand under the cover of a letter that was dated February 12, 2007.  A copy of the so-called 2005 License Agreement was attached to the Demand.  This was the first time I had laid eyes upon the so-called 2005 License Agreement.  The so-called 2005 Maintenance Agreement was also attached to this Demand.  I had never seen the so-called Maintenance Agreement either.  Upon receipt of the Demand, eight days after it had been filed, I sent a copy of the Demand to Mr. Kogos.

**SFM Tries to Get More Information Regarding the Signatures on the Agreements, but is Refused**

16.     On February 26, 2007, within six (6) days of my receipt of the Demand, I sent a letter to Kevin Harrington ("Harrington"), an attorney for La Rosa, informing him in no uncertain terms that the signatures on the 2005 License Agreement and the 2005 Maintenance Agreement, which contain arbitratability language, did not belong to Mr. Kogos and were therefore forgeries in our view.  A true and correct copy of the letter is attached as <u>Exhibit PZ4</u>. The letter pointed out the following:

        (i)     That Mr. Kogos and SFM had not been served with the Demand;

        (ii)     That AAA's jurisdiction of their Demand was dependent on the validity of the 2005 License Agreement and the 2005 Maintenance Agreement;

        (iii)     That Mr. Kogos had not signed either document and therefore, AAA had no jurisdiction to arbitrate; and

        (iv)     That the e-mail address used in the agreement for Mr. Kogos did not come into existence until 2006 and therefore, dating the licensing agreement to March 3, 2005, was an impossibility.

The letter concluded with a demand that the Demand be immediately and unconditionally withdrawn from arbitration because SFM had never signed an arbitration provision, and cautioned that SFM "will not hesitate to seek appropriate relief from any and all parties who may be responsible for the expenses our clients have incurred, and will likely incur, in responding to this fraudulent demand for arbitration."

17.     A copy of the January 26 letter was sent to Ms. Kimberly Claxton of the AAA, who then  requested that Mr. Harrington respond to our letter.

18.     Mr. Harrington responded by a letter dated March 2, 2007, a true and correct copy of which is attached hereto as <u>Exhibit PZ5</u> (copies of the various enclosures and the fax cover sheet being omitted).    I was surprised to find out from Mr. Harrington's response, for the first time, that La Rosa did not have an original signed version of either of the alleged 2005 Agreements; apparently Mr. Kogos' purported signatures on the Agreements exist only in photocopy form.   Also, apparently, there are no witnesses to Mr. Kogos ever signing the contract.   Mr. Harrington states in the letter that La Rosa claims that it will be able to call a witness, Mr. Steven Dalzell, who will "establish" that Mr. Kogos signed the software development agreement by testifying that he "requested that Mr. Kogos supply a duplicate copy of this agreement and that subsequently, during a visit to the office of claimant (La Rosa), Mr. Kogos hand-delivered a photocopy of the signed agreement to Mr. Dalzell, including the signature page bearing Mr. Kogos' signature."  (Exhibit PZ5, p. 2).  Mr. Harrington's letter does not address the fact that the written Agreements could not have been in existence on March 3, 2005 because the e-mail address referred to in the documents had not yet come into existence.

19.     As a follow up to Mr. Harrington's letter, I tried to get more information regarding Mr. Kogos' purported signature on the 2005 License Agreement.   On March 6, 2007, I sent an email to Ms. Kim Claxton of AAA, with a copy to Mr. Harrington, a true and correct copy of which is attached as <u>Exhibit PZ6</u>, in which I requested, *inter alia*, additional information from Mr. Harrington regarding what Mr. Dalzell would testify to.  Specifically, I stated (at ¶5):

> "I would like La Rosa to agree to make Mr. Dalzell available to talk to us, or to let
> us contact Mr. Dalzell to talk to him about his testimony.   Alternatively, I would
> like La Rosa to fill-in some of the blanks regarding the testimony they say he will
> give, such as when (on or about what date) he requested that Mr. Kogos supply a

duplicate copy of the agreement, when (on or about what date) Mr. Kogos delivered a photocopy back to him, when (on or about what date) the form of the agreement that was allegedly signed by Mr. Kogos came into existence or was completed, and who was involved in the drafting of the agreement. Would Mr. Dalzell be willing to supply this information in an affidavit form so that it is on the record."

Mr. Harrington refused or ignored these requests.

### SFM Gives La Rosa the Chance to have the Jurisdiction Question Tried Separately

20.     Even though we have consistently denied that AAA has jurisdiction in this case, in that same March 6, 2007 email (Exhibit PZ6, ¶3), I offered Mr. Harrington the opportunity to have the AAA rule separately on the issue of whether Mr. Kogos ever executed any document containing an agreement to arbitrate between SFM and La Rosa. I explained that utilizing the Emergency Arbitrator procedure would "potentially save my clients significant legal fees if the issue is heard before its having to file a response and counterclaims." I also included (¶3) my 'assumption' that LaRosa would welcome this proposal "for the same reason." I was, however, mistaken: At a later telephone conference among myself, Ms. Claxton and Mr. Harrington, Ms. Claxton told us that such a hearing could only be granted if both sides agree to it. She asked Mr. Harrington if he would agree to a separate hearing on jurisdiction. Mr. Harrington would not agree to a separate hearing on the jurisdiction of the AAA.; La Rosa is insisting that all matters (including our objection to AAA's jurisdiction) be handled together.

### SFM has been Clear at all Times on the Arbitration Issue

21.     I have always made it clear to La Rosa and its counsel that SFM will not proceed before the AAA because SFM never signed a contract agreeing to arbitrate issues that it had with

La Rosa. At every step, I have clearly informed counsel for La Rosa that SFM did not sign any arbitration agreement and therefore, we would not litigate the matter in arbitration. SFM filed an Objection to Jurisdiction in the arbitration case in March, 2007, a copy of which is attached as Exhibit PZ7. The first page of this two page exhibit is attached to the Declaration of Attorney Rosenthal as Exhibit F. Paragraph 6 of that Objection of Jurisdiction (on the page not attached by Rosenthal) expressly states as follows:

> "For the avoidance of doubt, SFM states for the record that it never has, and still does not, agree to the assertion of jurisdiction by the American Arbitration Association with respect to its business transactions with La Rosa, and will resist such jurisdiction through any legal means available to it. SFM reserves its right to, and will, pursue its legal rights against La Rosa in the appropriate courts of competent jurisdiction at the appropriate time."

22.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and accurate.

Philip Zukowsky

STATE OF OHIO              )
                           ) SS:
COUNTY OF MONTGOMERY       )

Before me, the undersigned, a Notary Public, in and for said County and State, personally appeared Philip Zukowsky, who, being duly sworn upon his oath, stated that the facts set forth in the foregoing affidavit are true.

Witness my hand and notary seal this 7th day of June, 2007.

MELISSA K. ZIMMER, Notary Public
In and for the State of Ohio
My Commission Expires Nov. 1, 2009

Notary Public
My Commission Expires:

**Exhibit PZ 1**

**From:** Philip Zukowsky
**Sent:** Friday, December 22, 2006 2:01 PM
**To:** rsocko@homlegal.com
**Cc:** shlomo kogos
**Subject:** La Rosa Del Monte

Software for Moving is seeking to collect the following amounts from La Rosa Del Monte.

1. Dos and Window Program.  The annual maintenance/license fee for the use of this program is $58,000.  La Rosa has paid the annual fee in full through 2005.  For 2006 it has only paid $30,000 (which payment was made in August 2006 although the annual fee is required to be paid in January).  Thus, for 2006 La Rosa owes $28,000.  If La Rosa chooses to use SFM's Dos and Window Program in 2007, an additional $58,000 is due on January 1, 2007.

2. New SFM Program.  La Rosa contracted with SFM to use SFM's new server based program and for customization work to the program.  The agreement called for payments to SFM of $295,000 payable no later than when La Rosa started to use the program, and an annual maintenance/license fee of $40,000 commencing in the month when La Rosa began using the program.  La Rosa went live with the program in August.  La Rosa has paid $242,500 of the $295,000 upfront money, so $52,500 of the upfront money is due and owing.  There is also five months of fees due and owing, an additional $16,666.  If La Rosa chooses to use SFM's New Program in 2007, an additional $40,000 is due on January 1, 2007.

In addition, two other fees were agreed to by La Rosa and SFM.  The first was payment for enhancements to the program that La Rosa could accept or reject.  An example of this is the Google Map feature that SFM added to the program.  These total cost for these programs is $60,000.  La Rosa can reject these enhancements and not have any payment obligations (in which case SFM will remove them from the program), or it can accept some or all of these enhancements.  However, we want La Rosa to let us know their position on these as soon as possible.

The other fee was for "manifest planning" requested by La Rosa.  This was additional customization requested by La Rosa.  These are not optional like the fee discussed above.  The total cost of the manifest planning enhancements is $50,000.  However, SFM would be willing to discuss discounting this amount if La Rosa brings its account up to date promptly.

I look forward to hearing from you next week regarding this matter.  However, as you can tell time is of the essence as beginning January 1, 2007, there will be additional fees dues from La Rosa.  Best Regards and Merry Christmas to you.

Philip A. Zukowsky
Chernesky, Heyman & Kress P.L.L.
paz@chklaw.com
937-449-2842
937-449-2821 (fax)

========================================
CIRCULAR 230 DISCLOSURE
========================================
PURSUANT TO RECENTLY-ENACTED US TREASURY DEPT. REGULATIONS, WE ARE NOW REQUIRED TO ADVISE YOU THAT, UNLESS OTHERWISE EXPRESSLY INDICATED, ANY FEDERAL TAX ADVICE CONTAINED IN THIS COMMUNICATION, INCLUDING ATTACHMENTS AND ENCLOSURES, IS NOT INTENDED OR WRITTEN TO BE USED, AND MAY NOT BE USED, FOR THE PURPOSE OF (i) AVOIDING TAX-RELATED PENALTIES UNDER THE INTERNAL REVENUE CODE OR (ii) PROMOTING, MARKETING OR RECOMMENDING TO ANOTHER PARTY ANY TAX-RELATED MATTERS ADDRESSED HEREIN.


========================================
PRIVILEGED AND CONFIDENTIALITY NOTICE
========================================
THIS ELECTRONIC TRANSMISSION (AND/OR THE DOCUMENTS ACCOMPANYING IT) MAY CONTAIN CONFIDENTIAL INFORMATION BELONGING TO THE SENDER WHICH IS PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE.  THE INFORMATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED.  IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE, COPYING, DISTRIBUTION, ELECTRONIC STORING, OR THE TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS OF THIS INFORMATION IS STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE IMMEDIATELY NOTIFY THE SENDER BY REPLY E-MAIL AND IMMEDIATELY DELETE THIS RECORD FROM YOUR COMPUTER SYSTEM.
========================================

# Exhibit PZ2

# Harrington, Ocko & Monk

**A LIMITED LIABILITY PARTNERSHIP**
**Attorneys at Law**

White Plains Office

New York City Office

81 Main Street – Suite 215
White Plains, NY 10601
Tel: (914) 686-4800
Fax: (914) 686-4824

52 Duane Street, 7th Floor
New York, NY 10007
Tel: (212) 227-8004

Robert S. Ocko, Partner
e-mail: rsocko@homlegal.com

Reply to White Plains Office

January 9, 2007

VIA E-MAIL - SKOGOS@EARTHLINK.NET
and CERTIFIED MAIL, RET. RCPT. REQ.

Mr. Shlomo Kogos
Software for Moving, Inc.
211 Warren Street, Suite 305
Newark, NJ 07103

> Re: Software Development and Licensing Agreement
>        dated March 3, 2005 (the "Agreement")

Dear Mr. Kogos:

As you are aware, this firm represents La Rosa del Monte Express, Inc. ("La Rosa"), the "Client" under the Agreement referenced above.

As a follow-up to our letter to you dated December 11, 2006, please be advised that this letter shall serve as formal written notice to you that pursuant to Section 12.2 of the Agreement, La Rosa is terminating the Agreement effective immediately due to your material breach. Pursuant to Section 12.2 of the Agreement, La Rosa demands that you immediately return all monies paid to Developer under the Agreement totaling the amount of $245,250.00. In addition, La Rosa demands that Developer immediately cease interfering with La Rosa's ability to access all of its software programs currently being hosted by XL Host in Columbus, Ohio.

Developer's material breach under the Agreement includes Developers failure to complete all of the software development pursuant to the terms of the Agreement and Developer's intentional interference with La Rosa's ability to use the software programs that it contracted and paid Developer to develop for La Rosa pursuant to the terms of the Agreement. Moreover, despite the fact that you, as the President of Developer, and your counsel assured La Rosa that they could make arrangements with XL Host, the current hosting company of all the software programs, to either contact and pay them directly for their services, or to have the software transferred to a new hosting company, XL Host through its manager, Saeed, has informed La Rosa on several occasions, including yesterday, that La Rosa can have no access or

Mr. Shlomo Kogos
January 9, 2007
Page 2 of 3


communication with XL Host without the consent of you and Developer. Saeed has also confirmed that the servers have been rendered inaccessible to La Rosa at your express instruction.

Your actions are in direct conflict with both your statements to La Rosa and an e-mail from your counsel, Philip Zukowsky, dated Wednesday, December 27, 2006, wherein Mr. Zukowsky told me that La Rosa could and should contact XL Host in order to avoid having XL Host terminate its hosting of La Rosa's software programs. However, despite your counsel's representations, you have instructed XL Host to deny La Rosa access to any of its software programs. This is intentional tortious interference with La Rosa's ability to operate and conduct its business. La Rosa is suffering thousands of dollars in losses and damages each and every day due to your actions, for which we will hold you and Developer responsible. Furthermore, you have made threats to our client that you will sell their customized software with all of its confidential and proprietary information to La Rosa's competitors. If you or Developer take any such actions, our client will hold you and your company both responsible for all damages resulting therefrom.

Your actions are in no way justified by the fact that you allege that La Rosa has not paid you in full pursuant to the terms of the Agreement. In fact, Developer has not completed the development of the software in accordance with the terms of the Agreement. There are significant problems with the software including, but not limited to, inaccurate information being generated from reports, deficiencies in estimator's work sheet reports, customer service, salesman schedules, screen for charges, printing of contracts, and dates for estimates and bookings. In addition, there are no fields for international, military and commercial operations. These problems apply to the use of the software in all of La Rosa's offices including Puerto Rico. You have been previously made aware of all of these problems and have failed to rectify them, all in breach of the Agreement. You, therefore, had no contractual right under the Agreement to be paid additional monies at this time. Moreover, Section 4.2 of the Agreement specifically states that La Rosa shall not be in default if they, in good faith, dispute the fact that any phase of the development of the software was not complete.

In addition, pursuant to Section 4.2 of the Agreement, prior to Developer being entitled to full payment, La Rosa has the contractual right to test all of the software for a 90-day period after all the software was completed. Then, only after a successful 90-day test period without failure, would the remaining 10% of the fee become due. Your contentions that final payment is due before you complete the work provided in the Agreement and before the 90-day test period under the Agreement are completely incorrect.

Finally, pursuant to Section 9 of the Maintenance Agreement between Client and Developer dated March 3, 2005, this letter shall serve as written notice that Client is terminating that Maintenance Agreement for cause based on Developer's breach thereunder.

Mr. Shlomo Kogos
January 9, 2007
Page 3 of 3

Thus, La Rosa demands that you immediately provide La Rosa access to all of its current software through XL Host and return all monies paid to Developer in accordance with the terms of the Agreement and all maintenance fees previously paid to Developer.

La Rosa hereby expressly reserves all of its legal rights under the Agreement and otherwise to protect all of its legal rights.

Very truly yours,

Robert S. Ocko

RSO/cm

cc:     La Rosa del Monte Express, Inc.
        Philip A. Zukowsky, Esq.

**Exhibit PZ3**

-----Original Message-----
From: Philip Zukowsky [mailto:paz@chklaw.com]
Sent: Tuesday, January 09, 2007 4:14 PM
To: Rob S Ocko
Subject: RE: La Rosa del Monte and Software for Moving

I received a copy of your letter to my client dated January 9, 2007. In
the future all correspondence to my client should be sent through me.
Please do not send letters directly to my client, and I shall continue
to follow the same rule with your client.

I would appreciate as well if you would send me a PDF copy of the March
3, 2005 Agreement that is referenced in your letter.

Finally, as I indicated in my prior e-mail dated December 27, 2006, the
amount now due (as of 1/1/07) to SFM from your client for the continuing
use of SFM's DOS and Windows Program is $86,000. The amount now due
from your client for the use of SFM's server based program is now
$219,166. If these past due payments are not addressed presently we
will have to demand that your client henceforth cease, desist and
refrain from using SFM's copyrighted software. Thank you for your
cooperation.


Philip A. Zukowsky
Chernesky, Heyman & Kress P.L.L.
paz@chklaw.com
937-449-2842
937-449-2821 (fax)

-----Original Message-----
From: Philip Zukowsky
Sent: Friday, January 12, 2007 3:51 PM
To: Rob S Ocko
Subject: RE: La Rosa del Monte and Software for Moving

I have reviewed your e-mail of today with my client. There are
a few items in your e-mail that merit a response for the record.

First, regarding your statement that I have not responded to
your claims, I have responded by asking for a PDF copy of the Agreement
referenced in your e-mail. Your claims are based on the terms of that
Agreement, so I need to see the referenced Agreement before I can
respond to your claims. When you send a PDF copy of the Agreement, I
shall respond.

Second, for the record, SFM is not blocking your client's use of
SFM's web based program. As I quite clearly communicated to you
previously, your client can use the program by paying for the hosting
company the fee it charges to host the software. Your client has always
had the passwords needed to use the software. What you have asked for,
and what we will not give, is the information that would allow your
client to copy SFM's software. Let me say this: if your client wants to
use (not copy) SFM's software and there is any problem with obtaining
that use you just let me know and I will have it taken care of
immediately.

Finally, you really must quit referring to SFM's programs as
your client's software. SFM developed this software over a period of
twenty years, long before it had any relationship with your client. It
has invested millions of dollars in its program and the program is
licensed widely throughout the moving industry. The modifications that
your client requested be made to SFM's software to fit your client's
business is relatively small compared to the totality of the program.
Do you think that because SFM made some relatively small modifications
to its software to fit your client's business that your client magically
acquired my client's software as its own?

This is currently a simple collections case in which roughly
$305,000 is owed by your client to my client for the use of two of my
client's programs. We are willing to hear from your client any
suggestions it may have regarding settlement of this bill; for example,
reasonable payment terms. SFM is willing to accommodate your client as
to any reasonable requests that will facilitate its use of SFM's
software. For example, if there are a list of additional modifications
that your client wants, present them and let's be done with those as an
excuse for non-payment. We will not however tolerate any infringement
on our copyright for the programs currently licensed by your client--be
it copying of the source code, copying the functionality of the program,
moving the programs to different servers or computers, etc. (with the
exception that SFM will agree to a 9/12 plan for the source code). I
await your response.


Philip A. Zukowsky
Chernesky, Heyman & Kress P.L.L.
paz@chklaw.com
937-449-2842
937-449-2821 (fax)

# Exhibit PZ4

# CHERNESKY, HEYMAN & KRESS P.L.L.

### ATTORNEYS AT LAW

10 COURTHOUSE PLAZA SW, SUITE 1100
DAYTON, OHIO 45402
P.O. BOX 3808

WRITER'S DIRECT DIAL
937/449-2842

WRITER'S FAX
937/463-4947

DAYTON, OHIO 45401-3808
937/449-2800

WRITER'S E-MAIL
paz@chklaw.com

WEBSITE
www.chklaw.com

February 26, 2007

**Via U.S. Mail and E-Mail**
Mr. Kevin J. Harrington
Harrington, Ocko & Monk, LLP
81 Main Street
Suite 215
White Plains, New York 10601

> Re: 19 117 00027 07
> La Rosa Del Monte Express, Inc.
> and
> Software for Moving, Inc. and
> Shlomo Kogos

Dear Mr. Harrington:

I received, on February 20, a copy of your letter and the enclosed "courtesy copy" of your Demand for Arbitration in the captioned matter. I have since received Ms. Claxton's letter of February 21, 2007 confirming that your Demand for Arbitration has been received by the American Arbitration Association. My clients, Mr. Kogos and Software for Moving, Inc., have not received the Demand for Arbitration as of yet and are unlikely to ever receive it, inasmuch as the Newark, New Jersey address to which the Demand was supposedly sent is not one at which my clients are presently located.

Your Demand for Arbitration is premised on the terms of a Software Development & License Agreement and a separate Maintenance Agreement, both supposedly executed on or about March 3, 2005. However, even though these 'Agreements' describe – in some respects – how our respective clients dealt with each other for a considerable period of time, my client, Mr. Kogos never signed either 'Agreement.' Mr. Kogos' purported 'signatures' on the 2005 'Agreements' are obvious, and clumsy, forgeries, even to a non-expert. You will recall my several attempts to get you to provide me with copies of the 'Agreements' on which you were making the various contentions that have now been collected in your Demand for Arbitration. You never provided me with copies, despite my requests. Had you done so, we could have

**CHERNESKY, HEYMAN & KRESS P.L.L.**

Mr. Kevin J. Harrington
Page 2
February 27, 2007

pointed out the obvious forgeries to you then. Even so, you might have noticed, when you assembled the exhibits to your Demand for Arbitration, how little the purported 'signatures' on the March 3, 2005 'Agreements' resemble Mr. Kogos' signature on other documents that you also included.

Specifically, Mr. Kogos signed the 1999 Software Licensing Agreement (Exhibit A to your Demand for Arbitration) in four separate places:

> At page 10 of 10, at the end of the body of the 1999 Software Licensing Agreement;
>
> at page 7 of 7 of Exhibit "A" to the 1999 Agreement;
>
> at page 3 of 3 of Exhibit "B" to the 1999 Agreement; and
>
> at page 4 of 4 of Exhibit "C" to the Software Maintenance Agreement.

When you review these signatures, you'll note that they (a) resemble each other and (b) provide clear spacing between Mr. Kogos' first and last names. This is not the case, however, with the signature on the supposed March 3, 2005 Software Development & License Agreement (Exhibit B to your Demand for Arbitration), where the first and last name run together. The scrawl at p. 16 of that document bears so little resemblance to the signatures on the 1999 Agreement as to make the forgery painfully obvious. Admittedly, the forgeries on the supposed March 3, 2005 Maintenance Agreement (Exhibit C to your Demand for Arbitration) are more artful, but the signatures there are no more valid than the phony scrawl on the Software Development & License Agreement.

There are other things you must consider in evaluating the validity of these agreements. Those are the "tells" that show that the Agreements could not have been executed on March 3, 2005, when you claim the document was signed. For example, the Notice paragraph of Article XIII of the supposed March 3, 2005 Software Development & License Agreement (§13.5) purports to list Mr. Kogos' email address as skogos@earthlink.net. However, the email address set out in §13.5 *did not exist until 2006*. We have the e-mails from Earthlink that states that skogos@earthlink.net mailbox was opened on 5, 2006.

Whether or not you noticed the discrepancies in the signatures when you put the Demand together, you are on notice now: Mr. Kogos did not execute the Software Development & License Agreement or Maintenance Agreement and my clients have not agreed to arbitration of any dispute between our respective clients.

## CHERNESKY, HEYMAN & KRESS P.L.L.

Mr. Kevin J. Harrington
Page 3
February 27, 2007

We therefore demand the immediate and unconditional withdrawal of the captioned Demand for Arbitration. If we are not informed that the Demand has been withdrawn by 5:00 pm EST Friday, March 2, 2007, we will take all necessary steps, in any available forum, to protect our clients' interests with respect to this matter. We will not hesitate to seek appropriate relief from any and all parties who may be responsible for the expenses our clients have incurred, and will likely incur, in responding to this fraudulent Demand for Arbitration.

Enclosed with this letter, please also find enclosed a copy of my letter today to Ms. Claxton demanding that AAA refuse to proceed on this Demand for Arbitration.

We must respectfully insist upon your immediate attention to this matter.

Very truly yours,

CHERNESKY, HEYMAN, & KRESS P.L.L.

Philip A. Zukowsky

PAZ/ge
Enclosure

cc:     kharrington@homlegal.com

Ms. Kimberly F. Claxton
Case Manager
American Arbitration Association
950 Warren Avenue
East Providence, Rhode Island 02914

ClaxtonK@adr.org

Mr. Jack Leyhane
1205 W. Randolph
Suite 1320
Chicago, Illinois 60606

Leyhane329@aol.com

{00289840.DOC;}

# Exhibit PZ5

# Harrington, Ocko & Monk

### A LIMITED LIABILITY PARTNERSHIP
### Attorneys at Law

White Plains Office

81 Main Street – Suite 215
White Plains, NY 10601
Tel: (914) 686-4800
Fax: (914) 686-4824

Kevin J. Harrington, Partner
e-mail: kharrington@homlegal.com

New York City Office

52 Duane Street, 7th Floor
New York, NY 10007
Tel: (212) 227-8004

Reply to White Plains Office

March 2, 2007

## VIA FACSIMILE: (401) 435-6529
## and FIRST CLASS MAIL

Kimberly F. Claxton, Case Manager
AMERICAN ARBITRATION ASSOCIATION
950 Warren Avenue
East Providence, RI 02914

> Re:   *La Rosa Del Monte Express, Inc., Claimant, vs. Software*
> *For Moving, Inc., and Shlomo Kogos, as an Individual, Respondents.*
> Demand for Commercial Arbitration:
> American Arbitration Association, NY, NY (Case No.: 19 117 00027 07)

Dear Ms. Claxton:

As you may recall, our firm represents Claimant, La Rosa Del Monte Express, Inc. ("La Rosa"), in the above-captioned arbitration. We write to you at this time in response to the letter of February 27, 2007 letter of Mr. Philip A. Zukowsky, counsel for Respondent, Software for Moving, Inc. ("SFM").

As to the allegations of forgery contained in Mr. Zukowsky's February 27th letter, obviously, our client disputes any notion that the signatures of Mr. Kogos, President of SFM, on the operative documents at issue in this Arbitration are forgeries. Contrary to Mr. Zukowsky's allegations, the signatures of Mr. Kogos on these documents (the March 3, 2005 Software Development and License Agreement and the March 3, 2005 Maintenance Agreement) are almost identical to that of Mr. Kogos on the March 24, 1999 Software Licensing Agreement, a signature Mr. Zukowsky acknowledges is that of his client. See Exhibit "A", a true and correct copy of the signatures of Mr. Kogos on the March 24, 1999 Software Licensing Agreement; Exhibit "B", a true and correct copy of Mr. Kogos'

Ms. Kimberly F. Claxton, Case Manager (AAA)
AAA Case No.: 19 117 00027 07
Re: *La Rosa Del Monte Express, Inc., Claimant, vs. Software*
    *For Moving, Inc., and Shlomo Kogos, as an Individual, Respondents.*
March 2, 2007
Page 2

signatures on the March 3, 2005 Software Development and License Agreement; and Exhibit "C", true and correct copies of Mr. Kogos' signatures on the March 3, 2005 Maintenance Agreement. In addition, the signatures on the 2005 Software Development and Maintenance Agreements match Mr. Kogos' endorsing signature on an August 29, 2006 check for Ten Thousand ($10,000) Dollars made out to SFM and cashed by Mr. Kogos. See Exhibit "D", a true and correct copy of an August 29, 2006 check endorsed by Mr. Kogos on behalf of SFM. Thus, any suggestion that the signatures of Mr. Kogos on these documents are forgeries is easily dispelled by a simple review of the very signatures themselves.

Second, if Respondents persist in advancing the spurious claim that Mr. Kogos' signature was forged on the operative agreements, Claimant is prepared at the hearing in this matter to call a witness who will directly refute the claim. The witness who will establish that Mr. Kogos did indeed sign the Software Development Agreement is Steven Dalzell, the former Chief Operating Officer of Claimant. Mr. Dalzell will testify that he requested that Mr. Kogos supply a duplicate copy of this agreement and that subsequently, during a visit to the office of Claimant, Mr. Kogos hand-delivered a photocopy of the signed agreement to Mr. Dalzell, including the signature page bearing Mr. Kogos' signature. If, as he now claims, Mr. Kogos never signed the agreement, then he would not have personally delivered a signed copy to Mr. Dalzell.

Furthermore, Mr. Kogos, as well as Mr. Zukowsky (on behalf of Mr. Kogos and SFM), have taken actions and made detailed demands for money to La Rosa based on the very same agreements they now contend contain forged signatures, and are not binding on the parties. Their protestations now of forgery thus ring hollow.

As indicated in Claimant's Demand for Arbitration in this matter, the Software Development and License Agreement of March 3, 2005 required that La Rosa pay SFM $58,000 to continue to use the current software (DOS/WINDOWS-based software), pending the completion of the new web-based software by SFM. See Software Development and License Agreement, Section 4.6. Furthermore, the Software Development and License Agreement provides that La Rosa would pay SFM a license fee of $105,000 once the new web-based software was completed, operational, and delivered to La Rosa by SFM in its entirety. Id., at Section 6.5. Under the Agreement, La Rosa was also to pay SFM a development fee of $190,000 for development of this new web-based software. Id., at Section 4.1.

Ms. Kimberly F. Claxton, Case Manager (AAA)
AAA Case No.: 19 117 00027 07
Re: *La Rosa Del Monte Express, Inc., Claimant, vs. Software For Moving, Inc., and Shlomo Kogos, as an Individual, Respondents.*
March 2, 2007
Page 3

While Mr. Zukowsky and his client, SFM, contend the signatures on these agreements are forged, and thus, inoperative, Mr. Zukowsky and Mr. Kogos, President of SFM, have both made specific demands of La Rosa, and asked for the specific amounts described in the March 3, 2005 Software License and Development Agreement. Indeed, Mr. Kogos e-mailed to Robert S. Ocko, counsel for La Rosa, on December 13, 2006, and specifically acknowledged a $58,000 per year maintenance charge for La Rosa's use of the DOS/WINDOWS-based software in 2005; exactly the sum required of La Rosa pursuant to Section 4.6 of the Software License and Development Agreement. See Exhibit "E," a true and correct copy of the December 13, 2006 e-mail from Mr. Kogos to Mr. Ocko. Mr. Kogos also acknowledges in this e-mail that SFM was paid precisely that amount by La Rosa in late 2004, again, in accordance with the terms of the 2005 Agreement. Mr. Kogos, in fact, references the Software Development Agreement in this very e-mail. Thus, Mr. Kogos and SFM have, both by their conduct and their writings, acknowledged that the contracts exist, and that SFM is bound by their terms, including the arbitration provisions.

Subsequently, on December 22, 2006, Mr. Zukowsky e-mailed Mr. Ocko, and also demanded the exact amounts described in the 2005 Software Development Agreement. See Exhibit "F", a true and correct copy of the December 22, 2006 e-mail from Mr. Zukowsky to Mr. Ocko. Mr. Zukowsky admits in his e-mail that $58,000 was the agreed-upon amount of the payment for SFM to maintain the DOS/WINDOWS-based software in 2005 under the 2005 Software Development Agreement. Furthermore, Mr. Zukowsky references the exact amount La Rosa would owe to SFM under the Software Development Agreement of $295,000 ($105,000 for the license, and $190,000 for the development of the new web-based software; both due upon completion and satisfactory delivery of the new web-based software). Thus, in his correspondence, Mr. Zukowsky admits that the parties were acting in accordance with the express terms of the Software Development and Maintenance Agreements of 2005, causing SFM to be bound by the arbitration provision of the Agreements. Through the actions of Mr. Kogos and Mr. Zukowsky, SFM is now estopped from arguing to the contrary.

Furthermore, the purported illegitimacy of the contracts disputed by SFM and Mr. Zukowsky is undercut by the presence of specific provisions in the 2005 Software Development Agreement relating to Mr. Zukowsky. In order to ensure that La Rosa had access to the source codes and other information relating to the new web-based software should SFM go out of business, the parties agreed to designate a custodian for such

Ms. Kimberly F. Claxton, Case Manager (AAA)
AAA Case No.: 19 117 00027 07
Re: *La Rosa Del Monte Express, Inc., Claimant, vs. Software
For Moving, Inc., and Shlomo Kogos, as an Individual, Respondents.*
March 2, 2007
Page 4

information. See Exhibit "G", a true and correct copy of the Addendum to the 2005 Software Development and License Agreement. The custodian designated in the Addendum is none other than Mr. Zukowsky. Indeed, not only is Mr. Zukowsky identified by name as the custodian, but the address and telephone number for his law firm are also provided in the Addendum. It stretches all credibility for SFM to now assert the contracts at issue are void, or that Mr. Kogos did not execute them, when the 2005 Software Development Agreement references Mr. Zukowsky by name, and the information in the Agreement regarding the identity and contact information for SFM's counsel, Mr. Zukowsky, could only have one source – Mr. Kogos/SFM.

The past actions of the parties also conclusively demonstrate the idea that La Rosa and SFM would enter into verbal agreements regarding the 2005 Software Development and License Agreement and the Maintenance Agreement is preposterous.  As Mr. Zukowsky acknowledges in his letter to Mr. Kevin Harrington of February 26, 2007, the parties did enter into a Software Agreement in March 1999 regarding the DOS/WINDOWS-based software. This 1999 Agreement relates to the development and licensing of the DOS/WINDOWS software by La Rosa from SFM. The 1999 Agreement involves sums far smaller than the amounts involved in the present 2005 Software Development and Maintenance Agreements. The parties then conducted themselves in accordance with the terms of this 1999 Agreement for almost five (5) years.

It goes completely against the parties' prior conduct regarding software development and licensing for SFM to now claim that La Rosa operated for two (2) years and paid hundreds of thousands of dollars to SFM without a written agreement with SFM regarding the new software which SFM was proposing to license to La Rosa. In fact, as described in the e-mails from Mr. Kogos and Mr. Zukowsky, SFM claims numerous intellectual property rights concerning the new software, yet amazingly asserts there exists no written contract establishing and defining such rights. SFM's asserted intellectual property rights in the new software only ring true if the parties had a written agreement about such property rights, an agreement SFM now claims does not exist.

Finally, at this stage of the Arbitration, pursuant to Rule 7 of the AAA Commercial Arbitration Rules, the arbitrator has the exclusive power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or the validity of the arbitration agreement. Indeed, under Rule 7(c), an arbitrator alone has the authority to make a ruling with regard to jurisdiction over the arbitability of a claim. Thus, SFM cannot

Ms. Kimberly F. Claxton, Case Manager (AAA)
AAA Case No.: 19 117 00027 07
Re: *La Rosa Del Monte Express, Inc., Claimant, vs. Software*
*For Moving, Inc., and Shlomo Kogos, as an Individual, Respondents.*
March 2, 2007
Page 5

escape arbitrating the issue of whether or not the arbitration clauses within the March 3, 2005 Agreements are valid.

Thank you in advance for your time and consideration in this matter.

Respectfully submitted,

Kevin J. Harrington

KJH:jjb

cc: **VIA FACSIMILE AND FIRST CLASS MAIL:**
Philip A. Zukowsky, Esq.

# Exhibit PZ6

## Philip Zukowsky

**From:** Philip Zukowsky
**Sent:** Tuesday, March 06, 2007 9:37 AM
**To:** 'Kimberly Claxton'
**Cc:** 'kharrington@homlegal.com'
**Subject:** Items I want to discuss at Scheduling Conference

Dear Ms. Claxton:

The following are the items that I want to discuss at the scheduling conference:

1. I did not receive a "courtesy" copy of the Demand until February 20, notwithstanding that the cover letter is dated February 12. My secretary stamped the letter as received February 20 per custom. I believe that the courtesy copy may not have been sent to me until after Claimant's service on Software for Moving failed because they used a wrong address. I just note this for purposes of determining response dates.

2. We did not receive page 10 of the License Agreement that was attached to Claimant's Demand. We want that, and we need it to frame any response and counterclaim.

3. I am requesting an agreement of the parties to the Appointment of an Emergency Arbitrator under the Optional Rules for Emergency Measures of Protection on the jurisdiction issue. This would seem to me to be only fair in light of the fact that, if I read LaRosa's response correctly, they do not have original signed documents of the Agreements on which they base jurisdiction. If I read the response correctly, they are disclosing for the first time that they never had an original document, notwithstanding that they prepared the document. The Emergency Arbitrator procedure will potentially save my clients significant legal fees if the issue is heard before its having to file a response and counterclaims. I would assume that LaRosa will welcome this as well for the same reason.

4. I am requesting an agreement or order to stay the filing of our response and counterclaims until the Emergency Arbitrator decides the jurisdiction issue. If the request for an Emergency Arbitrator is not granted I am requesting an extension of time to file our response until April 1. The reason that the extra time is needed is because we will be objecting to the jurisdiction and the existence of the written contract that La Rosa says exists. We will have to write a response and counterclaims to include both situations: if the written contract does not exist and if it is found to exist. I think that this is reasonable in light of the fact that we are finding out for the first time that LaRosa does not have original signed contracts. In addition I am informed by La Rosa's counsel of his belief that any and all claims relating to any SFM software has to be filed in the arbitration. Because we will be filing federal copyright violation claims for in excess of $1,000,000 against LaRosa, its shareholders and employees who used the software, the counterclaims will take time to craft.

5. I would like LaRosa to agree to make Mr. Dalzell available to talk to us, or to let us contact Mr. Dalzell to talk to him about his testimony. Alternatively I would like LaRosa to fill in some of the blanks regarding the testimony they say he will give, such as when (on or about what date) he requested that Mr. Kogos supply a duplicate copy of the agreement, when (on or about what date) Mr. Kogos delivered a photocopy back to him, when (on or about what date) the form of the Agreement that was allegedly signed by Mr. Kogos came into existence or was completed, and who was involved in the drafting of the Agreement. Would Mr. Dalzell be willing to supply this information in an affidavit form so that it is on the record.

I just wanted to let you and counsel know in advance some of the items that I would like to discuss. Thank you for your consideration of these matters.

Philip A. Zukowsky
Chernesky, Heyman & Kress P.L.L.
paz@chklaw.com
937-449-2842
937-449-2821 (fax)

6/7/2007

# Exhibit PZ7

## AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| LA ROSA DEL MONTE EXPRESS, INC.<br><br>Claimant,<br><br>vs.<br><br>SOFTWARE FOR MOVING, INC. and<br>SHLOMO KOGOS, as an Individual,<br><br>Respondents. | Case No. 19 117 00027 07 |

### OBJECTION TO JURISDICTION

1.      LA ROSA DEL MONTE EXPRESS, INC. ("LA ROSA") filed a Demand for Arbitration (the "Demand") with the American Arbitration Association ("AAA") in February 2007 and the Demand was assigned the above Case No.

2.      LA ROSA claims as the basis for the AAA having jurisdiction in this case a certain Software Development and License Agreement (the "Exhibit B Agreement") that is attached as Exhibit "B" to the Demand.

3.      SOFTWARE FOR MOVING, INC. ("SFM") did not enter into the Exhibit B Agreement, nor did it otherwise agree to arbitrate its business transactions with LA ROSA.

4.      Because SFM has never agreed to arbitrate its business transactions with LA ROSA the AAA does not have jurisdiction over SFM or the subject matter of SFM's business transactions with LA ROSA.

5.      For the record, SFM has asked AAA for an immediate hearing on the jurisdiction issue but was refused, and asked LA ROSA to agree to an emergency hearing on the jurisdiction issue but was refused.  SFM is shocked and appalled by the failure of the AAA to have a system

that deals with issues of jurisdiction prior to the time that the party asserting lack of jurisdiction has to file an answer to claims made in a Demand for Arbitration and any pertinent counterclaims such party may have.

6.     For the avoidance of doubt, SFM states for the record that it is never has, and still does not, agree to the jurisdiction of the AAA with respect to its business transactions with LA ROSA and it will resist such jurisdiction through any legal means available to it.  SFM reserves its right to, and will, pursue its legal rights against LA ROSA in the appropriate courts of competent jurisdiction at the appropriate time.

Respectfully Submitted,

SOFTWARE FOR MOVING, INC.

_____

Shlomo Kogos, Officer

TO:     Kimberly F. Claxton
        American Arbitration Association
        Claxtonk@adr.org

        Kevin J. Harrington
        Attorney for La Rosa Del Monte Express, Inc.
        kharrington@homelegal.net

Our File No: 2341

STATE OF ILLINOIS          )
                           )  SS.
COUNTY OF COOK             )

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SOFTWARE FOR MOVING, INC., | ) | |
| a New York Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No: 07 C 1839 |
| | ) | Judge Gottschall |
| LA ROSA DEL MONTE EXPRESS, | ) | Magistrate Judge Cole |
| INC., a New York Corporation, and | ) | |
| LA ROSA DEL MONTE EXPRESS | ) | |
| (CHICAGO), LLC, an Illinois Limited | ) | |
| Liability Company, | ) | Jury Demanded by Plaintiff |
| | ) | |
| Defendants. | ) | |

**RESPONSE TO DEFENDANTS' MOTION
TO DISMISS PLAINTIFF'S COMPLAINT**

NOW COMES the Plaintiff SOFTWARE FOR MOVING, INC., a New York Corporation

(SFM), by and through its attorneys, LEYHANE & ASSOCIATES, LTD., and for its response

to Defendants' Motion to Dismiss Plaintiff's Complaint, states as follows:

1.     Plaintiff has filed a number of pleadings with this Response and these are each

incorporated herein by reference.  Specifically, these documents are:

- The Declaration of Shlomo Kogos;

- The Declaration of Philip Zukowsky;

- Plaintiff's Motion to Leave to File an Amended Complaint;

- Plaintiff's Motion to Stay Arbitration; and

- Plaintiff's Motion to Strike Portions of the Declaration of the Declaration of John T.A. Rosenthal.

**The Jurisdictional Attack**

2.      Defendants' primary attack is jurisdictional: Invoking §411(a) of the Copyright Act, 17 U.S.C.A. §411(a), Defendants contend that this court has no jurisdiction over Plaintiff's Complaint because the Complaint did not contain any allegation that SFM had registered its copyright on the computer software in question.  However, §411(a) actually provides, in pertinent part, "[N]o action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."  Defendants do not dispute – and, indeed, they do not mention – that, just as soon as the Complaint was filed, the Clerk of this Court required Plaintiff's counsel to disclose the registration information.  The disclosure was duly made and spread of record in this case as Document 6 – and it is now unrebutted that the copyright on the software in question was registered nearly a decade ago – long before this case was filed.  Thus, at best, Defendants have pointed out a pleading defect, not a jurisdictional one, because the requirement of §411(a), that registration precede suit, has been met.  Moreover, Plaintiff has moved to correct the pleading deficiency by seeking leave to file an Amended Complaint.

3.      Defendants have cited three unpublished cases on this point: Piaggio & C.S.P.A. v. Scooterworks, 1999 WL 674749 (N.D.Ill. Marovich, J.), concerned foreign copyrights allegedly subject to the Berne Convention; the court gave plaintiff leave to make the appropriate allegations in this regard.  The plaintiff in Markovitz v. Camiros, Ltd., 2003 WL 21517364 (N.D.Ill. Guzman, J.), did not register his work of art "Michigan City Depot at Night, 1929" before filing his infringement action – plaintiff's licensing the work for use in a book copyrighted

by the book's authors was deemed an unacceptable substitute for the registration specified by §411(a) – and the motion to dismiss was granted.  Finally, in <u>Leventhal v. Schenberg</u>, 2004 WL 1718512 (N.D.Ill. Guzman, J.), there was neither an allegation nor any proof that the plaintiff had ever registered the copyright for the database that he claimed was infringed by the defendants.  None of these cases has any application in the case at bar.

4.     Because Defendants have cited no "evidence pertinent to subject matter jurisdiction" in their 12(b)(1) motion attacking jurisdiction, but have instead merely suggested the absence of registration, the rule of <u>Saperstein v. Hager</u>, 188 F.3d 852 (7th Cir. 1999), presumably does not apply.  In <u>Saperstein</u> the court noted that "Where evidence pertinent to subject matter jurisdiction has been submitted… 'the district court may properly look beyond the jurisdictional allegations of the complaint… to determine whether in fact subject matter jurisdiction exists.'"  In such a case the plaintiff would have to "establish jurisdiction by competent proof."  (188 F.3d at 855.)  Nevertheless, even though we suggest that this rule is inapplicable, we have brought forward positive, competent proof: Mr. Kogos' Declaration makes specific allegations concerning the copyright registration, stating under oath the same information as was disclosed to this court and spread of record as Document 6 in this case.  (Kogos Declaration, ¶8.)

**<u>Defendants' Request for a Stay of This Action
and Their Request to Compel Plaintiff to Arbitrate</u>**

5.     Most of the first eight pages of the Defendants' Memorandum in support of their Motion to Dismiss are given over to a recitation of what Defendants believe their contracts with SFM provide and the claims they want to compel SFM to arbitrate with them.  Not until page 10 of the Memorandum, however, do Defendants reach the problem with compelling arbitration in

this case. They state, correctly (p. 10), "Before granting a motion to stay and/or compel arbitration, a court must resolve two threshold questions: (1) whether the parties entered into a valid and enforceable agreement to arbitrate; and, if so, (2) whether the claims arising out of the present dispute fall within the scope of the claims they agreed to arbitrate."

6.     In this case we don't get past that first question: Shlomo Kogos categorically denies signing either the 2005 License Agreement or the 2005 Maintenance Agreement that Defendants so carefully describe in the first eight pages of the Memorandum.[1] (Kogos Declaration, ¶¶2-3.) If he did not sign the agreements, there is no written agreement to arbitrate anything. "[A]greements to arbitrate must be in writing." Nissan North America, Inc. v. Jim M'Lady Oldsmobile, Inc., 307 F.3d 601, 604-05 (7th Cir. 2002).

7.     Section 4 of the Federal Arbitration Act specifies that "if the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." The Declaration of Shlomo Kogos puts the making of any arbitration agreement in this case squarely at issue. Rather than restate the several cases

---

[1]     Procedurally, LA ROSA tries to make the argument that these so-called 2005 Agreements are "incorporated by reference" in Plaintiff's Complaint because – under its theory – two of the documents that Kogos admits he signed are 'exhibits' to the 2005 License Agreement and the 2005 Maintenance Agreement respectively. Defendants cite (Memorandum at p. 4, n. 1) Venture Associates Corp. v. Zenith Data Systems, 987 F.2d 429, 431 (7th Cir. 1993), for the proposition that "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [plaintiff's] claim." But the 2005 Agreements are *not* referred to in Plaintiff's Complaint, either expressly or by inference. Of course, under Venture Associates Corp. and the plain language of FRCP 12, the Rosenthal Declaration and the papers attached thereto may have taken us outside the realm of a pleadings motion… and into summary judgment territory. Whether we have crossed that border is something that the court presumably must answer.

- 4 -

cited in the Motion to Stay Arbitration filed concurrently herewith, merely remind the court of that motion and its incorporation herein by reference.

8.      Section E. of the lengthy "Introduction" to Defendants' Memorandum appears to suggest that Defendants have some sort of 'waiver' argument in mind – even though no such argument actually follows in the "Argument" section.  As the Declaration of Philip Zukowsky shows, however, SFM has been resolute in insisting that AAA has no jurisdiction to decide LA ROSA'S claims because Shlomo Kogos never entered into either the 2005 License Agreement or the 2005 Maintenance Agreement.  Admittedly, LA ROSA has been equally adamant in insisting that AAA must decide all of its issues – and all at once, too: Even when Zukowsky offered to let AAA decide if Kogos' signatures had been forged on the so-called 2005 Agreements, LA ROSA refused (Zukowsky Declaration ¶20, Exhibit PZ6, ¶3).  Having refused the offer, LA ROSA surely can not attempt to 'bootstrap' it into a waiver of SFM'S right to refuse to arbitrate on contracts that it says it never entered into.  Besides, the law assumes that "the parties intended courts, not arbitrators, to decide… particular arbitration-related matter[s]" especially "certain gateway matters, such as whether the parties have a valid arbitration agreement at all."  Green Tree Financial Corp. v. Bazzle, 539 U.S. 444, 452, 123 S.Ct. 2402, 2407, 156 L.Ed.2d 414 (2003).  See also, Zurich American Insurance Co. v. Watts Industries, Inc., 466 F3d 577, 580 (7th Cir. 2006) ("'Whether the parties have agreed to arbitrate is a question normally answered by the court rather than by an arbitrator'").

**Defendants Fail to Carry Their Burden to Show
that the Appropriateness of the Proposed Transfer**

9.      The last two pages of Defendants' Memorandum are devoted to their alternate request to transfer this case to the Southern District of New York.  Plaintiff agrees that a party

seeking transfer under 28 U.S.C.A. §1404(a) must show: "(1) that venue is proper in the transferor district; (2) that venue is proper in the transferee district; and (3) that transfer will serve the convenience of the parties and witnesses and promote the interest of justice." <u>Store Decor Division of JAS International, Inc. v. Stylex Worldwide Industries, Ltd.</u>, 767 F.Supp. 181, 184 (N.D.Ill. 1991). But Defendants have skipped immediately to the third step, ignoring the import of the first two.

10.     Venue in this case is proper under 28 U.S.C.A. §1400(a). Section 1400(a) provides, in pertinent part, "Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found." LA ROSA DEL MONTE EXPRESS, INC., the New York Corporation, can be found in Chicago. In its Demand for Arbitration (Rosenthal Declaration, Exhibit A, ¶6), LA ROSA alleged that, while it is headquartered in New York City, it has "offices and warehouses in 11 locations in the United States[,] Puerto Rico, and the Dominican Republic." It acknowledges that it is doing business in Illinois. LA ROSA DEL MONTE EXPRESS (CHICAGO) LLC (LA ROSA CHICAGO) is located on West Armitage Avenue in the City of Chicago. It, too, is "found" here.

11.     For obvious reasons, Defendants want to gloss over the fact that this action is, at root, an action for copyright infringement. SFM'S computer program is being infringed right here, in Chicago, every day. How do we know this? LA ROSA told us so (Rosenthal Declaration, Exhibit A, ¶6): "LA ROSA'S business requires the extensive use of software programs, in order to efficiently conduct its business, including, but not limited to, database entry, data storage, form creation, moving and storage location information, and information

transmission requirements between offices, employees and contractors."[2]   And we know, specifically, that Defendants continue to use the Windows-based software that is the subject of this infringement action because LA ROSA claims, again in its Demand for Arbitration, that it has a right to do so… under the 2005 License Agreement that Shlomo Kogos said he never signed and never saw.  (Rosenthal Declaration, Ex. A, ¶30.)  At *best* LA ROSA has a justification for its continued use of SFM'S software – but that "justification" (which would depend entirely on a provision in a contract that SFM'S President insists he never saw) is at most a *defense* to the infringement charge – not a denial of the continued use of the program.

12.    The second thing that Defendant would have to show to support a transfer under 28 U.S.C.A. §1404(a) is "that venue is proper in the transferee district."  But Defendants do not even attempt to show that LA ROSA CHICAGO can be "found" in the Bronx.  They say only (Defendants' Memorandum at p. 14) that the "main parties" – SFM and LA ROSA – are New York corporations.  The transfer motion fails right here.

13.    But, as Defendants continue, so we must: Their recitation of the factors that a court may take into account in deciding whether to transfer is essentially correct when they quote case law (Memo, p. 13) – but when they purport to apply those factors to this case, they go completely 'off the tracks.'  They assert (Memo, p. 14):

> ● None of the Software Agreements at issue was *(sic)* executed in Illinois.

---

[2]    The Demand for Arbitration is replete with similar assertions.  *See*, for example, ¶¶141-142, 153-55, and 165-67.

This *might* be relevant – if Plaintiff were suing for breach of these agreements – or if Plaintiff *even acknowledged that these Agreements exist*. But, of course, that is not the Plaintiff's position.

- Neither of the main parties (SFM and La Rosa) are Illinois corporations; both are New York corporations, and La Rosa's principal place of business is in New York.

As previously indicated, this begs the question of whether LA ROSA CHICAGO can be "found" in New York for purposes of 28 U.S.C.A. §1400(a).

- The development of the software at issue took place almost exclusively at La Rosa's principal place of business, the Bronx, New York.

There are two software programs at issue here – the Windows-based software that Defendants continue to infringe at each of its locations throughout the United States, Puerto Rico, and the Dominican Republic (including, in particular, in Chicago) and the web-based software that Defendant LA ROSA is no longer using (and therefore is not infringing) because (we say) LA ROSA does not want to pay for it and (LA ROSA says) because it does not work. Certainly extensive customization of a program that SFM has marketed for nearly two decades took place in New York – but that's not relevant to the infringement claim at all.

14. Defendants identify no witnesses specifically who might be inconvenienced if this case remains in Chicago – and to say that all the witnesses who have "knowledge or information regarding the… 2005 Agreements" are in New York is rather disingenuous. No one apparently can testify to the origin of the 2005 Agreements: An ex-employee (Steve Dalzell, whose current whereabouts are not disclosed) supposedly got an executed photocopy of the 2005 License

- 8 -

Agreement from Shlomo Kogos (Rosenthal Declaration, Exhibit E, Document 12-7, p. 3 of 29) – something that Kogos expressly denies (Kogos Declaration ¶4) – and, of course, Dalzell himself has not been heard from.  And no one at all seems prepared to claim authorship of the 2005 Maintenance Agreement.

15.    While courts may be induced, in a proper case, to transfer a case from one end of the country to another under 28 U.S.C.A. §1404(a), the party seeking transfer has a burden to establish a right to transfer.  Defendants have failed utterly to meet this burden.

WHEREFORE, Plaintiff SOFTWARE FOR MOVING, INC. respectfully prays that this court deny Defendants' Motion to Dismiss in its entirety and, in so doing, that it set this matter down for jury trial on the question of whether there are written agreements to arbitrate that bind Plaintiff.  In addition, and in the alternative, Plaintiff requests that this court grant it such further or other relief that it may consider appropriate in the circumstances.

<div style="text-align: right;">

s/ Francis J. Leyhane III

One of the Attorneys for
SOFTWARE FOR MOVING, INC.

</div>

Attorney No. 3127365
FRANCIS J. LEYHANE III
LEYHANE & ASSOCIATES, LTD.
205 West Randolph Street
Suite 1320
Chicago, Illinois  60606
(312) 223-0811

Our File No:  2341

STATE OF ILLINOIS          )
                           )  SS.
COUNTY OF COOK             )

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SOFTWARE FOR MOVING, INC., a New York Corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No: 07 C 1839 Judge Gottschall Magistrate Judge Cole |
| LA ROSA DEL MONTE EXPRESS, INC., a New York Corporation, and LA ROSA DEL MONTE EXPRESS (CHICAGO), LLC, an Illinois Limited Liability Company, | ) ) ) ) ) | |
| | ) | **JURY DEMANDED BY PLAINTIFF** |
| Defendants. | ) ) | |

**MOTION FOR LEAVE TO FILE**
**FIRST AMENDED COMPLAINT AT LAW**

NOW COMES the Plaintiff SOFTWARE FOR MOVING, INC., a New York Corporation

(SFM), by and through its attorneys, LEYHANE & ASSOCIATES, LTD., and, pursuant to Rule

15 of the Federal Rules of Civil Procedure, moves this honorable court for leave to file its First

Amended Complaint against Defendants LA ROSA DEL MONTE EXPRESS, INC., a New York

Corporation (LA ROSA), and  LA ROSA DEL MONTE EXPRESS (CHICAGO), LLC, an

Illinois Limited Liability Company (LA ROSA CHICAGO), and in support of this motion, states

as follows:

1.       Rule 15 provides that leave to amend will be freely given "when justice so

requires."  In this case Defendants responded to Plaintiff's original Complaint with a Motion to

Dismiss (Document 10) alleging "lack of subject matter jurisdiction as Plaintiff has failed to allege registration of the copyright on which it bases its copyright claim."

    2.    This assertion misstates the requirements of §411(a) of the Copyright Act of 1976 (17 U.S.C.A. §411(a)).  The statute says that *registration* is required for jurisdiction to attach – not that an *allegation of registration* in an infringement action is necessary in order to establish jurisdiction.  Specifically, §411(a) provides, in pertinent part, "[N]o action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."  In this case, although the original Complaint did not allege registration, the registration number and registration date of the copyright in question were promptly spread of record in this case upon the request of the Clerk of this Court (Document 6, a copy of which is attached as Exhibit I).  This distinguishes this case from the several which have been decided by courts around the country in which an action was filed *before* the copyright at issue was registered.  And even in this situation, at least in the majority of the published cases, the action was allowed to proceed after registration and amendment disclosing same.  *See*, for example, M.G.B. Homes, Inc. v. Brognano, 903 F.2d 1486 (11th Cir. 1990).  Whether some other courts have refused amendment in these circumstances is of no moment in this case because here, as Defendants knew or should have known before filing their Motion to Dismiss, Plaintiff had indeed registered its copyright.

    3.    The failure to include the registration information in the original Complaint may go to the sufficiency of that pleading, but it does not defeat this Court's jurisdiction to hear this case.  Nevertheless, Plaintiff seeks leave herewith to amend to expressly include the registration information in the Jurisdiction section of its pleading.

- 2 -

4.     A copy of the proposed First Amended Complaint is attached to this motion as Exhibit II and incorporated herein by reference.

5.     The proffered First Amended Complaint also addresses a couple of other issues raised by Defendants' pending motion, such as expressly alleging that LA ROSA CHICAGO is using Plaintiff's copyrighted software in Chicago.  The new pleading does not purport to moot the pending Motion to Dismiss entirely: Defendants' motion also asserts that, prior to the filing of Plaintiff's original Complaint in this court, LA ROSA DEL MONTE EXPRESS, INC. initiated an arbitration proceeding with the AAA in New York.  The parties continue to dispute whether or not Plaintiff's President, Shlomo Kogos, executed two contracts (called in the papers the 2005 License Agreement and the 2005 Maintenance Agreement) both of which contain arbitration provisions.  Kogos denies that he ever signed the documents in question and the signatures appearing on the copies filed as part of the AAA Demand for Arbitration are forgeries (*see* the Declaration of Shlomo Kogos).  This is the threshold issue that the parties need this court to resolve; cleaning up any issue regarding the sufficiency of pleading will allow appropriate focus on the forgery claim.

WHEREFORE, Plaintiff SOFTWARE FOR MOVING, INC. respectfully prays that it be allowed to file the attached First Amended Complaint and for such other or further relief as this court considers appropriate in the circumstances.

| | |
|---|---|
| Attorney No. 3127365 | _____ s/ Francis J. Leyhane III _____ |
| FRANCIS J. LEYHANE III | One of the Attorneys for |
| LEYHANE & ASSOCIATES, LTD. | SOFTWARE FOR MOVING, INC. |
| 205 West Randolph Street | |
| Suite 1320 | |
| Chicago, Illinois  60606 | |
| (312) 223-0811 | |

**Exhibit I**



United States District Court
Northern District of Illinois - Eastern Division
United States Courthouse
219 South Dearborn Street - Room 2010
Chicago, Illinois 60604

MICHAEL W. DOBBINS,                                                    Office of the Clerk
Clerk

April 5, 2007

Francis J. Leyhane, III
Leyhane & Associates, Ltd.
Attorney at Law
205 West Randolph Street, Suite 1320
Chicago, IL 60606

*FILED*
*APR 1 6 2007*
*CLERK, MICHAEL W. DOBBINS*
*U.S. DISTRICT COURT*

Re: Software For Moving, Inc. v. La Rosa Del Monte Express, Inc. et al
USDC No. 07-cv-01839

Dear Counselor:

The documents you recently filed in connection with the above-captioned case have been
received. Additional information is required for the completion of reports that are forwarded by
this office to Washington, D.C.

The following additional information is required:

| COPYRIGHT REGISTRATION NUMBER | DATE OF COPYRIGHT | HOLDER OF COPYRIGHT |
|---|---|---|
| TX-4-426-709 | 10/19/90 | Safeguard Computer Services, Inc |
| | (published) | |
| | 4/16/97 | |
| | (registered) | |

Please provide this information within ten (10) days of today's date.

Sincerely yours,
Michael W. Dobbins, Clerk

By:    Roberto Perez
       Deputy Clerk

# Exhibit II

Our File No: 2341

STATE OF ILLINOIS      )
                             ) SS.
COUNTY OF COOK      )

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SOFTWARE FOR MOVING, INC., a New York Corporation, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | No: 07 C 1839 |
| | ) | Judge Gottschall |
| LA ROSA DEL MONTE EXPRESS, INC., a New York Corporation, and LA ROSA DEL MONTE EXPRESS (CHICAGO), LLC, an Illinois Limited Liability Company, | ) ) ) ) ) ) | Magistrate Judge Cole |
| | ) | **JURY DEMANDED BY PLAINTIFF** |
| Defendants. | ) ) | |

## FIRST AMENDED COMPLAINT AT LAW

NOW COMES the Plaintiff SOFTWARE FOR MOVING, INC., a New York Corporation (SFM), by and through its attorneys, LEYHANE & ASSOCIATES, LTD., and for its First Amended Complaint against Defendants LA ROSA DEL MONTE EXPRESS, INC., a New York Corporation (LA ROSA), and LA ROSA DEL MONTE EXPRESS (CHICAGO), LLC, an Illinois Limited Liability Company (LA ROSA CHICAGO), states as follows:

## JURISDICTION

1.    This court has jurisdiction over the copyright claims asserted in this action pursuant to 28 U.S.C.A. §1338(a) and 28 U.S.C.A. §1331 and supplemental jurisdiction over all related claims pursuant to 28 U.S.C.A. §1367(a). The software which is the subject of this action was registered under copyright number TX-4-426-709 on April 16, 1997; the software was originally

published on or about October 19, 1990 by SAFEGUARD COMPUTER SERVICES, INC. Plaintiff SFM is the successor in interest of SAFEGUARD COMPUTER SERVICES, INC. and assignee of its contracts and copyrights.

## THE PARTIES

2.      As its name suggests, SFM develops and licenses software for moving companies.

3.      LA ROSA is a moving company, operating at 11 different locations in the Unitied States and internationally.  Its Chicago office is located at 4834 W. Armitage Ave., Chicago, Illinois  60639.

4.      On information and belief, LA ROSA CHICAGO is an entity set up by LA ROSA, is involved in LA ROSA operations based in Chicago, and benefits from the software that SFM developed and licensed to LA ROSA.

## THE RELATIONSHIPS BETWEEN THE PARTIES

5.      LA ROSA is a long-time customer of SFM.  In 1999 LA ROSA entered into a contract with SFM's predecessor, SAFEGUARD COMPUTER SERVICES, INC. for the licensing of a windows-based program, Moving Manager for Windows.  A true and correct copy of that contract is attached as Exhibit A 1999 Software Licensing Agreement).  On information and belief, LA ROSA continues to use Moving Manager for Windows in its operations.

6.      LA ROSA CHICAGO never had a direct contract with SFM or its predecessor. It is a subsidiary or sister corporation, affiliated or associated with LA ROSA and included within the definition of Licensee under the 1999 contract attached hereto as Exhibit A.  On information and belief, as a LA ROSA subsidiary or a sister company to LA ROSA, LA ROSA CHICAGO also continues to use Moving Manager for Windows.

- 2 -

7.     Before using Moving Manager for Windows, LA ROSA licensed a DOS-based program from SFM.  On information and belief, LA ROSA continues to use the DOS-based program in its operations.

8.     In approximately December 2004 LA ROSA entered into an agreement with SFM to license a web-based version of the Moving Manager Program (Web Program) with certain modifications that suited LA ROSA'S business needs.   Over the next 20 months, SFM worked on completing the Web Program. At various times during this period SFM worked closely with Steven Dalzell, Roberto Rodriguez and Hiram Rodriguez of LA ROSA on completion of the Web Program. On information and belief, Mr. Dalzell was the Chief Operating Officer of LA ROSA, Mr. Roberto Rodriguez was an officer of LA ROSA, and Mr. Hiram Rodriguez was an officer and the owner of LA ROSA. Although SFM understood that LA ROSA would be preparing a written agreement regarding the Web Program, no such agreement was presented to SFM with the exceptions noted hereafter in Paragraph 10.  The oral agreement between SFM and LA ROSA provided that LA ROSA would pay a total of $295,000 for the Web Program, with the final payment due no later than the completion of the program by SFM.

9.     LA ROSA went "live" with the Web Program in or about August 2006, necessarily meaning that it deemed the Web Program complete as of that time.

10.     At around the same time as LA ROSA went "live" with the Web Program, Mr. Dalzell requested that SFM sign a "9/11 Agreement" (a copy of which is attached hereto and incorporated herein as Exhibit B) and a chart listing the maintenance fees that LA ROSA was obligated to pay SFM during the next seven years. A "9/11 Agreement" is an agreement in which the licensor of software agrees to place the source code in escrow and made available to the

- 3 -

licensee in the event something happens to the licensor.  The agreement between SFM and LA ROSA regarding the required maintenance fees is set forth on Exhibit C.

11.      In 2006, LA ROSA, through Mr. Dalzell requested that SFM further customize the Web Program with certain additional enhancement features (Enhancement Features) that had not been available when the parties entered into the agreement for the Web Program.  These features were a Google Map feature and address validation feature.  LA ROSA agreed to pay an additional $60,000 for this further customization.  Under the oral agreement for this set of enhancements (Enhancement Feature Agreement), LA ROSA did have a right to accept or reject the enhancements within a reasonable time.  If LA ROSA rejected the Enhancement Features – and did not use them – LA ROSA would not be obliged to pay for this additional $60,000 amount.

## COUNT I

### *Copyright Infringement*

1. - 6.  Paragraphs 1 through 6 of this Complaint are restated as Paragraphs 1 through 6 of Count I.

7.      Paragraph 2 of the 1999 Software Licensing Agreement provides in its entirety as follows:

> 2. TERM OF LICENSE; TERMINATION; CONSIDERATION.
> (a) This license begins on the date that the Software is installed at any of Licensee's sites. This license is perpetual unless its terms are breached by Licensee. (b) This license in its entirety and as to all Software licensed shall terminate immediately if Licensee does not comply with these terms, including but not limited to, non payment of licensing fees or maintenance fees, unauthorized

- 4 -

copying or use of the Software, or unauthorized modification of the Software. (c) Upon termination, the license shall cease, and all copies of the Software shall be returned to Licensor or destroyed, at Licensor's option. Use of the Software is not authorized after termination by Licensor and shall be considered by Licensor to be infringement of its intellectual property w rights, in addition to any other rights that may accrue to Licensor by such use. Payment of fees shall be made pursuant to the Schedules attached hereto at Exhibit "A" and "C."

8.      LA ROSA stopped paying the maintenance fees required by the 1999 Software Licensing Agreement on or around August 1, 2006.

9.      Thereafter, SFM, through its attorney, demanded payment of the maintenance fees. LA ROSA did not respond to the demand.

10.      In January 2007 SFM notified LA ROSA that, due to non-payment of the required maintenance fees it would terminate the License Agreement unless it received payment.  LA ROSA did not respond to this notification by paying the overdue fees.

11.      SFM then issued a cease and desist letter to LA ROSA on February 12, 2007 telling LA ROSA that its license to use that SFM product was terminated for failure to pay required maintenance fees and that LA ROSA was required to either return the software or destroy the software or return it to SFM.  A true and correct copy of this letter is attached as Exhibit D.

12.      SFM followed up its cease and desist letter with a second letter (attached hereto as Exhibit E) again informing LA ROSA that it needed to stop using the software and to destroy or return it to SFM.

- 5 -

13. On information and belief, LA ROSA and LA ROSA CHICAGO continue to use the SFM software that is the subject of the 1999 Software Licensing Agreement.

14. Between the time that LA ROSA stopped paying the required maintenance payments and the date on which SFM told LA ROSA to stop using its software, SFM responded to all maintenance requests from LA ROSA regarding the Moving Manager for Windows program.

15. Under 17 U.S.C.A. §504, SFM is entitled to its losses from the infringement on its software and the profits earned by Defendants which are attributable to the use of SFM's copyrighted software products.

16. Under 17 U.S.C.A. §505, SFM is entitled to reasonable attorney's fees and its full costs in prosecuting this action.

WHEREFORE, Plaintiff SOFTWARE FOR MOVING, INC. respectfully prays that judgment be entered in its favor and against Defendants LA ROSA DEL MONTE EXPRESS, INC. and LA ROSA DEL MONTE EXPRESS (CHICAGO), LLC for profits wrongfully derived from the use of SFM software and for the attorney's fees and costs incurred by SFM in bringing this action.

## COUNT II

*Breach of Contract*
*1999 Software Licensing Agreement*

1. - 6. Paragraphs 1 through 6 of this Complaint are incorporated herein as Paragraphs 1 through 6 of Count II.

7. Under the 1999 Software Licensing Agreement, LA ROSA was required to pay maintenance fees to SFM during the time it used SFM's software programs.

8.     LA ROSA breached this contract when it stopped paying the maintenance fees required by the 1999 Software Licensing Agreement on or around August 1, 2006.

WHEREFORE, Plaintiff SOFTWARE FOR MOVING, INC. respectfully prays that judgment be entered in its favor and against Defendants LA ROSA DEL MONTE EXPRESS, INC. and LA ROSA DEL MONTE EXPRESS (CHICAGO), LLC  in an amount that will fairly compensate SFM for Defendants' breach of contract.  Plaintiff prays for such other or further relief as it may be entitled to including the recovery of its costs incurred in bringing this action.

### COUNT III

*Breach of Contract*
*Web Program Agreement*

1. - 10.     Paragraphs 1 through 10 of this Complaint are incorporated herein as Paragraphs 1 through 10 of Count III.

11.     Even though LA ROSA took the web-based program live in or about August 2006, it has failed to pay SFM $52,500 of the $295,000 due upon completion and deliver of the Web Program.

12.     Once the Web Program was complete, LA ROSA became obliged to pay the monthly maintenance fee heretofore alleged.

13.     LA ROSA has never paid any maintenance fees for the period of time that it used the Web Program despite several demands for payment.

WHEREFORE, Plaintiff SOFTWARE FOR MOVING, INC. respectfully prays that judgment be entered in its favor and against Defendant LA ROSA DEL MONTE EXPRESS, INC. in an amount that will fairly compensate SFM for Defendant's breach of contract.  Plaintiff

- 7 -

prays for such other or further relief as it may be entitled to including the recovery of its costs incurred in bringing this action.

<div align="center">C<small>OUNT</small> IV</div>

<div align="center">*Breach of Contract*
*Enhancement Features Agreement*</div>

1. - 11    Paragraphs 1 through 11 of this Complaint are incorporated herein as Paragraphs 1 through 11 of Count IV.

13.    On December 22, 2006, after completion and delivery of the Enhancement Features provided for in the separate Enhancement Features Agreement, counsel for SFM sent an email to counsel for LA ROSA offering a fresh opportunity for LA ROSA "to reject these enhancements and not have any payment obligations."  A true and correct copy of this email is attached as Exhibit F.  LA ROSA did not respond to this offer.

WHEREFORE, Plaintiff SOFTWARE FOR MOVING, INC. respectfully prays that judgment be entered in its favor and against Defendant LA ROSA DEL MONTE EXPRESS, INC. in the amount of $60,000 for the breach of the Enhanced Features Agreement.  Plaintiff prays for such other or further relief as it may be entitled to including the recovery of its costs incurred in bringing this action.

| | |
|---|---|
| Attorney No. 3127365 | <u>     s/ Francis J. Leyhane III     </u> |
| F<small>RANCIS</small> J. L<small>EYHANE</small> III | One of the Attorneys for |
| LEYHANE & ASSOCIATES, LTD. | SOFTWARE FOR MOVING, INC. |
| 205 West Randolph Street | |
| Suite 1320 | |
| Chicago, Illinois  60606 | |
| (312) 223-0811 | |

# Exhibit A

*L AST*
*Final* 3/24/85

**ORIGINAL**

# SOFTWARE LICENCING AGREEMENT

WHEREAS, SAFEGUARD COMPUTER SERVICES, INC., a New York Corporation, maintaining offices at 24-16 Bridge Plaza South, Long island City, New York, 11101 (Hereinafter "Licensor") represents and warrants that it is the owner of all right, title and interest in and to the software applications and source code otherwise known and referred to for purposes of identification as the "MOVING MANAGER FOR WINDOWS" (Hereinafter "the Software"); and

WHEREAS, LA ROSA DEL MONTE EXPRESS, INC., a New York, Corporation with world headquarters located at 1133-35 Tiffany Street, Bronx, New York 10459, and primarily engaged in the moving, shipping and storage industry, its subsidiaries, sister corporations, partners, subsidiaries, affiliates and sub-licensees and/or associates, (Hereinafter collectively "Licensee"), desires to utilize the software in its day to day national and international operations; and

WHEREAS, Licensee desires certain specific and individual modifications to the software requiring additional code capable of meeting the unique and specific needs of licensee's national and international day to day operations; and

WHEREAS, Licensor warrants. that the software may be modified so as to accommodate licencee's unique needs and further agrees to modify the software to include the said specific and

individual modifications to the software and to cause to have
written the necessary additional software code capable of meeting
the said unique and specific needs of licensee's national and
international day to day operations;

NOW, THEREFORE, in consideration for valuable consideration,
receipt of which is hereby acknowledged (the terms and conditions
of which are set out at **Exhibit "A"**), Licensor agrees to develop
and/or modify its software and grants Licensee a license to use
its software pursuant to the terms which follow:

## TERMS AND CONDITIONS OF SOFTWARE USE

1.  <u>SCOPE OF LICENSES</u>.  (a) Licensee is hereby licensing the
use of Licensor's MOVING MANAGER software (the "Software"), and
thus to make copies of Licensor's copyrighted materials, on
Licensee's computer systems.  (b) This license is limited to use
of the Software at the site(s) specified and only for purposes of
Licensee's own moving and shipping enterprise.  (c) This license
grants Licensee the right to make one back up copy of the
Software per site which may be stored away from the site(s) or at
such location(s) as Licensor may determine at its convenience and
for the sole purpose of making said backup copy immediately
available if and when the need for its utilization should arise.

2. <u>TERM OF LICENSE; TERMINATION; CONSIDERATION</u>. (a) This license begins on the date that the Software is installed at any of Licensee's sites. This license is perpetual unless its terms are breached by Licensee. (b) This license in its entirety and as to all Software licensed shall terminate immediately if Licensee does not comply with these terms, including but not limited to, non payment of licensing fees or maintenance fees, unauthorized copying or use of the Software, or unauthorized modification of the Software. (C) Upon termination, the license shall cease, and all copies of the Software shall be returned to Licensor or destroyed, at Licensor's option. Use of the Software is not authorized after termination by Licensor and shall be considered by Licensor to be infringement of its intellectual property rights, in addition to any other rights that may accrue to Licensor by such use. Payment of fees shall be made pursuant to the Schedules attached hereto at **Exhibit "A"** and **"C"**

3. <u>GUARANTEE OF ORIGINAL DEVELOPMENT</u>. Licensor warrants that all modifications developed hereunder will be of original development by Licensor, and will be specifically developed for the fulfillment of this Agreement and will not infringe upon or violate any patent, copyright, trade secret or other proprietary right of a third party, and Licensor will indemnify and hold Licensee harmless from and against any loss, cost, liability or expense (including reasonable counsel fees) arising out of any

Page 3 of 10

breach or claimed breach of this warranty; Licensor shall assist Licensee in the expeditious transfer of licenses and/or title for use of perpetual licenses to Licensee for such non-original components unless Licensee already has title or license to any non-original components used hereunder.

4. PATENT COPYRIGHT OR TRADE SECRET INDEMNITY. Licensor will defend at its expense, any action brought against Licensee or Licensor that is based on a claim that the systems developed and furnished hereunder infringes a United States patent or copyright or trade secret or other proprietary right of a third party and will pay the loss, damages, and reasonable attorney fees finally incurred by or awarded against Licensee in any such actions which are attributable to any such claim, but such defense and payments are conditioned on the following: (1) Licensee promptly notifies Licensor in writing of the claim, and (2) Licensor shall have sole control of the defense of any such action on such a claim and all negotiations for its settlement or infringement of a United States patent or copyright, Licensee shall permit Licensor, at its option and expense, either to procure for Licensor the right to continue using the Software, to replace or modify the same so that they become non-infringing, or to accept Licensee's return of the Software and grant Licensee a refund of monies paid under this Agreement. Licensor shall have no obligation to defend Licensee or to pay costs, damages, or

attorney's fees for any claim based upon (1) use of other than an unaltered configuration of the Software if such infringement would have been avoided by the use of an unaltered configuration of the Software, or the combination, operation, or use of any Software furnished hereunder with non-Licensor programs or data if such infringement would have been avoided by the combination, operation, or use of the Software with other programs or data.

5. <u>INDEMNIFICATION INCLUSION OF COSTS</u>. Each party hereunder agrees to indemnify the other against all losses, costs, expenses (including reasonable counsel fees) which may occur by reason of the breach of any term, provision, warranty or representation contained herein and/or in connection with the enforcement of this Agreement or any provision thereof.



6. <u>MODIFICATION OF SOFTWARE</u>. Licensee shall not modify nor authorize modification of any of the Software in any manner without the express written permission of Licensor. The parties agree that Licensor possess certain unique knowledge of Licensee's business enterprise making Licensor the unique candidate for the development of the software for Licensee, and therefore, this Agreement may not be assigned by Licensor without the prior written consent (not to be unreasonably withheld) of Licensee.



7. <u>NOTICES OF INTELLECTUAL PROPERTY RIGHTS</u>. Licensee shall assure that Licensor notices of intellectual property (e.g., copyright notices contained in the software) shall remain within the Software.

8.  <u>WARRANTIES; LIMITATIONS ON LIABILITY</u>. LICENSOR DOES NOT
GUARANTEE THAT THE SOFTWARE WILL MEET "ALL REQUIREMENTS" OF
CUSTOMER'S BUSINESS OR THAT THE SOFTWARE WILL INTERFACE WITH THE
SOFTWARE AND HARDWARE WITH WHICH CUSTOMER INTENDS IT TO OPERATE
WITH TO UTILIZE THE SOFTWARE.  LICENSOR WARRANTS THAT THE
SOFTWARE, AS MODIFIED, HAS BEEN DEVELOPED FOR OPERATION UNDER THE
WINDOWS OPERATING SYSTEM.  Licensor warrants that the software
shall be Y2K compliant pursuant to separate agreement
incorporated by reference and attached hereto at **Exhibit "B"**.

9.  <u>CONFIDENTIALITY AND SECURITY OF THE SYSTEMS</u>. Each party
acknowledges that all material and information which has or will
come into the possession and knowledge of each other in
connection with this Agreement or the performance hereof,
consists of confidential and proprietary data, whose disclosure
to or use by third parties will be damaging, both parties,
therefore, agree to hold such material and information in
strictest confidence, not to make use thereof other than for the
performance of this Agreement, to release it only to employees
requiring such information, and not to release or disclose it to
any other party.

10.  <u>RIGHTS TO NEW IDEAS AND CODE</u>. The parties acknowledge
that performance of this Agreement will result in the development
of new proprietary and secret concepts, methods, techniques,
processes, adaptations and ideas. The parties agree that the same

shall belong solely to Licensee without regard to the origin
thereof and that Licensor will not, other than in the performance
of the Agreement, without the express written consent, which will
not be unreasonably withheld, sell, make use or disclose same to
any person, group, company or corporation that competes with
Purchaser's business as defined herein.

    11.  <u>ASSIGNMENTS</u>.  This Agreement and its rights, duties and
obligations may not be assigned by Licensee without the prior
written consent of Licensor.

    12.  <u>COPYING</u>.  All intellectual property, including but not
limited to copyright, patents and trade secrets, in the Software,
except for improvements, revisions, and modifications made at
specific request of Licensee, shall remain the property of
Licensor.  Licensee agrees that, except as directed by Licensor
and this Agreement, it will not at any time during or after the
term of this Agreement allow unauthorized copying of the
Software.

    13.  <u>INJUNCTIVE RELIEF</u>.  Licensee acknowledges that
unauthorized use or copying of the Software will give rise to
irreparable injury to Licensor, and leave Licensor inadequately
compensable in damages.  Accordingly, Licensor may seek and
obtain injunctive relief against the breach or threatened breach
of license terms, in addition to any other legal remedies which
may be available.  Licensee further acknowledges and agrees that

the covenants contained herein are necessary for the protection of Licensor's legitimate business interests and are reasonable in scope and content.

14.  NOTICE OF NON AFFILIATION. Licensor is not affiliated in any way with Safeguard Business Systems, Inc.;  which is a totally separate and independent company that neither sponsors nor endorses Licensor's activities.

15.  TRAINING. Licensor shall provide the operational manuals and onsite training to Licensee's designated personnel as provided for under the maintenance provisions stated herein and set out at **Exhibit "C"**.

16.  MAINTENANCE.  Maintenance schedules and fees shall be in compliance with the terms and conditions made a part hereof and incorporated by reference as set out at **Exhibit "C"**.

17.  LICENSOR'S EMPLOYEES ASSIGNED TO THIS AGREEMENT. In the event that Licensor uses contractors or subcontractors, Licensor specifically assumes all responsibilities for such contractors or subcontractors as if they were employees of Licensor, and Licensor shall indemnify and hold harmless Licensee for the acts of such contractors or subcontractors.  Licensor-assigned employees may be rejected by Licensee should Licensee determine unilaterally that any employee's services are unsatisfactory. Upon written notification from Licensee regarding an unsatisfactory employee, Licensor shall remove such employee

immediately and replace the removed employee with an employee acceptable to Licensee as soon as possible.  Under no circumstances shall Licensor's employees be considered employees of or agents of Licensee.

18.   FORCE MAJEURE. Neither party shall be responsible for delays or failures on performance resulting from acts beyond the control of such party. Such acts shall include but not be limited to acts of God, strikes, lockouts, riots, acts of war, epidemics, government regulations superimposed after the fact, fire, communication line failures, power failures, earthquakes or other disasters.

19. COMPLIANCE WITH ALL LAWS - PARTIAL INVALIDITY. Each party agrees that it will perform its obligations hereunder in accordance with all applicable laws, rules and regulations now or hereafter in effect. If any item or provision of this Agreement shall be found to be illegal or unenforceable, them notwithstanding, this Agreement shall remain in full force and effect and such term or provision shall be deemed stricken.

20.   ALL AMENDMENTS IN WRITING. No amendments to this Agreement shall be effective unless they are in writing and signed by duly authorized representatives of both parties.

21.   HEADINGS NOT CONTROLLING. Headings used in this Agreement are for reference purposes only and shall not be deemed a part of this Agreement.

23.   SURVIVAL BEYOND COMPLETION. The provisions of this

Agreement and the Software developed under this Agreement as well as confidentiality, indemnification, use, assignment, reproduction, warranty, ownership, return or destruction shall survive the delivery of the software and the payment of associated charges.

22. <u>GOVERNING LAW</u>. This Agreement shall be governed by all the laws of the State of New York, including its conflicts of laws rules and/or common law precedent.

IN WITNESS WHEREOF the parties have executed this Agreement this __ day of March, 1999.

Safeguard Computer Services, Inc.
By: Shlomo Kogos, President

La Rosa Del Monte Express, Inc.
By: Hiram Rodriguez, President

# EXHIBIT "A"

## FEES AND MILESTONES

Licensee agrees to pay $83,000.00 (Hereinafter "the Licensing Fee") to Licensor for the perpetual License to use the software at sixty-three (63) sites as defined in **Exhibit "C"**, the Software Maintenance Agreement. Licensee further agrees to pay an additional $1,000.00 licensing fee for each additional site which is added in excess of the said sixty-three sites provided for herein. The Licensing Fee shall be paid in accordance with five (5) developmental phases (Hereinafter "Milestones"). At the completion of the fifth (5th) Milestone, Licensor agrees to have sufficiently developed the software, so as to have Licensee's New York Headquarters operations, and all other national and international business locations up and running. Licensor possesses unique knowledge of the moving and storage industry and as such fully recognizes that Licensee's activity and operations will increase dramatically and in proportion to an increased surge in demand for Licensee's services beginning with the spring season. In order for Licensee to adequately meet said demand, and to reduce the likelihood of any disruption in Licensee's operations, Licensor agrees to exert his good faith and best efforts to complete the said fifth (5th) Milestone by on or before June 15, 1999. Each individual Milestone in the developmental process shall hereinafter be designed, approved,

Page 1 of 7

programmed, delivered, tested, and accepted pursuant to the
schedule and procedures listed below.

**I. As for each Milestone:**

(a) Licensor shall consult with Licencee's employee, Miriam
Rodriguez (Hereinafter "the Systems Specialist") for the purpose
of designing programming specifications and in conjunction with
Licensor's controller, Ricardo Colon, for the purposes of
financial data merging.  Specifications shall contain those items
provided by her and the controller to Licensor.

(b)  Once Licensor has designed , developed, and completed a
Milestone, they will be delivered to the Systems Specialist
together with their operation performance estimates (Hereinafter
"OPE") and the Software Manual (Hereinafter "the SM") for every
Milestone in the specifications provided by the Systems
Specialist. The OPE and SE shall indicate any limitations on the
software at that time, e.g. size, and the estimated response
times for on-line programs or runtimes for the batch programs so
as to adequately prepare her for said limitations and to reduce
the likelihood of negatively impacting on Licensee's day to day
operations.

(c)  Upon receipt of said completed Milestones, the Systems
Specialist will either approve or disapprove the completion of

said Milestone.   Such approval will be at the sole discretion of Purchaser, but said approval or disapproval shall be made in good faith and an approval shall not be unreasonably withheld.

(i) When, upon approval of the completed Milestones, in conjunction with the Systems Specialist, an Acceptance test for the Milestone and its individual specifications has been performed and completed satisfactorily to the Systems Specialist, said milestone is to be deemed completed

(ii)  If the Systems Specialist does not approve said Milestone, Licensor and the Systems Specialist will again consult and restart the procedure as stated above.

(d)    (i) The Systems Specialist in conjunction with Licensor shall develop an acceptance test.  After the creation of the Acceptance Test, the parties shall also create the Milestone Agreement. The Milestone Agreement shall contain the following: The functional names of the Milestones to be completed, the date of delivery, and the understanding that time is of the essence.

(ii)   The Milestone Agreement will also have the following items attached thereto:

The Functional Specifications which is a narrative explanation of the operation of the programs, containing Exhibits of all screen and reports. The Programming Specifications to be used by the programmers creating the software for Purchaser. The Functional Specifications for the software after customization.

File layouts for all files used or created in that Milestone, including record and/or data field descriptions. The operation performance estimates. The Acceptance Tests, including test data.

(iii)  The Milestones Agreement will make explicit and express reference to this agreement, and the date this agreement was executed.

(iv)  Upon the signing of the Milestones Agreement by both the Systems Specialist and Licensor, Licensee shall pay to Licensor pursuant to the following fixed payment schedule:

Upon completion of the first Milestone (Installation) Twenty Thousand Dollars ($20,000.00) payable in two installments.  First installment of $15,000.00 with a second installment of $5,000.00 within a week of the first installment.

    A.    Upon completion of the Second Milestone
          through and including the Fourth Milestone,
          licensor shall be paid $14,000.00 per
          completed Milestone.
    B.    Upon completion of the Fifth Milestone,
          Licensor shall receive a payment of $8,000.00
    C.    A final payment of $13,000.00 shall be paid
          to Licensor 60 days subsequent to the
          completion of the Fifth Milestone.

(v) Licensor will then proceed to write the programming for that Milestone.

(e)  (i)  On the delivery date specified in the Phase Agreement, Licensor shall deliver to Licensee the completed programming for that Milestone.

Page 4 of  7

(ii)   Failure by Licensor to deliver the completed programming by the end of the 30 days after the delivery date specified in the Milestone Agreement, will entitle Licensee to a 10 percent reduction in the cost of the entire Milestone payment for each 30 day period in which Licensor is late.  The delivery date may only be modified by written amendment to the Milestone Agreement signed by both parties.

(iii)   In the event that Licensor fails to deliver the completed Milestones three (3) months after the original delivery date, and the delivery date was not modified, Licensee may cancel payment for that Milestone in its entirety, said payment to be held in escrow, minus any penalties accrued after the final completion of all Milestones.

(ii)   If the programs fail to perform the acceptance tests, the parties shall follow the following procedure:

(1) Licensee shall immediately notify Licensor by telephone of the failure of the test. Licensee shall then confirm such notice by sending written confirmation of the failure plus proper documentation of said failure to Licensor by certified mail, return receipt requested.

(2) Licensor shall immediately begin reprogramming to remedy the failure.

(3)   If the failure cannot be remedied within five (5) days, the penalty provision shall take effect.

(4)   After Licensee has used all the completed Milestone programs successfully for a period of 90 consecutive days of uptime and without failure, Licensee shall pay to Licensor the final $13,000.00 payment, along with any monies held in escrow as provided herein.  Nothing in this procedure shall be construed to prevent several Milestones to be commenced simultaneously.

## II. SYSTEMS UPTIME.

(A)   System uptime, is defined as follows: Licensor warrants that the software shall be functionally operational within the specifications of each Milestone no less than 96 percent  of any consecutive ninety (90) day period beginning with the start of acceptance.  Any time that the system is not functionally operational due to hardware failure or other causes beyond Licensor's design or control shall be excluded from  this computation.

(B)   In the event of a failure of any program during the ninety (90) day period, Licensee shall notify Licensor by telephone immediately. Licensee will confirm said telephone notice by serving Licensor with written notice, with proper documentation of said error or failure, sent certified mail, return receipt requested.

(C)   Upon notification of the failure, Licensor may begin

immediate repairs of said failures. If the failure is remedied before the expiration of 36 cumulative days, including previous failures, within that Phase, the required ninety (90) day uptime period will continue to run.


IN WITNESS WHEREOF, each of the parties hereto has causes this Agreement to be duly executed as of the date below.

Safeguard Computer Services, Inc.
By: Shlomo Kogos, President


La Rosa Del Monte Express, Inc.
By: Hiram Rodriguez, President

## EXHIBIT "B"

## (Y2K) YEAR 2000 COMPLIANCE

A. Licensor represents and warrants that the Software is designed to be used prior to, during, and after the calendar year 2000 A.D., and that the Software, together with its modifications will operate during each such time period without error relating to date data, specifically including any error relating to, or the product of, date data which represents or references the new century and millennium.

1. Without limiting the generality of the foregoing, Licensor further represents and warrants:

2. That the Software has been designed to ensure year 2000 compatibility, including, but not limited to, date data century and millennium recognition, calculations which accommodate same century and multi-century formulas and date values, and date data interface values that reflect the new century;

3. That the software includes "year 2000 capabilities". For the purposes of this Agreement, "year 2000 capabilities" means that the Software: (a) will manage and manipulate data involving dates, including single century formulas and multi-century formulas, and will not cause an abnormally ending scenario within the application or generate incorrect values or invalid results involving such dates; and, (b) provides that all date-related user interface functionalities and data fields include the indication of century; and, (c)

Page 1 of 3

provides that all date-related data interface functionalities
include the indication of a new century and millennium.

       4.  The term "Year 2000 Compliance Warranty" shall
mean, collectively, the warranties set forth herein.

    WARRANTY TERM  The Year 2000 Compliance Warranty set forth
herein shall begin as of the date of the License Agreement and
end on the date after January 1, 2000, subsequent to which the
Software has operated without a breach of the Year 2000
Compliance Warranty for a consecutive thirteen month period.

    WAIVER OF LIMITATION OF LIABILITY.  Any provisions of the
License Agreement which tend to limit or eliminate the liability
of either party shall have no application with respect to the
Year 2000 Compliance Warranty set forth herein.

    LIMITATION ON USE/LIMITATION ON LIABILITY. Licensee agrees
that it shall not modify the Software in any manner which would
affect the performance of the Software in such a manner as to
cause it to fail to meet the Year 2000 Compliance Warranty set
forth herein. There shall be no liability on the part of Licensor
for any failure of the Software to conform to the Year 2000
Compliance Warranty to the extent that any such failure is
attributable to a modification of the Software by Licensee.
Licensee agrees to independently confirm its hardware Y2K
compliance and Licensor shall not be liable under the present
agreement for Y2K compliance arising out of hardware
incompatibility or Y2K non compliance.

PROVISIONS OF COMPLIANCE AGREEMENT CONTROLLING. In the event of any conflict or apparent conflict between the terms and conditions of the License Agreement and the terms and conditions of this Compliance Agreement, the terms and conditions of this Compliance Agreement shall control. Except to the extent otherwise set forth herein, the terms and conditions of the License Agreement shall remain in full force and effect.

ENTIRE AGREEMENT. This Compliance Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof. This Compliance Agreement shall not be modified except by later written agreement signed by both parties.

IN WITNESS WHEREOF the parties have executed this Agreement this ___ day of March, 1999.

_____
Safeguard Computer Services, Inc.
By: Shlomo Kogos, President

_____
La Rosa Del Monte Express, Inc.
By: Hiram Rodriguez, President

EXHIBIT "C"

## SOFTWARE MAINTENANCE AGREEMENT

1.   Licensee shall pay Licensor a fee of $35.00 per month per user (Hereinafter "Station") as a maintenance charge until that time when Licensee, upon 90 day notice of cancellation to Licensor, elects to no longer utilize the software and same is returned and surrendered to Licensor.  Licensee's right of election to surrender as provided herein will become effective only after the minimum twenty-four months period of performance and use of the software and maintenance services and shall not be deemed a waiver of licensee's rights to new ideas and code as provided for under Paragraph "10" of the "Software Licensing Agreement", which covenant shall survive the completion of all other obligations under the agreement.

2.   Licensee shall begin payment of said maintenance fees upon successful installation and use of the software per each particular Station as the software becomes installed per location.

3.   It is contemplated by and between the parties that Licensee's operations shall in total contain sixty-three (63) stations spread out over Licensee's various national and international offices.

4.   Upon receipt and installation of the Software, Miriam Rodriguez (Hereinafter for purposes of identification "Systems Specialist"), in conjunction with Licensor, shall schedule

training sessions with the various locations wherein Licensee will utilize the Software in its day to day operations.

5.    Payment of maintenance fees shall commence subsequent to training per location.  Once training has been successfully completed per location and the Software's utilization has commenced, maintenance fees per site of said location will become due and payable.

6.    It is further understood by and between the parties that the Systems Specialist will exert her good faith best efforts to complete all installations and training within 160 days from the date of the completed five (5) Milestone, as (defined under **Exhibit "A")**, fully operational software, and that Licensor will exert his good faith best efforts to cooperate with the Systems Specialist to achieve this goal.  It is further understood by and between the parties that at the expiration of the said 160 day period, maintenance fees for all 63 stations will become due and owing regardless of whether or not all locations and stations have been trained and/or begun to utilize the Software, unless a delay may be attributable to the acts or omissions of Licensor or to occurrences covered under the Licensing Agreement's Force Majeure.  Licensor shall work in coordination with the Systems Specialist to assure that all locations have been properly trained and prepared to utilize the Software in their day to day operations.

7.    In the event that Licensor is required be Licensee to

visit any of Licencee's offices situated outside of the state of
New York (Hereinafter the New York Office" and "Foreign
Office(s)" respectively) in order to perform the maintenance
services provided for herein, including training, Licensee shall
provide for the reasonable costs of lodging and meals.  In the
event that Licensor is required to remain at any foreign office
in excess of five (5) days, Licensee in addition to providing the
reasonable costs for lodging and meals, shall further compensate
Licensor with an additional $400.00 daily compensation for each
and every day exceeding the said five (5) day period.

    7.    Payment of maintenance under the schedule herein above
stated shall entitle Licensee to the following for the life of
the perpetual license for the New York and Foreign Offices:

    a.    Unlimited customer support hotline

    b.    On site training.

    c.    Daily data merging of all information compiled
          from each location and its respective sites.

    d.    Continual software product updates, including but
          no limited to, user interface improvements,
          cosmetic improvements, Windows operating systems
          upgrades, upgrades and enhancements making the
          software conform to advances in hardware
          technologies, data enhancements, training aids,
          operational manuals, system backups, on site
          technical support, seamless technical support, and

correction of software and Windows operating
systems bugs.

e.   Forms modifications, including modifications for
reports, letters, BOL and Order Service, Outside
agency forms and reports, Tariff Charges,
accounting department data merging and use, ddata
flow, and customization.

8.   Failure of Licensor to abide by the terms of this
maintenance agreement shall be deemed a substantial breach and
shall result in a waiver by Licensor of all Maintenance fees for
the period of said breach.


IN WITNESS WHEREOF the parties have executed this Agreement
this __ day of March, 1999.

_____
Safeguard Computer Services, Inc.
By: Shlomo Kogos, President


_____
La Rosa Del Monte Express, Inc.
By: Hiram Rodriguez, President

# Exhibit B

## ADDENDUM TO
## SOFTWARE DEVELOPMENT & LICENSE AGREEMENT

I y agreement of both parties, in the event the "Developer" has ceased operations, is no longer a viable operating entity or due to a situation, emergency or otherwise, in which the "Developer" is unable to provide contracted services, upgrades or maintenance as required for the continued and uninterrupted use of "Software X" by "Client", the "Client" shall contact the agent of the "Developer", Mr. Philip Zukowsky of the firm Chernesky, Heyman & Kress, P.L.L. located at ) Courthouse Plaza SW, Suite 1100, Dayton, Ohio 45402, telephone 937-449-2800. Mr. Zukowsky will provide to "Client" at no additional charge (1) a copy of the source code for the program, (2) the right to make changes as necessary to source code for the continued and forever use of the program and (3) access to contact information of other companies utilizing "Moving Manager Web Version" so they may assist each other in maintaining the source code. The "Client" will be granted full ownership of the source code with the limitation that it cannot resell it to others or allow to be installed at or used by a non-related entity of "Client".

Software for Moving, Inc.

By:   Shlomo Kogos, President

La Rosa Del Monte Express, Inc.

By:   _STEVEN DMELLA_
      _VP OPERATIONS_

17

**Exhibit C**

MAY-02-2007  10:00          07398971348          55%          P.07

## MAINTENANCE SCHEDULE A

| Year | Monthly per user | Total Monthly @ 70 users |
|------|------------------|--------------------------|
| First Year | $55 | $3,850 |
| Second Year | $55 | $3,850 |
| Third Year | $55 | $3,850 |
| Fourth Year | $60 | $4,200 |
| Fifth Year | $65 | $4,550 |
| Sixth Year | $70 | $4,900 |
| Seventh Year | $80 | $5,600 |

Software for Moving, Inc.

By:     Shlomo Kogos, President

La Rosa Del Monte Express, Inc.

By:     STEVEN DRAZILE
        VP OPERATIONS

6

**Exhibit D**



**HEYMAN & KRESS P.L.L.**
ATTORNEYS AT LAW
JRTHOUSE PLAZA SW, SUITE 1100
DAYTON, OHIO 45402
P.O. BOX 3808
DAYTON, OHIO 45401-3808
937/449-2800

WRITER'S E-MAIL
paz@chklaw.com

WEBSITE
www.chklaw.com

February 12, 2007

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Mr. Hiram Rodriquez
La Rosa Del Monte
1133-35 Tiffany Street
Bronx, NY 10459

     RE: **CEASE AND DESIST**

Dear Mr. Rodriguez:

     **THIS IS TO INFORM YOU THAT DUE TO THE NONPAYMENT OF LICENSE FEES BY LA ROSA DEL MONTE EXPRESS, INC. ("LA ROSA"), SOFTWARE FOR MOVING, INC. ("SFM") ORDERS LA ROSA AND ITS AFFILIATES TO IMMEDIATELY CEASE AND DESIST, AS OF THE DATE OF THIS LETTER, FROM ANY FURTHER USE OF THE MOVING MANAGER SOFTWARE PROGRAM WHICH IS OWNED BY AND COPYRIGHTED TO SFM.**

     Effective as of the date of this letter we expect La Rosa to take the following steps to prevent any violation of SFM's copyrights in the Moving Manager software program (the "Program"): (i) immediate cessation to the use of the Program by La Rosa, its branches, its affiliates, employees and contractors; (ii) the immediate destruction, or return to SFM, of all copies of the Program that La Rosa, its branches, its affiliates, employees and contractors may have in their possession; (iii) prevention of third parties from copying the Program in any manner, including object code, source code and functionality; (iv) informing all employees of La Rosa that they are to stop using the Program; and (v) providing SFM with a certification in writing within seven (7) days of the date of this letter that the aforementioned steps to protect SFM's rights in the Program have been taken..

     I trust that La Rosa will comply with its obligation to prevent against the illegal use of SFM's property. However, La Rosa should be aware that SFM will seek legal redress, including injunction and monetary damages, against La Rosa in the event that there is any use of the Program after the date of this letter by any of La Rosa, its branches, its affiliates, or their

{00288794.DOC;}

**CHERNESKY, HEYMAN & KRESS P.L.L.**
La Rosa Del Monte
Page 2
February 12, 2007

employees and contractors.   Also, SFM will seek legal redress, including injunction and monetary damages, against any La Rosa branch, affiliate, employee and/or contractor who uses the program after the date of this letter.   In addition, SFM will seek legal redress, including injunction and monetary damages, against any third party contractor who is allowed access to copy the Program.   Consider yourself warned of SFM's intentions in the event you violate the copyrights of the Program by any further use of the Program or by allowing its codes or functionality to be copied.

Also be aware that SFM is not waiving the payment of the $86,000 in license fees due and owing from La Rosa and its affiliates for the period prior to the date of this letter, and it will take whatever actions are necessary to collect the money owed to it.

Thank you.

Very truly yours,

Philip A. Zukowsky

cab:20715
Enclosures
cc:     Mr. Shlomo Kogos

# Exhibit E

# CHERNESKY, HEYMAN & KRESS P.L.L.

### ATTORNEYS AT LAW

10 COURTHOUSE PLAZA SW, SUITE 1100
DAYTON, OHIO 45402
P.O. BOX 3808
DAYTON, OHIO 45401-3808
937/449-2800

WRITER'S DIRECT DIAL
937/449-2842

WRITER'S FAX
937/463-4947

WRITER'S E-MAIL
paz@chklaw.com

WEBSITE
www.chklaw.com

February 26, 2007

Mr. Hiram Rodriquez
La Rosa Del Monte
1133-35 Tiffany Street
Bronx, NY 10459

La Rosa Del Monte
c/o Harrington, Ocko & Monk
81 Main Street, Ste 215
White Plains, NY 10601

Gentlemen:

On February 15, 2007 we delivered a letter to you at La Rosa Del Monte Express, Inc. ("La Rosa") instructing you to immediately stop using software belonging to Software for Moving, Inc. ("SFM"), and to provide SFM with a written certification within seven days that you had stopped using all such programs. A copy of that Cease and Desist letter is enclosed. Because you have not complied with the request for certification that you had stopped using SFM's programs, I must assume that La Rosa, its branches, its affiliates, its employees and contractors are continuing to use these programs in violation of SFM's copyrights in the programs.

This is to inform you that we intend to seek legal redress against each of La Rosa, its branches, its affiliates, its employees and contractors who are continuing to use the program. I want to inform you that the federal laws for copyright infringement are very strict. Under these laws, the copyright owner is entitled to recover not only the actual damages it suffered as a result of the infringement, but also the profits of the infringer that relate to the use of the software. In addition, the burden is placed on the infringer to show what portion of its profits are not attributable to the use of the software. See 17 United States Code §504.

{00289785.DOC;}

**CHERNESKY, HEYMAN & KRESS P.L.L.**
La Rosa Del Monte
Page 2
February 26, 2007

You have been advised of the seriousness of any continued infringement on SFM's copyrights. Choose wisely.

Very truly yours,

Philip A. Zukowsky

cab:20715
Enclosure
cc:     Mr. Shlomo Kogos

# Exhibit F

## Philip Zukowsky

| | |
|---|---|
| **From:** | Philip Zukowsky |
| **Sent:** | Friday, December 22, 2006 2:01 PM |
| **To:** | rsocko@homlegal.com |
| **Cc:** | shlomo kogos |

**Subject:** La Rosa Del Monte

Software for Moving is seeking to collect the following amounts from La Rosa Del Monte.

1. Dos and Window Program. The annual maintenance/license fee for the use of this program is $58,000. La Rosa has paid the annual fee in full through 2005. For 2006 it has only paid $30,000 (which payment was made in August 2006 although the annual fee is required to be paid in January). Thus, for 2006 La Rosa owes $28,000. If La Rosa chooses to use SFM's Dos and Window Program in 2007, an additional $58,000 is due on January 1, 2007.

2. New SFM Program. La Rosa contracted with SFM to use SFM's new server based program and for customization work to the program. The agreement called for payments to SFM of $295,000 payable no later than when La Rosa started to use the program, and an annual maintenance/license fee of $40,000 commencing in the month when La Rosa began using the program. La Rosa went live with the program in August. La Rosa has paid $242,500 of the $295,000 upfront money, so $52,500 of the upfront money is due and owing. There is also five months of fees due and owing, an additional $16,666. If La Rosa chooses to use SFM's New Program in 2007, an additional $40,000 is due on January 1, 2007.

In addition, two other fees were agreed to by La Rosa and SFM. The first was payment for enhancements to the program that La Rosa could accept or reject. An example of this is the Google Map feature that SFM added to the program. These total cost for these programs is $60,000. La Rosa can reject these enhancements and not have any payment obligations (in which case SFM will remove them from the program), or it can accept some or all of these enhancements. However, we want La Rosa to let us know their position on these as soon as possible.

The other fee was for "manifest planning" requested by La Rosa. This was additional customization requested by La Rosa. These are not optional like the fee discussed above. The total cost of the manifest planning enhancements is $50,000. However, SFM would be willing to discuss discounting this amount if La Rosa brings its account up to date promptly.

I look forward to hearing from you next week regarding this matter. However, as you can tell time is of the essence as beginning January 1, 2007, there will be additional fees dues from La Rosa. Best Regards and Merry Christmas to you.

Philip A. Zukowsky
Chernesky, Heyman & Kress P.L.L.
paz@chklaw.com
937-449-2842
937-449-2821 (fax)

==================================================
CIRCULAR 230 DISCLOSURE
==================================================
PURSUANT TO RECENTLY-ENACTED US TREASURY DEPT. REGULATIONS, WE ARE NOW REQUIRED TO ADVISE YOU THAT, UNLESS OTHERWISE EXPRESSLY INDICATED, ANY FEDERAL TAX ADVICE CONTAINED IN THIS COMMUNICATION, INCLUDING ATTACHMENTS AND ENCLOSURES, IS NOT INTENDED OR WRITTEN TO BE USED, AND MAY NOT BE USED, FOR THE PURPOSE OF (i) AVOIDING TAX-RELATED PENALTIES UNDER THE INTERNAL REVENUE CODE OR (ii) PROMOTING, MARKETING OR RECOMMENDING TO ANOTHER PARTY ANY TAX-RELATED MATTERS ADDRESSED HEREIN.

==================================================
PRIVILEGED AND CONFIDENTIALITY NOTICE
==================================================
THIS ELECTRONIC TRANSMISSION (AND/OR THE DOCUMENTS ACCOMPANYING IT) MAY CONTAIN CONFIDENTIAL INFORMATION

BELONGING TO THE SENDER WHICH IS PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE. THE INFORMATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE, COPYING, DISTRIBUTION, ELECTRONIC STORING, OR THE TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS OF THIS INFORMATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE IMMEDIATELY NOTIFY THE SENDER BY REPLY E-MAIL AND IMMEDIATELY DELETE THIS RECORD FROM YOUR COMPUTER SYSTEM.
=====================================================

Our File No:  2341

STATE OF ILLINOIS          )
                           )  SS.
COUNTY OF COOK             )

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SOFTWARE FOR MOVING, INC.,<br>a New York Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>LA ROSA DEL MONTE EXPRESS,<br>INC., a New York Corporation, and<br>LA ROSA DEL MONTE EXPRESS<br>(CHICAGO), LLC, an Illinois Limited<br>Liability Company,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No: 07 C 1839<br>Judge Gottschall<br>Magistrate Judge Cole<br><br><br>**JURY DEMANDED BY PLAINTIFF** |

## MOTION TO STAY ARBITRATION

NOW COMES the Plaintiff SOFTWARE FOR MOVING, INC., a New York Corporation (SFM), by and through its attorneys, LEYHANE & ASSOCIATES, LTD., and moves this honorable court to stay the arbitration proceedings instituted in New York State against it and against its President, Shlomo Kogos.  In support of this motion, Plaintiff states as follows:

1.      Section 4 of the Federal Arbitration Act (9 U.S.C.A. §4) provides, in pertinent part, "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court… for an order directing that such arbitration proceed in the manner provided for in such agreement.  *  *  * The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order

directing the parties to proceed to arbitration in accordance with the terms of the agreement. * * * If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue."

2.     The omitted portions have to do with what district court would, in the ordinary course, hear such a petition: Ordinarily, the petition would be filed, and heard, in the district where the arbitration demand was made. In this case, Defendant LA ROSA DEL MONTE EXPRESS, INC. (LA ROSA) initiated an arbitration proceeding in New York. But – even though SFM promptly advised LA ROSA that it was refusing to participate – because SFM claimed, then and now, that the "agreements" containing the provisions requiring the parties to arbitrate disputes had never been executed by Shlomo Kogos, SFM's President (*see* Declaration of Shlomo Kogos; *see also*, Declaration of Philip Zukowsky, ¶¶15-16 and Exhibit PZ4) – LA ROSA did not invoke §4 of the Federal Arbitration Act.

3.     At the same time that LA ROSA was filing its Demand for Arbitration, SFM's attorney sent LA ROSA'S attorney a cease and desist letter, demanding that LA ROSA stop using SFM'S software on account of LA ROSA'S refusal to pay required maintenance fees. Two weeks later, on February 26, 2007, SFM'S attorney sent another letter to LA ROSA'S attorney reiterating this demand and specifically threatening to file a suit to stop LA ROSA'S continuing infringement of SFM'S copyright. (*See* Zukowsky Declaration, ¶¶12-13; *see also* Exhibits D and E to Plaintiff's Complaint.) Still, LA ROSA did nothing to compel its supposed rights to arbitration.

- 2 -

4.      This suit was filed on April 3, 2007.  Defendants have now filed a Motion to Dismiss Plaintiff's Complaint (Document 10).  In that motion, Defendants first contend that this court does not have jurisdiction in this case because SFM did not allege registration of the copyrighted software that Defendants are infringing in this case.[1]  In the alternative, Defendants ask for a "stay" of "Plaintiff's claims against Defendants pending the resolution of the presently ongoing arbitration of La Rosa's claims against Plaintiff pursuant to the arbitration provision in the parties' March 3, 2005 Software Development & Licence Agreement… and March 3, 2005 Maintenance Agreement… ***and to compel Plaintiff to arbitrate its claims with La Rosa and La Rosa LLC***."  (Emphasis supplied.)

5.      Plaintiff submits that the emphasized language above  may – finally – constitute Defendants' invocation of §4 of the Federal Arbitration Act.[2]  However, to the extent that Defendants deny any intent to invoke the provisions of §4 that they've not already waived (hearing in New York, for example), we invoke it: If, under the statute, this court can compel arbitration, it can also refuse to permit an arbitration to proceed.

6.      In Todd v. Oppenheimer & Co., Inc., 78 F.R.D. 415, 425 (S.D.N.Y. 1978), the District Court found that a party's failure to recollect whether she had signed documents containing arbitration clauses, at least when coupled with her further assertion that she did not recognize her purported signatures, was sufficient to trigger her right to a hearing under §4 of

---

[1]      This claim was made even though the details of SFM's 1997 copyright registration were spread of record in this case before Defendants filed their motion (Document 6).  SFM has moved separately to amend its Complaint to expressly include this information in its pleadings.

[2]      The request for a "stay" of these proceedings would likewise be consistent with an application under 9 U.S.C.A. §3.

the Arbitration Act.  "Although this is not a direct statement that such signature is not hers," the court agreed "that it is sufficient to create a question of fact as to the signature's authenticity whose resolution will require a hearing."

7.      In this case, the question of fact is even more squarely presented: SFM'S President, Shlomo Kogos, adamantly denies ever executing either the so-called 2005 License Agreement or the 2005 Maintenance Agreement; he denies ever even *seeing* these documents before February 2007, when he first saw LA ROSA'S Demand for Arbitration (Kogos Declaration, ¶¶2,3).  Because there exists (at the very least) a question of fact about whether SFM ever entered into an agreement to arbitrate disputes, SFM has a right to a trial under §4 of the Act.  Nissan North America, Inc. v. Jim M'Lady Oldsmobile, Inc., 2004 WL 609279 (N.D. Ill., Gottschall, J.), *affirmed*, --- F.3d ----, 2007 WL 1374759 (7th Cir. 5/11/07). *See also*, Great American Trading Corp. v. I.C.P. Cocoa, Inc., 629 F.2d 1282, 1288 (7th Cir. 1980) ("if the existence of the agreement to arbitrate is in issue," §4 "commands that the court 'shall proceed summarily to the trial thereof.'")  Moreover, under the plain language of §4, as the party unwilling to proceed in the arbitration, SFM has a right to a jury trial on this issue because it has demanded a jury in this case.

8.      In the forthcoming hearing, it will be Defendants who have the burden to establish "(1) [t]he making of the agreement and (2) the breach of the agreement to arbitrate."   In re Mercury Construction Corp., 656 F.2d 933, 939 (4th Cir. 1981), *affirmed*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).  Defendants have known of Kogos' unequivocal statements that he never signed the "agreements" that create their right to arbitration since late February 2007 (Zukowsky Declaration, ¶¶15-16 and Exhibit PZ4).  This suit was not filed until the beginning

of April.  So, in seeking to induce this court to induce SFM to submit to arbitration, a battle they must have anticipated since receiving the February 26, 2007 letter, what evidence have the Defendants arrayed against Kogos' denials?

9.     The answer, we submit, is "none whatsoever."  After SFM'S attorney advised Defendants' attorney and AAA that Kogos never signed the 2005 License Agreement or the 2005 Maintenance Agreement, AAA requested an explanation from Defendants.   Defense counsel responded in a March 2 letter (Zukowsky Declaration ¶¶17, 18, Exhibit PZ5).[3]  The letter confesses that the Defendants do not have any original, executed agreements.  Nor do Defendants offer any hope of producing anyone who drafted the documents or of anyone who claims to have seen Kogos sign them.  Nevertheless they contended that they can "establish" that Kogos signed the "Software Development Agreement" because a *former* LA ROSA employee, one Steven Dalzell "will testify that he requested that Mr. Kogos supply a duplicate copy of this agreement and that subsequently, during a visit to the office of Claimant [LA ROSA], Mr. Kogos hand-delivered a photocopy of the signed agreement to Mr. Dalzell, including the signature page bearing Mr. Kogos' signature." (Zukowsky Declaration, Exhibit PZ5, at p. 2.)  Apparently the Defendants have nothing whatsoever to offer on the provenance of the 2005 Maintenance Agreement.  Kogos, of course, has unequivocally denied this mysterious delivery of a photocopy of a document he never saw (Kogos Declaration, ¶4) – and, although Defendants had to know this day was coming, Mr. Dalzell has not been heard from.  Indeed, Defendants have rebuffed

---

[3]       Another copy of this same March 2 letter, with the various exhibits attached, is included as Exhibit E to the Declaration of Attorney John T.A. Rosenthal.

SFM'S attempts to contact Dalzell or obtain additional information about his supposed testimony. (Zukowsky Declaration ¶19, Exhibit PZ6.)

10.     The other way in which the Defendants attempt to imbue these agreements with an air of authenticity is through the Declaration of Attorney John T.A. Rosenthal (Document 12). Mr. Rosenthal makes the bald statement (Declaration ¶3) that "Exhibit 'B' to the [LA ROSA] Demand [for Arbitration] is the March 3, 2005 Software Development & License Agreement… entered into between La Rosa and [SFM]." It *is*?  How can Rosenthal make such an assertion when he knew, long prior to the April 27, 2007 date on which his Declaration was apparently signed, that Kogos was disputing that he'd ever signed – or even seen – that document?  He could make such an assertion only if he had a factual basis upon which to make it.  None is supplied.[4] A similar leap is made at ¶10 of the Rosenthal Declaration wherein Rosenthal blandly asserts (emphasis supplied) "that "Exhibit 'C' to the Demand is the March 3, 2005 Maintenance Agreement… *entered into between SFM and La Rosa with respect to the new web-based software*."  He offers no justification for this assertion at all, and, regarding this document there isn't even the extraordinary story of a cloak and dagger delivery of a signed photocopy to fall back on.[5]

---

[4]     Rosenthal need not have actually witnessed Kogos signing the document in order to make some factually contradicting assertion.  He might have said, for example, that he prepared the document and sent it to Kogos in the usual course of business and then got the signed original back – he might have said that, but then he'd have an original signature – and Defendants admit they don't have an original signature.  And, of course, Rosenthal would then have to explain why his boss didn't simply say something straightforward and reasonable like this in the March 2 letter (Exhibit PZ5, Exhibit E to his own Declaration).

[5]     SFM has moved separately to strike these unsupported assertions from the Roesenthal Declaration.

11.     It may be premature to argue, at this point, that Defendants should be barred from introducing any additional evidence at the forthcoming trial on the authenticity of the 2005 License Agreement and the 2005 Maintenance Agreement that §4 of the Arbitration Act requires. It is perhaps enough to say, for now, that the essentially unrebutted, and certainly unequivocal testimony of Mr. Kogos at least demonstrates the existence of a question of fact sufficient to trigger a factual hearing on whether or not Mr. Kogos signed the agreements containing the arbitration provisions.

12.     Finally, in evaluating whether or not to stay the arbitration pending trial on the issue of whether or not Shlomo Kogos signed some document containing an arbitration provision, we ask the court to keep in mind what the Court of Appeals said in <u>Stone v. Doerge</u>, 328 F.3d 343, 345 (7th Cir. 2003): "There is no denying that many decisions proclaim that federal policy favors arbitration, but this differs from saying that courts read contracts to foist arbitration on parties who have not genuinely agreed to that device." Arbitration should not be 'foisted' on SFM – not on this record.

WHEREFORE, Plaintiff SOFTWARE FOR MOVING, INC. respectfully prays as follows:

(1)     For an order staying the AAA Arbitration initiated by LA ROSA DEL MONTE EXPRESS, INC. against SFM and Shlomo Kogos, case number 19 117 00027 07, pending further order of this court; and

(2)     For this matter to be set down for a jury trial, as required by 9 U.S.C.A. §4, on the issue of whether Kogos executed either the 2005 License Agreement or the 2005 Maintenance Agreement.

- 7 -

In addition, and in the alternative, Plaintiff prays for such other or further relief as this court may

consider appropriate in the circumstances.

 

 

 

                               <u>s/ Francis J. Leyhane III</u>
                               One of the Attorneys for
                               SOFTWARE FOR MOVING, INC.

Attorney No. 3127365
FRANCIS J. LEYHANE III
LEYHANE & ASSOCIATES, LTD.
205 West Randolph Street
Suite 1320
Chicago, Illinois  60606
(312) 223-0811

Our File No: 2341

STATE OF ILLINOIS     )
                           ) SS.
COUNTY OF COOK     )

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SOFTWARE FOR MOVING, INC., a New York Corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No: 07 C 1839 |
| LA ROSA DEL MONTE EXPRESS, INC., a New York Corporation, and LA ROSA DEL MONTE EXPRESS (CHICAGO), LLC, an Illinois Limited Liability Company, | ) ) ) ) ) | Judge Gottschall Magistrate Judge Cole |
| Defendants. | ) ) ) | Jury Demanded by Plaintiff |

**MOTION TO STRIKE PORTIONS OF THE
DECLARATION OF JOHN T.A. ROSENTHAL (DOCUMENT 12)**

NOW COMES the Plaintiff SOFTWARE FOR MOVING, INC., a New York Corporation (SFM), by and through its attorneys, LEYHANE & ASSOCIATES, LTD., and moves this honorable court to strike portions of the Declaration of Attorney John T.A. Rosenthal in Support of Defendants' Motion to Dismiss (Document 12) and in support of this motion states as follows:

1.      Defendant LA ROSA DEL MONTE EXPRESS, INC. (LA ROSA) has used Rosenthal Declaration to place before this court the fact that it has filed a Demand for Arbitration. (Mr. Rosenthal is one of LA ROSA'S attorneys.) Inasmuch as it seeks to compel SFM to participate in this arbitration, despite SFM'S protestations that it never entered into any written agreement to arbitrate, LA ROSA probably had to do something like this.

2.     However, SFM strenuously objects to two statements made by Mr. Rosenthal in the course of this Declaration, specifically his statement in ¶3 of the Declaration that "Exhibit 'B' to the [LA ROSA] Demand [for Arbitration] is the March 3, 2005 Software Development & License Agreement… entered into between La Rosa and [SFM]" and his subsequent statement, at ¶10 of the Declaration, wherein he states that "Exhibit 'C' to the Demand is the March 3, 2005 Maintenance Agreement… entered into between SFM and La Rosa with respect to the new web-based software."

3.     Mr. Rosenthal is essentially testifying, in making these statements, that these documents, Exhibits B and C to the Demand for Arbitration *are* the contracts between LA ROSA and SFM.  While this is a conclusion that LA ROSA certainly wants this court to reach, and it may even be what Mr. Rosenthal *believes*, it is not something that Mr. Rosenthal *knows*.  He supplies no facts to support these assertions – Mr. Rosenthal didn't see Kogos sign anything – Mr. Rosenthal didn't prepare the documents – indeed, Mr. Rosenthal's Declaration includes (as Exhibit E) a copy of a letter in which one of his colleagues claims that LA ROSA can "establish" that Kogos signed the "Software Development Agreement" [the 2005 License Agreement] because a former LA ROSA employee, one Steven Dalzell "will testify that he requested that Mr. Kogos supply a duplicate copy of this agreement and that subsequently, during a visit to the office of Claimant [LA ROSA], Mr. Kogos hand-delivered a photocopy of the signed agreement to Mr. Dalzell, including the signature page bearing Mr. Kogos' signature."  (Rosenthal Declaration, Exhibit E, Document 12-7, p. 3 of 29.)  The letter does not mention anything about the origin of the 2005 Maintenance Agreement.  If Mr. Rosenthal could add something more – anything

more – to the story about how Defendants claim that Kogos executed the documents in question, surely he would have included it in the Declaration.

4.     FRCP Rule 56(e) requires that affidavits supporting or opposing a summary judgment motion must be "made on personal knowledge, shall ste forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Although Defendants have not framed their motion as one for summary judgment, this familiar standard should be applied in evaluating the sufficiency of Mr. Rosenthal's conclusory statements about the status of these highly disputed documents.  (*See* Declaration of Shlomo Kogos.)

5.     FRE 602 provides, in pertinent part, "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Courts have also applied this standard to the evaluation of affidavits. *See*, for example, <u>Argo v. Blue Cross and Blue Shield of Kansas</u>, 452 F.3d 1193, 1200 (10th Cir. 2006) (employee "simply was not in a position to acquire such comprehensive knowledge" as he attempted to insert in affidavit, statement that he was "personally familiar" with matters set forth in same notwithstanding).

6.     Under any standard, in the circumstances of this case, Mr. Rosenthal's statements that the referenced documents are contracts between SFM and LA ROSA are conclusory, not within his knowledge, and out to be stricken and disregarded.

WHEREFORE, Plaintiff SOFTWARE FOR MOVING, INC. respectfully prays this honorable court to strike and disregard Mr. Rosenthal's statement in ¶3 of his Declaration that "Exhibit 'B' to the [LA ROSA] Demand [for Arbitration] is the March 3, 2005 Software

Development & License Agreement… entered into between La Rosa and [SFM]" and his subsequent statement, at ¶10 of the Declaration, wherein he states that "Exhibit 'C' to the Demand is the March 3, 2005 Maintenance Agreement… entered into between SFM and La Rosa with respect to the new web-based software."  In addition, and in the alternative, Plaintiff prays for such other or further relief as this court considers appropriate under the circumstances.

<div style="text-align:right">

s/ Francis J. Leyhane III
One of the Attorneys for
SOFTWARE FOR MOVING, INC.

</div>

Attorney No. 3127365
FRANCIS J. LEYHANE III
LEYHANE & ASSOCIATES, LTD.
205 West Randolph Street
Suite 1320
Chicago, Illinois  60606
(312) 223-0811

Our File No: 2341

STATE OF ILLINOIS        )
                         )  SS.
COUNTY OF COOK           )

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SOFTWARE FOR MOVING, INC.,          )
a New York Corporation,             )
                                    )
                Plaintiff,          )
                                    )
vs.                                 )       No: 07 C 1839
                                    )            Judge Gottschall
LA ROSA DEL MONTE EXPRESS,          )            Magistrate Judge Cole
INC., a New York Corporation, and   )
LA ROSA DEL MONTE EXPRESS           )
(CHICAGO), LLC, an Illinois Limited )
Liability Company,                  )       Jury Demanded by Plaintiff
                                    )
                Defendants.         )

## NOTICE OF FILING

To:   Ms. Cathy Sugayan            Mr. Kevin J. Harrington
      Mr. David M. Dolendi         Mr. John T.A. Rosenthal
      Lord, Bissell & Brook, LLP   Harrington, Ocko, & Monk, LLP
      111 South Wacker Drive       81 Main Street, Suite 215
      Chicago, Illinois 60606      White Plains, New York 10601

**PLEASE TAKE NOTICE** that, on June 8, 2007, we filed the following documents in the

United States District Court for the Northern District of Illinois:

- Response to Defendants' Motion to Dismiss Plaintiff's Complaint;

- Declaration of Shlomo Kogos;

- Declaration of Philip Zukowsky;

- Motion for Leave to File First Amended Complaint at Law;

- Motion to Stay Arbitration; and

- Motion to Strike Poritions of the Declaration of John
  T.A. Rosenthal (Document 12).

Copies of these pleadings are served on you herewith via the District Court's Electronic Case

Filing System.  A courtesy hard copy of this notice and of all documents identified herein will

be delivered to Judge Gottschall's chambers within 24 hours of this notice.


                                          s/ Francis J. Leyhane III
                                       _____
                                       One of the Attorneys for
                                       SOFTWARE FOR MOVING, INC.

Attorney No. 3127365
FRANCIS J. LEYHANE III
LEYHANE & ASSOCIATES, LTD.
205 West Randolph Street
Suite 1320
Chicago, Illinois  60606
(312) 223-0811

Our File No: 2341

STATE OF ILLINOIS      )
                              ) SS.

COUNTY OF COOK      )

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SOFTWARE FOR MOVING, INC.,<br>a New York Corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No: 07 C 1839<br>Judge Gottschall |
| LA ROSA DEL MONTE EXPRESS,<br>INC., a New York Corporation, and<br>LA ROSA DEL MONTE EXPRESS<br>(CHICAGO), LLC, an Illinois Limited<br>Liability Company, | ) ) ) ) ) | Magistrate Judge Cole |
| | ) | Jury Demanded by Plaintiff |
| Defendants. | ) ) | |

## NOTICE OF MOTION

To:   Ms. Cathy Sugayan              Mr. Kevin J. Harrington
        Mr. David M. Dolendi            Mr. John T.A. Rosenthal
        Lord, Bissell & Brook, LLP       Harrington, Ocko, & Monk, LLP
        111 South Wacker Drive          81 Main Street, Suite 215
        Chicago, Illinois 60606           White Plains, New York 10601

**PLEASE TAKE NOTICE** that, on June 21, 2007, at 9:30 am, or as soon thereafter as

counsel may be heard, I shall appear before Judge Joan B. Gottschall in Courtroom 2325, of the

U.S. District Courthouse, 219 South Dirksen Street, Chicago, Illinois, or before any judge then

presiding in her stead, and shall then and there present the following motions:

- Motion for Leave to File First Amended Complaint at Law;

- Motion to Stay Arbitration; and

- Motion to Strike Poritions of the Declaration of John T.A. Rosenthal (Document 12).

Copies of these motions are served on you herewith via the District Court's Electronic Case Filing System. A courtesy hard copy of this notice and of all documents identified herein will be delivered to Judge Gottschall's chambers within 24 hours of this notice.

<div style="text-align:right">

____s/ Francis J. Leyhane III_____

One of the Attorneys for

SOFTWARE FOR MOVING, INC.

</div>

Attorney No. 3127365

FRANCIS J. LEYHANE III

LEYHANE & ASSOCIATES, LTD.

205 West Randolph Street

Suite 1320

Chicago, Illinois  60606

(312) 223-0811

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 3.0
### Eastern Division

Software For Moving, Inc.

                     Plaintiff,

v.                                 Case No.: 1:07−cv−01839
                                    Honorable Joan B. Gottschall

La Rosa Del Monte Express, Inc., et al.

                     Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Thursday, June 21, 2007:

       MINUTE entry before Judge Joan B. Gottschall : Motion hearing held on 6/21/2007. Plaintiff, Software for Moving, Inc. motion for leave to file first amended complaint at law [24] is granted. Defendants to answer or otherwise plead on or before 7/23/2007. Response is due by 8/6/2007. Reply in support is due by 8/13/2007. Motion by Defendants La Rosa Del Monte Express, Inc., La Rosa Del Monte Express (Chicago), LLC to dismiss Plaintiff's Complaint [10] is denied as moot. Briefing schedule as to Plaintiff's motion to strike portions of the declaration of John T.A. Rosenthal (Document 12), [26] and Plaintiff's motion to stay arbitration [25] is as follows: Responses due by 7/23/2007. Replies due by 8/6/2007. Ruling by mail. Mailed notice(rj, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

**FILED**

**JUNE 21, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Our File No: 2341

STATE OF ILLINOIS     )
                          )  SS.
COUNTY OF COOK      )

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SOFTWARE FOR MOVING, INC., a New York Corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No: 07 C 1839 |
| LA ROSA DEL MONTE EXPRESS, INC., a New York Corporation, and LA ROSA DEL MONTE EXPRESS (CHICAGO), LLC, an Illinois Limited Liability Company, | ) ) ) ) ) ) | Judge Gottschall Magistrate Judge Cole |
| Defendants. | ) ) ) | **Jury Demanded by Plaintiff** |

**FIRST AMENDED COMPLAINT AT LAW**

NOW COMES the Plaintiff SOFTWARE FOR MOVING, INC., a New York Corporation (SFM), by and through its attorneys, LEYHANE & ASSOCIATES, LTD., and for its First Amended Complaint against Defendants LA ROSA DEL MONTE EXPRESS, INC., a New York Corporation (LA ROSA), and LA ROSA DEL MONTE EXPRESS (CHICAGO), LLC, an Illinois Limited Liability Company (LA ROSA CHICAGO), states as follows:

**JURISDICTION**

1.     This court has jurisdiction over the copyright claims asserted in this action pursuant to 28 U.S.C.A. §1338(a) and 28 U.S.C.A. §1331 and supplemental jurisdiction over all related claims pursuant to 28 U.S.C.A. §1367(a). The software which is the subject of this action was registered under copyright number TX-4-426-709 on April 16, 1997; the software was originally

published on or about October 19, 1990 by SAFEGUARD COMPUTER SERVICES, INC. Plaintiff SFM is the successor in interest of SAFEGUARD COMPUTER SERVICES, INC. and assignee of its contracts and copyrights.

## THE PARTIES

2.      As its name suggests, SFM develops and licenses software for moving companies.

3.      LA ROSA is a moving company, operating at 11 different locations in the Unitied States and internationally.  Its Chicago office is located at 4834 W. Armitage Ave., Chicago, Illinois  60639.

4.      On information and belief, LA ROSA CHICAGO is an entity set up by LA ROSA, is involved in LA ROSA operations based in Chicago, and benefits from the software that SFM developed and licensed to LA ROSA.

## THE RELATIONSHIPS BETWEEN THE PARTIES

5.      LA ROSA is a long-time customer of SFM.  In 1999 LA ROSA entered into a contract with SFM's predecessor, SAFEGUARD COMPUTER SERVICES, INC. for the licensing of a windows-based program, Moving Manager for Windows.  A true and correct copy of that contract is attached as Exhibit A 1999 Software Licensing Agreement).  On information and belief, LA ROSA continues to use Moving Manager for Windows in its operations.

6.      LA ROSA CHICAGO never had a direct contract with SFM or its predecessor. It is a subsidiary or sister corporation, affiliated or associated with LA ROSA and included within the definition of Licensee under the 1999 contract attached hereto as Exhibit A.  On information and belief, as a LA ROSA subsidiary or a sister company to LA ROSA, LA ROSA CHICAGO also continues to use Moving Manager for Windows.

- 2 -

7.      Before using Moving Manager for Windows, LA ROSA licensed a DOS-based program from SFM.  On information and belief, LA ROSA continues to use the DOS-based program in its operations.

8.      In approximately December 2004 LA ROSA entered into an agreement with SFM to license a web-based version of the Moving Manager Program (Web Program) with certain modifications that suited LA ROSA'S business needs.   Over the next 20 months, SFM worked on completing the Web Program. At various times during this period SFM worked closely with Steven Dalzell, Roberto Rodriguez and Hiram Rodriguez of LA ROSA on completion of the Web Program. On information and belief, Mr. Dalzell was the Chief Operating Officer of LA ROSA, Mr. Roberto Rodriguez was an officer of LA ROSA, and Mr. Hiram Rodriguez was an officer and the owner of LA ROSA. Although SFM understood that LA ROSA would be preparing a written agreement regarding the Web Program, no such agreement was presented to SFM with the exceptions noted hereafter in Paragraph 10.  The oral agreement between SFM and LA ROSA provided that LA ROSA would pay a total of $295,000 for the Web Program, with the final payment due no later than the completion of the program by SFM.

9.      LA ROSA went "live" with the Web Program in or about August 2006, necessarily meaning that it deemed the Web Program complete as of that time.

10.      At around the same time as LA ROSA went "live" with the Web Program, Mr. Dalzell requested that SFM sign a "9/11 Agreement" (a copy of which is attached hereto and incorporated herein as Exhibit B) and a chart listing the maintenance fees that LA ROSA was obligated to pay SFM during the next seven years. A "9/11 Agreement" is an agreement in which the licensor of software agrees to place the source code in escrow and made available to the

- 3 -

licensee in the event something happens to the licensor.  The agreement between SFM and LA ROSA regarding the required maintenance fees is set forth on Exhibit C.

11.     In 2006, LA ROSA, through Mr. Dalzell requested that SFM further customize the Web Program with certain additional enhancement features (Enhancement Features) that had not been available when the parties entered into the agreement for the Web Program.  These features were a Google Map feature and address validation feature.  LA ROSA agreed to pay an additional $60,000 for this further customization.  Under the oral agreement for this set of enhancements (Enhancement Feature Agreement), LA ROSA did have a right to accept or reject the enhancements within a reasonable time.  If LA ROSA rejected the Enhancement Features – and did not use them – LA ROSA would not be obliged to pay for this additional $60,000 amount.

### COUNT I

*Copyright Infringement*

1. - 6.  Paragraphs 1 through 6 of this Complaint are restated as Paragraphs 1 through 6 of Count I.

7.     Paragraph 2 of the 1999 Software Licensing Agreement provides in its entirety as follows:

> 2. TERM OF LICENSE; TERMINATION; CONSIDERATION.
> (a) This license begins on the date that the Software is installed at any of Licensee's sites. This license is perpetual unless its terms are breached by Licensee. (b) This license in its entirety and as to all Software licensed shall terminate immediately if Licensee does not comply with these terms, including but not limited to, non payment of licensing fees or maintenance fees, unauthorized

- 4 -

copying or use of the Software, or unauthorized modification of the Software. (c) Upon termination, the license shall cease, and all copies of the Software shall be returned to Licensor or destroyed, at Licensor's option. Use of the Software is not authorized after termination by Licensor and shall be considered by Licensor to be infringement of its intellectual property w rights, in addition to any other rights that may accrue to Licensor by such use. Payment of fees shall be made pursuant to the Schedules attached hereto at Exhibit "A" and "C."

8.      LA ROSA stopped paying the maintenance fees required by the 1999 Software Licensing Agreement on or around August 1, 2006.

9.      Thereafter, SFM, through its attorney, demanded payment of the maintenance fees. LA ROSA did not respond to the demand.

10.      In January 2007 SFM notified LA ROSA that, due to non-payment of the required maintenance fees it would terminate the License Agreement unless it received payment.  LA ROSA did not respond to this notification by paying the overdue fees.

11.      SFM then issued a cease and desist letter to LA ROSA on February 12, 2007 telling LA ROSA that its license to use that SFM product was terminated for failure to pay required maintenance fees and that LA ROSA was required to either return the software or destroy the software or return it to SFM.  A true and correct copy of this letter is attached as Exhibit D.

12.      SFM followed up its cease and desist letter with a second letter (attached hereto as Exhibit E) again informing LA ROSA that it needed to stop using the software and to destroy or return it to SFM.

- 5 -

13.    On information and belief, LA ROSA and LA ROSA CHICAGO continue to use the SFM software that is the subject of the 1999 Software Licensing Agreement.

14.    Between the time that LA ROSA stopped paying the required maintenance payments and the date on which SFM told LA ROSA to stop using its software, SFM responded to all maintenance requests from LA ROSA regarding the Moving Manager for Windows program.

15.    Under 17 U.S.C.A. §504, SFM is entitled to its losses from the infringement on its software and the profits earned by Defendants which are attributable to the use of SFM's copyrighted software products.

16.    Under 17 U.S.C.A. §505, SFM is entitled to reasonable attorney's fees and its full costs in prosecuting this action.

WHEREFORE, Plaintiff SOFTWARE FOR MOVING, INC. respectfully prays that judgment be entered in its favor and against Defendants LA ROSA DEL MONTE EXPRESS, INC. and LA ROSA DEL MONTE EXPRESS (CHICAGO), LLC for profits wrongfully derived from the use of SFM software and for the attorney's fees and costs incurred by SFM in bringing this action.

## COUNT II

*Breach of Contract*
*1999 Software Licensing Agreement*

1. - 6. Paragraphs 1 through 6 of this Complaint are incorporated herein as Paragraphs 1 through 6 of Count II.

7.    Under the 1999 Software Licensing Agreement, LA ROSA was required to pay maintenance fees to SFM during the time it used SFM's software programs.

8. LA ROSA breached this contract when it stopped paying the maintenance fees required by the 1999 Software Licensing Agreement on or around August 1, 2006.

WHEREFORE, Plaintiff SOFTWARE FOR MOVING, INC. respectfully prays that judgment be entered in its favor and against Defendants LA ROSA DEL MONTE EXPRESS, INC. and LA ROSA DEL MONTE EXPRESS (CHICAGO), LLC in an amount that will fairly compensate SFM for Defendants' breach of contract. Plaintiff prays for such other or further relief as it may be entitled to including the recovery of its costs incurred in bringing this action.

## COUNT III

### Breach of Contract
### Web Program Agreement

1. - 10. Paragraphs 1 through 10 of this Complaint are incorporated herein as Paragraphs 1 through 10 of Count III.

11. Even though LA ROSA took the web-based program live in or about August 2006, it has failed to pay SFM $52,500 of the $295,000 due upon completion and deliver of the Web Program.

12. Once the Web Program was complete, LA ROSA became obliged to pay the monthly maintenance fee heretofore alleged.

13. LA ROSA has never paid any maintenance fees for the period of time that it used the Web Program despite several demands for payment.

WHEREFORE, Plaintiff SOFTWARE FOR MOVING, INC. respectfully prays that judgment be entered in its favor and against Defendant LA ROSA DEL MONTE EXPRESS, INC. in an amount that will fairly compensate SFM for Defendant's breach of contract. Plaintiff

- 7 -

prays for such other or further relief as it may be entitled to including the recovery of its costs incurred in bringing this action.

<div align="center">

### COUNT IV

*Breach of Contract*
*Enhancement Features Agreement*

</div>

1. - 11     Paragraphs 1 through 11 of this Complaint are incorporated herein as Paragraphs 1 through 11 of Count IV.

13.     On December 22, 2006, after completion and delivery of the Enhancement Features provided for in the separate Enhancement Features Agreement, counsel for SFM sent an email to counsel for LA ROSA offering a fresh opportunity for LA ROSA "to reject these enhancements and not have any payment obligations."  A true and correct copy of this email is attached as Exhibit F.  LA ROSA did not respond to this offer.

WHEREFORE, Plaintiff SOFTWARE FOR MOVING, INC. respectfully prays that judgment be entered in its favor and against Defendant LA ROSA DEL MONTE EXPRESS, INC. in the amount of $60,000 for the breach of the Enhanced Features Agreement.  Plaintiff prays for such other or further relief as it may be entitled to including the recovery of its costs incurred in bringing this action.

Attorney No. 3127365
FRANCIS J. LEYHANE III
LEYHANE & ASSOCIATES, LTD.
205 West Randolph Street
Suite 1320
Chicago, Illinois  60606
(312) 223-0811

        s/ Francis J. Leyhane III
One of the Attorneys for
SOFTWARE FOR MOVING, INC.

**Exhibit A**

*LAST Final 3/24/95*

**ORIGINAL**

<u>SOFTWARE LICENCING AGREEMENT</u>

WHEREAS, SAFEGUARD COMPUTER SERVICES, INC., a New York
Corporation, maintaining offices at 24-16 Bridge Plaza South,
Long island City, New York, 11101 (Hereinafter "Licensor")
represents and warrants that it is the owner of all right, title
and interest in and to the software applications and source code
otherwise known and referred to for purposes of identification as
the "MOVING MANAGER FOR WINDOWS" (Hereinafter "the Software");
and

WHEREAS, LA ROSA DEL MONTE EXPRESS, INC., a New York,
Corporation with world headquarters located at 1133-35 Tiffany
Street, Bronx, New York 10459, and primarily engaged in the
moving, shipping and storage industry, its subsidiaries, sister
corporations, partners, subsidiaries, affiliates and sub-
licensees and/or associates, (Hereinafter collectively
"Licensee"), desires to utilize the software in its day to day
national and international operations; and

WHEREAS, Licensee desires certain specific and individual
modifications to the software requiring additional code capable
of meeting the unique and specific needs of licensee's national
and international day to day operations; and

WHEREAS, Licensor warrants. that the software may be modified
so as to accommodate licencee's unique needs and further agrees
to modify the software to include the said specific and

Page 1 of 10

individual modifications to the software and to cause to have written the necessary additional software code capable of meeting the said unique and specific needs of licensee's national and international day to day operations;

NOW, THEREFORE, in consideration for valuable consideration, receipt of which is hereby acknowledged (the terms and conditions of which are set out at **Exhibit "A"**), Licensor agrees to develop and/or modify its software and grants Licensee a license to use its software pursuant to the terms which follow:

<u>**TERMS AND CONDITIONS OF SOFTWARE USE**</u>

1.  <u>SCOPE OF LICENSES</u>.  (a) Licensee is hereby licensing the use of Licensor's MOVING MANAGER software (the "Software"), and thus to make copies of Licensor's copyrighted materials, on Licensee's computer systems.  (b) This license is limited to use of the Software at the site(s) specified and only for purposes of Licensee's own moving and shipping enterprise.  (c) This license grants Licensee the right to make one back up copy of the Software per site which may be stored away from the site(s) or at such location(s) as Licensor may determine at its convenience and for the sole purpose of making said backup copy immediately available if and when the need for its utilization should arise.

2.  <u>TERM OF LICENSE; TERMINATION; CONSIDERATION</u>.  (a) This license begins on the date that the Software is installed at any of Licensee's sites.  This license is perpetual unless its terms are breached by Licensee. (b) This license in its entirety and as to all Software licensed shall terminate immediately if Licensee does not comply with these terms, including but not limited to, non payment of licensing fees or maintenance fees, unauthorized copying or use of the Software, or unauthorized modification of the Software.  (C) Upon termination, the license shall cease, and all copies of the Software shall be returned to Licensor or destroyed, at Licensor's option.  Use of the Software is not authorized after termination by Licensor and shall be considered by Licensor to be infringement of its intellectual property rights, in addition to any other rights that may accrue to Licensor by such use.  Payment of fees shall be made pursuant to the Schedules attached hereto at **Exhibit "A" and "C"**

3.  <u>GUARANTEE OF ORIGINAL DEVELOPMENT</u>. Licensor warrants that all modifications developed hereunder will be of original development by Licensor, and will be specifically developed for the fulfillment of this Agreement and will not infringe upon or violate any patent, copyright, trade secret or other proprietary right of a third party, and Licensor will indemnify and hold Licensee harmless from and against any loss, cost, liability or expense (including reasonable counsel fees) arising out of any

Page 3 of 10

breach or claimed breach of this warranty; Licensor shall assist Licensee in the expeditious transfer of licenses and/or title for use of perpetual licenses to Licensee for such non-original components unless Licensee already has title or license to any non-original components used hereunder.

4.  <u>PATENT COPYRIGHT OR TRADE SECRET INDEMNITY</u>. Licensor will defend at its expense, any action brought against Licensee or Licensor that is based on a claim that the systems developed and furnished hereunder infringes a United States patent or copyright or trade secret or other proprietary right of a third party and will pay the loss, damages, and reasonable attorney fees finally incurred by or awarded against Licensee in any such actions which are attributable to any such claim, but such defense and payments are conditioned on the following: (1) Licensee promptly notifies Licensor in writing of the claim, and (2) Licensor shall have sole control of the defense of any such action on such a claim and all negotiations for its settlement or infringement of a United States patent or copyright, Licensee shall permit Licensor, at its option and expense, either to procure for Licensor the right to continue using the Software, to replace or modify the same so that they become non-infringing, or to accept Licensee's return of the Software and grant Licensee a refund of monies paid under this Agreement. Licensor shall have no obligation to defend Licensee or to pay costs, damages, or

attorney's fees for any claim based upon (1) use of other than an unaltered configuration of the Software if such infringement would have been avoided by the use of an unaltered configuration of the Software, or the combination, operation, or use of any Software furnished hereunder with non-Licensor programs or data if such infringement would have been avoided by the combination, operation, or use of the Software with other programs or data.

5.   INDEMNIFICATION INCLUSION OF COSTS. Each party hereunder agrees to indemnify the other against all losses, costs, expenses (including reasonable counsel fees) which may occur by reason of the breach of any term, provision, warranty or representation contained herein and/or in connection with the enforcement of this Agreement or any provision thereof.

6.   MODIFICATION OF SOFTWARE.  Licensee shall not modify nor authorize modification of any of the Software in any manner without the express written permission of Licensor. The parties agree that Licensor possess certain unique knowledge of Licensee's business enterprise making Licensor the unique candidate for the development of the software for Licensee, and therefore, this Agreement may not be assigned by Licensor without the prior written consent (not to be unreasonably withheld) of Licensee.

7.   NOTICES OF INTELLECTUAL PROPERTY RIGHTS. Licensee shall assure that Licensor notices of intellectual property (e.g., copyright notices contained in the software) shall remain within the Software.

8.  <u>WARRANTIES; LIMITATIONS ON LIABILITY</u>. LICENSOR DOES NOT
GUARANTEE THAT THE SOFTWARE WILL MEET "ALL REQUIREMENTS" OF
CUSTOMER'S BUSINESS OR THAT THE SOFTWARE WILL INTERFACE WITH THE
SOFTWARE AND HARDWARE WITH WHICH CUSTOMER INTENDS IT TO OPERATE
WITH TO UTILIZE THE SOFTWARE.  LICENSOR WARRANTS THAT THE
SOFTWARE, AS MODIFIED, HAS BEEN DEVELOPED FOR OPERATION UNDER THE
WINDOWS OPERATING SYSTEM.  Licensor warrants that the software
shall be Y2K compliant pursuant to separate agreement
incorporated by reference and attached hereto at **Exhibit "B"**.

9.  <u>CONFIDENTIALITY AND SECURITY OF THE SYSTEMS</u>. Each party
acknowledges that all material and information which has or will
come into the possession and knowledge of each other in
connection with this Agreement or the performance hereof,
consists of confidential and proprietary data, whose disclosure
to or use by third parties will be damaging, both parties,
therefore, agree to hold such material and information in
strictest confidence, not to make use thereof other than for the
performance of this Agreement, to release it only to employees
requiring such information, and not to release or disclose it to
any other party.

10.  <u>RIGHTS TO NEW IDEAS AND CODE</u>. The parties acknowledge
that performance of this Agreement will result in the development
of new proprietary and secret concepts, methods, techniques,
processes, adaptations and ideas. The parties agree that the same

shall belong solely to Licensee without regard to the origin thereof and that Licensor will not, other than in the performance of the Agreement, without the express written consent, which will not be unreasonably withheld, sell, make use or disclose same to any person, group, company or corporation that competes with Purchaser's business as defined herein.

11. <u>ASSIGNMENTS</u>. This Agreement and its rights, duties and obligations may not be assigned by Licensee without the prior written consent of Licensor.

12. <u>COPYING</u>. All intellectual property, including but not limited to copyright, patents and trade secrets, in the Software, except for improvements, revisions, and modifications made at specific request of Licensee, shall remain the property of Licensor. Licensee agrees that, except as directed by Licensor and this Agreement, it will not at any time during or after the term of this Agreement allow unauthorized copying of the Software.

13. <u>INJUNCTIVE RELIEF</u>. Licensee acknowledges that unauthorized use or copying of the Software will give rise to irreparable injury to Licensor, and leave Licensor inadequately compensable in damages. Accordingly, Licensor may seek and obtain injunctive relief against the breach or threatened breach of license terms, in addition to any other legal remedies which may be available. Licensee further acknowledges and agrees that

the covenants contained herein are necessary for the protection of Licensor's legitimate business interests and are reasonable in scope and content.

14. <u>NOTICE OF NON AFFILIATION</u>. Licensor is not affiliated in any way with Safeguard Business Systems, Inc.; which is a totally separate and independent company that neither sponsors nor endorses Licensor's activities.

15. <u>TRAINING</u>. Licensor shall provide the operational manuals and onsite training to Licensee's designated personnel as provided for under the maintenance provisions stated herein and set out at **Exhibit "C"**.

16. <u>MAINTENANCE</u>. Maintenance schedules and fees shall be in compliance with the terms and conditions made a part hereof and incorporated by reference as set out at **Exhibit "C"**.

17. <u>LICENSOR'S EMPLOYEES ASSIGNED TO THIS AGREEMENT</u>. In the event that Licensor uses contractors or subcontractors, Licensor specifically assumes all responsibilities for such contractors or subcontractors as if they were employees of Licensor, and Licensor shall indemnify and hold harmless Licensee for the acts of such contractors or subcontractors. Licensor-assigned employees may be rejected by Licensee should Licensee determine unilaterally that any employee's services are unsatisfactory. Upon written notification from Licensee regarding an unsatisfactory employee, Licensor shall remove such employee

immediately and replace the removed employee with an employee acceptable to Licensee as soon as possible. Under no circumstances shall Licensor's employees be considered employees of or agents of Licensee.

18. <u>FORCE MAJEURE</u>. Neither party shall be responsible for delays or failures on performance resulting from acts beyond the control of such party. Such acts shall include but not be limited to acts of God, strikes, lockouts, riots, acts of war, epidemics, government regulations superimposed after the fact, fire, communication line failures, power failures, earthquakes or other disasters.



19. <u>COMPLIANCE WITH ALL LAWS - PARTIAL INVALIDITY</u>. Each party agrees that it will perform its obligations hereunder in accordance with all applicable laws, rules and regulations now or hereafter in effect. If any item or provision of this Agreement shall be found to be illegal or unenforceable, them notwithstanding, this Agreement shall remain in full force and effect and such term or provision shall be deemed stricken.

20. <u>ALL AMENDMENTS IN WRITING</u>. No amendments to this Agreement shall be effective unless they are in writing and signed by duly authorized representatives of both parties.

21. <u>HEADINGS NOT CONTROLLING</u>. Headings used in this Agreement are for reference purposes only and shall not be deemed a part of this Agreement.

23. <u>SURVIVAL BEYOND COMPLETION</u>. The provisions of this

Agreement and the Software developed under this Agreement as well as confidentiality, indemnification, use, assignment, reproduction, warranty, ownership, return or destruction shall survive the delivery of the software and the payment of associated charges.

    22. <u>GOVERNING LAW</u>. This Agreement shall be governed by all the laws of the State of New York, including its conflicts of laws rules and/or common law precedent.


    IN WITNESS WHEREOF the parties have executed this Agreement this \_\_ day of March, 1999.


Safeguard Computer Services, Inc.
By: Shlomo Kogos, President


La Rosa Del Monte Express, Inc.
By: Hiram Rodriguez, President

# EXHIBIT "A"

## FEES AND MILESTONES

Licensee agrees to pay $83,000.00 (Hereinafter "the Licensing Fee") to Licensor for the perpetual License to use the software at sixty-three (63) sites as defined in **Exhibit "C"**, the Software Maintenance Agreement. Licensee further agrees to pay an additional $1,000.00 licensing fee for each additional site which is added in excess of the said sixty-three sites provided for herein. The Licensing Fee shall be paid in accordance with five (5) developmental phases (Hereinafter "Milestones"). At the completion of the fifth (5th) Milestone, Licensor agrees to have sufficiently developed the software, so as to have Licensee's New York Headquarters operations, and all other national and international business locations up and running. Licensor possesses unique knowledge of the moving and storage industry and as such fully recognizes that Licensee's activity and operations will increase dramatically and in proportion to an increased surge in demand for Licensee's services beginning with the spring season. In order for Licensee to adequately meet said demand, and to reduce the likelihood of any disruption in Licensee's operations, Licensor agrees to exert his good faith and best efforts to complete the said fifth (5th) Milestone by on or before June 15, 1999. Each individual Milestone in the developmental process shall hereinafter be designed, approved,

programmed, delivered, tested, and accepted pursuant to the schedule and procedures listed below.

## I. As for each Milestone:

(a) Licensor shall consult with Licencee's employee, Miriam Rodriguez (Hereinafter "the Systems Specialist") for the purpose of designing programming specifications and in conjunction with Licensor's controller, Ricardo Colon, for the purposes of financial data merging. Specifications shall contain those items provided by her and the controller to Licensor.

(b) Once Licensor has designed , developed, and completed a Milestone, they will be delivered to the Systems Specialist together with their operation performance estimates (Hereinafter "OPE") and the Software Manual (Hereinafter "the SM") for every Milestone in the specifications provided by the Systems Specialist. The OPE and SE shall indicate any limitations on the software at that time, e.g. size, and the estimated response times for on-line programs or runtimes for the batch programs so as to adequately prepare her for said limitations and to reduce the likelihood of negatively impacting on Licensee's day to day operations.

(c) Upon receipt of said completed Milestones, the Systems Specialist will either approve or disapprove the completion of

said Milestone.  Such approval will be at the sole discretion of Purchaser, but said approval or disapproval shall be made in good faith and an approval shall not be unreasonably withheld.

(i) When, upon approval of the completed Milestones, in conjunction with the Systems Specialist, an Acceptance test for the Milestone and its individual specifications has been performed and completed satisfactorily to the Systems Specialist, said milestone is to be deemed completed

(ii)  If the Systems Specialist does not approve said Milestone, Licensor and the Systems Specialist will again consult and restart the procedure as stated above.

(d)  (i) The Systems Specialist in conjunction with Licensor shall develop an acceptance test.  After the creation of the Acceptance Test, the parties shall also create the Milestone Agreement. The Milestone Agreement shall contain the following: The functional names of the Milestones to be completed, the date of delivery, and the understanding that time is of the essence.

(ii)  The Milestone Agreement will also have the following items attached thereto:

The Functional Specifications which is a narrative explanation of the operation of the programs, containing Exhibits of all screen and reports. The Programming Specifications to be used by the programmers creating the software for Purchaser. The Functional Specifications for the software after customization.

Page 3 of  7

File layouts for all files used or created in that Milestone, including record and/or data field descriptions. The operation performance estimates. The Acceptance Tests, including test data.

(iii)  The Milestones Agreement will make explicit and express reference to this agreement, and the date this agreement was executed.

(iv)  Upon the signing of the Milestones Agreement by both the Systems Specialist and Licensor, Licensee shall pay to Licensor pursuant to the following fixed payment schedule:

Upon completion of the first Milestone (Installation) Twenty Thousand Dollars ($20,000.00) payable in two installments.  First installment of $15,000.00 with a second installment of $5,000.00 within a week of the first installment.

> A.  Upon completion of the Second Milestone through and including the Fourth Milestone, licensor shall be paid $14,000.00 per completed Milestone.
> B.  Upon completion of the Fifth Milestone, Licensor shall receive a payment of $8,000.00
> C.  A final payment of $13,000.00 shall be paid to Licensor 60 days subsequent to the completion of the Fifth Milestone.

(v) Licensor will then proceed to write the programming for that Milestone.

(e)  (i)  On the delivery date specified in the Phase Agreement, Licensor shall deliver to Licensee the completed programming for that Milestone.

(ii)   Failure by Licensor to deliver the completed programming by the end of the 30 days after the delivery date specified in the Milestone Agreement, will entitle Licensee to a 10 percent reduction in the cost of the entire Milestone payment for each 30 day period in which Licensor is late.  The delivery date may only be modified by written amendment to the Milestone Agreement signed by both parties.

(iii)   In the event that Licensor fails to deliver the completed Milestones three (3) months after the original delivery date, and the delivery date was not modified, Licensee may cancel payment for that Milestone in its entirety, said payment to be held in escrow, minus any penalties accrued after the final completion of all Milestones.

(ii)   If the programs fail to perform the acceptance tests, the parties shall follow the following procedure:

(1) Licensee shall immediately notify Licensor by telephone of the failure of the test. Licensee shall then confirm such notice by sending written confirmation of the failure plus proper documentation of said failure to Licensor by certified mail, return receipt requested.

(2) Licensor shall immediately begin reprogramming to remedy the failure.

(3)   If the failure cannot be remedied within five (5) days, the penalty provision shall take effect.

(4)   After Licensee has used all the completed Milestone programs successfully for a period of 90 consecutive days of uptime and without failure, Licensee shall pay to Licensor the final $13,000.00 payment, along with any monies held in escrow as provided herein.   Nothing in this procedure shall be construed to prevent several Milestones to be commenced simultaneously.

## II. SYSTEMS UPTIME.

(A)   System uptime, is defined as follows: Licensor warrants that the software shall be functionally operational within the specifications of each Milestone no less than 96 percent  of any consecutive ninety (90) day period beginning with the start of acceptance.  Any time that the system is not functionally operational due to hardware failure or other causes beyond Licensor's design or control shall be excluded from  this computation.

(B)   In the event of a failure of any program during the ninety (90) day period, Licensee shall notify Licensor by telephone immediately. Licensee will confirm said telephone notice by serving Licensor with written notice, with proper documentation of said error or failure, sent certified mail, return receipt requested.

(C)   Upon notification of the failure, Licensor may begin

immediate repairs of said failures.  If the failure is remedied before the expiration of 36 cumulative days, including previous failures, within that Phase, the required ninety (90) day uptime period will continue to run.

IN WITNESS WHEREOF, each of the parties hereto has causes this Agreement to be duly executed as of the date below.

Safeguard Computer Services, Inc.
By: Shlomo Kogos, President

La Rosa Del Monte Express, Inc.
By: Hiram Rodriguez, President

Page 7 of  7

## EXHIBIT "B"

### (Y2K) YEAR 2000 COMPLIANCE

A. Licensor represents and warrants that the Software is designed to be used prior to, during, and after the calendar year 2000 A.D., and that the Software, together with its modifications will operate during each such time period without error relating to date data, specifically including any error relating to, or the product of, date data which represents or references the new century and millennium.

1. Without limiting the generality of the foregoing, Licensor further represents and warrants:

2. That the Software has been designed to ensure year 2000 compatibility, including, but not limited to, date data century and millennium recognition, calculations which accommodate same century and multi-century formulas and date values, and date data interface values that reflect the new century;

3. That the software includes "year 2000 capabilities". For the purposes of this Agreement, "year 2000 capabilities" means that the Software: (a) will manage and manipulate data involving dates, including single century formulas and multi-century formulas, and will not cause an abnormally ending scenario within the application or generate incorrect values or invalid results involving such dates; and, (b) provides that all date-related user interface functionalities and data fields include the indication of century; and, (c)

Page 1 of 3

provides that all date-related data interface functionalities include the indication of a new century and millennium.

    4.  The term "Year 2000 Compliance Warranty" shall mean, collectively, the warranties set forth herein.

WARRANTY TERM  The Year 2000 Compliance Warranty set forth herein shall begin as of the date of the License Agreement and end on the date after January 1, 2000, subsequent to which the Software has operated without a breach of the Year 2000 Compliance Warranty for a consecutive thirteen month period.

WAIVER OF LIMITATION OF LIABILITY.  Any provisions of the License Agreement which tend to limit or eliminate the liability of either party shall have no application with respect to the Year 2000 Compliance Warranty set forth herein.

LIMITATION ON USE/LIMITATION ON LIABILITY. Licensee agrees that it shall not modify the Software in any manner which would affect the performance of the Software in such a manner as to cause it to fail to meet the Year 2000 Compliance Warranty set forth herein. There shall be no liability on the part of Licensor for any failure of the Software to conform to the Year 2000 Compliance Warranty to the extent that any such failure is attributable to a modification of the Software by Licensee. Licensee agrees to independently confirm its hardware Y2K compliance and Licensor shall not be liable under the present agreement for Y2K compliance arising out of hardware incompatibility or Y2K non compliance.

Page 2 of 3

PROVISIONS OF COMPLIANCE AGREEMENT CONTROLLING. In the event of any conflict or apparent conflict between the terms and conditions of the License Agreement and the terms and conditions of this Compliance Agreement, the terms and conditions of this Compliance Agreement shall control.  Except to the extent otherwise set forth herein, the terms and conditions of the License Agreement shall remain in full force and effect.

ENTIRE AGREEMENT. This Compliance Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof.  This Compliance Agreement shall not be modified except by later written agreement signed by both parties.

IN WITNESS WHEREOF the parties have executed this Agreement this __ day of March, 1999.

Safeguard Computer Services, Inc.
By: Shlomo Kogos, President

La Rosa Del Monte Express, Inc.
By: Hiram Rodriguez, President

Page 3 of  3

## EXHIBIT "C"

### SOFTWARE MAINTENANCE AGREEMENT

1.    Licensee shall pay Licensor a fee of $35.00 per month
per user (Hereinafter "Station") as a maintenance charge until
that time when Licensee, upon 90 day notice of cancellation to
Licensor, elects to no longer utilize the software and same is
returned and surrendered to Licensor.  Licensee's right of
election to surrender as provided herein will become effective
only after the minimum twenty-four months period of performance
and use of the software and maintenance services and shall not be
deemed a waiver of licensee's rights to new ideas and code as
provided for under Paragraph "10" of the "Software Licensing
Agreement", which covenant shall survive the completion of all
other obligations under the agreement.

2.    Licensee shall begin payment of said maintenance fees
upon successful installation and use of the software per each
particular Station as the software becomes installed per
location.

3.    It is contemplated by and between the parties that
Licensee's operations shall in total contain sixty-three (63)
stations spread out over Licensee's various national and
international offices.

4.    Upon receipt and installation of the Software, Miriam
Rodriguez (Hereinafter for purposes of identification "Systems
Specialist"), in conjunction with Licensor, shall schedule

training sessions with the various locations wherein Licensee will utilize the Software in its day to day operations.

5.    Payment of maintenance fees shall commence subsequent to training per location.  Once training has been successfully completed per location and the Software's utilization has commenced, maintenance fees per site of said location will become due and payable.

6.    It is further understood by and between the parties that the Systems Specialist will exert her good faith best efforts to complete all installations and training within 160 days from the date of the completed five (5) Milestone, as (defined under **Exhibit "A"),** fully operational software, and that Licensor will exert his good faith best efforts to cooperate with the Systems Specialist to achieve this goal.  It is further understood by and between the parties that at the expiration of the said 160 day period, maintenance fees for all 63 stations will become due and owing regardless of whether or not all locations and stations have been trained and/or begun to utilize the Software, unless a delay may be attributable to the acts or omissions of Licensor or to occurrences covered under the Licensing Agreement's Force Majeure.  Licensor shall work in coordination with the Systems Specialist to assure that all locations have been properly trained and prepared to utilize the Software in their day to day operations.

7.    In the event that Licensor is required be Licensee to

visit any of Licencee's offices situated outside of the state of New York (Hereinafter the New York Office" and "Foreign Office(s)" respectively) in order to perform the maintenance services provided for herein, including training, Licensee shall provide for the reasonable costs of lodging and meals. In the event that Licensor is required to remain at any foreign office in excess of five (5) days, Licensee in addition to providing the reasonable costs for lodging and meals, shall further compensate Licensor with an additional $400.00 daily compensation for each and every day exceeding the said five (5) day period.

7.    Payment of maintenance under the schedule herein above stated shall entitle Licensee to the following for the life of the perpetual license for the New York and Foreign Offices:

a.    Unlimited customer support hotline

b.    On site training.

c.    Daily data merging of all information compiled from each location and its respective sites.

d.    Continual software product updates, including but no limited to, user interface improvements, cosmetic improvements, Windows operating systems upgrades, upgrades and enhancements making the software conform to advances in hardware technologies, data enhancements, training aids, operational manuals, system backups, on site technical support, seamless technical support, and

correction of software and Windows operating
systems bugs.

e.   Forms modifications, including modifications for
     reports, letters, BOL and Order Service, Outside
     agency forms and reports, Tariff Charges,
     accounting department data merging and use, ddata
     flow, and customization.

8.   Failure of Licensor to abide by the terms of this
maintenance agreement shall be deemed a substantial breach and
shall result in a waiver by Licensor of all Maintenance fees for
the period of said breach.


     IN WITNESS WHEREOF the parties have executed this Agreement
this __ day of March, 1999.

_____
Safeguard Computer Services, Inc.
By: Shlomo Kogos, President


_____
La Rosa Del Monte Express, Inc.
By: Hiram Rodriguez, President

# Exhibit B

## ADDENDUM TO
## SOFTWARE DEVELOPMENT & LICENSE AGREEMENT

By agreement of both parties, in the event the "Developer" has ceased operations, is no longer a viable operating entity or due to a situation, emergency or otherwise, in which the "Developer" is unable to provide contracted services, upgrades or maintenance as required for the continued and uninterrupted use of "Software X" by "Client", the "Client" shall contact the agent of the "Developer", Mr. Philip Zukowsky of the firm Chernesky, Heyman & Kress, P.L.L. located at 10 Courthouse Plaza SW, Suite 1100, Dayton, Ohio 45402, telephone 937-449-2800. Mr. Zukowsky will provide to "Client" at no additional charge (1) a copy of the source code for the program, (2) the right to make changes as necessary to source code for the continued and forever use of the program and (3) access to contact information of other companies utilizing "Moving Manager Web Version" so they may assist each other in maintaining the source code. The "Client" will be granted full ownership of the source code with the limitation that it cannot resell it to others or allow to be installed at or used by a non-related entity of "Client".

Software for Moving, Inc.

By:   Shlomo Kogos, President

La Rosa Del Monte Express, Inc.

By:   STEVEN OMEILA
      VP OPERATIONS

17

# Exhibit C

JAN-05-2007 10:00    07E882174S    95%    P.07

## MAINTENANCE SCHEDULE A

| Year | Monthly per user | Total Monthly @ 70 users |
|------|------------------|--------------------------|
| First Year | $55 | $3,850 |
| Second Year | $55 | $3,850 |
| Third Year | $55 | $3,850 |
| Fourth Year | $60 | $4,200 |
| Fifth Year | $65 | $4,550 |
| Sixth Year | $70 | $4,900 |
| Seventh Year | $80 | $5,600 |

Software for Moving, Inc.

By:    Shlomo Kogos, President

La Rosa Del Monte Express, Inc.

By:    STEVEN DMETILL

    VP OPERATIONS

6

**Exhibit D**

**HEYMAN & KRESS P.L.L.**
ATTORNEYS AT LAW

JRTHOUSE PLAZA SW, SUITE 1100
DAYTON, OHIO 45402
P.O. BOX 3808
DAYTON, OHIO 45401-3808
937/449-2800

WRITER'S E-MAIL
paz@chklaw.com

WEBSITE
www.chklaw.com

February 12, 2007

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Mr. Hiram Rodriquez
La Rosa Del Monte
1133-35 Tiffany Street
Bronx, NY 10459

RE: **CEASE AND DESIST**

Dear Mr. Rodriguez:

**THIS IS TO INFORM YOU THAT DUE TO THE NONPAYMENT OF LICENSE FEES BY LA ROSA DEL MONTE EXPRESS, INC. ("LA ROSA"), SOFTWARE FOR MOVING, INC. ("SFM") ORDERS LA ROSA AND ITS AFFILIATES TO IMMEDIATELY CEASE AND DESIST, AS OF THE DATE OF THIS LETTER, FROM ANY FURTHER USE OF THE MOVING MANAGER SOFTWARE PROGRAM WHICH IS OWNED BY AND COPYRIGHTED TO SFM.**

Effective as of the date of this letter we expect La Rosa to take the following steps to prevent any violation of SFM's copyrights in the Moving Manager software program (the "Program"): (i) immediate cessation to the use of the Program by La Rosa, its branches, its affiliates, employees and contractors; (ii) the immediate destruction, or return to SFM, of all copies of the Program that La Rosa, its branches, its affiliates, employees and contractors may have in their possession; (iii) prevention of third parties from copying the Program in any manner, including object code, source code and functionality; (iv) informing all employees of La Rosa that they are to stop using the Program; and (v) providing SFM with a certification in writing within seven (7) days of the date of this letter that the aforementioned steps to protect SFM's rights in the Program have been taken..

I trust that La Rosa will comply with its obligation to prevent against the illegal use of SFM's property. However, La Rosa should be aware that SFM will seek legal redress, including injunction and monetary damages, against La Rosa in the event that there is any use of the Program after the date of this letter by any of La Rosa, its branches, its affiliates, or their

{00288794.DOC;}

**CHERNESKY, HEYMAN & KRESS P.L.L.**
La Rosa Del Monte
Page 2
February 12, 2007

employees and contractors.  Also, SFM will seek legal redress, including injunction and monetary damages, against any La Rosa branch, affiliate, employee and/or contractor who uses the program after the date of this letter.  In addition, SFM will seek legal redress, including injunction and monetary damages, against any third party contractor who is allowed access to copy the Program.  Consider yourself warned of SFM's intentions in the event you violate the copyrights of the Program by any further use of the Program or by allowing its codes or functionality to be copied.

Also be aware that SFM is not waiving the payment of the $86,000 in license fees due and owing from La Rosa and its affiliates for the period prior to the date of this letter, and it will take whatever actions are necessary to collect the money owed to it.

Thank you.

Very truly yours,

Philip A. Zukowsky

cab:20715
Enclosures
cc:    Mr. Shlomo Kogos

**Exhibit E**

# CHERNESKY, HEYMAN & KRESS P.L.L.

### ATTORNEYS AT LAW

10 COURTHOUSE PLAZA SW, SUITE 1100
DAYTON, OHIO 45402
P.O. BOX 3808
DAYTON, OHIO 45401-3808
937/449-2800

WRITER'S DIRECT DIAL
937/449-2842

WRITER'S FAX
937/463-4947

WRITER'S E-MAIL
paz@chklaw.com

WEBSITE
www.chklaw.com

February 26, 2007

Mr. Hiram Rodriquez
La Rosa Del Monte
1133-35 Tiffany Street
Bronx, NY 10459

La Rosa Del Monte
c/o Harrington, Ocko & Monk
81 Main Street, Ste 215
White Plains, NY 10601

Gentlemen:

On February 15, 2007 we delivered a letter to you at La Rosa Del Monte Express, Inc. ("La Rosa") instructing you to immediately stop using software belonging to Software for Moving, Inc. ("SFM"), and to provide SFM with a written certification within seven days that you had stopped using all such programs. A copy of that Cease and Desist letter is enclosed. Because you have not complied with the request for certification that you had stopped using SFM's programs, I must assume that La Rosa, its branches, its affiliates, its employees and contractors are continuing to use these programs in violation of SFM's copyrights in the programs.

This is to inform you that we intend to seek legal redress against each of La Rosa, its branches, its affiliates, its employees and contractors who are continuing to use the program. I want to inform you that the federal laws for copyright infringement are very strict. Under these laws, the copyright owner is entitled to recover not only the actual damages it suffered as a result of the infringement, but also the profits of the infringer that relate to the use of the software. In addition, the burden is placed on the infringer to show what portion of its profits are not attributable to the use of the software. See 17 United States Code §504.

{00289785.DOC;}

**CHERNESKY, HEYMAN & KRESS P.L.L.**
La Rosa Del Monte
Page 2
February 26, 2007

You have been advised of the seriousness of any continued infringement on SFM's copyrights. Choose wisely.

Very truly yours,

Philip A. Zukowsky

cab:20715
Enclosure
cc:    Mr. Shlomo Kogos

# Exhibit F

## Philip Zukowsky

| | |
|---|---|
| **From:** | Philip Zukowsky |
| **Sent:** | Friday, December 22, 2006 2:01 PM |
| **To:** | rsocko@homlegal.com |
| **Cc:** | shlomo kogos |
| **Subject:** | La Rosa Del Monte |

Software for Moving is seeking to collect the following amounts from La Rosa Del Monte.

1. Dos and Window Program. The annual maintenance/license fee for the use of this program is $58,000. La Rosa has paid the annual fee in full through 2005. For 2006 it has only paid $30,000 (which payment was made in August 2006 although the annual fee is required to be paid in January). Thus, for 2006 La Rosa owes $28,000. If La Rosa chooses to use SFM's Dos and Window Program in 2007, an additional $58,000 is due on January 1, 2007.

2. New SFM Program. La Rosa contracted with SFM to use SFM's new server based program and for customization work to the program. The agreement called for payments to SFM of $295,000 payable no later than when La Rosa started to use the program, and an annual maintenance/license fee of $40,000 commencing in the month when La Rosa began using the program. La Rosa went live with the program in August. La Rosa has paid $242,500 of the $295,000 upfront money, so $52,500 of the upfront money is due and owing. There is also five months of fees due and owing, an additional $16,666. If La Rosa chooses to use SFM's New Program in 2007, an additional $40,000 is due on January 1, 2007.

In addition, two other fees were agreed to by La Rosa and SFM. The first was payment for enhancements to the program that La Rosa could accept or reject. An example of this is the Google Map feature that SFM added to the program. These total cost for these programs is $60,000. La Rosa can reject these enhancements and not have any payment obligations (in which case SFM will remove them from the program), or it can accept some or all of these enhancements. However, we want La Rosa to let us know their position on these as soon as possible.

The other fee was for "manifest planning" requested by La Rosa. This was additional customization requested by La Rosa. These are not optional like the fee discussed above. The total cost of the manifest planning enhancements is $50,000. However, SFM would be willing to discuss discounting this amount if La Rosa brings its account up to date promptly.

I look forward to hearing from you next week regarding this matter. However, as you can tell time is of the essence as beginning January 1, 2007, there will be additional fees dues from La Rosa. Best Regards and Merry Christmas to you.

Philip A. Zukowsky
Chernesky, Heyman & Kress P.L.L.
paz@chklaw.com
937-449-2842
937-449-2821 (fax)

=================================================
CIRCULAR 230 DISCLOSURE
=================================================
PURSUANT TO RECENTLY-ENACTED US TREASURY DEPT. REGULATIONS, WE ARE NOW REQUIRED TO ADVISE YOU THAT, UNLESS OTHERWISE EXPRESSLY INDICATED, ANY FEDERAL TAX ADVICE CONTAINED IN THIS COMMUNICATION, INCLUDING ATTACHMENTS AND ENCLOSURES, IS NOT INTENDED OR WRITTEN TO BE USED, AND MAY NOT BE USED, FOR THE PURPOSE OF (i) AVOIDING TAX-RELATED PENALTIES UNDER THE INTERNAL REVENUE CODE OR (ii) PROMOTING, MARKETING OR RECOMMENDING TO ANOTHER PARTY ANY TAX-RELATED MATTERS ADDRESSED HEREIN.

=================================================
PRIVILEGED AND CONFIDENTIALITY NOTICE
=================================================
THIS ELECTRONIC TRANSMISSION (AND/OR THE DOCUMENTS ACCOMPANYING IT) MAY CONTAIN CONFIDENTIAL INFORMATION

BELONGING TO THE SENDER WHICH IS PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE. THE INFORMATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE, COPYING, DISTRIBUTION, ELECTRONIC STORING, OR THE TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS OF THIS INFORMATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE IMMEDIATELY NOTIFY THE SENDER BY REPLY E-MAIL AND IMMEDIATELY DELETE THIS RECORD FROM YOUR COMPUTER SYSTEM.
=====================================================

12/22/2006

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

----------------------------------------------------------------

**SOFTWARE FOR MOVING, INC.**, a New York Corporation,

                **Plaintiff,**

          **v.**

**LA ROSA DEL MONTE EXPRESS, INC.**, a New York Corporation, and **LA ROSA DEL MONTE  EXPRESS (CHICAGO), LLC**, an Illinois Limited Liability Company,

                **Defendants.**

----------------------------------------------------------------

**CASE NUMBER:  07 C 1839**

**Assigned Judge: Gottschall**

**Designated Magistrate Judge: Cole**

## <u>MOTION FOR LEAVE TO FILE BRIEF IN EXCESS OF 15 PAGES</u>

Defendants, LA ROSA DEL MONTE EXPRESS, INC. and LA ROSA DEL MONTE EXPRESS (CHICAGO), INC. (hereinafter collectively referred to as "Defendants"), by their attorneys Harrington, Ocko & Monk, LLP and Lord, Bissell & Brook LLP, respectfully move, pursuant to Northern District of Illinois Local Rule 7.1, for leave to file a brief in excess of 15 pages.  In support of their motion, Defendants state as follows:

1.     Plaintiff, SOFTWARE FOR MOVING, INC. ("SFM"), has filed a four-count Amended Complaint (with several large exhibits) against two separate Defendants that purports to allege violations of federal copyright law, as well as breaches of contracts.

2.     Plaintiff's Amended Complaint seeks unspecified damages along with attorney's fees and costs pursuant to the Copyright Act §§504-505, among other things.

3.     Plaintiff has also filed a Motion to Stay the ongoing Arbitration between SFM and La Rosa, initiated by La Rosa on February 12, 2007; the parties are presently engaged in

discovery in that Arbitration. Plaintiff has also filed a Motion to Strike the Declaration of John T.A. Rosenthal; said Declaration was filed in support of Defendants' prior Motion to Dismiss Plaintiff's Complaint for lack of subject matter jurisdiction, or in the alternative, to stay the action or transfer the action to the Southern District of New York. Defendants' prior Motion was ruled as moot when the Court granted Plaintiff's Motion to Amend its Complaint. See attached hereto as Exhibit "A" a true and correct copy of the Court's June 21, 2007 Order.

4.      In order for the Defendants to address the variety of issues and contentions presented by Plaintiff's Amended Complaint, Plaintiff's Motion to Stay Arbitration, and Plaintiff's Motion to Strike Portions of the Declaration of John T.A. Rosenthal in a single document, the Defendants find it necessary to prepare a memorandum of law of 25-pages in length in support of their Motion to Dismiss Plaintiff's Amended Complaint, or in the alternative, to transfer the action, in addition to Defendants' opposition to Plaintiff's Motion to Stay Arbitration, Defendants' opposition to Plaintiff's Motion to Strike Declaration of John T.A. Rosenthal, and Defendants' Cross-Motion to Stay this action.

5.      By preparing a comprehensive memorandum, Defendants and their counsel will be able to avoid burdening the Court with four (4) separate Memorandums of Law, and can present the Court with a single document that will potentially dispose of, and/or address, all of the issues currently in dispute between the parties at this time.

6.      Accordingly, because of the complexity of the issues presented in this matter, and in the interest of allowing the two Defendants to file a single, comprehensive memorandum of law, this Court should grant Defendants leave to file a brief of 25-pages in length in excess of the page limit allowed under Rule 7.1.

WHEREFORE, Defendants pray that the Court grant them leave to file their Memorandum of Law in Support of their motion to dismiss Plaintiff's Amended Compliant, or in the alternative, to transfer this action.

Dated: July 3, 2007

Respectfully submitted,

LA ROSA DEL MONTE EXPRESS, INC.
and
LA ROSE DEL MONTE EXPRESS
(CHICAGO), LLP

By:_____ s/ David M. Dolendi_____
David M. Dolendi, Esq.
LORD, BISSELL & BROOK LLP
111 S. Wacker
Chicago, IL 60606
Tel. (312) 443.0202
Fax: (312) 896.6202

Kevin Harrington, Esq.
John T.A. Rosenthal, Esq.
HARRINGTON, OCKO & MONK,
LLP
81 Main Street, Suite 215
White Plains, NY 10601
Tel: (914) 686-4800
Fax: (914) 686-4824

*Counsel for Defendants*

CHI1 1366448v1

# EXHIBIT "A"

**(June 21, 2007 Court Order)**

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 3.0
### Eastern Division

Software For Moving, Inc.

<div style="text-align:center">Plaintiff,</div>

v.

Case No.: 1:07–cv–01839

Honorable Joan B. Gottschall

La Rosa Del Monte Express, Inc., et al.

<div style="text-align:center">Defendant.</div>

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Thursday, June 21, 2007:

     MINUTE entry before Judge Joan B. Gottschall : Motion hearing held on 6/21/2007. Plaintiff, Software for Moving, Inc. motion for leave to file first amended complaint at law [24] is granted. Defendants to answer or otherwise plead on or before 7/23/2007. Response is due by 8/6/2007. Reply in support is due by 8/13/2007. Motion by Defendants La Rosa Del Monte Express, Inc., La Rosa Del Monte Express (Chicago), LLC to dismiss Plaintiff's Complaint [10] is denied as moot. Briefing schedule as to Plaintiff's motion to strike portions of the declaration of John T.A. Rosenthal (Document 12), [26] and Plaintiff's motion to stay arbitration [25] is as follows: Responses due by 7/23/2007. Replies due by 8/6/2007. Ruling by mail. Mailed notice(rj, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

-----------------------------------------------------------

**SOFTWARE FOR MOVING, INC.,** a New York Corporation,

                    **Plaintiff,**

          **v.**

**LA ROSA DEL MONTE EXPRESS, INC.,** a New York Corporation, and **LA ROSA DEL MONTE  EXPRESS (CHICAGO), LLC,** an Illinois Limited Liability Company,

                    **Defendants.**

-----------------------------------------------------------

**CASE NUMBER:  07 C 1839**

**Assigned Judge: Gottschall**

**Designated
Magistrate Judge: Cole**

## NOTICE OF MOTION

To:    Francis J. Leyhane, III, Esq.
Leyhane & Associates, Ltd.
205 West Randolph Street
Suite 1320
Chicago, IL 60606

PLEASE TAKE NOTICE that on <u>**July 12, 2007, at 9:30 a.m.,**</u> or as soon thereafter as the parties may be heard, the undersigned will appear before the Honorable Judge Joan B. Gottschall, or any judge sitting in her stead, in the courtroom normally occupied by her, in the United States District Courthouse at 219 South Dearborn Street, Chicago, Illinois, and then and there present **DEFENDANTS' MOTION FOR LEAVE TO FILE BRIEF IN EXCESS OF 15 PAGES** in support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint, or in the alternative transfer this action to the Southern District of New York, Defendants' Opposition to Plaintiff's Motion to Stay Arbitration, Defendants' Opposition to Plaintiff's Motion to Strike the Declaration of John T.A. Rosenthal, and Defendants' Cross-motion to Stay this action and/or Compel Arbitration, a copy of which has been filed with the Clerk of the Court.

Dated: July 3, 2007

Respectfully submitted,

LA ROSA DEL MONTE EXPRESS, INC.
and
LA ROSE DEL MONTE EXPRESS
CHICAGO), LLP


By:_____ s/ David M. Dolendi_____
    David M. Dolendi, Esq.
    LORD, BISSELL & BROOK LLP
    111 S. Wacker
    Chicago, IL 60606
    Tel. (312) 443.0202
    Fax: (312) 896.6202

    Kevin Harrington, Esq.
    John T.A. Rosenthal, Esq.
    HARRINGTON, OCKO & MONK,
    LLP
    81 Main Street, Suite 215
    White Plains, NY 10601
    Tel: (914) 686-4800
    Fax: (914) 686-4824

    *Counsel for Defendants*

## CERTIFICATE OF SERVICE

The undersigned herby certifies that the foregoing **NOTICE OF MOTION** was served on the following:

| | |
|---|---|
| Francis J. Leyhane, III, Esq.<br>Leyhane & Associates, Ltd.<br>205 West Randolph Street<br>Suite 1320<br>Chicago, IL 60606<br>leyhane329@aol.com | |

via electronic mail and U.S. Mail on this 3rd day of July, 2007.

    s/  David M. Dolendi
    David M. Dolendi

CHI1 1366472v1

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 3.0
### Eastern Division

Software For Moving, Inc.

                          Plaintiff,

v.                                                                  Case No.: 1:07–cv–01839
                                           Honorable Joan B. Gottschall

La Rosa Del Monte Express, Inc., et al.

                          Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Thursday, July 12, 2007:

        MINUTE entry before Judge Joan B. Gottschall :Motion by Defendants, La Rosa Del Monte Express, Inc. and La Rosa Del Monte Express (Chicago), Inc. for leave to file comprehensive memorandum of law in excess of 15 pages not to exceed 25 pages [31] is granted. Mailed notice(rj, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

-----------------------------------------------------------

SOFTWARE FOR MOVING, INC., a New
York Corporation,

                        **Plaintiff,**

                  **v.**

LA ROSA DEL MONTE EXPRESS, INC., a
New York Corporation, and LA ROSA DEL
MONTE  EXPRESS (CHICAGO), LLC, an
Illinois Limited Liability Company,

                        **Defendants.**

-----------------------------------------------------------

**CASE NUMBER:  07 C 1839**

**Judge Gottschall**

**Magistrate Judge Jeffrey Cole**

## <u>DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>

Defendants, LA ROSA DEL MONTE EXPRESS, INC. ("La Rosa") and LA ROSA DEL MONTE EXPRESS (CHICAGO), LLC ("La Rosa LLC", together with La Rosa, "Defendants"), by and through their attorneys, Lord, Bissell & Brook LLP and Harrington, Ocko & Monk, LLP, through the present motion, request this Court issue an Order dismissing the Amended Complaint of Plaintiff, SOFTWARE FOR MOVING, INC. ("SFM") for lack of subject matter jurisdiction.

If the Court denies the relief requested, Defendants submit that the Court should stay Plaintiff's claims against Defendants pending the resolution of the presently ongoing arbitration of La Rosa's claims against Plaintiff pursuant to the arbitration provision in the parties' March 3, 2005 Software Development & License Agreement ("2005 Software Agreement"), and March 3, 2005 Maintenance Agreement ("2005 Maintenance Agreement"), and to compel Plaintiff to arbitrate its claims with La Rosa and La Rosa LLC.  In the alternative, the Court should transfer Plaintiff's action to the Southern District of New York, where there is personal jurisdiction over all of the

parties to this action, and where all or almost all of the conduct giving rise to Plaintiff's claims actually took place.

The grounds for this motion to dismiss are more fully set forth in the accompanying memorandum of law, filed contemporaneously herewith and incorporated by reference herein.

Dated: July 23, 2007

Respectfully submitted,

LA ROSA DEL MONTE EXPRESS, INC. and
LA ROSE DEL MONTE EXPRESS
(CHICAGO), LLP


By:_____s/ David M. Dolendi_____
      Catalina J. Sugayan, Esq.
      David M. Dolendi, Esq.
      LORD, BISSELL & BROOK LLP
      111 S. Wacker
      Chicago, IL 60606
      Tel. (312) 443.0202
      Fax: (312) 896.6202

      Kevin Harrington, Esq.
      John T.A. Rosenthal, Esq.
      HARRINGTON, OCKO & MONK, LLP
      81 Main Street, Suite 215
      White Plains, NY  10601
      Tel: (914) 686-4800
      Fax: (914) 686-4824

      Counsel for Defendants

## CERTIFICATE OF SERVICE

The undersigned  herby certifies that the foregoing **MOTION TO DISMISS**, was served on the following:

| | |
|---|---|
| Francis J. Leyhane, III, Esq.<br>Leyhane & Associates, Ltd.<br>205 West Randolph Street<br>Suite 1320<br>Chicago, IL 60606 | |

via electronic mail and U.S. Mail on this 23rd day of July, 2007.


   s/  David M. Dolendi
David M. Dolendi

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

-------------------------------------------------------------x

SOFTWARE FOR MOVING, INC., a New
York Corporation,

     **Plaintiff,**

     **v.**

LA ROSA DEL MONTE EXPRESS, INC., a
New York Corporation, and LA ROSA DEL
MONTE  EXPRESS (CHICAGO), LLC, an
Illinois Limited Liability Company,

     **Defendants.**

-------------------------------------------------------------x

**CASE NUMBER:  07 C 1839**

**Assigned Judge: Gottschall**

**Magistrate Judge: Cole**

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO DISMISS THE PLAINTIFF'S AMENDED COMPLAINT OR, IN THE
ALTERNATIVE, TO TRANSFER THE ACTION TO THE SOUTHERN
DISTRICT OF NEW YORK, DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION TO STAY ARBITRATION, DEFENDANTS' OPPOSITION TO
STRIKE DECLARATION OF JOHN T.A. ROSENTHAL, AND DEFENDANTS'
CROSS-MOTION TO STAY THIS ACTION AND/OR COMPEL ARBITRATION**

DAVID M. DOLENDI
LORD, BISSELL & BROOK LLP
111 S. Wacker
Chicago, IL 60606
Tel. (312) 443-0202   Fax: (312) 896-6202
ddolendi@lordbissell.com

KEVIN HARRINGTON
JOHN T.A. ROSENTHAL
(Pending admission pro hac vice)
HARRINGTON, OCKO & MONK, LLP
81 Main Street, Suite 215
White Plains, NY  10601
Tel: (914) 686-4800   Fax: (914) 686-4824
KHarrington@homlegal.com
JRosenthal@homlegal.com

*Attorneys for Defendants, La Rosa Del Monte
Express, Inc. and La Rosa Del Monte Express
(Chicago), LLC*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES………………………………………………………………-iii-

INTRODUCTION ..........................................................................................................1

I.  THE ALLEGATIONS OF THE AMENDED COMPLAINT ...................................3

    A.  The 2005 Software Agreement.........................................................................3

    B.  The 2005 Maintenance Agreement. ..................................................................5

    C.  La Rosa And SFM Dispute Whether SFM Fulfilled All Of Its Obligations Under The 2005 Software Agreement....................................................................6

    D.  SFM Fails To Make Delivery Of All Deliverables. ...........................................6

    E.  La Rosa Initiates An Arbitration Under The 2005 Software Agreement...................7

ARGUMENT .................................................................................................................8

I.  PLAINTIFF'S AMENDED COMPLAINT FAILS TO ALLEGE FACTS JUSTIFYING SUBJECT MATTER JURISDICTION .......................................................8

II.  THE COURT SHOULD STAY PLAINTIFF'S CLAIMS AGAINST LA ROSA AND LA ROSA CHICAGO AND COMPEL SFM TO ARBITRATE SUCH CLAIMS .......11

    A.  The Court Should Stay Plaintiff's Action and/or Compel Plaintiff to Arbitrate............11

    B.  Plaintiff Should Be Estopped From Avoiding Arbitration Of Its Claims Against La Rosa Chicago........................................................................................12

III.  THE COURT SHOULD DENY PLAINTIFF'S MOTION TO STAY ...........................13

    A.  SFM Is Required To Arbitrate This Dispute Even If It Did Not Execute The 2005 Agreements............................................................................................14

    B.  Plaintiff Should Be Judicially Estopped From Asserting that the 2005 Agreements Contain Forged Signatures. ............................................................................15

    C.  Plaintiff Has Waived Its Right To Litigate By Participating In The Arbitration. ..........19

    D.  Plaintiff Has Brought Its Motion To Stay The Arbitration In The Wrong Venue. ........20

Page

IV.   THE COURT SHOULD TRANSFER PLAINTIFF'S ACTION TO THE SOUTHERN
      DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. §1404(a) ................................ 21

CONCLUSION ......................................................................................................................... 25

# TABLE OF AUTHORITIES

<div align="right">Page</div>

## Federal Cases

*737 North Michigan Avenue Investors, LLC v. The Neiman Marcus Group, Inc.,* 2007 WL 1074905, at *3 (N.D. Ill. April 5, 2007)........................................................................................................11

*Adventus Americas, Inc. v. Innovative Envir. Tech., Inc.,* 2007 WL 704938, at *8 (N.D. Ill. March 5, 2007)........................................................................................................................................21

*Affymax, Inc. v. Johnson & Johnson,* 420 F.Supp.2d 876, 881 (N.D. Ill. 2006)................................13

*Althin CD Medical, Inc. v. West Suburban Kidney, S.C.,* 874 F.Supp. 837, 839 (N.D. Ill. 1994).......8

*Brooks v. Bates,* 781 F.Supp. 202, 205-206 (S.D.N.Y. 1991)...........................................................10

*Budget v. Water Tower Assoc.,* 81 F.3d 729 (7th Cir. 1996) ...............................................................9

*CFTC v. First National,* 565 F.Supp. 30, 32 (N.D.Ill. 1983) ............................................................22

*Dole v. Diversified,* 1990 WL 165329, at *8 (N.D.Ill. Oct. 23, 1990) ..............................................22

*Foamation, Inc. v. Wedeward Ent.,* 970 F.Supp. 676, 683 (E.D. Wis. 1997) .....................................9

*Fyrnetics Ltd. v. Quality Corp., Inc.,* 293 F.3d 1023, 1031 (7th Cir. 2002). ...................................11

*God's Battalion of Prayer Pedacostal Church, Inc. v. Miele Assoc., LLP,* 85 N.E.2d 1265, 6 N.Y.3d 371, 374 (N.Y. 2006) ..........................................................................................................14

*Grullon v. Vanacora,* 2002 WL 1553373 (N.D. Ill. July 15, 2002)......................................................9

*Hotel Constructors, Inc. v. Seagrave,* 543 F.Supp. 1048, 1051 (N.D.Ill. 1982).............................23

*J.L.M. Industry, Inc. v. Stolt-Nielson, S.A.,* 387 F.3d 163, 177-78 (2nd Cir. 2004) ...........................13

*Jarrard v. CDI Telecommunications, Inc.,* 408 F.3d 905 (7th Cir. 2005)..........................................16

*Johnston v. Arrow Fin. Serv., LLC,* 2006 WL 2710663, at *3 (N.D. Ill. September 15, 2006) ........11

*Kings v. Rice,* 16 F.3d 355, 357 (9th Cir. 1994)..................................................................................9

*Liberty Management & Construction, Ltd. v. Fifth Avenue & 66th Street Corp.,* 208 A.D.2d 73, 620 N.Y.S.2d 827, 830-31 (1st Dept. 1995) ..............................................................................15

*Matter of Cassidy,* 892 F.2d 637, 641 (7th Cir. 1990) ......................................................................16

*Mattson v. Gerry Wood Prod. Co.,* 1997 WL 158334, at *1 (N.D. Ill. March 31, 1997) .................21

*Maxit Designs, Inc. v. Covell, Inc.,* 2006 WL 2734366 (E.D. Cal. Sept. 25, 2006) .........................14

*Miller v. Flume,* 139 F.3d 1130, 1136 (7th Cir. 1998)......................................................................11

*Morgan v. Bill Kay Chrysler Plymouth,* 2002 WL 31133102, at *1 (N.D. Ill. July 17, 2002).........11

*Moses H. Cohen Mem. Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24-25 (1983)..........................11

*Orlando v. GP,* 2006 WL 2849866, *5 (E.D. Wis. Sept. 29, 2006) .................................................16

*Piaggio & C.S.P.A. v. Scooter Works USA, Inc.,* 1999 WL 674749, at *4 (N.D. Ill. August 23, 1999) ..............................................................................................................................................9

*Plotkin v. IP Access, Inc.,* 168 F.Supp.2d 899, 902 (N.D. Ill. 2001) ................................................22

*Professional Transportation, Inc. v. American Cas. Co. of Reading, Pennsylvania,* 2007 WL 30554, at *3 (S.D. Ind. Jan. 3, 2007)..................................................................................................21

*Reeves v. Tarvizian,* 351 F.2d 889, 890 (1st Cir. 1965) .....................................................................19

*Robert Risa Co. v. Cleveland Electric Illuminating Co.,* 1992 WL 358907, *3 (N.D.Ill. Nov. 24, 1992).............................................................................................................................................23

*Rudolph & Beer, LLP v. Roberts,* 260 A.D.2d 274, 688 N.Y.S.2d 553, 555 (1st Dept. 1999)...........14

*Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220 (1987)...............................................11

*Smullyan v. Sibjet S.A.,* 201 A.D.2d 335, 336 (1st Dept. 1994).........................................................19

*UAL Corp. v. Mesa Airlines, Inc.,* 88 F.Supp.2d 910, 912 (N.D. Ill. 2000) .....................................20

*Venture Assoc. Corp. v. Zenith P. Sys. Corp.,* 987 F.2d 429, 431 (7th Cir. 1993)..............................4

## State Cases

§§2, 3 and 4 of the FAA ..................................................................................... 12

§§3 and 4 of the FAA ....................................................................................... 12

§1404(a) ...................................................................................................21, 22, 23

§1404(a). ........................................................................................................... 22

§204(a) of the Copyright Act .......................................................................9, 10

§4 ................................................................................................................ passim

§4 of the Federal Arbitration Act ........................................................13, 20, 21

17 U.S.C. §204(a) .............................................................................................. 9

9 U.S.C. §2 ...................................................................................................... 11

Fed.R.Civ.P. 10(c) ............................................................................................ 4

Federal Arbitration Act ("FAA"), 9 U.S.C. §2 ............................................. 11

Rule 12(b)(1) of the Federal Rules of Civil Procedure .................................. 8

Defendants, LA ROSA DEL MONTE EXPRESS, INC. ("La Rosa") and LA ROSA DEL MONTE EXPRESS (CHICAGO), LLC ("La Rosa Chicago", together with La Rosa, "Defendants"), by and through their attorneys, Harrington, Ocko & Monk, LLP, through the present motion, request this Court issue an Order dismissing the Amended Complaint of Plaintiff, SOFTWARE FOR MOVING, INC. ("SFM") for lack of subject matter jurisdiction as Plaintiff has failed to allege facts sufficient to demonstrate Plaintiff has standing to bring a claim of infringement under the Copyright Act.

If the Court denies the relief requested, Defendants request that the Court should deny Plaintiff's motion to stay the pending arbitration, and grant Defendants' cross-motion to stay Plaintiff's claims against Defendants pending the resolution of the presently ongoing Arbitration and/or compel Plaintiff to arbitrate this dispute; an Arbitration in New York between La Rosa and SFM is being conducted pursuant to the arbitration provision in the parties' March 3, 2005 Software Development & License Agreement ("2005 Software Agreement"), and March 3, 2005 Maintenance Agreement ("2005 Maintenance Agreement", collectively the "2005 Agreements"). In the alternative, the Court should transfer Plaintiff's action to the Southern District of New York, where there is personal jurisdiction over all of the parties to this action, where all or almost all of the conduct giving rise to Plaintiff's claims actually took place, and where all or almost all of the witnesses and evidence are located.

**<u>INTRODUCTION</u>**

Plaintiff, through the filing of its forum shopping Amended Complaint, is attempting to use this Court as a means by which to circumvent its contractual obligation to arbitrate the present dispute between the parties in accordance with the 2005 Agreements entered into with La Rosa.  In fact, a New York arbitration is already ongoing between La Rosa and SFM through the American Arbitration Association ("AAA") regarding La Rosa's claims that SFM and Mr. Kogos (SFM"s

President) breached the 2005 Agreements and a prior 1999 Agreement by improperly obtaining approximately $383,250 in payments made by La Rosa to SFM, pursuant to those Agreements.

Despite Plaintiff's bald attempt to frustrate the ongoing arbitration by filing this action in a distant and inconvenient forum, Plaintiff's Amended Complaint must be dismissed for lack of subject matter jurisdiction; Plaintiff has failed to allege facts sufficient to show it is the proper owner of the copyright registration for the software upon which its copyright infringement claim is predicated.  Without subject matter jurisdiction over Plaintiff's copyright claim, the Court cannot retain subject matter jurisdiction over Plaintiff's remaining claims because there is a lack of complete diversity; Plaintiff is a New York corporation with its principal place of business in New York, as is Defendant La Rosa Del Monte Express.

If the Court were to retain jurisdiction, the Court should grant Defendants' Cross-Motion and stay Plaintiff's action and/or compel Plaintiff to arbitrate this dispute in the proper forum; namely, before an arbitrator in New York City pursuant to the arbitration clauses in the parties' 2005 Agreements.

Finally, if the Court does not dismiss Plaintiff's action for lack of subject matter jurisdiction, or stay this action pending the arbitration, the Court should transfer the action to the Southern District of New York as there is no material aspect of the parties' conduct that in any way touches the Northern District of Illinois.  Indeed, all the evidence and critical witnesses (party and non-party) are located in New York City or within the subpoena power of the Federal Court in the Southern District of New York, not this Court.  For these reasons and those more fully described below, the Court should grant Defendants' motion and cross-motion in their entirety, and deny Plaintiff's motions to stay the Arbitration and strike the Declaration of John T.A. Rosenthal.

## I.    THE ALLEGATIONS OF THE AMENDED COMPLAINT

As Plaintiff concedes in its Amended Complaint, SFM is a New York corporation that develops and licenses software for moving companies.  According to the allegations in Plaintiff's Amended Complaint, La Rosa is also a New York corporation with its headquarters located in New York City.  Plaintiff's Amended Compl., Exh. "A", at ¶1.  La Rosa Chicago is an Illinois entity.  As alleged by Plaintiff in its Amended Complaint, SFM is purportedly a "successor in interest" to Safeguard Computer Services, Inc. ("Safeguard"), itself, a New York corporation.  Plaintiff's Amended Compl., at ¶1; Exh. "A", at ¶1.  Plaintiff alleges that Safeguard obtained copyright registration for the software that is the basis for Plaintiff's copyright infringement claim (and Federal subject matter jurisdiction).  Plaintiff does <u>not</u> allege a <u>written</u> <u>transfer</u> agreement between SFM and Safeguard concerning this software.  Plaintiff makes no factual allegations, such as a corporate merger or acquisition or otherwise, to support the totally conclusory claim that SFM is in fact a successor in interest.

In the Amended Complaint, SFM alleges that in or about 1999, La Rosa entered into a Software Licensing Agreement with Safeguard regarding a DOS/Windows-based program (Moving Manager for Windows) (the "1999 Software Agreement").  Plaintiff's Amended Compl., at ¶¶5-6, Exh. "A".  Plaintiff further alleges that SFM never had a contract with La Rosa Chicago regarding any software.  *Id.*

### A.    The 2005 Software Agreement.

In or about December 2004, La Rosa and SFM began negotiating an agreement whereby SFM would provide La Rosa with a web-based version of the Moving Manager Software program. *Id.*  SFM never executed a contract with La Rosa Chicago regarding this program.  SFM does not allege that it ever applied for or obtained a copyright registration with respect to the 2005 software.

On or about March 3, 2005, SFM entered into a written agreement with La Rosa to provide La Rosa with a web-based version of the Moving Manager software with certain modifications to

meet La Rosa's specific business needs ("2005 Software Agreement"). Plaintiff's Amended Compl., at ¶8; Exh. "B"; *see also* Declaration of Hiram Rodriguez ("Rodriguez Dec."), at ¶3; Declaration of John T.A. Rosenthal ("Rosenthal Dec."), Exh. "A", February 12, 2007 Demand for Arbitration by La Rosa ("Arbitration Demand"), Exh. "B", at 1. On or about March 3, 2005, SFM and La Rosa also entered into a Maintenance Agreement with regard to the new web-based software ("2005 Maintenance Agreement"). Rodriguez Dec.; Rosenthal Dec., Arbitration Demand, Exh. "C".[1]

The terms of the 2005 Software Agreement provided that La Rosa was to pay SFM $190,000 for development and delivery of the web-based software, and $105,000 as a license for use of the new software. Rodriguez Dec.; 2005 Software Agreement, at §§4.1, 6.6. Under the terms of the Agreement, La Rosa was to pay SFM in installments upon the successful completion of each phase of the new software's development plan, and upon actual delivery of deliverables. *Id.*, at §4.2. According to the 2005 Software Agreement, La Rosa was not required to pay the installment payments if La Rosa disputed the invoices, among other issues. *Id.* Furthermore, La Rosa was not required to pay SFM the final 10% of the development fee ($19,000) until all of the deliverables had been provided by SFM, and La Rosa had used the new software successfully for a period of ninety (90) days without failure (the "Trial Period"). Until completion of the Trial Period, La Rosa was not required to pay SFM the final installment payment. *Id.*

As part of the 2005 Software Agreement, and in order to continue its business, La Rosa agreed to pay SFM a maintenance fee of $58,000 to continue to use the DOS/Windows-based software until the new web-based software was fully delivered. Rodriguez Dec., Exh. "B"; 2005 Software Agreement, at §4.6. Under this provision, SFM was also required to maintain the current DOS/Windows-based software for La Rosa. *Id.*

---

[1]   The 2005 Agreements are incorporated by reference in Plaintiff's Pleadings. Amended Compl., at ¶¶8-10; Exhs. "B", "C". Fed.R.Civ.P. 10(c); *Venture Assoc. Corp. v. Zenith P. Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

Under the 2005 Software Agreement, either party could terminate the Agreement, in whole or in part, if the other party failed to perform a material obligation under the Agreement. Rodriguez Dec., 2005 Software Agreement, at §12.1. Furthermore, if the 2005 Software Agreement was terminated by La Rosa due to SFM's default or material breach, La Rosa had the right to demand SFM return all monies paid to SFM under the Agreement. *Id.*, at §12.2. In addition, if SFM defaulted or materially breached the 2005 Software Agreement, La Rosa had the right to continue use of the DOS/windows-based software. *Id.*, at §12.2. Even if the contract was terminated by SFM, La Rosa had the right to continue to use the 1999 software. *Id.,* at §12.4.

Under the express terms of the 2005 Software Agreement, SFM specifically agreed to arbitrate, "any dispute or controversy arising out of, relating to or in connection with the interpretation, validity, construction, performance, breach or termination of" the 2005 Software Agreement, and that such binding arbitration would be held exclusively in Westchester County, New York, in accordance with the AAA rules. Rodriguez Dec., 2005 Software Agreement, at §§13.2, 13.13.

### B.   The 2005 Maintenance Agreement.

Along with the 2005 Software License Agreement, SFM entered into a Maintenance Agreement with La Rosa concerning the new web-based software. Rodriguez Dec., Exh. "B", 2005 Maintenance Agreement. Under the 2005 Maintenance Agreement, SFM was required to maintain the new web-based software. In return, La Rosa was to pay SFM a yearly maintenance fee of $46,200 pursuant to Schedule "A" of the Maintenance Agreement. Plaintiff's Amended Compl., Exh. "C"; 2005 Maintenance Agreement, at p. 6. Payment of the maintenance fee was not to begin until completion of the Trial Period. *Id.,* at §3. In the event of a default by SFM for failure to perform its material obligations, La Rosa was entitled to withhold payment and maintenance fees owed until the default was cured, if at all. *Id.,* at §8. Under the terms of the Maintenance Agreement, SFM was required to arbitrate "any dispute or controversy arising out of, relating to, or

in connection with the interpretation, validity, construction, performance, breach or termination of this agreement" in Westchester County. *Id.,* at §18.

### C. La Rosa And SFM Dispute Whether SFM Fulfilled All Of Its Obligations Under The 2005 Software Agreement.

Pursuant to the 2005 Software Agreement, once the software was complete, La Rosa would test the software to confirm that it was indeed complete and fully functional. La Rosa was then not required to pay SFM a final installment payment until the <u>successful</u> conclusion of the Trial Period; some ninety (90) days later; and only if the Trial Period proved successful.

As Plaintiff admits, SFM and La Rosa entered into a "9/11 Agreement". This "9/11 Agreement" is an addendum to the last page of the 2005 Software Agreement. Plaintiff's Amended Compl, at ¶10; Exh. "B". Indeed, the "9/11 Agreement" is entitled, "<u>Addendum</u> to Software Development & License Agreement" and numbered page "17" of the 17-page 2005 Software Agreement. *Id.* (emphasis added). Furthermore, as admitted in Plaintiff's Amended Complaint, the maintenance payments that would be required of La Rosa for use of the new web-based software were described in the 2005 Maintenance Agreement executed by the parties. *Id.*, Exh. "C". The maintenance payments are described in detail in a document entitled "Maintenance Schedule A" numbered page "6" of the 6-page 2005 Maintenance Agreement.

### D. SFM Fails To Make Delivery Of All Deliverables.

In or about December 2006, the parties came to an impasse with regard to whether or not SFM had properly and timely completed all of its obligations under the 2005 Agreements, and whether SFM was entitled to all of the development, license or maintenance fees under these Agreements. Plaintiff's Amended Compl., at ¶13; Exhs. "E" and "F". Plaintiff concedes that La Rosa has already paid SFM $242,500 under the parties' Agreements. Indeed, La Rosa was not required to make payments in that high an amount under the terms of the 2005 Agreements. *Id.*, at p. 7, ¶11. Since December 2006, Plaintiff has taken actions that have precluded La Rosa from using

the web-based software, all the while retaining $242,500 paid by La Rosa to SFM for Development and use of such software.

### E. La Rosa Initiates An Arbitration Under The 2005 Software Agreement.

Pursuant to §13.12 of the 2005 Software Agreement, La Rosa initiated a Demand for Arbitration on or about February 12, 2007 with the American Arbitration Association.  Rosenthal Dec., Exh. "A".  In its Demand for Arbitration, La Rosa asserted various claims against SFM and its President Shlomo Kogos, including breach of contract, unjust enrichment, tortious interference with business advantage, and civil conspiracy.  *Id.*  La Rosa's Demand for Arbitration was served on SFM and Shlomo Kogos at SFM's office address as set forth in the 2005 Software Agreement, as well as on counsel, Philip Zukowsky.  Rosenthal Dec., Exh. "B".  Mr. Zukowsky was served with the Demand pursuant to his previous request.[2]

On or about February 21, 2007, the AAA issued a letter to counsel for La Rosa and counsel for SFM regarding La Rosa's Demand for Arbitration confirming that SFM and Mr. Kogos had until March 8, 2007 to answer the Demand.  Rosenthal Dec., Exh. "C".

On or about February 27, 2007, Philip A. Zukowsky, counsel for SFM and Mr. Kogos, sent a letter to the AAA concerning the arbitration.  Mr. Zukowsky objected to jurisdiction by the AAA over SFM or its President due to alleged forgery of Mr. Kogos' signature on all the 2005 Agreements.  Mr. Zukowsky indicated, however, that SFM and Mr. Kogos would proceed with the arbitration as long as "the arbitrator will first focus on the jurisdiction issue".  *Id.*, Exh. D".  On March 2, 2007, counsel for La Rosa submitted a letter to the AAA disputing the allegations contained in Mr. Zukowsky's February 26, 27, 2007 letters.  *Id.*, Exh. "E". On March 6, 2007, counsel for La Rosa and counsel for SFM (Mr. Zukowsky) participated in a conference call with

---

[2]  Mr. Zukowsky disingenuously implies that SFM was not properly served with a copy of La Rosa's Arbitration Demand.  Zukowsky Dec., at ¶15.  First, La Rosa properly served the Demand on Mr. Zukowsky, as counsel for SFM pursuant to his request that "all correspondence to my client should be sent through me".  Zukowsky Dec., Exh. PZ3.  In addition, Mr. Zukowsky and Mr. Lehayne have refused to provide SFM's or Mr. Kogos' present addresses  to counsel for La Rosa despite numerous requests.  Rosenthal Dec., at ¶7.

Ms. Claxton of AAA.  At that time, Ms. Claxton indicated that SFM had until March 16th in which to file a response to the Demand.  *Id.*, at ¶¶9, 10, Exh. "F".

On or about March 16, 2007, SFM and Mr. Kogos (through Mr. Zukowsky) filed an objection to jurisdiction with AAA with respect to the Demand.  *Id.*, Exh. "G".  On or about March 21, 2007, counsel for La Rosa filed a response to Mr. Zukowsky's March 16, 2007 objection.  *Id.*, Exh. "H".  In its response, counsel for La Rosa reiterated its opinion that jurisdiction was an issue for the arbitrator to decide pursuant to AAA Rule 7(a)-(c).  On or about March 22, 2007, the AAA sent counsel for SFM and La Rosa a letter indicating that AAA had adopted La Rosa's position, but would not rule on the issue of forgery at that time.  *Id.*, Exh. "I".  On or about April 16, 2007, AAA appointed Richard S. Mandel as the arbitrator for this matter, and set forth dates for a conference call.  *Id.*, Exh. "J".  Subsequently, counsel for the parties have participated in two conference calls with Arbitrator Mandel, and Arbitrator Mandel has issued a discovery order.  *Id.*, ¶¶18-22, Exhs. "K" through "O".

## ARGUMENT

## I.   PLAINTIFF'S AMENDED COMPLAINT FAILS TO ALLEGE FACTS JUSTIFYING SUBJECT MATTER JURISDICTION

As a means by which to circumvent its contractual obligation to arbitrate this dispute with La Rosa, SFM has filed this Amended Complaint in a distant, inconvenient forum alleging copyright infringement (among other state law causes of action) against La Rosa and La Rosa Chicago.  The allegations in Plaintiff's Amended Complaint are clearly insufficient for this Court to exercise subject matter jurisdiction over Plaintiff's copyright claim, and the Court must dismiss Plaintiff's Amended Complaint.

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a Court must dismiss an action when the Court determines that it lacks subject matter jurisdiction.  Fed.R.Civ.P. 12(b)(1); *Althin CD Medical, Inc. v. West Suburban Kidney, S.C.*, 874 F.Supp. 837, 839 (N.D. Ill. 1994).  When a

party raises subject matter jurisdiction as grounds for dismissal, the Court should consider the Rule 12(b)(1) challenge first, as a dismissal under this rule would moot all other challenges. *Id.* When deciding a motion to dismiss based on Rule 12(b)(1), the Court is not bound to accept as true allegations of jurisdiction where a party properly raises factual questions as to jurisdiction. *Id.* Moreover, the Court may look beyond the jurisdictional allegations in the Complaint to examine any evidence submitted to determine if jurisdiction exists. *Id.* Plaintiff bears the burden of establishing the existence of subject matter jurisdiction. *Grullon v. Vanacora*, 2002 WL 1553373 (N.D. Ill. July 15, 2002). Plaintiff has clearly failed to meet this burden.

In order to properly state a claim of copyright infringement, a complaint must contain allegations of ownership, registration and infringement. *Piaggio & C.S.P.A. v. Scooter Works USA, Inc.,* 1999 WL 674749, at *4 (N.D. Ill. August 23, 1999). A plaintiff must allege and show that if it is not the author of copyright registered material, that it has a proprietary right to such material through a change of title in order to have standing to sue under the Copyright Act. *Foamation, Inc. v. Wedeward Ent.*, 970 F.Supp. 676, 683 (E.D. Wis. 1997). Furthermore, pursuant to §204(a) of the Copyright Act, any transfer of ownership of a copyright <u>is</u> <u>not</u> <u>valid</u> unless the instrument of conveyance of the transfer is in <u>writing</u> and signed by the owner. *Id.*; 17 U.S.C. §204(a); *Budget v. Water Tower Assoc.*, 81 F.3d 729 (7th Cir. 1996). Without ownership, a party has no standing to bring a copyright claim. *Althin*, 874 F.Supp. at 839-42. Courts are loath to allow purported transferees of copyright ownership rights to obtain after-the-fact written transfer agreements when there is no indication that the transferor and transferee negotiated such agreement before litigation ensued. *Budget*, 81 F.3d at 733; *Kings v. Rice*, 16 F.3d 355, 357 (9th Cir. 1994).

SFM has not, and cannot, allege it registered the copyright at issue. Rosenthal Dec., Exhs. "P" and "Q". Nor has SFM alleged a <u>proper</u> transfer of the copyright at issue through a <u>written</u> conveyance from Safeguard to SFM. Amended Compl., at ¶1. Indeed, SFM's President has

admitted that <u>no</u> written conveyance between Safeguard and SFM concerning this software ever occurred.  Declaration of Shlomo Kogos ("Kogos Dec."), at ¶8.  Furthermore, Plaintiff cannot allege a prior negotiation or agreement between Safeguard and SFM that ownership of the copyright at issue would be transferred; SFM's President, Shlomo Kogos, has specifically stated that SFM purportedly obtained such rights as "successor" in interest to Safeguard.  *Id.*, at ¶8; Amended Compl., at ¶1. No facts are provided to support the totally conclusory allegation that SFM is a "successor in interest" to Safeguard.  Indeed, absent a <u>written</u> document transferring rights from Safeguard to SFM as a "successor in interest", the law does not recognize such a transfer.

Nor does Plaintiff's conduct fall into the slim exception to the written conveyance requirement contained in §204(a) of the Copyright Act; transfer by operation of law.  Courts have interpreted the phrase transfer of ownership by "operation of law" as being very narrow in scope, applying to the transfer of assets from a dissolving corporation, a merger between two corporations, or bankruptcy.  *See Brooks v. Bates*, 781 F.Supp. 202, 205-206 (S.D.N.Y. 1991).  SFM conspicuously fails to allege either a dissolution, merger or bankruptcy by Safeguard.

Here, there was no transfer of ownership of the software at issue by operation of law, nor can Plaintiff so allege.  Again, according to SFM's own President, the corporate owner of the copyright, Safeguard, did not dissolve, Safeguard did not merge with SFM and no bankruptcy took place such that Safeguard's ownership of the copyrighted software transferred by operation of the law to SFM.  Indeed, Kogos' Declaration specifically precludes SFM from arguing or alleging that a transfer of ownership by operation of law ever took place.  *See* Kogos Dec., ¶8; Rosenthal Dec., Exh. "P".  Thus, Plaintiff has no standing to bring claims of copyright infringement under the Copyright Act, has failed to carry its burden to establish proper subject matter jurisdiction through the allegations in its Amended Complaint, and the Court should dismiss this action.

## II. THE COURT SHOULD STAY PLAINTIFF'S CLAIMS AGAINST LA ROSA AND LA ROSA CHICAGO AND COMPEL SFM TO ARBITRATE SUCH CLAIMS

Having entered into not one, but two, agreements with mandatory arbitration provisions, and having already engaged in ongoing arbitration with La Rosa, Plaintiff is attempting to utilize this Court to do an end run around its contractual obligations to arbitrate this dispute. The Court should not countenance such conduct by SFM.

### A. The Court Should Stay Plaintiff's Action and/or Compel Plaintiff to Arbitrate.

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §2, "a written provision in any contract evidencing the transaction involving commerce to settle a controversy thereafter arising out of such contract or transaction shall be valid, irrevocable and enforceable, ...." 9 U.S.C. §2. The FAA embodies the Federal policy favoring arbitration. *See Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220 (1987); *737 North Michigan Avenue Investors, LLC v. The Neiman Marcus Group, Inc.,* 2007 WL 1074905, at *3 (N.D. Ill. April 5, 2007). A court has little discretion in this area as the FAA mandates that a District Court "shall direct the parties to proceed to arbitration on issues as to which an arbitration [agreement] has been signed." *Johnston v. Arrow Fin. Serv., LLC,* 2006 WL 2710663, at *3 (N.D. Ill. September 15, 2006).

Before granting a motion to stay and/or compel arbitration, a court must resolve two threshold questions: (1) whether the parties entered into a valid and enforceable agreement to arbitrate; and if so, (2) whether the claims arising out of the present dispute fall within the scope of the claims they agreed to arbitrate. *Morgan v. Bill Kay Chrysler Plymouth,* 2002 WL 31133102, at *1 (N.D. Ill. July 17, 2002). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cohen Mem. Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24-25 (1983); *Miller v. Flume,* 139 F.3d 1130, 1136 (7th Cir. 1998); *Johnson,* 2006 WL 2710663, at *3. Indeed, broad arbitration provisions necessarily create a presumption of arbitrability. *Fyrnetics Ltd. v. Quality Corp., Inc.,* 293 F.3d 1023, 1031 (7th Cir. 2002).

Pursuant to §§3 and 4 of the FAA, a United States District Court may issue an order to stay judicial proceedings and compel arbitration if a party refuses to arbitrate despite having entered into a contract containing an arbitration provision. FAA §§3, 4. The party moving to compel arbitration under the FAA must show: (1) the existence of a written agreement to arbitrate, (2) a dispute within the scope of the arbitration provision, and (3) a refusal to arbitrate by the other party. *737 North Michigan,* 2007 WL 1074905, at *3.

La Rosa has demonstrated all the prerequisites required for this Court to stay Plaintiff's action and compel SFM to arbitrate this dispute. As clearly indicated in the 2005 Agreements, SFM is required to arbitrate all disputes arising out of those agreements with regard to both the 2005 web-based software, as well as any alleged continued use by La Rosa of the 1999 DOS/Windows-based software. Rosenthal Dec., Exh. "A", 2005 Software Agreement, §13; 2005 Maintenance Agreement, §18. Plaintiff's claims in its present action regarding La Rosa's alleged use of the 1999 software and claims for payment with regard to the 1999 and 2005 software are clearly covered by §§4.4, 12.1, 12.2 and 12.4 of the 2005 Software Agreement. Indeed, Plaintiff's claim that La Rosa and La Rosa Chicago do not have a license to use the 1999 Windows-based software is also covered by terms in the 2005 Software Agreement.

Therefore, pursuant to the express terms of the 2005 Agreements, and in accordance with §§2, 3 and 4 of the FAA, the Court should stay the present proceedings and/or compel SFM to arbitrate its present claims with La Rosa.

**B.** **Plaintiff Should Be Estopped From Avoiding Arbitration Of Its Claims Against La Rosa Chicago.**

Although La Rosa Chicago is not a signatory to the 2005 Agreements, SFM is estopped from avoiding arbitrating its claims against La Rosa Chicago because these claims are inextricably intertwined with SFM's claims against La Rosa, and are based on the 2005 Agreements.

While a party cannot ordinarily compel arbitration unless it is a party to a contract with an arbitration clause, the Seventh Circuit has recognized exceptions to this rule. *Affymax, Inc. v. Johnson & Johnson,* 420 F.Supp.2d 876, 881 (N.D. Ill. 2006); *Johnson,* 2006 WL 2710663, at *5. Under the Doctrine of Equitable Estoppel, a non-signatory can compel arbitration when a signatory's claims are grounded in or intertwined with the terms of the written agreement. *Id.* Furthermore, numerous courts have held that when claims by a signatory contain allegations of substantially interdependent misconduct by the non-signatory and one or more of the signatories, a signatory is estopped from denying the arbitrability of such claims with the non-signatory. *Id.; see also J.L.M. Industry, Inc. v. Stolt-Nielson, S.A.,* 387 F.3d 163, 177-78 (2nd Cir. 2004).

In this instance, SFM's conduct clearly falls within the Doctrine of Equitable Estoppel as to La Rosa Chicago because SFM's claims against La Rosa Chicago are based upon the 2005 Agreements and La Rosa's right to use the DOS/Windows-based software pursuant to those Agreements. Furthermore, Plaintiff's Amended Complaint essentially alleges interdependent and concerted conduct by La Rosa and La Rosa Chicago in alleged continuing use of the 1999 software. Plaintiff's Amended Compl., at ¶4. Indeed, but for SFM's contract with La Rosa, La Rosa Chicago would not have alleged access to the DOS/Windows software at issue. Plaintiff's Amended Compl., at ¶¶1, 4, 6. Thus, the Court should stay Plaintiff's action as to La Rosa Chicago, and compel SFM to arbitrate its claims with La Rosa Chicago.

### III.    THE COURT SHOULD DENY PLAINTIFF'S MOTION TO STAY

Plaintiff has moved this Court pursuant to §4 of the Federal Arbitration Act to stay the Arbitration presently ongoing between the parties in New York City. Plaintiff's motion fails because under New York contract law, it is required to arbitrate this dispute even if it did not execute the 2005 Agreements. Moreover, the Court should deny Plaintiff's motion because SFM should be judicially estopped from denying it signed the 2005 Agreements, SFM waived the right to

stay the Arbitration through participating in the Arbitration, and SFM has filed its motion to stay the Arbitration in an improper venue.

**A.  SFM Is Required To Arbitrate This Dispute Even If It Did Not Execute The 2005 Agreements.[3]**

SFM adamantly maintains that it is not required to arbitrate its dispute with La Rosa concerning the DOS/Windows-based software and new web-based Moving Manager Software because it allegedly did not execute the 2005 Agreements.  See Plaintiff's Motion to Stay Arbitration; Shlomo Dec.  As discussed below, the claim by Mr. Kogos is singularly unpersuasive. However, such signature by Mr. Kogos on the 2005 Agreements is unnecessary in order to require SFM to arbitrate this matter as SFM has evidenced its intent to be bound by the 2005 Agreements.

Under New York law, there is no requirement that a contract containing an arbitration provision be signed so long as there is other proof that the parties to the contract actually agreed to be bound by its provisions.  *God's Battalion of Prayer Pedacostal Church, Inc. v. Miele Assoc., LLP*, 85 N.E.2d 1265, 6 N.Y.3d 371, 374 (N.Y. 2006).  New York law requires a party to arbitrate even if alleged that the written agreement containing the arbitration provision was unsigned, and that there was a parallel oral agreement between the parties.  *Id.*, at 374, n.1.

To enforce an arbitration clause in an unsigned agreement, a party must simply show that the other party's conduct evidences intent to be bound by the agreement.  *Rudolph & Beer, LLP v. Roberts*, 260 A.D.2d 274, 688 N.Y.S.2d 553, 555 (1st Dept. 1999).  Furthermore, if there is no evidence that the parties acted inconsistently with the agreement, which contains the arbitration provision, a party will be required to arbitrate pursuant to that agreement.  *Id.; see also*, *Maxit Designs, Inc. v. Covell, Inc.*, 2006 WL 2734366 (E.D. Cal. Sept. 25, 2006).  Indeed, where work is performed in conformity with the contract documents, in accordance with the requirements of such

---

[3]   Plaintiff's motion to strike portions of the Declaration of John T.A. Rosenthal dated April 27, 2007 is moot, as the Declaration was filed in support of Defendants' original motion to dismiss which the Court mooted through its June 21, 2007 Order.  Furthermore, those portions of that Declaration objected to by Plaintiff are overcome by the Declaration of Hiram Rodriguez, who has personal knowledge of the 2005 Agreements.

documents, and a party has accepted the benefits of such contract, courts will not allow that party to then later assert that the contract's conditions do not apply.  *Liberty Management & Construction, Ltd. v. Fifth Avenue & 66th Street Corp.*, 208 A.D.2d 73, 620 N.Y.S.2d 827, 830-31 (1st Dept. 1995).

In this instance, it is clear that the parties agreed to the terms contained in the 2005 Agreements, that SFM acted in accordance with those requirements and in reliance on the provisions of the written agreement, and that SFM readily accepted the benefits of the Agreements: (1) Plaintiff admits spending almost two (2) years working on creating the web-based software for La Rosa's use; (2) SFM has admitted accepting $242,500 from La Rosa for allegedly conducting work on the new web-based Moving Manager Software; (3) Plaintiff has admitted executing not one, but two, agreements ("Addendum" and "Maintenance Schedule A") that clearly relate to and are part of the 2005 Agreements containing arbitration provisions; and (4) Plaintiff has not stated in this action that it did not agree to arbitrate, but rather, has only insisted that it did not execute the 2005 Agreements.  *See* Amended Compl., Count III, at ¶11, Exhs. "B" and "C"; Kogos Dec., Rodriguez Dec.  All of this evidences Plaintiff's ready and willing acceptance of the terms of the 2005 Agreements, even if those agreements were unsigned by Plaintiff as it alleges.  Indeed, as indicated by the Courts in New York, Plaintiff SFM should not be allowed to cherry pick those provisions of the 2005 Agreements that support its request for even more compensation, while attempting to preclude the Court from requiring it to arbitrate its dispute with La Rosa pursuant to provisions of those very same agreements.  Thus, Plaintiff must arbitrate its dispute with La Rosa.

**B.** **Plaintiff Should Be Judicially Estopped From Asserting that the 2005 Agreements Contain Forged Signatures.**

The entire basis for Plaintiff's motion to stay the pending Arbitration is the assertion that the signatures of Mr. Kogos on the 2005 Agreements are purportedly forged.  Plaintiff goes on to claim, however, that the signatures of Mr. Kogos on the "Addendum" and "Maintenance Schedule A" associated with the 2005 Agreements are not forged; Plaintiff cannot escape admitting to the

authenticity of such signatures now in this action, for without such signed documents, it could not assert claims for breach of contract without running afoul of the statute of frauds.  The Court should judicially estop Plaintiff from asserting that the signatures of Kogos on the 2005 Agreements are forged, while the signatures are on the "Addendum" and "Maintenance Schedule A" are not forged, because Plaintiff took <u>exactly</u> the <u>opposite</u> position in the Arbitration presently ongoing between the parties.

Judicial estoppel is a doctrine intended to prevent the perversion of the judicial process. *Matter of Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990).  It is to be applied where "intentional self-contradiction is being used," and to prevent litigants from playing fast and loose with the Courts. *Id.*  Where a party assumes a certain position in a legal proceeding, he may not thereafter simply assume a contrary position.  *Id.*  Indeed, where inconsistent positions by a litigant are clearly intended to delay, this is "exactly the kind of evil ... judicial estoppel is meant to avoid."  *Id.*

While no precise or rigid formula guides a Court's the application of judicial estoppel, *Jarrard v. CDI Telecommunications, Inc.*, 408 F.3d 905 (7th Cir. 2005), certain factors are relevant in deciding whether invocation of the doctrine may be appropriate: (1) a party's position must be clearly inconsistent with the position taken earlier; (2) the party prevailed in some sense on the basis of its earlier position so that judicial acceptance of the inconsistent position in a later proceeding would create the perception that either the first or the second court was mislead; (3) whether the party asserting the inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped; (4) whether operative facts remain the same in both cases. *Id.;* s*ee also, Orlando v. GP*, 2006 WL 2849866, *5 (E.D. Wis. Sept. 29, 2006).

In this instance, all the factors for the application of judicial estoppel are met.  Plaintiff has clearly taken inconsistent positions as to authenticity of the signatures on the "Addendum" and "Maintenance Schedule A" as between the Pleadings, moving papers and Declarations it has

16

submitted to this Court, and documents and arguments it has submitted to the AAA in the pending Arbitration in New York City. As described in the Rosenthal Declaration and the Declaration of Philip Zukowsky ("Zukowsky Dec."), on or about February 12, 2007, La Rosa served SFM and its counsel with a Demand for Arbitration regarding SFM's failure to timely and adequately complete and maintain the new web-based software, and SFM's improper retention of some $245,250 paid to SFM by La Rosa for this failed and incomplete software. Rosenthal Dec., Exh. "A"; Zukowsky Dec., ¶15. As part of the Demand, La Rosa included copies of the 2005 Agreements with the "Addendum" and "Maintenance Schedule A" attached. Rosenthal Dec., Exh. "A".

On or about February 26, 2007, Mr. Zukowsky wrote to counsel for La Rosa and Kimberly F. Claxton of the AAA asserting that the "'signatures' on the 2005 'Agreements' are obvious, and clumsy forgeries." Zukowsky Dec., Exh. "PZ4" at 1. In this letter, Mr. Zukowsky did not distinguish between the 2005 Agreements and the associated "Addendum" and "Maintenance Schedule A". Indeed, Mr. Zukowsky went on in this letter to state that "[a]dmittedly, the forgeries on the supposed March 3, 2005 Maintenance Agreement (Exh. C to your Demand for Arbitration) are more artful, but the signatures are no more valid than the phony scroll on the Software Development & License Agreement". Id., at 2 (emphasis added). The only way this statement by Mr. Zukowsky to the AAA makes sense is that Mr. Zukowsky is asserting on behalf of his client SFM that the signatures of Mr. Kogos on the 2005 Maintenance Agreement and associated "Maintenance Schedule A" are both forgeries. Rosenthal Dec., at ¶¶6-7.

In this present litigation, SFM has taken completely the opposite position, asserting now that signatures of Mr. Kogos on both the "Addendum" and "Maintenance Schedule A" are authentic. Kogos Dec., at ¶¶6 and 7. Indeed, the entire basis for Plaintiff's claim for breach of the purported 2005 oral agreement regarding the new web-based software hinges on the validity of the "Addendum" and "Maintenance Schedule A".

17

In addition, Mr. Zukowsky's assertion of forgeries on the 2005 Agreements including the "Addendum" and "Maintenance Schedule A" resulted in a modicum of success with the AAA; the AAA required La Rosa to submit a response to these factual assertions, ruled that the Arbitrator had jurisdiction over the forgery issue, but <u>declined</u> to issue a decision in La Rosa's favor on this issue. Zukowsky Dec., Exh. PZ5; Rosenthal Dec., at ¶13.

Furthermore, Plaintiff SFM's successful claim of forgery has already allowed it to derive an unfair advantage and impose an unfair detriment on La Rosa; Plaintiff has filed a forum shopping complaint in a far-off forum, and litigate this matter in Federal Court in Chicago, rather than arbitrate this matter in New York pursuant to the 2005 Agreements. This tactic by SFM has caused delay in the Arbitration, and caused unnecessary expense to La Rosa. Finally, <u>all</u> of the operative facts remain exactly the same in both the Arbitration and in this present litigation.

Plaintiff's assertion that the 2005 Agreements could not have been executed by the parties in March 2005 because Mr. Kogos purportedly obtained the e-mail address included in the Agreement at some later date, is wholly without merit. Mr. Kogos could have easily informed La Rosa during contract negotiations that he had this e-mail address or would obtain this e-mail address in the future, and then simply failed to get the e-mail address. Such lax and untimely conduct by SFM and Mr. Kogos appears to be a common theme of their business. *See* Zukowsky Dec., Exh. PZ3 dated January 12, 2007, in which Zukowsky discusses a willingness of SFM to agree to a 9/11 (Addendum) even though Kogos admits that such 9/11 (Addendum) was already executed some six months previously, and he had failed to inform his counsel of this critical fact. Mr. Kogos' alleged failure to have or obtain this e-mail address in no way casts doubt on the validity of the 2005 Agreements.

This Court should not countenance SFM's clear attempt at slight of hand in this matter, asserting to the AAA that every Kogos signature on the 2005 Agreements, including the

"Maintenance Schedule A", are forgeries, and then asserting in this litigation that the signatures on the "Addendum" and "Maintenance Schedule A" are <u>not</u> forgeries. This Court should therefore estop SFM from asserting that any of Kogos' signatures on the 2005 Agreements are forgeries, or, at a minimum, estop SFM from asserting that the Kogos signatures on the 2005 Maintenance Agreement and "Maintenance Schedule A" are forgeries. With Plaintiff being so estopped, under the arbitration provision in the 2005 Maintenance Agreement, SFM is required to arbitrate this dispute. Moreover, Kogos' claim of lack of familiarity with the 2005 Agreements intrinsically makes no sense, since the "Addendum" itself refers to the earlier Agreement and the page number matches with that Agreement.

### C. **Plaintiff Has Waived Its Right To Litigate By Participating In The Arbitration.**

Plaintiff asserts that it has not participated in the pending Arbitration, and therefore, has not waived its right to litigate this matter in Federal court. This position is undercut by Plaintiff's untimely and prejudicial delay in making a motion to stay the Arbitration, as well as the active participation in the Arbitration. *See* Rosenthal Dec., at ¶¶2-23; Zukowsky Dec.

Case law indicates that in instances in which a party objects to arbitration, a party may waive the right to a judicial determination of the dispute by actively participating in the arbitration without timely seeking a stay of such arbitration. *Smullyan v. Sibjet S.A.*, 201 A.D.2d 335, 336 (1st Dept. 1994); *Reeves v. Tarvizian*, 351 F.2d 889, 890 (1st Cir. 1965).

In this instance, Plaintiff failed for almost four (4) months to seek a stay of the Arbitration presently pending between SFM and La Rosa in New York City, even despite a suggestion by the AAA to do so. Rosenthal Dec., Exh. "I". Moreover, rather than immediately move in Federal Court in the Southern District of New York for a declaration that the 2005 Agreements are invalid, or to stay the Arbitration, Plaintiff filed the present action in a distant and inconvenient forum almost two (2) months after the New York Arbitration had commenced. Indeed, in a move

19

apparently calculated to hide the pending Arbitration from the Court, Plaintiff failed to mention the pending Arbitration in its Complaint, and failed to immediately move for a stay.

Furthermore, although objecting to the jurisdiction of the AAA in the Arbitration, SFM has participated in the Arbitration including: (1) requesting that the AAA hold an emergency Arbitration session to determine the arbitrability of the claims between La Rosa and SFM; (2) participating in at least two conference calls with the Arbitrator during which counsel for SFM agreed to a discovery schedule in the Arbitration, and asserted that SFM would need to have broad and almost limitless discovery of La Rosa in the United States and in Puerto Rico in order to properly defend the Arbitration; and (3) corresponding with the AAA about discovery and a proposed Confidentiality Order. *See* Zukowsky Dec., ¶20; Rosenthal Dec., at ¶¶2-20. Therefore, due to its prejudicial and inexcusable delay in moving to stay the Arbitration, as well as participation in the Arbitration, SFM has waived its right to contest its duty to arbitrate its dispute.

**D.** **Plaintiff Has Brought Its Motion To Stay The Arbitration In The Wrong Venue.**

Plaintiff has invoked §4 of the Federal Arbitration Act as the basis upon which it requests that this Court stay the ongoing Arbitration in New York City pending the outcome of this litigation, or at a minimum, pending a trial on the issue of whether or not there is an arbitration agreement between the parties. Plaintiff's present motion to stay the Arbitration should be dismissed as the motion was filed in an improper venue.

Section 4 of the Federal Arbitration Act provides for a judicial remedy where one party refuses to arbitrate a dispute. *UAL Corp. v. Mesa Airlines, Inc.*, 88 F.Supp.2d 910, 912 (N.D. Ill. 2000). Courts in this District have held that although §4 "governs a request to compel arbitration, it also governs the venue in which a party seeking to stay arbitration must file such a stay." *Id.* at 913. Indeed, courts interpreting §4 and motions to stay arbitrations have required the parties seeking the stay to file for such stay in the venue where the arbitration is pending. *Id.* at 913-14. The rationale behind requiring a party to file for a stay of arbitration in the venue in which the arbitration is

ongoing, is to save the resources of both the Court and the parties; it precludes a party from filing a request to enjoin arbitration in one venue, losing such motion, and ignoring that Court's order, forcing the other party to bring yet another motion in the proper venue to compel compliance with the demand for arbitration. *Id.*; *Professional Transportation, Inc. v. American Cas. Co. of Reading, Pennsylvania,* 2007 WL 30554, at *3 (S.D. Ind. Jan. 3, 2007).

In this instance, there is presently pending an Arbitration between Plaintiff and La Rosa in New York City. Zukowsky Dec.; Rosenthal Dec. Therefore, Plaintiff should have filed its present motion to stay that arbitration in the Southern District of New York pursuant to the venue requirements of §4 of the Federal Arbitration Act. Plaintiff's failure to file its present stay in the proper venue precludes this Court from entertaining SFM's motion to stay the Arbitration.

## IV. THE COURT SHOULD TRANSFER PLAINTIFF'S ACTION TO THE SOUTHERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. §1404(a)

Even if the Court were not to dismiss or stay this action, or entertain Plaintiff's request to stay the Arbitration ongoing in New York City, or allow for a trial on the issue of whether SFM and La Rosa entered into an arbitration agreement, the Court should still transfer this action to the Southern District of New York; Plaintiff's claims have absolutely <u>no</u> <u>connection</u> to Illinois.

Pursuant to §1404(a), a Court may transfer an action, "for the convenience of the parties and witnesses, in the interests of justice." 28 U.S.C. §1404(a). Under §1404(a), the party seeking transfer must simply demonstrate that, "(1) venue is proper in the transfer court; (2) venue would be proper in the transferee court; and (3) transfer will serve the convenience of the parties and witnesses and promote the interests of justice." *Adventus Americas, Inc. v. Innovative Envir. Tech., Inc.,* 2007 WL 704938, at *8 (N.D. Ill. March 5, 2007); *Mattson v. Gerry Wood Prod. Co.,* 1997 WL 158334, at *1 (N.D. Ill. March 31, 1997). "Evaluating the third prong - the convenience and fairness of the proposed transfer – the Court considers relevant private and public interest. In

addition, the movant may also demonstrate, by reference of the particular circumstances that the transferee forum is clearly more convenient." *Adventus,* 2007 WL 704938, at *8.

The convenience of the witnesses and the parties is the most important factor in determining whether an action should be transferred pursuant to §1404(a). *Id.* When evaluating this factor, the Court considers, (1) the plaintiff's choice of forum, (2) the situs of the material events, (3) the availability of evidence in each forum, (4) the convenience of the witnesses, and (5) the convenience of the parties litigating in the respective forums. *Id.; Plotkin v. IP Access, Inc.,* 168 F.Supp.2d 899, 902 (N.D. Ill. 2001). While the plaintiff's choice of forum can militate against transfer, this factor merely becomes one of many if there is a weak relationship between the operative facts giving rise to the claim and the choice of forum. *Adventus,* 2007 WL 704938, at *9.

When comparing the availability of the evidence, a court looks to where most of the evidence, including documents, is located. *Id.* If there is little or no evidence located in plaintiff's choice of forum, the Court should weigh this fact in favor of transfer. *Id.* In assessing the convenience of the parties, the Court may consider the parties' respective residences and their ability to bear the expense of litigating in a particular forum. The Court should also consider whether the selected forum is not the principal place of business of plaintiff and whether the parties even have witnesses that are employed in, or reside in the forum state. *Id.*

In reviewing this final factor relating to transfer, Courts take into consideration whether transfer will mitigate disruption of Defendants' business due to loss of senior personnel in a distant forum. *Dole v. Diversified*, 1990 WL 165329, at *8 (N.D.Ill. Oct. 23, 1990); *CFTC v. First National*, 565 F.Supp. 30, 32 (N.D.Ill. 1983). Courts also consider not only the number of potential witnesses located in the transferor and transferee districts, but also the nature and quality of their testimony and whether they could be compelled to testify. *Dole*, 1990 WL 165329, at *9. In addition, Courts in this District consider the location of crucial non-party witnesses to ensure

whenever possible the live presence of these witnesses at trial.  *Hotel Constructors, Inc. v. Seagrave*, 543 F.Supp. 1048, 1051 (N.D.Ill. 1982).  Lastly, when reviewing factors concerning the interest of justice, Courts will take into consideration which jurisdiction's law will apply to critical issues in the case.  *Robert Risa Co. v. Cleveland Electric Illuminating Co.*, 1992 WL 358907, *3 (N.D.Ill. Nov. 24, 1992); *Hotel*, 543 F.Supp. at 1052.

All of the factors described above weigh heavily in favor of transfer of this action to the Southern District of New York.  The first two factors the Court should consider under §1404(a) weigh in favor of transfer of this matter to the Southern District of New York: venue is proper in this Court and venue would be proper in the Southern District of New York.  Not only is Defendant La Rosa a New York corporation with its principal place of business in the Southern District of New York, but Plaintiff SFM is also a New York corporation and apparently has its principal place of business now in New York City or within the subpoena power of a Federal Court in the Southern District of New York.  In addition, Plaintiff's President and main witness is also New York City resident.  Furthermore, La Rosa Chicago is subject to personal jurisdiction in the Southern District of New York, and will consent to making its officers and employees available for discovery and trial in the Southern District of New York.  See Omar DeLeon Dec., at ¶¶1-4.

Moreover, the admissions by Plaintiff in its Declarations and motion clearly demonstrate that transfer of this action to the Southern District of New York will best serve the convenience of the parties and witnesses and promote the interests of justice; Plaintiff is a New York corporation, its President, Shlomo Kogos, is a New York resident, La Rosa is a New York corporation with its principal place of business in the Bronx, New York, and its officers are located in New York City.  Litigation of this action in Chicago would present a significant impediment to La Rosa's business, while transferring this action to the Southern District of New York would not impact SFM's business at all; SFM and its President are located in New York City.  Rodriguez Dec.

Furthermore, all of the significant witnesses (both party and non-party) are located in the vicinity of New York City, or within the subpoena power of a Federal Court sitting in the Southern District of New York, including Shlomo Kogos, Hiram Rodriguez, Roberto Medina, and non-party witnesses, Steven Dalzell and David Tyler.  Kogos Dec.; Rodriguez Dec.; Rosenthal Dec.  Indeed, the centrality of Mr. Dalzell's testimony in this action on numerous critical issues (including whether SFM ever executed the 2005 Agreements) is conceded by Plaintiff.  Rodriguez Dec.; Kogos Dec.  Furthermore, Mr. David Tyler, former employee of SFM, is apparently located in New York City and can provide critical evidence on the issues of whether SFM executed the 2005 Agreements, whether SFM agreed to arbitrate disputes, and whether SFM timely and properly fulfilled its contractual obligations to La Rosa.  Rosenthal Dec.  Because Mr. Dalzell and Mr. Tyler are both located within the subpoena power of the Federal Court sitting in the Southern District of New York, and both have been difficult, if not impossible to contact, the only way to assure the attendance of both of these individuals at any trial of this matter (including the issue of forgery) is through a subpoena from a Court in the Southern District of New York.

In addition, almost all the conduct at issue took place in New York City, and almost all of the critical evidence is located in New York City.  Rodriguez Dec.; Kogos Dec.  Plaintiff does not dispute this fact, nor can it; (1) the 2005 and 1999 contracts were executed in New York, (2) the work done by SFM and Safeguard pursuant to those contracts was done in New York at La Rosa's principal place of business in the Bronx; (3) the 1999 Software is located in New York City; (4) correspondence between the parties is located in New York City; and (5) payment documents concerning the contracts and software are located in New York City.  There is little, if any, evidence in this judicial district.

Moreover, at least three of Plaintiff's four claims will require the application of New York law as the contracts at issue were entered into and carried out in New York City.  Plaintiff does not,

and cannot, allege otherwise.  Indeed, the very contract Plaintiff relies on in support of its breach of the 1999 Software Agreement contains a choice of law provision <u>mandating</u> the application of New York law.  Amended Compl., Exh. "A", at p. 10, §22.  Thus, for the convenience of the parties and witnesses, and in the interest of justice, the Court should transfer this matter to the Southern District of New York.  Finally, Plaintiff's motion to stay, having been brought in an improper forum, would be properly venued if the action were transferred to the Southern District of New York.

## **<u>CONCLUSION</u>**

For the reasons stated above, and in the associated documents, Defendants respectfully request that the Court dismiss Plaintiff's Amended Complaint, or in the alternative, stay this action and/or compel SFM to arbitrate with Defendants, or transfer the action to the Southern District of New York.  In addition, Defendants request that the Court deny Plaintiff's motion to stay the Arbitration, and deny Plaintiff's motion to strike the Declaration of John T.A. Rosenthal as moot.

Dated:  July 23, 2007

Respectfully submitted,

LA ROSA DEL MONTE EXPRESS, INC. and
LA ROSE DEL MONTE EXPRESS
(CHICAGO), LLP

By:_____ s/ David M. Dolendi_____
David M. Dolendi, Esq.
LORD, BISSELL & BROOK LLP
111 S. Wacker
Chicago, IL 60606
Tel. (312) 443.0202
Fax: (312) 896.6202

Kevin Harrington, Esq.
John T.A. Rosenthal, Esq.
HARRINGTON, OCKO & MONK, LLP
81 Main Street, Suite 215
White Plains, NY  10601
Tel: (914) 686-4800
Fax: (914) 686-4824

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

The undersigned  herby certifies that the foregoing **MEMORANDUM OF LAW**, was served on the following:

| | |
|---|---|
| Francis J. Leyhane, III, Esq.<br>Leyhane & Associates, Ltd.<br>205 West Randolph Street<br>Suite 1320<br>Chicago, IL 60606 | |

via electronic mail and U.S. Mail on this 23rd day of July, 2007.


　　　　　　　　　　　　　　　　　 s/  David M. Dolendi
　　　　　　　　　　　　　　　　David M. Dolendi

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

-------------------------------------------------------------x

**SOFTWARE FOR MOVING, INC.,** a New
York Corporation,

                    **Plaintiff,**

                   **v.**

**LA ROSA DEL MONTE EXPRESS, INC.,** a
New York Corporation, and **LA ROSA DEL
MONTE  EXPRESS (CHICAGO), LLC,** an
Illinois Limited Liability Company,

                   **Defendants.**

-------------------------------------------------------------x

**CASE NUMBER:  07 C 1839**

**Assigned Judge: Wayne R. Andersen**

**Designated
Magistrate Judge: Jeffrey Cole**

## DECLARATION OF JOHN T.A. ROSENTHAL IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, OR IN THE ALTERNATIVE, TO TRANSFER THE ACTION TO THE SOUTHERN DISTRICT OF NEW YORK, DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO STAY ARBITRATION, DEFENDANTS' OPPOSITION TO STRIKE DECLARATION OF JOHN T.A. ROSENTHAL, AND DEFENDANTS' CROSS-MOTION TO STAY THE ACTION AND/OR COMPEL ARBITRATION

I, John T.A. Rosenthal, duly declare and say, under penalty of perjury under the laws of

the United States that the following is true and accurate:

      1.    I am an attorney at law and an associate at the law firm of Harrington, Ocko &

Monk, LLP, counsel for Defendants LA ROSA DEL MONTE EXPRESS, INC. ("La Rosa") and

LA ROSA DEL MONTE EXPRESS (CHICAGO), LLC ("La Rosa Chicago", together with La

Rosa, "Defendants") in the above-captioned case.  I make this Declaration based on my personal

knowledge, except as indicated otherwise, and, if called as a witness, could competently testify

thereto.

2.     Attached hereto as Exhibit "A" is a true and accurate copy of Defendant La Rosa's February 12, 2007 Demand for Arbitration (the "Demand") against Software for Moving, Inc. and its President, Shlomo Kogos.

3.     Attached hereto as Exhibit "B" is a true and accurate copy of a U.S. Post Office domestic return receipt indicating receipt of the Demand by Philip Zukowsky of Chernesky Heyman & Kress, PL, counsel for SFM and Respondent, Shlomo Kogos, President of SFM.

4.     Attached hereto as Exhibit "C" is a true and accurate copy of a February 21, 2007 letter from Kimberly F. Claxton of the American Arbitration Association (Case Manager for Arbitration No. 19 117 00027 07 between La Rosa and SFM and Mr. Shlomo Kogos) addressed to counsel for La Rosa ("Harrington, Ocko & Monk, LLP) and counsel for SFM and Mr. Kogos (Philip A. Zukowsky).  In this letter, Ms. Claxton confirms that AAA has received a Demand for Arbitration submitted on behalf of La Rosa with respect to a controversy between the parties arising out of or relating to the 2005 Software Agreement.  *Id.*  In her letter, Ms. Claxton indicates that SFM and Mr. Kogos had until March 8, 2007 in which to answer or otherwise respond to the Demand.  *Id.*  The letter also indicated that there was a scheduled conference call between counsel for the parties to take place on March 1, 2007.  *Id.*

5.     On February 26, 2007, Mr. Zukowsky on behalf of SFM, sent a letter to Kevin J. Harrington of our office, as well as Case Manager Kimberly Claxton of the AAA, regarding the Arbitration between the parties.  Exhibit "D".  In that letter, Mr. Zukowsky indicated that the address of Mr. Kogos and SFM was no longer Newark, New Jersey, but did not provide the correct mailing address for either of these entities.

6.     Mr. Zukowsky went on to assert in his February 26, 2007 letter that the signatures on the 2005 Software & License Agreement and the 2005 Maintenance Agreement ("2005

2

Agreements") were "obvious, and clumsy, forgeries, even to a non-expert". *Id.*  In this letter,
Mr. Zukowsky did not distinguish between the signatures on the 2005 Software & License
Agreement and 2005 Maintenance Agreement and the Addendum and Maintenance Schedule A
associated with each of these Agreements; all of these documents were served on Mr. Zukowsky
and SFM along with the Demand.  Exh. "A".  Indeed, Mr. Zukowsky went on to state that,
"[a]dmittedly, the forgeries on the supposed March 3, 2005 Maintenance Agreement (Exhibit C
to your Demand for Arbitration) are more artful, but the signatures there are no more valid than
the phony scroll on the Software, Development & License Agreement." Exhibit "D".  Given that
the only two Kogos signatures on the 2005 Maintenance Agreement were on page 5 of that
Agreement and page 6 entitled, "Maintenance Schedule A", Mr. Zukowsky obviously is
asserting in his letter that the Kogos signature on the Maintenance Schedule A is also a forgery.
*Id.*  Mr. Zukowsky made these assertions of forgery on these documents to bolster his argument
that SFM is not required to arbitrate disputes with La Rosa regarding the failure of SFM to
provide La Rosa with properly functioning web-based software in a timely manner.

7.    Attached hereto also as Exhibit "E" is a true and accurate copy of a letter dated
February 27, 2007 from Mr. Zukowsky to Ms. Claxton of the AAA.   In this letter, Mr.
Zukowsky, counsel for SFM and Mr. Kogos, expressed certain concerns to the AAA regarding
the Demand and the arbitration of that matter.  In his letter, Mr. Zukowsky indicated that SFM
and Mr. Kogos were objecting to the jurisdiction of the AAA over the matter.  *Id.*   Mr.
Zukowsky also indicated that while he had received a copy of the Demand for Arbitration,
neither SFM nor Mr. Kogos received the Demand as it was sent to an address at which they were
no longer located.  *Id.*  (Despite requests by counsel for La Rosa, Mr. Zukowsky and Mr.
Leyhane have refused to provide the present address of either SFM or Mr. Kogos to counsel for

La Rosa.)  Despite the objection to jurisdiction, Mr. Zukowsky indicated that SFM and La Rosa would proceed forward with the arbitration and requested that the "Arbitrator … first focus on the jurisdiction issue".  *Id.*  Mr. Zukowsky also indicated that a Mr. Jack Leyhane had been engaged by SFM and Mr. Kogos to "prepare an answer and assert counterclaims should that prove necessary" with respect to the Demand.  *Id.*  At no time did Mr. Zukowsky inform the AAA that SFM intended on filing a Complaint against La Rosa in Federal Court in the Northern District of Illinois.

8.     Attached hereto as Exhibit "F" is a true and accurate copy of the March 2, 2007 letter from Harrington, Ocko & Monk, LLP (counsel for La Rosa) to Ms. Claxton of the AAA with respect to the assertions made in Mr. Zukowsky's letter of February 27, 2007.  In this letter, counsel for La Rosa reiterated its belief that all of the operative documents had been entered into and executed by the appropriate parties or their representatives.  *Id.*  In this response, counsel for La Rosa pointed out that not only did the signatures on the various documents appear to be the same, or very similar, including the Kogos' signature on the 1999 Software Agreement between the parties, but that the history of business dealings between La Rosa and SFM indicated that these parties always entered into written agreements before doing business with one another.  *Id.*  Furthermore, counsel for La Rosa pointed out that under the AAA's own rules (in particular Rule 7(c)), the Arbitrator alone had the authority to make rulings with regard to his jurisdiction over the dispute.  *Id.*

9.     On or about March 6, 2007, counsel for La Rosa and counsel for SFM, Mr. Zukowsky, participated in a conference call with Ms. Claxton of the AAA with regard to La Rosa's Demand.  During this conference call, counsel for La Rosa indicated its consent that SFM had until March 16, 2007 in which to file an answer and counterclaims with respect to the

Demand. Mr. Zukowsky, through the AAA, requested that La Rosa agree to the appointment of an emergency Arbitrator under the AAA's Optional Rules for Emergency Measures of Protection. See Zukowsky Dec., Exh. PZ6. Mr. Zukowsky also informed Ms. Claxton of the AAA that he was requesting an extension of time from the AAA until April 1, 2007 in which to draft and file copyright counterclaims against La Rosa in this matter. *Id.* At no time and in no correspondence or communications with the AAA or opposing counsel did Mr. Zukowsky indicate that SFM was seeking to litigate these same issues in another forum or would be moving to stay the Arbitration by means of a motion filed in Federal Court pursuant to the Federal Arbitration Act, §§3, 4. La Rosa did not agree to the adoption and application of the AAA's emergency measures, as those rules were clearly intended to cover the same sorts of circumstances in which temporary restraining orders, or preliminary injunctions are required. This was clearly not such a circumstance.

10. On or about March 7, 2007, the AAA indicated that the Optional Rules for Emergency Measures of Protection would not be applied to this Arbitration and that the Arbitration would proceed. Attached hereto as Exhibit "G" is a true and correct copy of the March 7, 2007 letter from Ms. Kimberly Claxton of the AAA. The AAA then informed Mr. Zukowsky that SFM had until March 16, 2007 in which to file an Answer and Counterclaims to La Rosa's Demand.

11. Attached hereto as Exhibit "H" is a true and accurate copy of the March 16, 2007 objection to jurisdiction filed with the AAA by Mr. Zukowsky on behalf of Software for Moving, Inc. and its President, Shlomo Kogos.

12. Attached hereto as Exhibit "I" is a true and accurate copy of the March 21, 2007 letter from counsel for La Rosa responding to Mr. Zukowsky's March 16, 2007 objection to

jurisdiction on behalf of SFM and Mr. Kogos. In this letter, counsel for La Rosa reiterated that the AAA rules provided that the arbitrator had jurisdiction over La Rosa's Demand and the parties. *Id.* Counsel for La Rosa also indicated to the AAA that the arbitration should proceed forward as soon as possible.

13. Attached hereto as Exhibit "J" is a true and accurate copy of the March 22, 2007 letter from Ms. Claxton of the AAA to counsel for SFM, Mr. Zukowsky, and counsel for La Rosa, Harrington, Ocko & Monk, LLP. In this letter, Ms. Claxton indicated that La Rosa had met the requirements for the arbitration to go forward under the AAA rules. *Id.* Ms. Claxton also indicated that in the absence of a Court order staying the matter, the AAA would proceed forward and that counsel for the parties might wish to raise the issue of jurisdiction and arbitrability of La Rosa's claims with the arbitrator once that individual was appointed. *Id.* Attached to this letter, Ms. Claxton also provided the parties with the names of potential arbitrators. *Id.*

14. On March 30, 2007, I called Mr. Zukowsky with regard to SFM agreeing to one of the proposed Arbitrators from the list provided to the parties by the AAA. During this call, Mr. Zukowsky did not indicate that SFM would be filing either a Complaint or a motion to stay in Federal Court. To the contrary, Mr. Zukowsky indicated to me that he would look at our arbitrator choices and get back to me.

15. On April 5, 2007 SFM filed a Complaint in Federal Court in the Northern District of Illinois, alleging breach of the 1999 software agreement, breach of oral agreement regarding the web-based software and copyright infringement. SFM's Complaint does not mention the pending arbitration between the parties, nor did SFM move to stay the Arbitration or request any sort of injunctive relief regarding the Arbitration in its Complaint. As part of its Complaint,

SFM attached copies of the 9/11 Agreement/Addendum and Maintenance Schedule A to the 2005 Agreements. Exhibits "B" and "C", respectively. SFM's Complaint does not mention that Mr. Kogos, through counsel, had previously asserted in the Arbitration that his signatures on the Maintenance Schedule A and the 9/11 Agreement/Addendum were forgeries.

16. Attached hereto as Exhibit "K" is a true and accurate copy of the April 16, 2007 letter from Ms. Claxton of the AAA. In accordance with the AAA rules and the previous actions of counsel for the parties, Ms. Claxton indicated in this letter that the AAA had appointed Richard S. Mandel as arbitrator for the matter, and provided dates of availability for Mr. Mandel to hold a preliminary conference call with counsel for the parties. *Id.*

17. On April 30, 2007 La Rosa moved to dismiss SFM's original Complaint for lack of subject matter jurisdiction, or in the alternative to stay the Federal Action pending arbitration between the parties pursuant to the 2005 Agreements, or finally to transfer the action to the Southern District of New York. La Rosa included as exhibits to its motion both the Addendum and the Maintenance Schedule A.

18. Not until after SFM had asserted in the Arbitration that the Kogos' signatures on the Maintenance Schedule A and the 9/11 Agreement/Addendum were forgeries, after SFM filed its Complaint asserting that the Kogos' signatures on these documents are not forgeries, and after La Rosa filed a motion to dismiss, stay or transfer this action, did SFM acknowledge in a letter to the AAA that the Kogos' signatures on Maintenance Schedule A and the 9/11 Agreement/Addendum are not forgeries. SFM took this new position after it had taken a contrary position, as asserted in Mr. Zukowsky's February 26, 2007 letter. See attached hereto as Exhibit "L" a true and correct copy of a May 15, 2007 letter from Philip Zukowsky. Even in

this letter, Mr. Zukowsky fails to indicate that SFM was going to move in the Federal Action to stay the Arbitration.

19. On or about May 16, 2007, counsel for the respective parties, including Mr. Zukowsky, had a conference call with Arbitrator Richard Mandel in the pending Arbitration between La Rosa and SFM. During that call, Mr. Mandel asked Mr. Zukowsky why SFM had failed to file for a stay of this Arbitration in conjunction with its present Complaint. Mr. Zukowsky responded that his client's budgetary constraints precluded the filing of such a motion. Mr. Zukowsky was then questioned about SFM's discovery requirements in the arbitration, at which time Mr. Zukowsky indicated that SFM would need wide-ranging and broad discovery of La Rosa including depositions of La Rosa personnel all over the United States and possibly in Puerto Rico. Mr. Zukowsky then agreed to a discovery schedule proposed by the arbitrator, as expressed in the arbitrator's first order. See attached hereto as Exhibit "M" a true and correct copy of the Report of Preliminary Hearing and Scheduling Order No. 1. Mr. Zukowsky did not indicate at any time during this conference call that SFM would be moving in the Federal Action for a stay of the Arbitration.

20. Pursuant to the arbitrator's order, on or about May 25, 2007 counsel for La Rosa provided Mr. Zukowsky with a proposed confidentiality stipulation concerning discovery. See attached hereto as Exhibit "N" a true and correct copy of the letter to Mr. Zukowsky.

21. On May 29, 2007 I called Mr. Zukowsky regarding the proposed stipulation at which time he indicated concerns as to only one paragraph, paragraph No. 4, of the proposed confidentiality stipulation.

22. On June 1, 2007 Mr. Zukowsky sent an e-mail to Ms. Claxton of the AAA regarding the proposed confidentiality stipulation. See attached hereto as Exhibit "O" a true and correct

copy of the June 1, 2007 e-mail from Philip Zukowsky.  Mr. Zukowsky again responded by e-mail to the AAA on June 8, 2007 concerning the confidentiality stipulation.

23.   On or about June 22, 2007, counsel for La Rosa as well as Mr. Zukowsky participated in a conference call with the Arbitrator regarding the proposed Confidentiality Stipulation and discovery in the Arbitration.

24.   It is my understanding that the corporate entity Safeguard Computer Services, Inc. is a New York corporation that is still active in the State of New York.  See attached hereto as Exhibit "P" a true and correct copy of the results of an internet search of the New York State Department of State's Division of Corporations website regarding the business entity Safeguard Computer Services, Inc., done June 12, 2007.

25.   SFM is not the registered owner of the 1999 software.  Attached hereto as Exhibit "Q" is a true and correct copy of a search done of the on-line copyright registration records of the U.S. Copyright Office.  The results of the search show that the copyright for the 1999 software was registered by Safeguard, not SFM.

26.   The testimony of Mr. Hiram Rodriquez, President of La Rosa, is critical to La Rosa's defenses and possible counterclaims in this action.  Mr. Rodriquez' testimony would include, among other things, the following: (1) testimony about the negotiations with SFM, David Tyler (former employee of SFM) and Shlomo Kogos leading up to the written agreements between La Rosa and SFM regarding a web-based version of the Moving Manager Software to be provided by SFM; (2) the drafting and execution of the 2005 Software & License Agreement, the associated Addendum (9/11 Agreement), the 2005 Maintenance Agreement, and associated Maintenance Schedule A; (3) the failure of SFM to deliver the web-based software on time; (4) the failure of SFM to provide La Rosa with a properly functioning web-based software; (5) the

failure of SFM to properly cure defects and problems with the new web-based software; (6) the failure of SFM to properly and timely maintain the 1999 Dos/Windows-based version of the Moving Manager software; and (7) the conduct of SFM that has precluded La Rosa from accessing the web-based software since December 2006.

27.   The testimony of Mr. Roberto Medina, Controller at La Rosa, is critical to La Rosa's defenses and possible counterclaims in this action.  Mr. Medina's' testimony would include, among other things, the following: (1) testimony about the negotiations with SFM, David Tyler (former employee of SFM) and Shlomo Kogos leading up to the agreements between La Rosa and SFM regarding a web-based version of the Moving Manager Software to be provided by SFM; (2) the drafting and execution of the 2005 Software & License Agreement, the associated Addendum (9/11 Agreement), the 2005 Maintenance Agreement, and associated Maintenance Schedule A; (3) the failure of SFM to deliver the web-based software on time; (4) the failure of SFM to provide La Rosa with a properly functioning web-based software; (5) the failure of SFM to properly cure defects and problems with the new web-based software; (6) the failure of SFM to properly and timely maintain the 1999 Dos/Windows-based version of the Moving Manager software; (7) payment of various sums to SFM in accordance with the parties' various agreements concerning software.

28.   The testimony of Mr. Steven Dalzell, former employee of La Rosa, is critical to La Rosa's defenses and possible counterclaims in this action.  This essential nature of Mr. Dalzell's testimony is corroborated by SFM.  Mr. Dalzell's testimony would include, among other things, the following: (1) testimony about the negotiations with SFM, David Tyler (former employee of SFM) and Shlomo Kogos leading up to the agreements between La Rosa and SFM regarding a web-based version of the Moving Manager Software to be provided by SFM; (2) the drafting and

execution of the 2005 Software & License Agreement, the associated Addendum (9/11 Agreement), the 2005 Maintenance Agreement, and associated Maintenance Schedule A; (3) the failure of SFM to deliver the web-based software on time; (4) the fact that several aspects of the Moving Manager Software were never completed by SFM. It is my understanding that Steven Dalzell, former employee of La Rosa, resides in New Jersey within a 100-mile radius of the Federal Court in the Southern District of New York. Lawyers from this firm have made several attempts to contact Mr. Dalzell with some success. While Mr. Dalzell had indicated to our office a willingness to cooperate in this matter, he has not indicated a willingness to voluntarily appear at trial in Chicago, Illinois. Mr. Dalzell no longer works for La Rosa and, upon information and belief, traveling to Chicago for trial would interfere with his current employment and pose a hardship on Mr. Dalzell. The only sure way to obtain Mr. Dalzell's live testimony at a trial in this matter is through subpoena.

29. The testimony of Mr. David Tyler, former employee and Chief Technical Officer of SFM, is critical to La Rosa's defenses and possible counterclaims in this action. Mr. Tyler's testimony would include, among other things, the following: (1) testimony about the negotiations with SFM, Steven Dalzell (former employee of La Rosa) and Shlomo Kogos leading up to the agreements between La Rosa and SFM regarding a web-based version of the Moving Manager Software to be provided by SFM; (2) the drafting and execution of the 2005 Software & License Agreement, the associated Addendum (9/11 Agreement), the 2005 Maintenance Agreement, and associated Maintenance Schedule A; (3) the failure of SFM to deliver the web-based software on time; (4) the failure of SFM to provide La Rosa with a properly functioning web-based software; (5) the failure of SFM to properly cure defects and problems with the new web-based software; (6) the failure of SFM to properly and timely maintain the 1999 Dos/Windows-based version of

the Moving Manager software. It is my understanding that Mr. David Tyler, former employee of SFM, likely resides in New York City within a 100-mile radius of the Federal Court in the Southern District of New York. I have made several attempts to contact Mr. Tyler through telephone calls and e-mail, thus far with no success. Mr. Tyler has not responded to my calls or e-mail. The only sure way to obtain Mr. Tyler's live testimony at a trial in this matter is through subpoena.

JOHN T.A. ROSENTHAL

Dated: July 17, 2007

Sworn to before me
this 19th day of July, 2007

SHIRLEY B. THORNTON
Notary Public, State of New York
No. 01TH6029394
Qualified in Westchester County
Commission Expires August 16, 2009

EXHIBIT "B"

UNITED STATES POSTAL SERVICE
DAYTON OH 454

21 FEB 2007 PM 4

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

Kevin J. Harrington, Esq.
**Harrington, Ocko & Monk**
A LIMITED LIABILITY PARTNERSHIP
81 Main Street, Suite 215
White Plains, NY 10601

Effile #: 1034 /La Rosa Del Monte /SFN CWJH/

---

EFile # 1034 /LA ROSA DEL MONTE /SFN CWJH/

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Philip A. Zukowsky, Esq.
Chernesky Heyman + Kress
10 Courthouse Plaza SW
Suite #1100
Dayton, OH 45402

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X *Sandra Shields*     ☐ Agent  ☐ Addressee

B. Received by ( Printed Name)     C. Date of Delivery
2-22-07

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)     7006 2150 0004 0183 4335

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

**EXHIBIT "C"**



Northeast Case Management Center
Catherine Shanks
Vice President
Christopher Fracassa, Yvonne L. Baglini
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

February 21, 2007

<u>VIA</u>
FACSIMILE/W/ENCLOUSRES

Kevin J. Harrington, Esq.
Harrington, Ocko & Monk, LLP
81 Main Street, Suite 215
White Plains, NY 10601

Robert S. Ocko, Esq.
Harrington, Ocko & Monk, LLP
81 Main Street, Suite 215
White Plains, NY 10601

Philip A. Zukowsky, Esq.
Chernesky Heyman & Kress
10 Courthouse Plaza SW, Suite 1100
Dayton, OH 45402

Re: 19 117 00027 07
    La Rosa Del Monte Express, Inc.
    and
    Software for Moving, Inc.and Shlomo Kogos

Dear Counsel:

This will acknowledge receipt on February 15, 2007, of a Demand for Arbitration dated February 12, 2007, of a controversy arising out of a contract between the above-captioned parties, containing a clause providing for administration by this Association. We understand that a copy was sent to Respondent. A copy of our Commercial Arbitration Rules and Mediation Procedures, as amended and in effect September 15, 2005, may be obtained from our website at www.adr.org.

If you would like a printed copy of the applicable rules, please contact the undersigned.

In accordance with the Rules, if Respondent does not answer on or before March 8, 2007, we will assume that the claim is denied. If Respondent wishes to counterclaim, file the appropriate number of copies, together with the administrative fee, to the attention of the undersigned. A copy should be directly sent to Claimant.

We note the parties' agreement stipulates the locale as Westchester County, New York.

We note the claim is $383,250. If this amount is incorrect, please advise us on or before March 8, 2007 of the correct amount.

This will confirm an Administrative Conference is scheduled on March 1, 2007 at 10:00 AM ET via conference call. The Association will initiate this call.

The purpose of the administrative conference is to assist the Association in administering your case efficiently and expeditiously. Please be prepared to discuss the following:

a. estimates on the expected duration of the case;
b. number of arbitrators/party-appointed arbitrator provision;
c. method of appointment of arbitrators, if applicable;
d. your views on the qualifications of the arbitrators to be proposed;
e. the possibility of submitting this dispute to mediation;

Enclosed is a Checklist for Conflicts to list those witnesses you expect to present, as well as any persons or entities with an interest in these proceedings. The Conflicts Checklist is due within fifteen days from the date of this letter. The parties are to exchange copies of all correspondence except this checklist and the arbitrator list.

The Association will make maximum use of fax machines when communicating in writing, and request that the parties do the same. If you have not provided us with your fax number, we ask that you do so at this time. If a party does not provide us with their fax number, then that party will have to rely on receiving correspondence via regular mail.

Parties will not send copies of documents being exchanged between the parties to the Association, such as discovery, unless they are being referred to the arbitrator for a determination. These documents will be returned to you if we receive them.

The Association has a strict policy regarding requests for extensions. If you need to extend any deadline during the course of these proceedings, please try to obtain the other party's agreement prior to contacting the AAA. Without the consent of the parties, case managers only have the authority to grant one extension per deadline, provided the request is reasonable and necessary. Untimely filings will not be considered by the Association.

This case will be administered by facilitating the exchange of appropriate written documents through the AAA. To ensure the proper handling of all case-related documents, the parties are asked not to submit correspondence directly to the arbitrator. Correspondence should be submitted to the undersigned for transmittal to the arbitrator, copying the other party.

The Association will require advance deposits once the arbitrator is appointed. These deposits are calculated on the number of days the parties have suggested will be necessary, in addition to the pre and post hearing time that the arbitrator may charge pursuant to the arbitrator's resume.

Additionally, the parties may desire to mediate this case prior to an arbitration hearing. Mediation is a private, non-binding process under which the parties submit their dispute to a third-party neutral. The mediator may suggest ways of resolving the dispute, but may not impose a settlement on the parties; the parties attempt to negotiate their own settlement agreement. Please contact the undersigned for further details regarding mediation.

As a service to our users, you may charge the administrative fee and deposit for arbitrator fees and expenses to your credit card. If you desire to do so, please complete the enclosed charge authorization and return it to us.

We invite the parties to visit our website to learn more about how to file and manage your cases online.

As part of our administrative service, AAA's WebFile allows parties to perform a variety of case related activities, including:

- File additional claims
- Complete the Checklist for Conflicts form
- View invoices and submit payment
- Share and manage documents
- Strike and rank listed neutrals
- Review case status

AAA WebFile provides flexibility because it allows you to work online as your schedule permits - day or night. Cases originally filed in the traditional offline manner can also be viewed and managed online.

In closing we wish to remind the parties that the AAA has a refund schedule in the administrative fee section of the Rules. After 60 days or the appointment of the arbitrator the filing fees are non-refundable. If the parties enter settlement negotiations at any time after the AAA has opened its file, you should take into consideration the refund schedule in the Rules. In accordance with the administrative fee schedule, the Association charges a Case Service Fee when the hearing on the merits is scheduled. The Case Service Fee is the balance of the filing fee. It is refundable if the hearing on the merits is cancelled and the Association is notified at least 24 hours prior to the hearing. The AAA will only refund filing fees as outlined in the Rules and does not refund neutral costs incurred when parties settle their dispute or withdraw their claims. We encourage parties to resolve their disputes as amicably as possible and this notice is just to alert you to this issue so that it doesn't become a concern in the future.

Please feel free to call if you have any questions. We look forward to assisting you in this matter.

Sincerely,

Kimberly F. Claxton
Case Manager
401 431 4793
ClaxtonK@adr.org

*Supervisor Information: Karen Fontaine, 401 431 4798, fontainek@adr.org*

Encl.

# EXHIBIT "D"

# CHERNESKY, HEYMAN & KRESS P.L.L.

### ATTORNEYS AT LAW

10 COURTHOUSE PLAZA SW, SUITE 1100
DAYTON, OHIO 45402
P.O. BOX 3808
DAYTON, OHIO 45401-3808
937/449-2800

WRITER'S DIRECT DIAL
937/449-2842

WRITER'S FAX
937/463-4947

WRITER'S E-MAIL
paz@chklaw.com

WEBSITE
www.chklaw.com

February 26, 2007

**<u>Via U.S. Mail and E-Mail</u>**
Mr. Kevin J. Harrington
Harrington, Ocko & Monk, LLP
81 Main Street
Suite 215
White Plains, New York 10601

      Re:    19 117 00027 07
              La Rosa Del Monte Express, Inc.
              and
              Software for Moving, Inc. and
              Shlomo Kogos

Dear Mr. Harrington:

      I received, on February 20, a copy of your letter and the enclosed "courtesy copy" of your Demand for Arbitration in the captioned matter. I have since received Ms. Claxton's letter of February 21, 2007 confirming that your Demand for Arbitration has been received by the American Arbitration Association. My clients, Mr. Kogos and Software for Moving, Inc., have not received the Demand for Arbitration as of yet and are unlikely to ever receive it, inasmuch as the Newark, New Jersey address to which the Demand was supposedly sent is not one at which my clients are presently located.

      Your Demand for Arbitration is premised on the terms of a Software Development & License Agreement and a separate Maintenance Agreement, both supposedly executed on or about March 3, 2005. However, even though these 'Agreements' describe – in some respects – how our respective clients dealt with each other for a considerable period of time, my client, Mr. Kogos never signed either 'Agreement.' Mr. Kogos' purported 'signatures' on the 2005 'Agreements' are obvious, and clumsy, forgeries, even to a non-expert. You will recall my several attempts to get you to provide me with copies of the 'Agreements' on which you were making the various contentions that have now been collected in your Demand for Arbitration. You never provided me with copies, despite my requests. Had you done so, we could have

## CHERNESKY, HEYMAN & KRESS P.L.L.

Mr. Kevin J. Harrington
Page 2
February 27, 2007

pointed out the obvious forgeries to you then. Even so, you might have noticed, when you assembled the exhibits to your Demand for Arbitration, how little the purported 'signatures' on the March 3, 2005 'Agreements' resemble Mr. Kogos' signature on other documents that you also included.

Specifically, Mr. Kogos signed the 1999 Software Licensing Agreement (Exhibit A to your Demand for Arbitration) in four separate places:

> At page 10 of 10, at the end of the body of the 1999 Software Licensing Agreement;
>
> at page 7 of 7 of Exhibit "A" to the 1999 Agreement;
>
> at page 3 of 3 of Exhibit "B" to the 1999 Agreement; and
>
> at page 4 of 4 of Exhibit "C" to the Software Maintenance Agreement.

When you review these signatures, you'll note that they (a) resemble each other and (b) provide clear spacing between Mr. Kogos' first and last names. This is not the case, however, with the signature on the supposed March 3, 2005 Software Development & License Agreement (Exhibit B to your Demand for Arbitration), where the first and last name run together. The scrawl at p. 16 of that document bears so little resemblance to the signatures on the 1999 Agreement as to make the forgery painfully obvious. Admittedly, the forgeries on the supposed March 3, 2005 Maintenance Agreement (Exhibit C to your Demand for Arbitration) are more artful, but the signatures there are no more valid than the phony scrawl on the Software Development & License Agreement.

There are other things you must consider in evaluating the validity of these agreements. Those are the "tells" that show that the Agreements could not have been executed on March 3, 2005, when you claim the document was signed. For example, the Notice paragraph of Article XIII of the supposed March 3, 2005 Software Development & License Agreement (§13.5) purports to list Mr. Kogos' email address as skogos@earthlink.net. However, the email address set out in §13.5 *did not exist until 2006*. We have the e-mails from Earthlink that states that skogos@earthlink.net mailbox was opened on May 5, 2006.

Whether or not you noticed the discrepancies in the signatures when you put the Demand together, you are on notice now: Mr. Kogos did not execute the Software Development & License Agreement or Maintenance Agreement and my clients have not agreed to arbitration of any dispute between our respective clients.

{00289840.DOC;}

**CHERNESKY, HEYMAN & KRESS P.L.L.**

Mr. Kevin J. Harrington
Page 3
February 27, 2007

     We therefore demand the immediate and unconditional withdrawal of the captioned Demand for Arbitration. If we are not informed that the Demand has been withdrawn by 5:00 pm EST Friday, March 2, 2007, we will take all necessary steps, in any available forum, to protect our clients' interests with respect to this matter. We will not hesitate to seek appropriate relief from any and all parties who may be responsible for the expenses our clients have incurred, and will likely incur, in responding to this fraudulent Demand for Arbitration.

     Enclosed with this letter, please also find enclosed a copy of my letter today to Ms. Claxton demanding that AAA refuse to proceed on this Demand for Arbitration.

     We must respectfully insist upon your immediate attention to this matter.

          Very truly yours,

          CHERNESKY, HEYMAN, & KRESS P.L.L.

          Philip A. Zukowsky

PAZ/ge
Enclosure

cc:    kharrington@homlegal.com

     Ms. Kimberly F. Claxton
     Case Manager
     American Arbitration Association
     950 Warren Avenue
     East Providence, Rhode Island 02914

     ClaxtonK@adr.org

     Mr. Jack Leyhane
     1205 W. Randolph
     Suite 1320
     Chicago, Illinois 60606

     Leyhane329@aol.com

{C0249840.DOC;}

**EXHIBIT "E"**

## CHERNESKY, HEYMAN & KRESS P.L.L.
### ATTORNEYS AT LAW
10 COURTHOUSE PLAZA SW, SUITE 1100
DAYTON, OHIO 45402
P O BOX 3808
DAYTON, OHIO 45401-3808
937/449-2800

WRITER'S DIRECT DIAL
937/449-2842

WRITER'S FAX
937/463-4547

WRITER'S E-MAIL
paz@chklaw.com

WEBSITE
www.chklaw.com

February 27, 2007

**<u>Via U.S. Mail and E-Mail</u>**
Ms. Kimberly F. Claxton
Case Manager
American Arbitration Association
950 Warren Avenue
East Providence, Rhode Island 02914

> Re:  19 117 00027 07
> La Rosa Del Monte Express, Inc.
> and
> Software for Moving, Inc. and
> Shlomo Kogos

Dear Ms. Claxton:

I am in receipt of your letter of February 21, 2007. I also received, on February 20, a copy of Mr. Harrington's letter of February 12 and the enclosed "courtesy copy" of his Demand for Arbitration in the captioned matter. My clients, Mr. Kogos and Software for Moving, Inc., have not received the Demand for Arbitration as of yet and are unlikely to ever receive it, inasmuch as the Newark, New Jersey address to which the Demand was supposedly sent is not one at which my clients are presently located.

Enclosed with this letter, please find enclosed a copy of my letter today to Mr. Harrington demanding that this Demand for Arbitration be withdrawn. In the event Mr. Harrington does not comply, I also insist that AAA refuse to proceed with the arbitration of this matter.

The jurisdiction of the AAA to hear this matter is based on §13.12 of a Software Development & License Agreement attached to the Demand for Arbitration – but the "signature" of Mr. Kogos on that document is an obvious, and clumsy, forgery. (As you know, from the enclosed letter to Mr. Harrington, we also contend that Mr. Kogos did not sign the Maintenance Agreement either.) I understand that Rule 7 of the AAA Commercial Arbitration Rules provides a mechanism for the arbitrator "to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Clearly, my clients

CHERNESKY, HEYMAN & KRESS P.L.L.

Ms. Kimberly F. Claxton
Page 2
February 27, 2007

are objecting to the jurisdiction of the arbitrator and to the arbitrability of these claims. We understand, per Rule 7, that these objections must be made within the time for filing an answer to the Demand for Arbitration.

If AAA will not refuse to proceed with this matter, we will at least want assurances that the arbitrator will first focus on the jurisdiction issue and will not require my client to incur the considerable expense of responding to the 36 page Demand for Arbitration. We have engaged counsel to prepare an answer and assert counter claims _should_ that prove necessary: Jack Leyhane 1205 West Randolph, Chicago, Illinois 60606, Suite 1320, leyhane329@aol.com. However, I expect that my clients will not be subjected to the expenses attendant to allowing the procedure to develop that far – and, on behalf of my clients, I herewith reserve their rights to seek redress and recompense from any and all entities that permit otherwise.

Thank you for your immediate attention to this matter.

Very truly yours,

CHERNESKY, HEYMAN, & KRESS P.L.L.

Philip A. Zukowsky

PAZ/ge
Enclosure

cc:    ClaxtonK@adr.org

       Mr. Kevin J. Harrington
       Harrington, Ocko & Monk, LLP
       81 Main Street
       Suite 215
       White Plains, New York 10601

       kharrington@homlegal.com

       Mr. Jack Leyhane
       1205 W. Randolph
       Chicago, Illinois 60606
       Suite 1320

       leyhane329@aol.com

{00289841.DOC;}

**EXHIBIT "F"**

# Harrington, Ocko & Monk

### A LIMITED LIABILITY PARTNERSHIP
**Attorneys at Law**

White Plains Office

**81 Main Street – Suite 215**
**White Plains, NY 10601**
**Tel:  (914) 686-4800**
**Fax:  (914) 686-4824**

**Kevin J. Harrington, Partner**
e mail: kharrington@homlegal.com

New York City Office

**52 Duane Street, 7th Floor**
**New York, NY 10007**
**Tel:  (212) 227-8004**

**Reply to White Plains Office**

March 2, 2007

**VIA FACSIMILE: (401) 435-6529**
**and FIRST CLASS MAIL**

Kimberly F. Claxton, Case Manager
AMERICAN ARBITRATION ASSOCIATION
950 Warren Avenue
East Providence, RI 02914

> Re:  *La Rosa Del Monte Express, Inc., Claimant, vs. Software*
> *For Moving, Inc., and Shlomo Kogos, as an Individual, Respondents.*
> Demand for Commercial Arbitration:
> <u>American Arbitration Association, NY, NY (Case No.:  19 117 00027 07)</u>

Dear Ms. Claxton:

As you may recall, our firm represents Claimant, La Rosa Del Monte Express, Inc. ("La Rosa"), in the above-captioned arbitration.  We write to you at this time in response to the letter of February 27, 2007 letter of Mr. Philip A. Zukowsky, counsel for Respondent, Software for Moving, Inc. ("SFM").

As to the allegations of forgery contained in Mr. Zukowsky's February 27th letter, obviously, our client disputes any notion that the signatures of Mr. Kogos, President of SFM, on the operative documents at issue in this Arbitration are forgeries.  Contrary to Mr. Zukowsky's allegations, the signatures of Mr. Kogos on these documents (the March 3, 2005 Software Development and License Agreement and the March 3, 2005 Maintenance Agreement) are almost identical to that of Mr. Kogos on the March 24, 1999 Software Licensing Agreement, a signature Mr. Zukowsky acknowledges is that of his client.  See Exhibit "A", a true and correct copy of the signatures of Mr. Kogos on the March 24, 1999 Software Licensing Agreement; Exhibit "B", a true and correct copy of Mr. Kogos'

signatures on the March 3, 2005 Software Development and License Agreement; and Exhibit "C", true and correct copies of Mr. Kogos' signatures on the March 3, 2005 Maintenance Agreement. In addition, the signatures on the 2005 Software Development and Maintenance Agreements match Mr. Kogos' endorsing signature on an August 29, 2006 check for Ten Thousand ($10,000) Dollars made out to SFM and cashed by Mr. Kogos. See Exhibit "D", a true and correct copy of an August 29, 2006 check endorsed by Mr. Kogos on behalf of SFM. Thus, any suggestion that the signatures of Mr. Kogos on these documents are forgeries is easily dispelled by a simple review of the very signatures themselves.

Second, if Respondents persist in advancing the spurious claim that Mr. Kogos' signature was forged on the operative agreements, Claimant is prepared at the hearing in this matter to call a witness who will directly refute the claim. The witness who will establish that Mr. Kogos did indeed sign the Software Development Agreement is Steven Dalzell, the former Chief Operating Officer of Claimant. Mr. Dalzell will testify that he requested that Mr. Kogos supply a duplicate copy of this agreement and that subsequently, during a visit to the office of Claimant, Mr. Kogos hand-delivered a photocopy of the signed agreement to Mr. Dalzell, including the signature page bearing Mr. Kogos' signature. If, as he now claims, Mr. Kogos never signed the agreement, then he would not have personally delivered a signed copy to Mr. Dalzell.

Furthermore, Mr. Kogos, as well as Mr. Zukowsky (on behalf of Mr. Kogos and SFM), have taken actions and made detailed demands for money to La Rosa based on the very same agreements they now contend contain forged signatures, and are not binding on the parties. Their protestations now of forgery thus ring hollow.

As indicated in Claimant's Demand for Arbitration in this matter, the Software Development and License Agreement of March 3, 2005 required that La Rosa pay SFM $58,000 to continue to use the current software (DOS/WINDOWS-based software), pending the completion of the new web-based software by SFM. See Software Development and License Agreement, Section 4.6. Furthermore, the Software Development and License Agreement provides that La Rosa would pay SFM a license fee of $105,000 once the new web-based software was completed, operational, and delivered to La Rosa by SFM in its entirety. Id., at Section 6.5. Under the Agreement, La Rosa was also to pay SFM a development fee of $190,000 for development of this new web-based software. Id., at Section 4.1.

Ms. Kimberly F. Claxton, Case Manager (AAA)
AAA Case No.: 19 117 00027 07
Re: *La Rosa Del Monte Express, Inc., Claimant, vs. Software
For Moving, Inc., and Shlomo Kogos, as an Individual, Respondents.*
March 2, 2007
Page 3

While Mr. Zukowsky and his client, SFM, contend the signatures on these agreements are forged, and thus, inoperative, Mr. Zukowsky and Mr. Kogos, President of SFM, have both made specific demands of La Rosa, and asked for the specific amounts described in the March 3, 2005 Software License and Development Agreement. Indeed, Mr. Kogos e-mailed to Robert S. Ocko, counsel for La Rosa, on December 13, 2006, and specifically acknowledged a $58,000 per year maintenance charge for La Rosa's use of the DOS/WINDOWS-based software in 2005; exactly the sum required of La Rosa pursuant to Section 4.6 of the Software License and Development Agreement. See Exhibit "E," a true and correct copy of the December 13, 2006 e-mail from Mr. Kogos to Mr. Ocko. Mr. Kogos also acknowledges in this e-mail that SFM was paid precisely that amount by La Rosa in late 2004, again, in accordance with the terms of the 2005 Agreement. Mr. Kogos, in fact, references the Software Development Agreement in this very e-mail. Thus, Mr. Kogos and SFM have, both by their conduct and their writings, acknowledged that the contracts exist, and that SFM is bound by their terms, including the arbitration provisions.

Subsequently, on December 22, 2006, Mr. Zukowsky e-mailed Mr. Ocko, and also demanded the exact amounts described in the 2005 Software Development Agreement. See Exhibit "F", a true and correct copy of the December 22, 2006 e-mail from Mr. Zukowsky to Mr. Ocko. Mr. Zukowsky admits in his e-mail that $58,000 was the agreed-upon amount of the payment for SFM to maintain the DOS/WINDOWS-based software in 2005 under the 2005 Software Development Agreement. Furthermore, Mr. Zukowsky references the exact amount La Rosa would owe to SFM under the Software Development Agreement of $295,000 ($105,000 for the license, and $190,000 for the development of the new web-based software; both due upon completion and satisfactory delivery of the new web-based software). Thus, in his correspondence, Mr. Zukowsky admits that the parties were acting in accordance with the express terms of the Software Development and Maintenance Agreements of 2005, causing SFM to be bound by the arbitration provision of the Agreements. Through the actions of Mr. Kogos and Mr. Zukowsky, SFM is now estopped from arguing to the contrary.

Furthermore, the purported illegitimacy of the contracts disputed by SFM and Mr. Zukowsky is undercut by the presence of specific provisions in the 2005 Software Development Agreement relating to Mr. Zukowsky. In order to ensure that La Rosa had access to the source codes and other information relating to the new web-based software should SFM go out of business, the parties agreed to designate a custodian for such

Ms. Kimberly F. Claxton, Case Manager (AAA)
AAA Case No.: 19 117 00027 07
Re: *La Rosa Del Monte Express, Inc., Claimant, vs. Software
For Moving, Inc., and Shlomo Kogos, as an Individual, Respondents.*
March 2, 2007
Page 4

information. See Exhibit "G", a true and correct copy of the Addendum to the 2005 Software Development and License Agreement. The custodian designated in the Addendum is none other than Mr. Zukowsky. Indeed, not only is Mr. Zukowsky identified by name as the custodian, but the address and telephone number for his law firm are also provided in the Addendum. It stretches all credibility for SFM to now assert the contracts at issue are void, or that Mr. Kogos did not execute them, when the 2005 Software Development Agreement references Mr. Zukowsky by name, and the information in the Agreement regarding the identity and contact information for SFM's counsel, Mr. Zukowsky, could only have one source – Mr. Kogos/SFM.

The past actions of the parties also conclusively demonstrate the idea that La Rosa and SFM would enter into verbal agreements regarding the 2005 Software Development and License Agreement and the Maintenance Agreement is preposterous. As Mr. Zukowsky acknowledges in his letter to Mr. Kevin Harrington of February 26, 2007, the parties did enter into a Software Agreement in March 1999 regarding the DOS/WINDOWS-based software. This 1999 Agreement relates to the development and licensing of the DOS/WINDOWS software by La Rosa from SFM. The 1999 Agreement involves sums far smaller than the amounts involved in the present 2005 Software Development and Maintenance Agreements. The parties then conducted themselves in accordance with the terms of this 1999 Agreement for almost five (5) years.

It goes completely against the parties' prior conduct regarding software development and licensing for SFM to now claim that La Rosa operated for two (2) years and paid hundreds of thousands of dollars to SFM without a written agreement with SFM regarding the new software which SFM was proposing to license to La Rosa. In fact, as described in the e-mails from Mr. Kogos and Mr. Zukowsky, SFM claims numerous intellectual property rights concerning the new software, yet amazingly asserts there exists no written contract establishing and defining such rights. SFM's asserted intellectual property rights in the new software only ring true if the parties had a written agreement about such property rights, an agreement SFM now claims does not exist.

Finally, at this stage of the Arbitration, pursuant to Rule 7 of the AAA Commercial Arbitration Rules, the arbitrator has the exclusive power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or the validity of the arbitration agreement. Indeed, under Rule 7(c), an arbitrator alone has the authority to make a ruling with regard to jurisdiction over the arbitability of a claim. Thus, SFM cannot

Ms. Kimberly E. Claxton, Case Manager (AAA)
AAA Case No.: 19 117 00027 07
Re: *La Rosa Del Monte Express, Inc., Claimant, vs. Software*
*For Moving, Inc., and Shlomo Kogos, as an Individual, Respondents.*
March 2, 2007
Page 5

escape arbitrating the issue of whether or not the arbitration clauses within the March 3, 2005 Agreements are valid.

Thank you in advance for your time and consideration in this matter.

Respectfully submitted,

Kevin J. Harrington

KJH:jjb

cc: **VIA FACSIMILE AND FIRST CLASS MAIL**:
    Philip A. Zukowsky, Esq.

EXHIBIT "A"

ORIGINAL

## SOFTWARE LICENCING AGREEMENT

WHEREAS, SAFEGUARD COMPUTER SERVICES, INC., a New York Corporation, maintaining offices at 24-16 Bridge Plaza South, Long island City, New York, 11101 (Hereinafter "Licensor") represents and warrants that it is the owner of all right, title and interest in and to the software applications and source code otherwise known and referred to for purposes of identification as the "MOVING MANAGER FOR WINDOWS" (Hereinafter "the Software"); and

WHEREAS, LA ROSA DEL MONTE EXPRESS, INC., a New York, Corporation with world headquarters located at 1133-35 Tiffany Street, Bronx, New York 10459, and primarily engaged in the moving, shipping and storage industry, its subsidiaries, sister corporations, partners, subsidiaries, affiliates and sub-licensees and/or associates, (Hereinafter collectively "Licensee"), desires to utilize the software in its day to day national and international operations; and

WHEREAS, Licensee desires certain specific and individual modifications to the software requiring additional code capable of meeting the unique and specific needs of licensee's national and international day to day operations; and

WHEREAS, Licensor warrants, that the software may be modified so as to accommodate licencee's unique needs and further agrees to modify the software to include the said specific and

Page 1 of 10

Agreement and the Software developed under this Agreement as well as confidentiality, indemnification, use, assignment, reproduction, warranty, ownership, return or destruction shall survive the delivery of the software and the payment of associated charges.

    22.  <u>GOVERNING LAW</u>.  This Agreement shall be governed by all the laws of the State of New York, including its conflicts of laws rules and/or common law precedent.

    IN WITNESS WHEREOF the parties have executed this Agreement this __ day of March, 1999.

_____
Safeguard Computer Services, Inc.
By: Shlomo Kogos, President


_____
La Rosa Del Monte Express, Inc.
By: Hiram Rodriguez, President

immediate repairs of said failures. If the failure is remedied
before the expiration of 36 cumulative days, including previous
failures, within that Phase, the required ninety (90) day uptime
period will continue to run.


IN WITNESS WHEREOF, each of the parties hereto has causes
this Agreement to be duly executed as of the date below.


Safeguard Computer Services, Inc.
By: Shlomo Kogos, President


La Rosa Del Monte Express, Inc.
By: Hiram Rodriguez, President

PROVISIONS OF COMPLIANCE AGREEMENT CONTROLLING. In the event of any conflict or apparent conflict between the terms and conditions of the License Agreement and the terms and conditions of this Compliance Agreement, the terms and conditions of this Compliance Agreement shall control. Except to the extent otherwise set forth herein, the terms and conditions of the License Agreement shall remain in full force and effect.

ENTIRE AGREEMENT. This Compliance Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof. This Compliance Agreement shall not be modified except by later written agreement signed by both parties.

IN WITNESS WHEREOF the parties have executed this Agreement this __ day of March, 1999.

Safeguard Computer Services, Inc.
By: Shlomo Kogos, President

La Rosa Del Monte Express, Inc.
By: Hiram Rodriguez, President

correction of software and Windows operating
systems bugs.

e.  Forms modifications, including modifications for
reports, letters, BOL and Order Service, Outside
agency forms and reports, Tariff Charges,
accounting department data merging and use, ddata
flow, and customization.

8.  Failure of Licensor to abide by the terms of this
maintenance agreement shall be deemed a substantial breach and
shall result in a waiver by Licensor of all Maintenance fees for
the period of said breach.


IN WITNESS WHEREOF the parties have executed this Agreement
this __ day of March, 1999.

Safeguard Computer Services, Inc.
By: Shlomo Kogos, President


La Rosa Del Monte Express, Inc.
By: Hiram Rodriguez, President

EXHIBIT "B"

10 11 2006  12:32   716991    3          PDM ACCOUNTING                      PAGE  01 17

# SOFTWARE DEVELOPMENT & LICENSE AGREEMENT

This Software Development & License Agreement ("Agreement") is made and entered into as of the _____ day of _____, 2005, by and between La Rosa del Monte Express Inc., having an office at 1133-35 Tiffany Street, Bronx, New York, and its Affiliates (hereinafter collectively referred to as the "Client") and **Software For Moving, Inc.**, having an office located at 211 Warren St., Suite 305, Newark, New Jersey 07103 (hereinafter referred to as the "Developer").

## RECITALS

WHEREAS, the Client operates a moving and storage business in the continental United States, Puerto Rico and the Dominican Republic; and.

WHEREAS, the Developer specializes in providing software development and programming services for storage and moving companies, and is the owner of certain software applications and source code known as "Moving Manager for Windows" ("Moving Manager"); and

WHEREAS, the Developer is the owner of certain software applications and source code known as "Moving Manager Web Version" ("Software X"); and

WHEREAS, the Client now wishes to have Software X modified to meet clients' specific needs as described in the specifications attached hereto as **Exhibit "A"** ("Specifications") and wishes to have Developer maintain, and license to Client, Software X as modified ("New Software"); and

WHEREAS, the Developer wishes to accept the assignment to provide services to the Client pursuant to the terms and conditions set forth in this Agreement.

NOW, THEREFORE, the parties hereto, intending to be legally bound by the terms hereof, hereby enter into the following agreements:

## ARTICLE I
## DEFINITIONS

1   *Definitions*. In this Agreement, the following terms shall have the meanings set forth below:

a)   "*Background IP*" means that intellectual property including know-how, secrets, designs, inventions, patents, patent applications, copyrights, maskworks, discoveries,

and binding on the parties to the arbitration. Judgment may be entered on the arbitrator's decision in any court of competent jurisdiction. The parties shall each bear their own attorney fees with respect to such Arbitration but shall share equally the other costs and expenses of arbitration.

13 *Controlling Law*.    The interpretation, construction and performance of this agreement and the rights and remedies of each party hereunder shall in all respects be governed by the laws of the State of New York, without regard to the conflict of laws provisions thereof. The parties further agree that venue shall be exclusively in the County of Westchester, New York

IN WITNESS WHEREOF, the parties hereto have duly entered and executed this Agreement as of the day and year first above written and represent and warrant that the party executing this Agreement on their behalf is duly authorized.

Software for Moving, Inc.
By:   Shlomo Kogos, President

La Rosa Del Monte Express, Inc.
By:   STEVEN DARZEN
       VP OPERATIONS

16

EXHIBIT "C"

# MAINTENANCE AGREEMENT

This MAINTENANCE AGREEMENT ("Agreement") is made and entered into as of the _3rd_ day of _March_, 2005, by and between **La Rosa del Monte Express Inc.**, a New York corporation, having an office at 1133-35 Tiffany Street, Bronx, New York, and its Affiliates (hereinafter collectively referred to as the "Client") and **Software For Moving, Inc.**, a _____, with its principal office at 211 Warren St., Suite 305, Newark, New Jersey 07103 (hereinafter referred to as the "Developer").

WHEREAS, Developer has agreed to modify and deliver certain Software ("Software") to the Client pursuant to a certain Development and License Agreement between them dated _March 3_, 2005 ("Development Agreement"); and

WHEREAS, the Client desires to have Developer maintain the Software and Developer desires to provide such maintenance services to Client.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, and intending to be legally bound hereby, the parties hereto agree as follows:

1. **Definitions.** Except as otherwise defined herein, all terms shall have the same meaning and definition given to them in the Development Agreement.

2. **Term.** This Agreement shall be in effect for successive one year terms beginning on the Effective Date of the Development Agreement, and shall automatically renew on each anniversary of the Effective Date unless (i) terminated in writing by the Client within thirty (30) days of any anniversary, (ii) terminated in writing by the Developer within thirty (30) days of the seventh (7th) anniversary of the Effective Date or (iii) sooner terminated by either party pursuant to Paragraph 9 below.

3. **Fees.** Client shall pay Developer a per user fee (each user location hereinafter referred to as a "Station") maintenance charge for the term of this Agreement. Agreed monthly maintenance charge is attached hereto as **Maintenance Schedule A**. Notwithstanding the effective date of this Agreement, payment of the maintenance fees shall commence only upon the completion of the Trial Period and training at each Station pursuant to the terms of the Development Agreement. In no event shall maintenance fees be required for any Station that (i) has not had the Software successfully installed, (ii) is incapable of using the Software because of Errors with the Software and/or (iii) has not had training completed by Developer.

4. **Stations.** It is contemplated by and between the parties that Client's operations shall in total contain 70 Stations spread out over Client's various national and international offices.

5. **Location of Maintenance.** Maintenance shall be provided at the location of the Station or by remote access, in accordance with the Client's needs. In the event that Developer

equally the other costs and expenses of arbitration. Notwithstanding the provisions of this paragraph 18, in the event that a party requires immediate injunctive relief, such party may obtain such relief in the Supreme Court of the State of New York, County of Westchester, and each party hereto submits to the jurisdiction of such Court.

19.   **Controlling Law.**   The interpretation, construction and performance of this Agreement and the rights and remedies of each party hereunder shall in all respects be governed by the laws of the State of New York, without regard to the conflict of laws provisions thereof. The parties further agree that venue shall be exclusively in the County of Westchester, New York

IN WITNESS WHEREOF, the parties have executed this Agreement this 3rd day of MARCH, 2005.

Software for Moving, Inc.
By:   Shlomo Kogos, President

La Rosa Del Monte Express, Inc.
By:   STEVEN DALZELL
      V P OPERATIONS

5

## MAINTENANCE SCHEDULE A

| Year | Monthly per user | Total Monthly @ 70 users |
|---|---|---|
| First Year | $55 | $3,850 |
| Second Year | $55 | $3,850 |
| Third Year | $55 | $3,850 |
| Fourth Year | $60 | $4,200 |
| Fifth Year | $65 | $4,550 |
| Sixth Year | $70 | $4,900 |
| Seventh Year | $80 | $5,600 |

By: _____
Software for Moving, Inc.
Shlomo Kogos, President

By: _____
La Rosa Del Monte Express, Inc.
STEVEN DREZZE
VP OPERATIONS

6

EXHIBIT "D"

NYNB
Account          04330124
Check            003916
Amount           10000.00
Date cleared:    8/29/2006
Run-batch-seq:   1-5-2480





EXHIBIT "E"

## Rob S Ocko

**From:** shlomo kogos [skogos@earthlink.net]
**Sent:** Wednesday, December 13, 2006 7:33 AM
**To:** Rob S Ocko
**Cc:** hrodriguez@larosadelmomte.com; rmedina@larosadelmonte.com
**Subject:** Re: La Rosa del Monte

Dear Mr. Ocko, Your client have been using The Moving Manager Windows Version, and the Dos Version of the Moving manager last about 10 years. Now they are using the ASP version(Internet) version.

The agreement with your client (on the Window and Dos versions) was $58,000 per year in maintenance charge to you.

We got paid $58,000 (late 2004) for the Year 2005.
We got paid $30,000 (around Oct 2006) The balance for the year 2006 is at least $28,000.
If you would like to keep using the Windows and Dos program next year the price is $116,000 (out of contract price, double).
If you do not pay us for the balance of 2006, $28,000 which was due in late 2005.
You are in default of the contract and in breach of the license agreement.
Please stop using the Windows and Dos program, other wise you are in copy write violation.
Again if you use the program in 2007 you violation the copy write agreement and you will owe us for year maintenance.

Your client has about 12 location. Each location is in violation since the program installed in each location.
Please submit to us a list of address where we can serve paper in each location.
If not we will use the web site address or whatever we find.

Again this email is about the old programs.
You are in violation of the agreement, and you are breaking the copy write law.

Mr. Ecko, I am asking you to talk to your client and explain to them the possible loss as a result of copy write violation Copy write court is different then small claim court.
That what the client knows a lot about, but not copy write court.

I had experience in the past with moving companies that did not want to pay maintenance and some who used the program after the contract expired.
We won all those cases.
The last mover paid $42,000 for one location.
If you want me to get you the info, I will do.
Maybe your client can win in small claim court, they will loss in federal court if the subject is copy write.

Again all I am asking is what due to me.

PLEASE ADVICE YOUR CLIENT THAT IF WE SUE HIM ON COPYWRITE VIALATION, HE MIGHT HAVE TO GET A COPYWRITE LAWYER, WHICH I THINK IT IS NOT YOU.

1/5/2007

EXHIBIT "F"

**Rob S Ocko**

| | |
|---|---|
| **From:** | Philip Zukowsky [paz@chklaw com] |
| **Sent:** | Friday, December 22, 2006 2.01 PM |
| **To:** | Rob S Ocko |
| **Cc:** | shlomo kogos |
| **Subject:** | La Rosa Del Monte |

Software for Moving is seeking to collect the following amounts from La Rosa Del Monte.

1. Dos and Window Program. The annual maintenance/license fee for the use of this program is $58,000. La Rosa has paid the annual fee in full through 2005. For 2006 it has only paid $30,000 (which payment was made in August 2006 although the annual fee is required to be paid in January). Thus, for 2006 La Rosa owes $28,000. If La Rosa chooses to use SFM's Dos and Window Program in 2007, an additional $58,000 is due on January 1, 2007.

2. New SFM Program. La Rosa contracted with SFM to use SFM's new server based program and for customization work to the program. The agreement called for payments to SFM of $295,000 payable no later than when La Rosa started to use the program, and an annual maintenance/license fee of $40,000 commencing in the month when La Rosa began using the program. La Rosa went live with the program in August. La Rosa has paid $242,500 of the $295,000 upfront money, so $52,500 of the upfront money is due and owing. There is also five months of fees due and owing, an additional $16,666. If La Rosa chooses to use SFM's New Program in 2007, an additional $40,000 is due on January 1, 2007.

In addition, two other fees were agreed to by La Rosa and SFM. The first was payment for enhancements to the program that La Rosa could accept or reject. An example of this is the Google Map feature that SFM added to the program. These total cost for these programs is $60,000. La Rosa can reject these enhancements and not have any payment obligations (in which case SFM will remove them from the program), or it can accept some or all of these enhancements. However, we want La Rosa to let us know their position on these as soon as possible.

The other fee was for "manifest planning" requested by La Rosa. This was additional customization requested by La Rosa. These are not optional like the fee discussed above. The total cost of the manifest planning enhancements is $50,000. However, SFM would be willing to discuss discounting this amount if La Rosa brings its account up to date promptly.

I look forward to hearing from you next week regarding this matter. However, as you can tell time is of the essence as beginning January 1, 2007, there will be additional fees dues from La Rosa. Best Regards and Merry Christmas to you.

Philip A. Zukowsky
Chernesky, Heyman & Kress P.L.L.
paz@chklaw.com
937-449-2842
937-449-2821 (fax)

==========================================
CIRCULAR 230 DISCLOSURE
==========================================
PURSUANT TO RECENTLY-ENACTED US TREASURY DEPT. REGULATIONS, WE ARE NOW REQUIRED TO ADVISE YOU THAT, UNLESS OTHERWISE EXPRESSLY INDICATED, ANY FEDERAL TAX ADVICE CONTAINED IN THIS COMMUNICATION, INCLUDING ATTACHMENTS AND ENCLOSURES, IS NOT INTENDED OR WRITTEN TO BE USED, AND MAY NOT BE USED, FOR THE PURPOSE OF (i) AVOIDING TAX-RELATED PENALTIES UNDER THE INTERNAL REVENUE CODE OR (ii) PROMOTING, MARKETING OR RECOMMENDING TO ANOTHER PARTY ANY TAX-RELATED MATTERS ADDRESSED HEREIN.

==========================================
PRIVILEGED AND CONFIDENTIALITY NOTICE
==========================================
THIS ELECTRONIC TRANSMISSION (AND/OR THE DOCUMENTS ACCOMPANYING IT) MAY CONTAIN CONFIDENTIAL INFORMATION

EXHIBIT "G"

1. 11 2006  12:32   716391   3         PDM ACCOUNTING              PAGE  15 11

# ADDENDUM TO
## SOFTWARE DEVELOPMENT & LICENSE AGREEMENT

I y agreement of both parties, in the event the "Developer" has ceased operations, is no longer a viable operating entity or due to a situation, emergency or otherwise, in which the "Developer" is unable to provide contracted services, upgrades or maintenance as required for the continued and uninterrupted use of "Software X" by "Client", the "Client" shall contact the agent of the "Developer", Mr. Philip Zukowsky of the firm Chernesky, Heyman & Kress, P.L.L. located at ) Courthouse Plaza SW, Suite 1100, Dayton, Ohio 45402, telephone 937-449-2800. Mr. Zukowsky will provide to "Client" at no additional charge (1) a copy of the source code for the program, (2) the right to make changes as necessary to source code for the continued and forever use of the program and (3) access to contact information of other companies utilizing "Moving Manager Web Version" so they may assist each other in maintaining the source code. The "Client" will be granted full ownership of the source code with the limitation that it cannot resell to others or allow to be installed at or used by a non-related entity of "Client".

Software for Moving, Inc.

By:   Shlomo Kogos, President

La Rosa Del Monte Express, Inc.

By:   STEVEN DMEELL
      VP OPERATIONS

17

**EXHIBIT "G"**

MAR. 7. 2007 12:03PM                                          NO. 1334   P. 2

 American Arbitration Association
*Dispute Resolution Services Worldwide*

Northeast Case Management Center
Catherine Shanks
Vice President
Christopher Fracasta, Yvonne L. Baglini
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone 866-293-4053 facsimile 401-435-6529
internet http://www.adr.org

# FAX

Date: March 7, 2007

To
Kevin J. Harrington, Esq.
Harrington, Ocko & Monk, LLP
81 Main Street, Suite 215
White Plains, NY 10601

Robert S. Ocko, Esq.
Harrington, Ocko & Monk, LLP
81 Main Street, Suite 215
White Plains, NY 10601

Philip A. Zukowsky, Esq.
Chernesky Heyman & Kress
10 Courthouse Plaza SW, Suite 1100
Dayton, OH 45402

Fax Number: 914 686 4824
            937 449 2821

From: Kimberly F. Claxton

Number of Pages: (including cover) 5

Re: 19 117 00027 07
    La Rosa Del Monte Express, Inc.
    and
    Software for Moving, Inc.and Shlomo Kogos

MESSAGE:

THIS FAX TRANSMISSION IS INTENDED ONLY FOR THE USE OF THE PERSON TO WHOM IT IS ADDRESSED. IT MAY CONTAIN INFORMATION THAT IS CONFIDENTIAL, PRIVILEGED OR OTHERWISE EXEMPT FROM DISCLOSURE. IF YOU ARE NOT THE INTENDED RECIPIENT OR THE PERSON AUTHORIZED TO DELIVER THIS FAX TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OF THIS FAX IS PROHIBITED. IF YOU HAVE RECEIVED THIS FAX IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AT THE NUMBER LISTED ABOVE AND RETURN THE ORIGINAL FAX TO US BY FIRST CLASS MAIL AT THE ABOVE ADDRESS.

MAR. 7. 2007 12:35PM                                                                    NO. 1336   P. 2

 American Arbitration Association
*Dispute Resolution Services Worldwide*

*Northeast Case Management Center*
Catherine Shanks
Vice President
Christopher Fracassa, Yvonne L. Baglini
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile 401-435-6529
internet: http://www.adr.org/

March 7, 2007

<u>VIA FACSIMILE</u>

Kevin J. Harrington, Esq.
Harrington, Ocko & Monk, LLP
81 Main Street, Suite 215
White Plains, NY 10601

Robert S. Ocko, Esq.
Harrington, Ocko & Monk, LLP
81 Main Street, Suite 215
White Plains, NY 10601

Philip A. Zukowsky, Esq.
Chernesky Heyman & Kress
10 Courthouse Plaza SW, Suite 1100
Dayton, OH 45402

Re: 19 117 00027 07
    La Rosa Del Monte Express, Inc.
    and
    Software for Moving, Inc. and Shlomo Kogos

Dear Counsel:

This will confirm a telephone call on March 6, 2007, with Mr. Harrington, Mr. Zukowsky, and the undersigned, wherein the following matters were discussed:

    This will acknowledge receipt of an email dated March 6, 2007, from Mr. Zukowsky a copy of which we note has been exchanged with Mr. Harrington.

    Inasmuch as the parties are not in agreement to apply the Optional Rules for Emergency Measures of Protection, these Rules will not apply and the Association will proceed with the administration of this matter in accordance with AAA Rules.

- <u>Number of Arbitrators:</u>

    Based on the call and the parties' agreement, the Association will appoint 1 arbitrator to hear and determine this dispute.

- <u>Desired Qualification in an Arbitrator:</u>

- Mr. Harrington has requested an arbitrator with experience in licensing agreements and general commercial arbitration experience.

- Mr. Zukowsky has requested an arbitrator with experience in contract law, development of software, software licensing, intellectual property and copyright law.

The parties have agreed to extend the search for arbitrator to include New York City.

The Association is in the process of compiling a list of arbitrators taking into consideration the aforementioned qualifications to the extent possible.

- **Locale:** The parties agreed that Westchester County shall be the locale of the hearing in the above referenced matter.

Since the Association does not maintain hearing rooms in Westchester County, the parties have agreed to hold the hearing in the offices of one of the representatives or at the arbitrator's office, if possible. Enclosed is listing of alternative hearing sites for your reference.

- **Number of days of hearing:** Mr. Harrington estimates that this matter will require approximately 2-3 days of hearing. Mr. Zukowsky estimates that this matter will require approximately 10 days of hearing.

- **Per the agreement of the parties the checklist for conflicts shall be returned by March 16, 2007.**

Per the agreement of the parties Respondent will submit their answering statement on or before March 16, 2007. If Respondent wishes to counterclaim, file the appropriate number of copies, together with the administrative fee, to the attention of the undersigned. A copy should be directly sent to Claimant.

The Association will require advance deposits once the arbitrator is appointed. These deposits are calculated on the number of days the parties have suggested will be necessary, in addition to the pre and post hearing time that the arbitrator may charge pursuant to the arbitrator's resume.

Mediation is available to the parties throughout the process of the arbitration. In addition to local mediators, the Association has a select group of mediators that serve on the AAA President's Panel of Mediators. Having already filed for arbitration, there is no additional administrative fee for this service. The compensation of the mediator will be based on the number of hours reported by the mediator. If at any point you would like to mediate please contact the undersigned.

Having already filed for arbitration, there is no additional administrative fee for this service. The compensation of the mediator will be based on the number of hours estimated by the mediator. Deposits will be requested in advance of the mediation.

Please visit our web site at www.adr.org to review our mediation section of the appropriate rules. You may also access "A Guide to Mediation and Arbitration for Business People" at that site. If you would like a printed copy of these procedures, please contact the undersigned.

As a reminder, cases may be viewed and managed online through AAA's WebFile.

In order to expedite administration, please direct all further correspondence to the address listed above.

Please do not hesitate to contact the undersigned should you have a question.

Sincerely.

Kimberly F. Claxton
Case Manager
401 431 4793
ClaxtonK@adr.org

*Supervisor Information: Karen Fontaine, 401 431 4798, fontainek@adr.org*

## White Plains

## ALTERNATIVE HEARING SITES

BECK LIEBMAN PETRONE, P.C.
399 Knollwood Road, Suite 311
White Plains, NY 10603
CONTACT: Denise Pectau
(914) 285-9500

$75 half day
$125 full day

Availability limited

CROWNE PLAZA
66 Hale Avenue
White Plains, NY 10601
CONTACT: James Constantino
(914) 821-1372

$300 per day

Call for further details

DRAKE, SOMMERS, LOEB,
TARSHIS & CATANIA, PLLC
1 Corwin Court
Newburgh, NY 12550
CONTACT: Joseph Catania
(845) 565-1100

$75 half day
$125 full day

Availability limited

HILTON – (Pearl River)
500 Veterans Memorial Drive

1

Pearl River, NY 10965
CONTACT: Wesley J. Trunko
(845) 735-9000
(845) 735-9005 - Fax                                            $300 per day          Call for further details

McCABE & MACK LLP
63 Washington Street
Poughkeepsie, NY 12602-0509
CONTACT: Patty Karcher
(845) 486-6800                                                  $100 per day          Availability limited

MARRIOTT HOTELS
CONTACT: Nathaniel (call for further details regarding all of the below locations)
(212) 589-1305

$175 - $300 per day depending upon location
- COURTYARD BY MARRIOTT (Tarrytown)
- WESTCHESTER MARRIOTT (Tarrytown)
- RENAISSANCE (White Plains)
- COURTYARD BY MARRIOTT (White Plains)
- COURTYARD BY MARRIOTT (Rye)
- COURTYARD BY MARRIOTT (Fishkill)
- COURTYARD BY MARRIOTT (Poughkeepsie)

WESTCHESTER COUNTY BAR ASSOCIATION
300 Hamilton Avenue, 3rd Floor
White Plains, NY 10601
CONTACT: Bob Bush
(914) 761-3707 ext. 10                         $70 half day          Call for further details
                                               $125 full day

2

**EXHIBIT "H"**

# AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| LA ROSA DEL MONTE EXPRESS, INC.<br><br>            Claimant,<br><br>vs.<br><br>SOFTWARE FOR MOVING, INC. and<br>SHLOMO KOGOS, as an Individual,<br><br>            Respondents. | Case No. 19 117 00027 07 |

## OBJECTION TO JURISDICTION

1.      LA ROSA DEL MONTE EXPRESS, INC. ("LA ROSA") filed a Demand for Arbitration (the "Demand") with the American Arbitration Association ("AAA") in February 2007 and the Demand was assigned the above Case No.

2.      LA ROSA claims as the basis for the AAA having jurisdiction in this case a certain Software Development and License Agreement (the "Exhibit B Agreement") that is attached as Exhibit "B" to the Demand.

3.      SOFTWARE FOR MOVING, INC. ("SFM") did not enter into the Exhibit B Agreement, nor did it otherwise agree to arbitrate its business transactions with LA ROSA.

4.      Because SFM has never agreed to arbitrate its business transactions with LA ROSA the AAA does not have jurisdiction over SFM or the subject matter of SFM's business transactions with LA ROSA.

5.      For the record, SFM has asked AAA for an immediate hearing on the jurisdiction issue but was refused.  SFM was told by AAA that it could only have an immediate hearing on the jurisdiction issue if LA ROSA agreed.  Thereafter, SFM asked LA ROSA to agree to an

emergency hearing on the jurisdiction issue but was refused. SFM is shocked and appalled by the failure of the AAA to have a system that deals with issues of jurisdiction prior to the time that the party asserting lack of jurisdiction has to file an answer to claims made in a Demand for Arbitration and any pertinent counterclaims such party may have.

6.    For the avoidance of doubt, SFM states for the record that it is never has, and still does not, agree to the assertion of jurisdiction by the AAA with respect to its business transactions with LA ROSA and it will resist such jurisdiction through any legal means available to it. SFM reserves its right to, and will, pursue its legal rights against LA ROSA in the appropriate courts of competent jurisdiction at the appropriate time.

Respectfully Submitted,

SOFTWARE FOR MOVING, INC.

S. Kogos
Shlomo Kogos, Officer
By Rudy Zekowsky, POA

TO:    Kimberly F. Claxton
American Arbitration Association
Claxtonk@adr.org

Kevin J. Harrington
Attorney for La Rosa Del Monte Express, Inc.
kharrington@homelegal.net

{00290611.DOC;3}                    2

EXHIBIT "I"

# Harrington, Ocko & Monk
### A LIMITED LIABILITY PARTNERSHIP
#### Attorneys at Law

White Plains Office

81 Main Street – Suite 215
White Plains, NY 10601
Tel:   (914) 686-4800
Fax:   (914) 686-4824

John T.A. Rosenthal, Esq.
e-mail: jrosenthal@homlegal.com

New York City Office

52 Duane Street, 7th
Floor
New York, NY 10007
Tel:   (212) 227-8004

Reply to White Plains
Office

March 21, 2007

VIA E-MAIL @ claxtonk@adr.org
and FACSIMILE @ (401) 435-6529

Kimberly F. Claxton
Case Manager
American Arbitration Association
Northeast Case Management Center
950 Warren Avenue
East Providence, RI 02914

> Re:    Case No. 19 117 00027 07
>        La Rosa Del Monte Express, Inc. and
>        <u>Software for Moving, Inc. and Shlomo Kogos</u>

Dear Ms. Claxton:

We write to you at this time with regard to proceeding forward with the arbitration in the above-captioned matter.

As you indicated in our previous phone conversation with yourself and Mr. Zukowsky, counsel for Respondent Software for Moving, Inc. ("SFM"), SFM had until March 16, 2007 by which to file an Answer and/or Counterclaims in this matter.

We are now in receipt of SFM's Objection to Jurisdiction. As you indicated in your prior conference call with counsel for the parties in this matter, jurisdiction is an issue for the arbitrator to decide pursuant to the AAA's Commercial Arbitration Rules. *See* AAA Commercial Arbitration Rules R-7(a)-(c). Rule 7(a)-(c) specifically provides that a party is to object to jurisdiction no later than the date it is required to file an Answer. Rule 7(c) also provides that the arbitrator may rule on such jurisdictional objection as a preliminary matter. Thus, we interpret SFM filing its Objection to Jurisdiction with the AAA as its Answer in this matter.

Kimberly F. Claxton - AAA
March 21, 2007
Page 2


    Pursuant to your previous instructions, we request that AAA provide each party and its counsel with a list of potential arbitrators from whom we have to choose, and that the parties proceed forward with the arbitration as expeditiously as possible, as provided for by the AAA Commercial Arbitration Rules.

    We would also request at this time that counsel for SFM provide us with the current address of SFM as well as the current address of SFM's President, Mr. Kogos.  We make this request in order to expedite service of papers in this matter.

    Thanking you in advance for your time and consideration to this matter.

                   Respectfully submitted,

                   John T.A. Rosenthal

JTR/sg

cc:    Philip A. Zukowsky, Esq.
       VIA E-MAIL @ paz@chk.law and FACSIMILE @ (937) 463-4947

```
··············· ·COMM  VERIF.· ·················· DATE MAR-21-2007  ···· TIME 15:26 ·········

    MODE = MEMORY TRANSMISSION        START=MAR-21 15:07   END=MAR-21 15:26

    FILE NO.=122

STN  COMM.  ONE-TOUCH/   STATION NAME TEL. NO.                PAGES    DURATION
NO.         ABBR NO.

001  BUSY   #            1-401-435-6529                       000/003  00:00:08
002  OK     #            1-937-463-4947-1983                  003/003  00:00:50


                                           -HARRINGTON OCKO MONK    -

··························· ··············· -914 686 4824    - #### -         - ########
```

# Harrington, Ocko & Monk
### A LIMITED LIABILITY PARTNERSHIP
### Attorneys at Law

White Plains Office

81 Main Street – Suite 215
White Plains, NY 10601
Tel:  (914) 686-4800
Fax:  (914) 686-4824

Kevin J. Harrington, Partner
e-mail: kharrington@homlegal.com

New York City Office

52 Duane Street, 7ᵗʰ Floor
New York, NY 10007
Tel: (212) 227-8004

Reply to White Plains Office

## FACSIMILE TRANSMISSION

March 21, 2007

To:      Kimberly F. Claxton, Case Manager          Fax No.: (401) 435-6529
         AMERICAN ARBITRATION ASSOCIATION

CC:      Philip A. Zukowsky, Esq.                    Fax No.: (937) 463-4947

Re:      *La Rosa Del Monte Express, Inc., Claimant, vs. Software*
         *For Moving, Inc., and Shlomo Kogos, as an Individual, Respondents.*
         Case No.: 19 117 00027 07

From:    Kevin J. Harrington, Esq.

No./Pages:  3 page(s), including cover sheet

MESSAGE:

### CONFIDENTIALITY NOTICE

This document contains confidential information subject to the attorney client privilege, which is intended to be read only by the person or persons named above. If you are not the recipient named above, DO NOT READ THE MATERIAL BELOW NOR ANY MATERIAL ATTACHED HERETO, but immediately (a) deliver it to the person or persons named above or (b) notify us by fax or telephone and destroy this document.

**Susan Glenn**

| | |
|---|---|
| **From:** | Susan Glenn |
| **Sent:** | Wednesday, March 21, 2007 3:35 PM |
| **To:** | 'claxtonk@adr.org' |
| **Cc:** | 'paz@chk.law' |
| **Subject:** | LaRosa Del Monte Express and Software for Moving and Kogos, Case No. 19 117 00027 07 |

**Susan Glenn**

| | |
|---|---|
| **From:** | Susan Glenn |
| **Sent:** | Wednesday, March 21, 2007 3:44 PM |
| **To:** | 'paz@chklaw.com' |
| **Subject:** | Case No. 19 117 00027 07, La Rosa Del Monte Express and Software for Moving and Kogos |

**EXHIBIT "J"**



**American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Northeast Case Management Center*
Catherine Shanks
Vice President
Christopher Fracassa, Yvonne L. Baglini
Assistant Vice Presidents

March 22, 2007

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

<u>VIA ELECTRONIC MAIL</u>

Kevin J. Harrington, Esq./ Robert S. Ocko, Esq.
Harrington, Ocko & Monk, LLP
81 Main Street, Suite 215
White Plains, NY 10601

Philip A. Zukowsky, Esq.
Chernesky Heyman & Kress
10 Courthouse Plaza SW, Suite 1100
Dayton, OH 45402

Re: 19 117 00027 07
    La Rosa Del Monte Express, Inc.
    and
    Software for Moving, Inc.and Shlomo Kogos


Dear Counsel:

This will acknowledge receipt of a letter dated March 21, 2007, from Mr. Rosenthal, a copy of which we note has been exchanged with the other party.

The Association has carefully reviewed the positions and contentions of the parties as set forth in their correspondence. The claimant has met the filing requirements of the rules by filing a demand for arbitration providing for administration by the American Arbitration Association under its rules.

Accordingly, in the absence of an agreement by the parties or a court order staying this matter, the Association will proceed with administration pursuant to the Rules. The parties may wish to raise this issue, upon appointment of the arbitrator.

The AAA serves as a neutral administrative agency and does not generally appear or participate in judicial proceedings relating to arbitration. The AAA should not be named as a party-defendant. The Rules state that the AAA is not a "necessary party". The AAA will abide by an order issued by the courts and the parties are requested to keep us informed as to the outcome.

In accordance with the Rules, the Association encloses a list of names selected from our roster from which one arbitrator is to be appointed. The parties are encouraged to agree upon an arbitrator and advise the Association of their agreement within 15 days from the date of this letter. Absent an agreement of the parties, each party shall independently strike the names objected to, number the remaining names in order of preference and return the list to the Association on or before April 6, 2007. If the list of arbitrators is not returned by the date specified, the arbitrator will be appointed as authorized in the Rules. Please leave as many names as possible. If the neutral arbitrator cannot be appointed from the list provided, the Association shall administratively appoint the arbitrator as authorized in the Rules without the submission of an additional list. The parties are to exchange copies of all correspondence except the checklist for conflicts and the arbitrator lists.

The list for selection of arbitrators is also available on-line through AAA's WebFile. The parties may strike and rank their preferences, which will be kept confidential.

Please note the arbitrators' rates of compensation indicated on the enclosed resumes.  The Association requires advance deposits calculated by the number of days the parties have suggested will be necessary, in addition to the pre-hearing time that the arbitrator may charge pursuant to the arbitrator's resume.

Upon appointment of the arbitrator a preliminary hearing will be set.

Sincerely,


Kimberly F. Claxton
Case Manager
401 431 4793
ClaxtonK@adr.org

*Supervisor Information: Karen Fontaine, 401 431 4798, fontainek@adr.org*

 **American Arbitration Association**
*Dispute Resolution Services Worldwide*

Re: 19 117 00027 07
La Rosa Del Monte Express, Inc.
and
Software for Moving, Inc. and Shlomo Kogos

DATE LIST SUBMITTED: March 22, 2007
CASE MANAGER: Kimberly F. Claxton

## LIST FOR SELECTION OF ARBITRATOR
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Once you have made your strikes please indicate your order of preference by number. We will make every effort to appoint the mutually acceptable arbitrator who can hear your case promptly, please leave as many names open as possible. Biographical information about the arbitrators listed below is attached. **If your list is not received by the Association on or before April 6, 2007, all names submitted shall be deemed acceptable.** If appointment cannot be made from this list, the Association may appoint without the submission of an additional list, in accordance with the rules. The parties are to exchange copies of all correspondence except the checklist for conflicts and this arbitrator selection list. For your convenience, this form may be completed online through AAA's WebFile.

Diana Lurie Boersma
Loretta M. Gastwirth
Peter Gates
Jeff Jinnett
Richard S. Mandel
Paul Bennett Marrow
Patricia J. Murphy
Judith B. Prowda
John M. Richardson
Jeremy D. Sussman

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Arbitrators are compensated at the rate stated on their biographical data. The compensation is an independent obligation of the parties and it is understood that the American Arbitration Association has no liability, direct or indirect, for such payments. Each party shall promptly make such deposits with the AAA as required by the case manager, pursuant to the Rules, subject to final apportionment by the arbitrator in the award.

Party: _____

By: _____     Title: _____

**EXHIBIT "K"**

APR. 0. 2007  2:51 PM                              NO. 3'43   P. 16

![American Arbitration Association logo]

American Arbitration Association
*Dispute Resolution Services Worldwide*

Northeast Case Management Center
Catherine Shanks
Vice President
Christopher Fracassa, Yvonne L. Baglini
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

# FAX

Date: April 16, 2007

To
Kevin J. Harrington, Esq.
Harrington, Ocko & Monk, LLP
81 Main Street, Suite 215
White Plains, NY 10601

Robert S. Ocko, Esq.
Harrington, Ocko & Monk, LLP
81 Main Street, Suite 215
White Plains, NY 10601

Philip A. Zukowsky, Esq.
Chernesky Heyman & Kress
10 Courthouse Plaza SW, Suite 1100
Dayton, OH 45402

Fax Number: 914 686 4824
              937 449 2821

From: Kimberly F. Claxton

Number of Pages: (including cover) 6

Re: 19 117 00027 07
    La Rosa Del Monte Express, Inc.
    and
    Software for Moving, Inc. and Shlomo Kogos

MESSAGE:

THIS FAX TRANSMISSION IS INTENDED ONLY FOR THE USE OF THE PERSON TO WHOM IT IS ADDRESSED. IT MAY CONTAIN INFORMATION THAT IS CONFIDENTIAL, PRIVILEGED OR OTHERWISE EXEMPT FROM DISCLOSURE. IF YOU ARE NOT THE INTENDED RECIPIENT OR THE PERSON AUTHORIZED TO DELIVER THIS FAX TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OF THIS FAX IS PROHIBITED. IF YOU HAVE RECEIVED THIS FAX IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AT THE NUMBER LISTED ABOVE AND RETURN THE ORIGINAL FAX TO US BY FIRST CLASS MAIL AT THE ABOVE ADDRESS.

APR. 16. 2007  2:52PM                                    NO. 8143—P. 2 6

 American Arbitration Association
*Dispute Resolution Services Worldwide*

*Northeast Case Management Center*
Catherine Shanks
*Vice President*
Christopher Fracassa, Yvonne L. Baglini
*Assistant Vice Presidents*

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

April 16, 2007

VIA
FACSIMILE/W/ENCLOSURES

Kevin J. Harrington, Esq.
Harrington, Ocko & Monk, LLP
81 Main Street, Suite 215
White Plains, NY 10601

Robert S. Ocko, Esq.
Harrington, Ocko & Monk, LLP
81 Main Street, Suite 215
White Plains, NY 10601

Philip A. Zukowsky, Esq.
Chernesky Heyman & Kress
10 Courthouse Plaza SW, Suite 1100
Dayton, OH 45402

Re: 19 117 00027 07
    La Rosa Del Monte Express, Inc.
    and
    Software for Moving, Inc. and Shlomo Kogos

Dear Parties:

This will advise the parties the Association has appointed Richard S. Mandel as arbitrator. Enclosed please find the arbitrator's duly executed Notice of Appointment and Notice of Compensation Arrangements.

The arbitrator is available to conduct a preliminary hearing on the following dates:

        May 1, 2007
        May 2, 2007
        May 3, 2007

Please provide your availability by April 20, 2007. If a response is not received by the Association by that date, we will assume all dates and times are acceptable and a preliminary hearing will be set.

Sincerely,

*Kimberly Claxton*

Kimberly F. Claxton
Case Manager
401 431 4793
ClaxtonK@adr.org

*Supervisor Information: Karen Fontaine, 401 431 4798, fontainek@adr.org*

Encl.

cc:    Richard S. Mandel, Esq.

APR-16-2007  15:00                          95%                          P.02

## AMERICAN ARBITRATION ASSOCIATION

In the Matter of Arbitration Between:

Re: 19 117 00027 07
    La Rosa Del Monte Express, Inc.
    and
    Software for Moving, Inc. and Shlomo Kogos

## Notice of Compensation Arrangements

**To:**  Richard S. Mandel, Esq.

You have been invited to serve as an arbitrator in the above matter. It is important that you understand the terms of your compensation and the role you play in ensuring that you receive payment for fees and expenses that you may incur during your service. This invitation to serve is based on our assumption that unless your panel biography states otherwise, you are willing to comply with the Association's *Billing Guidelines for Commercial, Construction, and Employment Neutrals*, which are enclosed. If you expect to assess charges that fall outside those guidelines and those charges are not detailed on your panel biography, you must notify the Association *prior to accepting your appointment* so that the parties can determine whether they still seek your services as an arbitrator.

### Your Compensation

This matter is being administered under the (Regular) procedures of the (Commercial) Arbitration Rules. As such, you will be compensated at the following rates, per the rate structure indicated on your biographical record:

| | |
|---|---|
| Hearing Time: | $380.00 per (hour) |
| Study Time: | $380.00 per (hour) |

Inasmuch as you are agreeing to serve in this matter at the above rate, any subsequent change to your published rate after your appointment will not apply to this case.

### Your Expenses

On most cases, your expenses should be nominal and will be reimbursed immediately after you submit them. For any single expense over $25, please include a receipt with your request for reimbursement.

If you anticipate that you will incur significant expenses, such as airfare or hotel room costs, please advise your Case Manager in advance so that the parties can be asked to make deposits prior to you incurring the expense.

### Deposits and Payment

Payment for your compensation is the obligation of the parties and it is understood that the American Arbitration Association has no liability, direct or indirect, for such payment. During the course of the proceeding the Case Manager will ask that you provide an estimate of the amounts needed to cover your fees. Generally this occurs immediately after the preliminary hearing, although on longer or more complex cases it can occur immediately upon appointment or after each series of hearings.

Unless you specify otherwise, the parties are advised that deposits are due 30 days prior to the first hearing. No later than two weeks prior to the hearing, the Case Manager will advise you of the total amount on deposit. Should the parties fail to make deposits in a timely manner, you must determine whether to go forward or suspend the proceedings until such time as deposits have been made. If you decide to go forward without full deposits, you may not subsequently delay the rendering of the award for lack of payment of your fees *The time to deal with this issue*

*it prior to the commencement of the hearings.* Should you decide to suspend the proceedings, your Case Manager can assist you in issuing an appropriate order to the parties.

If you realize that you are spending more time on this matter than you originally estimated, it is your obligation to inform the Case Manager *prior to exhausting the current deposit.* The Case Manager will then make arrangements with the parties for additional deposits per your instructions.

In order to receive payment, please submit bills promptly. Your bills should be submitted in a format that is presentable to the parties, should detail the dates on which the charges were incurred and must correspond with the terms of compensation outlined herein. Upon receipt, the AAA will release payment from the amounts deposited by the parties. Should there be insufficient funds on deposit, you will not receive payment until the parties have made additional deposits. Further, we will not use one party's deposit to cover another party's obligation without written permission to do so.

In the event your Award is delivered prior to payment by the parties of the agreed upon compensation, the Association is authorized but not obligated to seek to collect these monies on your behalf by all lawful means to represent you in any action or proceeding for such recovery and to file a claim in any bankruptcy or insolvency proceeding for such monies. The Association may prosecute and receive any recovery on behalf of the undersigned and has full authority to compromise or settle such claims as may be, in its discretion, appropriate. However, under no circumstances whatsoever will the Association be liable for any failure to collect any or all the monies due. The Association is authorized to subtract a reasonable amount for collection and attorney's fees.

### Failure to Disclose and Forfeiting Compensation

As an arbitrator in this matter, you have an ongoing obligation to disclose any direct or indirect relationship with the case participants  Your failure to make disclosures in a timely manner would be a serious transgression and may be grounds for your removal as arbitrator from this case and/or from the AAA's Roster of Neutrals. Should this occur, you may be required to forfeit the compensation for the time you spent on this matter after you should have made such disclosures.

If you are willing to serve on this matter per the compensation terms detailed above, please complete and sign the following section and return it, along with your Notice of Appointment, to your Case Manager.

### ARBITRATOR MUST COMPLETE THE FOLLOWING SECTION

Compensation payments, and the corresponding IRS reporting, will be made to either to you individually (attributed to your Social Security Number) or to your employer (attributed to the Employer Identification Number), based on the preference you indicated and as recorded in your panel record. If you are unsure of your current payment preference, you may contact your Case Manager or the AAA Department of Neutrals' Services. Promptly inform the AAA if this information is incorrect or changes during the case, or if an address correction is necessary.

If the AAA does not have the payee's tax information on record, we must withhold 31% of compensation payments, as required by the IRS. Reimbursements of expenses are not subject to withholding and are not reported to the IRS.

I am willing to accept appointment on this matter under the compensation terms detailed above.

Signed: _____    Date: 4/12/07

# AMERICAN ARBITRATION ASSOCIATION

**In the Matter of Arbitration Between:**

Re: 19 117 00027 07
    La Rosa Del Monte Express, Inc.
    and
    Software for Moving, Inc. and Shlomo Kogos

## NOTICE OF APPOINTMENT

**To:**    Richard S. Mandel, Esq.

> It is most important that the parties have complete confidence in the arbitrator's impartiality. Therefore, please disclose any past or present relationship with the parties, their counsel, or potential witnesses, direct or indirect, whether financial, professional, social or of any other kind. This is a continuing obligation throughout your service on the case and should any additional direct or indirect contact arise during the course of the arbitration or if there is any change at any time in the biographical information that you have provided to the AAA, it must also be disclosed. Any doubts should be resolved in favor of disclosure. If you are aware of direct or indirect contact with such individuals, please describe it below. Failure to make timely disclosures may forfeit your ability to collect compensation. The Association will call the disclosure to the attention of the parties.

You will not be able to serve until a duly executed Notice of Appointment is received and on file with the Association. Please review the attached *Disclosure Guidelines* and, after conducting a conflicts check, answer the following questions and complete the remainder of this Notice of Appointment:

|  | Yes | No |
|---|---|---|
| 1. Do you or your law firm presently represent any person in a proceeding involving any party to the arbitration? | ☐ | ☑ |
| 2. Have you represented any person against any party to the arbitration? | ☐ | ☑ |
| 3. Have you had any professional or social relationship with counsel for any party in this proceeding or the firms for which they work? | ☐ | ☑ |
| 4. Have you had any professional or social relationship with any parties or witnesses identified to date in this proceeding or the entities for which they work? | ☐ | ☑ |
| 5. Have you had any professional or social relationship of which you are aware with any relative of any of the parties to this proceeding, or any relative of counsel to this proceeding, or any of the witnesses identified to date in the proceeding? | ☐ | ☑ |
| 6. Have you, any member of your family, or any close social or business associate ever served as an arbitrator in a proceeding in which any of the identified witnesses or named individual parties gave testimony? | ☐ | ☑ |
| 7. Have you, any member of your family, or any close social or business associate been involved in the last five years in a dispute involving the subject matter contained in the case, which you are assigned? | ☐ | ☑ |
| 8. Have you ever served as an expert witness or consultant to any party, attorney, witness or other arbitrator identified in this case? | ☐ | ☑ |

9.  Have any of the party representatives, law firms or parties appeared before you in past arbitration cases?

10.  Are you a member of any organization that is not listed on your panel biography that may be relevant to this arbitration?

11.  Have you ever sued or been sued by either party or its representative?

12.  Do you or your spouse own stock in any of the companies involved in this arbitration?

13.  If there is more than one arbitrator appointed to this case, have you had any professional or social relationships with any of the other arbitrators?

14.  Are there any connections, direct or indirect, with any of the case participants that have not been covered by the above questions?

Should the answer to any question be "Yes", or if you are aware of any other information that may lead to a justifiable doubt as to your impartiality or independence or create an appearance of partiality, then describe the nature of the potential conflict(s) on an attached page.

Please indicate one of the following:

☑ – I have conducted a check for conflicts and have nothing to disclose.

☐  I have conducted a check for conflicts and have made disclosures on an attached sheet.

## THE ARBITRATOR'S OATH

State of _New York_

County of _New York_  } SS:

I attest that I have reviewed the panel biography which the American Arbitration Association provided to the parties on this case and confirm it is current, accurate and complete.

I attest that I have diligently conducted a conflicts check, including a thorough review of the information provided to me about this case to date, and that I have performed my obligations and duties to disclose in accordance with the Rules of the American Arbitration Association, Code of Ethics for Commercial Arbitrators and/or all applicable statutes pertaining to arbitrator disclosures.

I understand that my obligation to check for conflicts and make disclosures is ongoing for the length of my service as an arbitrator in this matter, and that failing to make appropriate and timely disclosures may result in my removal as arbitrator from the case and/or my removal from the AAA's Roster of Neutrals.

The Arbitrator being duly sworn, hereby accepts this appointment, and will faithfully and fairly hear and decide the matters in controversy between the parties in accordance with their arbitration agreement, the Code of Ethics, and the rules of the American Arbitration Association will make an Award according to the best of the arbitrator's understanding.

Dated: _4/12/08_                         Signed: _____

Sworn before me this _12_ day of _April_ , 200_7_

SHARON LYNCH
NOTARY PUBLIC, State of New York
No. 30-4749261
Qualified in Nassau County
95%

**EXHIBIT "L"**

## CHERNESKY, HEYMAN & KRESS P.L.L.
### ATTORNEYS AT LAW
10 COURTHOUSE PLAZA SW, SUITE 1100
DAYTON, OHIO 45402
P.O. BOX 3808
DAYTON, OHIO 45401-3808
937/449-2800

WRITER'S DIRECT DIAL
937/449-2842

WRITER'S FAX
937/463-4947

WRITER'S E-MAIL
paz@chklaw.com

WEBSITE
www.chklaw.com

May 15, 2007

Ms. Kimberly F. Claxton
Case Manager
American Arbitration Association
950 Warren Avenue
East Providence, RI 02914

     **RE:   19 117 00027 07**
              **La Rosa Del Monte Express, Inc. and**
              **Software for Moving, Inc. and Shlomo Kogos**

Dear Ms. Claxton:

     We understand that the May 16 conference call is to be devoted to matters such as scheduling. In anticipation of that conference call, we submit the following, which we ask you to refer to the arbitrator, Mr. Mandel.

     The authority of AAA to hear this matter derives from two purported written contracts, both of which contain arbitration clauses. La Rosa has referred to these as the "2005 Software Agreement" and the "2005 Maintenance Agreement" in its papers both here and in the Chicago Federal Court action; we will use this nomenclature for the sake of clarity.

     Respondent Kogos denies that he ever signed either document. He asserts that his purported signatures on these two documents are forgeries. Mr. Mandel has presumably been made aware of these assertions by AAA.

     In its Demand for Arbitration, La Rosa includes as an 'exhibit' to the 2005 Software Agreement a document that Mr. Kogos calls a "9/11 Agreement." Mr. Kogos acknowledges that he signed the 9/11 Agreement but that it was not presented in conjunction with the 2005 Software Agreement.

     Similarly, in its Demand, La Rosa includes as an 'exhibit' to the 2005 Maintenance Agreement a document entitled "Maintenance Schedule A." Mr. Kogos acknowledges that he signed this document as well – but insists that it was not presented in conjunction with the so-called 2005 Maintenance Agreement.

*CHERNESKY, HEYMAN & KRESS P.L.L.*

Ms. Kimberly F. Claxton
Page 2
May 15, 2007

Neither the Maintenance Schedule A nor the 9/11 Agreement contain arbitration clauses or confer any jurisdiction on AAA to hear any claims raised by La Rosa.

Respondents steadfastly maintain their objection to the jurisdiction in this case; they have asserted it since the Demand was first received by Respondents' counsel (it has never been served on either Respondent in any other fashion, even at this late date).

The Federal Arbitration Act provides a mechanism for compelling a reluctant party to arbitrate when it denies the arbitrability of a dispute. Both §§3 and 4 of the Federal Arbitration Act (9 U.S.C.A. §§3, 4) place the burden of proceeding on the party seeking the remedy of arbitration.

La Rosa invokes §4 of the Federal Arbitration Act as one of the arguments supporting its Motion to Dismiss now pending in the Chicago Federal Court (see Memorandum in Support of Defendants' Motion at §II.A., pp. 10 ff., esp. p. 11). Thus, it has placed the issue of arbitrability squarely before the Chicago Federal Court. Indeed, in the Initial Joint Status Report filed in the Chicago Federal Court last week the parties agreed that arbitrability was in issue: "The parties dispute whether or not Plaintiff's President, Shlomo Kogos, executed two contracts (called in the papers the 2005 License Agreement and the 2005 Maintenance Agreement) both of which contain arbitration provisions.

In pertinent part, §4 of the FAA states, "If the making of the arbitration agreement... be in issue, the court shall proceed summarily to the trial thereof. * * * Where such an issue is raised, the party alleged to be in default may... demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose." We understand that Mr. Mandel has been provided with a copy of our Complaint in the Chicago Federal Court case; he is therefore aware of our jury demand in that proceeding.

Counsel for La Rosa has accurately communicated the briefing schedule entered May 10 by Judge Andersen on La Rosa's Motion to Dismiss: Our response is due June 8, La Rosa's reply is due June 22 and the court has indicated that it will rule thereafter by mail. Counsel has also accurately reported the fact that Judge Andersen may not rule immediately after the close of the motion papers. There is nothing mandatory about the 30 to 60 day window for a ruling suggested by La Rosa's counsel, however; the court may rule in a shorter or longer time.

We suspect that, whenever the court does rule it will be to schedule some sort of hearing or 'trial' on the disputed factual issue, namely, whether the instruments in which La Rosa claims a right to arbitrate in its Demand for Arbitration are enforceable. This, presumably, will turn on the question of whether Mr. Kogos did or did not execute the documents in question. We do not presume to know when or how Judge Andersen will proceed in setting up the hearing required by §4 of the Arbitration Act particularly in light of the fact that, in its lengthy motion papers, La

*CHERNESKY, HEYMAN & KRESS P.L.L.*

Ms. Kimberly F. Claxton
Page 3
May 15, 2007

Rosa has neglected to call the court's attention to the fact that Mr. Kogos denies signing the key documents in this case. Judge Andersen can not be faulted for failing to take into account what La Rosa failed to communicate to him. There is, of course, a possibility that the court may dismiss our client's action on the initial grounds asserted by La Rosa, namely, the pleading issue concerning copyright registration – but this is unlikely inasmuch as the court, upon filing of the Complaint in Chicago, asked for and received – and spread of record – information pertaining to the registration of the software at issue here.

Either way, however, whether the Chicago court grants the dismissal motion outright, whether it orders a trial on the arbitrability issue, or whether it orders the Chicago action transferred to the Southern District of New York for any purpose, no purpose is served by setting arbitrary schedules and hearing dates at this time. If the factual issue is resolved against La Rosa, presumably this matter will be withdrawn by La Rosa or, failing that, dismissed by AAA. If the factual issue is resolved against Mr. Kogos and Software for Moving, the Respondents would still have their rights to be heard in this forum. And denial of these rights because of Respondents' assertion of rights specifically accorded them under the Federal Arbitration Act would render any award made in this proceeding voidable, if not void altogether.

What we have here is a situation where La Rosa has raised the issue of arbitrability squarely before the Chicago Federal Court, and then asks the arbitrator to decide the case before the Chicago Federal Court has the opportunity to decide the issue. The Chicago Federal Court should be given the opportunity to decide the issue it was asked to decide. When it is done deciding, we will then know whether or not this case has to be arbitrated. It only makes sense not to proceed to arbitration until the Chicago Federal Court has decided whether there should be arbitration.

We therefore respectfully suggest that this matter be postponed for 90 days pending resolution of the arbitrability issue which is now (finally) before the Federal Court. Obviously, should this issue be resolved in La Rosa's favor before the next scheduled date, the Petitioner would be free to ask for an advancement of that date.

Very truly yours,

Philip A. Zukowsky

PAZ:mz/20715
cc:    Kevin J. Harrington, Esq.
       Robert Ocko, Esq.
00298024

# EXHIBIT "M"

AMERICAN ARBITRATION ASSOCIATION

-----------------------------------------------------------------

**LA ROSA DEL MONTE EXPRESS, INC.,**

**Claimant**

v.

**Case No.**
**19 117 00027 07**

**SOFTWARE FOR MOVING, INC. and**
**SHLOMO KOGOS,**

**Respondents**

-----------------------------------------------------------------

**REPORT OF PRELIMINARY HEARING AND SCHEDULING ORDER NO. 1**

Pursuant to the Commercial Arbitration Rules of the American Arbitration

Association (AAA), a preliminary hearing was held on May 16, 2007 by telephone before

the Arbitrator Richard S. Mandel, Esq. Kevin J. Harrington, Esq. and John T.A.

Rosenthal, Esq. appeared on behalf of Claimant, and Philip A. Zukowsky appeared on

behalf of Respondents.

By Order of the Arbitrator, the following is now in effect, without prejudice to

Respondents' continued assertion of the defense that the AAA lacks jurisdiction over this

dispute:

1.     The parties will serve requests for production of documents on each other

by no later than May 25, 2007.

2.     Responses to the requests for production shall be served on the party

propounding the requests within 20 days after service of the requests. The responses

shall consist of the documents to be produced, objections to any requested documents that

are not produced and a privilege log describing any documents withheld on the grounds

of privilege.

1

3.     The parties shall notify each other in writing of any fact witnesses whom they wish to depose by no later than June 19, 2007.

4.     The parties are directed to meet and confer to resolve any disputed items with respect to the document requests and objections by no later than June 25, 2007. The parties are also directed to meet and confer by no later than June 25, 2007 with respect to the scheduling of the depositions referenced in paragraph 3 above and any objections to any requested depositions.

5.     In the event the parties are in good faith unable to resolve any disputes with respect to the document requests and/or depositions, they shall send letters to the AAA outlining their position on the open discovery items by no later than June 29, 2007.

6.     The parties are directed to enter into an appropriate confidentiality stipulation by no later than June 1, 2007 to govern discovery. The stipulation should be sent to the AAA when complete and will be so ordered by the Arbitrator if the parties wish. In the event the parties are unable in good faith to agree on the terms of a confidentiality stipulation, they shall write to the AAA outlining any issues in dispute by no later than June 5, 2007.

7.     The parties shall notify each other of any expert witnesses upon whom they intend to rely, and serve an accompanying expert report summarizing each such witness' opinions and the grounds for such opinions, by no later than July 16, 2007. The parties shall notify each other of any rebuttal expert witnesses upon whom they intend to rely, and serve an accompanying expert report summarizing each such witness' opinions and the grounds for such opinions, by no later than July 30, 2007. The parties may conduct depositions of any experts designated by the other side, and any such

2

depositions, along with depositions of any fact witnesses, shall be completed by no later than August 24, 2007.

8.     By agreement of the parties, in the event of any Court order staying the current arbitration proceeding, any discovery that has already been conducted in this arbitration proceeding may be used in any Court action between the parties.

9.     The parties agree that the place of the evidentiary hearings in this proceeding shall be New York City.

10.     The parties have requested a reasoned award.

11.     There will be a transcript of the hearings, and the cost of such transcript shall be borne equally by the parties, subject to the prevailing party's right to seek recovery of its portion of the costs as part of the award in this proceeding.

12.     A conference call with the Arbitrator shall be held on September 5, 2007 at 3:00 p.m. EST to address any issues with respect to the hearings in this matter.

13.     The parties will exchange and file hearing materials, witness lists, document lists and pre-hearing memoranda on September 7, 2007.

14.     Four days of evidentiary hearings are scheduled to be held on September 17-20, 2007, at the offices of the AAA, 1633 Broadway, New York, NY 10176. The hearings will begin promptly at 10:00 a.m. In the event that additional hearing dates are required, they will be scheduled upon the conclusion of the evidentiary hearings on September 20, 2007.

15. This order shall continue in effect unless and until amended by subsequent order of the Arbitrator.

Dated: May 17, 2007

RICHARD S. MANDEL, ESQ.

# EXHIBIT "N"



E-MAILED

Harrington, Ocko & Monk
A LIMITED LIABILITY PARTNERSHIP
Attorneys at Law

White Plains Office

81 Main Street – Suite 215
White Plains, NY 10601
Tel: (914) 686-4800
Fax: (914) 686-4824

John T. Rosenthal, Esq.
JRosenthal@homlegal.com

New York City Office

52 Duane Street, 7th Floor
New York, NY 10007
Tel: (212) 227-8004

Reply to White Plains Office

May 25, 2007

**VIA E-MAIL @ paz@chk.law
and FIRST CLASS MAIL**

Philip A. Zukowsky, Esq.
Chernesky Heyman & Kress, P.L.L.
10 Courthouse Plaza SW
Suite 1100
Dayton, OH 45402

Re:     *La Rosa Del Monte Express, Inc., Claimant, vs. Software
         For Moving, Inc., and Shlomo Kogos, as an Individual, Respondents.*

Dear Mr. Zukowsky:

Pursuant to the Arbitrator's May 17, 2007 Report of Preliminary Hearing and Stipulated Order No. 1 ("Order 1"), enclosed please find, for service upon you, Claimant's First Request for the Production of Documents.

In addition, pursuant to Order 1, enclosed please also find our proposed Confidentiality Order for this Arbitration. We believe the proposed Confidentiality Order is in accordance with our discussions with Arbitrator Mandel in this matter.

If you have any questions regarding this matter, please contact me at your earliest convenience.

Sincerely,

John T.A. Rosenthal

JTR/sg
Encl.

Cc:     Kimberly F. Claxton - via e-mail @ claxtonk@adr.org and First Class Mail
        Case Manager
        American Arbitration Association
        (w/encl.)

**EXHIBIT "O"**

Kimberly Claxton
American Arbitration Association-
Northeast Case Management Center
950 Warren Ave.
East Providence, RI 02914
Toll Free 866 293 4053
Direct Dial 401 431 4793
Fax 401 435 6529
claxtonk@adr.org
www.adr.org
*Supervisor information*: Karen Fontaine 401 431 4798 Fontainek@adr.org
*Supervisor Information*: Tracey Trudel, 401 431 4701TrudelT@adr.org
Confidentiality Notice:

This e-mail communication is confidential and is intended only for the individuals or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this e-mail in error by replying to the e-mail or by telephoning (866) 293 4053 during the hours of 8:30 A.M.- 5:30 P.M. (eastern time). Please then delete the e-mail and any copies of it. Thank you

6/21/2007

**EXHIBIT "P"**

# NYS Department of State

## Division of Corporations

### Entity Information

Selected Entity Name: SAFEGUARD COMPUTER SERVICES, INCORPORATED

Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | SAFEGUARD COMPUTER SERVICES, INCORPORATED |
| **Initial DOS Filing Date:** | OCTOBER 17, 1989 |
| **County:** | NEW YORK |
| **Jurisdiction:** | NEW YORK |
| **Entity Type:** | DOMESTIC BUSINESS CORPORATION |
| **Current Entity Status:** | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
SAFEGUARD COMPUTER SERVICES, INCORPORATED
FRAN WINTER
24-16 BRIDGE PLAZA SOUTH # 504
LONG ISLAND CITY, NEW YORK, 11101

**Chairman or Chief Executive Officer**
FRAN WINTER
24-16 BRIDGE PLAZA SOUTH
# 504
LONG ISLAND CITY, NEW YORK, 11101

**Principal Executive Office**
SAFEGUARD COMPUTER SERVICES, INCORPORATED
24-16 BRIDGE PLAZA SOUTH
# 504
LONG ISLAND CITY, NEW YORK, 11101

**Registered Agent**
NONE

NOTE: New York State does not issue organizational identification numbers.

Search Results          New Search

Division of Corporations, State Records and UCC Home Page     NYS Department of State Home Page

**EXHIBIT "Q"**

U.S. Copyright Office - Search Records Results

 Search Records Results

Registered Works Database (Registration Number Search)
**Search For:**

---

TX-4-426-709 (COHM)

| | |
|---|---|
| Title: | Moving manager. |
| Description: | Computer program. |
| Note: | Printout only deposited. |
| Claimant: | acSafeguard Computer Services, Inc. |
| Created: | 1990 |
| Published: | 19Oct90 |
| Registered: | 16Apr97 |
| Claim Limit: | NEW MATTER: revisions & additions. |
| Special Codes: | 1/C |

    Conduct Another Search

---

Home | Contact Us | Legal Notices | Freedom of Information Act (FOIA) | Library of Congress

U.S. Copyright Office
101 Independence Ave. S.E.
Washington, D.C. 20559-6000
(202) 707-3000

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

-------------------------------------------------------------x

SOFTWARE FOR MOVING, INC., a New
York Corporation,

                                Plaintiff,

                      v.

LA ROSA DEL MONTE EXPRESS, INC., a
New York Corporation, and LA ROSA DEL
MONTE  EXPRESS (CHICAGO), LLC, an
Illinois Limited Liability Company,

                             Defendants.

-------------------------------------------------------------x

**CASE NUMBER:  07 C 1839**

**Judge: Gottschall**

**Designated
Magistrate Judge: Jeffrey Cole**

**DECLARATION OF HIRAM RODRIGUEZ IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT
MATTER JURISDICTION, OR IN THE ALTERNATIVE, TO TRANSFER
THE ACTION TO THE SOUTHERN DISTRICT OF NEW YORK,
DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO
STAY ARBITRATION, DEFENDANTS' OPPOSITION TO STRIKE
DECLARATION OF JOHN T.A. ROSENTHAL, AND DEFENDANTS'
CROSS-MOTION TO STAY THE ACTION AND/OR COMPEL ARBITRATION**

I, HIRAM RODRIGUEZ, the undersigned, declare under penalty of perjury under the

laws of the United States that the following is true and correct, and that this Declaration was

executed on July 19, 2007, at Bronx, New York.

     1.    I am the President of Defendant, LA ROSA DEL MONTE EXPRESS, INC. ("La

Rosa"), in the above-captioned action.  I make this Declaration in support of Defendants' motion

to dismiss Plaintiff's Amended Complaint, or in the alternative, to stay this action and/or compel

Plaintiff, SOFTWARE FOR MOVING, INC. ("SFM"), to arbitrate this dispute, or to transfer

this action to the United States District Court for the Southern District of New York.  I know all

1

of the following facts of my personal knowledge or through conversations with employees, former employees and/or agents of La Rosa, and, if called and sworn as a witness, could and would testify competently thereto.

2.    La Rosa is a New York corporation with its principal place of business located at 1133-35 Tiffany Street, Bronx, NY 10459. La Rosa is in the business of moving and transporting clients' goods to various places within the United States and countries in the Caribbean, including Puerto Rico.

3.    In or about November and/or December of 2004, La Rosa entered into discussions with SFM to engage SFM to provide La Rosa with a web-based version of the Moving Manager Software. Previously, in 1999, La Rosa and a company by the name of Safeguard Computer Services, Inc. ("Safeguard") had entered into a written Software Agreement in which Safeguard agreed to provide La Rosa with a Windows/Dos-based version of the Moving Manager Software. *See* annexed hereto as Exhibit "A", a true and correct copy of the 1999 Software License Agreement ("1999 Agreement"). SFM's President, Shlomo Kogos, was the President of Safeguard at the time La Rosa and Safeguard entered into the 1999 Agreement..

4.    With regard to the new software agreements, La Rosa employee, Steven Dalzell, principally handled the negotiations with SFM concerning the 2005 Software & License Agreement ("2005 Software Agreement") as well as the 2005 Maintenance Agreement (together with the 2005 Software Agreement, the "2005 Agreements"). Mr. Dalzell kept me apprised of how negotiations with SFM were proceeding with regard to the 2005 Agreements, and informed me in 2005 that the 2005 Agreements were executed. Mr. Dalzell also kept me informed about the implementation of the 2005 Agreements, and new software program. See Exhibit "B" a true and correct copy of the 2005 Software Agreement.

5.     The following terms are defined within the 2005 Software Agreement: (1) "current maintenance agreement" means the Maintenance Agreement between La Rosa and SFM dated March 1999; (2) "current software" means the DOS/Windows-based software developed and maintained by SFM pursuant to the 1999 Software Agreement between the parties; (3) "deliverables" means new web-based software in object and/or source codes and all other materials required to be delivered by SFM to La Rosa under the 2005 Software Agreement; (4) "new software" means the source code and executable object code for all computer programs, subroutines, diagnostic routines, control software, special software to be delivered by SFM under the 2005 Software Agreement. Demand, at §1.1.

6.     Under the terms of the 2005 Software Agreement, La Rosa was to pay SFM $190,000 for development and delivery of the new web-based software.  2005 Software Agreement, at §4.1.  In addition, La Rosa was required to pay SFM a license fee of $105,000 for the use of the new software.  2005 Software Agreement, at §6.6.

7.     Under the specific terms of the Agreement, La Rosa was required to make these payments with regard to the development and delivery of the new software in installments.  La Rosa, however, was not required to make these installment payments to SFM if there were disputed invoices or disputes as to whether a particular phase of software development had been successfully completed and delivered.  2005 Software Agreement, at §§4.1, 4.2.  In addition, La Rosa was not required to pay SFM the final 10% of the development fee (approximately $19,000) until all deliverables had been provided to La Rosa by SFM, and La Rosa was able to utilize the new software successfully for a period of ninety (90) days without failure; defined in the 2005 Software Agreement as the "Trial Period".  2005 Software Agreement, at §4.2.

Payment of the license fee for the new software was not to occur until successful completion of the Trial Period. 2005 Software Agreement, at §6.6.

8.  The 2005 Software Agreement also provided that SFM was to continue to maintain all DOS/Windows-based software pursuant to the terms of the parties' 1999 Software Agreement until the new web-based software was fully delivered and the Trial Period successfully completed. 2005 Software Agreement, at §4.6. In exchange for SFM maintaining the old DOS/Windows-based software, La Rosa agreed to pay SFM a maintenance fee of $58,000 for the continued use of the current software. *Id.*

9.  Pursuant to the 2005 Software Agreement, La Rosa had the right to terminate the Agreement if SFM failed to perform a material obligation under the Agreement. 2005 Software Agreement, at §12.1. If La Rosa terminated the Agreement due to SFM's default and material breach, La Rosa had the right to demand SFM return all monies paid to SFM pursuant to the Agreement. *Id.*, at §12.2. In addition, if SFM defaulted and materially breached the Agreement, La Rosa had the right to continue to use the 1999 DOS/Windows-based software and to require that SFM continue to provide maintenance for that software. *Id.*, at §12.2. Furthermore, the 2005 Software Agreement provided that even if the Agreement was terminated by SFM, La Rosa had a right to continue to use the 1999 DOS/Windows-based software. *Id.*, at §12.4.

10.  Under the terms of the 2005 Software Agreement, SFM specifically agreed to arbitrate "any dispute or controversy arising out of, relating to, or in conjunction with the interpretation, validity, construction, performance, breach or termination of this agreement", and that such binding arbitration would be held in Westchester County, New York, pursuant to the rules of the American Arbitration Association. 2005 Software Agreement, at §13.12. In

4

addition, SFM agreed that the venue for any dispute would be exclusively in the County of Westchester, New York. *Id.*, at §13.13.

11.   Attached as Exhibit "C" to the hereto is the March 3, 2005 Maintenance Agreement ("2005 Maintenance Agreement") entered into between SFM and La Rosa with respect to the new web-based software.

12.   Under the 2005 Maintenance Agreement, SFM was required to maintain the new web-based software once it was installed. 2005 Maintenance Agreement.

13.   Under the terms of the 2005 Maintenance Agreement, La Rosa was to pay SFM a yearly maintenance fee of approximately $46,200 pursuant to Schedule A of the 2005 Maintenance Agreement.   2005 Maintenance Agreement, at §3, Maintenance Schedule A. Payment of the maintenance fee to SFM was not to begin until completion of the Trial Period as that term is defined in the 2005 Software Agreement. 2005 Maintenance Agreement, at §3.

14.   In the event of default by SFM for failing to perform its material obligations under the 2005 Maintenance Agreement, La Rosa was entitled to withhold payment of the maintenance fees owed until the default was cured. 2005 Maintenance Agreement, at §8.

15.   Pursuant to the express terms of the 2005 Maintenance Agreement, SFM was required to arbitration "any dispute or controversy arising out, relating to, or in connection with the interpretation, validity, construction, performance, breach or termination of this agreement." *Id.*, at 18. Arbitration, pursuant to the terms of the 2005 Maintenance Agreement, was to be conducted exclusively in Westchester County, New York under the American Arbitration Association rules.   *Id.*   In addition, if either party to the Agreement was of the belief that it required immediate injunctive relief, that party could obtain such relief only through proper application to the Supreme Court of the State of New York in Westchester County, and that

5

venue for any conflicts would be <u>exclusively</u> in the County of Westchester, New York. *Id.*, §§18, 19.

16. Between March 2005 and November 2006, SFM attempted to create and provide La Rosa with a web-based version of the Moving Manager Software. During that period, Mr. Shlomo Kogos, President of SFM, had almost unfettered access to La Rosa's office spaces in the Bronx, New York, including the office space in which La Rosa kept contracts like the 2005 Software & License Agreement, 2005 Maintenance Agreement, the associated Addendum and Maintenance Schedule A. Mr. Kogos was often at La Rosa's offices 3 to 5 hours per day during this period facilitating the implementation and integration of the new software into La Rosa's business and onto La Rosa's computer system.

17. In or about September 2006, I requested that Steven Dalzell provide me with a copy of the 2005 Software & License Agreement entered into between La Rosa and SFM. I requested a copy of the contract in conjunction with my meeting with La Rosa employees in Puerto Rico in order to discuss with these employees the problems with the new web-based software as well as implementation issues concerning such software. Mr. Dalzell informed me that he was unable at that time to locate the signed original of the 2005 Agreements, and that he would contact Mr. Kogos of SFM in order to obtain a copy of these Agreements.

18. Subsequently, while I was still in Puerto Rico, Mr. Dalzell contacted me and informed me that he had contacted Mr. Kogos about this issue, and that Mr. Kogos had brought him a copy of the executed 2005 Agreements, and provided copies of those Agreements to Mr. Dalzell. Mr. Dalzell subsequently faxed a copy of written Agreements to me in Puerto Rico.

19. La Rosa is basically a family run business; I am the President of La Rosa. La Rosa does have offices and affiliates located in various states in the United States as well as Puerto

Rico. However, La Rosa's offices in the Bronx , New York, are the hub and focal point of La Rosa's business operations. Indeed, on any given day, both myself and Roberto Medina, La Rosa's Controller, are required to make numerous decisions regarding the business, including gathering information about various clients' needs, soliciting new clients, contacting and monitoring moving contractors, making payments to contractors, tracking the shipment of client goods, and ensuring that our clients' goods are picked up and delivered to the appropriate destinations on time.

20. Our business requires face-to-face communications with clients and contractors, as well as relatively quick decisions about certain aspects of the business. Without the ability of either myself or Mr. Medina to gather facts and make decisions in a timely manner, our business would be at a competitive disadvantage to other moving businesses both in New York City, and in various states throughout the United States. Such competitive disadvantage and inconvenience to La Rosa's business operations could be mitigated if this action were transferred to the Southern District of New York. Due to the close vicinity of La Rosa's principal place of business to New York City, a trial of this matter in the Southern District of New York would allow either myself or Mr. Medina to have continued access to our employees, our customers, our contractors, and any facts that would be necessary for our review in order to make prompt and appropriate business decisions.

21. If this action were to remain in the Northern District of Illinois, and we were required to both be available for testimony during the duration of the litigation, it would be a serious impediment to La Rosa's ability to conduct its business., and place La Rosa at a competitive disadvantage.

Dated: July 19, 2007
Bronx, New York

7

HIRAM RODRIGUEZ

Dated: July *19*, 2007

Sworn to before me
this *19* day of July 2007

BRUCE B. BROWN JR.
Notary Public, State Of New York
No. 01BR6076996
Qualified In Bronx County
Commission Expires July 1, 20 *10*

8

# EXHIBIT "A"

*L AST*

*final*

*3/.24/85*

**ORIGINAL**

## SOFTWARE LICENCING AGREEMENT

WHEREAS, SAFEGUARD COMPUTER SERVICES, INC., a New York Corporation, maintaining offices at 24-16 Bridge Plaza South, Long island City, New York, 11101 (Hereinafter "Licensor") represents and warrants that it is the owner of all right, title and interest in and to the software applications and source code otherwise known and referred to for purposes of identification as the "MOVING MANAGER FOR WINDOWS" (Hereinafter "the Software"); and

WHEREAS, LA ROSA DEL MONTE EXPRESS, INC., a New York, Corporation with world headquarters located at 1133-35 Tiffany Street, Bronx, New York 10459, and primarily engaged in the moving, shipping and storage industry, its subsidiaries, sister corporations, partners, subsidiaries, affiliates and sub-licensees and/or associates, (Hereinafter collectively "Licensee"), desires to utilize the software in its day to day national and international operations; and

WHEREAS, Licensee desires certain specific and individual modifications to the software requiring additional code capable of meeting the unique and specific needs of licensee's national and international day to day operations; and

WHEREAS, Licensor warrants that the software may be modified so as to accommodate licencee's unique needs and further agrees to modify the software to include the said specific and

Page 1 of 10

individual modifications to the software and to cause to have written the necessary additional software code capable of meeting the said unique and specific needs of licensee's national and international day to day operations;

NOW, THEREFORE, in consideration for valuable consideration, receipt of which is hereby acknowledged (the terms and conditions of which are set out at **Exhibit "A"**), Licensor agrees to develop and/or modify its software and grants Licensee a license to use its software pursuant to the terms which follow:

## TERMS AND CONDITIONS OF SOFTWARE USE

1.  <u>SCOPE OF LICENSES</u>.  (a) Licensee is hereby licensing the use of Licensor's MOVING MANAGER software (the "Software"), and thus to make copies of Licensor's copyrighted materials, on Licensee's computer systems.  (b) This license is limited to use of the Software at the site(s) specified and only for purposes of Licensee's own moving and shipping enterprise.  (c) This license grants Licensee the right to make one back up copy of the Software per site which may be stored away from the site(s) or at such location(s) as Licensor may determine at its convenience and for the sole purpose of making said backup copy immediately available if and when the need for its utilization should arise.

Page 2 of 10

2. <u>TERM OF LICENSE; TERMINATION; CONSIDERATION</u>. (a) This license begins on the date that the Software is installed at any of Licensee's sites. This license is perpetual unless its terms are breached by Licensee. (b) This license in its entirety and as to all Software licensed shall terminate immediately if Licensee does not comply with these terms, including but not limited to, non payment of licensing fees or maintenance fees, unauthorized copying or use of the Software, or unauthorized modification of the Software. (C) Upon termination, the license shall cease, and all copies of the Software shall be returned to Licensor or destroyed, at Licensor's option. Use of the Software is not authorized after termination by Licensor and shall be considered by Licensor to be infringement of its intellectual property rights, in addition to any other rights that may accrue to Licensor by such use. Payment of fees shall be made pursuant to the Schedules attached hereto at **Exhibit "A" and "C"**

3. <u>GUARANTEE OF ORIGINAL DEVELOPMENT</u>. Licensor warrants that all modifications developed hereunder will be of original development by Licensor, and will be specifically developed for the fulfillment of this Agreement and will not infringe upon or violate any patent, copyright, trade secret or other proprietary right of a third party, and Licensor will indemnify and hold Licensee harmless from and against any loss, cost, liability or expense (including reasonable counsel fees) arising out of any

breach or claimed breach of this warranty; Licensor shall assist Licensee in the expeditious transfer of licenses and/or title for use of perpetual licenses to Licensee for such non-original components unless Licensee already has title or license to any non-original components used hereunder.

4. <u>PATENT COPYRIGHT OR TRADE SECRET INDEMNITY</u>. Licensor will defend at its expense, any action brought against Licensee or Licensor that is based on a claim that the systems developed and furnished hereunder infringes a United States patent or copyright or trade secret or other proprietary right of a third party and will pay the loss, damages, and reasonable attorney fees finally incurred by or awarded against Licensee in any such actions which are attributable to any such claim, but such defense and payments are conditioned on the following: (1) Licensee promptly notifies Licensor in writing of the claim, and (2) Licensor shall have sole control of the defense of any such action on such a claim and all negotiations for its settlement or infringement of a United States patent or copyright, Licensee shall permit Licensor, at its option and expense, either to procure for Licensor the right to continue using the Software, to replace or modify the same so that they become non-infringing, or to accept Licensee's return of the Software and grant Licensee a refund of monies paid under this Agreement. Licensor shall have no obligation to defend Licensee or to pay costs, damages, or

<div align="center">Page 4 of 10</div>

attorney's fees for any claim based upon (1) use of other than an unaltered configuration of the Software if such infringement would have been avoided by the use of an unaltered configuration of the Software, or the combination, operation, or use of any Software furnished hereunder with non-Licensor programs or data if such infringement would have been avoided by the combination, operation, or use of the Software with other programs or data.

5.  INDEMNIFICATION INCLUSION OF COSTS. Each party hereunder agrees to indemnify the other against all losses, costs, expenses (including reasonable counsel fees) which may occur by reason of the breach of any term, provision, warranty or representation contained herein and/or in connection with the enforcement of this Agreement or any provision thereof.

6.  MODIFICATION OF SOFTWARE.  Licensee shall not modify nor authorize modification of any of the Software in any manner without the express written permission of Licensor. The parties agree that Licensor possess certain unique knowledge of Licensee's business enterprise making Licensor the unique candidate for the development of the software for Licensee, and therefore, this Agreement may not be assigned by Licensor without the prior written consent (not to be unreasonably withheld) of Licensee.

7.  NOTICES OF INTELLECTUAL PROPERTY RIGHTS. Licensee shall assure that Licensor notices of intellectual property (e.g., copyright notices contained in the software) shall remain within the Software.

8.  <u>WARRANTIES; LIMITATIONS ON LIABILITY</u>. LICENSOR DOES NOT GUARANTEE THAT THE SOFTWARE WILL MEET "ALL REQUIREMENTS" OF CUSTOMER'S BUSINESS OR THAT THE SOFTWARE WILL INTERFACE WITH THE SOFTWARE AND HARDWARE WITH WHICH CUSTOMER INTENDS IT TO OPERATE WITH TO UTILIZE THE SOFTWARE.  LICENSOR WARRANTS THAT THE SOFTWARE, AS MODIFIED, HAS BEEN DEVELOPED FOR OPERATION UNDER THE WINDOWS OPERATING SYSTEM.  Licensor warrants that the software shall be Y2K compliant pursuant to separate agreement incorporated by reference and attached hereto at **Exhibit "B"**.

9.  <u>CONFIDENTIALITY AND SECURITY OF THE SYSTEMS</u>. Each party acknowledges that all material and information which has or will come into the possession and knowledge of each other in connection with this Agreement or the performance hereof, consists of confidential and proprietary data, whose disclosure to or use by third parties will be damaging, both parties, therefore, agree to hold such material and information in strictest confidence, not to make use thereof other than for the performance of this Agreement, to release it only to employees requiring such information, and not to release or disclose it to any other party.

10.  <u>RIGHTS TO NEW IDEAS AND CODE</u>. The parties acknowledge that performance of this Agreement will result in the development of new proprietary and secret concepts, methods, techniques, processes, adaptations and ideas. The parties agree that the same

shall belong solely to Licensee without regard to the origin thereof and that Licensor will not, other than in the performance of the Agreement, without the express written consent, which will not be unreasonably withheld, sell, make use or disclose same to any person, group, company or corporation that competes with Purchaser's business as defined herein.

11. <u>ASSIGNMENTS</u>. This Agreement and its rights, duties and obligations may not be assigned by Licensee without the prior written consent of Licensor.

12. <u>COPYING</u>. All intellectual property, including but not limited to copyright, patents and trade secrets, in the Software, except for improvements, revisions, and modifications made at specific request of Licensee, shall remain the property of Licensor. Licensee agrees that, except as directed by Licensor and this Agreement, it will not at any time during or after the term of this Agreement allow unauthorized copying of the Software.

13. <u>INJUNCTIVE RELIEF</u>. Licensee acknowledges that unauthorized use or copying of the Software will give rise to irreparable injury to Licensor, and leave Licensor inadequately compensable in damages. Accordingly, Licensor may seek and obtain injunctive relief against the breach or threatened breach of license terms, in addition to any other legal remedies which may be available. Licensee further acknowledges and agrees that

the covenants contained herein are necessary for the protection of Licensor's legitimate business interests and are reasonable in scope and content.

14. <u>NOTICE OF NON AFFILIATION</u>. Licensor is not affiliated in any way with Safeguard Business Systems, Inc.; which is a totally separate and independent company that neither sponsors nor endorses Licensor's activities.

15. <u>TRAINING</u>. Licensor shall provide the operational manuals and onsite training to Licensee's designated personnel as provided for under the maintenance provisions stated herein and set out at **Exhibit "C"**.

16. <u>MAINTENANCE</u>. Maintenance schedules and fees shall be in compliance with the terms and conditions made a part hereof and incorporated by reference as set out at **Exhibit "C"**.

17. <u>LICENSOR'S EMPLOYEES ASSIGNED TO THIS AGREEMENT</u>. In the event that Licensor uses contractors or subcontractors, Licensor specifically assumes all responsibilities for such contractors or subcontractors as if they were employees of Licensor, and Licensor shall indemnify and hold harmless Licensee for the acts of such contractors or subcontractors. Licensor-assigned employees may be rejected by Licensee should Licensee determine unilaterally that any employee's services are unsatisfactory. Upon written notification from Licensee regarding an unsatisfactory employee, Licensor shall remove such employee

immediately and replace the removed employee with an employee acceptable to Licensee as soon as possible. Under no circumstances shall Licensor's employees be considered employees of or agents of Licensee.

18. FORCE MAJEURE. Neither party shall be responsible for delays or failures on performance resulting from acts beyond the control of such party. Such acts shall include but not be limited to acts of God, strikes, lockouts, riots, acts of war, epidemics, government regulations superimposed after the fact, fire, communication line failures, power failures, earthquakes or other disasters.

19. COMPLIANCE WITH ALL LAWS - PARTIAL INVALIDITY. Each party agrees that it will perform its obligations hereunder in accordance with all applicable laws, rules and regulations now or hereafter in effect. If any item or provision of this Agreement shall be found to be illegal or unenforceable, them notwithstanding, this Agreement shall remain in full force and effect and such term or provision shall be deemed stricken.

20. ALL AMENDMENTS IN WRITING. No amendments to this Agreement shall be effective unless they are in writing and signed by duly authorized representatives of both parties.

21. HEADINGS NOT CONTROLLING. Headings used in this Agreement are for reference purposes only and shall not be deemed a part of this Agreement.

23. SURVIVAL BEYOND COMPLETION. The provisions of this

Agreement and the Software developed under this Agreement as well
as confidentiality, indemnification, use, assignment,
reproduction, warranty, ownership, return or destruction shall
survive the delivery of the software and the payment of
associated charges.

22.  <u>GOVERNING LAW</u>.  This Agreement shall be governed by all
the laws of the State of New York, including its conflicts of
laws rules and/or common law precedent.


IN WITNESS WHEREOF the parties have executed this Agreement
this __ day of March, 1999.


_____
Safeguard Computer Services, Inc.
By: Shlomo Kogos, President


_____
La Rosa Del Monte Express, Inc.
By: Hiram Rodriguez, President

# EXHIBIT "A"

## FEES AND MILESTONES

Licensee agrees to pay $83,000.00 (Hereinafter "the Licensing Fee") to Licensor for the perpetual License to use the software at sixty-three (63) sites as defined in **Exhibit "C"**, the Software Maintenance Agreement.  Licensee further agrees to pay an additional $1,000.00 licensing fee for each additional site which is added in excess of the said sixty-three sites provided for herein.  The Licensing Fee shall be paid in accordance with five (5) developmental phases (Hereinafter "Milestones").  At the completion of the fifth (5th) Milestone, Licensor agrees to have sufficiently developed the software, so as to have Licensee's New York Headquarters operations, and all other national and international business locations up and running.  Licensor possesses unique knowledge of the moving and storage industry and as such fully recognizes that Licensee's activity and operations will increase dramatically and in proportion to an increased surge in demand for Licensee's services beginning with the spring season.  In order for Licensee to adequately meet said demand, and to reduce the likelihood of any disruption in Licensee's operations, Licensor agrees to exert his good faith and best efforts to complete the said fifth (5th) Milestone by on or before June 15, 1999.  Each individual Milestone in the developmental process shall hereinafter be designed, approved,

programmed, delivered, tested, and accepted pursuant to the
schedule and procedures listed below.

**I. As for each Milestone:**

    (a) Licensor shall consult with Licencee's employee, Miriam
Rodriguez (Hereinafter "the Systems Specialist") for the purpose
of designing programming specifications and in conjunction with
Licensor's controller, Ricardo Colon, for the purposes of
financial data merging.  Specifications shall contain those items
provided by her and the controller to Licensor.

    (b)  Once Licensor has designed , developed, and completed a
Milestone, they will be delivered to the Systems Specialist
together with their operation performance estimates (Hereinafter
"OPE") and the Software Manual (Hereinafter "the SM") for every
Milestone in the specifications provided by the Systems
Specialist. The OPE and SE shall indicate any limitations on the
software at that time, e.g. size, and the estimated response
times for on-line programs or runtimes for the batch programs so
as to adequately prepare her for said limitations and to reduce
the likelihood of negatively impacting on Licensee's day to day
operations.

    (c)  Upon receipt of said completed Milestones, the Systems
Specialist will either approve or disapprove the completion of

<div align="center">Page 2 of  7</div>

said Milestone.   Such approval will be at the sole discretion of Purchaser, but said approval or disapproval shall be made in good faith and an approval shall not be unreasonably withheld.

(i) When, upon approval of the completed Milestones, in conjunction with the Systems Specialist, an Acceptance test for the Milestone and its individual specifications has been performed and completed satisfactorily to the Systems Specialist, said milestone is to be deemed completed

(ii)   If the Systems Specialist does not approve said Milestone, Licensor and the Systems Specialist will again consult and restart the procedure as stated above.

(d)   (i) The Systems Specialist in conjunction with Licensor shall develop an acceptance test.  After the creation of the Acceptance Test, the parties shall also create the Milestone Agreement. The Milestone Agreement shall contain the following: The functional names of the Milestones to be completed, the date of delivery, and the understanding that time is of the essence.

(ii)   The Milestone Agreement will also have the following items attached thereto:

The Functional Specifications which is a narrative explanation of the operation of the programs, containing Exhibits of all screen and reports. The Programming Specifications to be used by the programmers creating the software for Purchaser. The Functional Specifications for the software after customization.

Page 3 of  7

File layouts for all files used or created in that Milestone, including record and/or data field descriptions. The operation performance estimates. The Acceptance Tests, including test data.

(iii)  The Milestones Agreement will make explicit and express reference to this agreement, and the date this agreement was executed.

(iv)  Upon the signing of the Milestones Agreement by both the Systems Specialist and Licensor, Licensee shall pay to Licensor pursuant to the following fixed payment schedule:

Upon completion of the first Milestone (Installation) Twenty Thousand Dollars ($20,000.00) payable in two installments.  First installment of $15,000.00 with a second installment of $5,000.00 within a week of the first installment.

A.  Upon completion of the Second Milestone through and including the Fourth Milestone, licensor shall be paid $14,000.00 per completed Milestone.

B.  Upon completion of the Fifth Milestone, Licensor shall receive a payment of $8,000.00

C.  A final payment of $13,000.00 shall be paid to Licensor 60 days subsequent to the completion of the Fifth Milestone.

(v)  Licensor will then proceed to write the programming for that Milestone.

(e)  (i)  On the delivery date specified in the Phase Agreement, Licensor shall deliver to Licensee the completed programming for that Milestone.

Page 4 of  7

(ii)   Failure by Licensor to deliver the completed programming by the end of the 30 days after the delivery date specified in the Milestone Agreement, will entitle Licensee to a 10 percent reduction in the cost of the entire Milestone payment for each 30 day period in which Licensor is late.   The delivery date may only be modified by written amendment to the Milestone Agreement signed by both parties.

(iii)   In the event that Licensor fails to deliver the completed Milestones three (3) months after the original delivery date, and the delivery date was not modified, Licensee may cancel payment for that Milestone in its entirety, said payment to be held in escrow, minus any penalties accrued after the final completion of all Milestones.

(ii)   If the programs fail to perform the acceptance tests, the parties shall follow the following procedure:

(1) Licensee shall immediately notify Licensor by telephone of the failure of the test. Licensee shall then confirm such notice by sending written confirmation of the failure plus proper documentation of said failure to Licensor by certified mail, return receipt requested.

(2) Licensor shall immediately begin reprogramming to remedy the failure.

(3)   If the failure cannot be remedied within five (5) days, the penalty provision shall take effect.

<center>Page 5 of  7</center>

(4)  After Licensee has used all the completed Milestone programs successfully for a period of 90 consecutive days of uptime and without failure, Licensee shall pay to Licensor the final $13,000.00 payment, along with any monies held in escrow as provided herein.  Nothing in this procedure shall be construed to prevent several Milestones to be commenced simultaneously.

## II. SYSTEMS UPTIME.

(A)  System uptime, is defined as follows: Licensor warrants that the software shall be functionally operational within the specifications of each Milestone no less than 96 percent  of any consecutive ninety (90) day period beginning with the start of acceptance.  Any time that the system is not functionally operational due to hardware failure or other causes beyond Licensor's design or control shall be excluded from  this computation.

(B)  In the event of a failure of any program during the ninety (90) day period, Licensee shall notify Licensor by telephone immediately. Licensee will confirm said telephone notice by serving Licensor with written notice, with proper documentation of said error or failure, sent certified mail, return receipt requested.

(C)  Upon notification of the failure, Licensor may begin

immediate repairs of said failures.  If the failure is remedied before the expiration of 36 cumulative days, including previous failures, within that Phase, the required ninety (90) day uptime period will continue to run.

IN WITNESS WHEREOF, each of the parties hereto has causes this Agreement to be duly executed as of the date below.

_____
Safeguard Computer Services, Inc.
By: Shlomo Kogos, President


_____
La Rosa Del Monte Express, Inc.
By: Hiram Rodriguez, President

## EXHIBIT "B"

## (Y2K) YEAR 2000 COMPLIANCE

A. Licensor represents and warrants that the Software is designed to be used prior to, during, and after the calendar year 2000 A.D., and that the Software, together with its modifications will operate during each such time period without error relating to date data, specifically including any error relating to, or the product of, date data which represents or references the new century and millennium.

1. Without limiting the generality of the foregoing, Licensor further represents and warrants:

2. That the Software has been designed to ensure year 2000 compatibility, including, but not limited to, date data century and millennium recognition, calculations which accommodate same century and multi-century formulas and date values, and date data interface values that reflect the new century;

3. That the software includes "year 2000 capabilities". For the purposes of this Agreement, "year 2000 capabilities" means that the Software: (a) will manage and manipulate data involving dates, including single century formulas and multi-century formulas, and will not cause an abnormally ending scenario within the application or generate incorrect values or invalid results involving such dates; and, (b) provides that all date-related user interface functionalities and data fields include the indication of century; and, (c)

provides that all date-related data interface functionalities include the indication of a new century and millennium.

4. The term "Year 2000 Compliance Warranty" shall mean, collectively, the warranties set forth herein.

<u>WARRANTY TERM</u> The Year 2000 Compliance Warranty set forth herein shall begin as of the date of the License Agreement and end on the date after January 1, 2000, subsequent to which the Software has operated without a breach of the Year 2000 Compliance Warranty for a consecutive thirteen month period.

<u>WAIVER OF LIMITATION OF LIABILITY.</u>  Any provisions of the License Agreement which tend to limit or eliminate the liability of either party shall have no application with respect to the Year 2000 Compliance Warranty set forth herein.

<u>LIMITATION ON USE/LIMITATION ON LIABILITY</u>. Licensee agrees that it shall not modify the Software in any manner which would affect the performance of the Software in such a manner as to cause it to fail to meet the Year 2000 Compliance Warranty set forth herein. There shall be no liability on the part of Licensor for any failure of the Software to conform to the Year 2000 Compliance Warranty to the extent that any such failure is attributable to a modification of the Software by Licensee. Licensee agrees to independently confirm its hardware Y2K compliance and Licensor shall not be liable under the present agreement for Y2K compliance arising out of hardware incompatibility or Y2K non compliance.

PROVISIONS OF COMPLIANCE AGREEMENT CONTROLLING. In the event of any conflict or apparent conflict between the terms and conditions of the License Agreement and the terms and conditions of this Compliance Agreement, the terms and conditions of this Compliance Agreement shall control. Except to the extent otherwise set forth herein, the terms and conditions of the License Agreement shall remain in full force and effect.

ENTIRE AGREEMENT. This Compliance Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof. This Compliance Agreement shall not be modified except by later written agreement signed by both parties.

IN WITNESS WHEREOF the parties have executed this Agreement this __ day of March, 1999.

Safeguard Computer Services, Inc.
By: Shlomo Kogos, President

La Rosa Del Monte Express, Inc.
By: Hiram Rodriguez, President

## EXHIBIT "C"

## SOFTWARE MAINTENANCE AGREEMENT

1.    Licensee shall pay Licensor a fee of $35.00 per month per user (Hereinafter "Station") as a maintenance charge until that time when Licensee, upon 90 day notice of cancellation to Licensor, elects to no longer utilize the software and same is returned and surrendered to Licensor.  Licensee's right of election to surrender as provided herein will become effective only after the minimum twenty-four months period of performance and use of the software and maintenance services and shall not be deemed a waiver of licensee's rights to new ideas and code as provided for under Paragraph "10" of the "Software Licensing Agreement", which covenant shall survive the completion of all other obligations under the agreement.

2.    Licensee shall begin payment of said maintenance fees upon successful installation and use of the software per each particular Station as the software becomes installed per location.

3.    It is contemplated by and between the parties that Licensee's operations shall in total contain sixty-three (63) stations spread out over Licensee's various national and international offices.

4.    Upon receipt and installation of the Software, Miriam Rodriguez (Hereinafter for purposes of identification "Systems Specialist"), in conjunction with Licensor, shall schedule

training sessions with the various locations wherein Licensee will utilize the Software in its day to day operations.

    5.    Payment of maintenance fees shall commence subsequent to training per location.  Once training has been successfully completed per location and the Software's utilization has commenced, maintenance fees per site of said location will become due and payable.

    6.    It is further understood by and between the parties that the Systems Specialist will exert her good faith best efforts to complete all installations and training within 160 days from the date of the completed five (5) Milestone, as (defined under **Exhibit "A"**), fully operational software, and that Licensor will exert his good faith best efforts to cooperate with the Systems Specialist to achieve this goal.  It is further understood by and between the parties that at the expiration of the said 160 day period, maintenance fees for all 63 stations will become due and owing regardless of whether or not all locations and stations have been trained and/or begun to utilize the Software, unless a delay may be attributable to the acts or omissions of Licensor or to occurrences covered under the Licensing Agreement's Force Majeure.  Licensor shall work in coordination with the Systems Specialist to assure that all locations have been properly trained and prepared to utilize the Software in their day to day operations.

    7.    In the event that Licensor is required be Licensee to

visit any of Licencee's offices situated outside of the state of
New York (Hereinafter the New York Office" and "Foreign
Office(s)" respectively) in order to perform the maintenance
services provided for herein, including training, Licensee shall
provide for the reasonable costs of lodging and meals.  In the
event that Licensor is required to remain at any foreign office
in excess of five (5) days, Licensee in addition to providing the
reasonable costs for lodging and meals, shall further compensate
Licensor with an additional $400.00 daily compensation for each
and every day exceeding the said five (5) day period.

    7.   Payment of maintenance under the schedule herein above
stated shall entitle Licensee to the following for the life of
the perpetual license for the New York and Foreign Offices:

       a.   Unlimited customer support hotline

       b.   On site training.

       c.   Daily data merging of all information compiled
           from each location and its respective sites.

       d.   Continual software product updates, including but
           no limited to, user interface improvements,
           cosmetic improvements, Windows operating systems
           upgrades, upgrades and enhancements making the
           software conform to advances in hardware
           technologies, data enhancements, training aids,
           operational manuals, system backups, on site
           technical support, seamless technical support, and

correction of software and Windows operating
systems bugs.

e.    Forms modifications, including modifications for
reports, letters, BOL and Order Service, Outside
agency forms and reports, Tariff Charges,
accounting department data merging and use, ddata
flow, and customization.

8.    Failure of Licensor to abide by the terms of this
maintenance agreement shall be deemed a substantial breach and
shall result in a waiver by Licensor of all Maintenance fees for
the period of said breach.


IN WITNESS WHEREOF the parties have executed this Agreement
this __ day of March, 1999.

_____
Safeguard Computer Services, Inc.
By: Shlomo Kogos, President


_____
La Rosa Del Monte Express, Inc.
By: Hiram Rodriguez, President

**EXHIBIT "B"**

11 11 2006 12:32 7193916203 PDM ACCOUNTING PAGE 02/19

# SOFTWARE DEVELOPMENT & LICENSE AGREEMENT

This Software Development & License Agreement ("Agreement") is made and entered into as of the 3RD day of March, 2005, by and between La Rosa del Monte Express Inc., having an office at 1133-35 Tiffany Street, Bronx, New York, and its Affiliate (hereinafter collectively referred to as the "Client") and Software For Moving, Inc., having an office located at 211 Warren St., Suite 305, Newark, New Jersey 07103 (hereinafter referred to as the "Developer").

## RECITALS

WHEREAS, the Client operates a moving and storage business in the continental United States, Puerto Rico and the Dominican Republic; and.

WHEREAS, the Developer specializes in providing software development and programming services for storage and moving companies, and is the owner of certain software applications and source code known as "Moving Manager for Windows" ("Moving Manager"); and

WHEREAS, the Developer is the owner of certain software applications and source code known as "Moving Manager Web Version" ("Software X"); and

WHEREAS, the Client now wishes to have Software X modified to meet clients' specific needs as described in the specifications attached hereto as Exhibit "A" ("Specifications") and wishes to have Developer maintain, and license to Client, Software X as modified ("New Software"); and

WHEREAS, the Developer wishes to accept the assignment to provide services to the Client pursuant to the terms and conditions set forth in this Agreement.

NOW, THEREFORE, the parties hereto, intending to be legally bound by the terms hereof hereby enter into the following agreements:

## ARTICLE I
## DEFINITIONS

1   *Definitions.* In this Agreement, the following terms shall have the meanings set forth below:

a)   *"Background IP"* means that intellectual property including know-how, secrets, designs, inventions, patents, patent applications, copyrights, maskworks, discoveries,

formulae, processes, plans and other intellectual property rights, domestic and worldwide, covering or embodied in, Background Materials. Background IP does not include trademarks.

b)     *"Background Materials"* means pre-existing items and items that are not developed for or directed to the creation of Deliverables for the Client, including discoveries, formulae, processes, plans, specifications, guidelines, graphics, marks, logos, notes, instructions, training materials, software, software programs, software documentation, films, videotapes, slides, scripts, processes, records, drawings, illustrations, instructor guides, student materials, master tapes, copyrightable works or ideas or materials.

c)     *"Current Maintenance Agreement"* means the maintenance agreement between Client and Developer (formerly known as Safeguard Computer Services, Inc.), dated March, 999.

d)     *"Current Software"* means that certain software currently licensed by Developer to, and used by, the Client in connection with Client's moving and storage business, which software is maintained by Developer pursuant to a maintenance agreement between Client and Developer (formerly known as Safeguard Computer Services, Inc.), dated March, 1999.

e)     *"Deliverables"* means the New Software in object and/or source code format as set forth in the Specifications, provided that, if not specified, delivery shall be in object code format, Documentation, and other materials required to be delivered by the Developer to the Client hereunder, as more fully described in the Specifications.

f)     *"Development Coordinator"* shall have the definition given it in Section 3.1.

g)     *"Documentation"* means user manuals including those in electronic form, handbooks, maintenance libraries, education materials and other publications containing specifications to be supplied in order to assist the use, operation or support of the New Software.

h)     *"Effective Date"* means the date this Agreement comes into force, which is the date specified above.

i)     *"Error(s)"* means defect(s) or problems in the New Software or a Deliverable, which prevent(s) it from performing in accordance with the Specifications.

j)     *"New Developments"* means those specific items or technology created or newly developed by the Developer, independent contractors engaged by the Developer, or by the Client under this Agreement based on an idea supplied by the Developer or the Client, which heretofore was not developed in any significant manner (such as by developing algorithms or substantial portions of code toward implementation of the idea) and which development is funded in whole or in substantial part by the Client, including modifications and enhancements of Software X pursuant hereto, Documentation, discoveries, formulas, processes, plans, specifications, guidelines, graphics, marks, logos, notes, instructions, training materials, software, software programs, software documentation, films, videotapes, slides, scripts,

2

processes, records, drawings, illustrations, instructor guides, student materials, masters, tapes, copyrightable works or other ideas or materials, which are not Background Materials.

     k)    *"New Software"* means the source code and/or executable object code for all computer programs, subroutines, diagnostic routines, control software or special software to be delivered by the Developer under this Agreement.

     l)    *"Newly Developed IP"* means that intellectual property including know-how, secrets, designs, inventions, patents, patent applications, copyrights, maskworks, discoveries, formulas, processes, plans, and other intellectual property rights, domestic and worldwide, covering or embodied in, New Developments and which is not Background IP. Newly Developed IP does not include trademarks.

     m)    *"Requirements"* means the statement of the Purchaser's business requirements for the New Software as set out in Schedule A.

     n)    *"Services"* means the customization and enhancement of Software X in accordance with the Specifications and delivery of the Deliverables, as they may be modified from time to time, and all other services performed or to be performed by the Developer pursuant to this Agreement.

     o)    *"Specifications"* means the specifications for the Deliverables, which includes (i) a product design and content summary, as well as a detailed specification for all required features and functionality as specified on Exhibit A attached hereto, and (ii) a complete delivery and production schedule as specified on Exhibit B attached hereto. The parties contemplate that the Specifications may be modified by mutual consent from time to time during the Term. If and when the Specifications are modified, the parties shall initial the new Specifications or amendments to the existing Specifications, and, immediately following the last initialing, such new Specifications or amendments shall automatically be deemed to supercede or supplement (as the case may be) Exhibit A or Exhibit B (as the case may be).

     p)    *"Technical Coordinator"* shall have the definition given to it in Section 3.3.

     q)    *"Term"* means the period of time commencing on the Effective Date and continuing thereafter indefinitely until this Agreement is terminated pursuant to Article 12.

## ARTICLE II
## AGREEMENT TO PROVIDE SERVICES

     2    *Commencement of Development.* Developer began providing Services to Client on and agrees to perform the Services and deliver to the Client the Deliverables in accordance with the Specifications, as the same may change from time to time during the Term with the mutual consent of the parties, and all other terms and conditions contained in this Agreement. All New Software shall be created substantially in conformance with the Specifications and Requirements attached hereto as Schedule "A."

3

2. *Changes To Specifications*. The parties expect that there will be some changes to the Specifications after acceptance by the Client. Requests for changes shall be proposed by the Development Coordinators or the Technical Coordinators, but shall not be effective without the written consent of both parties. Prior to acceptance of any change requests, the parties shall cooperate to equitably determine the impact on time commitments, scheduling and deadlines and other project factors and reflect these changes on any amendments to Schedule A or B, as the case may be. All amendments must be approved and executed by the Development Coordinators of each party. Developer may not decline any changes in Specifications provided that Developer has ample staffing to meet any increased demands, Developer has ample expertise to fulfill the technical requirements of such changes, reasonable adjustments are made to project scheduling and deadlines, the changes requested are reasonably achievable from a technical standpoint, and the changes are reasonable in scope.

2. *Plan of Development*. The development of the Software shall be conducted substantially in compliance with the Plan of Development to be agreed upon and developed by the parties (hereinafter referred to as "Plan of Development"). The Plan of Development shall include a description of the various steps involved in the development process, various development phases with a description of the milestones to be achieved in each stage, estimated dates of completion for each phase of development, allocation of tasks for each phase and a listing of items and input to be provided by the Client for each phase, definition of the Deliverables to be provided at the end of each phase and upon completion of the development processes, and the respective amounts payable to the Developer upon successful completion of each phase of development.

The Development Coordinators shall periodically review the Plan of Development during the project and discuss any necessary revisions as the project moves forward. Developer shall devote sufficient time and effort and shall allocate sufficient personnel resources to the project as may be required for the development and testing thereof. Developer shall conduct and conclude such development and tests in a professional manner, incorporate into the final version such modifications as the tests indicate are necessary, and conduct such further tests as may be required in the circumstances. Developer shall promptly inform the Client of factors and circumstances, when and as they arise, that reasonably may be anticipated to result in a material deviation from such schedule, including delays due to labor shortages, technical difficulties, competing projects, mechanical problems and other factors.

**ARTICLE III**
**DEVELOPMENT COORDINATION**

3. *Appointment of Development Coordinators*. Each party shall appoint a single individual from its respective organization to act as Development Coordinator to represent the interests of the party in connection with the Development process. Steven Dalzell shall be the Development Coordinator for the Client. Shlomo Kogos shall be the Development Coordinator for Developer. The Development Coordinators of the parties shall communicate with each other

4

12/11/2006 10:32 7189916203 RDM ACCOUNTING PAGE 06/18

c) a regular periodic basis to assure the smooth administration of the Development process and the coordination of activities between the parties.

3    *Functions of Development Coordinators*. The Development Coordinators shall be the primary non-technical contact between the parties relative to development projects. The Development Coordinators shall arrange all non-technical meetings and communications between the parties and shall be the primary point of contact relating to the progress made and decisions to be made with respect to the development projects. All notices between the parties shall be presented to the Development Coordinators. All administrative matters relating to the development projects shall be communicated through the Development Coordinators. Each of the Development Coordinators shall be responsible for communicating within their respective organizations and procuring the input of management and others who are necessary for the achievement of project goals.

## ARTICLE IV
## DEVELOPMENT COSTS AND FEES

4.    *Project Pricing*. Client shall pay to the Developer a fee equal to $190,000.00 for the development and delivery of the Deliverables ("Development Fee"). Such Development Fee shall be paid in installments as set forth in the Plan of Development. Subject to any agreed variations or changes, the Development Fee is the total amount to be charged to the Client for the service, exclusive of the license fees payable pursuant to Section 6.5, below and certain maintenance fees payable pursuant to Section 4.6, below.

4.    *Timing of Payments*. Each installment payment shall be due upon the successful completion of each of the respective phases set forth in the Plan of Development and Developer's delivery of respective Deliverables due at such time. The Client shall be in default under this Agreement if payment is not received within thirty (30) days following such dates; provided, however, that Client shall not be in default if, in good faith, the Client disputes such invoice or believes such phase has not been successfully completed. After the Developer has delivered all Deliverables and the Client has used the New Software successfully for a period of 30 days without failure ("Trial Period"), the Client will pay the Developer the final ten percent (10%) of the Development Fee.

4.    *Taxes; Project Expenses*. The fee to be paid to the Developer under Section 4.1, above, shall be inclusive of all taxes, levies, and assessments and all of Developer's expenses, including without limitation (i) postal charges, federal express, facsimile charges, long distance telephone charges, and other costs of project specific communications, (ii) costs of purchasing or licensing graphics, sound, or other content from third parties, (iii) costs of any special software or hardware that is necessary to complete the specific development task for the project, (iv) travel expenses, (v) costs of acquiring or leasing any special development tools made necessary for the nature of the project, and (vi) all other expenses identified by the parties in the Plan of Development.

5

4.    *Project Deposit*.  Developer hereby acknowledges that the Client has delivered to the Developer a deposit, which amount shall be credited to the Development Fee to be paid by the Client hereunder upon Developer's completion and delivery of the Deliverables. The deposit may be refunded in accordance with the termination provisions of Article 12, below.

4.    *Verification Records*.  Developer shall maintain accounting, time, and other records as are necessary to verify any amount to be paid by the Client hereunder.  Upon any dispute of any invoice, Developer shall provide backup records to support the invoice that is questioned if applicable.

4.    *Current Software*.  Upon execution of this Agreement by all parties, the Client shall pay Developer a fee of **$58,000.00** ("Current Software Maintenance Fee") to continue to maintain the Current Software on the same terms as the Current Maintenance Agreement between them, provided that such fee shall cover all such maintenance services for the 2005 calendar year. Notwithstanding the foregoing, in the event that this Agreement is not terminated pursuant to Article 12 below, and the New Software is successfully installed and operating free of Errors, then Client may elect to have the Current Software removed from its computers and all maintenance related thereto terminated.  The Client shall so elect by sending written notice thereof to Developer, and such termination of services shall be effective as of the date received by Developer. In such event, the Current Software Maintenance Fee shall be prorated based on the number of calendar days remaining in 2005 and such prorated amount shall be credited toward the license fee or any unpaid portion of the Development Fee, at the Client's discretion.

## ARTICLE V
## DELIVERY AND ACCEPTANCE OF DELIVERABLES

5.    *Scheduling*.  The Developer will perform Services according to the schedule set forth in the Plan of Development.

5.    *Delivery*.  Upon completion of each milestone and/or each phase of the project as set forth in the Plan of Development, the Developer shall notify the Development Coordinator for the Client, and shall promptly deliver the Deliverables to the Client for review and acceptance testing. Unless otherwise agreed to between the parties, in writing, time is of the essence with respect to delivery of the Deliverables on the date(s) specified in the Plan of Development.

5.    *Acceptance Testing*.  Unless otherwise agreed to in writing, acceptance of all Deliverables shall be conditioned upon such Deliverables having successfully completed all of the Client's acceptance tests by the agreed date for completion and the Developer having performed all actions required by this Agreement as of such date.  Such acceptance tests shall be developed jointly by the Client's Development Coordinator and the Developer's Development Coordinator or Technical Coordinator.

6

12.11.2006  12:32    7199916283    PDH ACCOUNTING    PAGE  08/19

a) **Performance of Acceptance Testing.** Upon delivery of each Deliverable, the Client shall have ten (10) business days to examine and test each such Deliverable in order to determine whether it conforms to the Specifications and Requirements.

b) **Acceptance/Rejection.** The Client will be entitled to accept or reject each Deliverable based solely on such Deliverable's conformance with the applicable Specifications and Requirements. If the Client does not accept or reject a Deliverable within the ten (10) business-day acceptance period, then acceptance will be deemed to have occurred at the end of such period. If a Deliverable fails to conform to the Specifications or Requirements, the Client will notify the Developer by telephone and in writing of such failure, and shall state with reasonable detail the reasons for or nature of the failure. Upon receipt of such notice, the Developer will correct, modify or improve the Deliverable to conform to the Specifications and Requirements and will deliver a corrected version of the Deliverable to the Client within five (5) days or such longer time as requested by the Developer, such longer time subject to the approval of Client, which will not be unreasonably withheld. The Client's receipt of the corrected Deliverable will commence another acceptance period as specified in this section. This process will be repeated as may be necessary until the Deliverables are deemed to be accepted hereunder; provided, however, that if the Deliverables are not accepted by the agreed date for completion, then the Client may take the actions specified in Section 5.4 below.

If, in good faith, the Client requests additional revisions to any Deliverable that has been accepted or deemed to be accepted, because the Deliverable does not conform to the Client's Requirements or Specifications, or if the Client desires to change or refine any specifications set forth in the Plan of Development to permit it to conform to the Client's Requirements, then the parties shall negotiate a new timetable for such development and shall set forth such changes in an amendment to the Plan of Development. The Developer shall thereafter make such revisions in accordance therewith without any changes to the Development Fee.

5.4    *Acceptance Test Failure*. If the Deliverables fail to satisfy the acceptance tests within the period permitted hereunder, then, in addition to any other remedy, the Client may elect to (i) agree to an extension of time for the completion of the acceptance tests; (ii) accept the deliverables upon terms acceptable to the Client including a reduction of the Development Fee; or (iii) terminate this Agreement in accordance with Article 12.

## ARTICLE VI
## LICENSE

6.    *License of Software X*. Developer hereby grants to the Client a perpetual, world-wide, nontransferable license to use Software X, subject to the terms and conditions of this agreement, including payment of the license fee. Such license shall be limited to the right to install the computer software portion of the Software X on computer systems owned, leased, or controlled by Client, utilize Software X for its own internal purposes, and make sufficient copies of the Software X and any related copyrighted materials for backup purposes and as reasonably necessary to exercise the right to use Software X as permitted hereunder. This Agreement shall not provide Client with the right of ownership or title in and to Software X, but rather, Client's

7

rights shall be limited to the scope of license provided herein. Client shall not take any action or permit any occurrence that would create a lien or encumbrance on the Software X or the copyright thereto, or create any cloud on Developer's title thereto. Client shall not use the Software X in such a manner that may infringe upon the rights of any other party.

6.    *Scope of License.* This license is limited to use of Software X at the client's business locations and only for purposes of Client's own moving and shipping enterprise. This license grants Client the right to make one backup copy of Software X per business site which may be stored away from the site(s).

6.    *Term of License.* This license begins on the date that the New Software, in any form, is installed at any of the Client's sites. This license is perpetual unless its terms are breached by the Client. This license in its entirety and as to all software licensed shall terminate immediately if Licensee does not comply with these terms, including but not limited to, non-payment of the licensing fee hereunder or maintenance fees pursuant to the maintenance agreement entered into between the two parties, unauthorized copying or use of Software X, or unauthorized modification of Software X. Upon termination, the license shall cease. Use of Software X is not authorized after termination by Developer and shall be considered by Developer an infringement of its intellectual property rights, in addition to any other rights Developer has against Developer by such use.

6.    *Exclusivity.* The Client shall have an exclusive license to use Software X as incorporated into the New Software during the Trial Period and for seven (7) years thereafter. At the end of such period, the Developer shall have the right to license Software X to other

6.    *License Fee.* For the license of Software X, the Client will pay the Developer a fee of $105,000.00.

## ARTICLE VII
## PROPRIETARY RIGHTS

7.    *Background Materials.* In the event that the Deliverables include any Background Materials created by the Developer or any other party, the Developer hereby grants, and shall arrange for applicable third parties to grant, a perpetual, non-exclusive, royalty free license to use such Background Materials in connection with the Deliverables.

7.    *Infringement On Third Party Rights.* The Developer agrees to use reasonable diligence to avoid infringement on the proprietary rights of any third party in performance of the creation of Deliverables. The Developer agrees that all aspects of the Deliverables shall be original works of creation and shall not use, in whole or in part, any work created by any other party except where specifically disclosed by the Developer to the Client and where a license to use such items is obtained for the benefit of the Client. All such licenses shall be royalty free, perpetual, world-wide licenses, sufficient in scope to permit Client's full use and enjoyment of the Deliverables, except where specifically agreed in writing by the Client.

8

12/11/2006  12:32   7199316283              PDM ACCOUNTING              PAGE  10/19

7    *Rights to New Developments and Newly Developed IP*.  The parties acknowledge that the performance of this Agreement will result in the development of new proprietary and secret concept, methods, techniques, processes, adaptations and ideas.  The parties agree, therefore, that the New Developments and Newly Developed IP shall belong solely to Client without regard to the origin thereof and that Developer will not, other than in the performance of the Agreement, without the express written consent, which will not be unreasonably withheld, sell, make use or disclose same to any person, group, company or corporation.

5.    *Modification of Software*.  Client shall not modify nor authorize modification of any of the Software X in any manner without the express written permission of Developer.

7.    *Rights to Background Materials and Background IP*.  All intellectual property, including but not limited to copyright, patents and trade secrets, in Software X, except for improvements, revisions, and modifications made at specific request of Client, shall remain the property of Developer.  Client agrees that, except as directed by Developer and this Agreement, it will not at any time during or after the term of this Agreement allow unauthorized copying of Software X.

7.    *Confidential Information*.  During the course of this Agreement, either Developer (or Developer's contractors) or Client may have or may acquire access to the other party's confidential information, including without limitation trade secrets, business plans and operations and financial data (collectively, "Confidential Information").  The parties agree to maintain such Confidential Information in strict confidence, not to make use thereof other than in the performance of this Agreement, to release it only to employees requiring information and not to release or disclose it to any other party.  Any Confidential Information that becomes available to the general public through lawful means and not by a breach of this Agreement shall cease to be confidential.  The obligations of this Section 7.6 shall survive the termination or cancellation of this Agreement.

## ARTICLE VIII
## EMPLOYEE AND CONTRACTORS

1.    *Independent Contractors*.  Developer shall use only bona fide employees to conduct all aspects of the development project, unless independent contractors are specifically consented to by the Client.  In the event independent contractors are used and consented to by the Client, Developer shall obtain from such independent contractors written assignments of all items developed by or contributed to by such independent contractors in the course of their work on the development project and an agreement that all such items are created as "works for hire" under the copyright laws and are the sole and exclusive property of the Client.  Independent contractors shall also be required to execute a confidentiality agreement in favor of the Client.  Developer specifically assumes all responsibilities for such contractors as if they were employees of Developer

9

8.   *Employees*.  Developer shall enter and maintain in full force and effect, written agreements with all of its employees in which the employees acknowledge that all work performed in the course of the development project are "works for hire" and are the property of the Client.  Additionally, employees shall enter a confidentiality agreement agreeing to maintain the confidentiality of all information relative to the Client.  Developer-assigned employees may be rejected by Client should Client determine unilaterally that any employee's services are unsatisfactory.  Upon written notification from Client regarding an unsatisfactory employee, Developer shall remove such employee immediately and replace the removed employee with an employee acceptable to Client as soon as possible.  Under no circumstances shall Developer's employees be considered employees or agents of Client.

## ARTICLE IX
## TRAINING & SUPPORT SERVICES; MAINTENANCE

9.   *Training and Initial Support Services*.  For a period of ninety (90) days following delivery of the Deliverables and final acceptance thereof by the Client, Developer shall provide certain training and initial support services to the Client related to the Software.  Such training and initial support services shall be part of the Services to be provided hereunder and are included in the Development Fee.

9.   *Client Responsibilities*.  Client shall not attempt to correct any Errors in the Software or do anything to alter or modify any programming code.  Client shall promptly report any Errors in the operation of the Software to the Developer and shall not take any actions that would increase the severity of the Error.  Client shall use the Software only for its intended purpose and only in the manner intended.

9.   *Place of Support Services*.  All training and initial support services shall be provided by the Developer either at the Client's principal business location at 1133-35 Tiffany Street, Bronx, New York or from the Developer's facility, or through electronic access to the Client's computers, as may be determined by Developer and Client according to the Client's needs.

## ARTICLE X
## REPRESENTATIONS AND WARRANTIES OF THE DEVELOPER

10.1   *Warranties*.  Developer hereby represents and warrants that:

a)   it is highly skilled and experienced in programming for the operating system of the programming language, and that it also possesses the additional expertise needed to develop and provide the particular Deliverables required by this Agreement.  The Developer acknowledges that the Client is relying upon the skill and expertise of the Developer for the performance of this Agreement;

10

12-11-2006  12:32    7189916209            PDM ACCOUNTING                    PAGE  12-19

    b)    the Services required hereunder shall be performed in a workmanlike manner consistent with industry standards and in compliance with all applicable state, federal and local laws, rules and regulations;

    c)    the Deliverables produced and provided hereunder, including software and/or code provided as part of such Deliverables, will be of original development by the Developer and will not violate any proprietary information or non-disclosure rights, or infringe upon any United States patent, copyright, trade secret or other property right of any third party, and the Developer will indemnify and hold the Client harmless from and against any loss, cost, liability or expense (including reasonable legal fees) arising out of any breach or claimed breach of this warranty;

    d)    the New Software and Documentation delivered hereunder will materially conform to the Specifications. The Developer will, without additional charge to the Client, use its best efforts to make such additions, modifications, or adjustments to the New Software as may be necessary to correct any Errors discovered in the New Software or Documentation and reported to the Developer by the Client during the Trial Period, excluding defects or problems arising from misuse by the Client; and

    e)    The New Software shall be functionally operational within the specifications at each milestone no less than ninety-six percent (96%) of any consecutive ninety (90) day period beginning as of the date of acceptance of such milestone or phase excluding any time that the system is not functionally operational due to hardware failure or other causes beyond Developer's design or control.

    11 2    *License; Pre-Existing Works.*  Developer represents and warrants that Client, upon payment in full of all amounts due hereunder, shall have a perpetual, royalty free, worldwide license to use Software X and other Background Materials and Background IP whether developed by the Developer or by another party, which are used in connection with the Deliverables.

## ARTICLE XI
## INDEMNIFICATION AND LIMITED LIABILITY

    1 1    *Indemnification.*  Developer shall indemnify, defend and hold Client harmless from and against any and all damages, losses, liabilities, obligations, claims, litigation, demands, suits, judgments, costs or expenses, including reasonable attorneys' fees ("Claims") brought against Client based upon a claim that any Deliverable, as delivered to Client, or any Background IP that is incorporated into or used in connection with and is not separable from any such Deliverable, constitutes a direct infringement of any United States patent, copyright, trade secret or property right of a third party or violates any proprietary information or non-disclosure rights of any third party. Developer shall also indemnify Client against any Claim based on damage to Client's premises or items located on such premises, caused by Developer, its employees, agents or independent contractors and against all acts of such employees and contractors. In the event of a Claim, Client shall (i) give Developer prompt written notice of any such Claim; (ii) cooperate

12-11-2006   12:32   7199926203          PDM ACCOUNTING          PAGE  13-19

w t Developer in the defense and settlement of such Claim; and (iii) allow Developer to control
the defense or settlement of any such Claim, *provided that* the Client must be released from all
liability as a result of any settlement, and any settlement that is non-monetary in nature must be
approved by the Client, whose consent shall not be unreasonably withheld. The Client shall also
be entitled to its own Counsel at its expense.

1  : *Limitation on Indemnification.*    Developer shall have no indemnification
responsibility under the preceding subsection if it is determined that (i) the liability is caused
solely by Client's Background IP, (ii) the liability is caused solely by modification of the
Deliverable by Client or any third party, (iii) the liability is caused by the combination, operation
or use of the Deliverable with other software, hardware, products or data that does not originate
from Developer, in such combined form, where such claim would not have arisen from the use of
the Deliverable standing alone, or (iv) such infringement would have been avoided by the use of
a revised or updated Deliverable delivered by Developer to Client.

1 1 3  *Infringement Remedy.* If any Deliverable (or portion thereof, including any portion
of Developer's Background IP) is found to infringe the intellectual property rights of any third
party and its use is enjoined or threatened to be enjoined, Developer shall, at Developer's option
and expense, either: (i) procure for Client a license or right to continue to use such Deliverable or
the applicable portion, (ii) replace the Deliverable or applicable portion with a non-infringing
Deliverable, (iii) modify the Deliverable or infringing portion to become non-infringing; or (iv)
accept the Client's return of the New Software and return to the Client all monies paid under this
Agreement.   Customer shall reasonably cooperate with Developer in its fulfillment of its
obligations under this section.

1 1 1  *Damages.* Neither party shall be liable for any indirect, special, incidental or
consequential damage of any kind

**ARTICLE XII**
**TERM AND TERMINATION**

1 2 1  *Termination For Cause.* Either party may terminate this Agreement in whole or in
part if the other party fails to perform any material obligation set out in this Agreement,
provided however, if such breach is of a nature which may be cured by the party in breach, then
Developer or Client may exercise its right to terminate this Agreement only if such breach
continues uncured for a period of twenty (20) business days following the party in breach's
receipt of written notice of such breach or such longer time subject to the approval of both
parties, such approval not to be unreasonably withheld.

1 2 2  *Remedy of Client.* In the event that this Agreement is terminated by the Client due
to the Developer's default or material breach, the Client, upon demand to the Developer, shall be
entitled to the return of all monies paid to the Developer pursuant hereto, including its deposit,
and shall have the right to continue to license the Current Software, for which Developer shall
continue to provide maintenance services pursuant to any agreement related thereto.

12

12-11-2006  12:32   7189919283        RTM ACCOUNTING                PAGE  14/18

    12.3  *Prior To Completion*. In the event this Agreement is terminated by Developer prior to completion of development due to a default or material breach by the Client, the Developer shall immediately cease work on the relevant project and shall issue an invoice to the Client for all work performed through the date of termination. The final invoice shall be due and payable by the Client upon receipt thereof.

    12.4  *Survival of Certain Provisions*. In the event of any termination of this Agreement, Articles 7 and 8 and Sections 10.1(c), 11.1, 12.2, 13.7, 13.8, 13.11 and 13.12 shall survive.

<div align="center">

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

</div>

    13.1  *Entire Agreement*. This Agreement, together with the Schedules and Exhibits attached hereto, contains the entire agreement and understanding of the parties with respect to the subject matter hereof and supercedes and replaces all prior discussions, agreements, proposals, understandings, whether orally or in writing, between the parties related to the subject matter of this Agreement. This Agreement may be changed, modified or amended only in a written agreement that is duly executed by authorized representatives of the parties.

    13.2  *Severability*. Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law. However, if any provision of this Agreement shall be prohibited by or invalid under such law, it shall be deemed modified to conform to the minimum requirements of such law or, if for any reason it is not deemed so modified, it shall be prohibited or invalid only to the extent of such prohibition or invalidity without the remainder thereof or any other such provision being prohibited or invalid.

    13.3  *Waiver*. No party's waiver of any breach or accommodation to the other party shall be deemed to be a waiver of any subsequent breach of this Agreement. No failure or neglect of either party to exercise any right or remedy hereunder or under law shall constitute a waiver of any other right or remedy or of the same right or remedy in any other instance.

    13.4  *Excusable Delays*. Any delay or nonperformance of any provision of this Agreement caused by conditions beyond the reasonable control of a party shall not constitute a breach of this Agreement, provided that such party has taken reasonable measures to notify the affected party of the delay in writing and uses reasonable efforts to perform in accordance with this Agreement notwithstanding such conditions. The delayed party's time for performance shall be deemed to be extended for a period equal to the duration of the conditions beyond its control. Conditions beyond a party's reasonable control include, but are not limited to, natural disasters, acts of government after the date of the Agreement, power failure, fire, flood, acts of God, labor disputes, riots, acts of war and epidemics. In such an event, the affected party shall be excused from such performance for a time period commensurate with the duration of such prevention, restriction or interference.

12/11/2006  12:32  7189916203  PDM ACCOUNTING  PAGE  15/19

1. 5  _Notices_.  Unless otherwise specified herein, all notices required or permitted pursuant to the provisions of this Agreement shall be in writing and shall be sent by certified mail, return receipt requested, or overnight mail, or delivered by hand, or by E-Mail and shall be sent to the parties at the addresses set forth below, or such other place as such party shall notify the other parties hereto.  Any such notice shall be deemed given and effective upon receipt at such address.  Notwithstanding the foregoing sentence, any notice of termination of this Agreement or of the Current Maintenance Agreement pursuant to Section 4.6 above, or notice of breach of this Agreement must be in writing and sent by Registered or Certified Mail, Return Receipt Requested and shall be deemed to have been delivered five (5) business days after the date of mailing.  Addresses for notices shall be:

|  | If To Developer: | Software For Moving, Inc. |
|--|--|--|
|  |  | 211 Warren St., Suite 305 |
|  |  | Newark, New Jersey 07103 |
|  | Attn: | Shlomo Kogos |
|  | E-Mail: | skogos@earthlink.net |
|  | Phone: | |

|  | If To Client: | La Rosa del Monte Express, Inc. |
|--|--|--|
|  |  | 1133-35 Tiffany Street |
|  |  | Bronx, New York  10459 |
|  | Attn: | Steven Dalzell, V.P. |
|  | E-Mail: | sdalzell@larosadelmonte.com |
|  | Phone: | 718-991-3300 |

1. 6  _Assignment_.  The Services to be performed by Developer hereunder are personal in nature and Client has engaged Developer as a result of Developer's unique expertise relating to such Services.  Neither this Agreement nor any right, interest, duty or obligation hereunder may be assigned, transferred or delegated by Developer without the express written consent of Client which consent may be withheld in the discretion of the Client.  Neither this Agreement nor any right, interest, duty or obligation hereunder may be assigned, transferred or delegated by the Client without the express written consent of the Developer, such consent not to be unreasonably withheld, except that Client may freely assign its rights and obligations under this Agreement to parent, affiliates, or subsidiaries of the Client or to any entity in which the Client's principal owns a majority interest.  This Agreement shall be binding upon, and inure to the benefit of, each of the parties hereto, and their heirs, administrators, executors, successors and assigns.

1. 7  _Advertising And Publicity_.  Neither party shall make any public or press announcement about this Agreement or its terms and conditions, or of such party's business relationship with the other party, without prior express written consent of the other party.  The time and content of such announcement, if any, shall be subject to the prior approval of each party.  In addition, neither party shall make any use of the other party's name for its published account or business partner list, or for any other publicity or marketing purposes, without the prior express written consent of the other party.  Breach of this Section 13.7 by either party shall be considered a material breach of this Agreement.

14

12/11/2006  12:32    7199916383           PDM ACCOUNTING              PAGE  16.18
                          s to                          red ·

13    _Independent Contractor Status_. The Developer is an independent contractor and not an agent, employee or representative of Client. Nothing in this Agreement shall be construed to make the parties partners or joint ventures or to make either party liable for the obligations, acts, or issions, or activities of the other party. The Client shall have no right to direct or control the details of the Developer's work. Developer shall not receive any fringe benefits or other perquisites that the Client may provide to its employees and Developer agrees to be responsible for its own business overhead and costs of doing business and to furnish (or reimburse Client for) all tools and materials necessary to accomplish the services required of the Developer pursuant to this Agreement, and shall incur all expenses associated with performance, except as expressly provided in Schedules or amendments to this Agreement. Developer shall be responsible for paying all taxes on payments received pursuant to this Agreement and Client shall have no obligation to withhold taxes from service fees payable to the Developer hereunder. Developer hereby indemnifies and holds the Client harmless from any obligation that may be imposed on Client (i) to pay in withholding taxes or similar items or (ii) resulting from Developer's being determined not to be an independent contractor. Developer and its independent contractors shall bear sole responsibility for payment of compensation to their respective its employees and agents, including federal and state income tax withholding, workers' compensation, social security taxes, and unemployment insurance applicable to such employees. Developer and its independent contractors shall also bear sole responsibility for any health or disability insurance, retirement benefits, or other welfare or pension benefits, if any, to which their personnel may be entitled

13.    _Counterparts_. This Agreement may be signed in counterparts and all counterparts shall be construed together and shall constitute one agreement.

13. 0  _Headings_ All headings are for convenience only and shall not constitute a part hereof or affect in any way the meaning or interpretation of this Agreement.

13. 1  _Dispute Resolution_. In the event of a dispute between the parties arising from or concerning in any manner the subject matter of this Agreement, the parties agree to first attempt to resolve the dispute through good faith negotiation. Upon written notice by a party to the other party that a dispute exists, the exact nature of the dispute shall be identified, and good faith discussions and negotiations shall be conducted within seven (7) business days directly between senior management of the Developer and the Client to fully address the issues raised. Each representative shall be authorized to fully negotiate for, and bind, his or her respective company. If such negotiations fail to adequately resolve the issues raised or immediate legal relief is required, either party shall submit such dispute to binding arbitration pursuant to Section 13.12, below. All prior discussions are agreed to be in the course of pursuing settlement and shall be inadmissible in any subsequent legal proceeding.

13. 2  _Arbitration_. Except as specifically provided in this Agreement, the parties agree that any dispute or controversy arising out of, relating to or in connection with the interpretation, validity, construction, performance, breach or termination of this Agreement shall be submitted to binding arbitration to be held in Westchester County, New York in accordance with the rules of the American Arbitration Association. The decision of the arbitrator shall be final, conclusive

15

and binding on the parties to the arbitration. Judgment may be entered on the arbitrator's decision in any court of competent jurisdiction. The parties shall each bear their own attorney fees with respect to such Arbitration but shall share equally the other costs and expenses of arbitration.

13 *Controlling Law.* The interpretation, construction and performance of this Agreement and the rights and remedies of each party hereunder shall in all respects be governed by the laws of the State of New York, without regard to the conflict of laws provisions thereof. The parties further agree that venue shall be exclusively in the County of Westchester, New York

IN WITNESS WHEREOF, the parties hereto have duly entered and executed this Agreement as of the day and year first above written and represent and warrant that the party executing this Agreement on their behalf is duly authorized.

Software for Moving, Inc.

By:  Shlomo Kogos, President

La Rosa Del Monte Express, Inc.

By:  STEVEN DARZEN
VP OPERATIONS

16

12/11/2006  12:32    7169916383                PDM ACCOUNTING                    PAGE  18/15

## ADDENDUM TO
## SOFTWARE DEVELOPMENT & LICENSE AGREEMENT

I y agreement of both parties, in the event the "Developer" has ceased operations, is no longer a
viable operating entity or due to a situation, emergency or otherwise, in which the "Developer" is
unable to provide contracted services, upgrades or maintenance as required for the continued and
uninterrupted use of "Software X" by "Client", the "Client" shall contact the agent of the
Developer", Mr. Philip Zukowsky of the firm Chernesky, Heyman & Kress, P.L.L. located at
10 Courthouse Plaza SW, Suite 1100, Dayton, Ohio 45402, telephone 937-449-2800. Mr.
Zukowsky will provide to "Client" at no additional charge (1) a copy of the source code for the
program (2) the right to make changes as necessary to source code for the continued and forever
use of the program and (3) access to contact information of other companies utilizing "Moving
Manager Web Version" so they may assist each other in maintaining the source code. The
"Client" will be granted full ownership of the source code with the limitation that it cannot resell
to others or allow to be installed at or used by a non-related entity of "Client".

Software for Moving, Inc.
By:   Shlomo Kogos, President

La Rosa Del Monte Express, Inc.
By:   STEVEN DALEEN
        VP OPERATIONS

17

**EXHIBIT "C"**

# MAINTENANCE AGREEMENT

This MAINTENANCE AGREEMENT ("Agreement") is made and entered into as of the 3RD day of March, 2005, by and between La Rosa del Monte Express Inc., a New York corporation, having an office at 1133-35 Tiffany Street, Bronx, New York, and its Affiliates (hereinafter collectively referred to as the "Client") and Software For Moving, Inc., a _____, with its principal office at 211 Warren St., Suite 305, Newark, New Jersey 07103 (hereinafter referred to as the "Developer").

WHEREAS, Developer has agreed to modify and deliver certain Software ("Software") to the Client pursuant to a certain Development and License Agreement between them dated March 3, 2005 ("Development Agreement"); and

WHEREAS, the Client desires to have Developer maintain the Software and Developer desires to provide such maintenance services to Client.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, and intending to be legally bound hereby, the parties hereto agree as follows:

1.  **Definitions.** Except as otherwise defined herein, all terms shall have the same meaning and definition given to them in the Development Agreement.

2.  **Term.** This Agreement shall be in effect for successive one year terms beginning on the Effective Date of the Development Agreement, and shall automatically renew on each anniversary of the Effective Date unless (i) terminated in writing by the Client within thirty (30) days of any anniversary, (ii) terminated in writing by the Developer within thirty (30) days of the seventh (7th) anniversary of the Effective Date or (iii) sooner terminated by either party pursuant to Paragraph 9 below.

3.  **Fees.** Client shall pay Developer a per-user fee (each user location hereinafter referred to as a "Station") maintenance charge for the term of this Agreement. Agreed monthly maintenance charge is attached hereto as **Maintenance Schedule A**. Notwithstanding the effective date of this Agreement, payment of the maintenance fees shall commence only upon the completion of the Trial Period and training at each Station pursuant to the terms of the Development Agreement. In no event shall maintenance fees be required for any Station that (i) has not had the Software successfully installed; (ii) is incapable of using the Software because of Errors with the Software and/or (iii) has not had training completed by Developer.

4.  **Stations.** It is contemplated by and between the parties that Client's operations shall in total contain 70 Stations spread out over Client's various national and international offices.

5.  **Location of Maintenance.** Maintenance shall be provided at the location of the Station or by remote access, in accordance with the Client's needs. In the event that Developer

is required by Client to visit any of Client's offices situated outside of the State of New York, in order to perform the maintenance services provided for herein, Client shall provide for the reasonable costs of lodging and meals.

6.    **Maintenance Services.**  For so long as this Agreement is in effect and for the life of the perpetual license of the Software by Client, the Developer will provide the following services to client and each of its Stations:

     a.    Unlimited customer support hotline;

     b.    On site training;

     c.    Daily data merging of all information compiled from each location and its respective sites;

     d.    Continual software product updates, including but not limited to, user interface improvements, cosmetic improvements, Windows operating systems upgrades, upgrades and enhancements making the Software conform to advances in hardware technologies, data enhancements, training aids, operational manuals, system backups, on site technical support, seamless technical support, and correction of Software and Windows operating systems bugs; and,

     e.    Forms modifications, including modifications for reports, letters, BOL and Order Service, outside agency forms and reports, tariff charges, accounting department data merging and use, data flow, and customization.

7.    **Response Time.**

     a.    *Emergency Services.*  Developer is aware that the Client's New York office will be the central control for all of the Client's other offices and that it is therefore imperative that the Software be working according to the Client's Requirements and Specifications at all times.  In the event that the Software is not, at any time, working in accordance therewith, and such failure is expected by Client to immediately materially impact the Client's business, Developer hereby agrees to respond to Client and begin diligent efforts to correct such failure within four (4) hours after receipt of notice thereof.

     b.    *Non Emergency Services.*  In the event of the failure of the Software to work in accordance with the Client's Specifications and Requirements, where such failure is not expected to immediately materially impact the Client's business, Developer shall respond to Client and begin diligent efforts to correct the failure within 24 hours after receipt of notice.

     c.    *Notices.*  Notice may be provided by telephone, followed by written notice in accordance with Section 13.5 of the Development Agreement.  Time is of the essence with respect to the response times specified above.

2

d. _Diligent Efforts_. "Diligent efforts" shall mean dedicating reasonably sufficient resources and personnel to correct such failures.

e. _Failure to respond_. Developer's failure to respond and begin diligent efforts to correct any Errors or failure of the Software within the required response time shall constitute a default of the Developer hereunder.

8. **Default**. In the event that Developer fails to perform any material obligation hereunder, then Developer shall be deemed to be in default hereunder. In the event of Developer's default, then, in addition to any other rights of the Client, Client shall be entitled to withhold payment of the maintenance fees owed hereunder until such default is cured.

9. **Termination for Cause**. If a party breaches any material obligations under this Agreement, the non-breaching party may cancel this Agreement upon written notice to the breaching party; provided, however, that upon receipt of such notice, the breaching party shall have fifteen (15) days to cure such breach ("Cure Period"), or if such breach cannot be cured within fifteen (15) days, then it shall begin curing such breach in good faith. If such breach is not cured within the Cure Period or if the breach cannot be cured within the Cure Period and the breaching party has not made a good faith effort to begin curing such breach within such period, then upon the expiration of the Cure Period, the non-breaching party shall have the right to cancel this Agreement upon five (5) days' written notice. If this Agreement is terminated for cause by the Client, then Developer shall refund any maintenance fees paid by Client before the effective date of the termination for maintenance services after the effective date of termination. All notices shall comply with the provisions of.

10. **Notices**. Unless otherwise specified herein, all notices required or permitted pursuant to the provisions of this Agreement shall be in writing and shall be sent by certified mail, return receipt requested, or overnight mail, or delivered by hand, or by E-Mail and shall be sent to the parties at the addresses set forth in Paragraph 13.5 of the Development Agreement. Any such notice shall be deemed given and effective upon receipt at such address. Notwithstanding the foregoing sentence, any notice of termination or notice of default of this Agreement must be in writing and sent by Registered or Certified Mail, Return Receipt Requested and shall be deemed to have been delivered five (5) business days after the date of mailing.

11. **Assignment**. The Services to be performed by Developer hereunder are personal in nature and Client has engaged Developer as a result of Developer's unique expertise relating to such Services. Neither this Agreement nor any right, interest, duty or obligation hereunder may be assigned, transferred or delegated by Developer without the express written consent of Client, which consent may be withheld in the discretion of the Client. Neither this Agreement nor any right, interest, duty or obligation hereunder may be assigned, transferred or delegated by the Client without the express written consent of the Developer, such consent not to be unreasonably withheld, except that Client may freely assign its rights and obligations under this Agreement to parents, affiliates, or subsidiaries of the Client or to any entity in which the Client's principal owns a majority interest. This Agreement shall be binding upon, and inure to

3

the benefit of, each of the parties hereto, and their heirs, administrators, executors, successors and assigns.

12.  **Entire Agreement**. This Agreement, together with the Development Agreement, contains the entire agreement and understanding of the parties with respect to the subject matter hereof and supercedes and replaces all prior discussions, agreements, proposals, understandings, whether orally or in writing, between the parties related to the subject matter of this Agreement. This Agreement may be changed, modified or amended only in a written agreement that is duly executed by authorized representatives of the parties.

13.  **Severability**. Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law. However, if any provision of this Agreement shall be prohibited by or invalid under such law, it shall be deemed modified to conform to the minimum requirements of such law or, if for any reason it is not deemed so modified, it shall be prohibited or invalid only to the extent of such prohibition or invalidity without the remainder thereof or any other such provision being prohibited or invalid.

14.  **Waiver**. No party's waiver of any breach or accommodation to the other party shall be deemed to be a waiver of any subsequent breach of this Agreement. No failure or neglect of either party to exercise any right or remedy hereunder or under law shall constitute a waiver of any other right or remedy or of the same right or remedy in any other instance.

15.  **Force Majeure**. Any delay or nonperformance of any provision of this Agreement caused by conditions beyond the reasonable control of a party shall not constitute a breach of this Agreement, provided that such party has taken reasonable measures to notify the affected party of the delay in writing and uses reasonable efforts to perform in accordance with this Agreement notwithstanding such conditions. The delayed party's time for performance shall be deemed to be extended for a period equal to the duration of the conditions beyond its control. Conditions beyond a party's reasonable control include natural disasters, acts of government after the date of the Agreement, power failure, fire, flood, acts of God, labor disputes, riots, acts of war and epidemics. In such an event, the affected party shall be excused from such performance for a time period commensurate with the duration of such prevention, restriction or interference.

16.  **Counterparts**. This Agreement may be signed in counterparts and all counterparts shall be construed together and shall constitute one agreement.

17.  **Headings** All headings are for convenience only and shall not constitute a part hereof or affect in any way the meaning or interpretation of this Agreement.

18.  **Arbitration**. The parties agree, that any dispute or controversy arising out of, relating to or in connection with the interpretation, validity, construction, performance, breach or termination of this Agreement shall be submitted to binding arbitration to be held in Westchester County, New York in accordance with the rules of the American Arbitration Association. The decision of the arbitrator shall be final, conclusive and binding on the parties to the arbitration. Judgment may be entered on the arbitrator's decision in any court of competent jurisdiction. The parties shall each bear their own attorney fees with respect to such Arbitration but shall share

4

equally the other costs and expenses of arbitration. Notwithstanding the provisions of this paragraph 18, in the event that a party requires immediate injunctive relief, such party may obtain such relief in the Supreme Court of the State of New York, County of Westchester, and each party hereto submits to the jurisdiction of such Court.

19. **Controlling Law.** The interpretation, construction and performance of this Agreement and the rights and remedies of each party hereunder shall in all respects be governed by the laws of the State of New York, without regard to the conflict of laws provisions thereof. The parties further agree that venue shall be exclusively in the County of Westchester, New York

IN WITNESS WHEREOF, the parties have executed this Agreement this 3rd day of _march_, 2005.

Software for Moving, Inc.
By: Shlomo Kogos, President

La Rosa Del Monte Express, Inc.
By: _Steven Dazzeo_
_VP Operations_

5

JAN-05-2007 10:00     7188931948     35%     P.07

## MAINTENANCE SCHEDULE A

| Year | Monthly per user | Total Monthly @ 70 users |
|---|---|---|
| First Year | $55 | $3,850 |
| Second Year | $55 | $3,850 |
| Third Year | $55 | $3,850 |
| Fourth Year | $60 | $4,200 |
| Fifth Year | $65 | $4,550 |
| Sixth Year | $70 | $4,900 |
| Seventh Year | $80 | $5,600 |

By: _____
Software for Moving, Inc.
Shlomo Kogos, President

By: _____
La Rosa Del Monte Express, Inc.

6

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

-------------------------------------------------------------

SOFTWARE FOR MOVING, INC., a New
York Corporation,

                         **Plaintiff,**

                      **v.**

LA ROSA DEL MONTE EXPRESS, INC., a
New York Corporation, and LA ROSA DEL
MONTE  EXPRESS (CHICAGO), LLC, an
Illinois Limited Liability Company,

                         **Defendants.**

-------------------------------------------------------------

**CASE NUMBER:  07 C 1839**

**Assigned Judge: Gottschall**

**Designated
Magistrate Judge: Cole**

## NOTICE OF MOTION

       To:    Francis J. Leyhane, III, Esq.
Leyhane & Associates, Ltd.
205 West Randolph Street
Suite 1320
Chicago, IL 60606

      PLEASE TAKE NOTICE that on **August 2, 2007, at 9:30 a.m.**, or as soon thereafter as the parties may be heard, the undersigned will appear before the Honorable Judge Joan B. Gottschall, or any judge sitting in her stead, in the courtroom normally occupied by her, in the United States District Courthouse at 219 South Dearborn Street, Chicago, Illinois, and then and there present **DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**, a copy of which has been filed with the Clerk of the Court.

Dated:  July 23, 2007

Respectfully submitted,

LA ROSA DEL MONTE EXPRESS, INC.
and

LA ROSE DEL MONTE EXPRESS CHICAGO), LLP


By:_____ s/ David M. Dolendi_____
    David M. Dolendi, Esq.
    LORD, BISSELL & BROOK LLP
    111 S. Wacker
    Chicago, IL 60606
    Tel. (312) 443.0202
    Fax: (312) 896.6202

    Kevin Harrington, Esq.
    John T.A. Rosenthal, Esq.
    HARRINGTON, OCKO & MONK, LLP
    81 Main Street, Suite 215
    White Plains, NY 10601
    Tel: (914) 686-4800
    Fax: (914) 686-4824

    *Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned herby certifies that the foregoing **NOTICE OF MOTION** was served on the following:

| Francis J. Leyhane, III, Esq. Leyhane & Associates, Ltd. 205 West Randolph Street Suite 1320 Chicago, IL 60606 leyhane329@aol.com | |

via electronic mail and U.S. Mail on this 23rd day of July, 2007.

   s/  David M. Dolendi
David M. Dolendi

CHI1 1366472v1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

-----------------------------------------------------x

SOFTWARE FOR MOVING, INC., a New
York Corporation,

               Plaintiff,

          v.

LA ROSA DEL MONTE EXPRESS, INC., a
New York Corporation, and LA ROSA DEL
MONTE EXPRESS (CHICAGO), LLC, an
Illinois Limited Liability Company,

              Defendants.

-----------------------------------------------------x

CASE NUMBER: 07 C 1839

Judge: Gottschall

Designated
Magistrate Judge: Jeffrey Cole

## DECLARATION OF OMAR DELEON IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO TRANSFER THE ACTION TO THE SOUTHERN DISTRICT OF NEW YORK

I, OMAR DELEON, the undersigned, declare under penalty of perjury under the laws of the United States that the following is true and correct, and that the Declaration was executed on June 21, 2007, at Chicago, Illinois.

1. I am the General Manager of Defendant, LA ROSA DEL MONTE EXPRESS (CHICAGO), LLC. I make this Declaration in support of Defendants, LA ROSA DEL MONTE EXPRESS, INC. ("La Rosa") and LA ROSA DEL MONTE EXPRESS (CHICAGO), LLC's ("La Rosa LLC", together with La Rosa, "Defendants") motion to dismiss this action, or in the alternative, to stay the action pending Arbitration, or transfer the action to the United States District Court for the Southern District of New York. I know all of the following facts of my

1

personal knowledge and, if called and sworn as a witness, could and would testify competently thereto.

2.  La Rosa LLC is in the business of providing moving services to clients throughout various states in the United States, including clients located and residing in New York City

3.  La Rosa LLC has entered into numerous contracts with entities and individuals located in New York City.  These contracts require or relate to the contractual obligations of La Rosa LLC to provide goods and services to those individuals in New York City, or in the State of New York.

4.  La Rosa LLC will make its officers and employees available for trial in the Southern District of New York, will not object to personal jurisdiction over La Rosa LLC by a Court in the Southern District of New York, and will not object to producing documents and other tangible things in discovery in the Southern District of New York (subject to applicable discovery objections, and the requirements of the Federal Rules of Civil Procedure, the Local Rules, and the Court's Orders relating to discovery, if appropriate).

Dated: June 21 2007
       Chicago, Illinois

X _____
    OMAR DELEON

Subscribed and sworn to before me

this 21 day of JUNE 2007
at Chicago, County of Cook, State of Illinois.

Notary Public _____

> **"OFFICIAL SEAL"**
> BENJAMIN VARELA
> Notary Public, State of Illinois
> My Commission Expires Sept. 26, 2009

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 3.0
### Eastern Division

Software For Moving, Inc.

                        Plaintiff,

v.                                        Case No.: 1:07–cv–01839

                                        Honorable Joan B. Gottschall

La Rosa Del Monte Express, Inc., et al.

                        Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Thursday, July 26, 2007:

      MINUTE entry before Judge Jeffrey Cole :Magistrate Judge Status hearing held and continued to 9/26/2007 at 08:30 AM.Advised in open court(jms, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 3.0
### Eastern Division

Software For Moving, Inc.

                              Plaintiff,

v.                                    Case No.: 1:07−cv−01839
                                          Honorable Joan B. Gottschall

La Rosa Del Monte Express, Inc., et al.

                              Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Monday, July 30, 2007:

      MINUTE entry before Judge Joan B. Gottschall :Briefing schedule as to Defendants' Motion to Dismiss Plaintiff's Amended Complaint [34] is as follows : Responses due by 8/30/2007. Replies due by 9/13/2007. Ruling by mail. Mailed notice(rj, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

Our File No: 2341

STATE OF ILLINOIS          )
                           )  SS.
COUNTY OF COOK             )

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SOFTWARE FOR MOVING, INC., | ) | |
| a New York Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No: 07 C 1839 |
| | ) | Judge Gottschall |
| LA ROSA DEL MONTE EXPRESS, | ) | Magistrate Judge Cole |
| INC., a New York Corporation, and | ) | |
| LA ROSA DEL MONTE EXPRESS | ) | |
| (CHICAGO), LLC, an Illinois Limited | ) | |
| Liability Company, | ) | **Jury Demanded by Plaintiff** |
| | ) | |
| Defendants. | ) | |

**REPLY BRIEF IN SUPPORT OF
MOTION TO STAY ARBITRATION**

NOW COMES the Plaintiff SOFTWARE FOR MOVING, INC., a New York Corporation

(SFM), by and through its attorneys, LEYHANE & ASSOCIATES, LTD., and for its Reply in

Support of its Motion to Stay Arbitration (Document 25) states as follows:

**I.  PROCEDURAL CONUNDRUM**

1.     The briefing schedule for the Motion to Stay Arbitration was set by this court's

order of June 21, 2007 (Document 29).  That same order also allowed Plaintiff leave to file an

Amended Complaint (Document 30).  Although additional motion practice was anticipated with

respect to that new pleading at the time leave to file was granted, this court's June 21 order did

not enter any briefing schedule with respect to the new pleading except to say that Defendants would be required to answer or otherwise plead to that new Complaint by July 23.

2.      Thereafter, Defendants brought a motion (Document 31) innocuously titled "Motion for Leave to File Brief in Excess of 15 Pages." But, in that proposed brief, Defendants proposed to address not only their issues with the Amended Complaint, but also to provide their response to the present Motion to Stay Arbitration. At ¶5 of that motion, Defendants invoked the magic talisman of judicial economy: "By preparing a comprehensive memorandum, Defendants and their counsel will be able to avoid burdening the Court with four (4) separate Memorandums of Law, and can present the Court with a single document that will potentially dispose of, and/or address, all of the issues currently in dispute between the parties at this time."

3.      Defendants' motion was granted without the opportunity to be heard in open court (Document 33). But the Defendants' motion contained the statement that (¶3) "the parties are engaged in discovery in" the AAA Arbitration that Defendant LA ROSA DEL MONTE EXPRESS, INC., a New York Corporation (LA ROSA), filed in New York. LA ROSA DEL MONTE EXPRESS (CHICAGO), LLC, an Illinois Limited Liability Company (LA ROSA CHICAGO) is not a party to that arbitration.

4.      The **parties** are **not** engaged in discovery in the AAA arbitration. LA ROSA has filed an extensive document request and requested multiple depositions of SFM and its President, Shlomo Kogos (a party to the AAA proceeding although, of course, not a party here). Copies of these discovery requests are attached as Exhibit A to this Reply. The court will note that the second of these requests (which takes the form of a June 19, 2007 letter) demands the deposition of "the individual with the first name 'Martin' … whose emails are included as Exhibits X and

- 2 -

Y in the Declaration of Shlomo Kogos" filed in this court. That same letter makes clear that SFM has not complied with LA ROSA'S production request (nor, obviously, has SFM initiated any discovery in that proceeding).

5.      By June 19, SFM had filed the pending Motion to Stay Arbitration in this court. SFM is not participating in the AAA Arbitration. LA ROSA is initiating discovery and demanding sanctions. Attached as Exhibit B is the latest scheduling order from AAA. Attached as Exhibit C is the July 31, 2007 letter from LA ROSA'S attorney chiding SFM's Ohio counsel, Mr. Zukowsky, for failing to comply with the demands for discovery in arbitration.

6.      SFM can not indulge LA ROSA'S demands: SFM claims that no contract to arbitrate exists and therefore SFM can not be called upon to participate in the AAA proceeding. The point is this: SFM *is not participating* in discovery in the AAA proceeding, clinging instead to its hope that this court will address its rights under §4 of the Federal Arbitration Act before sanctions and defaults are entered against it and its President *because* it has not participated.[1]

7.      This brings us back to the procedural posture here. On July 23, 2007, as promised, Defendants filed their lengthy Memorandum of Law in Support of Motion to Dismiss the Plaintiff's Amended Complaint or, in the Alternative, to Transfer the Action to the Southern District of New York, Defendants' Opposition to Plaintiff's Motion to Stay Arbitration, Defendants' Opposition to Strike Declaration of John T.A. Rosenthal, and Defendants' Cross-

---

[1]     Plaintiff *could not* participate in discovery in the AAA proceeding without handing Defendants some arguable ammunition with which to claim that Plaintiff has waived its right to object to arbitration: Defendants even twist Plaintiff's protests to AAA that arbitration is improper into allegations of waiver. *See* Section III.C. of Defendants' Memorandum, Document 35, pp. 19-20. Meanwhile, discovery is stayed in this court: *see*, Magistrate Judge Cole's Order of May 11, 2007 (Document 18.)

Motion to Stay this Action and/or Compel Arbitration (Document 35). With this paper were filed three new Declarations (Documents 36, 37 and 39). The new Rosenthal Declaration (Document 36) and the Declaration of LA ROSA'S President, Hiram Rodriguez (Document 37), arguably address – in various places – matters germane to whether a stay of the arbitration should be granted. With respect, however, the relevant portions of their Declarations go to testimony that might be offered at a "trial" conducted pursuant to §4 of the Federal Arbitration Act (hearsay testimony at best from Mr. Rodriguez about how he obtained a photocopy of an agreement allegedly bearing Mr. Kogos' signature) or argument (Mr. Rosenthal's new theory that an alleged inconsistency about which documents Kogos admits or denies signing undermines Kogos' credibility).

8. Also with the Memorandum (Document 35), Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint (Document 34). This motion was noticed for presentation on August 2, 2007, but even before that date was reached, on July 30, this court entered a briefing schedule on the Motion to Dismiss (Document 41). The latest scheduling order does not mention the prior scheduling order or the pending Motion to Stay Arbitration. By sweeping up the responses due to this motion (and to the Motion to Strike the first Rosenthal Declaration) in the bloated Memorandum, Document 35, the Motion to Stay Arbitration has been nearly swept from the record.

9. If we chose to reply piecemeal on the pending Motions, we would open ourselves to the charge that we are "burdening" the court with multiple memoranda – the promised judicial economy of Defendants' motion for leave to file an oversized memorandum would disappear. On the other hand, the latest scheduling order does not address the Motion to Stay specifically.

- 4 -

Were we to accept the Defendants' invitation to respond comprehensively and collectively to Document 35, as the Defendants might want us to do, we run the risk that, by the time the papers are closed, a default will have been entered in the AAA proceeding… and SFM will be left with the unhappy prospect of launching a collateral attack on it in any court where LA ROSA tries to register its award. We therefore can not accept that invitation and choose to reply here, even though the response that must inevitably be made to the lengthy Memorandum and the host of supporting Declarations and duplicitous exhibits may involve some minor repetition. We can promise only to hold it to a minimum and to refer back to this document to the extent possible.

## II. THE SUBSTANTIVE REPLY

10.     Defendants' purport to address the substance of the pending Motion to Stay at Section III of Document 35 (pp. 13-20).

11.     Defendants argue first that SFM might be obligated to arbitrate even if Kogos did not execute the disputed documents because, under New York law, "there is no requirement that a contract containing an arbitration provision be signed so long as there is other proof that the parties to the contract actually agreed to be bound by its provisions." (Defendants' Memo., Doc. 35, p. 14). Among the authorities cited for this proposition is <u>God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Associates, LLP</u>, 6 N.Y.3d 371, 845 N.E.2d 1265 (2006).

12.     In <u>God's Battalion</u>, a church sued an architect for breach of contract and professional malpractice. The contract on which the church sued contained an arbitration clause. But – the church said – it never signed that contract; therefore it argued, when the architect demanded arbitration of the dispute instead and sought a stay of the court proceeding, it was not required to arbitrate. And the church had not signed that contract. However, the court found that

the "Church has not successfully refuted [the architect's] claim that, after [the architect] forwarded the contract, both parties operated under its terms." (845 N.E.2d at 1267.)

13.    But the key here is that the contract was forwarded. Defendants assert (Memo, p. 15), that "Plaintiff has not stated in this action that it did not agree to arbitrate, but rather, has only insisted that it did not execute the 2005 Agreements." But reference to the Kogos Declaration, Document 21, at ¶3, entirely refutes this contention. There, Kogos states expressly: "I never saw a copy of either the 2005 License Agreement or the 2005 Maintenance Agreement until February 2007, when my attorney (Mr. Philip A. Zukowsky) sent me the copy of the 2005 License Agreement that was attached to the Demand for Arbitration (the 'Demand') filed by La Rosa Del Monte Express, Inc., one of the Defendants in this case." If Kogos never even saw the supposed agreement – how could he – or Plaintiff SFM – be bound by its terms?

14.    At best – at most – at the forthcoming trial required by §4 of the Federal Arbitration Act Defendants will be able to put in any competent evidence they can gather that SFM acted in conformity with an agreement it never saw. That it never knew existed. No one disputes that Plaintiff and LA ROSA agreed on price terms for the web-based version of the Moving Manager Program… but were these other terms negotiated or *were they invented* – after a dispute arose?

15.    Defendants next argue (§III.B. of Document 35) that SFM should be estopped from asserting that the 2005 Agreements contain any forged signatures. Now Defendants can not and do not contend that either Mr. Kogos or his Ohio attorney, Mr. Zukowsky, admit or suggest that Kogos signed either of the March 3, 2005 contracts – usually referred to by the parties as the 2005 License Agreement or the 2005 Maintenance Agreement. We have insisted that the

signatures on these documents are forged and we have so insisted from the first moment the documents were called to our attention.  Nor is there any dispute that Mr. Kogos in fact signed what **Defendants call** an exhibit to the 2005 License Agreement, namely, the "9/11 Plan" referred to at ¶6 of Kogos' Declaration.[2]  But Defendants base their estoppel argument on this piece of paper, the Maintenance Agreement (Exhibit C to the Amended Complaint):

### MAINTENANCE SCHEDULE A

| Year | Monthly per user | Total Monthly @ 70 users |
|---|---|---|
| First Year | $55 | $3,850 |
| Second Year | $55 | $3,850 |
| Third Year | $55 | $3,850 |
| Fourth Year | $60 | $4,200 |
| Fifth Year | $65 | $4,550 |
| Sixth Year | $70 | $4,900 |
| Seventh Year | $80 | $5,600 |

Software for Moving, Inc.
By:     Shlomo Kogos, President

La Rosa Del Monte Express, Inc.
By:     STEVEN DIRECILL
        VP OPERATIONS

---

[2]     That document, also attached to the Plaintiff's Amended Complaint as Exhibit B, *is* entitled "Addendum to Software Development & License Agreement" and does have a page number (17) that follows (in Defendants' papers) the last page (16) of the 2005 License Agreement.  But Kogos is unequivocal in asserting that he signed this piece of paper but not any agreement to which this piece of paper might be added.

- 7 -

Kogos says (Declaration ¶7) that he signed this piece of paper as well, but not the 2005 Maintenance Agreement with which Defendants associate this document. Defendants also point out that Mr. Zukowsky, in correspondence dated February 26 or 27, 2007 (the February 26 date is on page one of the letter, but the following pages are dated February 27) states, "Admittedly, the forgeries on the supposed March 3, 2005 Maintenance Agreement (Exhibit C to your Demand for Arbitration) are more artful, but the signatures there are no more valid than the phony scrawl on the Software Development & License Agreement." (Although a copy of Mr. Zukowsky's letter is included as Exhibit PZ4 to his Declaration, Document 22, it is *also* attached as Exhibit D to the latest Rosenthal Declaration, Document 36.) Defendants would include two Kogos signatures as part of the 2005 Maintenance Agreement. One is reproduced above; the other would be (according to the way Defendants organize their papers) on the preceding page. But only one, according to Mr. Kogos, is forged.

16. This is a factual inconsistency, albeit one which is really minor in the context of the case: Mr. Zukowsky was trying to impress on LA ROSA'S attorneys (who, after all, might not have known) that their Demand for Arbitration was, and remains, based on a false and fraudulent premise, namely, that Mr. Kogos ever agreed, for himself or SFM, to arbitrate anything. He was trying to convey the idea that he had never seen, nor had his client ever seen, the elaborate 2005 License Agreement or the equally elaborate 2005 Maintenance Agreement. In the opening moments of the arbitration, where his client is telling him he never even saw these agreements he supposedly signed, Mr. Zukowsky used an extra "s" in a letter. This is judicial estoppel?

- 8 -

17.     It is, of course, not judicial estoppel, not according to the case on which Defendants rely, <u>Jarrard v. CDI Telecommunications, Inc.</u>, 408 F.3d 905 (7th Cir. 2005). It isn't even a "clearly inconsistent" position such as would satisfy the first factor "for deciding whether invocation of the doctrine may be appropriate." (408 F.3d at 914.) What's truly inconsistent. Zukowsky said the signatures were forged. Later, when the documents could be examined in more detail, Kogos said the signatures were forged... but not this one. At all times, SFM has contended that documents were forged – and in particular those documents that allegedly give rise to an agreement to arbitrate are forged.

18.     Further, according to the <u>Jarrard</u> court, "the doctrine aims to prevent a party that prevails in one lawsuit on one ground from repudiating that same ground in another lawsuit." (408 F.3d at 914.)

19.     On what, exactly, has SFM prevailed – and in what case? Defendants assert that Zukowsky's assertion of forgeries "resulted in a modicum of success with the AAA." (Memo, p. 18.) Apparently our not yet being defaulted constitutes a victory in LA ROSA'S eyes. If we had succeeded in persuading someone – anyone – that the 2005 License Agreement and the 2005 Maintenance Agreement contained forged signatures, presumably we wouldn't be involved in any arbitration at all. But we are – and we are perched perilously on the point of a default because we can not get the trial that §4 of the Federal Arbitration Act says we are entitled to.

20.     A third factor that the courts will consider is "whether the party asserting the inconsistent position 'would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" Even *if* there were an inconsistent position, what advantage has SFM obtained from its assertion? Well Defendants assert that the Plaintiff's inconsistent position

has allowed Plaintiff to file this "forum shopping complaint in a far-off forum, and litigate this matter in Federal Court in Chicago, rather than arbitrate this matter in New York pursuant to the 2005 Agreements." This would be a wonderful development, were it true, but so far there's no progress on the copyright infringement claim that Plaintiff has filed here in the forum where the Defendant LA ROSA CHICAGO continues to use the Windows version of Plaintiff's Moving Manager on its Chicago-based computers day in and day out, infringing with every estimate it rights, Plaintiff's copyright.

21.     In February 2007, Mr. Zukowsky acquainted LA ROSA'S attorneys with his client's assertion that the 2005 License Agreement and 2005 Maintenance Agreement were unsigned and unknown to Kogos and SFM – demanding that LA ROSA withdraw its Demand for Arbitration. At that point, assuming that LA ROSA and its attorneys were in fact surprised by these contentions of forgery, LA ROSA became, in the language of §4 of the Federal Arbitration Act, "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration." Section 4 spelled out what LA ROSA, as the aggrieved party, was supposed to do: It was supposed to "petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement." The statute – as this court has already pointed out – does not impose any such obligation on SFM.

22.     SFM was therefore free to file its copyright infringement complaint here, in Chicago, where a LA ROSA subsidiary is infringing SFM's copyright. (And SFM's persistent and consistent claims of forgery did not provide it with this 'advantage' – it was Defendants'

copyright violations that compelled this filing.)  As Defendants repeatedly assert, SFM did not file this suit until over a month after the letter from Mr. Zukowsky that seems to have contained an improvident plural.  And, as Defendants also repeatedly assert, Plaintiff's filings did not mention the AAA arbitration.  But nothing stopped LA ROSA from moving to compel arbitration in New York before or even after this suit was filed: Instead, however, LA ROSA made its motion here (Document 10).

23.    And with this we dispose of Defendants' last two assertions against the Motion to Stay Arbitration: Section III.C. asserts that Plaintiff has waived its right to litigate by 'participating' in the arbitration.  But the sort of participation that is contemplated does not include insisting that the arbitration documents are forged and that AAA has no right to hear any dispute between the parties.  Nor is a waiver committed by trying to avoid a default on discovery issues at the AAA while waiting for this court to vindicate its rights under §4 of the Federal Arbitration Act.  What we believe LA ROSA is really arguing is that waiver exists because SFM did not move to stay the arbitration sooner.  Responding to this argument necessarily requires a response to §III.D. of the Defendants' Memorandum, which contends that we have brought this motion to stay in the wrong venue.

24.    Section 4 of the Federal Arbitration Act imposes an affirmative obligation on the "aggrieved party" seeking to compel arbitration to bring a motion to compel.  So SFM was not obligated to raise the issue.   But *could* it have raised the issue?

25.    This is the question which the court posed in June – and for which neither party then had a ready answer.  However, the answer is – as it turns out – that SFM *can* raise the issue, according to International Medical Group, Inc. v.American Arbitration Association, 312 F.3d

833 (7th Cir. 2002): "[A]ny party to an arbitration can obtain relief by seeking a stay against the party bringing the arbitration.  There is no need to seek a stay against the sponsoring organization." (312 F.3d at 843; holding AAA, as the organization 'sponsoring' arbitration, need not be joined in a motion to stay arbitration.)

26.    Defendants have cited one case at §III.D. of their Memorandum that also stands for the proposition that a party can challenge a demand to arbitrate by moving to stay, <u>UAL</u> <u>Corp. v. Mesa Airlines, Inc.</u>, 88 F.Supp.2d 910 (N.D.Ill. 2000).  In <u>UAL Corp.</u>, Judge Gettleman ruled that a declaratory action, brought for the express purpose of staying an arbitration filed against United in Colorado, would not be dismissed... but would have to be transferred to and decided in Colorado, where the arbitration was initiated.  There was a provision in the arbitration agreement before Judge Gettleman in the <u>UAL Corp.</u> case apparently similar to the forum selection provisions in the 2005 License Agreement and 2005 Maintenance Agreement here.

27.    But that is not the end of the inquiry here: In <u>UAL Corp.</u>, United did not deny that it was a party to the arbitration agreement.  Its complaint sought "an order declaring that defendant's claims *under the agreement* are not arbitrable and enjoining or staying the arbitration." (88 F.Supp. at 912.)

28.    That is not our case here.  We deny that the agreements on which LA ROSA seeks to compel arbitration even *exist* – not that they were merely not executed, but that they were *unknown* to SFM before February 2007 and apparently not even *imagined* before sometime early in 2006 when Kogos got an 'earthlink' email address.  Requiring SFM to seek a stay in New York because the disputed contracts contained a forum selection provision would seem to require

SFM to imbue what it insists are forged documents with a validity SFM claims they do not merit. Moreover, because Defendants are infringing SFM's copyright in this forum, this forum is also a district court which has jurisdiction of the dispute between the parties under §4 of the Federal Arbitration Act. If LA ROSA is now upset that the issue of whether there exists any agreement to arbitrate in the first place is finally – finally – going to be addressed here (instead of New York) it has only itself to blame: LA ROSA did not seek to compel arbitration in New York – but it did seek to compel arbitration at all until it moved to dismiss Plaintiff's Complaint. There is a waiver argument after all: It is LA ROSA which has waived any right to have this court decide whether to grant the stay.

## CONCLUSION

Much of what LA ROSA argues in response to the Motion to Stay Arbitration goes to the weight of the evidence that might be considered in the "trial" required by §4 of the Federal Arbitration Act. But a trial must take place.

WHEREFORE, Plaintiff SOFTWARE FOR MOVING respectfully restates its Motion to Stay Arbitration and respectfully prays, as interim relief, for an order staying the AAA arbitration pending the resolution of the hearing required by §4 of the Federal Arbitration Act.


                                          ___s/ Francis J. Leyhane III_____
                                          One of the Attorneys for
                                          SOFTWARE FOR MOVING, INC.

Attorney No. 3127365
FRANCIS J. LEYHANE III
LEYHANE & ASSOCIATES, LTD.
205 West Randolph Street
Suite 1320
Chicago, Illinois  60606
(312) 223-0811

- 13 -

**Exhibit A**

## AMERICAN ARBITRATION ASSOCIATION

**NEW YORK, NEW YORK**          **COMMERCIAL ARBITRATION RULES**

-----------------------------------------------------------:    **Case No. 19 117 00027 07**

**LA ROSA DEL MONTE EXPRESS, INC.,**    :

                **Claimant,**    :      **CLAIMANT'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS**

      **vs.**    :

**SOFTWARE FOR MOVING, INC., and**    :
**SHLOMO KOGOS, as an Individual,**

              :

           **Respondents.**
-----------------------------------------------------------:

    **PLEASE TAKE NOTICE**, that pursuant to May 17, 2007 Report of Preliminary Hearing and Scheduling Order No. 1 issued by Arbitrator Richard S. Mandel and Rule 21(a)(i) and (ii) of the American Arbitration Association's ("AAA") Commercial Arbitration Rules, Claimant, LA ROSA DEL MONTE EXPRESS, INC. ("Claimant" or "La Rosa"), by and through its attorneys, Harrington, Ocko & Monk, LLP, demand that Respondents, SOFTWARE FOR MOVING, INC. ("SFM") and SHLOMO KOGOS ("Kogos", along with SFM, "Respondents"), produce the documents described herein (the "Demand") for inspection and copying at the offices of Harrington, Ocko & Monk, LLP, 81 Main Street, Suite 215, White Plains, NY 10601, within twenty (20) days of the service hereof.  Pursuant to the applicable Order of Arbitrator Mandel and the Commercial Arbitration Rules of the AAA, the document requests contained in the Demand shall be deemed continuing from the present until the time of the hearing, and Respondents will serve upon Claimant's counsel supplemental responses and/or documents containing any additional information responsive to the requests contained in the Demand which may hereafter become available to Respondents, their attorneys and/or their respective agents

1

and/or representatives, and/or may be subsequently deemed responsive to the requests contained in the Demand by Respondents or their counsel after their initial response to the Demand.

## DEFINITIONS AND INSTRUCTIONS

1.      As used herein, the term "La Rosa" shall mean La Rosa Del Monte Express, Inc., Claimant in this action, and its officers, directors, employees, representatives, agents, subsidiaries, affiliates and/or attorneys or other persons acting for or on behalf of Claimant, including, but not limited to, any predecessors or successors in interest and their respective officers, directors, agents, employees and representatives.

2.      As used herein, the term "SFM" shall mean Respondent, Software for Moving, Inc. and its predecessors or successors in interest (including but not limited to, Safeguard Computers Services, Inc.), and the officers, directors, agents, employees, representatives, attorneys or other persons acting for or on behalf of SFM.

3.      As used herein, the term "Kogos" shall mean Respondent, Shlomo Kogos, President of SFM.

4.      As used herein, the term "1999 Software Agreement" shall mean the Software License Agreement entered into between Safeguard Computer Services, Inc. (alleged predecessor in interest to SFM), and La Rosa, as well as the exhibits associated with the 1999 Software Agreement executed by Shlomo Kogos, then President of Safeguard Computer Services, Inc., and Hiram Rodriguez, President for La Rosa; the document was attached as Exhibit "A" to SFM's Complaint in its pending action against various Defendants, including La Rosa, Case No. 07 C 1839 (N.D. Ill. 2007) (the "Federal Action").

5.      As used herein, the term the "2005 Software Agreement" shall mean the Software Development & License Agreement and associated Addendum to Software Development &

License Agreement, attached as Exhibit "B" to Claimant's Demand in this Arbitration; the Addendum to Software Development & License Agreement was referenced in Exhibit "B" to SFM's Complaint in the Federal Action.

6.      As used herein, the term the "2005 Maintenance Agreement" shall mean the 2005 Maintenance Agreement attached as Exhibit "C" to Claimant's Demand in this Arbitration, as well as the associated Maintenance Schedule "A" to the 2005 Maintenance Agreement, referenced in Exhibit "C" to SFM's Complaint in the Federal Action.

7.      As used herein, the term "you" and/or "your(s)" shall refer to and include Respondents SFM and/or Kogos, as those terms are defined above.

8.      As used herein, the term "person(s)" shall mean any natural person or any business entity, legal or governmental entity or association.

9.      As used herein, the term "identify," when directed to a person(s) means to give, to the extent known, the person's full name, the person's position of employment, and/or employer at the relevant time, and the person's present and/or last known address and telephone number. When the term "identify" is directed to documents, please provide the control number or the "Bates" number assigned to the document, or if no such number exists, provide enough information to allow Claimant to formulate a specific document request for that document or corresponding information.  When the term "identify" is directed to facts, please provide all facts responsive to that aspect of the Demand or request.

10.      As used herein the term "document(s)" is defined in accordance with the broadest definitions consistent with the New York Civil Practice Law & Rules and AAA Commercial Arbitration Rules, and includes, but is not limited to, all drafts of documents, all originals, and all written, reported, recorded, pictorial or graphic matter, and includes letters, diagrams, telegrams,

telecopies, facsimiles, telexes, diaries, date books, cables, telephone records, notations, e-mails, copies of e-mails, text messages, instant messages, voicemails, invoices, bids, ledgers, diaries, journals, computer disks, zip drives, hard drives, magnetic media, electronic media, electronic memory, computer back-up files, computer diskettes, archived files, deleted files, formal or informal books or records of accounts, minutes of meetings, minutes, bulletins, prints, plans, photographs, reports, memoranda, notes, working papers, notebooks, calendars, drafts, worksheets, circulars, contracts, agreements, contract briefs, contract summaries, computer data, data compilations, computer date books, picture slides, transcriptions or any and all copies or reproductions of the foregoing, and any notations or other changes that may have been made to such document(s) which do not appear in the original document.

11.     The connectives "and" and "or" shall be construed, either disjunctively or conjunctively, as necessary, to bring within the scope of the discovery request or demand all responses and/or responsive documents that might otherwise be construed to be outside the scope of the request or demand.

12.     Use of the singular form of any word includes the plural form of that word and vice versa.

13.     "Concerning" shall mean relevant to, related or relating to, commenting upon, containing, embodying, reflecting, describing, regarding, evidencing, constituting, referring to, or used in connection with, and should be construed in the broadest sense.

14.     "Including" shall be interpreted in every instance as being illustrative of the information requested, and shall be read as "including but not limited to," and shall not be interpreted to exclude any information otherwise within the scope of these requests.

15.     The term "communication" includes written or oral communication(s) and means state the date when and the place where such communication was made or took place, the identity of the person who made the communication, the identity of the person to whom the communication was made, the identity of any other person or persons who were present or heard the communication and/or the substance of the communication.

16.     In responding to these document requests/demands, all information and/or documents are to be divulged that are in your possession, custody or control or that of your attorneys, agents or other representatives.  In responding to the Demand, you must furnish all information available or available to you with reasonable diligence and/or inquiry on your part.

17.     The request for the production of documents is ongoing and requires further and supplemental production by Respondents whenever they obtain knowledge of, or custody, possession, or control of any additional documents or information within the scope of the particular request contained in the demand.

18.     If Respondents fail to produce documents in response to any document request herein on the grounds of any kind of privilege, Claimant request that a privilege log be produced, including the following information:

    a.  The type of document (*i.e.*, letter, memo, report, etc.);

    b.  provide information sufficient to enable identification of the document, including the title, the subject matter, date, name and address of the author or signor, name and address of all addressee(s), name(s) and address(es) of all person(s) copied and provided copies of the document and all other recipients;

    c.  state the existence of any attachments, addenda, appendices, memoranda, or other documents or things associated with the document, the present location

and/or custodian of the document associated with the document, the type, nature and basis of the privilege asserted;

d. the facts relied on in support of the claim of privilege associated with the document, and identify all persons having knowledge of any facts related to the claim of privilege.

19. If any documents called for by any request contained herein, has been lost or destroyed as of this date, identify each such document as follows:

a. date;

b. title, if any;

c. author(s);

d. sender(s);

e. addressee(s);

f. recipient(s) of carbon, cc, or blind copies;

g. all persons to whom copies were furnished, shown or described;

h. number of pages;

i. subject matter;

j. complete content, so far as known to Claimant;

k. description, subject matter and complete content of each attachment or appendices;

l. date of loss or destruction;

m. reason for loss or destruction;

n. person(s) who lost the document or authorized destruction of the document;

o. person(s) who destroyed the document; and

p.  custodian(s) of the document on the date it was lost or destroyed.

20.     If Respondents are aware of the existence of any document responsive to any request which is not in their possession, custody or control, identify each such document as follows:

    a.  date;

    b.  title, if any;

    c.  author(s);

    d.  sender(s);

    e.  addressee(s);

    f.  recipient(s) of carbon, cc or blind copies;

    g.  all persons to whom copies were furnished, shown or described;

    h.  number of pages;

    i.  subject matter;

    j.  complete content, so far as known to Respondents;

    k.  description, subject matter and complete content of each attachment or appendix;

    l.  person in possession of the document; and

    m. the request number(s) by which Respondents are called to produce such document.

21.     All documents shall be produced in the form in which they are maintained.  A request for a document contained in this Demand shall be deemed to include a request for any and all files, folders or binders within which the document was contained and/or held, and any

and all transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document in addition to the document itself.

22.     If non-identical copies of the same document appear in the files of more than one officer, director, employee or representative of Respondents, copies of each such document, as it appears in the files of each such employee or representative, shall be produced.

23.     The date covered by these document requests/demands is as of January 1, 1999 to the present, unless a longer time is required to fully respond, or unless a shorter time is specified in the individual document request/demand.

## REQUESTS FOR THE PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**    Any and all documents concerning or relating to the 1999 Software Agreement.


**REQUEST NO. 2:**    Any and all documents concerning or relating to the 2005 Software Agreement.


**REQUEST NO. 3:**    Any and all documents concerning or relating to the Addendum to Software Development & License Agreement.


**REQUEST NO. 4:**    Any and all documents concerning or relating to the 2005 Maintenance Agreement.


**REQUEST NO. 5**:    Any and all documents concerning or relating to the Maintenance Schedule "A".

**REQUEST NO. 6:**    Any and all documents concerning or relating to the agreement referenced in paragraph "8" of SFM's Complaint in the Federal Action, allegedly entered into in or about December 2004 by SFM with respect to a Web-based Version of the Moving Manager Program.

**REQUEST NO. 7:**    Any and all documents concerning or relating to the alleged agreement between SFM and La Rosa regarding additional enhancements and further customizations described in paragraph "11" of SFM's Complaint in the Federal Action.

**REQUEST NO. 8:**    Any and all documents concerning communications between SFM and/or Kogos, on the one hand, and La Rosa and/or Steven Dazell, former employee of La Rosa (the individual who signed the Addendum to the 2005 Software Agreement and the individual who signed the Maintenance Schedule "A" to the 2005 Maintenance Agreement) on the other hand.

**REQUEST NO. 9:**    Any and all documents concerning communications between SFM and/or Kogos on the one hand, and La Rosa on the other hand regarding and/or relating to the 2005 Software Agreement and/or 2005 Maintenance Agreement, or the alleged December 2004 agreement, or alleged 2006 agreement, described in paragraphs "8" and "11" of SFM's Complaint in the Federal Action.

**REQUEST NO. 10**:    Any and all documents concerning communications between SFM and/or Kogos, on the one hand, and David R. Tyler on the other hand, concerning or relating to SFM's proposal to provide to La Rosa a software version of the Moving Manager Web Version

software, or the alleged December 2004 agreement, or alleged 2006 agreement described in paragraphs "8" and "11" of SFM's Complaint in the Federal Action.

**REQUEST NO. 11:** Any and all documents concerning communications between SFM and/or Kogos on the one hand, and La Rosa on the other hand, regarding and/or relating to the Addendum to Software Development & License Agreement, and/or the Maintenance Schedule "A", both referenced in SFM's Complaint in the Federal Action, or the alleged December 2004 agreement, or alleged 2006 agreement described in paragraphs "8" and "11" of SFM's Complaint in the Federal Action.

**REQUEST NO. 12:** Any and all documents concerning meetings between SFM and/or Kogos on the one hand, and La Rosa on the other concerning the 1999 Software Agreement, and/or the 2005 Software Agreement, and/or 2005 Maintenance Agreement, or the alleged December 2004 agreement, or alleged enhancement agreement described in paragraphs "8" and "11" of SFM's Complaint in the Federal Action.

**REQUEST NO. 13:** Any and all documents concerning meetings between SFM and/or Kogos on the one hand, and La Rosa on the other concerning the Addendum to Software Development & License Agreement and Maintenance Schedule "A", both referenced in SFM's Complaint in the Federal Action.

**REQUEST NO. 14:** Any and all documents concerning communications between SFM and/or Kogos on the one hand, and La Rosa on the other.

**REQUEST NO. 15:** Any and all documents sufficient to show the various e-mail addresses or e-mail names utilized or opened by Kogos in any manner, and for any purpose, whether in conjunction with work for SFM or personal e-mail addresses, and the dates such e-mail addresses were first opened or used.

**REQUEST NO. 16:** Any and all documents concerning or relating to any payments from La Rosa to SFM and/or Kogos including checks, money orders, wire transfers, credit card payments or otherwise.

**REQUEST NO. 17:** Any and all documents sufficient to show the signature of Mr. Kogos on various documents (but no less than ten (10) different documents) dating from March of 1999, March of 2005, August of 2005, March of 2006, August of 2006.

**REQUEST NO. 18:** Any and all documents relating to communications between SFM and/or Kogos and the company and/or individual and/or business entity which hosted the Moving Manager Web Version software partially provided to La Rosa by SFM, and which company and/or individual was or is located in Ohio.

**REQUEST NO. 19:** Any and all documents sufficient to show the type of computer system, and/or computer, and/or computer server utilized by SFM or Kogos between January of 2005 to the present, as well as the location of any back-up tapes or electronic back-up media devices utilized in conjunction with that system, or those computers.

**REQUEST NO. 20:**  Any and all documents sufficient to show the present address and/or principal place of business of SFM.

**REQUEST NO. 21:**  Any and all documents sufficient to show the present address of Shlomo Kogos.

**REQUEST NO. 22:**  Any and all documents sufficient to show the present addresses, and/or telephone numbers, and/or e-mail addresses of SFM's and/or Safeguard Computer Services, Inc.'s past and/or present employees.

**REQUEST NO. 23:**  Any and all documents concerning any lawsuits, actions, arbitrations, mediations or other legal proceedings to which either SFM or Shlomo Kogos has been a party; this request includes but is not limited to any legal proceedings to which Safeguard Computer Services, Inc. was, or may have been, a party.

**REQUEST NO. 24:**  Any and all documents relating to or concerning disputes concerning breach of contract or monies owed, including but not limited to, breach of a rental agreement or rental monies owed, to the business entity Adeena by SFM or Kogos with regard to any and all office space rented by SFM or Mr. Kogos, and located at 211 Warren Street, Newark, NJ 07103.

**REQUEST NO. 25:**  Any and all documents relating to or concerning disputes SFM or Kogos has had, or may have had, with Bulldog Movers located at 2282 Defoor Hills Road, Atlanta, GA 30318.

**REQUEST NO. 26:**  Any and all documents relating to or concerning Bulldog Movers located at 2282 Defoor Hills Road, Atlanta, GA 30318.

**REQUEST NO. 27:**  Any and all documents relating to or concerning disputes between SFM and/or Mr. Kogos on the one hand, and employees of SFM or Safeguard on the other hand, regarding SFM's (or Safeguard's) failure or alleged failure to pay employees salaries or compensation owed.

**REQUEST NO. 28:**  Any and all documents concerning SFM's status as a domestic business corporation in the States of New York and/or New Jersey, including but not limited to, any documents or papers filed with or required to be filed with, the New York State Department of State, Division of Corporations.

**REQUEST NO. 29:**  Any and all documents concerning Safeguard's status as a domestic business corporation in the States of New York or New Jersey, including but not limited to, any documents or papers filed with or required to be filed with, the New York State Department of State, Division of Corporations.

**REQUEST NO. 30**:  Any and all documents relating to or concerning the registration with the United States Copyright Office of the software described in the 1999 Software Agreement, including but not limited to, transfer of ownership of such registration or rights.

**REQUEST NO. 31**:  Any and all documents relating to copyright registrations obtained by Safeguard for any software owned and/or created by Safeguard Computer Services, Inc.

**REQUEST NO. 32**:  Any and all documents relating to copyright registrations obtained by SFM for any software owned and/or created by SFM.

**REQUEST NO. 33**:  Any and all documents indicating or relating to or concerning the transfer of intellectual property rights (including but not limited to, copyright) from Safeguard Computer Services, Inc., on the one hand, to SFM or Kogos, on the other hand, or vice versa.

Dated:  White Plains, New York
May 25, 2007

Yours, etc.

Kevin J. Harrington
John T. A. Rosenthal
HARRINGTON, OCKO & MONK, LLP
Attorneys for *Claimant*
*LA ROSA DEL MONTE EXPRESS, INC.*
81 Main Street, Suite 215
White Plains, New York 10601
Telephone:  (914) 686-4800
Facsimile:  (914) 686-4824

14

**TO:**   Philip Zukowsky, Esq.
CHERNESKY HEYMAN & KRESS
*Counsel for Respondents*
*SOFTWARE FOR MOVING, INC.*
*and SHLOMO KOGOS*
Suite 1100
10 Courthouse Plaza SW
Dayton, OH 45402
Telephone:  (937) 449-2800

## AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| LA ROSA DEL MONTE EXPRESS, INC., <br><br> Claimant, <br><br> vs. <br><br> SOFTWARE FOR MOVING, INC., and SHLOMO KOGOS, as an Individual, <br><br> Respondents. | Case No. 19 117 00027 07 <br><br><br> **AFFIDAVIT OF SERVICE** |

STATE OF NEW YORK    )
                              ) s.s.:
COUNTY OF WESTCHESTER  )

      SUSAN GLENN, being duly sworn, deposes and says: deponent is not a party to this action, is over 18 years of age and resides in Dutchess County, New York.

      On May 25, 2007, deponent mailed the within **CLAIMANT'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS**, upon:

      Philip Zukowsky, Esq.
      Chernesky Heyman & Kress
      Suite 1100
      10 Courthouse Plaza SW
      Dayton, OH 45402

by depositing a true copy thereof in a post-paid wrapper, in an official depository under the care and custody of the United States Postal Service within the State of New York by first class mail and by e-mail @ paz@chk.law.

                                 _Susan Glenn_
                                   SUSAN GLENN

Sworn to before me this
25th day of May, 2007

_Shirley B Thornton_
SHIRLEY B. THORNTON
Notary Public, State of New York
No. 01TH6029394
Qualified in Westchester County
Commission Expires August 16, 2009

# Harrington, Ocko & Monk
### A LIMITED LIABILITY PARTNERSHIP
**Attorneys at Law**

White Plains Office

**81 Main Street – Suite 215**
**White Plains, NY 10601**
**Tel: (914) 686-4800**
**Fax: (914) 686-4824**

**John T. Rosenthal, Esq.**
**JRosenthal@homlegal.com**

New York City Office

**52 Duane Street, 7th Floor**
**New York, NY 10007**
**Tel: (212) 227-8004**

**Reply to White Plains Office**

June 19, 2007

**VIA E-MAIL @ paz@chklaw.com**

Philip A. Zukowsky, Esq.
Chernesky Heyman & Kress, P.L.L.
10 Courthouse Plaza SW
Suite 1100
Dayton, OH 45402

Re:  *La Rosa Del Monte Express, Inc., Claimant, vs. Software*
*For Moving, Inc., and Shlomo Kogos, as an Individual, Respondents.*

Dear Mr. Zukowsky:

Further to the discussions between the parties and the Arbitrator for this matter, and the Report of Preliminary Hearing and Scheduling Order No. 1 ("Order No. 1") issued by the Arbitrator in this Arbitration, the following are the fact witnesses whom we wish to depose in this matter:

1.  Shlomo Kogos;
2.  David R. Tyler;
3.  The individual with the first name "Martin" who uses an e-mail address queens2005@earthlink.net and whose e-mails are included as exhibits X and Y in the Declaration of Shlomo Kogos filed in the Federal action pending between the parties, Case No. 07C1839;
4.  The individuals at the Ohio-based server company most familiar with hosting the web-based Moving Manager Software on behalf of La Rosa.

We would request at this time that you provide us with the address of Mr. Kogos, as well as the business address of SFM. In addition, we would request at this time that you provide us the full name and address of the individual by the name of "Martin" who uses an e-mail address queens2005@earthlink.net referenced in the Declaration of Shlomo Kogos, as well as the name and address of the individuals at the Ohio-based web software company with whom SFM and Shlomo Kogos had contact regarding hosting the web-based Moving Manager Software on behalf of La Rosa. Please provide us this information at your earliest convenience, but no later than Monday, June 25, 2007.

Philip A. Zukowsky, Esq.
June 19, 2007
Page 2


La Rosa's submissions of these names in no way waives or precludes La Rosa from submitting additional fact witness names for deposition should the names of additional individuals with information relevant to La Rosa's claims in the Arbitration come to light after production of documents and depositions of witnesses in this matter.

Finally, SFM is tardy in responding to La Rosa's document requests in this matter. As you may be aware, Claimant served SFM with document requests on May 25, 2007 as provided for in Order No. 1. SFM had until June 14, 2007 in which to respond to such requests and produce responsive documents. As of this date, SFM is delinquent. Please inform us immediately as to when we can expect to receive SFM's responses to our document requests as well as the documents requested. Otherwise, we intend on raising this issue with the Arbitrator.

Thank you for your attention to this matter.

Sincerely,

John T.A. Rosenthal

JTR/sg

**Exhibit B**

AMERICAN ARBITRATION ASSOCIATION
-----------------------------------------------------------------

**LA ROSA DEL MONTE EXPRESS, INC.,**

<table>
<tr><td>

**Claimant**

v.
</td><td>

**Case No.**
**19 117 00027 07**
</td></tr>
</table>

**SOFTWARE FOR MOVING, INC. and**
**SHLOMO KOGOS,**

**Respondents**
-----------------------------------------------------------------

**SCHEDULING ORDER NO. 2**

The Arbitrator having reviewed the correspondence from Kevin J. Harrington, Esq., Counsel for Claimant, and Philip Zukowsky, Esq., Counsel for Respondents, it is HEREBY ORDERED as follows:

1.      In the absence of an explicit order from the Court in the pending federal action between the parties, Case No. 1:07-cv-01839, which specifically stays discovery or any other proceedings in this arbitration, the Arbitrator's May 17, 2007 Scheduling Order remains in full force and effect.  The Arbitrator does not interpret the May 11, 2007 order of Magistrate Judge Cole as being intended to have any effect on discovery in this arbitration proceeding, as opposed to the federal court action, and will not interpret the order in such fashion without an explicit indication to that effect from the Court.

2.      Respondents shall produce all documents responsive to Claimant's First Request for Production of Documents by no later than July 30, 2007.

3.      Respondents shall provide the information requested in Mr. Rosenthal's letter of June 19, 2007 by no later than July 30, 2007.

4.     Respondents shall make Mr. Kogos available for a deposition by no later than August 13, 2007.

5.     The failure to comply with this Order, as well as prior orders of the Arbitrator, may result in adverse inferences, preclusion of evidence or other appropriate relief at the hearing of this matter.  The parties shall have until August 31, 2007 to make any submissions regarding the appropriate remedy for any discovery defaults or violations of the Arbitrator's orders.  The Arbitrator will address the issue of the effect of such defaults and violations as part of the conference call previously scheduled for September 5, 2007 at 3:00 p.m. EST.

Dated: July 20, 2007

_____
RICHARD S. MANDEL, ESQ.

**Exhibit C**

# Harrington, Ocko & Monk

**A LIMITED LIABILITY PARTNERSHIP**
**Attorneys at Law**

White Plains Office

**81 Main Street – Suite 215**
**White Plains, NY 10601**
**Tel: (914) 686-4800**
**Fax: (914) 686-4824**

**John T. Rosenthal, Esq.**
**JRosenthal@homlegal.com**

New York City Office

**52 Duane Street, 7th Floor**
**New York, NY 10007**
**Tel: (212) 227-8004**

**Reply to White Plains Office**

July 31, 2007

**VIA E-MAIL @ paz@chklaw.com**
**and REGULAR MAIL**

Philip A. Zukowsky, Esq.
Chernesky Heyman & Kress, P.L.L.
10 Courthouse Plaza SW
Suite 1100
Dayton, OH 45402

      Re:   *La Rosa Del Monte Express, Inc., Claimant, vs. Software*
             *For Moving, Inc., and Shlomo Kogos, as an Individual, Respondents.*

Dear Mr. Zukowsky:

      I write to you at this time regarding the July 20, 2007 Scheduling Order No. 2 issued by Arbitrator Mandel, as well as your clients, Software for Moving, Inc. ("SFM") and Shlomo Kogos' ("Kogos") continued violation of their discovery obligations in this Arbitration.

      As you I am sure you are aware, on July 20, 2007, Arbitrator Mandel issued Scheduling Order No. 2 in this matter. Pursuant to paragraphs "2" and "3" of Scheduling Order No. 2, your clients were to produce documents responsive to La Rosa Del Monte Express, Inc.'s ("La Rosa") First Request for Production of Documents by no later than July 30, 2007. Under Scheduling Order No. 2, your clients were also required to provide information responsive to the requests set forth in our letter of June 19, 2007.

      Previously, your clients have refused to produce these documents and this information under the mistaken belief that the May 11, 2007 Order of Magistrate Judge Cole in the Federal Action in the Northern District of Illinois stayed discovery in this Arbitration. As I am sure you are now aware, during a conference with Magistrate Judge Cole on July 26, 2007, Judge Cole specifically refuted your position on this issue.

      Therefore, as a result of Arbitrator Mandel's July 20, 2007 Order and the stated position of Magistrate Judge Cole that his May 11, 2007 discovery stay in the Federal Action has no applicability to this Arbitration, we are requesting to know whether or not SFM and Mr. Kogos are going to abide by Arbitrator Mandel's July 20th Order and produce the documents and information previously

Philip A. Zukowsky, Esq.
July 31, 2007
Page 2

requested by La Rosa in this Arbitration.   Please provide us with a written response to this letter confirming whether or not SFM and Shlomo Kogos are going to abide by Arbitrator Mandel's July 20th Scheduling Order No. 2 by no later than Friday, August 3, 2007.

     Thank you in advance for your consideration in this matter.

                          Sincerely,

                          John T.A. Rosenthal

JTR/sg

Our File No: 2341

STATE OF ILLINOIS     )
                            ) SS.
COUNTY OF COOK       )

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SOFTWARE FOR MOVING, INC., a New York Corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No: 07 C 1839 Judge Gottschall |
| LA ROSA DEL MONTE EXPRESS, INC., a New York Corporation, and LA ROSA DEL MONTE EXPRESS (CHICAGO), LLC, an Illinois Limited Liability Company, | ) ) ) ) ) | Magistrate Judge Cole Jury Demanded by Plaintiff |
| Defendants. | ) ) | |

**REPLY IN SUPPORT OF MOTION TO STRIKE PORTIONS OF
THE DECLARATION OF JOHN T.A. ROSENTHAL (DOCUMENT 12)**

NOW COMES the Plaintiff SOFTWARE FOR MOVING, INC., a New York Corporation (SFM), by and through its attorneys, LEYHANE & ASSOCIATES, LTD., and for its Reply in support of its Motion to Strike portions of the Declaration of Attorney John T.A. Rosenthal in Support of Defendants' Motion to Dismiss (Document 12) states as follows:

1.      Section I of Plaintiff's Reply in Support of its Motion to Stay Arbitration is incorporated by reference.

2.      The only specific response Defendants make to this pending motion is at footnote 3 on page 14 of their multi-purpose Memorandum, Document 35. There, Defendants assert that

this motion is "moot" because the original Rosenthal Declaration was offered "in support of Defendants' original motion to dismiss which the Court mooted through its June 21, 2007 order."

3.       If this motion is moot it must be because the original Rosenthal Declaration expired with the Defendants' Motion to Dismiss.  (The original Rosenthal Declaration did not expire, however, without an heir: The new, but largely duplicative, Rosenthal Declaration has the same infirmity as the original in that it purports to 'authenticate' the 2005 License Agreement and 2005 Maintenance Agreement without any showing of knowledge necessary to accomplish that purpose.  It will be addressed, as it must be addressed, in due course.  For present, however, we ask that the original Declaration be stricken, both for the reasons set out in the pending motion and on the additional basis that Defendants now assert it is "moot."

WHEREFORE, Plaintiff SOFTWARE FOR MOVING, INC. respectfully restates its Motion to Strike Portions of the Declaration of John T.A. Rosenthal (Document 12).

<div style="text-align:right">

s/ Francis J. Leyhane III
One of the Attorneys for
SOFTWARE FOR MOVING, INC.

</div>

Attorney No. 3127365
FRANCIS J. LEYHANE III
LEYHANE & ASSOCIATES, LTD.
205 West Randolph Street
Suite 1320
Chicago, Illinois  60606
(312) 223-0811

Our File No: 2341

STATE OF ILLINOIS          )
                           )  SS.
COUNTY OF COOK             )

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SOFTWARE FOR MOVING, INC., | ) | |
| a New York Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No:  07 C 1839 |
| | ) | Judge Gottschall |
| LA ROSA DEL MONTE EXPRESS, | ) | Magistrate Judge Cole |
| INC., a New York Corporation, and | ) | |
| LA ROSA DEL MONTE EXPRESS | ) | |
| (CHICAGO), LLC, an Illinois Limited | ) | |
| Liability Company, | ) | Jury Demanded by Plaintiff |
| | ) | |
| Defendants. | ) | |

## NOTICE OF FILING

To:  Ms. Cathy Sugayan              Mr. Kevin J. Harrington
     Mr. David M. Dolendi           Mr. John T.A. Rosenthal
     Lord, Bissell & Brook, LLP     Harrington, Ocko, & Monk, LLP
     111 South Wacker Drive         81 Main Street, Suite 215
     Chicago, Illinois  60606       White Plains, New York  10601

**PLEASE TAKE NOTICE** that, on August 6, 2007, we filed the following documents in

the United States District Court for the Northern District of Illinois:

- Reply Brief in Support of Motion to Stay Arbitration; and

- Reply in Support of Motion to Strike Poritions of the
  Declaration of John T.A. Rosenthal (Document 12).

Copies of these pleadings are served on you herewith via the District Court's Electronic Case

Filing System.  A courtesy hard copy of this notice and of all documents identified herein will

be delivered to Judge Gottschall's chambers within 24 hours of this notice.


                                                    s/ Francis J. Leyhane III
                                                    One of the Attorneys for
                                                    SOFTWARE FOR MOVING, INC.

Attorney No. 3127365
Francis J. Leyhane III
LEYHANE & ASSOCIATES, LTD.
205 West Randolph Street
Suite 1320
Chicago, Illinois  60606
(312) 223-0811

Our File No:  2341

STATE OF ILLINOIS          )
                           )  SS.
COUNTY OF COOK             )

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SOFTWARE FOR MOVING, INC., a New York Corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No:  07 C 1839 |
| LA ROSA DEL MONTE EXPRESS, INC., a New York Corporation, and LA ROSA DEL MONTE EXPRESS (CHICAGO), LLC, an Illinois Limited Liability Company, | ) ) ) ) ) | Judge Gottschall Magistrate Judge Cole |
| | ) | **Jury Demanded by Plaintiff** |
| Defendants. | ) ) | |

**RESPONSE TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S AMENDED COMPLAINT**

NOW COMES the Plaintiff SOFTWARE FOR MOVING, INC., a New York Corporation (SFM), by and through its attorneys, LEYHANE & ASSOCIATES, LTD., and for its response to Defendants' Motion to Dismiss Plaintiff's Amended Complaint, states as follows:

Defendants do not specifically invoke Rule 12(b)(1) of the Federal Rules of Civil Procedure in the current Motion to Dismiss (Doc. 34), but inasmuch as the motion first asks for dismissal of the Amended Complaint "for lack of subject matter jurisdiction," we assume that this is the rule 'put in play' by the current motion.

In their motion, should this court refuse to dismiss the Amended Complaint for lack of jurisdiction over the subject matter, Defendants also ask this court:

- to stay Plaintiff's claims "pending the resolution" of the arbitration initiated by Defendant LA ROSA DEL MONTE EXPRESS, INC. (LA ROSA) in New York;

- to compel Plaintiff to arbitrate its claims with both Defendants; or, in the further alternative,

- to transfer this action to the Southern District of New York "where," Defendants insist, "all or almost all of the conduct giving rise to Plaintiff's claims actually took place."

Defendants have also filed several voluminous documents with their motion, one of which, their "Memorandum of Law in Support of the Motion to Dismiss the Plaintiff's Amended Complaint or, in the Alternative, to Transfer the Action to the Southern District of New York, Defendants' Opposition to Plaintiff's Motion to Stay Arbitration, Defendants' Opposition to Strike Declaration of John T.A. Rosenthal, and Defendants' Cross-Motion to Stay This Action and/or Compel Arbitration" (Doc. 35), is actually *mentioned* in the Motion to Dismiss.[1] The other documents filed by Defendants with their Motion to Dismiss are:

- A new Declaration from attorney John T.A. Rosenthal (Doc. 36);[2]

- The Declaration of Hiram Rodriguez, LA ROSA'S President (Doc. 37); and

- The Declaration of Omar DeLeon, identified in same as the General Manager of Defendant LA ROSA DEL MONTE EXPRESS (CHICAGO), LLC (LA ROSA CHICAGO) (Doc. 38).

---

[1]     Defendants do not, however, refer to their Memorandum by its complete title; had they done so, their short Motion to Dismiss would have nearly doubled in length.

[2]     Whether this new Declaration is meant to supersede Mr. Rosenthal's original Declaration (Doc. 12) is not entirely clear but, since it repeats (if it reorders) much of what Rosenthal had to say initially, we assume this is the intention.

Only three pages of Defendants' 25-page Memorandum (31 pages if ancillary pages are counted) actually deal with their subject matter jurisdiction objection (Doc. 35, pp. 8-10).

The Plaintiff's Amended Complaint (Doc. 30) consists of four counts. Count II alleges breach of a written 1999 contract licensing a software program, Moving Manager for Windows. Counts III and IV allege breach of oral agreements between Plaintiff and LA ROSA in connection with a web-based version of the Moving Manager program. Under 28 U.S.C.A. §1367(a), this court has no jurisdiction over any of these claims unless it has jurisdiction over the copyright infringement claim, that being the subject of Count I.

In Count I Plaintiff charges that LA ROSA and LA ROSA CHICAGO are continuing to use Plaintiff's Moving Manager for Windows program after their license to use that program was terminated.

The court will note that the Moving Manager for Windows program is the subject of the 1999 contract (a copy of which is attached to the Amended Complaint as Exhibit A, portions of which are quoted in Count I).

This is significant in two respects.

First, the Moving Manager for Windows program is *not* the web-based version of the Moving Manager program. It is undisputed that Defendants are not using the web-based version of the program at present – it is their continued use of the Windows-based version of the program that forms the gist of this copyright infringement action.

Second, it is the *web-based* version of the program that is the subject of the so-called "2005 Software Agreement" (also referred to in some of the voluminous papers in this case as the 2005 License Agreement) and the "2005 Maintenance Agreement." These are the documents

- 3 -

that SFM never saw before a courtesy copy of LA ROSA'S Demand for Arbitration landed on the desk of Philip Zukowsky, SFM'S Ohio-based attorney.   Two single-page documents, documents which Defendants claim as *attachments* to these 2005 'Agreements,' *were* known to SFM before the Demand for Arbitration was filed; indeed these documents – the single pages that SFM actually knew about, not the lengthy agreements containing, *inter alia*, arbitration provisions – *are attached* to the Amended Complaint as Exhibits B and C.[3]

Thus, when Defendants make flat statements like, "[A]lmost all the conduct at issue took place in New York City, and almost all the critical evidence is located in New York City" (Memorandum, p. 24), they are talking only about the ancillary claims – not about the claim which gives this court jurisdiction.  The Plaintiff's copyrights are being infringed – right now – in Chicago – on machines using Windows software – in Chicago.  The evidence of infringement is here – in Chicago.

As alleged in ¶1 of Plaintiff's Amended Complaint, this court has jurisdiction over Plaintiff's copyright pursuant to 28 U.S.C.A. §1331 (general federal question jurisdiction) and

---

[3]     Procedurally, Defendants try to make the argument that all of these so-called 2005 Agreements are "incorporated by reference" in Plaintiff's Amended Complaint because – as noted above – Defendants insist that Exhibits B and C to the Amended Complaint are also 'exhibits' to the 2005 License Agreement and the 2005 Maintenance Agreement respectively.  Defendants cite (Memorandum at p. 4, n. 1) <u>Venture Associates Corp. v. Zenith Data Systems</u>, 987 F.2d 429, 431 (7th Cir. 1993), for the proposition that "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [plaintiff's] claim."  But the 2005 Agreements are *not* referred to in Plaintiff's Complaint, either expressly or by inference.  Plaintiff has taken some pains, in the Amended Complaint, to explain both how Exhibits B and C came into existence and how these were the *only writings that SFM ever entered into with LA ROSA* concerning the web-based program.

28 U.S.C.A. §1338(a), which states, in pertinent part, "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to… copyrights."

Section 411(a) of the Copyright Act, 17 U.S.C.A. §411(a), imposes a prerequisite which must be satisfied before a copyright claim will lie in this (or any other) District Court.  Section 411(a) provides, in pertinent part, "[N]o action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."

Registration is alleged in ¶1 of the Amended Complaint.

Isn't that the end of the discussion?

No! LA ROSA protests, because, it says, attorney Rosenthal has discovered that "the on-line copyright registration records of the U.S. Copyright Office" show that "SFM is not the registered owner of the 1999 software." (New Rosenthal Decl., ¶25.)  Mr. Rosenthal attaches, and his new Declaration authenticates, a copy of his on-line search results as Exhibit Q to his new Declaration.  And, of course, Exhibit Q confirms what Mr. Rosenthal says he discovered in the course of his search: The Moving Manager software was registered on April 16, 1997 by Safeguard Computer Services, Inc.

Of course, Mr. Rosenthal might have spared himself the trouble, and his client the expense, of this investigation by reading ¶1 of Plaintiff's Amended Complaint which states "The software which is the subject of this action was registered under copyright number TX-4-426-709 on April 16, 1997; the software was originally published on or about October 19, 1990 by SAFEGUARD COMPUTER SERVICES, INC.  Plaintiff SFM is the successor in interest of

- 5 -

SAFEGUARD COMPUTER SERVICES, INC. and *assignee* of its contracts and copyrights." (Emphasis supplied.)

The allegation of ownership of the copyright in the Amended Complaint – SFM is the assignee of Safeguard's copyright – is sufficient to defeat the 12(b)(1) motion. *See*, Vestron, Inc. v. Home Box Office, Inc., 839 F.2d 1380 (9th Cir. 1988) (allegations of ownership of a disputed copyright – even where defendant HBO claimed that it – not plaintiff – was the actual owner of the copyright and distribution rights of the movies in question was sufficient to establish jurisdiction under the "well-pleaded complaint rule").

The *sufficiency* of Plaintiff's pleading is not even challenged by the present motion; only jurisdiction is. But the allegations of jurisdiction, like any other allegation not subject to the special pleading requirements of Rule 9 of the Federal Rules of Civil Procedure, are construed under Rule 8 of the Federal Rules of Civil Procedure. Notice pleading is required.

Defendants do not articulate what they would substitute for a notice pleading standard. But Defendants place considerable reliance on Althin CD Medical, Inc. v. West Suburban Kidney Center, S.C., 874 F.Supp. 837 (N.D.Ill. 1995). Althin was a sublicensee of a software program used for analyzing and billing kidney dialysis services called Hyperchart. Hyperchart was created by Dr. Stuart Levine. Dr. Levine assigned his rights in the program to the Albert Einstein Medical School which thereafter registered the software.

Thereafter the copyright holder, the school, licensed Archon Data Systems, Inc. to manufacture and sell Hyperchart and to grant sublicesnes as might be necessary for this purpose. Archon subsequently entered into a distributor contract with Althin. The contract provided that the medical school "including Dr. Levine, shall retain the right to make and use [the Hyperchart

software] for scientific purposes and for continued research."  (847 F.Supp. at 839.)

Nevertheless, the reported case concerns Althin's suit against Dr. Levine and West Suburban

Kidney Center, an entity that managed or otherwise was affiliated with the kidney dialysis center

at Montifiore Medical College – a school to which Albert Einstein College of Medicine (the

actual copyright owner) had granted the right to use Hyperchart.

Neither LA ROSA CHICAGO nor LA ROSA is the creator of the software in this case.

Neither is a licensee of the software – LA ROSA *was* a licensee at one time, as alleged in the

Amended Complaint – but that license was terminated and LA ROSA and LA ROSA CHICAGO

continue to use the program.  Althin apparently did not allege that it was the owner of the

copyright in question in that case; it could not make such an allegation.  The reported case turns

on Althin's "standing" to sue as sublicensee.  No such questions are raised here: SFM has alleged

that it is the assignee of Safeguard's copyright.  No more is required under FRCP 8 or 12(b)(1)

or 17 U.S.C.A. §411(a).

Defendants cite Althin for the proposition that this court need not accept jurisdictional

allegations as true "where a party properly raises factual questions as to jurisdiction."  This is

a correct statement.  In Saperstein v. Hager, 188 F.3d 852, 855 (7th Cir. 1999), the court stated

that, "Where evidence pertinent to subject matter jurisdiction has been submitted… 'the district

court may properly look beyond the jurisdictional allegations of the complaint… to determine

whether in fact subject matter jurisdiction exists.'"  In such a case the plaintiff would have to

"establish jurisdiction by competent proof."  (188 F.3d at 855.)

But what "evidence pertinent to subject matter jurisdiction" has been 'properly raised'

here?  Mr. Rosenthal's Declaration – which says nothing that ¶1 of the Plaintiff's Amended

Complaint didn't already say?  SFM alleges that Safeguard registered the copyright and that SFM is the assignee of Safeguard's copyright.  Rosenthal's shocked discovery that Safeguard registered the copyright doesn't undermine this allegation in the slightest.  But *if* competent proof over and above the allegation were required, under the most formalistic possible reading of the cases, it has already been supplied in ¶8 of the Declaration Shlomo Kogos (Doc. 21) wherein Mr. Kogos repeats that he was President of Safeguard and SFM both, that the software was originally registered by Safeguard, but that "[a]ll ownership of the copyright of this program was subsequently *transferred* to SFM."

Moving even further away from the notice pleading standard, Defendants also make an argument concerning what may be necessary to prove a transfer of copyright ownership, invoking §204(a) of the Copyright Act, 17 U.S.C.A. §204(a).  Apparently Defendants do not believe that Shlomo Kogos, the president of Safeguard, agreed to transfer Safeguard's copyright to Shlomo Kogos, the president of SFM.  But examination of Defendants' authorities shows that Defendants can not raise this 'issue' on their 12(b)(1) motion.

Budget Cinema, Inc. v. Watertower Associates, 81 F.3d 729 (1996), does say, just as §204(a) says, that a "valid transfer [of copyright rights] must be in writing." (81 F.3d at 733.) The reported opinion does not concern the sufficiency of pleadings; rather, it arose from the District Court's order denying defendants' attorney fees after the case was already dismissed. The plaintiff in Budget Cinema, a would-be movie exhibitor, wanted to build a theater.  Budget first hired a firm called ArchDesign to prepare plans.  After learning that ArchDesign had done theater design work for its competitor, however, Budget discharged the architect and hired another, Cerreta, to finish the plans.  Cerreta prepared drawings from ArchDesign's plans. The

project fell through, however, and the competitor came in with its own proposal.  In fact the competitor hired Cerreta initially, but Cerreta withdrew from the project and ArchDesign stepped in and completed the drawings.  (81 F.3d at 730-31.)

Two weeks before filing the suit, and without consulting Cerreta, Budget submitted a copyright application for the plans it got from Cerreta.  The Court of Appeals noted that "Cerreta's drawings may well have been derivative works based on ArchDesign's prior drawings" – something that Budget didn't mention in its copyright registration.  Instead, Budget falsely asserted, in its copyright registration, that Cerreta was the author of the entire work and that it had purchased Cerreta's rights.  (81 F.3d at 733.)  It was only *after* filing the suit that Budget went back to Cerreta and negotiated an assignment of Cerreta's rights.  The opinion notes that, "Because there was no evidence that Budget discussed the rights to the work prior to the registration, Budget cannot invoke the rule that later execution of a writing which confirms an oral agreement is enforceable under 204(a)."  (81 F.3d at 733.)

The Budget Cinema court cites Imperial Residential Design, Inc. v. Palms Dev. Group, Inc., 70 F.3d 96, 99 (11th Cir. 1995).  There, the Eleventh Circuit explained, "the chief purpose of section 204(a), (like the Statute of Frauds), is to resolve disputes between copyright owners and transferees and to protect copyright holders from persons mistakenly or fraudulently claiming oral licenses or copyright ownership.  Therefore, we agree that, where there is no dispute between the copyright owner and the transferee about the status of the copyright, it would be unusual and unwarranted to permit a third-party infringer to invoke section 204(a) to avoid suit for copyright infringement."

LA ROSA and LA ROSA CHICAGO are the third-party infringers in this case. There is no dispute suggested here between the original registrant and Plaintiff. No "evidence pertinent to subject matter jurisdiction" has been 'properly raised' here. Under the 'well-pleaded complaint rule,' Defendants' 12(b)(1) motion must be denied. Vestron, Inc. v. Home Box Office, Inc., 839 F.2d 1380 (9th Cir. 1988).

The rest of the pending motion can be dealt with in fairly short order. Defendants' motion also seeks:

- to stay Plaintiff's claims "pending the resolution" of the arbitration initiated by Defendant LA ROSA DEL MONTE EXPRESS, INC. (LA ROSA) in New York;

- to compel Plaintiff to arbitrate its claims with both Defendants; or, in the further alternative,

- to transfer this action to the Southern District of New York "where," Defendants insist, "all or almost all of the conduct giving rise to Plaintiff's claims actually took place."

The first two of these points are dealt with in Plaintiff's pending Motion to Stay Arbitration. The Plaintiff's Reply Brief in Support of the Motion to Stay Arbitration (Doc. 42) addresses Section III of the Defendants' Memorandum.

That leaves the motion to transfer. Concerning this issue, Defendants argue (Memo. p. 24):

> In addition, almost all the conduct at issue took place in New York City, and almost all of the critical evidence is located in New York City. Rodriguez Dec.; Kogos Dec. Plaintiff does not dispute this fact, nor can it; (1) the 2005 and 1999 contracts were executed in New York, (2) the work done by SFM and Safeguard pursuant to those contracts was done in New York at La Rosa's principal place of business in the Bronx; (3) the 1999 Software is located in New York City; (4) correspondence between the parties is located in

> New York City; and (5) payment documents concerning the
> contracts and software are located in New York City. There is
> little, if any, evidence in this judicial district.

Actually, whether the 2005 contracts were ever signed – whether SFM even *saw* the "2005 contracts" (always excepting, of course, the two pages attached to the Amended Complaint as Exhibits B and C) – is yet to be determined.  Plaintiff has every reason to expect that this issue will be resolved in its favor – but if it were not so resolved, transfer to New York would no longer be an issue, would it?

The 1999 contract was presumably executed in New York – but, since that is undisputed, that can hardly provide a justification for the transfer of this case.  The "1999 software" (that is, the Moving Manager for Windows program) is in New York.  It is also in Chicago.  It is in every single place where LA ROSA has a subsidiary – everywhere where LA ROSA or some subsidiary has a computer running the program.  That LA ROSA is also infringing Plaintiff's copyright in New York is hardly a justification for moving this case, alleging infringement in Chicago, by LA ROSA and LA ROSA CHICAGO.  And the location of correspondence or payment documents in New York is similarly irrelevant to the copyright infringement claim – and easily brought here to the extent that some of it may be relevant to the claims asserted by Plaintiff in Counts II through IV of the Amended Complaint.

If Plaintiff may be permitted to suggest, it seems Defendants are arguing transfer on two different levels.  Despite their failure to exercise their rights under §4 of the Arbitration Act, they now wish the trial that §4 requires to be conducted in New York.  Plaintiff has attempted to address that level of the argument in the Reply Brief in Support of the Motion to Stay Arbitration (Doc. 42).

- 11 -

It appears that Defendants are also arguing for the transfer of this entire case to the Southern District of New York, working on the assumption that the Motion to Stay Arbitration and the 12(b)(1) motion will be resolved against them.

A party seeking transfer under 28 U.S.C.A. §1404(a) must show: "(1) that venue is proper in the transferor district; (2) that venue is proper in the transferee district; and (3) that transfer will serve the convenience of the parties and witnesses and promote the interest of justice." Store Decor Division of JAS International, Inc. v. Stylex Worldwide Industries, Ltd., 767 F.Supp. 181, 184 (N.D.Ill. 1991). Their repetitive protests of "forum shopping" notwithstanding, Defendants do not challenge the propriety of venue in this district: Venue in this district is proper under 28 U.S.C.A. §1400(a). Section 1400(a) provides, in pertinent part, "Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found." LA ROSA, the New York Corporation, can be found in Chicago. In its Demand for Arbitration (New Rosenthal Declaration, Exhibit A, ¶6), LA ROSA alleged that, while it is headquartered in New York City, it has "offices and warehouses in 11 locations in the United States[,] Puerto Rico, and the Dominican Republic." It acknowledges that it is doing business in Illinois. LA ROSA CHICAGO, the Illinois Limited Liability Company is located on West Armitage Avenue in the City of Chicago. It, too, is "found" here and it is infringing Plaintiff's copyright here.

Defendants focus on the third step – the convenience of witnesses – but the witnesses identified by Defendants are those that it hopes will support its theory that the 2005 License Agreement and the 2005 Maintenance Agreement were not invented in 2006, after Mr. Kogos'

- 12 -

Earthlink account was created; that these 'agreements' were signed by Mr. Kogos and not a complete surprise to him when they first landed on the desk of Kogos' attorney in Dayton, Ohio.

The witnesses that Defendants identify do not address the copyright infringement claims at all. The Declaration of Omar DeLeon, the general manager of LA ROSA CHICAGO, for example (Doc. 39), talks about contracts with entities and individuals in New York City – but that does not address the infringement charges in the slightest. Neither does the Declaration Hiram Rodriguez, LA ROSA'S president (Doc. 37).

Rodriguez's Declaration is apparently meant to 'authenticate' the 2005 License Agreement and 2005 Maintenance Agreement (he purports to do so at ¶¶4 & 11 of his Declaration). But, starting with ¶4, Rodriguez makes clear that he knows nothing about the provenance of these documents – ¶4 says he left negotiations to an employee (now an ex-employee), Steven Dalzell who "kept Rodriguez apprised of how negotiations" were proceeding. This would seem to be a classic illustration of hearsay. Rodriguez says nothing about him personally reading, reviewing, revising, negotiating any contract provisions with anyone. Then, at ¶17, Rodriguez recounts how he asked Dalzell – in September 2006 – for copies of these so-called agreements – and how Dalzell supposedly could not locate signed originals but managed to get copies bearing Kogos' signature from Kogos. This hearsay testimony would presumably not even be admissible in a trial pursuant to §4 of the Arbitration Act; therefore even if it *would* be inconvenient for Mr. Rodriguez to come to Chicago, if this is the testimony he would be able to offer, he need not worry about coming in the first place.[4]

---

[4]     It is however interesting to note that, although Rodriguez says he can't leave New York, he was at LA ROSA'S Puerto Rican location there when he asked Dalzell for copies of the so-called 2005 agreements (¶¶17-18). Apparently he *does* venture into the field on occasion.

Defendants' arguments likewise do not address whether venue would be proper in the transferee district (New York). Mr. DeLeon's Declaration says LA ROSA CHICAGO has contracts there but he doesn't say that LA ROSA CHICAGO 'resides' there. Mr. DeLeon suggests a willingness, apparently, to have LA ROSA CHICAGO 'found' in New York – but the typical forum selection clause is entered into before litigation begins… not after.

While courts may be induced, in a proper case, to transfer a case from one end of the country to another under 28 U.S.C.A. §1404(a), the party seeking transfer has a burden to establish a right to transfer. Defendants have failed utterly to meet this burden.

WHEREFORE, Plaintiff SOFTWARE FOR MOVING, INC. respectfully prays that this court deny Defendants' Motion to Dismiss the Amended Complaint in its entirety. In addition, and in the alternative, Plaintiff requests that this court grant it such further or other relief that it may consider appropriate in the circumstances.


<div style="text-align:right">

s/ Francis J. Leyhane III
One of the Attorneys for
SOFTWARE FOR MOVING, INC.

</div>

Attorney No. 3127365
FRANCIS J. LEYHANE III
LEYHANE & ASSOCIATES, LTD.
205 West Randolph Street
Suite 1320
Chicago, Illinois  60606
(312) 223-0811

Our File No:  2341

STATE OF ILLINOIS      )
                           )  SS.
COUNTY OF COOK       )

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| SOFTWARE FOR MOVING, INC., a New York Corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No: 07 C 1839 |
| | ) | Judge Gottschall |
| LA ROSA DEL MONTE EXPRESS, INC., a New York Corporation, and LA ROSA DEL MONTE EXPRESS (CHICAGO), LLC, an Illinois Limited Liability Company, | ) ) ) ) ) | Magistrate Judge Cole |
| | ) | **JURY DEMANDED BY PLAINTIFF** |
| Defendants. | ) ) | |

## NOTICE OF FILING

To:   Ms. Cathy Sugayan              Mr. Kevin J. Harrington
       Mr. David M. Dolendi           Mr. John T.A. Rosenthal
       Lord, Bissell & Brook, LLP     Harrington, Ocko, & Monk, LLP
       111 South Wacker Drive        81 Main Street, Suite 215
       Chicago, Illinois  60606       White Plains, New York  10601

**PLEASE TAKE NOTICE** that, on August 30, 2007, we filed the following document

in the United States District Court for the Northern District of Illinois:

- Response to Defendants' Motion to Dismiss Plaintiff's Amended Complaint.

A copy of this pleading is served on you herewith via the District Court's Electronic Case Filing System.  A courtesy hard copy of this notice and of the document identified herein will be delivered to Judge Gottschall's chambers within 24 hours of this notice.

<div style="text-align: right;">

_____ s/ Francis J. Leyhane III _____
One of the Attorneys for
SOFTWARE FOR MOVING, INC.

</div>

Attorney No. 3127365
FRANCIS J. LEYHANE III
LEYHANE & ASSOCIATES, LTD.
205 West Randolph Street
Suite 1320
Chicago, Illinois  60606
(312) 223-0811

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – <span style="color:red">CM/ECF LIVE, Ver 3.0</span>
### Eastern Division

Software For Moving, Inc.

                                Plaintiff,

v.                                       Case No.: 1:07–cv–01839
                                       Honorable Joan B. Gottschall

La Rosa Del Monte Express, Inc., et al.

                                Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Thursday, August 30, 2007:

      MINUTE entry before Judge Susan E. Cox :Initial status hearing set for 9/26/07 at 9:30 a.m. in Courtroom 1342. The parties are directed to review and to comply with Judge Cox's Order Setting Initial Status Report for Cases Assigned to Judge Cox. Copies are available in chambers or through Judge Cox's web page at www.ilnd.uscourts.gov Mailed notice (vkd, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

# ORDER OF THE EXECUTIVE COMMITTEE

It appearing that Susan E. Cox has been appointed as a United State Magistrate Judge for the Northern District of Illinois, *vice* Ian H. Levin, and

It further appearing that Internal Operating Procedure 17(a) provides for the creation of an initial calendar for a newly-appointed magistrate judge; therefore

IT IS HEREBY ORDERED That the attached list of civil consent cases and civil referrals be and they are hereby reassigned to form the initial calendar of the Honorable Susan E. Cox; and

IT IS FURTHER ORDERED That, in any pending civil or criminal case not previously referred or reassigned on consent where the Honorable Ian H. Levin is the magistrate judge designated pursuant to Local Rule 72.1, the Honorable Susan E. Cox shall become the designated magistrate judge

ENTER:

FOR THE EXECUTIVE COMMITTEE

James F. Holderman
Chief Judge

Dated at Chicago, Illinois this **27th** day of August, 2007

Civil Consent Cases Reassigned to
Magistrate Judge Cox From Magistrate Judge Ashman

04 C 05177   Central Lab PWAFd v. Champion Env Services
05 C 05233   Zatz v. Barnhart
06 C 03174   Great Frame Up Systems, Inc. v. Klitzky, et al.
06 C 06030   C&F Packing Company, Inc. v. Johnson

Civil Consent Cases Reassigned to
Magistrate Judge Cox From Magistrate Judge Brown

01 C 03895   Kim v. Earthgrains
06 C 00734   Rivera v. Burke et al.
06 C 03774   Orth v. Target Corporation
07 C 00607   Galvan v. Krueger International, Inc.

Civil Consent Cases Reassigned to
Magistrate Judge Cox From Magistrate Judge Cole

05 C 05463   Marrs v. Motorola, Inc. et al.
06 C 02210   Freundt v. Allied Tube & Conduit Corp.
06 C 05318   Farris v. Barnhart et al.
07 C 00088   Plunk et al v. Village of Elwood, Il

Civil Consent Cases Reassigned to
Magistrate Judge Cox From Magistrate Judge Denlow

05 C 04584   Wittke v. J. C. Penney Corporation
06 C 04325   Ericks v. Gonzalez et al.
06 C 07065   Murison et al v. Bevan et al.
07 C 00996   Stueckemann v. Alcon Laboratories

Civil Consent Cases Reassigned to
Magistrate Judge Cox From Magistrate Keys

06 C 01921   Winslow v. Abbott Laboratories, Inc.
06 C 04668   Carlson v. Crouch-Walker Corporation
06 C 06218   Delgado v. Sears Holdings Corp.
07 C 02947   Hall v. Brandywine Global Investment

Civil Consent Cases Reassigned to
Magistrate Judge Cox From Magistrate Judge Mason

05 C 03192   Robenhorst v. Siemens Logistics
06 C 02375   Eskridge v. Greco et al.
06 C 04929   Laborers' Pension Fund Board v. Tunnel Visions, Inc.
06 C 07125   Faruki et al v. Eagle Seven, LLC et al.

Civil Consent Cases Reassigned to
Magistrate Judge Cox From Magistrate Judge Nolan

04 C 01613   Gant v. Sheahan
05 C 05822   Goldstein v. Maine Coast Sea Vegetables, ct al.
06 C 04805   EEOC v. Roadway Express, Inc.
07 C 01258   Tarrant v. Astrue

Civil Consent Cases Reassigned to
Magistrate Judge Cox From Magistrate Judge Schenkier

04 C 08312   Faysom v. Stateville Correctional Center
05 C 05669   Chicago Plastering Pension Fund v. TG Construction, Inc.
06 C 06456   Konopka v. Barnhart
07 C 01931   N.E.C.A. - IBEW Pension Fund v. Electricman Electrical

Civil Consent Cases Reassigned to
Magistrate Judge Cox From Magistrate Judge Valdez

03 C 02984   Smith v. Niles Dist 219
05 C 05813   Okrasinski v. Barnhart
06 C 03233   Sellers v. Barnhart
06 C 07011   Vassey v. Synthes (USA)

Civil Referrals Transferred to
Magistrate Judge Cox From Magistrate Judge Ashman

| | |
|---|---|
| 03 C 01150 | North Avenue Honda v. American Honda Motor Co. |
| 04 C 03448 | Contorno v. McCann, et al. |
| 05 C 01124 | Wilmott v. Federal Street Advisors, Inc. |
| 05 C 04579 | TIG Insurance Co. V. ACE American Reinsurance Co. |
| 06 C 03348 | Watts v. Hill |
| 06 C 04804 | Gant v. Fresenius Medical Care of Illinois, LLC |
| 07 C 01387 | Antoro v. The Boeing Company |
| 07 C 01622 | Daniels v. USA |
| 07 C 02670 | Tribo v. ATA Airlines |

Civil Referrals Transferred to
Magistrate Judge Cox From Magistrate Judge Brown

| | |
|---|---|
| 04 C 03933 | Patton v. City of Chicago, et al. |
| 05 C 02077 | Sebastian v. City of Chicago |
| 06 C 00889 | Mooney v. Peoples Gas |
| 06 C 03165 | Cornerstone Community Church v. Village of Wadsworth |
| 06 C 04200 | McWilliams v. Davis |
| 06 C 04857 | Se-Kure Controls, Inc. V. Diam USA, Inc. |
| 06 C 05879 | Ross v. Chicago Transit Authority |
| 06 C 06533 | Robinson v. Dorsey |
| 07 C 00571 | Radinski v. Apex Digital, LLC |

Civil Referrals Transferred to
Magistrate Judge Cox From Magistrate Judge Cole

| | |
|---|---|
| 02 C 03767 | Se-Kure Controls v. Vanguard Product grp., et al. |
| 04 C 04663 | Finwall v. City of Chicago, et al. |
| 05 C 04798 | Sheet Metal Workers Pension Fund v. JM HVAC, Inc. |
| 06 C 01594 | Beecham v. Valentin |
| 06 C 03757 | Delgado v. Mak |
| 06 C 04264 | Elusta v. City of Chicago |
| 06 C 04981 | Perez v. Town of Cicero |
| 06 C 06469 | Duran v. City of Chicago |
| 07 C 01839 | Software for Moving, Inc. v. La Rosa Del Monte Express, Inc. |

Civil Referrals Transferred to
Magistrate Judge Cox From Magistrate Judge Denlow

| 03 C 04402 | Janusz v. City of Chicago, et al. |
| 05 C 06583 | McReynolds v. Merril Lynch & Co. Inc. |
| 06 C 02891 | World Outreach Confererence Center v. City of Chicago |
| 06 C 03758 | Orlando v. United of Omaha Life Insurance Co. |
| 06 C 05684 | Vann v. Diverse Transportation |
| 07 C 00499 | Business Pro Communications v Panavise Products, Inc. |
| 07 C 01604 | Central States Pension Fund v. Carmichael |
| 07 C 03024 | Safeco Insurance Co. V. Renn |

Civil Referrals Transferred to
Magistrate Judge Cox From Magistrate Judge Keys

| 04 C 07282 | EEOV v. Sears Roebuck & Co. |
| 05 C 04757 | Brown V. Reilly |
| 05 C 00823 | Elkins v. Ocwen Federal Savings Bank |
| 06 C 02907 | Cedillo V. J.C. Penny |
| 06 C 04434 | Brahler ICS Konferenztechnik AG v. Digivote Inc. |
| 06 C 05442 | Starks v. Otten |
| 06 C 06651 | Collins v. Cook County |
| 07 C 01050 | United Scrap Metal, Inc. V. Jen |
| 07 C 02704 | Cirrintano v. Petco Animal Supplies Stores, Inc. |

Civil Referrals Transferred to
Magistrate Judge Cox From Magistrate Judge Mason

| 04 C 06586 | Vergara, et al. V. City of Waukegan, et al. |
| 05 C 00448 | McDorman v. Smith |
| 06 C 00688 | Johnson v. Evenflo Company, Inc. |
| 06 C 02216 | Kordek v. United Agri Products, Inc. |
| 06 C 05097 | Fregeau v. Life Insurance Company of North America |
| 06 C 05719 | Gahan v. Leopold |
| 07 C 00290 | Balyasnikova v. University of Illinois at Chicago |
| 07 C 01998 | McElroy v. City of Chicago |
| 07 C 02964 | Owens v. Bittner |

Civil Referrals Transferred to
Magistrate Judge Cox From Magistrate Judge Nolan

| | |
|---|---|
| 04 C 06352 | McGee v. City of Chicago, et al. |
| 05 C 05607 | Weber v. Fermi National Accelerator Labortory |
| 05 C 06651 | Noureldin V. LaSalle Bank Corporation |
| 06 C 00815 | Geraty v. Metra |
| 06 C 02745 | Phillips v. Unknown and Unnamed Chicago Police Officers |
| 06 C 04471 | Shelby v. City of Chicago |
| 07 C 00410 | Parkis v . Arrow Financial Services, LLC |
| 07 C 01930 | Trustees of the Local 176 Health v. Aldridge Electric, Inc. |
| 07 C 03138 | Dugan v. Bucko Construction Co., Inc. |

Civil Referrals Transferred to
Magistrate Judge Cox From Magistrate Judge Schenkier

| | |
|---|---|
| 02 C 06330 | Martin v. Cook County DOC, et al. |
| 04 C 03727 | Remien, et al. V. EMC Corporation |
| 05 C 06652 | Gordon v. Ortho-McNeal Corporation |
| 06 C 05591 | Melendez v. The Dental Clincs, LLC |
| 07 C 00983 | Morgan v. Finley |
| 07 C 01848 | Berman v. Best Buy Co., Inc. |
| 07 C 01969 | Hale v. County of Cook |
| 07 C 03357 | Jackson v. Wrzesinski |
| 07 C 03402 | Nelson v. Perez |

Civil Referrals Transferred to
Magistrate Judge Cox From Magistrate Judge Valdez

| | |
|---|---|
| 02 C 07707 | Porche, et al. V. Oden, et al. |
| 05 C 03788 | Wachovia Securities, LLC v. Loop Corporation. |
| 06 C 00261 | BKJ Consulting Corporation V. United Parcel Services, Inc. |
| 06 C 03147 | Dillon v. State of Illinois Department of Transportation |
| 06 C 03623 | Rose Importing and Distributing, L.L.C. v. Seesaw, Inc. |
| 06 C 05893 | Glapion v. CSX Transportation, Inc. |
| 07 C 00104 | Darchak v. City of Chicago Board of Education |
| 07 C 01473 | Klaib v. Air Service Corporation |
| 07 C 02352 | Fit v. Northern Trust Corporation |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

-------------------------------------------------------------x

SOFTWARE FOR MOVING, INC., a New
York Corporation,

**CASE NUMBER:  07 C 1839**

              **Plaintiff,**

**Assigned Judge: Joan B. Gottschall**

      **v.**

**Designated
Magistrate Judge: Susan E. Cox**

LA ROSA DEL MONTE EXPRESS, INC., a
New York Corporation, and LA ROSA DEL
MONTE  EXPRESS (CHICAGO), LLC, an
Illinois Limited Liability Company,

              **Defendants.**

-------------------------------------------------------------x

---

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

DAVID M. DOLENDI
LORD, BISSELL & BROOK LLP
111 S. Wacker
Chicago, IL 60606
Tel. (312) 443-0202  Fax: (312) 896-6202
ddolendi@lordbissell.com

KEVIN HARRINGTON
JOHN T.A. ROSENTHAL
(Admitted pro hac vice)
HARRINGTON, OCKO & MONK, LLP
81 Main Street, Suite 215
White Plains, NY  10601
Tel: (914) 686-4800  Fax: (914) 686-4824
KHarrington@homlegal.com
JRosenthal@homlegal.com

*Attorneys for Defendants, La Rosa Del Monte*
*Express, Inc. and La Rosa Del Monte Express*
*(Chicago), LLC*

Defendants, LA ROSA DEL MONTE EXPRESS, INC. ("La Rosa") and LA ROSA DEL MONTE EXPRESS (CHICAGO), LLC ("La Rosa Chicago", together with La Rosa, "Defendants"), by and through their attorneys, Lord, Bissell & Brook, LLP and Harrington, Ocko & Monk, LLP, respectfully submit the present Reply Memorandum of Law in further support of Defendants' request that this Court issue an Order dismissing Plaintiff, SOFTWARE FOR MOVING, INC.'s ("SFM" or "Plaintiff") Amended Complaint for lack of subject matter jurisdiction, or, in the alternative, stay this litigation pending the resolution of an ongoing Arbitration between La Rosa and SFM regarding the same issues raised in Plaintiff's Amended Complaint, or transfer Plaintiff's action to the Southern District of New York where all, or almost all, of the witnesses and evidence for this action is presently located.

## **INTRODUCTION**

Having filed a forum-shopping Complaint in an inconvenient and improper venue, Plaintiff SFM steadfastly maintains that it can simply rest on the allegations in its Complaint to overcome Defendants' motion to dismiss this action under Rule 12(b)(1), stay the action pending Arbitration, or transfer the action to a proper and convenient venue in the Southern District of New York. Plaintiff's rambling response, and numerous admissions contained in that response serve only to support the granting of Defendants' motion in this matter.

It is now clear from SFM's response that the Court lacks subject matter jurisdiction over Plaintiff's claims because Plaintiff has no standing to bring a copyright action against Defendants; SFM has not alleged and has not demonstrated (through its Amended Complaint or any other documents) that any written agreement exists or ever existed between the actual registered copyright owner of the software at issue, Safeguard Computer Services, Inc. ("Safeguard"), and SFM transferring copyright ownership of the software to SFM. Indeed, in its response to Defendants' motion to dismiss, SFM conspicuously failed to include a Declaration of either its

President, Shlomo Kogos, or any officer of Safeguard indicating the existence of such a required written transfer agreement. Without a written transfer agreement to SFM from Safeguard, or even the allegation of such a written agreement in Plaintiff's Complaint, SFM has no standing to bring a copyright action against La Rosa. With no proper plaintiff, this Court has no subject matter jurisdiction to entertain any of SFM's claims in this action.

Moreover, Plaintiff's action must be stayed because of the two (2) agreements between SFM and La Rosa which both include arbitration provisions. While SFM argues the two documents contain forged signatures of its President (Shlomo Kogos), this argument rings hollow in the face of evidence that demonstrates the authenticity of these documents. Furthermore, even if, as SFM asserts, Mr. Shlomo Kogos did not execute either of these agreements, SFM is judicially estopped from asserting this argument because it has now admitted taking inconsistent factual positions as between this Court, and before the Arbitrator and the AAA in the New York Arbitration concerning SFM's claims of forgery. Just as importantly, under New York law, because SFM has never disavowed agreeing to all the provisions of the two agreements at issue, has admitted acting in conformance with those agreements, and has accepted the financial benefits of these two agreements, SFM is required to arbitrate its dispute with La Rosa.

Finally, and perhaps most importantly, SFM has not provided a single reason why this case should remain in this distant and inconvenient venue, a venue which has no real ties to the parties, a venue where none of the agreements at issue were entered into or carried out, and a venue where none of the essential party and non-party witnesses are located, and almost none of the evidence is located. Indeed, Plaintiff admits, through the silence in its response, that all, or almost all, of the evidence and essential witnesses that would be required for this litigation are located in New York, not Chicago, including Plaintiff, its President, Shlomo Kogos, Defendant La Rosa and its

employees, and critical non-party witnesses, Steven Dalzell (former La Rosa employee) and David Tyler (former SFM employee).

For these reasons, and those more fully described below, the Court should dismiss SFM's Amended Complaint for lack of subject matter jurisdiction, or in the alternative, stay this action pending Arbitration between SFM and La Rosa, or transfer this action to the Southern District of New York for the convenience of the witnesses and the parties.

## ARGUMENT

## I. THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S AMENDED COMPLAINT AS PLAINTIFF HAS FAILED TO DEMONSTRATE STANDING TO BRING ITS PRESENT COPYRIGHT CLAIM.

Defendants have moved this Court under Rule 12(b)(1) to dismiss Plaintiff SFM's Amended Complaint for lack of subject matter jurisdiction because Plaintiff has failed to allege facts sufficient to demonstrate it has standing to bring a claim under the Copyright Act. In response, SFM asserts that it need do nothing more than allege ownership of the copyright in its Amended Complaint to "defeat the 12(b)(1) motion" of Defendants. Indeed, Plaintiff maintains in its response that "notice pleading" of mere copyright ownership, not an allegation of a written transfer agreement, is all that is required.

Plaintiff's assertion that it need do no more than point to allegations in its Amended Complaint of copyright ownership to withstand a motion to dismiss under Rule 12(b)(1) is simply incorrect. As Courts in the Seventh Circuit have repeatedly stated, when a defendant moves for dismissal pursuant to Rule 12(b)(1), a plaintiff must support its jurisdictional allegations with competent proof of jurisdiction, not simply point to the allegations in its Complaint. *Century Consultants, Ltd. v. The Miller Group, Inc.*, 2006 WL 1985508, at *1 (C.D. Ill. July 13, 2006). Competent proof is proof to a reasonable probability that jurisdiction exists. *Id.* Indeed, a district court may properly look beyond the jurisdictional allegations of the Complaint, and review

whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists. *Id.*; *Althin CD Medical Inc. v. West Suburban Kidney, S.C.*, 874 F.Supp. 837, 839 (N.D. Ill. 1994). The Court may properly look at affidavits and other relevant evidence to resolve the factual dispute regarding the Court's jurisdiction. *Ellis v. Graves,* 1996 WL 680247, *2 (N.D. Ill. Nov. 21, 1996). "The burden falls on the complainant to allege sufficient facts to demonstrate that he or she is a party with standing to sue." *Id.*

In a claim of copyright infringement, a Federal Court only has jurisdiction if a plaintiff has shown ownership in the applicable copyright, and thus has standing to sue under the Copyright Act. Ownership through transfer of a copyright is only recognized when the transfer is demonstrated or alleged through a writing executed by the copyright owner prior to transfer. *Foamation, Inc. v. Wedeward Ent.*, 970 F.Supp. 676, 683 (E.D. Wis. 1997); 17 U.S.C. §204(a). Indeed, without ownership demonstrated by a written transfer agreement, a party has no standing to bring a copyright claim and the Federal Court has no subject matter jurisdiction over such claim. *Althin CD Medical, Inc.*, 874 F.Supp. at 839-42; *Glovaroma, Inc. v. Maljack Productions, Inc.*, 1998 WL 102742, at *7 (N.D. Ill. Feb. 26, 1998).[1] Section 204(a)'s written requirement there to protect not only copyright authors from fraudulent claims, but also enhances predictability and certainty of ownership. *Glovaroma, Inc.*, 1998 WL 102742, at *7; *Konigsberg Int'l, Inc. v. Rice*, 16 F.3d 355, 357 (9th Cir. 1994). Plaintiff points to no case law indicating otherwise.

In this instance, Defendants have demonstrated that Plaintiff clearly has no standing to bring its copyright claim because there exists no written transfer agreement between Safeguard, the original registrant and owner of the copyright, and Plaintiff SFM. While Plaintiff points to the Declaration of Shlomo Kogos as proof of ownership of the copyright at issue, Kogos' Declaration offers no such required competent proof of ownership by SFM, much less the required written

---

[1] Indeed, failure to allege written transfer of ownership may give rise to dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *Glovaroma, Inc.*, 1998 WL 102742, at *7.

transfer agreement.  Indeed, the self-serving Declaration of Mr. Kogos does not mention, let alone attach a written conveyance or transfer of copyright ownership between Safeguard and SFM concerning the software at issue.  See Declaration of Kogos Declaration ("Kogos Dec."), at ¶8.

Not only does the Kogos Declaration contain no reference to a written conveyance or transfer of the ownership, Plaintiff's Amended Complaint also contains no such allegations.  See Plaintiff's Amended Complaint, at ¶¶1, 5.  Indeed, quite the contrary.  The allegations in Plaintiff's Amended Complaint (and the Kogos Declaration) indicate that SFM is allegedly a "successor-in-interest" to Safeguard's ownership in the copyright at issue, and that ownership of the software was transferred to SFM from Safeguard allegedly by operation of law, not that there is a written transfer agreement between these two entities.

However, as the case law in Defendants' motion to dismiss makes clear, a transfer of copyright ownership by operation of law, as alleged by SFM in this action, does not and cannot occur if there has been no merger of SFM and Safeguard, there has been no dissolution of Safeguard, and Safeguard has not declared bankruptcy.  *Brooks v. Bates*, 781 F.Supp. 202, 205-06 (S.D.N.Y. 1991).  SFM's Amended Complaint and response to Defendants' motion are devoid of any allegations or proof of either a merger between SFM and Safeguard, dissolution of Safeguard, or that Safeguard is in bankruptcy.  Absent a written document executed by Safeguard transferring ownership rights to the copyright from Safeguard to SFM, or evidence showing transfer by operation of law, Federal Copyright law does not recognize a transfer of ownership as between Safeguard and SFM, and SFM therefore, has no standing to bring a copyright claim against La Rosa.

Plaintiff places its reliance on the holding in *Vestron, Inc. v. Home Box Office, Inc.*, 839 F.2d 1380 (9th Cir. 1988) for the proposition that Federal Rule of Civil Procedure 8 requires nothing other than an allegation of ownership for a plaintiff to satisfy the pleading requirements for a claim

of copyright infringement under Federal Copyright Laws. However, a simple review of the facts and allegations contained in *Vestron* show the fallacy of Plaintiff's assertion. As an initial matter, the 20-year old holding in *Vestron* is not binding on this Court, as *Vestron* originates from the Ninth Circuit, not the Seventh Circuit.

Furthermore, unlike here where SFM has failed to allege any written contract between itself and the copyright owner, Safeguard, transferring ownership of the copyright at issue, in *Vestron* the plaintiff specifically alleged a contract between itself and the copyright owner transferring exclusive rights to the two (2) films at issue in that litigation. *Vestron*, 839 F.2d at 1381, 1382. In further contrast, unlike the plaintiff in *Vestron*, who specifically alleged a written transfer agreement, Plaintiff SFM relies on transfer of ownership of the copyright at issue by operation of law. However, as demonstrated through Defendants' motion and the applicable case law, Plaintiff can make no such claim of copyright ownership by operation of law. Therefore, the decision and holding in *Vestron* are of no help to Plaintiff in this matter.

Furthermore, contrary to Plaintiff's assertions, the issue of ownership and standing are properly raised in a motion to dismiss under Rule 12(b)(1). See *Althin CD Medical, Inc.*, 874 F.Supp. at 842; *Balsamo/Olson Group, Inc. v. Bradley Place Limited Partnership*, 966 F.Supp. 757, 761 (E.D. Ill. 1996); *Konigsberg Int'l v. Rice*, 16 F.3d 355, 356 (9th Cir. 1994). While Plaintiff correctly points out, *Budget Cinema, Inc.* was not a case decided on a motion to dismiss, this is of no consequence as that case clearly stands for the proposition that in order for a plaintiff to bring a claim under the Copyright Act, a plaintiff must have a written transfer of rights to the copyright at issue before it can bring such a claim. Neither Plaintiff's Amended Complaint, nor any of the Declarations it has filed in this action, contain any such allegations of a written transfer agreement between itself and the copyright owner, Safeguard.

In a final effort to save its Amended Complaint from dismissal, Plaintiff points out that generally third parties are not allowed to invoke the written transfer requirement encompassed by §204(a) to defeat the assertion of infringement under the Copyright Act.  *Imperial Residential Design, Inc. v. Palms Dev. Group*, 70 F.3d 96, 99 (11th Cir. 1995).  What the Plaintiff conveniently fails to indicate to the Court is that this proposition generally  only applies to actions where <u>both</u> the original owner and transferee of the copyright are joined as plaintiffs in the same lawsuit, and there is no dispute between those parties in that litigation as to the rightful owner.  Cleary, that is not the case here; SFM has brought an infringement action under the Copyright Act without benefit of Safeguard's participation in this action, whatsoever.  Indeed, SFM has failed to obtain any evidence from Safeguard that there is a written transfer agreement between Safeguard and SFM regarding the ownership or the copyright at issue in this matter, or any evidence that SFM merged with Safeguard, Safeguard has dissolved, or Safeguard is in bankruptcy such that SFM would claim ownership of the copyright by operation of law.  Indeed, Safeguard's presence and voice are conspicuously absent from not only this action, but from Plaintiff's response and other papers.  Thus, the holdings in *Budget* and *Imperial* do not save Plaintiff from its own obvious failure; the failure to have obtained a written transfer of the ownership of the copyright at issue in this litigation before instituting claims of copyright infringement against Defendants.

As demonstrated above, SFM has no standing to bring its copyright claim, and devoid of a party with standing to bring a copyright claim, this Court lacks subject matter jurisdiction over this claim.  As Plaintiff has already admitted, without subject matter jurisdiction over its copyright claim, this Court lacks subject matter jurisdiction over any of Plaintiff's other three (3) state law claims.  Therefore, pursuant to Rule 12(b)(1), the Court should dismiss the Plaintiff's Amended Complaint in its entirety for lack of subject matter jurisdiction.

## II.  THE COURT SHOULD STAY PLAINTIFF'S ACTION AND/OR COMPEL PLAINTIFF TO ARBITRATE AS DEFENDANT LA ROSA HAS DEMONSTRATED THE EXISTENCE OF AN ARBITRATION AGREEMENT BETWEEN PLAINTIFF AND LA ROSA.

Plaintiff's response to Defendants' motion to stay this litigation pending Arbitration does nothing more than refer to Plaintiff's reply brief in support of SFM's motion to stay that Arbitration. However, nothing in Plaintiff's motion to stay the Arbitration, its reply brief for that motion, or its response hereto, can overcome the following facts: (1) SFM admits executing not one, but two documents that are explicitly and implicitly part of and/or refer to the 2005 Agreements (2005 Software & License Agreement and 2005 Maintenance Agreement), both of which contain arbitration provisions requiring that SFM arbitrate any and all disputes with La Rosa; (2) SFM has failed to explain how the two agreements it acknowledges executing (the Addendum and Maintenance Schedule A) are paginated to correspond with the two agreements which SFM asserts contain forged signatures; (3) Plaintiff fails to explain why the title of the Addendum specifically refers to the 2005 Software Agreement; and (4) SFM fails to explain why the Addendum contains at least three terms that are highlighted and set off in the Addendum, are not defined in the Addendum, but which definitions are provided for in detail in the 2005 Software Agreement.

Furthermore, even if SFM did not execute the 2005 Agreements as it alleges, SFM is precluded from asserting forgery of the Kogos signature on the 2005 Agreements through its now openly admitted inconsistencies between factual positions it has taken before this Court, and those it has taken before the Arbitrator and the AAA in New York.  Lastly, under New York law, even if SFM had not executed the 2005 Agreements, SFM is required to arbitrate this dispute because it has admitted acting in conformity with the 2005 Agreements by working on the development of the new software for La Rosa for almost two years, as well as implementing (albeit incompletely and unsatisfactorily) such software on La Rosa's computer system in New York, and accepting payment of some $242,500.00 from La Rosa for this incomplete and non-functioning software.

**A.      Plaintiff Must Arbitrate Its Dispute With Defendants.**

While Plaintiff continues to maintain that it was not required to arbitrate its dispute with Defendants because SFM supposedly did not execute the 2005 Agreements, this argument cannot be taken seriously in light of the fact that SFM's President, Shlomo Kogos, has admitted executing the Addendum and Maintenance Schedule A.  A simple look at both of these documents indicates just how fallacious SFM's position is on this matter.  Not only are the Addendum and Maintenance Schedule A paginated to correspond with the overlying agreements (the Addendum is paginated page "17" of the 16-page 2005 Software Agreement, and the Maintenance Schedule A is paginated page "6" of the 5-page 2005 Maintenance Agreement), but the Addendum contains numerous bolded and quoted terms which are not defined in the Addendum itself, but are only defined in the 2005 Software Agreement: (1) the term "Developer" is quoted and not defined in the Addendum, but is defined in detail in the 2005 Software Agreement; (2) the term "Software X" is quoted in the Addendum and not defined in the Addendum, but is defined in detail in the 2005 Software Agreement; (3) the term "Client" is quoted and not defined in the Addendum, but is defined in detail in the 2005 Software Agreement; and (4) the term "Moving Manager Web Version" is quoted and not defined in the Addendum, but is defined in detail in the 2005 Software Agreement.  Furthermore, the Addendum is actually titled, "Addendum to Software Development & License Agreement", exactly corresponding to the title of the 2005 "Software Development & License Agreement".

In its response to Defendants' motion to stay this litigation pending Arbitration in New York, SFM continually fails to explain how any of these facts are consistent with its allegations of forgery.  Indeed, Plaintiff offers no response whatsoever on these issues.  In light of the fact that SFM has failed to explain these inconsistencies, the 2005 Agreements are obviously valid and

contain valid signatures, their corresponding arbitration provisions are valid, and thus, SFM is required to arbitrate this matter.

## B.    Plaintiff Should Be Estopped From Avoiding Arbitration.

SFM has admitted that it has taken factually inconsistent positions as between the Arbitration ongoing between SFM and La Rosa in New York, and in this litigation as to which documents contain allegedly forged Kogos signatures and which documents do not.  See SFM's Reply Brief, at ¶16.  Indeed, SFM admits conveniently telling its lawyer for the Arbitration that Mr. Kogos never saw any of the agreements (including the Addendum and Maintenance Schedule A), but subsequently changing its position in this litigation, asserting to this Court that the Addendum and Maintenance Schedule A (the basis of two (2) of his four (4) claims), do not contain forged Kogos signatures.  *Id.*

While SFM has attempted to downplay these inconsistent positions as "minor", such distortion flies in the face of the two (2) claims in Plaintiff's Amended Complaint for relief that are based almost entirely upon these documents.  While Plaintiff's lawyer in the Arbitration may have been trying to convey the idea that his client had never seen the 2005 Agreements, that lawyer was certainly not obligated to argue to the AAA and the Arbitrator that SFM was not required to arbitrate because none of the documents at issue, including the Addendum and Maintenance Schedule A, were signed by Kogos.

These glaringly inconsistent positions, and SFM's bad faith in knowingly taking these contradictory factual positions in order to file this action, and yet escape Arbitration, should not be countenanced by this Court.  SFM's actions are a sufficient basis for the Court to judicially estop SFM from denying that it executed all of the agreements at issue in the Arbitration, or at a minimum, to estop SFM from asserting that the 2005 Maintenance Agreement contains a forged Kogos signature.

**C.**     **SFM Is Required To Arbitrate This Dispute Even If It Did Not Execute The 2005 Agreements.**

Plaintiff contends that it is not obligated to arbitrate this dispute even if Kogos did not execute the documents at issue because Kogos claims he never saw these agreements.  However, New York case law does not require that the party actually see the agreement at issue, only that the party agreed to be bound by provisions of the agreement, and then acted in conformity with the contractual document, including accepting the benefits of such agreement.  *Liberty Management & Construction, Ltd. v. 5th Avenue & 66th Street Corp.*, 208 A.D.2d 73, 620 N.Y.S.2d 827, 830-31 (N.Y. App. Div. 1995).  Plaintiff concedes that New York applies on this issue.

While Plaintiff claims Kogos never saw the agreements at issue, Plaintiff does not state it was unaware of the provisions in the 2005 Agreements, or did not agree to abide by such provisions.  See Kogos Dec., at ¶11.  Indeed, SFM's President admits only that the provisions of the 2005 Agreements were not reduced to writing, not that he did not agree to such provisions.  *Id.*

Nor does SFM dispute that it acted in conformity with the provisions of the 2005 Agreements, including working for over two (2) years to develop and implement the web-based software on behalf of La Rosa, and accepting some $242,500.00 from La Rosa in furtherance of those agreements.  As the Courts in New York have consistently held, a party should not be allowed to accept the provisions of an agreement that benefit it, while disavowing those aspects of an agreement which it does not like by asserting the agreement was unsigned.  This is particularly true of arbitration provisions in such agreements.   Thus, even if SFM did not execute the 2005 Agreements, there is ample evidence that requires this Court to compel SFM to arbitrate its dispute.

**D.**     **Plaintiff Has Filed Its Motion To Stay Arbitration In An Improper Venue.**

In its response to Defendants' pending motion, Plaintiff SFM refers the Court to its Reply Brief in Support of its Motion to Stay the Arbitration presently pending in New York to address Defendants' contention that Plaintiff filed such motion in the wrong venue.  It is Defendants'

contention that Plaintiff filed its motion to stay the pending Arbitration in New York City before the wrong court in an improper venue.

The September 11, 2007 *ex parte* letter from Plaintiff's counsel, Mr. Leyhane, to the Court is a tacit, if not explicit, recognition by Plaintiff that such is the case. As indicated in Mr. Leyhane's September 11th letter, at the eleventh hour and less than one business day before a hearing before Arbitrator Mandel on Plaintiff's motion to stay the Arbitration submitted to the Arbitrator, and two days before the beginning of the actual hearing in New York City, Plaintiff filed a motion to stay the Arbitration before a New York State Judge pursuant to New York Civil Practice and Law Rule ("CPLR") §7500, *et seq.* Under CPLR §7503(c), a party has twenty (20) days subsequent to receipt of a Notice of Demand to Arbitrate within which to apply for a stay of such Arbitration before a New York Court. As indicated in the September 7, 2007 Order of Judge Feinman, attached to Mr. Leyhane's letter, Judge Feinman denied Plaintiff's request for a temporary restraining order as untimely given the length of time Plaintiff knew of the pending Arbitration in New York City and its motion some eight (8) months later.

Through its filing a motion to stay the Arbitration before a State Court in New York, as well as filing a motion to stay the very same Arbitration before the Arbitrator in New York City, Plaintiff has admitted through such conduct that this Court is not the proper venue in which to file a motion to stay an Arbitration going on in New York City. That it has taken Plaintiff eight (8) months to file for such an untimely stay before a New York State Court, and that Plaintiff has now involved three (3) separate tribunals in its failed litigation strategy of delay, does not change the fact that SFM's present motion before this Court to stay the pending New York City Arbitration was filed in the wrong venue. Therefore, the Court should dismiss Plaintiff's motion to stay the Arbitration, having filed such untimely motion in an improper venue under both the Federal Arbitration Act and New York State procedural law.

III.   **THE COURT SHOULD TRANSFER THE PLAINTIFF'S ACTION TO THE SOUTHERN DISTRICT OF NEW YORK.**

Plaintiff all but admits that the factors Courts in the Seventh Circuit use to assess whether transfer of an action is appropriate under 28 U.S.C. §1404(a) all favor transfer of this action to the Southern District of New York.  As an initial matter, Plaintiff does not dispute that venue is proper in this Court and in the transferee court, the Southern District of New York, nor can it: (1) SFM is a New York corporation with its principal place of business in New York; (2) Defendant La Rosa is a New York corporation with its principal place of business in the Southern District of New York; and (3) La Rosa Chicago is subject to personal jurisdiction in the Southern District of New York.  Thus, the first two factors courts use to assess whether transfer is appropriate have clearly been met in this instance.

The only factor remaining is number three: whether transfer will serve the convenience of the parties and witnesses and promote the interests of justice.  Plaintiff does not dispute that the convenience of the witnesses and parties is the most important favor in determining whether an action should be transferred pursuant to §1404(a).  Furthermore, nothing in Plaintiff's response demonstrates that Chicago is a convenient forum for any of the parties or witnesses to this matter.  Indeed, Plaintiff does not identify a single witness in Chicago that is critical to any of its claims in this action.  Instead, rather than name a single witness (critical or otherwise), to any of its claims that reside in Chicago, SFM continually asserts that La Rosa Chicago is infringing its copyright in Chicago, and for this reason alone, this action should remain here.

As an initial matter, Plaintiff's assertion that Defendant La Rosa Chicago is infringing its copyright in this judicial district is nothing more than an unproven and unsubstantiated allegation, and is certainly not a basis to prevent the Court from transferring this action to the Southern District of New York.  Indeed, Plaintiff admits La Rosa Chicago was not even a party to the agreement

(written or oral) between SFM and La Rosa concerning development and implementation of the old or new software, the basis of all four (4) of Plaintiff's claims in this action.

Furthermore, Plaintiff, while attempting to focus the Court's attention only on its copyright claim in order to justify not transferring this action to the Southern District of New York, cannot escape the fact that it has alleged four (4) causes of action against these Defendants and that all of SFM's four (4) causes of action are based upon conduct that admittedly took place in the Southern District of New York, and will require discovery of witnesses and evidence all located in that venue: (1) Shlomo Kogos is a resident of New York, and within the subpoena power of the Court in the Southern District of New York; (2) SFM is a resident of the Southern District of New York; (3) La Rosa is a resident of the Southern District of New York; (4) the 1999 Software Agreement and the 2005 Software Agreement (whether written or oral) were executed or agreed to, and implemented in the Southern District of New York.

Indeed, not only is all of the evidence located in the Southern District of New York, all of the critical witnesses (party and non-party) are located in or within the subpoena power of a Court in the Southern District of New York, not Chicago. This includes all of the witnesses who would be required to testify as to Plaintiff's assertions that the 2005 Agreements contain forged Kogos signatures; Steven Dalzell (former employee of La Rosa), Shlomo Kogos, Hiram Rodriguez, and David Tyler (former employee of SFM). Plaintiff's response addresses not a single one of these facts, nor asserts anything to the contrary.

Lastly, Plaintiff fails to address the fact that with each and every one of its claims in this action, New York law will have to be applied, and that in such situations, courts within the Seventh Circuit have tended to opt for transfer of an action. *Robert Risa Co. v. Cleveland Electric Illuminating Co.*, 1992 WL 358907, *3 (N.D.Ill. Nov. 24, 1992).

14

Thus, Defendants have clearly met their burden to demonstrate that the transfer of this action to the Southern District of New York is appropriate.

## CONCLUSION

For the reasons stated above, and in Defendants' motion to dismiss this action and associated Declarations, Defendants respectfully request that the Court dismiss Plaintiff's Amended Complaint for lack of subject matter jurisdiction, or in the alternative, stay this action and/or compel SFM to arbitrate with La Rosa, or transfer the action to the Southern District of New York for the convenience of the parties and the witnesses, and in the interest of justice.

Dated:  September 13, 2007          Respectfully submitted,

LA ROSA DEL MONTE EXPRESS, INC. and
LA ROSE DEL MONTE EXPRESS
(CHICAGO), LLP


By:_____s/ David M. Dolendi_____
David M. Dolendi, Esq.
LORD, BISSELL & BROOK LLP
111 S. Wacker
Chicago, IL 60606
Tel. (312) 443.0202
Fax: (312) 896.6202

Kevin Harrington, Esq.
John T.A. Rosenthal, Esq.
HARRINGTON, OCKO & MONK, LLP
81 Main Street, Suite 215
White Plains, NY  10601
Tel: (914) 686-4800
Fax: (914) 686-4824

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

The undersigned  herby certifies that the foregoing **REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS**, was served on the following:

| | |
|---|---|
| Francis J. Leyhane, III, Esq.<br>Leyhane & Associates, Ltd.<br>205 West Randolph Street<br>Suite 1320<br>Chicago, IL 60606 | |

via electronic mail and U.S. Mail on this 13th day of September, 2007.


　 s/  David M. Dolendi
David M. Dolendi

Our File No: 2341

STATE OF ILLINOIS          )
                           )  SS.
COUNTY OF COOK             )

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SOFTWARE FOR MOVING, INC.,<br>a New York Corporation,<br><br>          Plaintiff,<br><br>vs.<br><br>LA ROSA DEL MONTE EXPRESS,<br>INC., a New York Corporation, and<br>LA ROSA DEL MONTE EXPRESS<br>(CHICAGO), LLC, an Illinois Limited<br>Liability Company,<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No: 07 C 1839<br>          Judge Gottschall<br>          Magistrate Judge Cox<br><br><br><br>**JURY DEMANDED BY PLAINTIFF** |

**UPDATED JOINT STATUS REPORT**

Pursuant to the court's request, Plaintiff SOFTWARE FOR MOVING, INC., a New York Corporation (SFM), by and through its attorneys, LEYHANE & ASSOCIATES, LTD., and Defendants LA ROSA DEL MONTE EXPRESS, INC., a New York Corporation, and LA ROSA DEL MONTE EXPRESS (CHICAGO), LLC, an Illinois Limited Liability Company, by and through their attorneys HARRINGTON, OCKO & MONK, LLP and LORD, BISSELL & BROOK, LLP, submit this updated joint status report.

**1.     A brief summary of the claims asserted in the complaint and any counterclaim or third party complaint. A courtesy copy of the current complaint, answer, counterclaim, etc., should be delivered to chambers with the status report.**

This is an action for copyright infringement, alleging that LA ROSA and LA ROSA CHICAGO continue to use Plaintiff's copyrighted software without authorization. Claims arising from the alleged breach of a written 1999 agreement and two subsequent agreements are also alleged. No Answer has been filed to Plaintiff's Amended Complaint; Defendants have filed a Motion to Dismiss, or in the Alternative to Stay the Action Pending Arbitration or Transfer the action to the Southern District of New York, which motion is fully briefed and pending before Judge Gottschall.

**2. A brief statement of the relief sought, including an itemization of damages.**

Plaintiff claims entitlement to losses from such infringement and profits earned by Defendants which are attributable to their use of the software as well as attorneys' fees and costs for this action. Plaintiff also seeks monetary damages for Defendants' alleged breach of the 1999 Software Agreement and two subsequent agreements in an amount of approximately $112,000.

**3. The status of any pending motions.**

In addition to the pending Motion to Dismiss, Plaintiff's Motion to Stay Arbitration is also fully briefed and pending before Judge Gottschall.

**4. Proposed discovery cut-off date.**

Discovery has been stayed in this matter pending the outcome of the Motion to Dismiss.

**5. The earliest date the parties will be available for trial and whether a jury has been demanded.**

Plaintiff has demanded a jury trial in this matter. It is premature to discuss the setting of a trial date before the pleadings are closed.

6.    **The status of settlement discussions, if any. At least 14 days prior to the initial status conference the plaintiff is directed to submit an itemization of damages and a written settlement demand to the defendant. At least 7 days prior to the initial status conference, defendant is to respond in writing to the plaintiff's settlement demand.**

There have been no settlement discussions since the demand submitted in conjunction with the Initial Joint Status Report (Document 17, Exhibit C).  Settlement discussions have not been attempted during the pendency of Defendants' Motion to Dismiss.


s/ Francis J. Leyhane III
One of the Attorneys for
SOFTWARE FOR MOVING, INC.

Attorney No. 3127365
FRANCIS J. LEYHANE III
LEYHANE & ASSOCIATES, LTD.
205 West Randolph Street
Suite 1320
Chicago, Illinois  60606
(312) 223-0811


s/ David M. Dolendi
One of the Attorneys for
LA ROSA DEL MONTE EXPRESS,
INC., and LA ROSA DEL MONTE
EXPRESS (CHICAGO), LLC

CATHY SUGAYAN, ESQ.
DAVID M. DOLENDI, ESQ.
LORD, BISSELL & BROOK, LLP
111 South Wacker Drive
Chicago, Illinois  60606
(312) 443-0202

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – <span style="color:red">CM/ECF LIVE, Ver 3.0</span>
### Eastern Division

Software For Moving, Inc.

                                   Plaintiff,

v.                                               Case No.: 1:07–cv–01839

                                              Honorable Joan B. Gottschall

La Rosa Del Monte Express, Inc., et al.

                                   Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Wednesday, September 26, 2007:

      MINUTE entry before Judge Susan E. Cox : Status hearing held. Order entered 5/11/07 by Magistrate Judge Jeffrey Cole to stay discovery until further order of court to stand pending ruling on motions.Status hearing set for 12/12/07 at 9:30 a.m.. Mailed notice (vkd, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| SOFTWARE FOR MOVING, INC., a New York Corporation, | ) ) ) |
| Plaintiff, | ) ) ) Case No. 07 C 1839 |
| vs. | ) ) ) Judge Gottschall |
| LA ROSA DEL MONTE EXPRESS, INC., a New York Corporation, and LA ROSA DEL MONTE EXPRESS (CHICAGO), LLC, an Illinois Limited Liability Company, | ) ) ) Magistrate Judge Jeffrey Cole ) ) ) ) |
| Defendants. | ) |

## NOTICE OF FIRM NAME CHANGE

TO:  All counsel of record

PLEASE TAKE NOTICE that, effective October 2, 2007, the law firm of Lord, Bissell & Brook LLP has changed its name to **LOCKE LORD BISSELL & LIDDELL, LLP**.  The address, telephone number and facsimile number have not changed.

By:  ___/s/  David M. Dolendi___
Dave M. Dolendi, Esq.

David M. Dolendi, Esq.
LOCKE LORD BISSELL & LIDDELL LLP
111 South Wacker Drive
Chicago, IL 60606
Tel. (312) 443-0202
Fax: (312) 896-6202

## <u>CERTIFICATE OF SERVICE</u>

The undersigned on oath states that he served the foregoing on:

> Francis J. Leyhane, III, Esq.
> Leyhane & Associates, Ltd.
> 205 West Randolph Street
> Suite 1320
> Chicago, IL 60606

via electronic mail and via first-class mail in a properly address, postage prepaid envelope deposited in the U.S. Mail chute at 111 South Wacker Drive, Chicago, Illinois 606063 on the 12th day of October 2007.

_____/s/ David M. Dolendi, Esq._____

CHI1 1397062v.1

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 07 C 1839 | **DATE** | 12/7/2007 |
| **CASE TITLE** | Software for Moving, Inc. Vs. La Rosa Del Monte Express, et al. | | |

**DOCKET ENTRY TEXT**

For the reason set in the attached memorandum opinion and order, defendants La Rosa Del Monte Express, Inc. and La Rosa Del Monte Express Chicago LLC's (collectively "La Rosa") motion to dismiss plaintiff Software for Moving's ("SFM") amended complaint [34] is denied. SFM's motion to stay arbitration [25] is granted and La Rosa's cross motion to stay this action and/or compel arbitration [34] is denied. SFM's motion to strike portions of the declaration of John T. A. Rosenthal [26] is denied as moot. Finally, La Rosa's alternative motion to transfer this case to the Southern District of New York [24] is granted.

■[ For further details see text below.]

Docketing to mail notices.
Mail AO 450

## STATEMENT

| | |
|---|---|
| Courtroom Deputy Initials: | RJ/JGN |

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| SOFTWARE FOR MOVING, INC., | ) | |
| A New York Corporation | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 07 C 1839 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| LA ROSA DEL MONTE EXPRESS, INC., | ) | |
| a New York corporation, and LA ROSA | ) | Magistrate Judge Jeffrey Cole |
| DEL MONTE EXPRESS (CHICAGO) | ) | |
| LLC, an Illinois Limited Liability | ) | |
| Company | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Defendants La Rosa Del Monte Express, Inc. ("La Rosa New York")  and La Rosa Del Monte Express (Chicago) LLC ("La Rosa Chicago," and collectively "La Rosa"), have filed an omnibus motion with this court to dismiss plaintiff Software for Moving, Inc.'s ("SFM") first amended complaint or, in the alternative, to transfer the action to the Southern District of New York.  The motion further opposes SFM's motion to stay arbitration and opposes SFM's motion to strike the declaration of John T. A. Rosenthal.  The motion also includes La Rosa's cross-motion to stay this action and/or to compel arbitration.  For the reasons set forth below, La Rosa's motion to dismiss is denied, SFM's motion to stay arbitration is granted, and La Rosa's cross-motion to stay this action and/or to compel arbitration is denied.  SFM's motion to strike the declaration of John T. A. Rosenthal is denied as moot.  Finally, La Rosa's motion to transfer the action to the Southern District of New York is granted.

# I. BACKGROUND

At the heart of this case is an alleged written contract between SFM and La Rosa that is either authentic or fraudulent. SFM is a software company that, as its name implies, develops and licenses software for moving companies. SFM's predecessor was a company called Safeguard Computer Services, Inc. ("Safeguard"). La Rosa is a moving company, incorporated in New York, operating at 11 locations within the United States and internationally. La Rosa Chicago is a subsidiary or sister corporation established in Chicago by La Rosa.

In 1999, La Rosa entered into a contract with Safeguard for the licensing of a Windows$^{TM}$-based program, Moving Manager for Windows ("the 1999 Agreement"). Prior to 1999, La Rosa allegedly also licensed a DOS-based version of Moving Manager from Safeguard. In December 2004, La Rosa and SFM allegedly entered into an agreement by which La Rosa would license a new, Web-based version of Moving Manager from SFM, incorporating several modifications suited to La Rosa's needs. According to SFM, although it spent 20 months developing the Web-based software for La Rosa, no written agreement memorializing the contract was ever presented to, or signed by, SFM, with the exceptions described below. SFM alleges that, based solely on an oral agreement, the contract price for developing the Web-based program was $295,000, payable upon completion of the working program.

La Rosa allegedly went "live" with the Web-based program in August 2006, at which time it requested that SFM sign a 9/11 agreement[1] as well as a chart listing La Rosa's maintenance fee payment obligations over the ensuing seven years. In 2006, La

---

[1] A "9/11" agreement is one in which a software licensor places the source code of the licensed software in escrow, to be made available to the licensee should some mishap befall the licensor.

Rosa requested modification of the Web-based program; again, this was allegedly based on an oral agreement that La Rosa would pay SFM an additional $60,000 if the modifications were acceptable.

La Rosa hotly disputes SFM's contention that there was no written agreement between the two parties for the Web-based program. La Rosa alleges that there was indeed a written development and license agreement between SFM and La Rosa (the "2005 Agreement") for the Web-based program that was signed by SFM's president, Shlomo Kogos ("Kogos") on March 3, 2005. SFM has dismissed the agreement as a fraud and Kogos' alleged signature on the document as a forgery.

According to SFM, La Rosa stopped paying the maintenance fees required under the 1999 Agreement in August, 2006. When La Rosa ignored SFM's demands that it continue to pay the maintenance fees, SFM filed suit in this court, alleging that La Rosa had infringed SFM's copyright by continuing to use the software covered by the 1999 Agreement and seeking damages under 17 U.S.C. §§ 504 and 505 (count I). SFM also claims that La Rosa breached the 1999 Agreement by failing to pay the licensing fees specified in the 1999 Agreement (count II). SFM further alleges that La Rosa breached the oral contract it made with SFM concerning the Web-based program when it failed to pay $52,500 of the agreed-upon price of $295,000 for the development and licensing of the Web-based program and by failing to pay the maintenance fees according to the schedule signed in 2006 (count III). Finally, SFM claims that La Rosa also breached the subsequent oral contract by failing to pay $60,000 for the modifications to the program allegedly requested by La Rosa.

## II. ANALYSIS

A. La Rosa's Motion to Dismiss for Lack of Subject Matter Jurisdiction

La Rosa has moved to dismiss SFM's complaint under Federal Rule of Civil Procedure 12(b)(1), claiming that this court lacks subject matter jurisdiction to hear the case. FED R. CIV. P. 12(b)(1). When deciding a motion to dismiss under Rule 12(b)(1), the court construes the complaint liberally and is not bound to accept as true allegations of jurisdiction where a party properly raises factual questions of subject matter jurisdiction. *Bab Systems, Inc. v. Pilatus Inv. Group, Inc.*, No. 05 C 3038, 2005 WL 2850119, at *2 (N.D. Ill. October 27, 2005). Furthermore, the court may look beyond the jurisdictional allegations to examine any evidence submitted to determine if subject matter jurisdiction in fact exists. *Id.*

Specifically, La Rosa claims that it was Safeguard, not SFM, which registered the copyright of the software that was the subject of the 1999 Agreement. Kogos, the president of both Safeguard and SFM, has alleged that SFM is the successor in interest to Safeguard, and that Safeguard's ownership of the allegedly infringed copyright was transferred to SFM. Decl. of Shlomo Kogos ¶ 8. La Rosa claims that Safeguard did not properly assign its copyright to SFM, because SFM allegedly cannot produce a writing memorializing the transfer of the copyright from Safeguard to SFM as required by 17 U.S.C. § 204(a). Therefore, contends La Rosa, since SFM cannot, absent a written transfer agreement, properly allege ownership of the copyright, it must necessarily lack standing to bring a case of copyright infringement. Finally, according to La Rosa, since SFM cannot meet its burden of demonstrating that it has standing in this case, its

complaint should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).
*Althin CD Medical, Inc. v. West Suburban Kidney Center*, 874 F. Supp. 837, 843 (N.D. Ill. 1994).

La Rosa invokes § 204(a) in claiming that since SFM has not produced (and presumably cannot produce) a copy of a written instrument of conveyance, or note or memorandum of the transfer, of the copyright from Safeguard to SFM, then SFM cannot be recognized as owner of the copyright with standing to bring suit. Section 204(a) of the Copyright Act states that: "A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C § 204(a). The "operation of law" clause of § 204(a) has generally been limited to well-defined circumstances, including transfers of ownership pursuant to proceedings in bankruptcy and mortgage foreclosures; transfer of ownership rights from employee to employer in a "for hire" situation; or by transfer of assets from a dissolving corporation to its shareholders pursuant to the laws of the state of incorporation. *Brooks v. Bates*, 781 F. Supp. 202, 205-06 (S.D.N.Y. 1991). None of these limited circumstances by which copyright ownership may be transferred via operation of law is applicable to the instant case.

Nevertheless, La Rosa's motion to dismiss based on the above argument is fatally flawed. The Seventh Circuit has held explicitly that alleged third-party infringers, like La Rosa, may not invoke § 204(a) to avoid suit for copyright infringement. *Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 592-93 (7th Cir. 2003). According to the court, § 204 is in the nature of the Statute of Frauds and is specifically designed to resolve disputes

between copyright owners and transferees. *Billy-Bob Teeth*, 329 F.3d at 592. Where there is no dispute between the copyright owner and the transferee over the status of the copyright, "it would be unusual and unwarranted to allow a third party infringer to invoke [§] 204(a) to avoid suit for copyright infringement." *Id.* at 592-93 (quoting *Imperial Residential Design, Inc. v. The Palms Development Group, Inc.*, 70 F.3d 96, 99 (11th Cir. 1995)).

It is undisputed that there is no quarrel whatever between Safeguard and SFM over the assignment of the software copyright from the former to the latter. La Rosa, as an alleged third party infringer, simply lacks standing to invoke § 204(a) as the basis for its motion to dismiss under Rule 12(b)(1). *Billy-Bob Teeth*, 329 F.3d at 592. La Rosa's motion to dismiss is consequently denied.

B. SFM's Motion to Stay Arbitration and La Rosa's cross-motion to stay this proceeding and/or to compel SFM to arbitrate.

In February 2007, La Rosa initiated arbitration proceedings with the American Arbitration Association under the contested 2005 Agreement. SFM has resisted arbitration, claiming that there was no valid written agreement to arbitrate with La Rosa (and indeed that the 2005 Agreement is invalid) and has moved for a stay of arbitration proceedings.

Section 4 of the Federal Arbitration Act (9 U.S.C. § 4) states in part:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement …. If the making of the arbitration agreement or the

failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C § 4. La Rosa claims that the 2005 agreement, and the arbitration agreement contained therein, is valid and binding and contends that this court should therefore deny SFM's motion to stay arbitration and compel SFM to proceed with the arbitration initiated by La Rosa. SFM claims that it had never seen the 2005 Agreement (with its arbitration agreement) prior to La Rosa's February 2007 demand for arbitration and that Kogos' alleged signature on the 2005 Agreement is a forgery. SFM denies having any knowledge of, or intent to enter into, any arbitration agreement with La Rosa.

There is, therefore, a serious disagreement between the parties with respect to a significant issue of material fact, *viz.*, the authenticity of the 2005 Agreement and its alleged agreement to arbitrate. Since there is a dispute concerning the making of the agreement, 9 U.S.C. § 4 is squarely in play, directing this court to proceed summarily to trial.

La Rosa cites *God's Battalion of Prayer Pentacostal Church, Inc. v. Miele Associates LLP* in support of its opposition to SFM's movement to stay arbitration. 85 N.E.2d 1265 (S.D.N.Y. 2006). However *God's Battalion* is distinguishable from the instant case. In *God's Battalion*, the party moving to stay arbitration was in possession of an unsigned copy of the contract containing the arbitration agreement prior to the arising of the dispute. 85 N.E.2d at 1266. The court held that retention of the unsigned copy, as well as its proceeding with the terms of the contract prior to the arisal of the dispute, evinced both parties' willingness to be bound by the terms of the contract, despite the fact that one party had failed to sign it. *Id.* at 1267.

7

La Rosa correctly argues that an arbitration clause in an unsigned agreement, is enforceable if the other party's conduct evinced an intent to be bound by the agreement. *See Rudolph & Beer, LLP v. Roberts*, 260 A.D.2d 274, 276 (N.Y. Sup. Ct. 1999); *Maxit Designs, Inc. v. Coville, Inc.*, No. CIV. S-05-1040 WBS DAD, 2006 WL 2734366, at *4 (E.D. Cal. 2006); *Liberty Management & Const. Ltd. v. Fifth Ave. & Sixty-Sixth Street*, 208 A.D.2d 73, 73 (N.Y. Sup. Ct. 1995). But in each of these cases cited by La Rosa, a written agreement was present and in the possession of both parties prior to the dispute, even though unsigned by one party.

In the instant case, however, SFM alleges that it did not have possession of the 2005 Agreement until La Rosa produced it in demanding arbitration and that, furthermore, the contract is fraudulent. SFM alleges that it never saw or signed the 2005 Agreement at the time it developed and delivered the Web-based Moving Manager software to La Rosa, and that the contract between SFM and La Rosa was strictly oral, with no mention of an arbitration agreement. And even had there been an oral agreement to arbitrate between SFM and La Rosa, such an agreement would have been unenforceable, because all such agreements are required to be in writing. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967). SFM claims that it cannot be bound to arbitration because it never agreed to be bound, or acted as if it agreed to be bound, to an arbitration agreement of which it claims it was entirely ignorant.

SFM disputes that there was ever a valid arbitration agreement with La Rosa, and disputes even the validity of the 2005 Agreement which contains the agreement to arbitrate. Since the existence of an agreement to arbitrate is in issue, 9 U.S.C § 4 commands that the court to proceed summarily to trial to determine whether the 2005

Agreement, and its constituent arbitration agreement, is valid. *Prima Paint Corp.*, 388 U.S. at 403-04; *see also Great American Trading Corp. v. I.C.P. Cocoa, Inc.*, 629 F.2d 1282, 1288 (7th Cir. 1980). SFM's motion to stay arbitration pending trial is therefore granted. For the same reasons, La Rosa's cross-motion to stay this proceeding and/or to compel SFM to arbitrate is denied.

C. SFM's Motion to Strike the Declaration of John T. A. Rosenthal

The declaration of John T. A. Rosenthal ("Rosenthal") has been adduced by La Rosa in support of its motion to dismiss and in opposition to SFM's motion to stay arbitration. The purpose of the declaration is purportedly to demonstrate that SFM and La Rosa had entered into arbitration, a contention that SFM contests. SFM particularly objects to Rosenthal's allegations concerning the authenticity of the 2005 Agreement and SFM's alleged agreement to arbitrate. Rosenthal Decl. ¶¶ 3, 10. As stated above, the question of the authenticity of the 2005 Agreement and its agreement to arbitrate are to be decided by the court at trial subsequent to the directive of 9 U.S.C. § 4. Since this court has denied La Rosa's motion to dismiss and has granted SFM's motion to stay arbitration, SFM's motion to strike Rosenthal's declaration is denied as moot.

D. La Rosa's Motion to Transfer the Action to the Southern District of New York

Its motion to dismiss having been denied, La Rosa has moved in the alternative to transfer this action to the Southern District of New York. A transfer is appropriate if venue is proper in both districts, if transfer promotes the convenience of the parties and witnesses, and if transfer is in the interests of justice. *Solaia Technology, Inc. v. Rockwell Automation, Inc.*, No. 03 C 566, 2003 WL 22057092, at *2 (N.D. Ill. Sept. 2,

2003).  La Rosa has not moved to dismiss for improper venue so the court assumes without deciding that venue is proper in both districts.

The court evaluates the convenience of the parties and witnesses by considering: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties.  *See, e.g.*, *Washington Nat. Life Ins. Co. v. Calcasieu Parish School Bd.*, No. 05 C 2551, 2006 WL 1215413, at *8 (N.D. Ill. May 2, 2006).

### 1.  Plaintiff's Chosen Forum

SFM's choice of forum is Illinois, which is entitled to some weight.  *See Solaia Technology, Inc.*, 2003 WL 22057092, at *2 ("One factor relevant to the convenience analysis is the plaintiff's choice of forum, which is entitled to substantial deference, particularly when the chosen forum is the plaintiff's home state.").  This factor is not necessarily conclusive.  *See, e.g., Von Holdt v. Husky Injection Molding Systems, Ltd.*, 887 F. Supp. 185, 188 (N.D. Ill. 1995) (Although plaintiff's choice of forum has been given substantial weight in some cases, it is not the only factor a court must consider in determining whether to transfer venue).  Illinois is not SFM's home state (SFM is a New York corporation) and that diminishes somewhat the weight that this court accords to its choice of forum.  However, although this factor is in SFM's favor, the other factors in this case tip the balance in favor of La Rosa's motion to transfer.

### 2.  Situs of Material Events

The principal material event in this action is the alleged 2005 Agreement governing the relationship between the parties.  The alleged 2005 Agreement was (or was not) the result of dealings between SFM and La Rosa New York which took place in New

York.  The disagreement over the authenticity of the 2005 Agreement is the font from which the other alleged wrongs (breach of contract and copyright infringement) flow in this case.  It is true that La Rosa Chicago, La Rosa New York's sister or subsidiary organization, is also alleged to be infringing SFM's copyright, but the fact remains that the contractual relationship at the heart of this case was conceived in New York between SFM and La Rosa New York.  This factor thus weighs in favor of transferring the action.

### 3.  Access to Sources of Proof and Convenience of Witnesses

Both of the principal parties (SFM and La Rosa New York) to the alleged 2005 Agreement are New York corporations.  Moreover, the adoption of the 2005 Agreement, or lack thereof, apparently took place in New York between actors for both parties who reside in New York.  Indeed, the only connection with Illinois is La Rosa New York's sister or subsidiary company, La Rosa Chicago, which is allegedly infringing SFM's copyright at its Chicago office.  However, the copyright is also allegedly being infringed at La Rosa's other locations, and nothing has been alleged to suggest that La Rosa Chicago was a party to the 2005 Agreement which is at the heart of this controversy.  Because the 2005 Agreement was (or was not) drafted, signed, and adopted in New York, between actors who are citizens of New York, it can be presumed that the factors of access to sources of proof, including discovery and the convenience of the witnesses likely to be called, including present and past actors for the New York corporations involved, are better served by transferring this action to the Southern District of New York.

*4. Transfer is in the Interests of Justice*

When evaluating the interest of justice (often referred to as the "public interest"

factors), the court focuses on the efficient administration of the court system.

*Washington Nat. Life Ins. Co. v. Calcasieu Parish School Bd.*, 2006 WL 1215413, at *8.

Relevant considerations here include: (1) the court's familiarity with the applicable law;

(2) the speed at which the case will proceed to trial, and; (3) the desirability of resolving

controversies in their locale. *Id*. The movant has the burden of establishing, by reference

to particular circumstances, that the transferee forum is clearly more convenient. *Coffey*

*v. Van Dorn Iron Works*, 796 F.2d 217, 219-220 (7th Cir. 1986). "The weighing of

factors for and against transfer necessarily involves a large degree of subtlety and

latitude, and, therefore, is committed to the sound discretion of the trial judge." *Id.*

Once again, these factors weigh in favor of granting La Rosa's motion to transfer.

With the exception of count I (copyright infringement), all of the other counts comprise

actions at common law. Were the court to hear this case, it would likely apply New York

state law to the common law counts II through IV. This argues in favor of transfer to the

Southern District of New York, which is likely more familiar with New York common

law than is this court.

Generally, for federal claims based on pendant state claims, federal district courts

follow the choice of law rules of the state in which the district sits. *Gramercy Mills, Inc.*

*v. Wolens,* 63 F.3d 569, 572 (7th Cir. 1995). Illinois has adopted the tests from the

Restatement (Second) of Conflicts to serve as its choice of law rules in contract cases.

RESTATEMENT (SECOND) OF CONFLICTS § 188 (1971); *Asser v. McIntyre,* 661 N.E.2d

1138, 1141 (Ill. 1996). Illinois applies the Restatement's "most significant relationship"

test for choosing the appropriate law. *Gramercy Mills*, 63 F.3d at 572. In determining which state's law should apply, the court considers: "(a) the place of contracting, (b) the place of negotiation, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, place of incorporation, and place of business of the parties." *Id.*; RESTATEMENT (SECOND) OF CONFLICTS § 188 (1971). The Restatement further indicates that the factors "are to be evaluated according to their relative importance with respect to the particular issue." RESTATEMENT (SECOND) OF CONFLICTS § 188.

Applying these factors, the court observes that the contract was allegedly negotiated and signed in New York by entities that are incorporated in New York. Although La Rosa Chicago is an Illinois limited liability company, it was La Rosa New York that negotiated the disputed contract with SFM. The location of the subject matter of the contract (the development and licensing of the Web-based Moving Manager software) was primarily in New York (where SFM is located), although all of La Rosa's subsidiaries presumably shared the license. Likewise, the place of performance (with respect to development of the software at least) took place in New York. Thus, the alleged 2005 Agreement was negotiated and signed in New York by parties incorporated in New York, with performance (with respect to development and delivery of the software) and subject matter located in New York.[2] Given these facts, it is evident that New York has a more significant relationship with the occurrence and parties than Illinois, and thus the Illinois choice of law rule favors application of New York state law.

---

[2] The court notes that SFM has also filed an action in the New York State Supreme Court against La Rosa seeking a stay of the arbitration proceedings. *See Software for Moving, Inc. v. Del Monte Express, Inc.*, Case no. 603001-07 (N.Y. Sup. Ct. 2007).

Since New York law likely applies to the common law counts of SFM's complaint, the "familiarity factor" weighs in favor of transfer.

Both the Southern District of New York and the Northern District of Illinois contain large urban metropolitan areas with consequently heavy dockets for their district courts. It is therefore unlikely that a change of venue will significantly impede or accelerate the course of this action. Thus the second public interest factor is probably evenly balanced between the two districts.

Finally, the public policy factor in favor of resolving controversies in their locale militates in favor of transfer. The 2005 Agreement was allegedly made in New York between New York corporations. That is where the center of this case originated, and public policy favors resolving it there.

Because New York state law likely governs the common law counts of this action, and since public policy favors resolution of conflicts in the locale in which they originated, the public policy factors weigh in favor of La Rosa's motion to transfer this action.

Since venue is proper in both districts, and since transfer promotes the convenience of the parties and witnesses and is in the interests of justice, La Rosa's alternative motion to transfer this action to the Southern District of New York is granted.

### III. CONCLUSION

For the reasons set forth below, La Rosa's motion to dismiss is denied, SFM's motion to stay arbitration is granted, and La Rosa's cross-motion to stay this action and/or to compel arbitration is denied. SFM's motion to strike the declaration of John T.

A. Rosenthal is denied as moot.  Finally, La Rosa's motion to transfer the action to the

Southern District of New York is granted.

ENTER:

_____/s/_____

JOAN B. GOTTSCHALL
United States District Judge

DATED: December 7, 2007

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – <span style="color:red">CM/ECF LIVE, Ver 3.0</span>
### Eastern Division

Software For Moving, Inc.

                        Plaintiff,

v.                                   Case No.: 1:07−cv−01839
                                   Honorable Joan B. Gottschall

La Rosa Del Monte Express, Inc., et al.

                        Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Wednesday, December 12, 2007:

      MINUTE entry before Judge Susan E. Cox : This having been transferred to the Southern District of New York on 12/7/2007, the referral is closed. Judge Susan E. Cox no longer referred to the case.Mailed notice(jms, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.



**MICHAEL W. DOBBINS**
CLERK

# UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### 219 SOUTH DEARBORN STREET
### CHICAGO, ILLINOIS 60604

January 3, 2008

United States District Court
Southern District of New York
120 Daniel Patrick Moynihan
 United States Courthouse
500 Pearl Street
New York, NY 10007-1312

 RE:    Software For Moving, Inc. v. La Rosa Del Monte Express, Inc. et al
ND/IL  Case No:       07C1839

Enclosed is the certified record which is being transferred to your court pursuant to orders entered on 12/07/07  by the
Honorable Judge Joan B. Gottschall.  Enclosed is a certified copies of the transfer orders and docket sheet .

As of  January 18, 2005 for civil and criminal cases, our court uses electronic case filing.  You may access our electronic
case file and print copies of electronically filed documents by following the procedures on the attached Instruction Sheet.
You will need Adobe Acrobat reader loaded on your computer in order to view the documents.  If you are an electronic
court, you may upload the documents.

Please **DO NOT MAKE THE ENCLOSED INSTRUCTION SHEET A PART OF THE OFFICIAL RECORD**
as it contains your login and password to our system.  This login and password should not be shared with anyone other
than federal court personnel who would have a need to access our electronic case file system.

Please acknowledge receipt on the enclosed copy of this letter.

Sincerely yours,
**Michael W. Dobbins, Clerk**

/s/Thelma Murry-Sykes, Deputy Clerk

Enclosures

New Case No. _____          Date _____