## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

SOFTWARE FOR MOVING, INC., a New
York Corporation,

                    **Plaintiff,**

          **v.**

LA ROSA NEW YORK DEL MONTE
EXPRESS, INC., a New York Corporation, and
LA ROSA NEW YORK DEL MONTE
EXPRESS (CHICAGO), LLC, an Illinois Limited
Liability Company,

                  **Defendants.**

-------------------------------------------------------------x

**CASE NUMBER: 08-cv-00986 (JGK)**

**Assigned Judge: John G. Koeltl**

**Designated
Magistrate Judge: Douglas Eaton**

  **ANSWER AND
COUNTERCLAIMS**

Defendants, LA ROSA NEW YORK DEL MONTE EXPRESS, INC. ("La Rosa New York") and LA ROSA NEW YORK DEL MONTE EXPRESS (CHICAGO), LLC ("La Rosa Chicago", together with La Rosa New York, "Defendants"), by and through their attorneys, Harrington, Ocko & Monk, LLP, as and for their Answer to Plaintiff's Amended Complaint, state, admit, deny and aver as follow:

### JURISDICTION

1.     To the extent paragraph "1" of the Amended Complaint states conclusions of law, Defendants make no response, as none is required.  To the extent any of the other allegations contained in contained in paragraph "1" of the Amended Complaint are not conclusions of law, Defendants deny such allegations, except to admit that certain software was registered with the United States Copyright Office by non-party Safeguard Computer Services, Inc. ("Safeguard"), and such registration number is TX-4-426-709, and respectfully refer the Court to such registration for its content.

1

## THE PARTIES

2.    Defendants lack sufficient knowledge or information to admit or deny the allegations contained in paragraph "2" of the Amended Complaint, and deny same on that basis, except to admit that SFM attempted (and failed) to develop certain software for La Rosa New York pursuant to two written agreements between the parties, and respectfully refer the Court to such written agreements for their content.

3.    Defendants admit that La Rosa New York is a New York corporation, with its principal place of business in the Bronx, New York, and is the moving business, and deny the remaining allegations in paragraph "3" of the Amended Complaint.

4.    To the extent paragraph "4" of the Amended Complaint states conclusions of law, Defendants make no response, as none is required.  To the extent any of the other allegations contained in contained in paragraph "4" of the Amended Complaint are not conclusions of law, Defendants deny such allegations, except to admit that La Rosa Chicago is an Illinois Corporation with its principal place of business in Chicago, Illinois.

5.    To the extent paragraph "5" of the Amended Complaint states conclusions of law, Defendants make no response, as none is required.  To the extent any of the other allegations contained in contained in paragraph "5" of the Amended Complaint are not conclusions of law, Defendants deny such allegations, except to admit that La Rosa New York entered into a written contract with a company known as Safeguard, and respectfully refer the Court to the written agreement for its content.

6.    To the extent paragraph "6" of the Amended Complaint states conclusions of law, Defendants make no response, as none is required.  To the extent any of the other allegations contained in contained in paragraph "6" of the Amended Complaint are not conclusions of law, Defendants deny such allegations, except to admit that La Rosa New York entered into a written

contract with a company known as Safeguard, La Rosa Chicago has never had any agreement with Safeguard, and respectfully refer the Court to the written agreement for its content.

7.      To the extent paragraph "7" of the Amended Complaint states conclusions of law, Defendants make no response, as none is required.  To the extent any of the other allegations contained in contained in paragraph "7" of the Amended Complaint are not conclusions of law, Defendants deny such allegations, except to admit that La Rosa New York entered into a written contract with a company known as Safeguard, and respectfully refer the Court to the written agreement for its content.

8.      To the extent paragraph "8" of the Amended Complaint states conclusions of law, Defendants make no response, as none is required.  To the extent any of the other allegations contained in contained in paragraph "8" of the Amended Complaint are not conclusions of law, Defendants deny such allegations, except to admit that Hiram Rodriquez and Roberto Rodriquez are officers of La Rosa New York, that Mr. Steven Dalzell was an employee of La Rosa New York, and La Rosa New York entered into two written agreements with Plaintiff SFM which required SFM to develop, implement and maintain a web-based, computer moving program for La Rosa New York, that La Rosa New York paid SFM over $245,000 pursuant to those written agreements, that SFM's President Shlomo Kogos signed addendum to both those written agreements, that SFM never delivered to La Rosa New York complete, fully operational software pursuant to such written agreements, and respectfully refer the Court to such written agreements for their content.

9.      Defendants deny the allegations contained in paragraph "9" of the Amended Complaint.

10.     To the extent paragraph "10" of the Amended Complaint states conclusions of law, Defendants make no response, as none is required.  To the extent any of the other allegations contained in contained in paragraph "10" of the Amended Complaint are not conclusions of law,

Defendants deny such allegations, except to admit that SFM's President Shlomo Kogos has admitted that he signed the addendums to both written agreements, and respectfully refer the Court to such written agreements and the addendum to such written agreements for their content.

11.    Defendants deny the allegations contained in paragraph "11" of the Amended Complaint.

## COUNT I

1-6.    Defendants reassert and incorporate herein by reference their responses to the allegations contained in paragraphs "1" through "11" described above, as if fully set forth herein.

7.    To the extent paragraphs "1" through "7" of Count I of the Amended Complaint state conclusions of law, Defendants make no response, as none is required.  To the extent any of the other allegations contained in contained in paragraphs "1" through "7" of Count I of the Amended Complaint are not conclusions of law, Defendants deny such allegations, except to admit that La Rosa New York entered into a written agreement in 1999 with Safeguard, not a party to this litigation, and respectfully refer the Court to such written agreement for its contents.

8.    To the extent paragraph "8" of Count I of the Amended Complaint states conclusions of law, Defendants make no response, as none is required.  To the extent any of the other allegations contained in paragraph "8" of Count I of the Amended Complaint are not conclusions of law, Defendants deny such allegations.

9.    Defendants deny the allegations contained in paragraph "9" of Count I of the Amended Complaint, except to admit that a Mr. Zukowsky, of the law firm of Chernesky Heyman & Kress sent correspondence to representatives of La Rosa New York, and respectfully refer the Court to such correspondence for their content.

10.    Defendants deny the allegations contained in paragraph "10" of Count I of the Amended Complaint, except to admit that a Mr. Zukowsky, of the law firm of Chernesky Heyman

& Kress sent correspondence to representatives of La Rosa New York, and respectfully refer the Court to such correspondence for their content.

11.    Defendants deny the allegations contained in paragraph "11" of Count I of the Amended Complaint, except to admit that a Mr. Zukowsky, of the law firm of Chernesky Heyman & Kress sent correspondence to representatives of La Rosa New York, and respectfully refer the Court to such correspondence for their content.

12.    Defendants deny the allegations contained in paragraph "12" of Count I of the Amended Complaint, except to admit that a Mr. Zukowsky, of the law firm of Chernesky Heyman & Kress sent correspondence to representatives of La Rosa New York, and respectfully refer the Court to such correspondence for their content.

13.    Defendants deny the allegations contained in paragraph "13" of Count I of the Amended Complaint, except to admit that Defendants have properly exercised all contractual rights accorded to them under the 1999 agreement with Safeguard, and the written agreements with SFM, and respectfully refer the Court to such written agreements for their content.

14.    Defendants deny the allegations contained in paragraph "14" of Count I of the Amended Complaint.

15.    To the extent paragraph "15" of Count I of the Amended Complaint state conclusions of law, Defendants make no response, as none is required.  To the extent any of the other allegations contained in contained in paragraph "15" of Count I of the Amended Complaint are not conclusions of law, Defendants deny such allegations.

16.    To the extent paragraphs "16" of Count I of the Amended Complaint state conclusions of law, Defendants make no response, as none is required.  To the extent any of the other allegations contained in contained in paragraph "16" of Count I of the Amended Complaint are not conclusions of law, Defendants deny such allegations.

## COUNT II

1-6.    Defendants reassert and incorporate herein by reference their responses to the allegations contained in paragraphs "1" through "11" above, and paragraphs "1" through "16" responding to Count I of the Amended Complaint, all described above, as if fully set forth herein.

7.    To the extent paragraphs "1" through "7" of Count II of the Amended Complaint state conclusions of law, Defendants make no response, as none is required.  To the extent any of the other allegations contained in contained in paragraphs "1" through "7" of Count II of the Amended Complaint are not conclusions of law, Defendants deny such allegations, except to admit that La Rosa New York entered into a written agreement in 1999 with Safeguard, not a party to this litigation, and respectfully refer the Court to such written agreement for its contents.

8.    Defendants deny the allegations contained in paragraph "8" of Count II of the Amended Complaint.

## COUNT III

1.-10.   Defendants reassert and incorporate herein by reference their responses to the allegations contained in paragraphs "1" through "11" above, paragraphs "1" through "16" responding to Count I of the Amended Complaint above, and paragraphs "1" through "8" responding to Count II of the Amended Complaint, all described above, as if fully set forth herein.

11.    Defendants deny the allegations contained in paragraph "11" of Count III of the Amended Complaint.

12.    Defendants deny the allegations contained in paragraph "12" of Count III of the Amended Complaint.

13.    Defendants deny the allegations contained in paragraph "13" of Count III of the Amended Complaint.

## COUNT IV

1.-11.  Defendants reassert and incorporate herein by reference their responses to the allegations contained in paragraphs "1" through "11" above, paragraphs "1" through "16" responding to Count I of the Amended Complaint above, paragraphs "1" through "8" responding to Count II of the Amended Complaint, paragraphs "1" through "13" of Count III of the Amended Complaint, all described above, as if fully set forth herein.

13.[Sic]  Defendants deny the allegations contained in paragraph "13" of Count IV of the Amended Complaint, except to admit Mr. Zukowsky, of the law firm of Chernesky Heyman & Kress, sent correspondence to representatives of La Rosa New York, and respectfully refer the Court to such correspondence for their content.

## DEFENDANTS' FIRST AFFIRMATIVE DEFENSE

1.    Plaintiff's Amended Complaint, either in whole or in part, fails to state a claim upon which relief may be granted, and requests the Court dismiss Plaintiff's Amended Complaint in its entirety.

## DEFENDANTS' SECOND AFFIRMATIVE DEFENSE

2.    Plaintiff's actions are barred, in whole or in part, against Defendants for lack of subject matter jurisdiction and lack of standing, as Plaintiff SFM is not the legal owner of the copyrighted material at issue, and Plaintiff and Defendant La Rosa New York are not diverse parties, both being residents of New York, which precludes the Court from retaining subject matter jurisdiction over this action pursuant to applicable copyright laws and Federal laws.

## DEFENDANTS' THIRD AFFIRMATIVE DEFENSE

3.    Plaintiff's causes of action, and each of them, are barred by the doctrine of unclean hands.

## DEFENDANTS' FOURTH AFFIRMATIVE DEFENSE

4.     Plaintiff lacks standing to bring a claim against Defendants pursuant to the 1999 written agreement between Safeguard and La Rosa New York, as Plaintiff is not a party to that agreement.

## DEFENDANTS' FIFTH AFFIRMATIVE DEFENSE

5.     Plaintiff lacks standing to bring a claim against Defendants under United States copyright laws as Plaintiff SFM is not the legal or recognized owner of the copyrighted material at issue, and Plaintiff has no valid, written agreement with the owner, Safeguard, transferring legal ownership of the copyrighted material to Plaintiff.

## DEFENDANTS' SIXTH AFFIRMATIVE DEFENSE

6.     Plaintiff is precluded from bringing this action, and must arbitrate this dispute with Defendants pursuant to the two written arbitration agreements entered into by La Rosa New York and SFM.

## DEFENDANTS' SEVENTH AFFIRMATIVE DEFENSE

7.     Plaintiff is precluded from bringing any contracts claims against Defendants as Plaintiff materially breached all the agreements at issue by failing to properly maintain the software at issue, and failing to deliver software that is fully functional and operational in accordance with the agreements between the parties.

## DEFENDANTS' EIGTH AFFIRMATIVE DEFENSE

8.     Plaintiff's claims, and each of them, are barred by the doctrine of estoppel.

## DEFENDANTS' NINTH AFFIRMATIVE DEFENSE

9.     Plaintiff's claims, and each of them, are barred by the doctrine of waiver.

## DEFENDANTS' TENTH AFFIRMATIVE DEFENSE

10.     Plaintiff has failed to mitigate its damages.

## DEFENDANTS' ELEVENTH AFFIRMATIVE DEFENSE

11.    Plaintiff's claims, and each of them, are barred as Plaintiff cannot establish it was damaged by any of the alleged conduct.

## DEFENDANTS' TWELTH AFFIRMATIVE DEFENSE

12.    Plaintiff's claims, and each of them, are barred as Defendants acted at all times in good faith.

## DEFENDANTS' THIRTEENTH AFFIRMATIVE DEFENSE

13.    Plaintiff has waived it right to pursue each and every one of its claims in this action by actively participating in the pending New York Arbitration with La Rosa New York.

## DEFENDANTS' FOURTEENTH AFFIRMATIVE DEFENSE

14.    Plaintiff is precluded from litigating this dispute under the Doctrines of Collateral Estoppel and Rooker-Feldman, as Judge Feinman of the New York Supreme Court issued an Order directing Plaintiff to arbitrate its dispute with La Rosa New York.

## COUNTERCLAIMS

LA ROSA NEW YORK DEL MONTE EXPRESS, INC. ("La Rosa New York"), and LA ROSA NEW YORK DEL MONTE EXPRESS (CHICAGO), LLC ("La Rosa Chicago", together with La Rosa New York, "Counterclaim Plaintiffs"),  by and through their attorneys, Harrington, Ocko & Monk, LLP, allege the following as their Counterclaims against Counterclaim Defendant, SOFTWARE FOR MOVING, INC. ("SFM" or "Counterclaim Defendant").

## INTRODUCTION

1.    Counterclaim Plaintiffs bring their counterclaims against SFM to obtain a declaration and award that SFM is in breach of the parties' Software Development and Maintenance Agreements (the "Agreements") both dated March 3, 2005, and that SFM owes Plaintiffs $245,250, the amount paid by La Rosa New York to SFM under the Agreements that SFM would

develop and provide la Rosa New York with new software for its moving company operations, as well as maintain this new software. SFM has done neither.

2.    Counterclaim Plaintiffs also seek an award of damages of at least $88,000 as a result of SFM's breach of the Agreements and breach of the parties March 1999 agreement due to the failure of SFM to maintain either the new, web-based software, pursuant to the Agreements, or the older DOS/Windows based software pursuant to the Agreements and the parties' March 1999 Agreement.

3.    Counterclaim Plaintiffs also seek a declaration requiring that SFM immediately cease interfering with their ability to access any software programs that La Rosa New York has a right to use under the parties' written agreements.

4.    Counterclaim Plaintiffs also seek an award of damages in an amount to be determined by this Arbitration, but no less than $50,000, resulting from SFM's tortious interference with contract regarding la Rosa New York's ability to conduct its business by preventing La Rosa New York from gaining access to its confidential business information on computer servers containing such information, and tortious interference with La Rosa New York's ability to have a hosting company of its choice download the software that it has a contractual right to utilize pursuant to the parties' Agreements.

5.    Counterclaim Plaintiffs also seek a declaration that pursuant to the written agreements between La Rosa New York and SFM, SFM is required to arbitrate this dispute.

### The Parties

6.    Counterclaim Plaintiff La Rosa New York is a successful moving and storage company with its headquarters and principal place of business located at 1133-35 Tiffany Street in the Bronx, New York. La Rosa New York's moving business requires the extensive use of software programs, in order to efficiently conduct its business, including, but not limited to,

database entry, data storage, form creation, and entry and retrieval of moving and storage location information.

7.      Counterclaim Plaintiff La Rosa Chicago is an Illinois corporation with its principle place of business in Chicago, Illinois.

8.      Upon information and belief, Respondent, SFM, is a New York corporation with its principal place of business in Queens, New York, New York.  Upon information and belief, SFM is in the business of developing, licensing, and providing software and software maintenance for companies involved in the moving and storage industry.  Upon information and belief, SFM is not qualified to do business in the State of New York.

9.      Upon information and belief, Shlomo Kogos is the President, and sole shareholder of SFM.

10.      Venue is appropriate in the Southern District of New York pursuant to 28 U.S.C. §1391(b)(c), as upon information and belief, Counterclaim Defendant SFM has sufficient contacts within this judicial district to allow for personal jurisdiction, and the conduct at issue took place in La Rosa New York's offices in the Bronx.

## Factual Allegations

11.      La Rosa New York is in the business of moving and storing personal belongings and other items for clients.  La Rosa New York does moving and storage for both residential clients, as well as commercial and government clients.

12.      In order to accomplish its business in an effective and economic manner, La Rosa New York is required to utilize custom software in order to facilitate the processing of various moving and storage requests for clients.

13.    In or about March 1999, La Rosa New York engaged a company known as Safeguard Corporate Services, Inc. ("Safeguard") and its President, Mr. Shlomo Kogos, to develop and maintain custom moving software, programs, and software codes for La Rosa New York.

14.    The 1999 Software Agreement required that Safeguard would provide La Rosa New York with a DOS/WINDOWS-based software operating system, in order to allow La Rosa New York to conduct its moving and storage business.

15.    Pursuant to the 1999 Software Agreement, Safeguard was also obligated to maintain and upgrade La Rosa New York's DOS/WINDOWS-based operating software.    Under this Agreement, La Rosa New York was to pay Safeguard an annual maintenance fee for Safeguard's work done in maintaining the operational capabilities of the DOS/WINDOWS-based operating software (or the "Old Software").    If Safeguard committed a substantial breach of the 1999 Software Agreement, La Rosa New York was not required to pay the maintenance fees.

16.    Counterclaim Plaintiff La Rosa Chicago has never entered into any agreement with Safeguard.

17.    Upon information and belief, Safeguard never entered into a written agreement with Counterclaim Defendant SFM to obtain ownership rights to the copyright for the 1999 software programs.

**SFM Contracts to Provide La Rosa New York with New Software**

18.    On or about March 3, 2005, the SFM and La Rosa New York entered into software and maintenance agreements.    La Rosa New York entered into the License Agreement and Maintenance Agreement with SFM in order to replace La Rosa New York's existing and outdated moving software programs and/or applications.    This New Software (to be provided to La Rosa New York by SFM) would function using the internet and world-wide web.

19.    La Rosa New York was enticed into obtaining this New Software from SFM as a result of representations by SFM's President Shlomo Kogos that SFM would not be able to maintain the Old Software created by Safeguard.

20.    Pursuant to the terms of the License Agreement, SFM was to develop and provide to La Rosa New York a web-based computer software (the "New Software"), in order to allow La Rosa New York and its employees to access the new software and information contained on computer servers via the world-wide web.

21.    The License Agreement provided that SFM was to have the New Software available to La Rosa New York in phases in accordance with the agreed-upon "Plan of Development." SFM was contractually obligated to devote sufficient time and resources to the development effort.

22.    Upon completion of each milestone and/or phase of the software project, SFM was to notify La Rosa New York's design and development coordinator for the project.  Upon this notification, SFM was to promptly deliver that phase of the New Software for review, acceptance, and testing by La Rosa New York.  The License Agreement specified that "time was of the essence" as to each phase of the development plan.

23.    La Rosa Chicago is not a party to the License Agreement.

24.    Under the License Agreement, La Rosa New York had the option to terminate the License Agreement if any phase of the new software failed any acceptance test after delivery by SFM.  License Agreement, Article V, Section 5.5.

25.    In return for developing and providing to La Rosa New York with the web-based New Software, La Rosa New York was to pay to SFM a development fee equal to $190,000 (the "Development Fee") for the development and delivery of the new software.  License Agreement Article 4, Section 4.1.  This Development Fee was to be paid in installments upon successful

delivery and testing of each phase of the New Software as set forth in the License Agreement.  Id., Section 4.2.

26.    Each installment payment by La Rosa New York was to be due upon the successful completion of each of the phases set forth in the Development Plan.  Such installment payment by La Rosa New York for each phase was to be received by SFM no later than 30 days following the date that SFM delivered the new software to La Rosa New York.  However, La Rosa New York would not be deemed in default of such payment if, in good faith, La Rosa New York disputed the invoices or was of the belief that the particular development phase had not been successfully completed.  License Agreement, Section 4.2.

27.    In addition, La Rosa New York was not required to pay to SFM the entire amount of the development fee until after La Rosa New York had used the entire New Software successfully for a period of 90 days without failure (the "Trial Period").  License Agreement, Section 4.2.  Until the delivery of all the New Software and the completion of the Trial Period, La Rosa New York was permitted to withhold 10% of the Development Fee.  Id.

28.    Due to the fact that the New Software was not anticipated to be up and running and fully complete for a period of several months or more, under the License Agreement, the parties agreed that La Rosa New York could continue to utilize its DOS/WINDOWS-based Old Software, and pay SFM a yearly software maintenance fee of $58,000 (the "Current Software Maintenance Fee").  Article IV, Section 4.6.  The Current Software Maintenance Fee was to cover SFM's maintenance services on the existing DOS/WINDOWS Old Software for calendar year 2005.

29.    Under the express terms of the License Agreement, either party had the option to terminate the License Agreement, in whole or in part, if the other party failed to perform a material obligation set out in the Agreement.  License Agreement, Article XII, Section 12.1.  Such termination pursuant to Article 12 of the License Agreement could only be effectuated if the breach

could be cured, and was not, and the purportedly, breaching party was given written notice of such breach by the non-breaching party prior to the beginning of the 20-day cure period.  Furthermore, if the License Agreement was terminated by SFM prior to completion of its new software, or due to the purported default or material breach by La Rosa New York, SFM was to issue an invoice to La Rosa New York for work performed.  License Agreement, Article XII, Section 12.3.

30.    In addition, pursuant to Article XII, Section 12.2 of the License Agreement, if La Rosa New York terminated the License Agreement as a result of a default or material breach by SFM, La Rosa New York had the right to continue the license of its current DOS/WINDOWS Old Software, and to require SFM to continue to provide maintenance services based upon the parties' March 1999 Agreement.  Article XII, section 12.2.  The original software maintenance fee was $35 per month per workstation.   As indicated above, under the 1999 Software Agreement, Safeguard was not entitled to any maintenance fee if it breached or defaulted on the 1999 Software Agreement.

31.    Furthermore, if SFM committed a material breach of the License Agreement or defaulted on the License Agreement, La Rosa New York had the right to require that SFM return all of the monies paid to SFM under the License Agreement.  Article XII, section 12.2.   Even if SFM breached or defaulted on its obligations under the License Agreement, and La Rosa New York obtained all amounts paid to SFM under the License Agreement, SFM was required to allow La Rosa New York to use the DOS/Windows-based Old Software, and to provide maintenance for such Old Software.

32.    In addition, under the terms of the License Agreement, SFM agreed to maintain La Rosa New York's confidential information, and not to use such confidential information other than in the performance of the License Agreement, and not to disclose or release such confidential information to other parties.  Article VII, Section 7.6.  This non-disclosure provision in the License

Agreement regarding La Rosa New York's confidential information survives the termination of the Agreement.

33.     In addition to the development fee, and the Current Software Maintenance Fee, La Rosa New York agreed to pay SFM a license fee of $105,000 (the "License Fee").  Article VI, Section 6.6.  The term of the license was to begin on the date the "new software" was installed on any of La Rosa New York's sites.  Id., Section 6.4.  As defined in the License Agreement, "new software" means the source code and/or executable object code for "all" the programs to be delivered by SFM to La Rosa New York under the License Agreement.  Article I, Section 1.k. Thus, under the terms of the License Agreement, La Rosa New York was not required to pay SFM any of the $105,000 License Fee until SFM had delivered "all" the new software, and such new software had passed the Trial Period.

34.     The License Agreement also provides that "[i]n the event of any dispute between La Rosa New York and SFM regarding the License Agreement, the parties would attempt to resolve the dispute through good faith negotiations."  Article XIII, Section 13.11.  Under the License Agreement, the party alleging a dispute is required to notify the other party, in writing, of the exact nature of the dispute, and then engage in good faith negotiations within seven (7) business days of notification.  Id.

35.     If the parties are unable to resolve the dispute in the manner described in Section 13.11, they are required to submit the dispute to binding arbitration under the AAA Rules.  Id., Section 13.12.

**SFM Contracts with La Rosa New York to Provide Maintenance for the New Software**

36.     Concurrent with the execution of the License Agreement, the parties executed a Maintenance Agreement on March 3, 2005 (the "Maintenance Agreement").

37.     The Maintenance Agreement was to apply to the "new software" being developed by SFM under the License Agreement, as that term is defined in the License Agreement.   The maintenance fee for the new software that amounted to $46,200 per year for the first three (3) years of the Maintenance Agreement.

38.     The maintenance fee was not to commence until the completion of the "Trial Period" as defined in the License Agreement, as well as the completion of training of La Rosa New York employees.  Maintenance Agreement, Section 3.

39.     In addition, under the terms of the Maintenance Agreement, SFM was required to respond to, and make diligent efforts to correct any and all failures of the new software within four (4) hours.  Id., Section 7.a.  If SFM failed to respond appropriately to errors or failures of the new software within four (4) hours, such inaction constituted a default by SFM.

40.     Under the express terms of the Maintenance Agreement, pursuant to a default by SFM, La Rosa New York was entitled to withhold maintenance fees owed until such default was cured.  Id., Section 8.

41.     Pursuant to the provisions in the Maintenance Agreement, any dispute or controversy between the parties was to be resolved through arbitration upon the AAA Rules.  Id., Section 18.

**SFM Delivers "New Software" that Contains Numerous Material Errors**
**and Problems, and Delivers the "New Software" in an Untimely Manner**

42.     Despite the terms of the License Agreement indicating that time was of the essence in terms of delivery of the new software to La Rosa New York, SFM continually delivered the various phases of the new web-based software in an untimely manner to La Rosa New York. Indeed, many of the software deliveries by SFM contained problems that required numerous workarounds, and prevented La Rosa New York from fully utilizing the limited software contained in the phase that had been delivered by SFM.  La Rosa New York timely notified SFM of all those problems.

43.    During the period from December 2004 to November 2006, La Rosa New York made various payments to SFM under the terms of the License Agreement totaling $333,250.

44.    During this same period, SFM was continuously late in providing La Rosa New York with installments of the New Software.  In addition, those New Software installments SFM did provide to La Rosa New York contained significant problems and errors, requiring notification and periods of disuse of the New Software by La Rosa New York.

45.    On or about November 19, 2004, in anticipation in anticipation of the parties' License Agreement and Maintenance Agreement, La Rosa New York paid SFM $22,500 as an initial payment for the development of the New Software.

46.    On or about December 13, 2004, in anticipation of the parties' License Agreement and Maintenance Agreement, La Rosa New York paid SFM $58,000 under the License Agreement for maintenance of the DOS/WINDOWS Old Software, and $50,250 as an initial payment for the development of the New Software.

47.    Upon information and belief, SFM failed to provide La Rosa New York with any maintenance services in 2005 for the Old Software.  Indeed, upon information and belief, SFM and Kogos indicated to La Rosa New York in late 2004/early 2005 that SFM/Kogos did not have personnel capable of maintaining the Old Software, despite the terms of the License Agreement requiring SFM to do so, and that for this reason, among others, La Rosa New York needed the New Software.

48.    Despite the express terms of the License Agreement requiring that SFM maintain the Old Software in 2005 and 2006, SFM did not properly and/or adequately maintain the Old Software properly, and La Rosa New York was required to fix any problems which arose with the Old Software during this period.

49.    In or about April 26, 2005, La Rosa New York made a payment of $26,250 pursuant to the License Agreement.

50.    In or about May 6, 2005, La Rosa New York made an additional payment to SFM of $23,750 pursuant to the License Agreement.

51.    In or about May 23, 2005, La Rosa New York made another payment to SFM of $23,750 pursuant to the License Agreement.

52.    In or about July 26, 2005, La Rosa New York made another payment of $47,500 to SFM pursuant to the License Agreement.

53.    On or About July 26, 2005, La Rosa New York made a Payment of $26,250 to SFM Pursuant to the License Agreement.

54.    On or about May 31, 2006 La Rosa New York notified SFM in writing that numerous serious problems existed with regard to the New Software that had been delivered to date, and that more than four (4) months had elapsed since La Rosa New York first made SFM aware of these problems, and that the New Software still did not function correctly.

55.    As of no later than June 1, 2006, SFM, through Kogos, acknowledged the significant, detrimental programming and installation problems regarding the New Software installments that SFM had provided to La Rosa New York.  These problems, brought to SFM's attention by written notice from La Rosa New York, precluded La Rosa New York from properly utilizing the New Software as intended and required.  Kogos and SFM also acknowledged that they had delivered the installments late, in an untimely manner, and that further changes in the present installments of the New Software need to be accomplished.

56.    In or about August 28, 2006, La Rosa New York made a payment to SFM of $10,000, for maintenance of the Old Software pursuant to Article IV, Section 4.6 of the License Agreement.

57.     In or about September 6, 2006, La Rosa New York brought to the attention of SFM, in writing, further problems with the New Software installments that had been provided to date. These problems persisted throughout September 2006, and precluded La Rosa New York from fully utilizing the new software as intended.

58.     In or about September 8, 2006, La Rosa New York made a payment of $7,500 to SFM for maintenance of the Old Software pursuant to the License Agreement.

59.     In or about September 14, 2006, La Rosa New York made a payment of $7,500 to SFM for maintenance of the Old Software pursuant to the License Agreement.

60.     In or about September 21, 2006, La Rosa New York made a payment of $5,000 to SFM for maintenance of the Old Software pursuant to the License Agreement.

61.     In or about early October 2006, La Rosa New York notified SFM of yet more problems with regard to the various installments of the New Software.  These problems were not resolved in a timely manner, and precluded La Rosa New York from utilizing the New Software as intended and required.

62.     Indeed, on October 24, 2006, Shlomo Kogos, President of SFM, acknowledged major persistent problems regarding various aspects of the New Software that SFM had delivered to La Rosa New York pursuant to the parties' License Agreement.

63.     On or about November 6, 2006, La Rosa New York made a payment to SFM under the License Agreement in the amount of $25,000.

64.     On or about November 30, 2006, Shlomo Kogos made a demand of La Rosa New York to pay him and SFM approximately $47,500 purportedly pursuant to the terms of the parties' Agreements.

65.     In the November 30, 2006 demand, Kogos admitted that as of at least November 7, 2006, the New Software was not finished, all the installments of the New Software had not been

delivered to La Rosa New York, and SFM still had work remaining to be done on the New Software.

66.    As of no earlier than November 30, 2006, all of the New Software installments had not been delivered by SFM to La Rosa New York, all of the New Software had not been placed on servers for La Rosa New York's use, La Rosa New York employees had not been trained on all the New Software, and the 90-day Trial Period for the New Software had not started.

67.    On December 4, SFM (via Kogos), indicated that there were still problems and issues with the New Software installments that SFM had delivered to La Rosa New York.

68.    On or about December 8, 2006, employees of La Rosa New York indicated to SFM that they La Rosa New York had made a decision regarding a new hosting company for the software, and that such hosting company, Studio 775, would be contacting SFM regarding installing the new and existing software program in the new hosting company's server.

69.    On December 8, 2006, Kogos of SFM, rather than responding to the decision by La Rosa New York regarding a new hosting company, made a demand to La Rosa New York, and indicated his belief that $87,500 was due SFM, and inquired as to whether he could pick up the check on that day. As of December 8, 2006, SFM had not delivered all the installments of the New Software to La Rosa New York, the New Software had not been completely debugged, and the Trial Period of 90 days had not started. Thus, under the express terms of the License Agreement, SFM was entitled, at a minimum, to withhold $19,000 of the $190,000. Indeed, La Rosa New York was entitled to a full 90-day trial period after completion of the New Software before such payment was due.

70.    In addition, as of December 8, 2006, under the terms of the License Agreement, SFM was not entitled to any of the $105,000 License Fee, since not all of the New Software had been installed to La Rosa New York's satisfaction, and the New Software had not passed testing.

71.    As of December 2006, La Rosa New York had already paid SFM approximately $245,250 pursuant the License Agreement, more than the amount actually owed.

72.    On December 9, 2006, Mr. Roberto Medina of La Rosa New York indicated to Kogos of SFM that the two should meet on the following Monday, in order to discuss issues regarding the problematic new software provided by SFM.

### **Kogos and SFM Demand Payments To Which They Are Not Entitled**

73.    On or about December 11, 2006, Kogos met personally with representatives of La Rosa New York regarding the New Software.  During this meeting, Kogos demanded that La Rosa New York pay SFM monies purportedly owed under the License Agreement and the Maintenance Agreement. Upon completion of the meeting, Kogos stated to representatives of La Rosa New York that "I know how to play dirty games.  I will put you out of business."  Kogos made such threat after informing La Rosa New York that he/SFM would shut off La Rosa New York's access to the servers hosting the New Software.

74.    On or about December 11, 2006, Kogos of SFM, communicated via e-mail with Roberto Medina, of La Rosa New York, indicating that a balance of $47,500 was due for the New Software program, in addition to $16,000 for maintenance of the existing Old Software for September through December 2006, and $40,000 for maintenance for the year 2007.  Kogos indicated that unless these amounts were paid immediately, no other work would be done on the problematic New Software that SFM had provided to La Rosa New York.   None of the software maintenance agreements between the parties require that La Rosa New York pay the maintenance fee in its entirety at the beginning of the calendar year.

75.    As not all of the New Software had been delivered, and the New Software had not passed the 90-day Trial Period, SFM was not entitled to at least the final $19,000 payment from La Rosa New York under Article IV, Section 4.2 of the License Agreement.  Furthermore, contrary to

Kogos' demands, SFM was not entitled to an upfront payment of the entire maintenance fee for the existing Old Software. Indeed, if SFM had not defaulted in the "time of the essence" terms of the License Agreement for developing and implementing the new software, La Rosa New York would not have needed the Old Software.

76.    Finally, given that the New Software had not been fully delivered by SFM, and the New Software had not passed the Trial Period and was not fully functional, and training on each computer station had not been accomplished, SFM was not entitled to any Maintenance Fee under the Maintenance Agreement. Maintenance Agreement, Sections 3 and 4.

77.    Upon information and belief, right after leaving the December 11, 2006 meeting with La Rosa New York regarding problems with the New Software, and SFM's demands for payment for the New Software and use of the Old Software, SFM and Kogos caused La Rosa New York's access to servers to be disconnected and/or interrupted. This interruption of server access to La Rosa New York by SFM and Kogos interfered with the ability of La Rosa New York to complete contractual obligations to other clients in a timely manner, as well as transfer the New Software to a new server hosting company of La Rosa New York's choice.

78.    Upon information and belief, Kogos and SFM acted in a manner to prevent La Rosa New York from accessing the servers containing La Rosa New York's business information and the New Software, knowing that La Rosa New York had contracts with clients, and that La Rosa New York would be impeded from carrying out the terms of those contracts in a timely manner as a result of SFM's and Kogos' conduct.

79.    Upon information and belief, Kogos has admitted interrupting La Rosa New York's access to the servers in mid-December, and Kogos has admitted directing the server hosting company to change the time for updating of certain programs on the servers to business hours, rather than at night as done previously. Upon information and belief, Kogos and SFM changed the

time for updating certain programs in order to wrongfully inhibit the ability of La Rosa New York to properly and timely carry out the terms of its contracts with various moving customers.

80.    On or about December 11, 2006, counsel for La Rosa New York sent Kogos and SFM a letter, via certified mail, regarding Kogos' threats to terminate La Rosa New York's access to the New Software and/or the computer servers hosting the New Software. In this December 11th letter, counsel for La Rosa New York reminded Kogos and SFM of their obligations under the License Agreement to engage in good faith negotiations regarding any disputes, and the requirement for binding arbitration pursuant to AAA Rules if such good faith negotiations failed to resolve any dispute. In this letter, counsel for La Rosa New York also reiterated to Kogos and/or SFM that, under the License Agreement and the Maintenance Agreement, neither had a contractual right to terminate La Rosa New York's use of the Old Software or even the New Software, or to tortiously interfere with La Rosa New York's other contractual obligations.

81.    On or about December 12, 2006, representatives of La Rosa New York held a telephone discussion with Kogos of SFM, regarding the extensive problems with the new software, as well as issues regarding payment for the software pursuant to the terms of the Agreement. Subsequent to this discussion, representatives and employees of La Rosa New York noticed that they were unable to access the servers and/or the software for the rest of the day, at great expense and interruption to La Rosa New York's business.

82.    On or about December 13, 2006 Kogos of SFM made a demand via e-mail for additional monies to which SFM was not due for both the New Software and the Old Software.

83.    In this most recent demand December 13, 2006 communication, Kogos also threatened that La Rosa New York would have to pay SFM $116,000 the next year for using the Old Software (DOS/Windows-based software), unless La Rosa New York paid SFM immediately. Kogos made this demand despite the specific provision in Article IV, Section 4.6 and Article XII,

Section 12.2 of the License Agreement that required SFM to allow La Rosa New York to continue to use the Old Software (DOS/Windows program), and required that SFM provide maintenance for such Old Software.

84.    In conjunction with these threats, Kogos threatened litigation in federal court. This despite the specific provisions in the License Agreement that provide for written notice, followed by good faith negotiations, and requiring binding arbitration should such good faith negotiations be unsuccessful in resolving the dispute. License Agreement, Article XIII, Section 13.11, 13.12.

**Kogos and SFM Intentionally Interfere With La Rosa New York's Operation Of Its Business**

85.    On or about December 14, 2006 Roberto Medina of La Rosa New York contacted Kogos and SFM to inform them that La Rosa New York and/or La Rosa New York's new server hosting company would be contacting SFM in the next several days regarding changing server hosting companies. Kogos and SFM acknowledged this request, but demanded that Mr. Medina be on the phone call.

86.    On or about December 22, 2006, Mr. Philip Zukowsky, purported counsel for SFM, contacted counsel for La Rosa New York and made demands on behalf of SFM regarding payment for the New Software and Old Software. Upon information and belief, Mr. Zukowsky had neither the License Agreement nor the 1999 Software Agreement, when he made these payment demands on behalf of SFM and Kogos. Mr. Zukowsky indicated in his communication that if La Rosa New York did not pay SFM by January 1, 2007, additional fees would be due from La Rosa New York.

87.    On or about December 27, 2006 Mr. Zukowsky again contacted counsel for La Rosa New York. During this communication Mr. Zukowsky informed La Rosa New York of the potential loss of information still on the servers in the Ohio server company's systems, if payment was not made to the Ohio server company. That same day, Mr. Zukowsky represented to counsel for La Rosa New York that La Rosa New York had all the information necessary to use the New

Software in La Rosa New York's operations. Upon information and belief, the representations made by Mr. Zukowsky due to statements from his client, SFM, on December 27, 2006 to counsel for La Rosa New York were false and misleading, as SFM and the Ohio server hosting company were still taking actions that precluded La Rosa New York from accessing the New Software or its information on these servers.

88.    On December 28, 2006 counsel for La Rosa New York against requested of Mr. Zukowsky that his client, SFM, provide the information necessary for La Rosa New York to access its software.

89.    Furthermore, during various communications with Kogos, and SFM, La Rosa New York employees were informed by Kogos that if La Rosa New York did not pay certain monies purportedly owed to SFM by La Rosa New York, that Kogos would provide the New Software to La Rosa New York's competitors, including the proprietary business information contained on that software, as it pertained to La Rosa New York. Such an act by SFM/Kogos would be a clear violation of the terms of the parties' License Agreement regarding non-disclosure.

## AS AND FOR A FIRST CAUSE OF ACTION
### (FOR BREACH OF THE LICENSE AGREEMENT)

90.    Counterclaim Plaintiffs repeat and reallege the allegations contained in paragraphs "1" through "89" of the Counterclaims, as if fully set forth herein at length.

91.    On or about March 3, 2005, La Rosa New York and SFM entered into a License Agreement and a Maintenance Agreement regarding the installation and delivery of the New Software by SFM to La Rosa New York.

92.    Pursuant to the terms of the License Agreement, SFM was to provide La Rosa New York with a version of SFM's web-based New Software in phases.

93.    Under the terms of the Agreement, SFM was to deliver the New Software in phases pursuant to the Plan of Development.

26

94. Under the terms of the Agreement, La Rosa New York was to pay SFM a development fee of $190,000 for the development and delivery of the New Software pursuant to the License Agreement.

95. Each of La Rosa New York's installment payments was to be due upon successful completion of each respective phase of the Development Plan, and after acceptance by La Rosa New York of each installment of the New Software.

96. Pursuant to the Agreement, La Rosa New York was not to be deemed in default of the Agreement if, in good faith, it disputed whether or not a particular phase of the New Software had been successfully completed, and withheld payment from SFM as a result.

97. Under the terms of the Agreement, La Rosa New York was not required to pay SFM the final 10% of the Development Fee until La Rosa New York had successfully used the new software for a period of 90 days without failure (the "Trial Period").

98. Upon information and belief, SFM has never provided La Rosa New York with a complete and final version of the New Software, as promised and agreed to by SFM under the License Agreement.

99. Upon information and belief, SFM has never delivered to La Rosa New York a final and complete version of the New Software that has successfully run for a period of 90 days without failure (the "Trial Period").

100. Furthermore, upon information and belief, SFM has never delivered a final invoice for payment due.

101. Upon information and belief, La Rosa New York has completed or satisfied all of its requirements under the parties' License Agreement, including paying SFM $245,250.

102. Upon information and SFM has precluded La Rosa New York from accessing or utilizing any portion of the incomplete installments of the New Software, as of December 2006.

103.    As a result of SFM's breach of the License Agreement, La Rosa New York has suffered damages, including, but not limited to, receiving repayment in full of the $245,250 which La Rosa New York has paid SFM without receiving a complete, fully operational, debugged New Software program, or training for such New Software as required of SFM pursuant to the License Agreement.

## AS AND FOR A SECOND CAUSE OF ACTION
### (FOR BREACH OF THE LICENSE AGREEMENT)

104.    Counterclaim Plaintiffs repeat and reallege the allegations contained in paragraphs "1" through "103" of the Counterclaims, as if fully set forth herein at length.

105.    On or about March 3, 2005, La Rosa New York and SFM entered into a License Agreement and a Maintenance Agreement regarding the installation and delivery of the New Software by SFM to La Rosa New York.

106.    Pursuant to the terms of the License Agreement, SFM was to provide La Rosa New York with a version of SFM's web-based New Software in phases.

107.    Under the terms of the License Agreement, SFM was to maintain the Old Software and allow La Rosa New York to use such Old Software, in exchange for payment of $58,000.

108.    Pursuant to the Agreement, La Rosa New York was not to be deemed in default of the Agreement if, in good faith, it disputed whether or not a particular phase of the New Software had been successfully completed, and withheld payment from SFM as a result.

109.    Upon information and belief, SFM never provided La Rosa New York sufficient maintenance service in 2005 or 2006 for the Old Software, as promised and agreed to by SFM under the License Agreement.

110.    Upon information and belief, La Rosa New York has completed or satisfied all of its requirements under the parties' License Agreement, including paying SFM $88,000.

111.    As a result of SFM's breach of the License Agreement, La Rosa New York has suffered damages, including, but not limited to, $88,000 which La Rosa New York has paid SFM without receiving proper or complete Old Software maintenance in 2005 or 2006, as required of SFM pursuant to the License Agreement.

## AS AND FOR A THIRD CAUSE OF ACTION AS AGAINST SFM
### (FOR UNJUST ENRICHMENT)

112.    Counterclaim Plaintiffs repeat and reallege the allegations contained in paragraphs "1" through "111" of the Counterclaims, as if fully set forth herein.

113.    On or about March 3, 2005, La Rosa New York and SFM entered into a License Agreement and a Maintenance Agreement.

114.    Under the terms of the License Agreement, SFM was to provide La Rosa New York with a new web-based software package that was fully functional.  SFM was to grant La Rosa New York an exclusive license to use the software during the "Trial Period," and for seven (7) years thereafter.

115.    The License Period was not to begin until the New Software was installed.

116.    As defined by the License Agreement, "New Software" means source codes and/or executable objective codes for "all" programs, subroutines, diagnostic routines, computer software, or special software required to utilize the New Software.

117.    La Rosa New York was not required to pay SFM a license fee under the License Agreement until the New Software was fully delivered and properly running under the License Agreement.

118.    Upon information and belief, SFM has not provided La Rosa New York with all source code and/or executable codes for all computer programs, subroutines, diagnostic routines, control software, or special software required to run the new software without error as required under the License Agreement.

119.    Upon information and belief, SFM has precluded La Rosa New York from accessing the unfinished New Software program.

120.    La Rosa New York has paid SFM $245,250, in good faith, for a New Software under the License Agreement.

121.    La Rosa New York has not received value from, and/or the value promised by SFM, in the form of a fully operational, debugged and functioning New Software program for which La Rosa New York has already paid $245,250 to SFM.

122.    La Rosa New York has also paid SFM $88,000 under the License Agreement for maintenance by SFM on the Old Software which SFM is no longer maintaining, and did not properly maintain the Old Software in 2005 or 2006.

123.    Upon information and belief, SFM did not provide actual services or value for receipt of the $88,000 payment made by La Rosa New York.

124.    As a result of SFM's failures, and acceptance of payment from La Rosa New York, SFM has been unjustly enriched in the sum of at least $333,250.

## AND FOR A FOURTH CAUSE OF ACTION AS AGAINST SFM
## (FOR BREACH OF THE LICENSE AGREEMENT)

125.    Counterclaim Plaintiffs repeat and reallege the allegations contained in paragraphs "1" through "124" of the Counterclaims, as if fully set forth herein at length.

126.    On or about March 3, 2005, SFM and La Rosa New York entered into a License Agreement.

127.    Pursuant to the terms of the License Agreement, if SFM materially breached or defaulted under the provisions of the License Agreement, SFM was required to return all monies paid to SFM by La Rosa New York under the License Agreement.

128.    In addition, under the terms of the License Agreement, SFM was required to allow La Rosa New York the right to continue use of the Old Software, and SFM was required to provide maintenance services for the Old Software under the 1999 Software Agreement.

129.    Upon information and belief, La Rosa New York has completed or satisfied all of its requirements under the parties' License Agreement.

130.    Upon information and belief, SFM has breached the License Agreement by attempting to and/or precluding La Rosa New York from fully using the Old Software, and all aspects of the Old Software as required under the License Agreement.

131.    Upon information and belief, SFM has breached the License Agreement by failing to conduct proper or adequate maintenance of the Old Software pursuant to the terms of the License Agreement.

132.    As a result of SFM's breach of the License Agreement, La Rosa New York has suffered damages, including, but not limited to $333,250 paid to SFM for an incomplete New Software program and problems resulting from lack of maintenance on the Old Software.

**WHEREFORE,** Counterclaim Plaintiffs demand that the Court order the following relief in their favor against Counterclaim Defendant, and demand a jury trial on all triable issues:

A.    On the First Cause of Action for monetary damages in an amount to be determined at trial, but in any event in excess of $245,250, plus interest and recovery of the costs, disbursements and attorneys' fees incurred by Counterclaim Plaintiffs in this action; and

B.    On the Second Cause of Action  for monetary damages in an amount to be determined at trial, but in any event in excess of $88,000, plus interest and recovery of  the costs, disbursements and attorneys' fees incurred by Counterclaim Plaintiffs in this action; and

C.    On the Third Cause of Action for monetary damages in an amount to be determined at trial, but in any event in excess of $333,250, plus interest and recovery of the costs, disbursements and attorneys' fees incurred by Counterclaim Plaintiffs in this action; and

D.    On the Fourth Cause of Action for monetary damages in an amount to be determined at trial, but in any event in excess of $333,250, plus interest and recovery of the costs, disbursements and attorneys' fees incurred by Counterclaim Plaintiffs in this action; and

E    For such other relief as the Court may deem just and proper.

Dated: White Plains, New York
February 20, 2008

Yours, etc.

s/ Kevin J. Harrington
By:_____
Kevin J. Harrington (KH-5027)
John T. A. Rosenthal (JR-4819)
HARRINGTON, OCKO & MONK, LLP
*Attorneys for Defendants/Counterclaim Plaintiffs LA ROSA NEW YORK DEL MONTE EXPRESS, INC. and LA ROSA NEW YORK DEL MONTE EXPRESS (CHICAGO), LLC*
81 Main Street, Suite 215
White Plains, New York 10601
Telephone:  (914) 686-4800
Facsimile:   (914) 686-4824

**TO:**   Francis J. Leyhane, III, Esq.
LEYHANE & ASSOCIATES, LTD.
*Attorneys for Plaintiff/Counterclaim Defendant SOFTWARE FOR MOVING, INC.*
205 West Randolph Street
Suite 1320
Chicago, IL 60606