UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------x
```
SOFTWARE FOR MOVING, INC., a New
York Corporation,

      **Plaintiff,**

    v.

LA ROSA NEW YORK DEL MONTE
EXPRESS, INC., a New York Corporation, and
LA ROSA NEW YORK DEL MONTE
EXPRESS (CHICAGO), LLC, an Illinois Limited
Liability Company,

      **Defendants.**
```
-------------------------------------------------------------x
```

**CASE NUMBER:  08-cv-00986 (JGK)**

**Assigned Judge: John Koeltl**

**Designated**
**Magistrate Judge: Douglas Eaton**

**ECF CASE**

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR RECONSIDERATION AND RELIEF FROM THE STAY OF**
**ARBITRATION CONTAINED IN DECEMBER 7, 2007 ORDER**

---

KEVIN HARRINGTON (KH-5027)
JOHN T.A. ROSENTHAL (JR-4819)
HARRINGTON, OCKO & MONK, LLP
81 Main Street, Suite 215
White Plains, NY  10601
Tel: (914) 686-4800   Fax: (914) 686-4824
KHarrington@homlegal.com
JRosenthal@homlegal.com

*Attorneys for Defendants, La Rosa New York*
*Del Monte Express, Inc. and La Rosa New York*
*Del Monte Express (Chicago), LLC*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES……………………. .........................................................iii

PRELIMINARY STATEMENT…………………………...............................................1

FACTUAL BACKGROUND…………………… .......................................................4

    SFM and La Rosa New York Enter into Two Written Agreements
    Containing Arbitration Provisions………………. .................................................5

    SFM Breaches the 2005 Agreements…………. ..................................................6

    La Rosa New York Initiates a Demand for Arbitration Against SFM…...........................7

    SFM Files a Forum-Shopping Complaint in a Distant, Inconvenient
    Venue……………….. .............................................................................8

    SFM Files Yet Another Motion to Stay the New York Arbitration
    Before a Third Tribunal………………..............................................................10

    SFM Has a Hearing on the Merits Regarding La Rosa New York's
    Cross-Motion to Compel Arbitration………….....................................................11

    Judge Gotschall Issues an Order Based on Inaccurate, Undisclosed
    Information………………...........................................................................12

ARGUMENT………...................................................................................14

I.    DEFENDANTS ARE ENTITLED TO RELIEF FROM JUDGE
    GOTSCHALL'S ORDER STAYING THE NEW YORK
    ARBITRATION PENDING A HEARING ON THE ISSUE OF
    ARBITRABILITY…………...........................................................................14

    A.    Judge Feinman's Order Estops SFM from Asserting it has
        Not Agreed to Arbitrate this Dispute………….....................................................15

    B.    La Rosa New York is Entitled to Relief from Judge Gotschall's
        Order Because SFM is Precluded from Arguing the Issue of
        Arbitrability Under *Rooker Feldman*…………......................................................18

    C.    Defendants are Entitled to Relief from Judge Gotschall's Order
        Due to Plaintiff's Willful Misconduct………………................................................20

**Page**

    D.     Defendants are Entitled to Reversal of Judge Gotschall's Order
            Because it is no Longer Equitable that the Order Should have
            Prospective Application................ .................................................................. 23

CONCLUSION.............. ............................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**

*Allstate Ins. Co. v. Khait*, 227 A.D.2d 551, 643 N.Y.S.2d 163 (2nd Dept. 1996)................................23

*Anderson v. Cryovac, Inc.*, 862 F.2d 910 (1st Cir. 1988) ................................20

*Catskill Development, LLC v. Park Place Entertainment Corp.*, 286 F.Supp.2d 309
   (S.D.N.Y. 2003) ................................20

*Cecala v. Moore*, 982 F.Supp. 609 (N.D.Ill. 1997)................................21

*Clarendon Nat. Ins. Co. v. TIG Reinsurance Co.*, 183 F.R.D. 112 (S.D.N.Y. 1998) ................15

*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)……...................18

*Enrico v. Russo, Garguilo & Fox*, 1999 WL 1288946 (E.D.N.Y. Oct. 22, 1999)................15

*Ercoli v. Empire Professional Soccer LLC*, 11 Misc.3d 1065(A), 2005 WL 3877599
   (N.Y. Sup.Ct. Monroe Co. Sept. 30, 2005) ................................23

*Favara, Skahan, Tabaczyk, Ltd. v. Ewing*, 1992 WL 80659 (S.D.N.Y. April 9, 1992)................23

*Garden City Center Incorporated v. Incorporated Village of Garden City*, 1999 WL
   642784 (2nd Cir. Aug. 20, 1999) ................................16

*Garten v. Kurth*, 265 F.3d 136 (2nd Cir. 2001) ................................21

*God's Battalion v. Miele Assoc.*, 85 N.E.2d 1265, 16 N.Y.3d 371 (N.Y. 2006) ................22

*Hanney v. Taylor*, 2001 WL 1691986 (N.Y. Sup.Ct. Oct. 26, 2001)................................23

*Hoblock v. Albany County Board of Elections*, 422 F.3d 77 (2nd Cir. 2005)................................19

*JAT Yugoslav Airlines v. Agencija Rudenjak, Inc.*, 1995 WL 146229
   (S.D.N.Y. March 31, 1995)................................15

*Johnson v. De Grandy*, 512 U.S. 997 (1994) ................................18

*Kidder, Peabody & Co., Inc. v. Marvin*, 161 Misc.2d 12, 613 N.Y.S.2d 1011
   (N.Y. Sup.Ct. March 28, 1994) ................................23

*Kotlicky v. U.S. Fidelity & Guar. Co.*, 817 F.2d 6 (2nd Cir. 1987)................................14

**Page**

*Kramer v. Gates*, 481 F.3d 788 (D.D.C. 2007) ............................................................. 15

*LeBlanc v. Cleveland,* 248 F.3d 95 (2nd Cir. 2001) ..................................................... 15

*Lomnicki v. Cardinal McCloskey Services*, 2007 WL 2176059 (S.D.N.Y. July 26, 2007) .............. 19

*Mackenzie v. Donovan*, 375 F.Supp.2d 312 (S.D.N.Y. 2005) ..................................... 18

*Marrero Pichardo v. Ashcroft*, 374 F.3d 46 (2nd Cir. 2004) ..................................... 15

*Maxit Designs, Inc. v. Coville, Inc.*, 2006 WL 2734366 (E.D. Cal. Sept. 25, 2006) ........................ 22

*Mitchell v. Keane*, 974 F.Supp. 332 (S.D.N.Y. 1997)........................................... 15, 16

*Mobius Management Systems, Inc. v. Technologic Software Concepts, Inc.*,
   2002 WL 31106409 (S.D.N.Y. Sept. 20, 2002) .......................................................... 23

*Monaghan v. SZ S33 Associates, LP*, 1992 WL 135821 (S.D.N.Y. June 1, 1992) ........................... 20

*Morfopoulos v. Lundquist*, 191 A.D.2d 197, 594 N.Y.S.2d 234 (1st Dept. 1993) ..................... 23

*National Cash Register Co. v. Wilson*, 8 N.Y.2d 377 (N.Y. 1960)........................................ 23

*Raheim v. New York City Health and Hospitals Corp.*, 2007 WL 2363010
   (E.D.N.Y. Aug. 14, 2007) ................................................................................... 23-24

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) ...................................................... 18, 24

*Rudolph & Beer, LP v. Roberts*, 260 A.D.2d 274, 688 N.Y.S.2d 553
   (1st Dept. 1999)....................................................................................................... 22

*S.E.C. v. Lewis*, 423 F.Supp.2d 337 (S.D.N.Y. 2006)....................................................... 23

*Shalik v. Kalikow*, 15 Misc.3d 1106(A), 836 N.Y.S.2d 503, 2007 WL 841005
   (N.Y. Sup.Ct. March 20, 2007) ...................................................................................... 21

*Trakansook v. Astoria Federal Sav. and Loan Ass'n*, 2007 WL 1160433
   (E.D.N.Y. Apr. 18, 2007)................................................................................................ 19

*Tyler v. City of New York*, 2006 WL 1329753 (E.D.N.Y. May 16, 2006)…................................. 21

*U.S. v. Cirami*, 563 F.2d 26 (2nd Cir. 1977)…………. ....................................................... 15, 18

*Zhang v. Wang*, 2006 WL 2927173 (E.D.N.Y. Oct. 12, 2006)........................................... 21

**Page**

**Statutes and Other Authorities**

CPLR §7503(c) ................................................................................................22
Fed.R.Civ.P. 60(b).................................................1, 3, 4, 13, 14, 15, 17, 19, 20, 23
9 U.S.C. §4 ...................................................................................................9

Defendants, LA ROSA NEW YORK DEL MONTE EXPRESS, INC. ("La Rosa New York") and LA ROSA NEW YORK DEL MONTE EXPRESS (CHICAGO), LLC ("La Rosa Chicago", together with La Rosa New York, "Defendants"), by and through their attorneys, Harrington, Ocko & Monk, LLP, respectfully submit the present Memorandum of Law in support of their request for relief from the December 7, 2007 Order of the Hon. Joan B. Gotschall pursuant to Federal Rule of Civil Procedure 60(b) as a result of Judge Feinman's December 5, 2007 Order that has already decided the issue of arbitrability of the parties' dispute and directing them to arbitrate this matter, Plaintiff's willful misconduct in failing to disclose to the Court material information that precludes application of the Federal Arbitration Act ("FAA") to this dispute, and in the interests of justice because it is not equitable to give Judge Gotschall's Order prospective application due to Judge Feinman's earlier-issued Order.

## PRELIMINARY STATEMENT

Defendant La Rosa New York entered into not one, but two (2) written agreements, with Plaintiff, Software for Moving, Inc. ("Plaintiff" or "SFM"), in which SFM agreed to develop, deliver and maintain new Moving Manager Software for La Rosa New York. The two (2) written agreements entered into by SFM and La Rosa New York contained extensive arbitration provisions requiring the parties to arbitrate any disputes arising out of or relating to the written agreements. La Rosa New York then paid SFM in excess of $245,000 for the new software. SFM never delivered fully functioning software in a timely manner.

On February 12, 2007, La Rosa New York brought a Demand for Arbitration against SFM before the American Arbitration Association ("AAA") pursuant to the arbitration provisions in the written agreements. La Rosa New York and SFM then engaged in the Arbitration for 1-1/2 months.

SFM then brought this forum-shopping complaint in April 2007 in the Northern District of Illinois alleging copyright violations and breaches of contract against Defendant in its original

1

Complaint; Plaintiff did not notify the District Court of the pending New York Arbitration, and did not immediately move for a stay of the New York Arbitration.

Defendants then moved twice to dismiss this action for lack of subject matter jurisdiction, or in the alternative, to stay this action pending arbitration or transfer this action to the Southern District of New York; all of the conduct at issue took place in New York City (the Bronx), and La Rosa New York and SFM are both New York corporations.  In June 2007, SFM belatedly cross-moved to stay the New York Arbitration.

While these motions were pending before Judge Gotschall, in September 2007, SFM brought a petition before New York Supreme Court also requesting a stay of the New York Arbitration.  In its petition, SFM disclosed for the first time that its only place of business is in New York City.  SFM made this self-serving disclosure despite its repeated refusal to disclose this same information during the New York Arbitration and in this Action.

La Rosa New York then cross-moved before Judge Feinman to compel SFM to arbitrate this dispute in the ongoing New York Arbitration.

On December 5, 2007, Judge Feinman issued an order granting La Rosa New York's cross-motion to compel arbitration, denying SFM's motion to stay the New York Arbitration procedurally and on the merits, and directing the parties to arbitrate this dispute.

On December 7, 2007 Judge Gotschall then issued her Order.  This Order granted Defendants' motion to transfer this action to the Southern District of New York, as two of the parties are New York corporations, and all of the conduct at issue took place in New York.  Judge Gotschall also granted Plaintiff's Motion to stay the New York Arbitration between the parties pending a hearing on the issue of arbitrability pursuant to the Federal Arbitration Act.  Judge Gotschall was not aware that Judge Feinman had already ruled on this issue, and was not aware that this dispute does not impact interstate commerce.

Defendants now move this Court to reconsider, and vacate Judge Gotschall's December 7, 2007 Order pursuant to Federal Rules of Civil Procedure 60(b). Under the dictates of Rule 60(b), this Court should reconsider, and vacate that aspect of Judge Gotschall's December 7, 2007 Order staying the New York Arbitration between these parties as Judge Feinman (of the Supreme Court of New York) has already decided the issue of arbitrability after a full and fair hearing on that issue held before him on December 5, 2007. Judge Feinman issued his December 5, 2007 Order directing La Rosa New York and SFM to arbitrate their dispute as a result of La Rosa New York's cross-motion to compel arbitration in that action. The doctrine of collateral estoppel and the *Rooker Feldman* doctrine preclude SFM from re-litigating the issue of the arbitrability of this dispute in a hearing before this Court as a result of Judge Feinman's December 5, 2007 Order.

Defendants are also entitled to have the Court reconsider and vacate Judge Gotschall's Order staying the New York Arbitration in light of SFM's willful failure to disclose to the Court and La Rosa that SFM is not only a New York corporation, SFM's only place of business is also in New York City. Given the fact that SFM is a New York corporation with its only place of business in New York City, La Rosa New York is also a New York corporation with its principal place of business in New York City (the Bronx), the Agreements at issue were executed in New York City, and the software at issue was developed in, and for use in New York City, the dispute between these parties does not impact interstate commerce. Because this dispute impacts only intrastate commerce, the FAA cannot be a basis Judge Gotschall's Order staying the New York Arbitration, and that aspect of the Order should be vacated.

Lastly, it would be inequitable for the Court to apply Judge Gotschall's Order prospectively to stay the New York Arbitration and require a hearing between the parties on the issue of arbitrability under the FAA. SFM has already had a hearing on this issue before Judge Feinman,

3

and lost on that issue, both procedurally and on the merits. No further hearing is required on that issue.

Furthermore, as described in detail below, given the failure of SFM to properly disclose material information about its place of business to the Court and La Rosa New York, Judge Feinman's Order directing the parties to arbitrate this dispute, and the applicability of the doctrine of collateral estoppel and the *Rooker Feldman* doctrine to this Court's inevitable review of Judge Feinman's Order, the Court should not prospectively apply Judge Gotschall's Order staying the New York Arbitration. The Court should vacate the Order directing a hearing on the issue or arbitrability, and direct the parties to arbitrate.

For these reasons and those more fully described below, this Court should reconsider Judge Gotschall's Order in light of Judge Feinman's December 5, 2007 Order, and SFM's knowing failure to disclose material information to the Court and to Defendants, and the Court should issue an Order under Rule 60(b) vacating Judge Gotschall's December 7, 2007 Order staying the New York Arbitration, and vacating Judge Gotschall's Order directing the parties to conduct a hearing on the issue of arbitrability.

## **FACTUAL BACKGROUND**

The origin of the dispute between the parties centers around two agreements entered into by La Rosa New York and SFM, in which SFM agreed to develop and maintain a web-based version of SFM's Moving Manager Software for use by La Rosa New York. Declaration of Kevin J. Harrington ("Harrington Dec."), at ¶¶10-20. In or about November and/or December 2004, La Rosa entered into discussions with SFM to engage SFM to provide La Rosa with a web-based version of SFM's Moving Manager Software. Previously, in 1999, La Rosa New York and a company by the name of Safeguard Computer Services, Inc. ("Safeguard") had entered into a written software agreement in which Safeguard agreed to provide La Rosa with a Windows/DOS-

4

based version of the Moving Manager Software. Harrington Dec., at ¶11. Shlomo Kogos, now SFM's President, was apparently the President of Safeguard at the time La Rosa New York and Safeguard entered into the 1999 written agreement between those parties. At the time of the 1999 agreement, both of the parties were New York corporations, and the work took place in New York. Harrington Dec., at ¶¶10-11.

### SFM and La Rosa New York Enter into Two Written Agreements Containing Arbitration Provisions

In March 2005, La Rosa New York and SFM entered into not one, but two, agreements in which SFM agreed to develop and maintain a web-based version of the Moving Manager Software for La Rosa New York. In exchange for SFM developing and maintaining the new software, La Rosa New York agreed to pay SFM $295,000. Harrington Dec., at ¶¶10-20. Pursuant to these two written agreements, La Rosa New York was not required to make installment payments to SFM if there were disputed invoices or disputes about whether a particular phase of software had been successfully developed, completed and delivered. Harrington Dec., at ¶¶13-16. In addition, La Rosa New York was not required to pay SFM the final 10% of the development fee (approximately $19,000) until all deliverables had been provided to La Rosa by SFM, and La Rosa New York was able to utilize the new software successfully for a period of ninety (90) days without failure; this period is defined in the 2005 Software Agreement as the trial period. Harrington Dec., at ¶¶13-14.

Under the terms of the 2005 Software Agreement, SFM was required to arbitrate any and all disputes with La Rosa New York "arising out of, relating to, or in conjunction with the interpretation, validity, construction, performance, breach or termination" of the 2005 Software Agreement. Harrington Dec., at ¶17. The 2005 Maintenance Agreement contained almost exactly the same language. *Id.*, at ¶¶18-26.

## **SFM Breaches the 2005 Agreements**

Between March 2005 and November 2006, SFM attempted to create and provide La Rosa with a web-based version of the Moving Manager Software.  During that period of development, SFM's President, Shlomo Kogos, routinely spent 3 to 5 hours per day in La Rosa's New York offices in the Bronx, facilitating the implementation and integration of the new software into La Rosa New York's daily basis and La Rosa New York's computer systems.  Harrington Dec., at ¶¶10, 21-26.  Despite SFM's work on the web-based version of the Moving Manager Software, problems continually plagued the implementation and use of the software by La Rosa New York.  Harrington Dec., at ¶¶21-26.

Pursuant to the terms of the 2005 Agreements, La Rosa New York paid SFM some $245,250 for development and maintenance of the new software, as well as maintenance of the old 1999 software; under the terms of the parties' 2005 Agreements, La Rosa New York was entitled to utilize the old 1999 Windows/DOS-based version of Moving Manager until such time as the new web-based version of the software was up and running.  Harrington Dec., at ¶¶15-16.   La Rosa New York was also entitled to use the old software if SFM breached the 2005 Software Agreement, of it that Agreement was terminated by either party.  Harrington Dec., at ¶¶15-16.

Despite repeated requests by La Rosa New York to complete the new software and have it fully functional, SFM was never able to deliver on all the terms of the 2005 Agreements.  Although SFM failed to provide La Rosa New York with fully functional software, SFM, through its President, Shlomo Kogos, began demanding additional monies from La Rosa New York.  Harrington Dec., at ¶¶21-26.  La Rosa New York informed SFM that SFM was not entitled to additional payments until such time as the web-based version of the Moving Manager Software was fully operational without failure for the entire 90-day Trial Period pursuant to the terms of the 2005 Software Agreement.  Harrington Dec., at ¶¶21-26.  SFM reacted to La Rosa New York's refusal to

pay monies not owed by engaging in conduct which precluded La Rosa New York from accessing its software during business hours.  Harrington Dec., at ¶¶21-26.

## La Rosa New York Initiates a Demand for Arbitration Against SFM

On February 12, 2007, La Rosa initiated a Demand for Arbitration against SFM by serving SFM and its counsel, Philip Zukowsky, with a Demand for Arbitration, and filing such Demand with the AAA.  Harrington Dec., at ¶27.  Subsequently, the parties, through their respective lawyers, engaged in multiple communications with the AAA regarding La Rosa New York's Demand for Arbitration.  Harrington Dec., at ¶¶27-31.  In these communications, SFM through counsel, asserted for the first time that <u>every</u> signature on the 2005 Agreements, including the signatures on the Addendum to those Agreements, were forgeries and not the signature of SFM's President, Mr. Kogos.  Harrington Dec., at ¶¶27-31.  SFM later asserted a different position in this Action, claiming the signatures on the Addendums are that of Kogos.

While SFM argued to the AAA that all of the signatures of Mr. Kogos on the 2005 Agreements were forgeries, SFM simultaneously requested that the AAA apply the AAA's Optional Rules for Emergency Measures of Protection to the issue of arbitrability.  By so doing, SFM essentially consented and acknowledging that the Arbitrator, in the first instance, was authorized to rule on his or her own jurisdiction and the issue of arbitrability regarding this dispute.  Harrington Dec., at ¶¶32-33.  As La Rosa New York did not agree to the application of these rules for the purpose requested, the AAA denied SFM's request to apply these rules, and informed SFM that the Arbitration would proceed forward.  Harrington Dec., at ¶¶32-33.

SFM submitted an Objection to Jurisdiction on Arbitration on March 16, 2007.  Subsequently, the AAA issued the parties a letter adopting La Rosa New York's position on the issue of whether the AAA had jurisdiction over this dispute, and informing SFM that the Arbitration would go forward unless there was a court-ordered stay.  Harrington Dec., at ¶¶34-36.  SFM made

no timely application for a stay of the Arbitration before a court of competent jurisdiction. Harrington Dec., at ¶¶34-36.

During this period (and into the present), counsel for La Rosa New York repeatedly requested that SFM disclose its business address and the address of its President, Shlomo Kogos. Counsel for La Rosa New York made such requests in the Arbitration, in the subsequent Federal Action, and also in the New York Action.   SFM and Shlomo Kogos have refused to produce this information.   Harrington Dec., at ¶39.

### SFM Files a Forum-Shopping Complaint in a Distant, Inconvenient Venue

On April 3, 2007, Plaintiff SFM filed a forum-shopping Complaint in the Northern District of Illinois (the "Federal Action"), despite being engaged for almost two (2) months in a pending New York Arbitration.   Harrington Dec., at ¶37.   In its original Complaint, Plaintiff conveniently failed to mention to the Federal Court that there was an Arbitration pending, and failed to move for a stay of the New York Arbitration.   Harrington Dec., at ¶37.

La Rosa New York subsequently moved twice to dismiss Plaintiff's Complaint and Amended Complaint for lack of subject matter jurisdiction, or in the alternative, to stay the action pending the New York Arbitration, or to transfer the action to the Southern District of New York; the parties are New York corporations, and all of the conduct at issue took place in New York City. In making the motion to stay the Federal Action under the FAA, Defendants (and the Court) were under the mistaken impression that SFM was a New York corporation, with its principal place of business located <u>outside</u> the State of New York.   Harrington Dec., at ¶¶43-45.   Defendants made this assumption because SFM repeatedly refused to disclose its business address or the address of its President (Shlomo Kogos), despite requests for this information.   Harrington Dec., at ¶¶43-45.

Between the date of La Rosa New York's filing of its first motion to dismiss SFM's original Complaint, and La Rosa New York's motion to dismiss SFM's Amended Complaint, the New York

Arbitration was proceeding forward.  Harrington Dec., at ¶¶40-42.  As a result of SFM's numerous, willful discovery defaults during the course of the Arbitration, Arbitrator Mandel issued a Scheduling Order on July 20, 2007, requiring SFM to produce information responsive to La Rosa's requests.  Arbitrator Mandel warned SFM and Mr. Kogos that if they failed to comply with this Order, the Arbitrator would take appropriate action.

On August 6, 2007, SFM served its Reply Brief in opposition to La Rosa New York's motion to stay the Federal Action, and in support of SFM's motion to stay the New York Arbitration under the FAA.  In its submission, SFM again contended that there was no agreement to arbitrate between the parties and that certain of the signatures on the 2005 Agreements were forgeries.  However, SFM again acknowledged that its causes of action in the Amended Complaint for breach of contract under the New York law were based upon the signatures of Shlomo Kogos to the two Addendum to the 2005 Agreements; signatures Mr. Kogos originally claimed were forgeries in the New York Arbitration in order to attempt to evade arbitrating this dispute with La Rosa New York.  SFM ascribed its contrary positions to a mere "factual inconsistency".

In its motion for stay of the New York Arbitration, SFM argued that the issue of arbitrability was for the Federal Court to determine under §4 of the FAA.  SFM asserted that under the FAA a hearing by the Court was required to determine, in the first instance, whether or not there existed a written agreement to arbitrate between SFM and La Rosa New York.  SFM conveniently failed to inform Judge Gotschall that SFM's principal and only place of business is in New York.

While SFM was moving to stay the New York Arbitration before the Federal Court, SFM was also moving before Arbitrator Mandel to stay the Arbitration; the same Arbitrator SFM had originally argued had no jurisdiction over this matter.  Harrington Dec., at ¶¶46-50.  La Rosa New York filed an opposition to SFM's request to the Arbitrator to stay the New York Arbitration. Harrington Dec., at ¶¶46-47.

**SFM Files Yet Another Motion to Stay the New York Arbitration Before a Third Tribunal**

While the Federal Court and Arbitrator Mandel were in the midst of reviewing SFM's motions to stay the Arbitration, Plaintiff ran to the Supreme Court of the State of New York and filed a Petition also requesting a stay of the Arbitration (the "New York Action"). Harrington Dec., at ¶¶48-50. In the New York Action, SFM requested almost exactly the same relief SFM was requesting of the Federal Court and Arbitrator Mandel. Harrington Dec., at ¶¶48-50.

SFM made these multiple requests to three (3) separate tribunals to stay the Arbitration because SFM feared an adverse ruling from Arbitrator Mandel regarding SFM's and Mr. Kogos' persistent discovery violations. Harrington Dec., at ¶50. It appears filing multiple requests for stays, before multiple tribunals, using multiple lawyers is SFM's litigation strategy to prevent a hearing on the merits.

On September 7, 2007, Judge Feinman of the Supreme Court of the State of New York denied as untimely, Plaintiff's request for a temporary restraining order staying the Arbitration; Plaintiff made this application almost eight (8) months after La Rosa New York initiated the New York Arbitration. Harrington Dec., at ¶48. Pursuant to Judge Feinman's September 7, 2007 Order, Defendant La Rosa New York had until October 10, 2007 by which to serve opposition papers to SFM's request for a preliminary injunction staying the New York Arbitration. SFM then had until October 26, 2007 to serve reply papers, with oral argument on October 31, 2007. Harrington Dec., at ¶48.

On September 10, 2007, SFM's counsel in the New York Action informed La Rosa New York's counsel that SFM would be appealing Judge Feinman's Order to the Appellate Division, Second Department in New York. Later that same day, Arbitrator Mandel issued an Order in which he indicated that the New York Arbitration would be stayed pending further briefing. Harrington Dec., at ¶47. Arbitrator Mandel then held a conference call and issued a decision on October 1,

2007, again staying the Arbitration pending a decision by a court of competent jurisdiction resolving the matter of whether there was an agreement to arbitrate the dispute between La Rosa New York and SFM. Harrington Dec., at ¶50.

On October 10, 2007, pursuant to Judge Feinman's Order, Defendant La Rosa New York served SFM with opposition papers and a cross-motion to compel Arbitration. Harrington Dec., at ¶¶51-52.

On October 17, 2007, counsel of record for SFM (Max Marcus Katz) in the New York Action requested an extension of time of thirty (30) days in which to file opposition to La Rosa New York's cross-motion. Harrington Dec., at ¶53. It is now apparent that SFM's request for an extension of time in the New York Action in which to serve opposition papers to the pending cross-motion to compel Arbitration was more litigation gamesmanship on the part of SFM; SFM apparently instructed its only counsel of record in the New York Action (Max Marcus Katz) to stop working on the New York Action, obviously in hopes that the Federal Court would issue a decision before Judge Feinman was given time in which to issue a decision on La Rosa New York's cross-motion to compel Arbitration. Harrington Dec., at ¶¶53-57.

### SFM Has a Hearing on the Merits Regarding La Rosa New York's Cross-Motion to Compel Arbitration

On December 5, 2007, counsel for La Rosa New York appeared before Judge Feinman to argue the cross-motion to compel Arbitration. SFM had counsel appear at this hearing. Harrington Dec., at ¶¶58-59. Notwithstanding the fact that this third lawyer for SFM was not counsel of record in the New York Action, Judge Feinman allowed him to argue SFM's position. *Id.*

Judge Feinman ultimately ruled in La Rosa New York's favor (procedurally and on the merits) on La Rosa New York's cross-motion to compel Arbitration. Harrington Dec., at ¶¶58-59. Judge Feinman indicated in his December 5, 2007 Order that SFM failed to show that the parties

11

had not agreed to arbitrate their disputes pursuant to the written agreements, and that he would have denied SFM's petition to stay the New York Arbitration on the merits. *Id.*

After Judge Feinman issued his decision in favor of La Rosa New York compelling SFM to arbitrate, counsel for La Rosa New York was required to wait until the Clerk of the Court actually docketed Judge Feinman's December 5, 2007 Decision and Order before being able to obtain a certified copy of the Order, and serve it upon SFM with Notice of Entry pursuant to New York State procedural requirements. Harrington Dec., at ¶¶58-61. After the December 5, 2007 hearing, counsel for La Rosa New York also immediately ordered the transcript of the hearing. This was done in order that a clear record of the basis for Judge Feinman's decision granting La Rosa New York's cross-motion to compel Arbitration could be made available to Arbitrator Mandel and the Federal Court, if necessary. Harrington Dec., at ¶¶58-61. The hearing transcript was not available for over a week after the December 5, 2007 hearing was completed. Harrington Dec., at ¶60.

### Judge Gotschall Issues an Order Based on Inaccurate, Undisclosed Information

Between December 5th, the date of Judge Feinman's Order compelling SFM to arbitrate, and December 19, 2007, the date in which counsel for La Rosa New York was able to obtain a certified copy of Judge Feinman's Order, and serve the Order with Notice of Entry upon SFM, Judge Gotschall issued her Order on December 7, 2007 in the Northern District of Illinois. Harrington Dec., at ¶60. Judge Gotschall's Decision and Order granted La Rosa New York's motion to transfer the action to the Southern District of New York (the "Federal Decision"). Judge Gotschall's Order also denied La Rosa New York's motion to compel Arbitration, and granted SFM's motion to stay the Arbitration pursuant to the FAA (an Arbitration that had already been stayed pursuant to Arbitrator Mandel's Order). The Federal Decision directed the parties to hold a hearing in order to determine the issue of arbitrability; an issue that had already been determined by Judge Feinman in his December 5, 2007 Order.

Judge Gotschall's December 7, 2007 Order, however, was based on the false, factual predicate that the FAA applied to SFM's motion to stay the Arbitration. Judge Gotschall was not aware, as La Rosa New York was not aware, that SFM was in fact a New York corporation, and SFM's <u>only</u> place of business was <u>also</u> in New York City. Harrington Dec., at ¶61. Therefore, the dispute between La Rosa New York and SFM did not impact inter-state commerce as required under the FAA. This is nothing more than an <u>intra-state</u> dispute between New York corporations with their principal places of business in New York City regarding conduct that took place entirely in New York (a fact acknowledged by Judge Gotschall in the Federal Decision). Thus, the legal and factual predicates for Judge Gotschall's decision, that the FAA applied because inter-state commerce was involved was in error; an error not of the Court's making, but as a result of SFM's knowing failure to disclose to the Federal Court that SFM's <u>only</u> place of business is in New York City.

Due to Judge Feinman's December 5, 2007 Order compelling SFM to arbitrate, and because SFM's knowingly failed to disclose that it is a New York corporation with its only place of business in New York, the circumstances and facts of this action have radically changed. These radical changes undermine the basis for Judge Gotschall's December 7, 2007 Order regarding a stay of the New York Arbitration. There are now no jurisdictional underpinnings that allow the Court to order the parties to have a hearing on the issue of arbitrability pursuant to the FAA. Defendants request that this Court relieve Plaintiffs from Judge Gotschall's Order, and vacate such Order pursuant to Federal Rule of Civil Procedure 60(b)(3), (5) and (6).

## ARGUMENT

**I.     DEFENDANTS ARE ENTITLED TO RELIEF FROM JUDGE GOTSCHALL'S ORDER STAYING THE NEW YORK ARBITRATION PENDING A HEARING ON THE ISSUE OF ARBITRABILITY**

Defendants are entitled to relief from the December 7, 2007 Order of Judge Gotschall staying the Arbitration pending a hearing on arbitrability under the FAA because circumstances have so drastically changed that justice is not served by enforcing that aspect of her Order; namely, the Decision of Judge Feinman of the New York Supreme Court directing the parties to arbitrate precludes Plaintiff from arguing that there are no arbitration agreements between SFM and La Rosa New York. It is SFM's improper gamesmanship that has resulted in Judge Feinman's prior Order compelling SFM to arbitrate this dispute, and Judge Gotschall's later order staying the New York Arbitration and instructing the parties to hold a hearing on the issue of arbitrability. This situation represents just the sort of extraordinary circumstances that warrant application of Rule 60(b)(6), and an order vacating Judge Gotschall's Order. Indeed, substantial justice requires the application of Rule 60(b)(6) to preclude SFM from pursuing its improper litigation tactic of filing multiple requests before multiple tribunals on the same issue, and then cherry-picking from the resulting outcomes to the prejudice of La Rosa New York

Under Federal Rule of Civil Procedure 60(b), the court may relieve a party from an Order or proceedings as a result of: (3) misconduct by an opposing party; (5) applying the judgment prospectively is no longer equitable; or (6) any other reason that justifies such relief. Fed.R.Civ.P. 60(b). In deciding a Rule 60(b) motion, a court must balance the policy in favor of hearing a litigant's claims on the merits against the policy in favor of finality. *Kotlicky v. U.S. Fidelity & Guar. Co.*, 817 F.2d 6, 9 (2nd Cir. 1987). Rule 60(b)(6) motions need only be made within a reasonable time after the decision to be reviewed was originally issued. *Id.*

14

Generally, courts require that evidence in support of a motion to vacate an Order under Rule 60(b)(6) be highly convincing, that a party show good cause for failure to act sooner, that there is no undue hardship imposed to the parties, other than hardship to the party bringing the motion should it not be granted. *Id.; LeBlanc v. Cleveland*, 248 F.3d 95, 100 (2nd Cir. 2001). Rule 60(b)(6) provides a grand reservoir of equitable power to do justice in a particular case when relief is not warranted by the other clauses. *JAT Yugoslav Airlines v. Agencija Rudenjak, Inc.*, 1995 WL 146229, at *2 (S.D.N.Y. March 31, 1995). Relief under Rule 60(b)(6) may be invoked under extraordinary circumstances. *Id.; Clarendon Nat. Ins. Co. v. TIG Reinsurance Co.*, 183 F.R.D. 112, 118 (S.D.N.Y. 1998).

Extraordinary circumstances exist when a party attempts to flout a court's legitimate authority. *Kramer v. Gates*, 481 F.3d 788, 793 (D.D.C. 2007). Rule 60(b)(6) should also be liberally construed when issues of substantial justice will be served. *LeBlanc*, 248 F.3d at 100; *U.S. v. Cirami*, 563 F.2d 26, 32 (2nd Cir. 1977); *Enrico v. Russo, Garguilo & Fox*, 1999 WL 1288946, at *1 (E.D.N.Y. Oct. 22, 1999); *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2nd Cir. 2004).

### A. Judge Feinman's Order Estops SFM from Asserting it has not Agreed to Arbitrate this Dispute.

Pursuant to Rule 60(b)(6), the Court should grant Defendants' request to vacate Judge Gotschall's Order on the issue of whether SFM is entitled to a hearing on the issue of arbitrability under the FAA; SFM is now estopped from arguing that issue as a result of Judge Feinman's December 5, 2007 Order compelling the parties to arbitrate.

Under the full faith and credit clause, a Federal court must give State judicial proceedings the same full faith and credit as they have by law or usage in the courts of such state. *Mitchell v. Keane*, 974 F.Supp. 332, 339 (S.D.N.Y. 1997). Accordingly, a prior State judicial proceeding is entitled in a subsequent Federal court proceeding to the same preclusive effect as it would have

under law of the rendering state. *Id.; Garden City Center Incorporated v. Incorporated Village of Garden City,* 1999 WL 642784, at *3 (2nd Cir. Aug. 20, 1999).

Under New York law, the doctrine of collateral estoppel precludes a party from re-litigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding, and decided against the party. *Mitchell,* 974 F.Supp. at 339. There are two prerequisites to the invocation of collateral estoppel under New York law: (1) there must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action; and (2) there must have been a full and fair opportunity to contest the decision said to be controlling. *Id.* Collateral estoppel applies only if it is quite clear that these requirements have been satisfied lest a party be precluded from obtaining at least one full hearing on his or her claim. *Id.*

In this instance, SFM applications for a TRO and stay of the New York Arbitration before Judge Feinman, La Rosa New York's cross-motion to compel Arbitration in the New York Action, and Judge Feinman's December 5, 2007 Order granting La Rosa New York's cross-motion, meet the requirements for the invocation of collateral estoppel against SFM in this action. There is clearly an identity of issues as between SFM's request for a temporary restraining order and stay in the New York Action, La Rosa New York's cross-motion to compel Arbitration in the New York Action before Judge Feinman, and SFM's request to stay the New York Arbitration filed in this Action. Harrington Dec., at ¶¶51-61. In the New York Action, SFM argued in its application for a TRO and stay of the New York Arbitration, that the Arbitration should be stayed because (SFM asserted) there were no written agreements to arbitrate between SFM and La Rosa New York. *Id.* La Rosa New York argued just the contrary in its cross-motion to compel the New York Arbitration. Harrington Dec., at ¶¶48-61. Thus, the issue of whether there were written agreements to arbitrate between La Rosa New York and SFM was clearly before Judge Feinman in the New York Action.

SFM also had a full and fair opportunity to litigate this issue before Judge Feinman. Not only did SFM file an Order to Show Cause requesting a temporary restraining order/stay of the Arbitration (which Judge Feinman denied as untimely), but SFM had a full and fair opportunity to oppose La Rosa New York's cross-motion to compel Arbitration. Harrington Dec., at ¶¶58-61.

Judge Feinman then ruled in favor of La Rosa New York, procedurally and on the merits, compelling SFM to arbitrate this dispute. Judge Feinman informed SFM that he would have denied SFM's motion to stay the Arbitration on the merits. Harrington Dec., at ¶¶58-61. Because the issue of whether SFM and La Rosa New York entered into written agreements to arbitrate was fully before Judge Feinman as a result of SFM's application for a temporary restraining order/stay of the New York Arbitration and La Rosa New York's cross-motion to compel Arbitration, and because SFM had a full and fair opportunity to litigate such issues before Judge Feinman, Judge Feinman's Order of December 5, 2007 compelling SFM to arbitrate its disputes with La Rosa New York estops SFM from arguing that issue before this Court.

SFM has clearly flouted the judicial process by trying to cherry-pick from the results of SFM's multiple motions before multiple tribunals. Notwithstanding such conduct, Judge Feinman's December 5, 2007 Order directs SFM to arbitrate this dispute. Thus, this Court is presented with exactly the kind of extraordinary circumstances that allow for the application of Rule 60(b)(6) in a reconsideration of Judge Gotschall's December 7, 2007 Order staying the Arbitration pending a hearing on the issue of arbitrability.

Furthermore, SFM will be unable to show undue hardship imposed upon it as a result of reconsideration of Judge Gotschall's December 7, 2007 Order on the issue of arbitrability. SFM had ample opportunity to litigate this issue before Judge Feinman. Indeed, as a result of SFM's litigation tactic of submitting stay motions before three different tribunals, it is La Rosa New York that has been prejudiced and subjected to undue hardship through delay in getting to the merits of

this dispute. Therefore, due to SFM's tactics, and the fact that SFM is estopped from arguing that it did not agree to arbitrate its disputes with La Rosa New York as a result of Judge Feinman's Order, this Court should vacate Judge Gotschall's December 7, 2007 Order requiring a hearing on the issue of arbitrability, and issue an order compelling SFM to go forward with the New York Arbitration.

**B.** **La Rosa New York is Entitled to Relief from Judge Gotschall's Order Because SFM is Precluded from Arguing the Issue of Arbitrability Under *Rooker Feldman.***

SFM is also precluded from re-litigating the issue of arbitrability determined by Judge Feinman in the New York Action pursuant to the *Rooker Feldman* Doctrine. The *Rooker Feldman* Doctrine precludes a Federal Court from considering claims decided by a State Court or claims inexplicably intertwined with an earlier State Court judgment. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983). A Federal claim is considered inexplicably intertwined with a State Court judgment if the Federal claim succeeds only to the extent that the State Court wrongly decided the issues before it. *Mackenzie v. Donovan*, 375 F.Supp.2d 312, 319 (S.D.N.Y. 2005). A party having lost in State Court is precluded by virtue of the *Rooker Feldman* Doctrine from seeking what in substance would be Appellate review of a State judgment in a United States District Court based on the losing party's claim that the State judgment itself violates the loser's Federal rights. *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994). Even where a state court judgment is not being appealed directly, the Court is in essence being called upon to review the state court decision where the claim presented to the Court is inextricably intertwined with the state court's determination. *Mackenzie*, 375 F.Supp.2d at 319.

The Second Circuit has observed that in order to apply *Rooker Feldman*, four (4) requirements must be met: (1) the Federal Court plaintiff must have lost in State Court; (2) the plaintiff must complain of injuries caused by State Court judgment; (3) the plaintiff must invite

District Court review and rejection of that judgment; and (4) the State Court judgment must have been rendered before the District Court proceedings commenced. *Lomnicki v. Cardinal McCloskey Services*, 2007 WL 2176059 (S.D.N.Y. July 26, 2007); *Hoblock v. Albany County Board of Elections*, 422 F.3d 77, 83 (2nd Cir. 2005); *Trakansook v. Astoria Federal Sav. and Loan Ass'n*, 2007 WL 1160433, at *3 (E.D.N.Y. Apr. 18, 2007).

In this instance, La Rosa New York has demonstrated that all four prongs of the Second Circuit's requirements for application of *Rooker Feldman* have been met. This bars SFM from obtaining a hearing on the issue of arbitrability essentially overruling Judge Feinman's December 5, 2007 Order. First, SFM lost the issue of whether there were agreements to arbitrate between La Rosa New York and SFM during the New York Action before Judge Feinman. Judge Feinman clearly ruled on the merits that there were arbitration agreements between SFM and La Rosa New York, and that SFM was compelled to arbitrate this dispute with La Rosa New York. Second, any hearing held by this Court to determine the issue of arbitrability of this dispute, and whether there exist written agreements to arbitrate would involve SFM complaining to this Court about the validity of Judge Feinman's December 5, 2007 Order.

Third, any hearing this Court were to hold to determine the issue of arbitrability would also be inviting the Court to review and reject Judge Feinman's December 5, 2007 Order compelling SFM to arbitrate this dispute. Fourth, Judge Feinman's decision issued December 5, 2007 was rendered before Judge Gotschall issued her December 7, 2007 Order, and rendered before any hearing by this Court under the FAA to determine the issue of arbitrability. Therefore, because the four requirements of the Second Circuit for application of the *Rooker Feldman* Doctrine have been met, the Court is barred from entertaining any hearing under the FAA on the issue of arbitrability.

The extraordinary circumstances, and the application of the *Rooker Feldman* Doctrine, require the application of Rule 60(b)(6) by the Court, and an order vacating Judge Gotschall's

December 7, 2007 Order regarding a hearing on the issue of arbitrability, and compelling SFM to arbitrate its dispute with La Rosa New York.

### C.    **Defendants are Entitled to Relief From Judge Gotschall's Order Due to Plaintiff's Willful Misconduct**

SFM's knowing misconduct in this action also requires the Court to vacate Judge Gotschall's Order requiring a hearing on the issue of arbitrability. Pursuant to Federal Rule of Civil Procedure 60(b)(3), a court may relieve a party from an order or proceeding as a result of misconduct by the opposing party. Fed.R.Civ.P. 60(b)(3). Misconduct under Rule 60(b)(3) does not demand proof of nefarious intent or purpose as a prerequisite to redress. *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 923 (1st Cir. 1988). Under 60(b)(3), the moving party must simply demonstrate by clear and convincing evidence that the adverse party engaged in misconduct, and that the misconduct prevented the movant from fully and fairly presenting his case. *Catskill Development, LLC v. Park Place Entertainment Corp.*, 286 F.Supp.2d 309, 312 (S.D.N.Y. 2003). Indeed, even accidental failure to disclose or produce materials requested can constitute misconduct within the purview of Rule 60(b)(3). *Id.* at 314. A presumption of substantial interference arises if it can be shown that the misconduct was knowing and deliberate. *Monaghan v. SZ S33 Associates, LP*, 1992 WL 135821, at *4 (S.D.N.Y. June 1, 1992). A movant need not show that the outcome would have been different absent the defendant's misconduct. *Catskill*, 286 F.Supp.2d at 316.

In this instance, SFM has clearly undertaken misconduct that prevented La Rosa New York from fully and fairly presenting the issues of whether the FAA should determine which forum should decide the arbitrability issue, and whether the Court could apply the FAA to stay this action pending a hearing on the issue of arbitrability. As described above, despite repeated requests by La Rosa New York's counsel to SFM's counsel, in this action, the New York Arbitration and the New York State Action, SFM and its President, Shlomo Kogos, have refused to divulge the address of SFM's <u>only</u> place of business. Harrington Dec., at ¶39. Indeed, SFM only divulged that its only

place of business is in New York City in September 7, 2007 when SFM filed a self-serving petition before Judge Feinman on September 6, 2007 for a temporary restraining order and stay of the Arbitration; six (6) months after La Rosa New York had originally requested this information during the New York Arbitration, five (5) months after La Rosa had requested the information in this Action, four (4) months after La Rosa New York filed its first motion to dismiss or stay this Action pending the New York Arbitration, over a month after La Rosa New York filed a second motion to dismiss or stay this Action, and a month after SFM filed a reply brief in support of its motion to stay the New York Arbitration (a document in which SFM again failed to disclose that its only place of business is in New York City) .  Harrington Dec., at ¶49.  The reason SFM has consistently and knowingly refused to disclose this information to the Court and to La Rosa New York, despite its duty to do so, is clear; SFM is aware that interstate commerce was not impacted by the parties' 2005 Agreements or this dispute, and therefore the FAA cannot be applied to SFM's request for a hearing on the issue of arbitrability of this dispute.

In assessing whether an agreement impacts interstate commerce, courts look the residencies of the parties, the location of the parties' businesses, and whether the instrumentalities of the project are derived through trade among the several states.  *Garten v. Kurth*, 265 F.3d 136, 142 (2nd Cir. 2001); *Tyler v. City of New York*, 2006 WL 1329753, at *2 n.3 (E.D.N.Y. May 16, 2006); *Zhang v. Wang*, 2006 WL 2927173, at *1 (E.D.N.Y. Oct. 12, 2006); *Shalik v. Kalikow*, 15 Misc.3d 1106(A), 836 N.Y.S.2d 503, 2007 WL 841005, at *4 (N.Y. Sup.Ct. March 20, 2007).  In determining whether interstate commerce was impacted by an agreement, Courts also look to where the agreement was executed and where it was required to be carried out.  *Cecala v. Moore*, 982 F.Supp. 609, 611 (N.D.Ill. 1997).

In this instance, the residencies of the parties, their places of businesses, the place of implementation of the 2005 Agreements, and the local instrumentalities preclude a finding that

interstate commerce is impacted by these agreements or this dispute: (1) SFM is a New York corporation, (2) SFM has finally admitted its only place of business is in New York City, (3) La Rosa New York, too, is a New York corporation with its principal place of business in New York City, (4) the 2005 Agreements were executed by La Rosa New York in New York City, and (5) work done by SFM pursuant to its agreements with La Rosa New York was carried out in New York City at La Rosa New York's offices in the Bronx. Thus, the dispute involves intra-state, not interstate commerce, and therefore the FAA cannot be applied to this dispute.

The significance of the inapplicability of the FAA to this dispute is obvious; application of New York law to the issue of whether the parties agreed to arbitrate their disputes clearly favors La Rosa New York and its position that the parties have an agreement to arbitrate. Under New York law, there need be no written agreement to arbitrate as long as the parties act in conformance to an agreement that has an arbitration provision. *God's Battalion v. Miele Assoc.*, 85 N.E.2d 1265, 16 N.Y.3d 371, 374 (N.Y. 2006); *Rudolph & Beer, LP v. Roberts*, 260 A.D.2d 274, 688 N.Y.S.2d 553, 555 (1st Dept. 1999); *Maxit Designs, Inc. v. Coville, Inc.*, 2006 WL 2734366 (E.D. Cal. Sept. 25, 2006). As described above, even if as SFM alleges it did not sign the two agreements, it acted in conformance with those agreements by undertaking to develop, implement and maintain the web-based version of the Moving Manager Software for over two (2) years, accepted $245,000 in payment from La Rosa New York for such software development, and indeed, referenced the agreements between the parties in multiple e-mails. Harrington Dec., at ¶¶22-26.

Furthermore, under New York law, SFM waived any right to object to the New York Arbitration, and waived the right to stay the New York Arbitration under New York law because (1) SFM failed to seek a stay of the Arbitration under CPLR §7503(c) within twenty (20) days of La Rosa New York's Demand for Arbitration; (2) SFM participated in the Arbitration by appearing before the Arbitrator; (3) SFM participated in the scheduling of the Arbitration hearing and

discovery for the Arbitration; (4) SFM sought an extension of time in the Arbitration in which to answer the Demand for Arbitration; (5) SFM agreed to arbitrate the issue of arbitrability before the Arbitrator; (6) SFM sought relief from the Arbitrator requesting a stay of the Arbitration; and (7) SFM acquiesced/participated in the selection of Arbitrator Mandel without objection. *Favara, Skahan, Tabaczyk, Ltd. v. Ewing*, 1992 WL 80659, at *2 (S.D.N.Y. April 9, 1992); *Morfopoulos v. Lundquist*, 191 A.D.2d 197, 594 N.Y.S.2d 234, 235 (1st Dept. 1993); *Ercoli v. Empire Professional Soccer LLC*, 11 Misc.3d 1065(A), 2005 WL 3877599 (N.Y. Sup.Ct. Monroe Co. Sept. 30, 2005); *National Cash Register Co. v. Wilson*, 8 N.Y.2d 377, 381 (N.Y. 1960); *Mobius Management Systems, Inc. v. Technologic Software Concepts, Inc.*, 2002 WL 31106409, at *1 (S.D.N.Y. Sept. 20, 2002); *Hanney v. Taylor*, 2001 WL 1691986 (N.Y. Sup.Ct. Oct. 26, 2001); *Allstate Ins. Co. v. Khait*, 227 A.D.2d 551, 643 N.Y.S.2d 163 (2nd Dept. 1996); *Kidder, Peabody & Co., Inc. v. Marvin*, 161 Misc.2d 12, 613 N.Y.S.2d 1011 (N.Y. Sup.Ct. March 28, 1994).

Because SFM purposefully failed to disclose to the Court and La Rosa New York SFM's business address, and as a result of the self-serving disclosure by SFM in the New York Action that SFM is both a New York corporation with its <u>only</u> place of business in New York City, it is now clear that the FAA cannot be applied to this dispute. Application of New York law precludes SFM from asserting it is not required to arbitrate this dispute. Therefore, Judge Gotschall's December 7, 2007 Order requiring a hearing on the issued of arbitrability under the FAA should be vacated due to SFM's misconduct, and the Court should issue an order compelling SFM to arbitrate this dispute.

   **D.    <u>Defendants are Entitled to Reversal of Judge Gotschall's Order Because it is no Longer Equitable that the Order Should have Prospective Application</u>**

Under Rule 60(b)(5) a court may vacate or modify a final order where it is no longer equitable that the order should have prospective application. Fed. R. Civ. P. 60(b)(5); *S.E.C. v. Lewis*, 423 F.Supp.2d 337, 340 (S.D.N.Y. 2006); *Raheim v. New York City Health and Hospitals*

23

*Corp.*, 2007 WL 2363010, at *7 (E.D.N.Y. Aug. 14, 2007). Changed circumstances provide a basis to vacate a previous order under Rule 60(b)(5). *Raheim*, 2007 WL 2363010, at *7.

As described above, circumstances have radically changed in this Action as the result of Judge Feinman's Order compelling SFM to arbitrate this dispute, and SFM's failure to disclose in this Action that SFM's only place of business is in New York City. Harrington Dec., at ¶¶39, 48. Judge Feinman's Order precludes SFM from asserting the parties did not enter into a written arbitration agreement, both under the doctrine of Collateral Estoppel and the *Rooker Feldman* Doctrine. In addition, because SFM engaged in a judicial shell game, hiding material information from the Court and La Rosa New York about the fact that SFM's only place of business is New York City (a fact which precludes application of the FAA), it is no longer equitable to prospectively apply Judge Gotschall's Order directing a hearing on the issue of arbitrability.

## **CONCLUSION**

For the reasons described above, the Court should vacate Judge Gotschall's December 7, 2007 Order requiring a hearing on the issue of the arbitrability of this dispute, and issue an order compelling SFM to arbitrate with La Rosa New York.

Dated: February 21, 2008

Respectfully submitted,

HARRINGTON, OCKO & MONK, LLP

s/ Kevin J. Harrington

By:_____

Kevin Harrington, Esq. (KH-5027)
John T.A. Rosenthal, Esq. (JR-4819)
*Attorneys for Defendants*
*LA ROSA NEW YORK DEL MONTE*
*EXPRESS, INC. and LA ROSE DEL MONTE*
*EXPRESS (CHICAGO), LLP*
81 Main Street, Suite 215
White Plains, NY 10601
Tel: (914) 686-4800
Fax: (914) 686-4824

24

TO:    Francis J. Leyhane, III, Esq.
       LEYHANE & ASSOCIATES, LTD.
       *Attorneys for Plaintiff*
       *SOFTWARE FOR MOVING, INC.*
       205 West Randolph Street
       Suite 1320
       Chicago, IL 60606